UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

*Electronically Filed*

| | |
|---|---|
| THE HONORABLE ORDER OF ) <br> KENTUCKY COLONELS, INC. ) <br> ) <br>     PLAINTIFF ) <br> ) <br> v. ) <br> ) <br> KENTUCKY COLONELS ) <br> INTERNATIONAL, et al. ) <br> ) <br> ) <br>     DEFENDANTS ) | CIVIL ACTION NO. 3:20CV-132-DJH |

**REPLY IN SUPPORT OF PLAINTIFF'S
<u>MOTION FOR PRELIMINARY INJUNCTION</u>**

Plaintiff, The Honorable Order of Kentucky Colonels ("HOKC"), by counsel, for its reply in support of its motion for a preliminary injunction **[DN 7]**, which is set for a hearing on March 4, 2020 at 10:00 a.m., hereby states and certifies as follows:

1. Despite the filing of Plaintiff's Verified Complaint **[DN 1]** and the Court's entry of the February 25, 2020 Temporary Restraining Order **[DN 14]**, Defendants continue to infringe on HOKC's trademark, irreparably damaging its goodwill and tarnishing its name. Specifically, Defendants have registered and continue to use a domain name <u>www.kycolonels.international</u> that incorporates the KENTUCKY COLONELS Mark and is identical or confusingly similar to HOKC's domain name <u>www.kycolonels.org</u>. [*See* Affidavit of Sherry Crose (the "Crose Affidavit"), (attached as Exhibit 1), ¶ 3].

2. Sometime after February 26, 2020, the name on the website maintained by Kentucky Colonels International (the "KCI Website") was changed from "Kentucky Colonels

International" to "Kentucky Colonel Foundation." [*Id*. at ¶ 4]. However, the domain name for the KCI Website did not change; it remains www.kycolonels.international. [*Id.*]. A copy of the "new" KCI Website as of 9:30 a.m. on February 27, 2020, was previously provided to the Court and attached Exhibit 6 to the Third Supplement to Plaintiff's Motion for Preliminary Injunction **[DN 19-6]**. [*Id*.]. As shown on that exhibit, the "new" version of the KCI Website continued to tout the group as "Kentucky's Goodwill Ambassadors" and described the history and background of "the prestigious Order of the Kentucky Colonel." Thus, the content on the website attempted to create the impression that the organization has a philanthropic mission. Like the earlier version of the KCI Website, the content of the website as reflected in the exhibit filed with the Court continued to solicit donations for the Kentucky Colonel Foundation, among other things.[1]

3. KCI maintains a public Facebook page. [*Id.* at ¶ 5]. The public Facebook page previously used the username "Kentucky Colonels International" and handle "@KentuckyColonels." [*Id*.]. Sometime after February 26, 2020, the name on the KCI Facebook page was changed to "Kentucky Colonel Foundation" and handle "@kycolonelfoundation." [*Id*.]. Like the KCI Website, the Kentucky Colonel Foundation Facebook page touts the group as Kentucky's "goodwill ambassadors" and states "because they are issued letters patent by the head-of-state colonels are legally charged with promoting the interests of the state, tourism, economic development and its prosperity under the duly elected Governor." The Facebook page further adds "colonels are found frequently to become involved in volunteerism and community service with non-profit causes and events inside and outside of Kentucky."

---

[1] While the Donation page is still up, the PayPal link and QR Code on the page no longer function and there is a disclaimer on the Donation page reflecting the TRO entered by this Court.

4. KCI's public Facebook page, and specifically its handle, is confusingly similar to HOKC's public Facebook page handle "@kycolonels" and username "Honorable Order of Kentucky Colonels."

5. The domain name, organization name, and content of the KCI Website as well as the username, handle and content of the KCI public Facebook page is misleading and creates confusion by suggesting or fostering the impression that the individual or organization responsible for maintaining the KCI Website and KCI public Facebook page is affiliated with or approved by HOKC.  [*Id*. at 6].  In addition, the KCI Website and KCI public Facebook page repeatedly infringe on the KENTUCKY COLONELS Mark that is critical to HOKC's mission.  [*Id.*].

