FILED (JS)
US DISTRICT COURT CLERK
WESTERN DISTRICT OF KY

20 MAR -4 PM 1:39

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**LOUISVILLE DIVISION**

| | |
|---|---|
| **THE HONORABLE ORDER OF** ) | |
| **KENTUCKY COLONELS, INC.** ) | Civil Action No. 3:20-cv-132-DJH |
| **PLAINTIFF** ) | |
| ) | **ANSWER TO MOTION FOR TEMPORARY** |
| v. ) | **RESTRAINING ORDER AND** |
| ) | **PRELIMINARY INJUNCTION** |
| **KENTUCKY COLONELS** ) | |
| **INTERNATIONAL, et.al.** ) | |
| **DEFENDANTS** ) | |

I, David J. Wright, defendant, *pro se* under 28 U.S.C. § 1654 comes in representation of myself and other defendants as the president of Ecology Crossroads Cooperative Foundation, Inc., a Kentucky corporation founded by myself in 1994 and the owner of the Assumed Name Corporation, **Kentucky Colonels International (KCI)** the subject defendant named in this case. This appearance is to answer, respond, and defend against the allegations made towards myself and the organization(s) I helped create, develop, form, manage, and administrate, in this action brought by the plaintiff, The Honorable Order of Kentucky Colonels, Inc. (HOKC).

Our organization(s) are a legally chartered, incorporated or unincorporated and constituted as civil bodies in the Commonwealth of Kentucky and other places; I, David Wright the organizations' president, am a US citizen living abroad, legally an expatriate, that represents myself as a Kentucky colonel, a goodwill ambassador for Kentucky, and ambassador of an international organization that is registered with the United Nations as an international civil society organization which promotes and develops charitable programs and humanitarian assistance projects around the world. I currently reside in Venezuela where I work with the

indigenous Piaroa tribe, where we are forming a protectorate to defend their interests to ancestral native territories against the unjustified interests of the Venezuelan government and ex-FARC rebels.

Kentucky Colonels International began its development in 1998 as a fraternal membership and benevolent international civil society organization (iCSO) composed of members who have each been recognized by governors of the Commonwealth of Kentucky for their noteworthy deeds, benevolent activities, community service, and/or personal achievements in their communities, cities, states and nations. The organization was developed to create an Internet service platform for our members to provide them with services such as biography writing, electronic news distribution, websites, email, and now decentralized smartphone access to their own and fellow Kentucky colonels information both publicly and privately. Our platform also provides news and writing services about Kentucky colonels (members and non-members) relative to their deeds and current activities as goodwill ambassadors for the state who are protagonists of their honorable title of Kentucky Colonel using their letters patent as ambassadors in admiralty, common, diplomatic, and international law. We recognize, consider, and view our members as honorary commissioned civilian officers of the Commonwealth of Kentucky who have a voluntary role to fill as goodwill ambassadors in the promotion of the state for the benefit of Kentuckians. All of those living outside of the state in essence have this duty and privilege through their letters patent to promote tourism and economic development on the behalf of the state to make it prosperous and prevalent.

Our decentralized platform operates using Google IDaaS (Identity-as-a-Service) which is connected to our website domain [kycolonels.international] which provides our members with secure email services, social media communications, website services and a great range of other electronic membership services offered through Google and their platform, these are paid premium services provided by Google and our members can subscribe to them. These and other services are similar, but more advanced than the membership services that we provided from 1998 - 2001.

Our organization is developed based on the foundation of the US Constitution in the First Amendment rights to assemble peacefully, the rights of free speech and freedom of the press; which we all

enjoy; the formation of our development is based on the Model Nonprofit Act for Membership Organizations and the US Code of Federal Regulations which defines membership organizations.

> First Amendment: Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the government for a redress of grievances.

