## EXHIBIT 1 DEFENDANT

## Affidavit of Facts

### Affidavit from Col. David J. Wright, Defendant, in Pro Se

This is a true and verifiable Statement of Facts presented in the following Affidavit and Declaration which we (I) hereby attest to before the US District Court in the Western District of Kentucky, these are all facts we intend and hope to present in this matter which can be argued, litigated, and proven to the court in a fair-trial or litigated proceeding in this court or a civil mediation of the State, if we are so permitted to present them and defend against the claims made by the Plaintiff:

1. We have no financial resources to defend ourselves in this action at this time, we have not been given ample opportunity to seek counsel based on our resources, nor have we had adequate time to raise funds sufficient to defend this action.

2. The counsel for the Plaintiff at the time this Affidavit was prepared submitted three supplements consisting of almost 500 pages within one week of filing the initial complaint of over 100 pages.

3. All of us are Kentucky colonels and we want to have a membership organization for Kentucky colonels other than the honorary membership and donor program offered by the Plaintiff, we are willing to defend this matter under US law.

4. Many of us, but not all of us are citizens of the United States.

5. There are more than 10 other organizations in the world that use the Plaintiff's alleged standing trademark(s) which are civilly constituted in their countries other than the United States, and there are several others in Kentucky unrelated to our organization or the Plaintiff's.

6. We started our initiative in 1998 to form a civil society online and were the first online.

7. At the time we first established our organization it was done with full knowledge of the Plaintiff who was not interested in being on the Internet.

8. Based on our research and investigation in 1998, the Plaintiff did not operate an organization that has members, and still on this very day does not operate an organization that is civilly constituted by members as a membership organization or civil society, this is clearly stated in their Amended and

Restated Articles of Incorporation filed in 1992, which states it has no members. It further states that if it had members that those members would be non-voting members without rights.

9.  Based on newspaper articles from the Courier-Journal and other newspapers prior to our development and the development of the Plaintiff in 1931/32, we discovered that there were more than three organizations founded and meeting regularly in the United States that were once based as fraternal clubs and civil societies promoting ideals, functions and activities we proposed to reform beginning in 1899 through 1913 using the term "Kentucky Colonels" to describe themselves making it a term that exists in the public domain which we were free to use.

10. In 2001, the Plaintiff stopped our operations as [colonel.org] when they wanted to dominate the Internet as their own exclusive playing field and territory after we were already operating for three years with a threat letter from their legal counsel.

11. In 2006, a civil group of individual Kentucky colonels not related to the Plaintiff began a social group on Facebook for networking purposes disclaiming any affiliation with the Plaintiff.

12. In 2009, another group "Kentucky Colonels on Facebook" of users not related or associated to the Plaintiff started a similar civil society users group online.

13. In 2009, after being made an administrator of the first aforementioned group in 2008 I restarted the organization from 1998 online in Facebook as "Kentucky Colonels International".

14. In December 2015, the plaintiff came on Facebook for the first time.

15. In 2016, we received an email from Plaintiff's counsel threatening us that we were confusing the public with our presence on Facebook which did not use their logo, insisting that we post a better disclaimer in our page description, we complied.

16. In 2018, myself and others were made administrators of the second aforementioned Facebook group created in 2009, which already had a disclaimer as to their non-affiliation with the Plaintiff.

17. In 2018, we were approached by the Plaintiff indicating they were interested in our efforts and were willing to assist our development of a registry during the calendar year of 2019.

18. In 2019, we began to better formalize our development as a civil society of Kentucky colonels not associated with the Plaintiff and began a Registry of Kentucky colonels.

19. Upon beginning our membership registry the first respondent was the Executive Director of the Plaintiff organization who sent us 33 Euros, but did not complete the registration procedure. The second respondent was Col. Luis Cruz Diaz, one of our own members.

20. Three days following the announcement of the Registry the program was halted due to technical problems, the Registry has not been online since.

21. On the last day of 2019, I contacted the Plaintiff to request their support as they indicated they would assist with the previous year and they expressed an interest in assuming our organization and programs indicating I should make a formal proposal for consideration by their Board.

22. On January 13th, 2020, we presented an offer to the Plaintiff to assimilate and merge our effort to develop our membership program for international Kentucky colonels under their authority.

23. On January 20th, the Plaintiff rejected our offer to merge our development and 20+ years of work efforts to form a decentralized autonomous membership program using technology.

24. On January 20th, based on an online meeting with our senior members we decided to move forward with our plans to formalize our membership organization based on the Plaintiff's refusal to accept or negotiate our merger proposal.

