UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

*Electronically Filed*

| | |
|---|---|
| THE HONORABLE ORDER OF ) | |
| KENTUCKY COLONELS, INC. ) | |
| ) | |
| PLAINTIFF ) | |
| ) | |
| v. ) | CIVIL ACTION NO. 3:20CV-132-RGJ |
| ) | |
| KENTUCKY COLONELS ) | |
| INTERNATIONAL, et al. ) | |
| ) | |
| ) | |
| DEFENDANTS ) | |

## **PLAINTIFF'S RENEWED MOTION FOR PRELIMINARY INJUNCTION**

Contrary to Defendants' assertions, the Honorable Order of Kentucky Colonels ("HOKC") did not initiate this litigation to destroy the Defendants or "beguile public opinion."[1] HOKC has invested nearly a century in developing the goodwill behind its KENTUCKY COLONELS Mark, and Defendants are using that Mark to lend authenticity to an organization which, by its own admission, is dedicated to promotion of the "careers and successes" of its individual members. Such self-promotion for personal financial gain is completely inconsistent with the mission of the HOKC and contrary to the historical use of the KENTUCKY COLONELS Mark. It is particularly harmful to HOKC's reputation since the parties misappropriating the Mark have a documented history of misrepresenting their tax exempt status, disregarding corporate formalities, and ignoring statutory filing requirements.

---

[1] Defendant's Motion to Dismiss [**DE 37**, PageID # 837].

Despite the Court's entry of the February 25, 2020 Temporary Restraining Order **[DE 14]** (the "TRO"), and two subsequent extensions of the TRO through and including May 22, 2020, Defendants continue to infringe on HOKC's trademark, irreparably damaging its goodwill and tarnishing its name. In fact, the only thing that has changed since entry of the TRO is that the infringement is now taking place under the name Kentucky Colonel Foundation rather than Kentucky Colonels International; a misappropriation of Plaintiff's KENTUCKY COLONELS Mark which, as the Court recognized, merely "exacerbate[s] the situation" making the "distinction between the two entities even less clear…." [3/23/20 Order **[DE 32]**, PageID #821 and #822]. In addition, Defendants are now using a domain name, **kentucky.colonels.net**, that brazenly defies the TRO by specifically incorporating the KENTUCKY COLONELS Mark.[2] Among other things, the use of that domain name violates the Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1125, *et seq*. For these reasons, Defendants should be enjoined from further infringement on the KENTUCKY COLONELS Mark and from using *any* domain name that incorporates that mark or is confusingly similar to HOKC's domain name.

## PROCEDURAL BACKGROUND

On February 20, 2020, HOKC filed its Verified Complaint alleging that Kentucky Colonels International ("KCI") and its affiliates are misappropriating HOKC's protected KENTUCKY COLONELS Mark to solicit funds, offer services, and engage in commercial enterprises for their own enrichment **[DE 1]**. HOKC further alleged that KCI and the other Defendants are using the internet and social media to confuse the public, leverage HOKC's goodwill, and profit from HOKC's protected Mark in violation of the Anticybersquatting Consumer Protection Act. [*Id***.** at

---

[2] The former domain name used for Defendants' website, **www.kycolonels.international**, also links to Defendants' website. As previously established, that domain name is confusingly similar to HOKC's domain name, **www.kycolonels.org**.

PageID #13]. HOKC sought injunctive relief, and the TRO was granted on February 25, 2020 **[DE 14]**. An evidentiary hearing on HOKC's motion for preliminary injunction was held on March 4, 2020 **[DE 22]**. Defendants failed to appear at that hearing. **[*Id*.]**. After recusal of Judge David Hale, the case was assigned to Judge Rebecca Grady Jennings **[DE 25]**. By Order dated March 9, 2020, the Court extended the TRO pending consideration of newly filed materials by Defendants as well as the proof submitted at the hearing [**DE 28**]. On March 20. 2020, HOKC moved for a second extension of the TRO **[DE 31]**. By Order dated March 23, 2020, that motion was granted and the Court provided Defendants with sixty (60) days to "obtain counsel, file an answer, counterclaim, or any brief in opposition to Plaintiff's motion for preliminary injunction…" [**DE 32**, PageID #822].[3] That generous grace period has now expired and no additional response to the injunction motion has been filed. Moreover, the Corporate Defendants have not answered or otherwise responded to the Verified Complaint as directed by the Court. The Corporate Defendants are, therefore, in default.[4]

