**FILED**
Vanessa L Armstrong, Clerk
Jun 03 2020
U.S. District Court
Western District of Kentucky

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | |
|---|---|
| THE HONORABLE ORDER OF ) | |
| KENTUCKY COLONELS, INC. ) | Civil Action No. 3:20-cv-132-RGJ |
| PLAINTIFF ) | |
| ) | AMENDED MOTION TO DISMISS AND/OR |
| v. ) | SUMMARY JUDGEMENT |
| ) | |
| DAVID J. WRIGHT, et.al. ) | |
| DEFENDANTS ) | |

### DEFENDANT'S AMENDED MOTION TO DISMISS

COMES NOW the Defendant, *pro se in forma pauperis,* pursuant to Federal Rule of Civil Procedure 12(b)(1), 12(b)(6) and 15(a), and moves this Honorable Court to dismiss Plaintiffs' lawsuit and/or considered for summary judgement. In support, Defendant states:

Firstly, we move for the court to <u>dismiss this case with prejudice</u> based on the understanding that <u>the Plaintiff has trademarked a term that clearly belongs to the "public domain" and their commission of "copyfraud" is being upheld by the U.S. Court,</u> which is entertaining the Plaintiff and allowing this case to move forward. The Temporary Restraining Order (TRO) imposed by the court stifles and violates the Defendant's rights of free speech, freedom to assemble, freedom of the press, and the right to redress grievances to the government under the First Amendment of the U.S. Constitution **over a term that is in the public domain**. The movant also states grounds that the Plaintiff has violated private international law and commercial law to obtain information by engaging in ethical business negotiations with the Defendant to take actions, file a trademark and bring this lawsuit which is outside the jurisdiction of this Court. The bringing of this action by the Plaintiff has caused significant damage to the Defendants, their organization and the collective creative work product of its members developed over the past several years. The Plaintiff is using the lawsuit, the lack of resources of the Defendant, and

a spurious claim to property in the public domain to destroy the work of the Defendant which the Plaintiff has been aware of for nearly 20 years.

**Copyfraud is a false claim by an individual or institution** with respect to content that is in the public domain. Such claims are wrongful, under U.S. law, because material in the public domain is free for all to use, modify and reproduce. "Copyfraud stifles creativity and imposes financial costs upon consumers. False copyright claims lead individuals to pay unnecessarily for licenses and to forgo entirely projects that make legitimate uses of public domain materials. **Copyfraud is a land grab.** It represents <u>private control over the public domain</u>. Copyfraud upsets the balance that the law has struck between private rights and the interests of the public in creative works."; Jason Mazzone, Jurist, *Copyfraud*, Stanford Law Books (2011).

The Plaintiff has known about the Defendant since at least 2001 when they made their initial legal contact following the Defendant's development of the first website for Kentucky Colonels in 1998 and again approached the Defendant in 2016 requesting the Defendant place a disclaimer on it's Facebook page which was developed in 2009. They engaged with the Defendant, gaining further knowledge of the Defendant's intentions in 2017 by having its board members, executives, and officers join the Defendant's online groups, expressed an interest in the work product of the Defendant, and entered business negotiations with the Defendant under false pretenses in January 2020, without making any reasonable offer or counter offer prior to bringing this lawsuit. The Plaintiff has called and referred to our offer as extortion despite it being very fair and relatively inexpensive for comparable technological services, moreover was negotiable. In essence the Plaintiff used the information presented in a <u>business acquisition and merger</u> covered and protected under a confidentiality agreement to create a counter strategy and bring forth this lawsuit which is unethical, underhanded and illegal. The Plaintiff had many opportunities since 2001, when they first contacted the Defendant, if it felt its rights were being infringed upon and to seek additional trademark protection, assert their spurious claims for protection, instead they have moved closer to emulating the ideals of the Defendant. The <u>Plaintiff has</u>

had every opportunity to negotiate a fair settlement, acquire the intellectual property of the Defendant, or make an offer for the intellectual property it has expressed an interest in beginning in 2017. Instead they have used the information they learned to form a counter-attack, to undermine and destroy the Defendant along with its intellectual property, by filing this lawsuit and developing a campaign where it appears to be a victim of the Defendant based on false and unsubstantiated allegations.

