UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

*Electronically Filed*

| | | |
|---|---|---|
| THE HONORABLE ORDER OF KENTUCKY COLONELS, INC. | ) ) ) | |
| PLAINTIFF | ) ) | |
| v. | ) ) | CIVIL ACTION NO. 3:20CV-132-RGJ |
| KENTUCKY COLONELS INTERNATIONAL, et al. | ) ) ) ) | |
| DEFENDANTS | ) | |

## REPLY IN SUPPORT OF RENEWED MOTION
## FOR PRELIMINARY INJUNCTION [DE 39]

Defendant, David J. Wright, responded to Plaintiff's Renewed Motion for Preliminary Injunction **[DE 39]** on May 26, 2020 **[DE 42-1]** ("Defendant's Response").[1] Wright attempts to justify his infringement on HOKC's protected KENTUCKY COLONELS Mark by arguing that "the mark Kentucky Colonels never should have been registered in the first place." [Defendant's

---

[1] Defendant's Response was styled Motion to Amend Previous Motion to Dismiss **[DE 42]**, but his transmittal correspondence stated that the document was being filed "relative to a Renewed Motion for a Preliminary Injunction …." **[DE 42-3**, PageID #1003]. That transmittal also forwarded and referenced Defendants' Amended Motion to Dismiss **[DE 42-1]**, which was purportedly filed by Wright on behalf of "himself and other Defendants …." In the Court's June 3, 2020 Order **[DE 46]**, Wright's Motion to Amend Previous Motion to Dismiss **[DN 42]** was granted and entered into the record **[DE 47]**. As the Court previously acknowledged, and again acknowledged in its June 3, 2020 Order, however, Wright is not licensed to practice law and, therefore, may not appear on behalf of the Corporate Defendants **[DE 32**; **DE 46]**. A motion for entry of default against the Corporate Defendants was filed on May 22, 2020 **[DE 38]**, but was denied by the Court on June 3, 2020 when it granted the Corporate Defendants additional time to retain counsel and respond to the Verified Complaint and Motion for Preliminary Injunction **[DE 46]**.

Response **[DE 42-1]**, PageID #996]. Wright also reiterates his promise to continue his infringement and cyberpiracy "despite whatever ruling [is] made by this court…." [*Id*.].

Wright's assertion that the KENTUCKY COLONELS Mark is in the "public domain" is simply incorrect as a matter of law. Moreover, his willful refusal to comply with the Temporary Restraining Order **[DE 14]** and his pledge to disregard further directives from this Court provide additional justification for injunctive relief. Wright and the Corporate Defendants should be enjoined from further infringing on the KENTUCKY COLONELS Mark and from using ***any*** domain name that incorporates that Mark or is confusingly similar to HOKC's domain name.

## ARGUMENT

### I. WRIGHT'S ASSERTION THAT HOKC'S MARK IS IN THE "PUBLIC DOMAIN," AS WELL AS HIS OTHER INAPPOSITE CONTENTIONS, ARE UNAVAILING.

Wright insists that HOKC is not entitled to protect its Mark because the term "Kentucky Colonel" is "part of the public domain." [Defendant's Response **[DE 42-1]**, PageID #984]. In support of that assertion, Wright argues that the term has been "engaged since the 18th century" as a marketing tool for various products, race horses, restaurants, and sports teams. [*Id.*, PageID #987]. Wright further claims that the Mark is not subject to trademark because it is "engrained as a component of Kentucky culture and history." [*Id*.].

The public domain is "the status of an invention, creative work, commercial symbol, or any other creation that is not protected by any form of intellectual property. Legally protected zones of exclusive rights, such as patents, trademarks, and copyrights, are exceptions to the general principle of free copying and imitation." *McCarthy on Trademarks and Unfair Competition*, §1:23 (5th ed.). Something is only within the public domain if there is not an intellectual property right protecting it. *Id.* at § 1:26. While people are allowed to capitalize on an idea or concept created by another, they can only do so if an intellectual property right is not infringed and the public is not

confused into mistakenly believing that the second person's products or services emanates from or is sponsored by the original created. *Id.* at §1:25.

HOKC has legally defined exclusive rights to the KENTUCKY COLONELS Mark for use in connection with certain goods and services. Not only does HOKC own five registrations for its KENTUCKY COLONELS and HONORABLE ORDER OF KENTUCKY COLONELS Marks for use in connection with eleemosynary services and charitable services along with various goods, but it also owns three trademark applications for the KENTUCKY COLONELS Mark. HOKC filed its three applications on February 17, 2020, claiming a first use date of 1931 for all three applications as well as a first use in commerce date of 1951 for two applications and 1995 for one application. These three applications include:

   i. Serial Number 88/800,020 for use of the Mark in connection with "Charitable fundraising services; Charitable fundraising services by means of organizing and conducting special events; Providing grants to non-profit organizations;"

   ii. Serial Number 88/800,035 for use of the Mark in connection with "Social club services, namely, arranging, organizing, and hosting social events, get-togethers, and parties for club members;" and

   iii. Serial Number 88/800,038 for use of the Mark in connection with "Association services, namely, promoting the interests of individuals selected by the Governor of the Commonwealth of Kentucky to receive an honorary commission; Promoting the interests of members of the organization by means of club services."[2]

---

[2] A chart of HOKC's trademark registrations and applications, as well as the pertinent certificates of registration and applications, are attached to the Verified Complaint. [**DE 1-2**, PageID #27- 59].

