| | |
|---|---|
| **To:** | The Honorable Order of Kentucky Colonels ETC. (mcoughlin@wyattfirm.com) |
| **Subject:** | U.S. Trademark Application Serial No. 88800035 - KENTUCKY COLONELS - N/A |
| **Sent:** | May 12, 2020 11:18:09 AM |
| **Sent As:** | ecom130@uspto.gov |
| **Attachments:** | Attachment - 1 <br> Attachment - 2 <br> Attachment - 3 <br> Attachment - 4 <br> Attachment - 5 <br> Attachment - 6 <br> Attachment - 7 <br> Attachment - 8 <br> Attachment - 9 <br> Attachment - 10 |

**United States Patent and Trademark Office (USPTO)**
Office Action (Official Letter) About Applicant's Trademark Application

**U.S. Application Serial No.** 88800035

**Mark:** KENTUCKY COLONELS

**Correspondence Address:**
MICHELLE BROWNING COUGHLIN
WYATT TARRANT & COMBS LLP
400 WEST MARKET ST, SUITE 2000
LOUISVILLE, KY 40202

**Applicant:** The Honorable Order of Kentucky Colonels ETC.

**Reference/Docket No.** N/A

**Correspondence Email Address:**

mcoughlin@wyattfirm.com

## NONFINAL OFFICE ACTION

The USPTO must receive applicant's response to this letter within  six months of the issue date below or the application will be **abandoned**.  Respond using the Trademark Electronic Application System (TEAS). A link to the appropriate TEAS response form appears at the end of this Office action.

**Issue date:  May 12, 2020**

The referenced application has been reviewed by the assigned trademark examining attorney.  Applicant must respond timely and completely to the issue below.  15 U.S.C. §1062(b); 37 C.F.R. §§2.62(a), 2.65(a); TMEP §§711, 718.03.

**SEARCH OF USPTO DATABASE OF MARKS**

The trademark examining attorney searched the USPTO database of registered and pending marks and found no conflicting marks that would bar registration under Trademark Act Section 2(d).  15 U.S.C. §1052(d); TMEP §704.02.

**SUMMARY OF ISSUES**:

- SECTION 2(e)(2) REFUSAL – PRIMARILY GEOGRAPHICALLY DESCRIPTIVE
- *ADVISORY:  AMENDMENT TO SUPPLEMENTAL REGISTER*

**SECTION 2(e)(2) REFUSAL – PRIMARILY GEOGRAPHICALLY DESCRIPTIVE**

Registration is refused because the applied-for mark is primarily geographically descriptive of the origin of applicant's services.   Trademark Act Section 2(e)(2), 15 U.S.C. §1052(e)(2); *see* TMEP §§1210, 1210.01(a).

A mark is primarily geographically descriptive when the following is demonstrated:

(1)   The primary significance of the mark to the purchasing public is a generally known location;

(2)   The goods or services originate in the place identified in the mark; and

(3)   The purchasing public would be likely to believe that the goods or services originate in the geographic place identified in the mark; that is, to make a goods-place or services-place association.

TMEP §1210.01(a); *see In re Societe Generale des Eaux Minerales de Vittel S.A.*, 824 F.2d 957, 959, 3 USPQ2d 1450, 1452 (Fed. Cir. 1987); *In re Hollywood Lawyers Online*, 110 USPQ2d 1852, 1853 (TTAB 2014); *see also In re Newbridge Cutlery Co.*, 776 F.3d 854, 860-61, 113 USPQ2d 1445, 1448-49 (Fed. Cir. 2015).

The applicant has applied to register KENTUCKY COLONELS for "Social club services, namely, arranging, organizing, and hosting social events, get-togethers, and parties for club members."

The primary significance of KENTUCKY is a geographic location, namely, a state. *See attached dictionary definition*.

The USPTO has long held that a goods-place or services-place association is presumed where (1) the location in the mark is generally known to the purchasing public, (2) the term's geographical significance is its primary significance, and (3) the goods and/or services do, in fact, originate from the named location in the mark.  TMEP §1210.04; *see, e.g.*, *In re Cal. Pizza Kitchen Inc.*, 10 USPQ2d 1704, 1705 (TTAB 1988) (finding a services-place association was presumed between applicant's restaurant services and California because the services originated in California ); *In re Handler Fenton Ws., Inc.*, 214 USPQ 848, 850 (TTAB 1982) (finding a goods-place association was presumed between applicant's t-shirts and Denver because the goods had their geographical origin in Denver); *see also In re Nantucket, Inc.*, 677 F.2d 95, 102, 213 USPQ 889, 895 (C.C.P.A. 1982) (Nies, J., concurring) ("[W]e must start with the concept that a geographic name of a place of business is a descriptive term when used on the goods of that business.  There is a public goods/place association, in effect, presumed." (internal footnote removed)) .

