| | |
|---|---|
| **To:** | The Honorable Order of Kentucky Colonels ETC. (mcoughlin@wyattfirm.com) |
| **Subject:** | U.S. Trademark Application Serial No. 88800038 - KENTUCKY COLONELS - N/A |
| **Sent:** | May 12, 2020 11:23:44 AM |
| **Sent As:** | ecom130@uspto.gov |
| **Attachments:** | Attachment - 1<br>Attachment - 2<br>Attachment - 3<br>Attachment - 4<br>Attachment - 5<br>Attachment - 6<br>Attachment - 7<br>Attachment - 8<br>Attachment - 9<br>Attachment - 10 |

**United States Patent and Trademark Office (USPTO)**
Office Action (Official Letter) About Applicant's Trademark Application

**U.S. Application Serial No.** 88800038

**Mark:** KENTUCKY COLONELS

**Correspondence Address:**
MICHELLE BROWNING COUGHLIN
WYATT TARRANT & COMBS LLP
400 WEST MARKET ST, SUITE 2000
LOUISVILLE, KY 40202

**Applicant:** The Honorable Order of Kentucky Colonels ETC.

**Reference/Docket No.** N/A

**Correspondence Email Address:**

mcoughlin@wyattfirm.com

# NONFINAL OFFICE ACTION

The USPTO must receive applicant's response to this letter within  six months of the issue date below or the application will be **abandoned**.  Respond using the Trademark Electronic Application System (TEAS) .  A link to the appropriate TEAS response form appears at the end of this Office action.

**Issue date:  May 12, 2020**

The referenced application has been reviewed by the assigned trademark examining attorney.  Applicant must respond timely and completely to the issues below.  15 U.S.C. §1062(b); 37 C.F.R. §§2.62(a), 2.65(a); TMEP §§711, 718.03.

**SEARCH OF USPTO DATABASE OF MARKS**

The trademark examining attorney searched the USPTO database of registered and pending marks and found no conflicting marks that would bar registration under Trademark Act Section 2(d).  15 U.S.C. §1052(d); TMEP §704.02.

**SUMMARY OF ISSUES**:

- SECTION 2(e)(2) REFUSAL – PRIMARILY GEOGRAPHICALLY DESCRIPTIVE
- *ADVISORY:  AMENDMENT TO SUPPLEMENTAL REGISTER*
- SPECIMEN DOES NOT SHOW USE OF THE MARK IN COMMERCE
- IDENTIFICATION OF THE SERVICES

**SECTION 2(e)(2) REFUSAL – PRIMARILY GEOGRAPHICALLY DESCRIPTIVE**

Registration is refused because the applied-for mark is primarily geographically descriptive of the origin of applicant's services.  Trademark Act Section 2(e)(2), 15 U.S.C. §1052(e)(2); *see* TMEP §§1210, 1210.01(a).

A mark is primarily geographically descriptive when the following is demonstrated:

(1)     The primary significance of the mark to the purchasing public is a generally known location;

(2)     The goods or services originate in the place identified in the mark; and

(3)     The purchasing public would be likely to believe that the goods or services originate in the geographic place identified in the mark; that is, to make a goods-place or services-place association.

TMEP §1210.01(a); *see In re Societe Generale des Eaux Minerales de Vittel S.A.*, 824 F.2d 957, 959, 3 USPQ2d 1450, 1452 (Fed. Cir. 1987); *In re Hollywood Lawyers Online*, 110 USPQ2d 1852, 1853 (TTAB 2014); *see also In re Newbridge Cutlery Co.*, 776 F.3d 854, 860-61, 113 USPQ2d 1445, 1448-49 (Fed. Cir. 2015).

The applicant has applied to register KENTUCKY COLONELS for "Association services, namely, promoting the interests of individuals selected by the Governor of the Commonwealth of Kentucky to receive an honorary commission; Promoting the interests of members of the organization by means of club services."

