**FILED**

Vanessa L Armstrong, Clerk

July 12, 2020

U.S. District Court
Western District of Kentucky

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | |
|---|---|
| THE HONORABLE ORDER OF ) <br> KENTUCKY COLONELS, INC. ) <br>     PLAINTIFF ) <br> ) <br> v. ) <br> ) <br> DAVID J. WRIGHT, et al. ) <br>     DEFENDANT(S) ) | Civil Action No. 3:20-cv-132-RGJ |

## DEFENDANT'S RESPONSE TO PLAINTIFF'S OBJECTION TO DEFENDANT'S MOTION FOR LEAVE TO FILE SUPPLEMENT TO AMENDED MOTION TO DISMISS AND/OR SUMMARY JUDGMENT [DN55]

In a move intended to suppress evidence that favors the public interest and the law in adjudication, the Plaintiff is attempting in their Response and Objection of Defendant's Motion for Leave to Supplement our Amended Motion to Dismiss and/or Summary Judgement **[DN 55]** to aggravate the instant motion and smear the Defendant's integrity with bad faith before the Court by surplanting *adverse inferences* and a *false narrative* relative to the character of the Defendant without providing unbiased substantive evidence and alleging continued wrongdoing on the part of the Defendant who has been in compliance with the TRO issued on February 25, 2020 since February 27th at 12:00 PM. The Plaintiff's emotional response and objection is <u>riddled with false conjecture</u> referring to the Defendant's filing as a *missive – fifth filing* for dismissal when one of the Defendant's dispositive motions prepared for a hearing on March 04, 2020 **[DE 24]** was never heard or considered by a previous Judge that recused himself, so on new grounds challenging jurisdiction came a Motion to Dismiss **[DE 37]**, which was amended upon requesting leave as **Defendant's Amended Motion to Dismiss and/or Summary Judgement [DE 47]** followed by one Supplement presenting new facts and information **[DN

**52]** which are clearly connected to the amended filing **[DE 47]** accepted by the Court to be heard sometime in the near future, following the most recent Order on June 03, 2020 **[DE 46]**.

## LAW AND ARGUMENT

Courts have wide discretion under the Fed. R.Civ. P 15. Rule 15(d) <u>allows parties</u> to add claims <u>or defenses</u> to their original pleading to address facts that have arisen after the date the original complaint was filed. Supplemental pleadings allow the party to add claims <u>or defenses</u> based on facts that occurred (or were discovered) after the original pleading was filed. The court may permit supplementation even though the original pleading is defective in stating a claim or defense. Courts have discretion to allow a party to supplement its pleading, and the inquiry is very similar to that in Rule 15(a)(2). When a party acts within a specified time frame, it is free to amend its pleading once as a matter of course (21 days after serving it) under Rule 15(a)(1). The differences between a motion which is broadly defined as a document type and the pleading (or content) contained within a motion can be understood by the Court, if not refiling a more properly styled motion is imminent.

Whether the Court understands or views this *pro se* Defendant's Supplement to his Motion to Dismiss and/or for Summary Judgement as a pleading, a memorandum, a supplemental brief, an amendment, or recognize it as a separate supplemental motion to dismiss is irrelevant to the Plaintiff or the *pro se* Defendant, which the Plaintiff acknowledges as a possibility in **[DN 55]**, as the Court may act at its own discretion to serve justice expeditiously and fairly in interest of the parties to settle the controversy. It can be assumed that the *pro s*e Defendant understood a "pleading" to be the *context of his motion*. The Court can also instruct the Defendant to resubmit the Supplement as an Extraordinary Supplemental Motion to Dismiss. It is axiomatic that federal courts are courts of limited jurisdiction. The Constitution restricts this Court to the adjudication of "cases" or "controversies." U.S. Const. Art. III § 2; *Allen v. Wright*, 468 U.S. 737, 750 (1984). The mootness doctrine, which is a subset of the Article III "justiciability" requirement, demands that a case present a live case or controversy at all times during the pendency of the case. *Burke v. Barnes*, 479 U.S. 361, 363 (1987)