6. On February 28, 2020, Defendants again modified the KCI Website to include a statement suggesting that they did not recognize the jurisdiction of this Court to provide the relief requested by HOKC. [*Id.* at ¶ 8].  Specifically, the KCI Website was modified to include the following statement:

> Finally, since we are being forced to abandon our Assumed Name Corporation registration for "Kentucky Colonels International" in Kentucky as a result of this lawsuit, we have taken steps to offshore our international decentralized autonomous organization to the world theater that it has been developed for as goodwill ambassadors with our colonelships to establish ourselves as a foundation and benign non-state actors.  This action may remove us legally from the jurisdiction of the US Federal Court, perhaps not as so many of our members are not US Citizens.  If any natural person can show actual evidence of any significant commercial transactions using our previous corporate name to warrant our return they are welcome to pursue us in the International Maritime Court or International Criminal Court in The Hague.

A copy of the page from the KCI Website reflecting this statement is attached to the Crose Affidavit as Exhibit 1.  On February 28, 2020, the KCI Website was also amended to include the statement "As of 11:15 AM on February 28 Kentucky Colonels International

3

    ceased to exist when our CERTIFICATE OF WITHDRAWAL OF ASSUME NAME was registered with the Kentucky Secretary of State Michael Adams in Frankfort, Kentucky." Finally, the KCI Website was amended to include an entire page on HOKC which, in addition to using HOKC'S registered logo without permission, includes various disparaging statements regarding HOKC. A copy of that page from the KCI Website is included in Exhibit 1 to the Crose Affidavit. [*Id.*].

7. On March 3, 2020, Defendant David Wright, on behalf of himself and the other Defendants, forwarded the undersigned counsel a response to the pending motion and answer to Plaintiff's Verified Complaint. Copies of the correspondence transmitting those materials as well as the materials themselves are attached as Exhibit 2 (hereinafter "Defendants' Response"). Defendants' Response, among other things, acknowledges Defendants' intentions to "formalize [Defendants] development by offering paid membership, starting an international registry, providing credentials to members, and charging [Defendants] unpaid members voluntary and monthly dues for a more formal and better organized services program…." [Defendants' Response, 7]. Defendants' Response further reiterates Defendants' intentions to continue to infringe on the KENTUCKY COLONELS Mark, by now using the name "Kentucky Colonel Foundation." [*Id.* at 11]. Defendants' Response states that "the newly renamed organization" has declared itself "an offshore foundation under laws where [HOKC and the Court] have no jurisdiction or rights so that we can enjoy freedom as a civil society organization as which we were formed." [*Id.*]. Defendants defiantly declare their intention to continue to use the KENTUCKY COLONELS Mark because neither HOKC nor "the US Courts" can "use a US trademark to control a state award or recognition granted by the Governor or previous Governors."

[*Id*.]. Defendants make their financial motivation clear, candidly admitting that Defendants "are still willing to negotiate." [*Id*.].

8. Defendants are using the kycolonels.international domain name to intentionally attempt to attract, for commercial gain, internet users to the KCI Website by creating a likelihood of confusion with HOKC's KENTUCKY COLONELS Mark. *See* 5 McCarthy on Trademarks and Unfair Competition § 25A:48 (5th ed.). Defendants are using the KCI Website domain name to mislead web users to access its website in order to increase traffic, which is a form of bad faith. [*Id*].

9. "Cybersquatting" occurs when a person other than a trademark holder registers a domain name of a well-known trademark and then attempts to profit by either ransoming the domain name back to the trademark holder or by using the domain name to divert business from the trademark holder to the domain name holder. *Daimlerchrysler v. The Net Inc.*, 388 F.3d 201, 204 (6th Cir. 2004) (citing *Sporty's Farm L.L.C. v. Sportsman's Market, Inc.*, 202 F.3d 489, 493 (2d Cir. 2000)).

10. Under the Anti-Cybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d) (the "ACPA"), the central issue is the defendants' bad faith. The ACPA lists factors courts may consider in determining whether a registration is actionable, including:

- The defendant's intent to divert consumers from the mark owner's online location to a site accessible under the domain name that could harm the goodwill represented by the mark by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the site, either:

  - for commercial gain; or
  - with the intent to tarnish or disparage the mark.