In response to the plaintiff's lawsuit and motion today our organization does not produce, market, sell or merchandise any goods or products such as they do through their online store [kycolonelsstore.com], which is owned and operated by Upper Right Marketing, LLC., (an enterprise established for profit). This entity is not established to directly support the plaintiff's charitable efforts like most people believe or may assume, nor is it part of the plaintiff itself, but it is the primary beneficiary of the use of the "KENTUCKY COLONELS" trademark for all the claimed goods and products, this is something they prefer not to share on their own website. There is no mention of HOKC (the charity) on the Upper Right Marketing website, nor any mention of Upper Right Marketing on the HOKC website [kycolonels.org], not even in the fine print of their terms and conditions or privacy disclaimers. Upon detailed review of corporate documents and the websites it is abundantly clear that Upper Right Marketing is not connected, owned or operated by the plaintiff, but is a licensee HOKC trademark(s) and the only company that actually uses their trademarks for the manufacture, marketing, sale, and commercial exploitation of the trademarked products. Any financial benefit in the form of charitable donations to the HOKC may derive from the use of the trademark is purely secondary, yet the HOKC almost daily promotes "the store" in the social media and is on its website, *even more so* than than it promotes receiving donations or requesting them using the trademark.

We have not ever infringed on or used their trademark unless our name itself filed with the Kentucky Secretary of State on January 30th, 2020, may or can be considered to be an actual infringement of the newest trademark they filed on February 17th, 2020 presented in Plaintiff's Exhibit 1 of their motion before the court today; and very much unlike the plaintiff's organization **which does not offer formal membership or membership services** according to page 9 of their Amended and Restated Articles of Incorporation

filed in 1992, which states "The Honorable Order of Kentucky Colonels has no members:". **Our organization does offer membership and membership related services** to our paid and unpaid voluntary participants, which has been free and without cost since we began in 1998, until we formalized our development in January this year. While the HOKC refers to its donors as its members, in the legal sense it does not have any real or **voting members or a membership program**, which affords members control over the organization operations and board members. This is part of the **basis of our defense, because we do**, and their own reason for covertly and publicly attempting to extinguish our organization with such rage, fury, and spite, which will not only harm our members, but will set a precedent for stifling others who are engaged in exercising their rights as American citizens and Kentucky colonels that use their letters patent outside of Kentucky as its goodwill ambassadors. All of our members hold the title in very high regard.

Many organizations have informal members with no true membership involvement, which they may call their members honorarily, but in the context of law and in legal proceedings should not present those members if those members have been disclaimed in legal documents such as the Amended and Restated Articles of Incorporation filed by the plaintiff.

In our opinion, this entire case should be dismissed with prejudice simply based on the fact that the attorney for the plaintiff refers to the members of the HOKC organization so many times throughout this lawsuit and uses the ideal and terminology of referring to members so profusely, in our view he is misleading the court to believe the plaintiff has actual members, who are all in legal terms simply donors. Through the repetitive use of the terminology people are confused and brainwashed into believing they belong to a "membership organization", an "order", a "brotherhood" or "fellowship" which they are not, it is a purely fictional existence in the noosphere and minds of Kentucky colonels and is clearly a contradiction of their own Articles of Incorporation. Their membership, acts of goodwill, philanthropy and good works among other things are presented repeatedly in this lawsuit to act as a smokescreen to cover up a manipulated history of facts that they stand upon, lacks transparency, and creates domination of an ideal that drives their

organization and their store, which is not a charity, based on beliefs that are nothing more than erroneous fact outside of the realm of understanding of academics, historians and legal professionals.

Upon understanding that we were going to formalize our development by offering paid membership, starting an international registry, providing credentials to members, and charging our unpaid members voluntary monthly dues for a more formal and better organized services program, the plaintiff became irate leading to this lawsuit and the Restraining Order already imposed by the court unduly, which has not only harmed our reputation in recent days, but our rapport with many members who also support the HOKC as most do and have for many years. This action has created a dividing line and is currently harming the reputation and goodwill of both organizations, but more so the plaintiff for not using the norms of a civil society that emulate goodwill, fairness, diplomacy, and negotiation tactics to reach an amicable resolution. Moreover the lawsuit itself has taken me away from important work with other endeavors managed by the organization internationally.

We began our paid membership program development days following a rejected a merger proposal for our work product, international membership development, and our efforts online from 1998 - 2001, on Facebook since 2006, and through our website since 2014 where we offered educational and literary information at [colonels.globcal.net], such as downloads from the Library of Congress and the Internet Archive. We currently have a total unpaid membership of 4000+ members. The plaintiff knew about our developing programs, because some of their own staff members planted themselves in the Facebook social media groups where we operate from, which all make clear statements in the descriptions that "we are not affiliated or associated with the Honorable Order of Kentucky Colonels."