25. On January 21st, we reinstated an organization which I established in 1994 with its powers as a non-profit corporation with the purpose of presenting ourselves legally in the public sector and received a 'Letter of Good Standing' and Certificate of Existence from the Secretary of State.

26. Upon reinstatement we created a domain name to represent Kentucky Colonels International online using the Internet similar to other organizations that have Kentucky colonels including the Plaintiff and other organizations located in Europe and unknown others based on domain name availability, "kycolonels.international"

27. On January 27th, we updated the Registered Agent address so that legal service could be delivered to the organization.

28. On January 30th, our organization incorporated the Assumed Name Corporations of Globcal International and Kentucky Colorels International after assigning members commissions to develop them as independent organizations from our own.

29. On January 30th, Kentucky Colonels International launched its website and a blog for its unpaid members and announced our efforts to form and develop our organization legally under US law..

30. On February 7th, I wrote an editorial based on verified research, facts and our perspectives relative to our mission distinguish ourselves as an independent membership organization and inform others that the Plaintiff does not have any members according to their Article of Incorporation and to further inform Kentucky colonels that we are separate and unrelated entities.

31. On February 8th, we sent a news release to the Kentucky media based on the January 30th and February 7th blog posts and published the news release as a blog post.

32. On February 10th, the plaintiff lashed back on the social media with false, unsubstantiated, insinuations and disparaging remarks about myself and the organization I founded in 1994, which was legally incorporated and in good standing. The Plaintiff did not address any of the issues raised by the editorial, the news release or any of the claims made towards our distinct differences in the interest of Kentucky colonels, referring to the article and news release as gossip and rumor, their approach was not civil or based on any goodwill.

33. On February 17th, the Plaintiff filed a trademark for "Kentucky Colonels" for associations, overriding their knowledge of our existence and intentions done in bad faith based on their own knowledge of our existence, and the existence of other associations.

34. On February 20th, the Plaintiff brought this civil lawsuit to the US Court.

35. On February 21st, the Plaintiff filed a motion for a Temporary Restraining Order to override our constitutional rights of free speech and the right to assemble peacefully.

36. On February 24th, the plaintiff attempted to verify that the civil service occurred and could not find the Registered Agent at the address at that moment. In response to not being able to serve their papers, that same day at that time, they created another second addendum to the court, seeking a Temporary Restraining Order.

37. On February 25th, the Honorable Judge granted the plaintiff a Temporary Restraining Order based on the information they presented from their single attempt to serve us and belief that we were causing harm to them by intercepting funds meant for their charity.

38. On February 26th, the counsel for the plaintiff contacted me in Venezuela demanding that I comply with the TRO issued on the previous day.

39. By noon on February 27th, our organization complied with the TRO to respect the court order by removing our donation page and changing our name so that it would not include their registered trademark from February.

40. On February 27th, the Plaintiff filed another addendum which includes our attempts by email to resolve the matter amicably and negotiate an agreement instead insisting that we had not complied with the TRO in any timely manner as ordered by the court.

41. On February 27th, we filed to cancel and abandon our Assumed Name Corporation registration with the Kentucky Secretary of State based on our decision to change our name so that it does not interfere directly in any way with the 4 trademarks held by the plaintiff "Kentucky Colonels" including the trademark that they filed for associations following our Assumed Name Corporate registration.

42. Our organization remains as a 4,000+ member, now "unincorporated civil society" of Kentucky colonels now called the "Kentucky Colonel Foundation" which does not interfere directly with the merchandising or commercialization of the Plaintiff's trademark with a mission specific to its own members organized for fraternal and civil purposes.

43. As the Defendants we have tried to work out an amicable agreement presently and in the past to either merge our now 20+ years worth of efforts to form a genuine fraternal membership organization that serves the needs of Kentucky colonels directly as Kentucky colonels.

44. We changed our name and moved our decentralized Internet based organization offshore to remove ourselves and distinguish ourselves better internationally from the plaintiff on February 28th.

45. All of our faith in God, the United States and Kentucky are made in good standing as Kentucky colonels from around the world that cherish the honorability of the commission who have formed a civil society organization, we have not demonstrated any malicious or dishonorable intent toward the plaintiff.

I, David J. Wright, Kentucky colonel and American citizen swear under penalty and perjury that the superscribed 45 statements are true and verifiable declarations of fact, to the best of my recollection and memory. .

Col. David J. Wright

David J. Wright
Edificio Torre 997, Local B
San Juan, Caracas
Distrito Capital, Venezuela 1021
david.wright@globcal.net
+58 (426) 111-0529