## SUPPLEMENTAL FACTUAL BACKGROUND[5]

### A. The Court Has Recognized the Strength of HOKC's Mark.

The TRO **[DE 14]** and the March 23, 2020 Order **[DE 32]** acknowledge that HOKC has shown a strong likelihood of prevailing on its claims. Among other things, HOKC has established

---

[3] Defendant David J. Wright purportedly responded to the Verified Complaint and preliminary injunction motion *pro se* on behalf of himself and Defendants, Kentucky Colonels International; Ecology Crossroads Cooperative Foundation, Inc.; and Globcal International (collectively "the Corporate Defendants"). Because Wright is not licensed to practice law, the Court ruled that he may not appear on behalf of the Corporate Defendants **[DE 32]**.

[4] A motion for entry of default judgment against the Corporate Defendants **[DE 38]** was filed immediately prior to the filing of the instant motion.

[5] HOKC incorporates herein by reference the factual background, supporting documents, affidavits, and other record proof tendered with its Verified Complaint **[DE 1]**, Motion for Temporary Restraining Order and Preliminary Injunction **[DE 7]**, Supplement to Plaintiff's

that it is a nonprofit tax exempt organization founded in 1931 and comprised of recipients of the title of "Kentucky Colonel," an honorary title bestowed on individuals by the Governor of the Commonwealth of Kentucky [3/23/20 Order **[DE 32]**, PageID #809]. HOKC has further established that it raises funds through direct charitable solicitations and the sale of merchandise bearing the KENTUCKY COLONELS Mark [*Id.*]. As a result of those efforts, HOKC has donated almost $29 million to various nonprofit organizations in the Commonwealth of Kentucky over the last twenty (20) years [*Id.*]. HOKC obtained and registered several trademarks for the KENTUCKY COLONELS Mark in 2004, registered its mark for use of "Honorable Order of Kentucky Colonels" in eleemosynary and charitable services in 2016, and applied to register the KENTUCKY COLONELS Mark for social-club and association services in February 2020 [*Id.*]. These factors, among others, led the Court to conclude that "the time the mark has been in use and the mark's distinctive character" support HOKC's assertion that it has a "strong mark." [*Id*. at Page ID #816].

    **B.**    **Litigation Became Necessary After Defendants' Unsuccessful "Shakedown" Attempt.**

Defendant David J. Wright is President, Director, and Incorporator of Defendant Ecology Crossroads Cooperative Foundation, Inc. ("Ecology Crossroads"), a Kentucky corporation which, until recently, operated under the registered assumed name Kentucky Colonels International ("KCI") [**DE 7-11**, PageID #319].[6] In late 2019, Wright began soliciting customers for a "registry"

---

Motion for Temporary Restraining Order **[DE 13]**, Second Supplement to Plaintiff's Motion for Temporary Restraining Order **[DE 18]**, Reply in Support of Plaintiff's Motion for Preliminary Injunction **[DE 21]**, and Plaintiff's Response to Defendants' Motion to Dismiss or Continue with Extension of Time **[DE 27]**.

[6] Ecology Crossroads was originally registered to do business in the Commonwealth of Kentucky in 1994 [**DE 7-11**, PageID #317]. Over the last 25 years it has been administratively dissolved on at least three occasions [*Id.* at PageID #316-17]. It was last dissolved on October 12, 2012 and only recently reinstated on January 21, 2020 [*Id.*]. Ecology Crossroads also operates under the

of individuals who had been commissioned as Kentucky Colonels [**DE 1**, PageID #6]. Shortly thereafter, Wright approached HOKC to determine whether HOKC would "either assist us in our project or perhaps merge our membership program into their own organization." [**DE 7-2**, PageID #214].