A motion to dismiss pursuant to Rule 12(b)(1) may assert a *facial or factual* challenge to the Court's subject matter jurisdiction. *Haddad*, 784 F. Supp. 2d at 1313 n.2. "In a facial challenge, a court assumes the allegations in the complaint are true and determines whether the complaint sufficiently alleges a basis for subject matter jurisdiction." In factual challenges, Judge J. Frederick Motz of the U.S. District Court for the District of Maryland has observed, in adjudicating a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction that: (1) where the motion presents a factual challenge to jurisdiction, the court **need not assume** that all facts alleged in the complaint are true; and (2) in that context, the allegations in the pleadings are mere evidence, and the court may consider contravening evidence from other sources without converting the proceeding into one for summary judgment. *Chesapeake Bay Foundation, Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602, 611 (D. Md. 2011). The same is true for the other subsections of Rule 12(b), excepting 12(b)(6), of course."

> [Note 1] In a well documented and discussed case Gilberto v. Frito-Lay, Inc., 251 F.3d 56 (2d Cir. 2001) A federal court dismissed six of the seven claims brought by the singer Astrud Gilberto relating to the use of her recording of "The Girl From Ipanema" in a television advertisement. The singer claimed "capitalization on her valuable reputation and goodwill in a way that is likely to cause confusion or deceive as to the affiliation, association, or connection of the plaintiff and the defendants, or as to the sponsorship or approval of defendant's goods by the plaintiff." The case also raised a claim for unjust enrichment. The court granted the motion for dismissal because there is no trademark protection for song recordings, but also noted that the song and her recording were part of the public domain and therefore was not entitled to trademark protection.
>
> [Note 2] Under U.S. law, all works published any time prior to 1924 entered the public domain on January 1, 2020. This includes books, films, artworks, sheet music, and other concrete creative works. The term "public domain" refers to creative materials that are not protected by intellectual property laws such as copyright, trademark, or patent laws. The public owns all these works, not an individual author, artist or organization. Anyone can use a public domain work without obtaining permission, but no one can ever own it. According to the Stanford Law website "phrases such as, "Show me the money" or, "Beam me up" are not protected under copyright law. Short phrases, names, titles, or small groups of words are considered common idioms of the English language and are free for anyone to use. However, a short phrase used as an advertising slogan is protectable under trademark law. In that case, you could not use a similar phrase for the purpose of selling products or services." In this case however the Plaintiff is not using a short phrase, which its actual full name would be, but the common idiom "Kentucky Colonel" itself as their trademark, which is alternately defined in dictionaries, encyclopedias, book indexes.

The Plaintiff has abused and bilked the system by registering "Kentucky Colonels" with the U.S. Patent and Trademark Office (USPTO) by submitting an application to a person that was essentially doing their job without a great knowledge of the public domain, so the term was registered. The Plaintiff, however holds a <u>high degree of responsibility to be knowledgeable and lawful as to what can or cannot be registered as a trademark</u>, and should be conscientious of the rights of others who may be using a particular idiom or term in their name and how it may have been used in history. Legal status definitions, typically, require public domain material to be unencumbered by intellectual property rights.

## **PRESENTATION OF FACTS TO MOVE FOR DISMISSAL**

Kentucky Colonel is a well-known honorary title, it is an award, a legal status that provides letters patent, and may refer to a personage which has been bestowed the title by any one of Kentucky's governors past, present or future. It is a term that has been engaged since the 18th century as a marketing tool for bourbon, race horses, marching bands, social clubs, cigarettes, bars, restaurants, hotels, musical groups, several other sports teams, an antique store, and most recently in a case before this Court several years ago a professional basketball team that was subject of a lawsuit by the Plaintiff when they began their campaign to dominate the exclusive use of the public domain term. As individuals, Kentucky Colonels have been known as the goodwill ambassadors of the Commonwealth since prior to the existence of the Plaintiff and were deeply ingrained as a component of Kentucky culture and history, notwithstanding The Honorable Order of Kentucky Colonels which was incorporated in 1957 or even the Government of Kentucky which officially began issuing certificates five years after the introduction of the well-known book, *A Kentucky Colonel* by Opie Read.