Therefore, the KENTUCKY COLONLES Mark, when used in connection with the goods and services identified in its registrations and the services identified in its pending applications, is ***not*** in the public domain. As such, Wright's actions not only transgress the law and infringe upon HOKC's legal rights, but they also confuse consumers as to the source or sponsorship of the services Wright alleges to offer.

Moreover, even though HOKC's three applications are currently pending with the United Stated Patent and Trademark Office, HOKC has common law rights to the KENTUCKY COLONELS Mark based on its long-standing use of the Mark in commerce in connection with the services identified in the applications.[3] In a trademark or service mark application, the date of first use in commerce is the date when the goods were first sold or transported, or when the services were first rendered, under the mark in a type of commerce that may be lawfully regulated by the U.S. Congress, provided such use is bona fide and in the ordinary course of trade. *See* 15 U.S.C. § 1127. HOKC claims a first use in commerce date of 1951 for two of its applications[4] and a first use in commerce date of 1995 for one application.[5] Therefore, HOKC has priority to the Mark over Wright when used in connection with charitable fundraising services, social club services, and association services, and its three applications were neither a result of Wright's "merger proposal" nor a prerequisite to HOKC filing this matter.

Further, HOKC has not committed "copyfraud" as alleged by Wright. "Copyfraud" pertains to a false assertion of copyrights and is not applicable to trademark rights. It refers "to claiming falsely a copyright in a public domain work." Jason Mazzone, *Copyfraud*, 81 N.Y.U. L. Rev. 1026, 1027. Such false copyright claims "are often accompanied by threatened litigation for

---

[3] Verified Complaint [**DE 1**], PageID #15 - 16.
[4] Serial Number 88/800,020 and Serial Number 88/800,038.
[5] Serial Number 88/800,035.

reproducing a work without the putative 'owners' permission[ and] result in users seeking licenses and paying fees to reproduce works that are free for everyone to use, or altering their creative projects to excise the uncopyrighted material." *Id.* HOKC's Verified Complaint does not allege any copyright claims. Therefore, Wright's "copyfraud" argument is utterly misplaced.[6]

Finally, only <u>related</u> goods and services are compared in a proper trademark analysis. HOKC does not claim to have federal or common law rights to use the Mark in connection with hotels, horse racing promoters, or anything confusingly similar thereto. As such, HOKC not only lacks the right to enforce its Mark against the <u>unrelated</u> businesses cited by Wright, but it also has no reason or responsibility, legally or otherwise, to take action against those unrelated businesses. HOKC does, however, have the right to use the KENTUCKY COLONELS Mark in connection with eleemosynary services, charitable services, charitable fundraising services, social club services, and association services, which is what HOKC is actively enforcing through this action to prevent Wright from confusing the public by using the same or confusingly similar mark in connection with the same or confusingly similar services as HOKC.

## II. WRIGHT'S RESPONSE FURTHER DEMONSTRATES THAT INJUNCTIVE RELIEF IS NECESSARY AND APPROPRIATE.

HOKC has established that Wright's continued infringement on the KENTUCKY COLONELS Mark poses a threat of irreparable harm in the form of confusion on the part of HOKC's patrons and donors, loss of charitable goodwill, and damage to HOKC's reputation. [**DE 32**, PageID #820]. That injury is exacerbated by the untrue and defamatory statements that Wright continues to spew. For example, Wright asserts that HOKC "has many skeletons in their closet which may need to come out and be reassembled to become part of the public record…." [**DE 42-1**, PageID #992]. Wright's latest missive also repeats his mantra that HOKC should not be allowed

---

[6] For these same reasons, Wright's discussion or use of "Creative Commons" is also misplaced.

5

to protect its Mark because a third party licensee is "the primary beneficiary of most of [HOKC's] trademarks…." [*Id.*].[7] Wright seeks to damage HOKC through both his misappropriation of the KENTUCKY COLONELS Mark and disparagement of the organization.

Wright's conduct clearly demonstrates that the balance of injuries weighs decidedly in favor of granting injunctive relief. HOKC has invested nearly a century in developing the goodwill behind its KENTUCKY COLONELS Mark. It is merely attempting to prohibit Wright from doing what he should not be doing in the first place – using a trademark to which he has no legal right. As if misappropriating that Mark was not enough, Wright rubs salt in the wound by maligning HOKC for protecting the Mark, which has become synonymous with philanthropy, charity, and good works in the Commonwealth of Kentucky. Fairness and equity clearly favor granting the preliminary injunction.