For services to originate in a geographic place, the record must show that they are rendered at least in part in the geographic place.  *See In re Chalk's Int'l Airline Inc.*  , 21 USPQ2d 1637 (TTAB 1991) (holding PARADISE ISLAND AIRLINES primarily geographically descriptive of air transportation services of passengers and/or goods that are performed at least in part on Paradise Island); *In re Cal. Pizza Kitchen Inc.*, 10 USPQ2d 1704 (TTAB 1988) (holding CALIFORNIA PIZZA KITCHEN primarily geographically descriptive of restaurant services rendered in California and outside the state as well); *In re Opryland USA Inc.*, 1 USPQ2d 1409 (TTAB 1986) (holding THE NASHVILLE NETWORK primarily geographically descriptive of television production and distribution services provided in Nashville); TMEP §1210.03.

The record indicates that applicant's address is in KENTUCKY. Because  The Honorable Order of Kentucky Colonels is located in KENTUCKY, it is safe to say that applicant's services are provided in KENTUCKY, and therefore, applicant's services are considered to originate from KENTUCKY.

The addition of generic or highly descriptive wording to a geographic word or term does not diminish that geographic word or term's primary geographic significance. TMEP §1210.02(c)(ii); *see, e.g.*, *In re Hollywood Lawyers Online*, 110 USPQ2d 1852, 1853-54 (TTAB 2014) (holding HOLLYWOOD LAWYERS ONLINE primarily geographically descriptive of attorney referrals, online business information, and an online business directory); *In re Cheezwhse.com, Inc.*, 85 USPQ2d 1917, 1920 (TTAB 2008) (holding NORMANDIE CAMEMBERT primarily geographically descriptive of cheese).

In the present case, the attached dictionary evidence shows that the wording COLONELS in the applied-for mark is merely descriptive of or generic for applicant's services.   The term COLONELS is defined as "an honorary title bestowed by some Southern states, as to those who have brought honor to the state, prominent businesspersons, visiting celebrities, or the like."  *See, attached dictionary definition.*  Therefore, the term COLONELS merely describes the user and/or performer of applicant's services.

Thus, this wording is less significant in terms of affecting the mark's commercial impression, and renders the wording KENTUCKY the more dominant element of the mark.  Accordingly, when considering the mark in its entirety, it is clear that KENTUCKY COLONELS is primarily geographically descriptive of social club services services performed in connection with honored members of Kentucky society.

Although applicant's mark has been refused registration, applicant may respond to the refusals by submitting evidence and arguments in support of registration.


*ADVISORY:  AMENDMENT TO SUPPLEMENTAL REGISTER*

The applied-for mark has been refused registration on the Principal Register.  Applicant may respond to the refusal by submitting evidence and arguments in support of registration and/or by amending the application to seek registration on the Supplemental Register.  *See* 15 U.S.C. §1091; 37 C.F.R. §§2.47, 2.75(a); TMEP §§801.02(b), 816.  Amending to the Supplemental Register does not preclude applicant from submitting evidence and arguments against the refusal(s).  TMEP §816.04.


**RESPONSE GUIDELINES**

For this application to proceed, applicant must explicitly address each refusal and/or requirement in this Office action.  For a refusal, applicant may provide written arguments and evidence against the refusal, and may have other response options if specified above.  For a requirement, applicant should set forth the changes or statements.  Please see "Responding to Office Actions" and the informational video "Response to Office Action" for more information and tips on responding.

Please call or email the assigned trademark examining attorney with questions about this Office action.  Although an examining attorney cannot provide legal advice, the examining attorney can provide additional explanation about the refusal(s) and/or requirement(s) in this Office action.  *See* TMEP §§705.02, 709.06.

The USPTO does not accept emails as responses to Office actions; however, emails can be used for informal communications and are included in the application record.  *See* 37 C.F.R. §§2.62(c), 2.191; TMEP §§304.01-.02, 709.04-.05.


**How to respond.  Click to file a response to this nonfinal Office action.**


> Black, Mildred
> /Mildred Black/
> Trademark Examining Attorney
> Law Office 130
> 571.270.1217
> mildred.black@uspto.gov


**RESPONSE GUIDANCE**

- **Missing the response deadline to this letter will cause the application to abandon.**  A response or notice of appeal must be received by the USPTO before midnight **Eastern Time** of the last day of the response period.  TEAS and ESTTA maintenance or unforeseen