The primary significance of KENTUCKY is a geographic location, namely, a state. *See attached dictionary definition.*

The USPTO has long held that a goods-place or services-place association is presumed where (1) the location in the mark is generally known to the purchasing public, (2) the term's geographical significance is its primary significance, and (3) the goods and/or services do, in fact, originate from the named location in the mark.  TMEP §1210.04; *see, e.g.*, *In re Cal. Pizza Kitchen Inc.*, 10 USPQ2d 1704, 1705 (TTAB 1988) (finding a services-place association was presumed between applicant's restaurant services and California because the services originated in California ); *In re Handler Fenton Ws., Inc.*, 214 USPQ 848, 850 (TTAB 1982) (finding a goods-place association was presumed between applicant's t-shirts and Denver because the goods had their geographical origin in Denver); *see also In re Nantucket, Inc.*, 677 F.2d 95, 102, 213 USPQ 889, 895 (C.C.P.A. 1982) (Nies, J., concurring) ("[W]e must start with the concept that a geographic name of a place of business is a descriptive term when used on the goods of that business.  There is a public goods/place association, in effect, presumed." (internal footnote removed)) .

For services to originate in a geographic place, the record must show that they are rendered at least in part in the geographic place.  *See In re Chalk's Int'l Airline Inc.  ,* 21 USPQ2d 1637 (TTAB 1991) (holding PARADISE ISLAND AIRLINES primarily geographically descriptive of air transportation services of passengers and/or goods that are performed at least in part on Paradise Island); *In re Cal. Pizza Kitchen Inc.*, 10 USPQ2d 1704 (TTAB 1988) (holding CALIFORNIA PIZZA KITCHEN primarily geographically descriptive of restaurant services rendered in California and outside the state as well); *In re Opryland USA Inc.*, 1 USPQ2d 1409 (TTAB 1986) (holding THE NASHVILLE NETWORK primarily geographically descriptive of television production and distribution services provided in Nashville); TMEP §1210.03.

The record indicates that applicant's address is in KENTUCKY. Because The Honorable Order of Kentucky Colonels is located in KENTUCKY, it is safe to say that applicant's services are provided in KENTUCKY, and therefore, applicant's services are considered to originate from KENTUCKY.

The addition of generic or highly descriptive wording to a geographic word or term does not diminish that geographic word or term's primary geographic significance. TMEP §1210.02(c)(ii); *see, e.g.*, *In re Hollywood Lawyers Online*, 110 USPQ2d 1852, 1853-54 (TTAB 2014) (holding HOLLYWOOD LAWYERS ONLINE primarily geographically descriptive of attorney referrals, online business information, and an online business directory); *In re Cheezwhse.com, Inc.*, 85 USPQ2d 1917, 1920 (TTAB 2008) (holding NORMANDIE CAMEMBERT primarily geographically descriptive of cheese).

In the present case, the attached dictionary evidence shows that the wording COLONELS in the applied-for mark is merely descriptive of or generic for applicant's services.   The term COLONELS is defined as "an honorary title bestowed by some Southern states, as to those who have brought honor to the state, prominent businesspersons, visiting celebrities, or the like."  *See, attached dictionary definition.*  Therefore, the term COLONELS merely describes the user and/or performer of applicant's services.

Thus, this wording is less significant in terms of affecting the mark's commercial impression, and renders the wording  KENTUCKY the more dominant element of the mark.  Accordingly, when considering the mark in its entirety, it is clear that KENTUCKY COLONELS is primarily geographically descriptive of association services performed in connection with honored members of Kentucky society.

Although applicant's mark has been refused registration, applicant may respond to the refusals by submitting evidence and arguments in support of registration.

*ADVISORY:  AMENDMENT TO SUPPLEMENTAL REGISTER*

The applied-for mark has been refused registration on the Principal Register.  Applicant may respond to the refusal by submitting evidence and arguments in support of registration and/or by amending the application to seek registration on the Supplemental Register.  *See* 15 U.S.C. §1091; 37 C.F.R. §§2.47, 2.75(a); TMEP §§801.02(b), 816.  Amending to the Supplemental Register does not preclude applicant from submitting evidence and arguments against the refusal(s).  TMEP §816.04.

**SPECIMEN DOES NOT SHOW USE OF THE MARK IN COMMERCE**

Registration is refused because the specimen does not show the applied-for mark as actually used in commerce in International Class 35. Trademark Act Sections 1 and 45, 15 U.S.C. §§1051, 1127; 37 C.F.R. §§2.34(a)(1)(iv), 2.56(a); TMEP §§904, 904.07(a), 1301.04(g)(i).  An application based on Trademark Act Section 1(a) must include a specimen showing the applied-for mark as actually used in commerce for each international class of services identified in the application or amendment to allege use.  15 U.S.C. §1051(a)(1); 37 C.F.R. §§2.34(a)(1)(iv), 2.56(a); TMEP §§904, 904.07(a).