The Plaintiff based on the facts presented in the Supplement presents themselves in a desperate position to suppress the information provided by the Defendant to the Court in the Supplement **[DN 52]**, that it goes so far as to try to educate the Court on what can be admitted as a "pleading" and in a "connected supplement" providing relevant facts, motioned through petitioning for Leave from the Court in a deliberate attempt to disguise the ambiguity they are creating, keep the evidence at bay, and keep the case out of the reach of the jurisdictional challenge. *In common law,* **"A pleading can be defined as any formal statement that requests the court to either grant a relief or pass a verdict in a dispute."** However the Court treats the Defendant's Motion and the Supplement to the Motion, a new motion can be introduced sometime in the future raising the same points once the Court rules on, considers or adjudicates the other motions currently pending before it or the Defendant is formally ordered to file an answer the original complaint and given the opportunity to file a counterclaim in *forma pauperis*. None of the challenges to the Court's jurisdiction or the Plaintiff's Verified Complaint by the Defendant can be easily overcome, all of them are relevant and they all raise jurisdictional issues and abuse of the use of the term "Kentucky Colonels" as a trademark and their misuse by the Plaintiff to violate the civil rights of other Kentucky colonels holding letters patent. The only way to resolve the controversy is for the Court to bar the Plaintiff from use of the "term" spuriously as their own name, in a merely descriptive form, or generically as a trademark for associations or fraternal organizations.

The motive of the Plaintiff's response and objection is solely based on the **willful desire for the Court <u>not to</u> consider the content** of the **Supplement to the Defendant's Motion to Dismiss and/or Summary Judgement [DN 52]** which is a well-written 36 page *explicative supplementary document* submitted in good faith with 15 exhibits **<u>providing the evidence demanded by the Plaintiff</u>** in **[DN 49]** to grant relief to the Defendant in the form of a *dismissal or summary judgement action to bring this controversy to a close*, a matter which should be of great interest to the Court since no monetary damages can be collected from the Defendant(s) or awarded to the Plaintiff per Title 15 U.S.Code § 1111 unless they can manage to manipulate or suppress evidence already in existence. Section 1111 is

very relevant because the Plaintiff never notified or informed the Defendant that it had filed for trademark protection for its claimed trademarks nor did the Plaintiff ever publicly state or publish notification of its trademark claims prior to bringing this lawsuit. Moreover the Defendant's position will be based on the statutory fair-use of the term "Kentucky Colonels" under the Lanham Act § 33(b)(4) and 15 U.S.C. § 1115(b)(4)[1]

> Pursuant to § 33(b)(4) of the Lanham Act, a defense to a claim of trademark infringement exists where:
> the use of the name, term, or device charged to be an infringement is a use, otherwise than as a mark . . . or of a term or device **which is descriptive of and used fairly and in good faith** only to describe the goods or services of such party, or their geographic origin. . . .

Statutory fair use defense **prevents a trademark owner from monopolizing or appropriating a descriptive word or phrase**. In a leading case on this defense, *Zatarains, Inc. v. Oak Grove Smokehouse, Inc.*, 698 F.2d 786 (5th Cir. 1983), the court noted that "[t]he defense is available only in actions involving descriptive terms and only when the term is used in its descriptive sense rather than its trademark sense." 698 F.2d at 791 (citing *Soweco, Inc. v. Shell Oil Co.*, 617 F.2d 1178, 1185 (5th Cir. 1980). In our case *HOKC v. KCI*, the Plaintiff provides no evidence whatsoever in their beefy 1,000 case, that *Kentucky Colonels International* (now **Kentucky Colonel Foundation**) has ever used their claimed trademarks or registered trademarks in any way except descriptively and as a generic term, to describe themselves, making dismissal or a summary judgement more likely.

Title 15 U.S.Code § 1114 further provides exceptions and limitations for innocent infringers of registered marks, however as demonstrated in the Supplement, the Plaintiff's marks that were allegedly infringed upon have not yet been registered for any of the purposes, and perhaps the February 17th application must be abandoned, because the subsequent decisions made by the USPTO may have had a different outcome if they were aware of the Plaintiff's intentional misconduct and illegal manipulation of due process by filing their application followed by this civil lawsuit, using the same in order to bring the suit and as evidence of their infringement claim.