- Whether the defendant has offered to transfer, sell, or otherwise assign the domain name to the mark owner or any third party for financial gain and:

  - has neither used nor intends to use the domain name in the bona fide

> offering of any goods or services; or
>
> - the defendant's previous conduct indicates a pattern of this conduct.
>
> - Whether the defendant has:
>
>   - provided material and false contact information when applying to register the domain name;
>
>   - intentionally failed to maintain accurate contact information; or
>
>   - engaged in a pattern of this type of conduct.
>
> - The extent to which the mark incorporated in the defendant's domain name is or is not distinctive and famous within the meaning of the list of factors for determining fame under Section 43(c)(1) of the Lanham Act.

[*See* 15 U.S.C. § 1125(d)(B)(i)].

11. Under the Anti-Cybersquatting Consumer Protection Act, 15 U.S.C. § 1125(a) *et seq*. "[A] plaintiff is entitled to an injunction that is somewhat broader than the scope of its ACPA claim in order to protect the reputation and goodwill it has established in its marks and to prevent defendants from infringing on, or otherwise harming, those marks." *Daimlerchrysler*, 388 F.3d at 208.

12. Here, HOKC is entitled to relief from Defendants' cyber-piracy activities because (1) it has a valid trademark entitled to protection; (2) its Mark is distinctive or famous; (3) the Defendants' domain name is identical or confusingly similar to, or dilutive of, HOKC's Mark; and (4) Defendants used, registered, or trafficked in the domain name (5) with a bad faith intent to profit. *Id.* at 208-209 (citing *Ford Motor Co. v. Catalanotte*, 342 F.3d 543, 546 (6th Cir. 2003)).

13. The Defendants' bad faith conduct in attempting to divert business using a misleading domain name is described and reflected in the Verified Complaint, the attachments thereto, the supplements tendered in support of Plaintiff's Motion for a Preliminary Injunction and

the attached Affidavit of Sherry Crose.  Defendants' alteration of the Wikipedia article on "Kentucky Colonel" deleting the entry regarding HOKC's protected trademark, Defendants' disregard of the TRO and Defendants' stated intentions to defy the Court's future directives clearly demonstrates bad faith. Both the transmittal correspondence that accompanied Defendants' Response and the response itself reiterate Defendants' intentions to continue their infringement on the HOKC Mark as well as the smear campaign directed at HOKC unless their extortionate demands are met.  [*See* Defendants' Response transmittal letter and Defendants' response].  Defendants have repeatedly demonstrated a pattern and practice of bad faith by disregarding HOKC's trademark, attempting to mislead the public for their own enrichment, attempting to extort the HOKC under the guise of a "merger proposal" and disparaging HOKC and its membership when those extortion efforts were rejected.  Such bad faith is further demonstrated by the assertion that Defendants do not recognize the jurisdiction of this Court to provide the relief requested by HOKC, and the proclamation that Defendants' efforts to misappropriate HOKC's Mark will be moved "offshore."

14. For the reasons stated above, HOKC respectfully requests the Court enter the Order Granting Preliminary Injunction tendered herewith.

Respectfully submitted,

*/s/* Cornelius *E. Coryell II*
Cornelius E. Coryell II
Michelle Browning Coughlin
Julie Laemmle Watts
WYATT, TARRANT & COMBS, LLP
400 West Market Street, Suite 2000
Louisville, KY 40202
(502) 589-5235
ccoryell@wyattfirm.com
mcoughlin@wyattfirm.com
jwatts@wyattfirm.com

*Counsel for Plaintiff, the Honorable Order of Kentucky Colonels, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on March 3, 2020, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system. I further certify that a true and correct copy of the foregoing has been served upon the following, via U.S. Mail and via email at kycolonels.international on the 3rd day of March, 2020:

Kentucky Colonels International
c/o Maya-Lis A. Wright
302 General Smith Drive
Richmond, KY 40475

Ecology Crossroads Cooperative Foundation, Inc.
c/o Maya-Lis A. Wright
302 General Smith Drive
Richmond, KY 40475

Globcal International
c/o Maya-Lis A. Wright
302 General Smith Drive
Richmond, KY 40475

David J. Wright
302 General Smith Drive
Richmond, KY 40475

*/s/ Cornelius E. Coryell II*
*Counsel for Plaintiff, the Honorable Order of Kentucky Colonels, Inc.*

100243535