While counsel for the plaintiff has chosen to use lots of demeaning adjectives, descriptive terms, accusations, and dubious insinuations about our and my personal character and ethical values, we are choosing to just defend the lawsuit, state the facts and have a fair and impartial hearing today, we have plenty of time before we will need to get to the heart of this matter and set the truth free about one of Kentucky's

best known and beloved charities despite their furious dishonorable demeanor exhibited through their allegations.

### Response to Plaintiff's Motion Section Entitled Factual Background

A. We can admit that while this much of this may be true for their organization, it does not reflect the actual beginning of the of the title of the Kentucky Colonel, the first organizations dedicated to fraternity, or the use of the term Kentucky Colonels in the public domain and further DENY that they hold a right to exclusively guard the mark "KENTUCKY COLONEL" because it predates their own existence for more than 50 years.

B. We can also admit that while the plaintiff depends on its trademark to sell its goods and merchandise, it is not the sole proprietor of the ideal or the "Order of the Kentucky Colonel." There are at least 12 or more organizations worldwide that support the ideals of Kentucky colonels that are based on motives other than charity or showing deference exclusively to the plaintiff's organization, most notably membership of fraternal and civil societies. As well there are organizations such as Kentucky Colonels Clubs that existed before they did in the late 19th and early 20th centuries between 1890-1920. Again as aforementioned in the introduction to this answer in pleading we DENY that the plaintiff has members in any legal sense or depends on their mark for our own specific purpose or use. As a charity, they depend more on their charitable giving programs and the traditional generosity of Kentucky colonels that they constantly attempt to instill, than they do on the trademark to sell goods through a connected enterprise which perhaps does depend on the mark, who are not present in their lawsuit, which helps them emulate their image.

C. We DENY using or having used the HOKCs trademarks for any purpose, all of their trademarks are established based on the sale and marketing of goods and merchandise. While our website made these statements in the plaintiff's Exhibits 2 and 3, we attest that we are a new organization in our most recent presentation as a paid membership organization, we can also state that we can and will be

allowed in 2020 to receive donations for the purposes we have given and stated. Although at the time that this lawsuit was filed and this motion for a TRO was granted, we had not yet received any contributions or donations using the specific links mentioned by the plaintiff. All of the statements made in our blog and the editorial that I wrote are based on truth, facts and our freedom of speech as authors and writers reporting information of public interest independently. Moreover as a voluntary donor to the HOKC, I personally maintain rights to investigate, criticize and publish the information I have found, based on facts and reliable sources, such as well known news reports and documents stored on government servers which are all cited and linked in my editorial so readers can verify my claims.

D. We ADMIT that we are not currently recognized by the IRS as a tax-exempt organization, there are no statements indicating that we are currently, however we were and are in the process of reacquiring this status since we were reinstated and acquired our letter of good standing from the Secretary of State. Doubting our good faith and honorable intentions does not better the position of the plaintiff. Once again, we have not actually received any qualifying donations or contributions other than small fees that have been provided by members for Internet services who are members or officers of Globcal International for their own websites, which I assist in developing and setting up for them. Kentucky Colonels International has received less than a total of $250 in donations since we began, the IRS does not require compliance until much more is collected or donated.. We DENY that this is a <u>matter of fact</u> that is relevant in this case as it comes under the jurisdiction of a separate Federal Agency, the IRS, which has its own investigators and courts, and it is an issue that involves US citizens reporting these allegations for their follow-up, their allegations here are simply meant to deviate from the facts and compound the workload of the court.

E. We DENY trying to misappropriate anything belonging to the plaintiff, this is simply false and is now in reverse, they are trying to misappropriate our intellectual property, which we disclosed to them in our Merger and Consolidation proposal to jointly combine our organizations so that we could assist

them in implementing technology, in getting recognition for our ideas, and implement an international membership program which protects and distinguishes the charitable element and their other enterprise the Kentucky Colonels Store. It is secure technology which they lack and our members want, which would allow Kentucky colonels to use, such as a smartphone app and other technology. Neither did we demand that they sign a Non-Disclosure Agreement, but an NDA is good to have and is best practice for negotiating these types of agreements especially when they involve intellectual property. Their flat out rejection of the merger agreement that was submitted in good faith and was negotiable, demonstrates their unwillingness and misguided values they call their own goodwill which is contradictory to the values of our civil and lawful society, and the values of Kentucky as a whole that emulate friendliness, cooperation and hospitality.