While Wright professes to be indigent **[DE 36]**, the twenty-six (26) page presentation and "merger proposal" he submitted to HOKC was extraordinarily sophisticated. [*See* **DE 6**]. Among other things, the agreement required HOKC to change its name, amend its bylaws, and make numerous representations and warranties to the Defendants. [**DE 6** at pgs. 14-21]. More importantly, the proposal required generous financial payments to Wright, KCI, Globcal, and Wright's son. Specifically, the agreement stated:

> **1.6 Conversion**. At the Effective Time, by virtue of the Merger and without any action on the part of [Defendants], [HOKC] shall:
>
> (a) Assign an [sic] designated representative from [HOKC] as a founding member of [KCI's] organization's [sic] 'Former Parent' for life, [HOKC] will pay the one-time membership patronage of $5,000.00 via PayPal to have their representative assigned as a Goodwill Ambassador for Globcal International.
>
> (b) Execute a notice of funds held in [HOKC] treasury to [KCI] evidenced with a letter welcoming the Proposal and Agreement, the signed Agreement, and the delivery of a cashier's check for $100,000.00 USD to the [KCI] designated ambassador who is a Kentucky Resident and known as Globcal International's Treasurer, Col. Nicholas A. Wright, who will be responsible for its distribution and reinvestment within Kentucky under the direction of Globcal International.
>
> (c) Engage Col. David J. Wright, the Executor Officer of [Defendants] as an independent contractor, technology developer, and professional social media consultant for a period of 12-18 months under the terms of the attached Contract Agreement with a weekly salary paid in advance each week of $500.00 USD via PayPal.
>
> (d) Provide an international development fund for the Merger, Acquisition, and Consolidation membership products and services under its authority for the

---

assumed name Globcal International ("Globcal") [*Id.*]. The corporate bylaws of Ecology Crossroads do not mention the Kentucky Colonels or KCI [*Id.* at PageID #342-46].

ongoing development of information, communications technology (ICT), Internet or website enhancements and social media advertising of $2,500 per month via PayPal.

[**DE 6**, pgs. 16-17].[7] While Defendants now suggest that KCI was somehow lured in to submitting this proposal [**DE 37**, PageID #835], that assertion is completely undermined by the comprehensive scope of Wright's proposed merger agreement and the scale of his financial demands.

HOKC reasonably interpreted Wright's proposal as a "shakedown … and a threat to the Honorable Order." [**DE 29**, PageID #784]. Consequently, the proposal was rejected. Wright then advised HOKC that he and KCI intended to "move forward with our program and the formalization of the KCI agenda," which included solicitation and marketing of products, services, and charitable contributions using the KENTUCKY COLONELS Mark. [**DE 1**, PageID #7-8].

### C. Defendants Have Aggressively Utilized the Internet to Pursue Their Campaign of Infringement.

Wright administers a website originally operating under the name "Kentucky Colonels International" (the "KCI Website").[8] The initial domain name for that website,

---

[7] The merger proposal was also introduced as an exhibit at the March 4, 2020 hearing.

[8] KCI also maintains a public Facebook page **[DE 7-6]**. The public Facebook page previously used the username "Kentucky Colonels International" and handle "@KentuckyColonels." [*Id***.**]. Sometime after February 26, 2020, the name on the KCI Facebook page was changed to "Kentucky Colonel Foundation" and handle "@kycolonelfoundation." [**DE 21-1** at PageID #668]. KCI's public Facebook page, and specifically its handle is confusingly similar to HOKC's public Facebook page and handle "@kycolonels" and user name "Honorable Order of Kentucky Colonels" [*Id*. at PageID #668]. Like the KCI Website, the Kentucky Colonel Foundation Facebook page touts the group as Kentucky's "goodwill ambassadors" and states "because they are issued letters patent by the head-of-state colonels are legally charged with promoting the interests of the state, tourism, economic development and its prosperity under the duly elected Governor." The Facebook page further adds "colonels are found frequently to become involved in volunteerism and community service with non-profit causes and events inside and outside of Kentucky."

**www.kycolonels.international** was registered on January 20, 2020. [**DE 1**, PageID #13].[9] True to Wright's promise to compete with HOKC, the KCI Website solicited contributions for the "Kentucky Colonel's International Fund" and stated that such donations could be made "using a major credit card or your PayPal account." [**DE 7-3**, PageID #243]. The KCI Website described the purposes for which donations to the organization would be used, explaining that those funds would "promote the careers, individual growth … and champion the success of Kentucky Colonels all over the world…." [*Id*.]. The website further stated that donations would "support the work of the Goodwill Ambassador Foundation and other programs developed by Kentucky colonels [sic]…." [*Id*.]. Finally, the website falsely represented that donations to KCI were tax deductible. [*Id.*].