Simply incorporating a term like "Kentucky Colonels" that is part of the public domain as a key component of the Plaintiff's business name, establishing a benevolent charity with a term that is part of the public domain, or trademarking a term that is part of the public domain does not give the Plaintiff

exclusivity or any implicit rights to create a monopoly, assume custodianship or exclude others from using the term in a different business that specifically caters to Kentucky Colonels. The Plaintiff has become well-known through self-promotion as the "The Honorable Order of Kentucky Colonels", "HOKC", the "Honorable Order", and most recently as just "Kentucky Colonels" building and creating their own ambiguity rather than distinguishing themselves using copyright and trademarks constructively. Simply using "Kentucky Colonels" to describe themselves is an infringement on the public domain and all others that have used it constructively to describe themselves or as a part of other business names. Creating ambiguity like the Plaintiff has may lead people to believe that they are affiliated with unrelated businesses like the Kentucky Colonel Hotel in Broken Arrow, Oklahoma established in 1903 by Col. G.W. Gist, a horse racing promoter, the Kentucky Colonel Motel Court in Bradenton, Florida, or perhaps the Kentucky Colonel Inn in Louisville whose owner Bow-Ken, Inc. **was represented by the *Plaintiff's counsel Tarrant, Combs, Blackwell, Bullit* from 1973 through 2018**. So while adopting a term in the public domain may have some distinctive advantages for the Plaintiff, it is intentionally misleading the public to believe they are somehow the "original" and "only" authority that can be legitimately recognized through their deceptive copyfraud.

As a part of the government, the U.S. Federal Court should understand that it has no jurisdiction over terms and ideals that are clearly a part of the public domain. The terms "Kentucky Colonel" and "Kentucky Colonels" are at best property of the Commonwealth of Kentucky, a part of history, since the first colonels were officially named by Kentucky's governors in 1813, 1815 or 1895 depending on whose history you choose to acknowledge. The popular book by Opie Read, *"A Kentucky Colonel"* which was published in 1890 may even account for much of the popularity of Kentucky Colonels, since all of them were not necessarily commissioned by the governor, but by other colonels. Colonel Daniel Boone can be called one of the first Kentucky colonels which dates back prior to the founding of the United States in 1775, he was commissioned by another colonel, specifically for the purpose of founding the first Kentucky settlement Boonesborough and blazing the Wilderness Trail. Likewise most of

Kentucky's first counties were named after colonial company colonels and militia colonels designated by the 13 original colonies governors before the founding of the United States. Governor William O'Connell Bradley himself was known to have adopted the title of "colonel" beginning at the age of 15 after being removed from the Civil War by his father, in his personal memoirs he mentions the names of more than 100 prominent people he refers to as colonels while in office as governor in Frankfort.

The term "KENTUCKY COLONELS" is clearly <u>not an invention or creation by the Plaintiff</u>, despite them having adopted it as a trademark, the Plaintiff has no implicit legal rights to dominate, mandate or license the term or cause injury to others that use it. It is very clear that the law is being abused in this case to suppress our benign fraternal efforts and beguile public opinion. The Court has no jurisdiction within its own powers to take a term that definitively belongs in the public domain and award it to an organization based on any of the Plaintiff's benevolent efforts or intentions to benefit the public good or charity, which the Plaintiff has inferred in its pleadings in an effort to <u>dominate a term as a trademark in the literal sense in the public interest for themselves to commercialize it.</u>

While we acknowledge the Plaintiff may hold trademark rights over their <u>barbeque sauce, bourbon filled chocolate bon-bons, t-shirts, cigars</u> and other <u>products</u> labelled "KENTUCKY COLONELS" as their brand name for items which they market through Upper Right Marketing, LLC; not party of this lawsuit; our organization is clearly not engaged <u>or even allegedly engaged in the marketing any of these items according to the complaint</u>. We are literally a group of Kentucky colonels using the term in its proper context as public domain to refer to ourselves as Kentucky Colonels, as are many other organizations not associated with us. The complaint does not state that we have used or infringed on their actual corporate name "THE HONORABLE ORDER OF KENTUCKY COLONELS", but alleges and infers that *if we are allowed to continue* to use the term "KENTUCKY COLONELS" or "KENTUCKY COLONEL" it may harm the plaintiff, the public, confuse others, this simply because we have developed a program that provides genuine membership services to Kentucky Colonels and fairly competes with their organization using *our own ideals across a medium*, "the

Internet", which we first dominated, while they have further created ambiguity between themselves with the term, as noted previously by this Court.