The acrimony displayed by Wright also demonstrates that injunctive relief is in the best interest of the public. By his own admission, Wright approached HOKC to discuss whether it would "either assist [KCI] in our project or perhaps merge our membership program into their own organization." [**DE 7-2**, PageID #214]. Wright, not HOKC, wanted to "find a way" that HOKC could "silently but transparently take[] over the Registry and International concept…." [**DE 1**, PageID #6]. Prior to the submission of his "merger proposal" HOKC had no idea that Wright intended to demand hundreds of thousands of dollars. Nor did HOKC expect that rejection of Wright's proposal would lead him to slanderously claim that HOKC has "been misleading their donors and supporters for many years." [**DE 7-2**, PageID #216].

---

[7] Upper Right Marketing, LLC has nothing to do with this lawsuit or HOKC's use of the KENTUCKY COLONELS Mark in commerce. Even if it did, it is HOKC's prerogative to license use of its KENTUCKY COLONELS Mark.

When a trademark is infringed, what is actually infringed is the right of the public to be free of confusion and the right of the trademark owner to control the reputation of its product (or service). *James Burrow, Ltd. v. Sign of Beefeater, Inc.*, 540 F.2d 266, 274 (7th Cir. 1976). Wright's vitriolic rhetoric demonstrates the importance of preventing confusion between the services provided by HOKC and the activities of Wright and his fictitious affiliates using the KENTUCKY COLONELS Mark. HOKC's motion for a preliminary injunction must be granted.

### III. THE PRELIMINARY INJUNCTION MUST EXPRESSLY PROHIBIT DEFENDANTS' CYBERPIRACY ACTIVITY.

Wright acknowledges utilizing the domain name **kentucky.colonels.net**, but defends that action by characterizing it as "generic creative work based in Creative Commons focused on academia and historical research" which he has also applied to "other states to recognize those who have received the prestigious title from their own states and to disseminate educational information." [Defendant's Response **[DE 42-1]**, PageID #994]. Wright's belated efforts to camouflage his infringement under the guise of "educational information" is unavailing.

As previously stated, Wright's discussion of the Creative Commons is misplaced. This is not a copyright case; it is a trademark infringement case and Wright's actions are the hallmark of trademark infringement, as Wright is using the same or confusingly similar mark as HOKC for the same or confusingly similar services as HOKC. Wright even explicitly states that he has "developed a program that provides *genuine membership services to Kentucky Colonels and fairly competes with their organization using . . . 'the Internet'*" [**DE 37**, PageID #838; **DE 42-1**, PageID #989-90 (emphasis added)]. This case is not about Wright's use of the subdomain **alabama.colonels.net** or **utah.colonels.net**. It is about Wright's use of a subdomain name that expressly incorporates HOKC's protected Mark and links directly to the KCI Website which, as Wright admitted, he is using to provide membership services in order to compete with HOKC.

7

Most concerning, however, is that Wright's actions in creating "membership services" using the Internet has directly caused consumer confusion. HOKC's motion for preliminary injunction must be granted and must explicitly include cyberpiracy in order to protect the public from further confusion caused by Wright.

## CONCLUSION

Rather than complying with the Court's orders, Wright has doubled-down, changing the name of his organization to Kentucky Colonel Foundation and using a domain name that brazenly defies the Court by specifically incorporating the KENTUCKY COLONELS Mark. For these reasons, Wright and the other Defendants must be enjoined from further infringement on the KENTUCKY COLONELS Mark and from using any domain name that incorporates the Mark or is confusingly similar to HOKC's domain name.

Respectfully submitted,

*/s/ Cornelius E. Coryell II*
Cornelius E. Coryell II
Michelle Browning Coughlin
Julie Laemmle Watts
WYATT, TARRANT & COMBS, LLP
400 West Market Street, Suite 2000
Louisville, KY  40202
(502) 589-5235
ccoryell@wyattfirm.com
mcoughlin@wyattfirm.com
jwatts@wyattfirm.com

*Counsel for Plaintiff, the Honorable Order of Kentucky Colonels, Inc.*

## CERTIFICATE OF SERVICE

      I hereby certify that on June 8, 2020, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system. I further certify that a true and correct copy of the foregoing has been served upon the following, via U.S. Mail and via email at kycolonels.international and david.wright@globcal.net on the 8th day of June, 2020:

| | |
|---|---|
| Kentucky Colonels International<br>c/o Maya-Lis A. Wright<br>302 General Smith Drive<br>Richmond, KY 40475 | Ecology Crossroads Cooperative Foundation, Inc.<br>c/o Maya-Lis A. Wright<br>302 General Smith Drive<br>Richmond, KY 40475 |
| Globcal International<br>c/o Maya-Lis A. Wright<br>302 General Smith Drive<br>Richmond, KY 40475 | David J. Wright<br>302 General Smith Drive<br>Richmond, KY 40475 |

                                        */s/ Cornelius E. Coryell II*
                                        *Counsel for Plaintiff, the Honorable Order of*
                                        *Kentucky Colonels, Inc.*

100293350.2