Specifically, the specimens show use of the mark in connection with social event services rather than applicant's identified services in the nature of promoting the interests of a certain group in International Class 35.  Therefore, the specimen is unacceptable.

Examples of specimens.  Specimens for services must show a direct association between the mark and the services and include:  (1) copies of advertising and marketing material, (2) a photograph of business signage or billboards, or (3) materials showing the mark in the sale, rendering, or advertising of the services.  *See* 37 C.F.R. §2.56(b)(2), (c); TMEP §1301.04(a), (h)(iv)(C).  Any webpage printout or screenshot submitted as a specimen must include the webpage's URL and the date it was accessed or printed.   37 C.F.R. §2.56(c).

**Response options.**  Applicant may respond to this refusal by satisfying one of the following for each applicable international class:

   (1)    Submit a different specimen (a verified "substitute" specimen ) that (a) was in actual use in commerce at least as early as the filing date of the application or prior to the filing of an amendment to allege use and (b) shows the mark in actual use in commerce for the services identified in the application or amendment to allege use.  A "verified substitute specimen" is a specimen that is accompanied by the following statement made in a signed affidavit or supported by a declaration under 37 C.F.R. §2.20: "The substitute (or new, or originally submitted, if appropriate) specimen(s) was/were in use in commerce at least as early as the filing date of the application or prior to the filing of the amendment to allege use."  The substitute specimen cannot be accepted without this statement.

   (2)    Amend the filing basis to intent to use under Section 1(b) (which includes withdrawing an amendment to allege use, if one was

filed), as no specimen is required before publication.  This option will later necessitate additional fee(s) and filing requirements, including a specimen.

For an overview of the response options referenced above and instructions on how to satisfy these options using the online Trademark Electronic Application System (TEAS) form, see the Specimen webpage.

**IDENTIFICATION OF THE SERVICES**

The wording "Promoting the interests of members of the organization by means of club services" in the identification of goods and/or services is indefinite and must be clarified because the type of organization is unclear.  *See* 37 C.F.R. §2.32(a)(6); TMEP §1402.01.

Applicant may substitute the following wording, if accurate:

**IC 035**:   Association services, namely, promoting the interests of individuals selected by the Governor of the Commonwealth of Kentucky to receive an honorary commission; Promoting the interests of members of the *{indicate specific organization, e.g. farmers, auto workers}* organization by means of club services

Applicant's services may be clarified or limited, but may not be expanded beyond those originally itemized in the application or as acceptably amended.  *See* 37 C.F.R. §2.71(a); TMEP §1402.06.  Applicant may clarify or limit the identification by inserting qualifying language or deleting items to result in a more specific identification; however, applicant may not substitute different services or add services not found or encompassed by those in the original application or as acceptably amended.  *See* TMEP §1402.06(a)-(b).  The scope of the services sets the outer limit for any changes to the identification and is generally determined by the ordinary meaning of the wording in the identification.  TMEP §§1402.06(b), 1402.07(a)-(b).  Any acceptable changes to the services will further limit scope, and once services are deleted, they are not permitted to be reinserted.  TMEP §1402.07(e).

For assistance with identifying and classifying goods and services in trademark applications, please see the USPTO's online searchable *U.S. Acceptable Identification of Goods and Services Manual*.  *See* TMEP §1402.04.

**RESPONSE GUIDELINES**

For this application to proceed, applicant must explicitly address each refusal and/or requirement in this Office action.  For a refusal, applicant may provide written arguments and evidence against the refusal, and may have other response options if specified above.  For a requirement, applicant should set forth the changes or statements.  Please see "Responding to Office Actions" and the informational video "Response to Office Action" for more information and tips on responding.
Please call or email the assigned trademark examining attorney with questions about this Office action.  Although an examining attorney cannot provide legal advice, the examining attorney can provide additional explanation about the refusal(s) and/or requirement(s) in this Office action.  *See* TMEP §§705.02, 709.06.

The USPTO does not accept emails as responses to Office actions; however, emails can be used for informal communications and are included in the application record.  *See* 37 C.F.R. §§2.62(c), 2.191; TMEP §§304.01-.02, 709.04-.05.

**How to respond.  Click to file a response to this nonfinal Office action.**

Black, Mildred
/Mildred Black/
Trademark Examining Attorney
Law Office 130
571.270.1217
mildred.black@uspto.gov