---

[1] Under 15 U.S.C. § 1115(b)(4) The statutory fair use defense also applies to the use of a defendant's own name.

The Plaintiff alleges, states and makes inferences that the Defendant is actively threatening them by claiming to hold an academic, educational, and personal interest in Kentucky colonels, American history and the Commonwealth of Kentucky. Despite numerous good faith, fairly placed settlement attempts based on the appropriateness of including consideration for the value of over one decade of work. The Plaintiff <u>has not responded with any counter-offers or engaged in any negotiation</u> whatsoever with the Defendant with good-faith or consideration. The Defendant also agreed as early on with the Plaintiff which further reinforced in the Supplement that we would not engage in *any commercial activity* that could potentially infringe on the philanthropic work, existing commercial activities of the Plaintiff, or sell paid memberships as an organization that promotes Kentucky colonelcy. The only offer to settle the lawsuit came in the form of an email from the Plaintiff based on a no-fault settlement with us sacrificing everything we have worked on since 1998 worked to achieve, our social media work product at the potential dismay of 4000 members, in other words our removal from the public sphere with no financial consideration. The offer proposed by the Plaintiff in itself is totally unreasonable, does not provide consideration for our work, time, our copyright, our social media formation and therefore clearly demonstrates bad faith. **[Exhibit 1]**

"A litigant's suppression, alteration, fabrication, or destruction of evidence poses a serious threat to the integrity of our system of adjudication." [2] The law clearly cannot afford to ignore such activity, and a critically important question is what to do about such activity when it is denounced. "[T]he law, in hatred of the spoiler, baffles the destroyer, and thwarts his iniquitous purpose, by indulging a presumption which supplies the lost proof, and thus defeats the wrong-doer by the very means he had so confidently employed to perpetuate the wrong. " *Pomeroy v. Benton*, 77 Mo. 64, 86 (1882) "[P]roof must rest upon evidence and not upon its absence." *Stocker v. Boston & Maine Railroad*, 151 A. 457, 459 (N.H. 1930)

---

[2] The need to develop all relevant facts in the adversary system is both fundamental and comprehensive. The ends of — justice would be defeated if judgments were to be founded on a partial or speculative presentation of the facts. The very integrity of the judicial system and public confidence in the system depend on full disclosure of all the facts, within the framework of the rules of evidence. United States v. Nixon, 418 U.S. 683, 709 (1974).

The Plaintiff is clearly engaged in an attempt to circumvent and violate the law by acquiring and using as trademarks a term that has been clearly demonstrated by the Defendant in his Amended Motion **[DE 47]** and supported by evidence provided in the Supplement **[DN 52]** to be ineligible for protection or registration, because they are merely descriptive and are generic in violation of §2 of the Trademark Act and Title 15 U.S. Code § 1052 despite the Plaintiff's claim of distinctiveness, the very ideal behind the title itself is distinction, but not under the misguided premise of the HOKC bilking its supporters or as its sole controller is unfair to Kentucky colonels themselves. Moreover the term was clearly used fairly by the Defendant prior to the Plaintiff claiming the term as their trademarks on February 17, 2020. By using the law to mislead the Court to potentially violate the Defendant's Constitutional Rights even temporarily, under the color of law the Plaintiff would manipulate or deceive the Court into violating Title 18 U.S. Code § 242 which states "whoever, under color of any law, statute, ordinance, regulation, or custom, willfully subjects any person in any State, Territory, Commonwealth, Possession, or District to the deprivation of any rights, privileges, or immunities secured or protected by the Constitution or laws of the United States…" Knowingly or unknowingly Plaintiff's counsel is engaged in violating the American Bar Association's Model Rules of Professional Conduct, ABA Rule 8.4 to overcome this adversarial and disputatious Defendant, by making adverse inferences, derogating the Defendant, using false narratives, and attempting to gain an injunction based on unfounded and unproven premises that would violate the Defendant's Constitutional Rights as a United States Citizen.