F. We DENY launching a social media campaign or publishing works online that intentionally disparage or demean the plaintiff, all of the information published was respectful and factual creative editorial works to define ourselves distinctly from them, promote our programs and reveal the things that we believed were wrong with the deference shown by a former Governor and impropriety in which they are engaged. I revealed information about their "good ole boys" network accustomed to under the table dealings with the Governor and the Kentucky Colonel Commission, which in essence belongs to the State of Kentucky, previous Governors, and Kentucky colonels themselves. I exposed how Kentucky privacy laws were being violated by giving information to a private charity, which is engaged in or has a right to sell the information to other third parties. My work is objective criticism, which I am entitled to provide and display as an American citizen and a Kentucky colonel under the US Constitution. The plaintiff acts as if they own and control all rights over what being a Kentucky colonel is and what a Kentucky colonel is supposed to do, however this is simply not their exclusive right. We use the award in much higher esteem than they have or emulate to their donors as a private charity.

### Summary Response to the Plaintiff's Argument, Paragraphs A-D, and our Conclusion

The HOKC is not entitled to a Restraining Order or Injunctive Relief against Kentucky Colonels International, et.al. The plaintiff's presentation and our presentation are very different from one another, their representation of our website crying foul to the court is based on our own demonstration of the title as a high and notable honor that can be used in citizen and goodwill diplomacy and as a brevet in other countries are all matters of distinguishing it for what it is as a high civil honor and commission to the staff of the governor as an honorary civil officer  They do not hold a patent or mandate over the ideal of the Kentucky Colonel title as an honor, over its history, or its interpretation, nor can they represent its creation as their own intellectual property.

There were at least 3 other organizations that used the words ``Kentucky Colonels" 20-25 years before their organization was founded in Louisville, Dallas and Chicago, perhaps more if we dig around in the State Archive around the dates before the automobile became prolific, when the award was more localized to Frankfort. Their reclaimed founder or charter namesake, Governor Sampson was emulating an ideal he and 8 governors previously had inherited from Governor William O'Connell Bradley who was given the title of Colonel as an acquired nickname by friends in Somerset, Kentucky after being pulled out of the Civil War twice by his father, and used it to build a prestigious career and earn a Honoris Causa Degree in Law from the Kentucky University (now known as Transylvania University). Their plaintiff's organization is not, nor does it want to become a state mandated agency, they are a private charity which has borrowed the ideal from history to create their commercial enterprise and charity around a concept. While they may currently hold trademark rights over "KENTUCKY COLONELS", the trademark, for the sale of goods like tobacco, clothing, keychains, pins, chocolate, and barbeque sauce under USPTO registration and for licensing to others to make goods and products, their trademark, KENTUCKY COLONELS also refers to human beings and does not represent them as a whole, all Kentucky colonels enjoy the right and privilege to call themselves the same in general speech, social communication, in writing, and in reference to themselves in civil societies.

The plaintiff cites Governor Isaac Shelby as making the first commission of a Kentucky colonel in 1813 to Charles Todd, when in actuality it was the State Legislature that made the first commission that year to Richard Mentor Johnson to lead a state militia command, he later went on to be the 9th Vice President of the United States. Issac Shelby did not commission Charles S. Todd until 1815, nonetheless the plaintiff uses the date 1813 for the commencement of the tradition as a civil honor started by Isaac Shelby expressed on their logo. These and other facts are readily available to any historian or competent researcher.