In addition to soliciting donations to "promote the careers" of its patrons, the KCI Website offered various services to members for a fee. For example, the website promoted "public relations services" as well as an "International Registry of Kentucky Colonels" which entitles subscribers to a "certificate of registration, a lifetime ID card, and additional Internet services …." [*Id.* at PageID #229-31]. The website promised "those who register their title (letters patent) can also demonstrate themselves through a permanent web page which we will develop and maintain on their behalf that is linked to our roster…." [*Id.* at PageID #230].[10]

---

[9] That domain name is confusingly similar to HOKC's domain **www.kycolonels.org**. [*Id*.].

[10] KCI also maintains a dedicated blog site at **blog.kycolonels.international** which provides another platform for Wright to misuse the KENTUCKY COLONELS Mark as well as seek donations for his organization **[DE 7-5]**.

7

D. **Defendants Have Blatantly Defied the Orders of this Court.**

Sometime after entry of the TRO, the name on the KCI Website was changed from "Kentucky Colonels International" to "Kentucky Colonel Foundation." [**DE 21-1**, PageID #668].[11] In addition to changing the name of the KCI Website, Defendants also registered a new domain name, **colonels.net**.[12] The sub-domain name **kentucky.colonels.net** links directly to the KCI Website, which acknowledges that it is still operated by KCI by stating "Kentucky Colonels International, is now known as the Kentucky Colonel Foundation as of February 26, 2020…." [*Id.* at PageID #676].[13] The website continues to tout the group as "Kentucky's Goodwill Ambassadors," describes the history and background of "the prestigious Order of the Kentucky Colonel," and deceptively creates the impression that the organization has a philanthropic mission stating "as goodwill ambassadors, Kentucky Colonels are dedicated to community service, contributing to the welfare of the state, and improving the lives of others to make the world a better and safer place for everyone." [Exhibit 2, at pg. 3]. The website continues to promote the "Member Services" offered by the organization claiming:

> The organization provides online digital services to its members in the form of personal identification, a vanity email address, biographical websites, and online membership roster, and an electronic smartphone app (under development in 2020). Other ideas and suggestions are being discussed and based on our organization acquiring funding for this development.

---

[11] A copy of the "new" KCI Website as of 9:30 a.m. on February 27, 2020 is included in the record **[DE 19-6]**.

[12] According to the WhoIs Data, the domain name **colonels.net** was registered on March 4, 2020. A copy of the WhoIs Data registration is attached hereto as Exhibit 1.

[13] The domain **www.kycolonels.international** continues to link to the KCI Website even though it now bears the name Kentucky Colonel Foundation. A copy of the KCI website as of May 20, 2020 is attached as Exhibit 2.

[*Id.* at pg. 7]. In addition, the KCI Website continues to tout the "International Title Registry," a service that Wright has consistently offered throughout the various iterations of the KCI Website. [*Id.*].

Wright's efforts to promote his competing organization actually accelerated after the TRO was entered. On March 4, 2020, Wright's response to the Verified Complaint was filed, reiterating his plan to "formalize [Defendants'] development by offering paid membership, starting an international registry, providing credentials to members, and charging [Defendants] unpaid members' voluntary and monthly dues for a more formal and better organized services program …." [**DE 23**, PageID #720]. Thus, Wright is unapologetic about his intention to continue to infringe on the KENTUCKY COLONELS Mark by now using the name Kentucky Colonel Foundation and continuing to offer products and services [*Id.* at PageID #726].

### E. Defendants Have Pledged to Continue to Ignore the Court's Orders and Malign HOKC.

Wright and KCI have made it clear that they do not recognize the jurisdiction or authority of this Court. Their contempt for the Court is front and center on the KCI Website, which includes the statement:

> Finally, since we are being forced to abandon our Assumed Name Corporation registration for "Kentucky Colonels International" in Kentucky as a result of this lawsuit, we have taken steps to offshore our international decentralized autonomous organization to the world theater that it has been developed for as goodwill ambassadors with our colonelships to establish ourselves as a foundation and benign non-state actors to better exercise our rights under Admiralty, Maritime, and International Customary law.