The Plaintiff spuriously trademarked "KENTUCKY COLONELS" for membership associations and committed copyfraud less than 30 days following our confidential disclosure of our planned activities and intellectual property which they expressed an interest in since we began developing our ideal of a membership registry and mobile app in 2017, 2018 and 2019 until we submitted a merger and acquisition proposal on January 14, 2020, which the plaintiff rejected on January 20, 2020. This entire case is based on a three day old trademark registration which they acquired on February 17 to file this lawsuit on February 20.

Our activities, blog, website and critical commentary, which prompted this lawsuit despite the Plaintiff's counsel threatening us and alleging that we were not in compliance with the Temporary Restraining Order by allowing our website to remain, shall continue because we are operating within our First Amendment Rights under the U.S. Constitution to redress grievances with the government, exercise our rights of free speech and exercise our freedom of the press. We have not slandered or provided any false information to anyone knowingly or intentionally, and have not received any public funding since the TRO has been in place. We have fully compiled with the TRO despite cries and claims to the contrary by the Plaintiff.

Whether the trademark "Kentucky Colonels" is registrable or not, is not an issue in this case except at the discretion of this Court, however whether the trademark is being used validly, entitled to be the basis of this lawsuit or whether the Plaintiff is abusing its rights as a corporation may be considered by the Court, because the trademark was presented as the basis of prima facie evidence in this case. The case itself is entirely based on the USPTO awarding the Plaintiff a mark which it calls "famous" for associations which was approved by the USPTO only three days prior to filing this lawsuit.

> [Note 3] "To clarify the notion of the public domain in relation to the trademark system, several definitions can be considered that have arisen from reflections on the meaning and function of the public domain. Legal status definitions, typically, require public domain material to be unencumbered by intellectual property rights. They focus on material that is ineligible for protection, or that no longer enjoys protection after the expiry of protection. As the rationales underlying trademark law necessitate registration to be renewable indefinitely, legal status definitions

shed light on a particular problem: the risk of trademark rights being used as a vehicle to re-monopolize material, in respect of which other forms of intellectual property with a limited term of protection have already expired. Public domain definitions focusing on freedom of use, by contrast, allow the development of a broader concept of the public domain. Instead of asking whether material is free from trademark rights altogether, they pose the question whether material can be used freely. The public domain is thus understood to encompass user freedoms resulting from limitations and exceptions. Following this more flexible approach, public domain material need not be entirely free from trademark rights. The public domain also includes those user freedoms that remain irrespective of the acquisition of trademark protection. This approach offers the opportunity to take into account the various limits set to trademark rights – inherent limits following from the confinement of protection to use in trade and use as a trademark, and limits following from the adoption of exceptions.

The present attempt to describe the relationship between trademark law and the public domain focuses on differences between legal status definitions requiring material to be unencumbered by trademark rights, and freedom of use definitions including breathing space for unauthorized use. Two hypotheses play a central role in this context. Firstly, it can be hypothesized that the adoption of a freedom of use perspective in the area of trademark law is adequate because this perspective recognizes that exclusive rights granted in trademark law have a less absolute character than the exclusive rights awarded in other fields, such as copyright and patent law. The potentially limited impact of trademark rights on the availability of trademarked material can be factored into the equation. Secondly, a freedom of use approach may be important in the light of current initiatives at the international level. It broadens the debate. Besides eligibility criteria and limited terms of protection, limitations and exceptions enter the picture." *Senftleben, Martin, Trademark Law and the Public Domain* (May 1, 2013). D. Beldiman, ed., Edward Elgar Publishing, 2013. Available at SSRN: https://ssrn.com/abstract=2280058