Perhaps the Plaintiff can demonstrate themselves as the favorite child of the Commonwealth or perhaps the only known child, however this does not preclude our claims or future claims. But only because the state (and perhaps the Plaintiff) does not know or is unaware of many other benevolent and fraternal organizations dedicated to Kentucky colonels in the past and presently. It is very clear that Kentucky colonels (individuals) are a product of the government of the Commonwealth of Kentucky and independent of the Plaintiff. The Plaintiff, the **Honorable Order of Kentucky Colonels** is a voluntary charitable organization dedicated to philanthropy in the Commonwealth, however they are not a true

"state order" or operating under a "state mandate" nor do they acknowledge colonels as "real members" otherwise this case would not exist before this Court, but they have gained an "unfair advantage" due to political connections, their goodwill towards other Kentucky nonprofits, deference by existing since 1932, and their implicit relationship that has been created involving notification of the names and addresses of all new colonels. In law an "unfair advantage" of any kind is simply a form of corruption that lacks transparency, the only remedy to the corrupt behavior or way to make it fair would be for the Governor to publish the names and addresses of all those who are awarded the honor, keep their information confidential letting new colonels find the best organization for them, or for the HOKC to provide Kentucky colonels with free membership and the ability to vote to select their governing board.

The Defendant's Supplement brings very relevant facts and evidence to light that should be considered before the case moves forward, or before the Court can clearly conclude that it has adequate jurisdiction based on all the points raised and brought forth in the supplemental document and in the evidentiary exhibits. It is clear that the Plaintiff is not merely seeking justice, but looking to cause critical damage to the Defendant by contemptuously rejecting *prima facie evidence* about this case and about themselves brought forth by the Defendant that demonstrate both a jurisdictional challenge to the Court and one that eats away at the heart of the Plaintiff's Verified Complaint.

The Plaintiff demonstrates bad faith by submitting to the Court evidence in their Response and Objection which <u>does not demonstrate</u> any confusion by members, or customers, or by their grant recipients, or social media protagonists who clearly understand who is who in their Exhibit **[DN 55-2]**, however a lack of knowledge based on an uneducated assumption by two volunteers (which could be staged), in an attempt to dupe the Court into the gullibility of their narrative and desired assertion that we are "causing" the confusion. It is the HOKC that has not been clear with their own naming convention as demonstrated in the Defendant's Supplement **[DN 52]** which they want suppressed **despite Plaintiff citing and quoting it several times in their Response and Objection [DN 55] which**

**automatically admits the Supplement as evidence which can be used for dismissal or summary judgement.**.

## CONCLUSION

Before this case is concluded if it is not dismissed sooner based on information already provided by the Defendant in the Amended Motion to Dismiss and/or Summary Judgement and the evidence submitted in the Supplement, the Defendant will prove that the Plaintiff is attempting to control, dominate, and gain an unfair advantage over a term and concept that exists in the public domain to monopolize it; that the Plaintiff has manipulated and misconstrued the historical record and origins of Kentucky colonelcy which date back to 1776 before the Commonwealth became a state; that the Plaintiff has misused the law to make a case around a fruitless effort to violate the Defendant's Constitutional Rights; that the Plaintiff is engaged in ambiguating a term that it did not invent or create; and/or that the Plaintiff has caused significant damage to the traditions of the honorable title and to our organization at the cost of other Kentucky colonels.

The Defendant respectfully submits this response to the Plaintiff's objections in good faith to accept our Supplement and pray for dismissal, fairness, justice, understanding and well-being for members of the Court and the parties.

Caracas, Venezuela
Dated: July 13, 2020

*[Signature: Col. David J. Wright]*

Col. David J. Wright
Edificio Torre 997, Local B
San Juan, Caracas
Distrito Capital, Venezuela 1021
david.wright@globcal.net
+58 (426) 111-0529

# Certificate of Service

I hereby certify that on July 13, 2020 this Motion was delivered by email with a delivery receipt to the plaintiff and was sent via Email to the Clerk of the Court on July 13, 2020 before 5:00 PM

Clerk's Office
601 W. Broadway, Rm 106
Gene Snyder United States Courthouse
Louisville, KY 40202

*David J. Wright*