The Honorable Order of Kentucky Colonels is seeking to dominate something that they borrowed from time and history which does not belong to them, they adopted the term and ideal, not vice versa. The very ideal of barring or interfering with a United States citizen who is a Kentucky Colonel from starting his own club of Kentucky colonels who are his friends and allies is ridiculous and has no merit, because it cannot be prevented, it should not continue. This lawsuit should be dismissed and the TRO dissolved for pursuing us and attempting to cripple us with these allegations, for selling something which we are not. The facts I am stating are things that they cannot change or pursue under law with any legitimacy; it is something they cannot change, without giving up their charity, reforming their organization and coming clean with Kentucky colonels that the products and merchandise they sell through their store does not benefit the charitable efforts of their organization. This action and previous actions, such as those brought against the basketball team the "Kentucky Colonels" in *Honorable Order of Kentucky. Colonels v. Bldg. Champions, 345 F. Supp. 2d 716 in 2004* (and lost) are ridiculous and demeaning to the title of Kentucky Colonel, all of which are aimed and calculated attempts to bring a term that exists in the public domain under their sole ownership and control to restrict the civil liberties of others who are Kentucky colonels. .

The day after filing this lawsuit, the HOKC admitted they collaborated with the Governor of Kentucky, so that now anyone from anywhere can nominate someone to become a colonel, in private talks with the Governor who represents the organization as its commander-in-chief, whom we doubt is even fully aware that the charity is being used to protect a marketing company held by a for profit LLC, but perhaps their top officer is being implicated in their operation unfairly. The discussion the HOKC has with the

governor did not involve any substantial representation from those holding the award with the exception of HOKC staff, so now instead of just Kentucky colonels making nominations which has been a standing tradition since the 1800's anyone can nominate, the current Governor has taken away an important traditional entitlement that has upset many colonels who use their recognition as colonels to recognize others who are noteworthy at their own discretion. Now the world may end up with many, more Kentucky colonels perhaps millions, instead of tens of thousands, a big boost to perhaps for their charity, but a bigger boost for the store which is operated by the for profit unaffiliated LLC, which degrades and will gradually remove the prestige, honorability, and uniquity associated with bestowing the award to other Kentucky colonels themselves by making the award commonplace and tongue-in-cheek.

Attempts to settle the matter with them or work out an arrangement of mutual benefit have resulted in more aggressive actions including making addendums to the court to exert rights they do not have over civil society or over Kentucky colonels as a charity or trademark holder. Our organization has even withdrawn our Assumed Name registration for "Kentucky Colonels International" and changed our name to "Kentucky Colonel Foundation" which does not potentially violate any of their commercial trademarks, (their counsel replied to this by saying it was an even greater violation of their trademark rights, which we do not understand) we will see if it provokes new attempts or aggressivity by them to eliminate us. It has also resulted in our the newly renamed organization to declare itself as an offshore foundation under laws where they have no jurisdictional rights so that we can enjoy freedom as a civil society organization as which we were formed. Apparently the plaintiff will not be satisfied with any name we choose which involves what we really are "Kentucky colonels" or permit us to assemble civil society peacefully, but that is not their choice nor the choice of the US courts, because as a private charity they cannot use a US trademark to control a state award or recognition granted by the governor or previous governors.

We are still willing to negotiate with the plaintiff if they agree to play fairly and show some sense of respect for our 20+ years of work and development plus the damages they have created though their short sided media campaign and this lawsuit. There are many practical solutions to explore, but none of them start

with our limitation or their total control, this is an honor not a marketing ploy to derive profits by using Kentucky colonels themselves.

The HOKC is misconstruing our honorable intentions, has manipulated history to benefit themselves, they even created a logo based on an inaccurate history using the date of 1813, they do not demonstrate transparency, are trying to dominate the American mindset, is conducting a witch hunt against its own donors, is using the courts inappropriately, is confounding this court with irrelevant evidence and exhibits to plant seeds of doubt, they are trying to lead the court to believe in mistruthful accounts about non-existent membership, they are putting the Commission of the Kentucky Colonel at risk by diminishing its importance and formality to change its meaning, they are attempting to smear the goodwill of our organization which includes 4000 of their own donors, does not respond appropriately to public criticism or discourse initiated by our journalism, and has demonstrated a "mightier than thou" attitude to stifle and suppress our civil and constitutional rights as a duly formed fraternal association and benevolent civil society. Their presentation of their noteworthy work, excellent record, and charitable efforts do not outweigh the law or the Constitution of the United States; instead they are using these things such as trademark infringement to guard themselves as their reasoning behind the violation of our rights and the freedom of the press to pursue our goals.