[Exhibit 2 at pg. 5]. Defendants pledge to "stand firmly upon [their] civil rights to preserve [their] ideals under the US Constitution …." [*Id.*]. Further, Defendants proclaim their intent to "register" the name "Kentucky Colonel Foundation" in three countries. [*Id.*].

Defendants also continue to use the KCI Website to disparage HOKC stating, among other things, that "[HOKC] is engaged in deceptive practices using a non-existent membership status with their donors to influence their fundraising efforts" and accusing HOKC of working "directly with a former Governor to coerce donors to make contributions to retain the privilege to make nominations of new Kentucky Colonels …." [*Id*. at pg. 64].[14]

## ARGUMENT

### I. A PRELIMINARY INJUNCTION PROHIBITING FURTHER TRADEMARK INFRINGEMENT SHOULD BE GRANTED AND MUST INCLUDE THE KENTUCKY COLONEL FOUNDATION.

The TRO prohibited Defendants from using the KENTUCKY COLONELS Mark or any mark that is confusingly similar in a competitive, confusing, or deceitful manner. [**DE 7**, PageID #503-04]. Defendants disingenuously professed to "comply" with the Court's directive by changing the name of the organization to Kentucky Colonel Foundation and changing the domain name for the KCI Website to **kentucky.colonels.net**. As the Court correctly recognized, however, those actions do *not* comply with the TRO. [**DE 32**, PageID #821]. The Court previously concluded that HOKC has established a likelihood of success on the merits of its trademark infringement claim, and Wright's latest filing **[DE 37]** provides no reason to change that conclusion.

Like his prior opposition brief **[DE 23]**, Wright's latest efforts to justify Defendants' actions relies almost entirely on the assertion that the KENTUCKY COLONELS Mark is "part of the public domain" and, therefore, not subject to protection. [**DE 37**, PageID #835-838]. That

---

[14] Wright also continues to significantly and erroneously edit the "Kentucky Colonels" Wikipedia page to include an extensive discussion of the Kentucky Colonel Foundation describing this litigation and expressing Defendants' intentions "to provide web-based membership services, secure network development services, a news blog, and historical research." A copy of the Kentucky Colonels Wikipedia page from May 21, 2020 is attached as Exhibit 3.

assertion has already been rejected by the Court. HOKC has demonstrated both in its pleadings and in testimony offered at the hearing that it has continuously and exclusively used the KENTUCKY COLONELS Mark since 1931. As a result, the KENTUCKY COLONELS Mark has become well-known throughout the world, and it is inextricably intertwined with HOKC, its member services, and its charitable work. Moreover, HOKC has an incontestable mark in the "Honorable Order of Kentucky Colonels" as it relates to eleemosynary services. [**DE 32**, PageID #815]. In March, the Court found that Defendants failed "to present evidence that the mark is invalid." [*Id*.]. That failure has not been cured.

Likewise, Defendants' most recent filing utterly fails to rebut the proof offered by HOKC regarding the relatedness of the goods and services offered by the parties. The KCI Website still describes KCF as a nongovernmental, not-for-profit fraternal and mutual benefit membership organization whose official responsibilities "include promoting tourism, economic development, participation, and community service, and fostering the general prosperity of the Commonwealth of Kentucky and its citizens." [Exhibit 2, pg. 3]. The KCI blog continues to feature as its banner, a picture of the membership certificate and tokens of appreciation that HOKC provides to donors. While the donation page has been deactivated, the website specifically acknowledges that the deactivation was the result of a "pending … legal dispute" and states that the organization "will keep up the hope that people will make donations and provide funding from time to time…." [*Id*. at 11]. Wright candidly acknowledges that his organization intends to offer paid memberships, provide credentials to members, and charge monthly dues for his services. [**DE 23**, PageID #720]. Thus, by Defendants' own admission, this factor continues to support a finding of infringement.