When this court heard the case *Honorable Order of Kentucky Colonels v. Building Champions* in 2004 the following was considered: "Assessing the strength of the "Kentucky Colonels" trademark is complicated by the fact that *the words* have diverse associations that are distinct from the Honorable Order. For some, the term "Kentucky Colonel" may define an idealized personage or image apart from the organization that is the Honorable Order. Through the years, Kentucky Fried Chicken's use of the Kentucky Colonel image, Colonel Sanders, in its national advertising, has strengthened this image. Not so long ago in Kentucky, the name was strongly identified for many years with the old American Basketball Association team. Notwithstanding these considerations, the use of similar, even identical, terms in the market over time lessens the strength of the Honorable Order's mark today. These public enhancements and diversification of the Kentucky Colonel name have greatly increased recognition of the name, though probably weakened its identification directly with the Honorable Order." While the preceding comment by Judge Heyburn in 2004 is relative to t-shirts and trademarks, neither party, or the judge admitted or considered the fact that "Kentucky Colonels" is a term that exists in the public domain

where they both adopted it from, the Judge does observe in his discussion that the Plaintiff weakened their identity by not including the words "Honorable Order."

The Plaintiff is a charitable organization, it has a great illustrious history and is responsible for a great number of charitable works in the Commonwealth of Kentucky; however throughout their pleadings they plant inferences relative to facts without substantiating them. The Plaintiff tries to lead the Court to assume that they created the ideal of an organization for Kentucky Colonels, but Governor Sampson in 1931 clearly acknowledged that several other organizations already existed, the following year an unincorporated membership association was started, founded by Governor Ruby Lafoon which started the namesake organization of the Plaintiff, The Honorable Order of Kentucky Colonels. The Plaintiff has many skeletons in their closet which may need to come out and be reassembled to become part of the public record before the case is finally concluded, as a charitable organization as well their records are subject to inspection.

The facts remain that the Plaintiff is not a true membership organization today; this is clearly stated in their Articles of Incorporation which state they "have no members", the Plaintiff has offered to the court the Defendant's Articles of Incorporation as an exhibit, which actually permits our activity, but do not specifically address Kentucky Colonels as a stated purpose, although they have not offered their own Articles to assert their position. The Plaintiff does not own its online store this is clear from reviewing the legal record and the website, which shows the dissociation between the Plaintiff and Upper Right Marketing, LLC which is the primary beneficiary of most of their trademarks with the exception of their actual name "HONORABLE ORDER OF KENTUCKY COLONELS" <u>does not appear anywhere on the store website</u>, however they do state in the lawsuit that "they" use the trademark "KENTUCKY COLONELS" in commerce, a statement which is simply false since the company selling the products is a for-profit entity not directly owned by the Plaintiff. The Plaintiff has misconstrued the history of the Commonwealth of Kentucky through promoting false narratives about their own history, the identity of the first colonel, and about the United States Military. The Plaintiff operated as an

unincorporated fraternal membership association from 1932-1957; in 1957 the Plaintiff invented the ideal of Generals to dominate and manipulate its members into honorary non-member donors, when they restated their Articles of Incorporation in 1992 they disclaimed their members completely; the organization in its most recent pleading is so presumptuous in their authority to dominate Kentucky Colonels that their attorney stated in his Renewed Motion for an Injunction, that <u>we use "their" certificate or certificate that "they" issue</u> to their members in our blog header, the certificate is actually issued by the State not the Plaintiff, and one of the medals in the photo was actually made by another Kentucky Colonel organization based in Toronto, another inference of a factual claim that is totally false, while the organization makes medals for its own donors it is not the only organization that can make medals or recognize Kentucky colonels.

There are no state statutes, regulations or provisions relative to the commission of a Kentucky Colonel in contemporary Kentucky Law (Administrative Regulations or Kentucky Revised Statutes) which makes it an honorary diplomatic appointment between the Governor as the Head of State and the person being recognized. It does appear in the Governor's Handbook, but fails to mention the Plaintiff by name. There are no provisions anywhere in Kentucky's official history for the appointment of a General, so Kentucky Colonel remains the highest honor that a civilian can receive, their creation of the Generals is a mythical organizational ploy to dominate their members. Other states including Georgia, Texas, Oklahoma, Tennessee, New Mexico, and Alabama do have official statutes relative to colonelcy.