In addition to the above, we believe that the plaintiff is using the charity as a cover to protect the interests of Upper Right Marketing, which is the <u>primary beneficiary of their trademark</u> which does not appear anywhere in this lawsuit, in any of the 600 submitted pages. We reserve as a civil association, an independent social media developer and news provider all of our freedoms under the US Constitution and rights to continue to pursue this matter lawfully and ethically until every Kentucky colonel understands the truth, which I have presented herein.

We should note that we are not cybersquatting nor misappropriating anything from the plaintiff not even our own domain name [kycolonels.international] which was selected for convenience and to represent who we are based on its availability, currently there are many domains available such as [kycolonels.store] which the HOKC should have used rather than [kycolonelsstore.com] for their own store which is apparently

not even theirs, most nation-state extensions and many others are available using [kycolonels]; it is common practice for companies that have a brand or mark they want to protect to buy and secure all of these domain name extensions such as companies like Amazon, Google, Microsoft and many other brands to promote their marks and companies.

We pray that this court receives this defense plea based on our good faith and in the interest of fair, equal, and adequate justice for all the persons involved in this matter in consideration of these pleadings and these facts as they have been presented.

### Answer to the Plaintiff's Third Supplement to Motion For Injunction

The defendant was in full compliance within 24 hours with the plaintiff's demand as stated in our emails with the plaintiff on February 26th, and within 48 hours after the Temporary Restraining was issued by the court on February 25th, we were in full compliance which we consider a reasonable amount of time. Despite this in an email sent by the plaintiff after he filed this supplement, the plaintiff attempted to get us to remove our website and blog completely which was not stated in the judge's order. The plaintiff decided to file this supplement and review our website in less than 24 hours we agreed to in our notification to comply with the order, and filed this Third Supplement. This is all evident by reviewing the plaintiff's supplement and its exhibits. This defendant was not receiving or soliciting donations nor had any donations been received between the time of the issuance of the Restraining Order by the court or the removal of the donations links as of 12:20 PM on February 27th, 2020.

### Conclusion and Motion

Based on this pleading and this sworn Answer presented to the court for this Hearing today we move for the court to dissolve the Temporary Restraining Order and strike the plaintiff's motion for a Preliminary Injunction considering our pleading to grant us relief to conduct our operations normally and permit us to

receive donations from our current members and accept new members from our website, blog and on Facebook, with our clear and ever present disclaimers of non-association and non-affiliation with the plaintiff and our own unique color scheme which is not confusing and does not implicate any relation to the plaintiff, but solely to the award and individuals who have received it.

I declare under penalty of perjury that the foregoing is true and correct.

Caracas, Venezuela
Dated: March 02, 2020

*[Signed: Col. David J. Wright]*

David J. Wright
Edificio Torre 997, Local B
San Juan, Caracas
Distrito Capital, Venezuela 1021
david.wright@globcal.net
+58 (426) 111-0529

## Certificate of Service

I hereby certify that on March 02, 2020 this Motion was delivered by email with a delivery receipt to the plaintiff and was sent via US Certified Postal Mail to the Clerk of the Court on March 02, 2020 before 5:00 PM and should reach the indicated destinations in time for the Hearing scheduled on March 04, 2020.

Clerk's Office
601 W. Broadway, Rm 106
Gene Snyder United States Courthouse
Louisville, KY 40202

*[Signed: David J. Wright]*

FROM:

Maya-Lis Wright
Registered Agent
Ecology Crossroads, et.al
302 General Smith Drive
Richmond, KY 40475

**CERTIFIED MAIL**

7018 1830 0001 2293 3512

RETURN RECEIPT REQUESTED

U.S. POSTAGE PAID
FCM LG ENV
BEREA, KY
40403
MAR 02, 20
AMOUNT
$8.60
1000   40202   R2304M116618-06

TO:

United States District Court
Western District of Kentucky
Clerk's Office
601 W. Broadway, Rm 106
Gene Snyder United States Courthouse
Louisville, KY 40202

FILED
VANESSA L. ARMSTRONG, CLERK
MAR - 4 2020
U.S. DISTRICT COURT
WESTN. DIST. KENTUCKY

20 MAR -4 PM 1:39