The similarity of the Marks analysis also has not changed since the Court's March 23, 2020 Order. In fact, as the Court recognized, the organization's name change to Kentucky Colonel

Foundation actually "lessens the distinction" between the organizations, particularly with respect to HOKC's registered and uncontestable trademark for eleemosynary associations **[DE 32]**. Inclusion of the word "foundation" in the name is clearly intended to create the impression that the organization has a philanthropic purpose that is associated with the title of Kentucky Colonel. The similarity factor supports a finding of infringement even more now than it did in March.

Defendants also offer no proof to rebut the evidence of ***actual confusion*** submitted by HOKC. HOKC submitted Facebook posts by recipients of charitable grants thanking KCI rather than HOKC for those funds. Moreover, HOKC maintained logs of communications expressing confusion about the identity of KCI. All those documents were submitted at the hearing. Defendant's most recent brief submittal, like their original response, offers "philosophical arguments" but *no* rebuttal proof to the documented instances of confusion. Therefore, this factor continues to support a finding of infringement.

Finally, Defendant's most recent filing includes a candid admission that Defendants "have developed a program that provides genuine membership services to Kentucky Colonels and fairly *competes with [HOKC]* using … the Internet…." (emphasis added) [**DE 37**, PageID #838]. Thus, Defendants proudly admit that the marketing channels used by the parties are identical, and defiantly acknowledge that they intend to compete with HOKC. Those admissions are fatal to any effort to defend their actions.

Because Defendants have utterly failed to justify or discontinue their infringing conduct, a preliminary injunction prohibiting further trademark infringement must be granted. Moreover, in light of Defendants' efforts to skirt the prohibitions in the TRO through even more harmful name changes, the preliminary injunction must, unequivocally prohibit the use of "Kentucky Colonel Foundation" as well as "Kentucky Colonels International," and any other name that utilizes the

KENTUCKY COLONELS Mark or is confusingly similar to the KENTUCKY COLONELS Mark.

## II. THE PRELIMINARY INJUNCTION MUST EXPRESSLY PROHIBIT DEFENDANTS' CYBER PIRACY ACTIVITIY.

The Court's March 23, 2020 Order observes that "the temporary restraining order prohibits infringement, which also covers the website and domain name at the root of the cyber-piracy claim." [*Id*. at PageID #813]. While the Court clearly intended to prohibit the use of the KENTUCKY COLONELS Mark, or any similar mark, in Defendants' internet and social media activities, Defendants have utterly failed to comply with that directive. Indeed, Defendants' use of the domain name **kentucky.colonels.net** is even more egregious than the prior domain name. Therefore, Defendants should be expressly enjoined from using their current or past domain names as well as any other name that incorporates the KENTUCKY COLONELS Mark, or any similar mark.

The Anticybersquatting Consumer Protection Act (the "ACPA") applies to a party who "registers, traffics in, or uses a domain name" that is "identical or confusingly similar to" a "distinctive" mark or that is "identical or confusingly similar to or dilutive of" a "famous" mark. 15 U.S.C. § 1125(d)(1)(A). The ACPA imposes liability where there is a "bad faith intent to profit," and the ACPA provides a list of factors that courts may consider in determining whether a party acts in bad faith.

- The defendant's intent to divert consumers from the mark owner's online location to a site accessible under the domain name that could harm the goodwill represented by the mark by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the site, either:

    - for commercial gain; or

    - with the intent to tarnish or disparage the mark.

- Whether the defendant has offered to transfer, sell, or otherwise assign the domain name to the mark owner or any third party for financial gain and:

    - has neither used nor intends to use the domain name in the bona fide offering of any goods or services; or

    - the defendant's previous conduct indicates a pattern of this conduct.

- The extent to which the mark incorporated in the defendant's domain name is or is not distinctive and famous within the meaning of the list of factors for determining fame under Section 43(c)(1) of the Lanham Act.

*See* 15 U.S.C. § 1125(d)(B)(i). Under the ACPA, "[A] plaintiff is entitled to an injunction that is somewhat broader than the scope of its ACPA claim in order to protect the reputation and goodwill it has established in its marks and to prevent defendants from infringing on, or otherwise harming, those marks." *Daimlerchrysler v. The Net Inc.*, 388 F.3d 201, 208 (6th Cir. 2004) (citing *Sporty's Farm L.L.C. v. Sportsman's Market, Inc.*, 202 F.3d 489, 493 (2d Cir. 2000)).