The Plaintiff has not taken the most basic steps to assert its spurious trademark claims <u>nor has it considered the well-being of the honorary title or the recipients of the award</u>, while it has gone 'hog wild' on using it for monetary gain to garner a profit from dominating it through their online store owned by a dissociated business Upper Right Marketing LLC owned by James Dawahare in Lexington. Currently there is no assumed name registration on file in the Commonwealth of Kentucky for their claimed trademark, so legally they can only deposit checks made out to "The Honorable Order of Kentucky Colonels" and cannot cash checks made out to "Kentucky Colonels" or "Good Works Fund,"

but they do, and have been doing so for many years without registering them, despite other companies existing in the state that share these same names.

One might also question as to why the Plaintiff <u>has not focused on distinguishing its own corporate name or name acronym HOKC</u> which directly distinguishes their organization prestigiously and is available for registration online as [hokc.org], [hokc.com], [hokc.net] and [hokc.store] all of which are natural and relative because they are <u>short and easy to remember, also preferable to anyone who knows about intellectual property development, technology, the law and design</u>. The Defendant has chosen to develop a generic creative work based in Creative Commons focused on academia and historical research so it recently purchased [colonels.net] and naturally has created model mobile subdomains such as [www.colonels.net], [blog.colonels.net], [kentucky.colonels.net], [alabama.colonels.net], [utah.colonels.net] and other states to recognize those who have received the prestigious title from their own states and to disseminate educational information.

Despite changing our name from Kentucky Colonels International to Kentucky Colonel Foundation and abandoning [kycolonels.international] in favor of [colonels.net] in an effort to settle this dispute, the Plaintiff continues to bellyache over our use of the public domain term. Which further reinforces their determination to usurp rights to which they are not entitled to, their conduct is less than honorable, civil and does not emulate goodwill towards their 'so-called' members of which I am one as well as are our other members.

While the Plaintiff has overwhelmed the court with nearly 1,000 pages of motions, amendments, complaints, exhibits, allegations, and planting seeds of doubt against this Defendant; they have not clearly addressed or commented upon the factual statements brought forth in the Defendant's pleadings that they are engaged in copyfraud, using the public domain, created a trademark that causes harm to others, is creating a cloud of confusion among Kentucky colonels to respect their presumptive authority, has mistruen history, is diverting attention away from the primary beneficiary of their trademark, Upper Right Marketing, LLC (not named in the lawsuit).

The Plaintiff has most absolutely committed copyfraud by taking something that belongs in the public domain which was already popular before they adopted the term, used it as part of their name and later trademarked more almost 80 years after they claim to have become established themselves. <u>Their actual name as well is an adopted version or borrowed reconfiguration of the "Honorable Order of the Blue Goose"</u> incorporated in 1909, which recognized Kentucky Colonels years before the creation of the Plaintiff's organization.

The Defendant has collected over 1,200 citations of "Kentucky colonels" prior to 1930, while only approximately 100 citations have been found prior to 1890 we are sure there are more out there. *(See exhibits 1, 2 & 3).* The Plaintiff has been engaged in developing falsehoods since they began, there is an abundance of clear evidence in history that the narrative offered by the Plaintiff is based in a manipulated version of facts from history where dates have been misconstrued and clear records from the State Archives are ignored. Even their current logo which is represented as a shield of the Aide-de-Camp bearing the date of 1813.

On the Plaintiff's website [kycolonels.org/about-us/history/aide-de-camp] it states: "Kentucky Colonels are "Aides-de-Camp" to the Governor of Kentucky. That was the title given to Charles S. Todd in 1813 when he became an aide to Governor Isaac Shelby and thus became the first Kentucky Colonel. Through the late 1800s uniformed Kentucky Colonels were the Governor's honor guard."

This is plainly false, the only colonel named in 1813 was Richard Mentor Johnson, he became a colonel because he was charged with the duty of protecting Kentucky and forming a militia detachment based on an act passed by the Legislature, he is well-known for killing Tecumseh and becoming a US Vice President. Governor Isaac Shelby, a colonial colonel himself from North Carolina, named Charles S. Todd an Aide-de-Camp with the title and rank of Colonel in 1815 prior to Todd marrying his daughter and giving him 12 grandchildren.