Here, Defendants should be prohibited from using the current domain name, **kentucky.colonels.net**, because (1) HOKC has a valid trademark entitled to protection; (2) the KENTUCKY COLONELS Mark is distinctive or famous; (3) Defendants' domain name actually incorporates that KENTUCKY COLONELS Mark; and (4) Defendants are using the domain name (5) with a bad faith intent to profit. *Daimlerchrysler*, 388 F.3d at 208-209 (citing *Ford Motor Co. v. Catalanotte*, 342 F.3d 543, 546 (6th Cir. 2003)). Likewise, the use of **kycolonels.international** domain name should be prohibited because the name itself is confusingly similar to HOKC's domain name, and that similarity is clearly intended to divert internet traffic from HOKC's website to the KCI Website. At a minimum, the use of that domain name, along with the content of the website suggesting a philanthropic purpose, creates a likelihood of confusion as to affiliation between KCI and HOKC.

Defendants' bad faith intent to profit in the use of both domain names is readily apparent from Defendants' admissions in this litigation and the acknowledgement that it intends to market

"on-line digital services" to its members. By his own admission, Wright accelerated his marketing and solicitation efforts, first under the name Kentucky Colonels International and now under the name Kentucky Colonel Foundation, *after* his extortionate "merger proposal" was rejected. Within days, Wright began soliciting contributions for the "Kentucky Colonel's International Fund" representing such donations to be tax deductible [**DE 7-3**, PageID #243]. The public relation services, web-page maintenance and design, and International Title Registry offered on the KCI Website would generate revenue for one person, David Wright. His bad faith intent to profit is repeatedly confirmed in the KCI Website where he proclaims that this Court's directives are inconsequential in light of the organization's name change and his actions to move the operation "off shore." And if any additional proof of bad faith is needed, it is certainly reflected in Wright's' alteration of the Wikipedia article on "Kentucky Colonel" deleting the entry regarding HOKC's protected trademark. In short, virtually every action that Wright and his organizations have taken demonstrates a bad faith intent to profit.

The domain name, organization name, and content of the KCI Website as well as the username, handle and content of the KCI public Facebook page are misleading and create confusion by suggesting or fostering the impression that the KCI Website and KCI public Facebook page are affiliated with or approved by HOKC. In addition, the KCI Website and KCI public Facebook page repeatedly use the KENTUCKY COLONELS Mark that is protected and critical to HOKC's mission. For these reasons, a preliminary injunction should be entered expressly and specifically prohibiting the use of those domain names, user names and handle.

## CONCLUSION

For the reasons set forth herein, as well as those set forth in HOKC's original Motion for Preliminary Injunction (and supplements thereto), the Court should enter the preliminary

injunction tendered herewith prohibiting Defendants' trademark infringement and cyber-piracy activities.

>	Respectfully submitted,
>
>	*/s/ Cornelius E. Coryell II*
>	Cornelius E. Coryell II
>	Michelle Browning Coughlin
>	Julie Laemmle Watts
>	WYATT, TARRANT & COMBS, LLP
>	400 West Market Street, Suite 2000
>	Louisville, KY  40202
>	(502) 589-5235
>	ccoryell@wyattfirm.com
>	mcoughlin@wyattfirm.com
>	jwatts@wyattfirm.com
>
>	*Counsel for Plaintiff, the Honorable*
>	*Order of Kentucky Colonels, Inc.*

# CERTIFICATE OF SERVICE

I hereby certify that on May 22, 2020, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system. I further certify that a true and correct copy of the foregoing has been served upon the following, via U.S. Mail and via email at kycolonels.international and david.wright@globcal.net on the 22nd day of May, 2020:

Kentucky Colonels International
c/o Maya-Lis A. Wright
302 General Smith Drive
Richmond, KY 40475

Globcal International
c/o Maya-Lis A. Wright
302 General Smith Drive
Richmond, KY 40475

Ecology Crossroads Cooperative Foundation, Inc.
c/o Maya-Lis A. Wright
302 General Smith Drive
Richmond, KY 40475

David J. Wright
302 General Smith Drive
Richmond, KY 40475

*/s/ Cornelius E. Coryell II*
*Counsel for Plaintiff, the Honorable*
*Order of Kentucky Colonels, Inc.*

100285053