While a few Kentucky colonels (up to four at a time) served as honor guards to the governor that were formerly part of Kentucky's inactive militia, most were well-known as attorneys, estate owners,

horse breeders, bourbon distillers, tobacco farmers, mayors, judge executives, politicians, and personal friends of the governors during the time.

According to the USPTO the mark Kentucky Colonels never should have been registered in the first place. Despite the Plaintiff's erroneous and false claim that they have a right to exclusively use their alleged trademark for associations and despite whatever ruling made by this Court against the Defendants in this regard; the Defendant will continue to exercise its rights under the First Amendment of the US Constitution and will seek to cancel, remove, revoke, or suspend the fraudulent rights that the Plaintiff has obtained. The USPTO Trademark Trial and Appeal Board will be the next stop in our journey following a default, dismissal, summary judgement or trial withstanding or notwithstanding this Honorable Court. The law is clear, it is written in black and white, so while courtroom theatrics, shenanigans and presentations can be shrewdly presented in many ways to sway a decision in a case, public domain has no custodians and may not be encumbered with court orders or laws for the benefit of one without considering history, the future, and everyone else both equally and transparently.

## CONSIDERATION FOR SUMMARY JUDGEMENT

Secondly the Defendant seeks that theCourt if it is not dismissed based on the aforementioned Motion to Dismiss that it be considered forthwith for summary judgment under Federal Rule of Civil Procedure 12(b)(6). In considering a Rule 12(b)(6) motion, the Court may consider the Complaint and any exhibits attached thereto, public records, facts, items appearing in the record of the case and exhibits attached to Defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims. *Bassett v. National Collegiate Athletic Assn.*, 528 F.3d 426, 430 (6th Cir. 2008).

Summary judgment shall be granted when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. *Fed. R. Civ. P. 56(c)*; see also *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9 th Cir. 2000). One of the principal purposes

of summary judgment is to identify and dispose of factually unsupported claims and defenses. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Summary judgment must be granted against a party that fails to demonstrate facts to establish what will be an essential element at trial. A moving party without the ultimate burden of persuasion at trial–-usually, but not always, the defendant–-has both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment. *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9 th Cir. 2000). The burden initially falls upon the moving party to identify for the court "those portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n,* 809 F.2d 626, 630 (9 th Cir. 1987) (citing Celotex Corp., 477 U.S. at 323).

The Defendant respects and understands the Court's authority to either dismiss or take it upon itself to make a summary judgement on this case based on all the information presented to date, this motion, including our previous pleadings, the complaint, and exhibits presented for the Hearing, which was held on March 04, 2020, or perhaps continuing this case, as Defendants it is not our intention to default on this matter. The Court should also understand that we were only reinstated and legally incorporated since January 21. 2020, and that previously we operated as an unincorporated civil society from 2001 until 2019.

The Defendants do not understand, based on the facts presented in this motion, how this case can continue any further. The Defendants do not understand why two Federal Judges have recused themselves from this case, do not understand why the Plaintiff has not convened or accepted our offers to negotiate a settlement for the intellectual property it claims it wanted, and does not understand the Court's authority to encumber our rights under the First Amendment of the U.S. Constitution or to make decisions that encompass civil rights over property that belongs in the public domain. If the purpose of the Court is to administer justice impartially it must consider our attempts with the Plaintiff to settle and absolve this matter, it must consider dismissing the case, it may consider summary judgement based on the 850+ pages presented by the Plaintiff and the 40+/- pages presented by the Defendants, it should

consider our inability to pay for defending ourselves or retaining legal counsel if it wishes for us to understand in order to continue the proceedings of the case or better present ourselves to the Court.

Caracas, Venezuela
Dated: May 25, 2020

                                      Colonel David J. Wright
                                      Edificio Torre 997, Local B
                                      San Juan, Caracas
                                      Distrito Capital, Venezuela 1021
                                      david.wright@globcal.net
                                      +58 (426) 111-0529

**Certificate of Service**

I hereby certify that on May 25, 2020 this Amended Motion was delivered by email with a delivery receipt to the plaintiff and was sent via Email to the Clerk of the Court on May 25, 2020 at 9:00 AM.

Clerk's Office
601 W. Broadway, Rm 106
Gene Snyder United States Courthouse
Louisville, KY 40202