**FILED**

Vanessa L Armstrong, Clerk

August 25, 2020

U.S. District Court
Western District of Kentucky

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
### LOUISVILLE DIVISION

THE HONORABLE ORDER OF )
KENTUCKY COLONELS, INC. )          Civil Action No. 3:20-cv-132-RGJ-RSE
      PLAINTIFF )
       )        **ANSWER AND AFFIRMATIVE DEFENSES**
v. )
       )
DAVID J. WRIGHT )
      DEFENDANT )

## ANSWER AND AFFIRMATIVE DEFENSES

Comes now, David J. Wright, Defendant in *pro se* to herein present his **"Answer and Affirmative Defenses"** to the Plaintiff's "Verified Complaint" **[DE 1]** in Case 3:20-cv-00132 following an Order **[DE 58]** denying his dispositive motions **[DE 24, 37, 47]** and granting **[DE 52]** to supplement **[DE 47]** with **[DE 52-2]** which included exhibits **[DE 52-2-1] through [DE 52-2-15];** the Order **[DE 58]** defaults upon the other three corporate Defendants leaving only Col. David J. Wright, Defendant *pro se* who henceforth submits this "Answer and Affirmative Defenses" voluntarily, absent of an order by the Judge in accordance with the Fed. R. Civ. P. 12 (a)(4)(A) prior to the 14 day deadline to preserve his rights to avoid default and under Fed. R. Civ. P. 19 (if applicable) in accordance with the Fed. R. Civ. P. 8 using the Pro Se Intake email per General Orders **[20-04]** and **[20-11]**.

Defendant respectfully requests that the Court withhold, set-aside, postpone, suspend or otherwise provide relief from final judgement, order, or further proceeding on any default judgement or taking further action against the **corporate defendants, notwithstanding issuance of a default decree,** until the nominal Defendant, David J. Wright who has not been defaulted against can defend the merits of his defense, answer the complaint, and henceforth prove his affirmative defenses under Fed. R. Civ.

1

P. 60 (b)(1), 60 (b)(3), 60 (b)(6) and 60 (d)(3) which the Defendant presents in good-faith and shall show in his Answer, Affirmative Defenses, and Inconsistent Claims or Defenses under Fed. R. Civ. P. 8 foregoing:

## DEFENDANT'S ANSWER TO PLAINTIFF'S COMPLAINT

Defendant's responsive pleading in answer to **[DE 1]** to allegations from Plaintiff's Verified Complaint paragraphs 1-86, hereby answers the Complaint of Plaintiff, The Honorable Order of Kentucky Colonels, Inc. ("Plaintiff") and asserts his Answer as follows:

1) Defendant *denies* the Preliminary Statement unequivocally. The Defendant's use of the Plaintiff's claimed trademark predates Plaintiff's existence on the Internet, the Plaintiff is aware that the Defendant established, registered and used the domain name **[colonel.org]** in 1998, 1999, 2000 and 2001, when the Defendant was engaged in marketing, sale and commerce of "free and paid registry and membership services" under the website title "Kentucky Colonels". The Defendant's claim and use online of the term "Kentucky Colonels"and trade name use of "Kentucky Colonels International" under common law predates that of the Plaintiff relative to Internet domains and their title. In the United States, it is not registration, but actual use of a designation as a mark that creates rights and priority over others. Thus, the rule is that ownership of a mark goes to the first-to-use, not the first-to-file. **[Exhibit 1]** That being said, trademark ownership is not acquired by federal or state registration, although registration is absolutely beneficial. Ownership rights flow from prior use, either actual or constructive.

2) Defendant *denies* that the Plaintiff is entitled to any injunctive or monetary relief. Defendant seeks that the current preliminary injunction against the corporate defendants (in default) be removed because it was fraudulently obtained by the Plaintiff and it affects this Defendant's Constitutional Rights.

3) Defendant *admits* that the Plaintiff is located in Louisville, Kentucky.

4) Defendant *admits* that Ecology Crossroads Cooperative Foundation, Inc. is located in Richmond, Kentucky.

5) Defendant *admits* that Kentucky Colonels International is located in Richmond, Kentucky.

6) Defendant *admits* that Globcal International is located in Richmond, Kentucky.

7) Defendant *admits* that he currently works for Ecology Crossroads and he currently resides in Venezuela as a long-term visitor, is a citizen of the Commonwealth of Kentucky and that his mailing address and legal permanent residence address is 302 General Smith Drive in Richmond, Kentucky.

8) Defendant *denies* that other persons who are employed by Ecology Crossroads have participated in activities described in the Verified Complaint.

9) Defendant *lacks sufficient knowledge to admit or deny* the allegations in this paragraph; but *denies* violating any section of the Trademark Act of 1946, violating any section of the United States Code or violating any of the Kentucky Revised Statutes or any common law statutes of Kentucky that can be prosecuted in this case.

10) Defendant *admits* that the venue of this court is valid and perhaps appropriate, although the case may be more conveniently disputed closer to the origin of the dispute in the U.S. District Court of the Eastern District of Kentucky.

11) Defendant *admits* that the court has jurisdiction over him personally under KRS 454.210(1), but *denies* infringing on any of the Honorable Order's trademarks or trade names, because Kentucky Colonels International has existed since 1998 as an unincorporated international civil society organization to which the Plaintiff *has previous knowledge of and was in contact with* and sent legal threats to by postal mail in 2001 before they emerged online or filed for trademark protection for goods that they began to market beginning in 2002 under the trademark "Kentucky Colonels.", further Defendant *denies* that that the court holds jurisdiction under any other subsection of the aforementioned statute KRS 454.210 because the Defendant does not have any

knowledge of his wrongdoing or non permissible intercourse and is legally engaged in his work as an honorary Kentucky Colonel working with his recommissioned organization and indigenous peoples in South America working with the United Nations Sustainable Development Goals agenda through his organization Ecology Crossroads "colonizing" which is the traditional legal job description of a colonel.

12) Defendant *admits* to the best of his knowledge that Governor Flem Sampson assembled a meeting on May, 02 1931 to establish an organization; but *denies* that the Governor's actions brought prominence to the title of the "Kentucky Colonel", because the fact is that the actions of Governor Flem Sampson, Ruby Lafoon and A. B. 'Happy' Chandler practicing the naming of children, babies and celebrities as "Kentucky colonels" made a mockery of the *honorable* title and diminished its historical prestige resulting in negative newspaper publicity for the Commonwealth which caused Attorney General Beverly Vincent to cancel the tradition of naming civilians as colonels in 1936 **[Exhibit DN 52-2-6]**. The fact is that other organizations were already established or in formation in 1931, in previous years dating back to the 1890s over fifteen different organizations had already been established in the United States. The prestige, honor and distinction of Kentucky colonels was born many years previously dating back to at least 1815, and perhaps as early as 1777 starting with Governor Patrick Henry of Virginia commissioning John Bowman a "colonel" to settle the county of Kentucky on the behalf of the Commonwealth of Virginia. The Kentucky Colonel is a tradition which was formally adopted by the Commonwealth of Kentucky in 1895 by Governor William O'Connell Bradley, it was the subject of a book title in 1890 by Opie Read, "A Kentucky Colonel", a Broadway play in 1892 and was made into one of the first well-known silent films in 1920. By the time Governor Bradley formally adopted the practice as a civilian honor there were well over 1,000 Kentucky colonels and the title had become one of great prestige and prominence across the United States; the presence of the Kentucky Colonel appeared as a legendary iconographic figure in American

literature across the nation in newspapers as far away as Alaska and New Mexico which were not yet admitted as US States. Governors Sampson, Lafoon and Chandler adopted the aforesaid tradition, using their elected offices of governor to dominate, subjugate and recreate the ideal of the Kentucky colonel until being stopped in 1936 by the Attorney General, shortly thereafter the Lt. Governor Keen Johnson reinstated the practice, and subsequent governors treated the honorary title much more carefully and held it in higher regard, except of course Chandler who used the order for political gains and to elevate his office before resigning in 1939, for a higher political office.

13) Defendant *lacks sufficient knowledge to admit or deny* all the allegations (statements) by the Plaintiff in this paragraph; what the Defendant knows about "The Honorable Order of Kentucky Colonels, Inc." is that the organization became legalized in 1957 and changed from a "fraternal state order of merit" formerly called the **"Ancient and Honorable Order of Kentucky Colonels"** with offices located at the state capitol in Frankfort. In 1957 it was permitted under Gov. Happy Chandler to be privatized as a Kentucky corporation, removing itself from the state capitol under the direction of J. Fred Miles who became the Ancient Order's General in 1949. Perhaps only the Commonwealth of Kentucky or the Plaintiff have access to this *historical unpublished information* relative to the conversion. The Defendant *denies* that the Plaintiff has any legal right to claim private ownership of a state organized and controlled honor institution or "order of merit", and simply call it "Kentucky Colonels" like they want to and as it may be convenient to their claims of domination. The Defendant further *denies* that the "original" state order of merit was established for charitable purposes, but rather for fraternal and honorary purposes, until being converted under General J. Fred Miles into a private "non-governmental" organization with a charitable mission. The Defendant *denies* that the organization which they claim was established in 1931 is the same organization that exists today, and further I am certain that other organizations existed called Kentucky Colonels "Clubs or Societies" were established

in prior years dating back to at least 1899 inside and outside of Kentucky that were made up of Kentucky colonels. The Honorable Order was not the first nor is it the only with the right to use the term "Kentucky Colonels" to describe itself. The term "Kentucky Colonel"was merged becoming part of the public domain in the mid-1800s, thanks to the state adopting the idea as a civilian award in 1895, by 1920 the concept of the well-defined idea shared its name with hotels, horses, whiskey, marching bands, a professional baseball team, a barbershop quartet, a jazz band, university clubs, gentlemans clubs, and more than five different fraternal societies.

14) Defendant *lacks sufficient knowledge to admit or deny* the allegations in this paragraph; but *denies* that the "Honorable Order" functions as a "true order" today, the Defendant understands that the sitting Governor is a purely ceremonial and honorific role without remuneration or any official capacity and understands that the Governor does not have any influence over the day to day operations, decision making, selection of the board of directors, or current activities of the Plaintiff's corporation since at least 1992.

15) Defendant *denies* that the Honorable Order has pursued the vision of Governor Sampson in establishing a "membership organization, an order, or a brotherhood" in accordance with the minutes recorded of Sampson in 1931. Today's Honorable Order states in their *Restated Articles of Incorporation* from 1992, "The Honorable Order of Kentucky Colonels has no members." **[Exhibit DN 52-2-8]** Like Governor Sampson, the Plaintiff has made the ideal "Honorable Order" less distinguished and less prestigious, as it was stated in April 1947 in *American Notes and Queries*, page 8 last paragraph, "as one of the past commanding generals of the Honorable Order put it" — "No Kentucky colonel, in our time, takes his title seriously." **[Exhibit DN 52-2-8]** Defendant *denies* that the Plaintiff has an exclusive right to the use of the claimed mark for the purposes by which the Defendant uses it, it is a descriptive and generic term that defines the fact that our organization is made up of people holding the title "KENTUCKY COLONEL". In 2002 the Honorable Order trademarked the descriptive term for the marketing of promotional

products and memorabilia which they sold by mail order and established a website [kycolonels.org] after seeing the success of the Defendant using the term as a page title on the Internet under [colonel.org] in previous years starting in 1998. The Plaintiff is entitled to the mark only for the purposes which it was acquired, (i.e. t-shirts, hats, key chains and other products); the Defendant has at no time infringed on their mark based on any of the current registrations held by the Plaintiff.

16) Defendant *admits* that the Plaintiff has filed for federal trademark protection for the sale of various classes of promotional products in 2002, but *denies* that the Plaintiff is the common law registrant or creator of the intellectual property in dispute in this complaint, the fact is that the Plaintiff had knowledge of our existence, made legal threats to us, and stole our intellectual property through intimidation under duress in 2000 and 2001. The Defendant has not infringed on the Plaintiff's trademark, has not used the Plaintiff's intellectual property as a trademark, has not sold or attempted to sell trademarked goods, nor does the Defendant claim exclusive trademark rights to the use of the term "KENTUCKY COLONELS", the Plaintiff is engaged in creating ambiguity by filing "identical marks" for many multiple international and US classes of trademarks for both products and services which the Plaintiff is unclear about, the Defendant therefore *denies* that any or all of these trademarks are valid or should be considered valid, because the Plaintiff is alleging our descriptive use of the term as a part of our trade name is an infringement, and does not allege infringement of any specific trademark that they do own. The purposes and intentions of the Plaintiff's organization and the Defendant's organization are unique and distinctly different with no overlapping or conflicting purposes. The Defendant's organization is established for "fraternal purposes" which cannot be accomplished to any degree by the Plaintiff because as stated "twice" clearly in their Articles of Incorporation the organization "has no members". The Defendant's organization is developed to serve the needs of Kentucky colonels themselves cooperatively and individually as an association by providing

membership services; whereas the Plaintiff's organization is developed to serve the general public of the Commonwealth through the collective charity of its donors who happen to be Kentucky colonels, and the Plaintiff sells clothing, promotional items, food and tobacco products under the brand name "Kentucky Colonels".

17) Defendant *denies* that the Plaintiff has "continuously" used the trademark "KENTUCKY COLONELS" throughout its history or "decades" as stated in the complaint. The "HONORABLE ORDER OF KENTUCKY COLONELS" <u>has always used its **full corporate name**</u> in connection with its *philanthropic, membership, and social activities* until recently when it filed for trademark protection on February 17, 2020 after receiving a proposal from the Defendant to assume control of our common law unincorporated civil society organization and intellectual property through a merger and consolidation proposal submitted in good faith under various practical doctrines governing business and fair-play. It was not until 2002 that the Plaintiff began using the term from the public domain to identify its "goods" that it marketed through its mail-order catalog. The positive connotation worldwide of "KENTUCKY COLONELS" is at the responsibility of the Commonwealth of Kentucky, the fact that each individual colonel is a goodwill ambassador, and the rich history of the Kentucky Colonel as an icon of the state dating back to its early days, the connotation is based on newspaper articles, books and magazines dating back to the very beginning of the state's history, it is also based on "tens of thousands of individuals" worldwide who have been granted "letters patent" by the governors of the state into the 1800s, not as any direct result of the Plaintiff's efforts to push the term or market their trademarked product line, their claimed trademark was only applied to "goods" until now in 2020 and has been a mark that the Plaintiff has licensed to a third-party, which operates an independent **for-profit** enterprise that is responsible for the marketing efforts of "goods" bearing the Plaintiff's mark. "Kentucky Colonels" is merely a descriptive term that refers to two or more people that have received the title of "KENTUCKY COLONEL" from the

governor of the state, notwithstanding the Plaintiff or their branded goods or their more recent trademark applications.

18) Defendant *admits* contacting the Plaintiff in 2019, after being contacted by the Plaintiff in 2000, 2001, 2016, 2017, and 2018 relative to their interest in my own intellectual property, in particular a Kentucky Colonel(s) Registry which I developed and used as a tool for promoting paid membership beginning in 1998 using the Internet. My contact in 2019 was a follow-up to the executive director, Sherry Crose contacting me in 2017 expressing her interest in collaboration with the idea.

19) Defendant *admits* that we began to "relaunch" our Registry originally developed in 1998, in 2019 under the name "Kentucky Colonels International" and charged a fee to participate in the project the same as we did in 1998. However upon understanding the true cost behind the practical application of the Registry we halted the project to seek the assistance of the Plaintiff which had indicated an interest in being involved in 2017 when we spoke about it publicly on social media inviting participation.

20) Defendant *admits* contacting the Plaintiff to request assistance and/or present a merger proposal which would allow the Plaintiff to assume (or absorb) our organization, its mission and intellectual property if they agreed to our terms and conditions to continue the project through its fruition and practical development for Kentucky colonels internationally and around the world.

21) Defendant *admits* that the executive director of the Honorable Order requested that I present a proposal in writing so she could present it to their board.

22) Defendant *admits* that he forwarded the Honorable Order a package of documents which included a letter addressed to Sherry Crose, Executive Director of the Honorable Order, a document entitled "Presentation to Honorable Order of Kentucky Colonels, Inc.," and a document entitled "Draft Merger Acquisition and Consolidation Agreement." I further *admit* that the proposal included (modest) financial payments to myself and a short term employment

agreement to work remotely in a fair exchange for the acquisition of our intellectual property, social media development efforts, our membership program, our Registry, ideas, concepts, research, management system, training of their employees and a smartphone app. Considering the time invested, the number of members we had, the years and precedence on Facebook, the technical skill involved in the development, the administrative tasks and the potential value of the proposal being implemented for the Plaintiff, Defendant *denies* that the payment would have been a "generous payment" but a very "modest payment" which could yield millions of dollars in charitable contributions, membership fees, Internet service fees and market potential within several short years.

23) Defendant *admits* that on January 20, 2020, the Honorable Order notified me that it was not interested in the merger, acquisition, or transaction reflected in my proposal. The Plaintiff did not offer a counter proposal or attempt to negotiate over any of the points or comment on my intentions outlined in my proposal.

24) Defendant *admits* that shortly thereafter, I advised the Honorable Order by text message that I intended to "move forward with our program and the formalization of the KCI agenda" and essentially later in the day on January 20 initiated the process by registering the domain name [kycolonels.international] exactly as specified in the merger proposal as an abbreviated and descriptive name for "Kentucky Colonels International" which they have known me by since sometime between 1998-2000. On the following day, January 21, I also notified Governor Andy Beshear with a hand delivered letter to his office in Frankfort, of our intentions and the impropriety I suspected and alleged regarding the Honorable Order.

25) Defendant *admits* that on February 10, 2020 that I, acting as the KCI Facebook page placed a comment on the HOKC Facebook page in reply to a "status post" that was slanderous and demeaning toward myself and the organization I founded in 1994 "Ecology Crossroads" encouraging Kentucky colonels to read my editorial in defense of their slanderous and tortious

status post. I further admit writing the opinion editorial which was based on truth and fact which brought forth their status post. As a donor of the HOKC, a Kentucky colonel and Facebook user I am entitled and within my rights to defend myself, write, comment and publish my grievances and qualms about impropriety and corrupt behavior.

26) Defendant *denies* candidly soliciting donations using "KENTUCKY COLONELS INTERNATIONAL" as a trademark belonging to the Plaintiff, "Kentucky Colonels International" is a <u>trade name</u> the distinction in law is clear that there are differences between a trademark and a trade name. Trademark law is very specific and deals with specific items. There is much case law that specifically recommends against using a trademark and a trade name in confusing ambiguous language, method or form. Trademark attorneys generally recommend that trade names not be protected by a trademark because they stand on their own and can be protected based on state registration and use in corporate documents, trademarks are used to propel marketing, commercialize and identify specific goods and services. Many products use multiple trademarks.

27) Defendant *denies* that his editorial disparaged the Honorable Order; but *admits* that his editorial seriously criticized the Honorable Order and accused it of a variety of misconduct, including "misleading their donors and supporters for many years," because it's *Restated Articles of Incorporation* from 1992 state it "has no members". **[Supra Exhibit DN 52-2-8]** Defendant *denies* that this violates any state or federal statutes, it is a fact that the Plaintiff is engaging in "deception, and fraudulent presumptive behavior." by leading members to believe they are members of an organization that has "none" is not only misleading, but is a deceptive and fraudulent scheme to garner donations from unsuspecting people in the name of goodwill and charity. It is a violation of ethics and lawful conduct that this sort of conduct is not disclaimed on the "membership" materials that the organization provides to their donors, most people believe it is a membership organization first and a charity second.

28) Defendant *admits* editing the Wikipedia article entitled "Kentucky Colonel" and has been editing it for a number of years, the Defendant is a very conscientious writer, has made a number of contributions to Wikipedia and is a contributor of a number of other articles as well and owner the username "Problemsmith", I have been making editorial contributions on Wikipedia since 2005. However the Defendant *denies* removing the trademark "Kentucky Colonels" from the "Kentucky Colonels" <u>disambiguation page</u>, Problemsmith "added" the trademark "Kentucky Colonels" to that page and it was soon removed by another Wikipedia editor who reverted my edit because the trademark either did not belong there or was not appropriate for some other reason.

29) Defendant *admits* that confusion may be likely to occur periodically on Facebook and in social media, but it is not a frequent occurrence especially with well-informed consumers and social media users. There has never been an incidence of confusion outside of Facebook, where the Defendant was 7 years before the Plaintiff. Most companies and organizations train their social media protagonists well so the likelihood of confusion is not high, the Facebook platform is based on a logarithm where the pages that people have already identified with a "like" come up first when tagging a page. We have been on Facebook since 2007 with the first social media groups for Kentucky colonels and started our first page for Kentucky colonels in 2009. The Plaintiff came online at Facebook in December of 2014 so it is more likely that a person or organization that "liked" our page first before they liked the Honorable Order of Kentucky Colonels would get the first result. Since the Plaintiff came online we have experienced confusion only 6 times in 6 years, most of the time is when a person wants to make a claim or exchange a product that was sold by the Kentucky Colonels Store, these users are quickly directed to the Plaintiff, because the store does not have a social media page. Some of the confusion may come from the Plaintiff, "Honorable Order of Kentucky Colonels", changing their

name several times to "Kentucky Colonels", then to "Kentucky Colonels - National Headquarters" and then back to their corporate name. **[Exhibit DN 52-2-10]**

30) Defendant *denies* using the Internet and social media to confuse the public or misappropriate the goodwill, or profit from the KENTUCKY COLONELS trademark, the Mark is and has been specifically designated to identify promotional products, cigars and food produced under a license owned by the Honorable Order. The Defendant has always relied on its own goodwill, activities and ideas to promote itself and has always placed a disclaimer on pages dating back to 1998, three to four years, or at least two years before the Plaintiff actually came online in any way. Most likely the Plaintiff is benefitting from the idea that I once proposed to Glen Bastin, former Executive Director of the Honorable Order in 1998, who told me on the phone that the Honorable Order uses the postal mail and was not interested in being on or using the Internet. His harsh criticism of the Internet prompted me to establish our program for Kentucky colonels online and develop a registry for our new members.

31) Defendant *denies* any and all damages claimed by the Honorable Order, and *denies* the involvement of any other parties or unknown defendants. The Defendant was online first and can demonstrate its activities using the Internet Archive that it existed, registered its original domain, was listed first online and engaged itself first in setting up e-commerce using online Internet resources.

32) Defendant *denies* that **COUNT ONE** regarding **Federal Trademark Infringement** contains any relative facts that can be prosecuted against this defendant.

33) Defendant *denies* that it has infringed or led consumers to believe intentionally or unintentionally that we are the Plaintiff and has not committed trademark infringement in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1). We never offered any products online or on Facebook that the Plaintiff has registered trademarks for.

34) Defendant *denies* that the Honorable Order has any legal rights to the trademark "KENTUCKY COLONELS" for anything other than products beginning in 2002. The Defendant did not have any knowledge of of any presumptive rights that the Plaintiff claims to have, the Defendant has since 1998 used the term Kentucky Colonels descriptively as part of its trade name much like other organizations have in the past dating back to the early to late 1890's and based on the title being held by two or more individuals likely to form a fraternal organization and licensed by the state through "letters patent" to use the term to identify themselves.

35) Defendant *denies* that he is not entitled to profit or gain from its work efforts and first emergence online and the benefits enjoyed by a free social enterprise. In law and equity we are entitled to maintain common law rights over our ideas, concepts and lawful consideration for our inventions and creations.

36) Defendant *denies* causing any intentional irreparable harm to the Plaintiff. The Plaintiff has a lawful remedy for their dilemma and that is to buy or show consideration for the ideas, concepts and methods it has assumed from the Defendant by copying its methods and concepts for their own benefit and engaging itself in platforms where the Defendant already exists or the Plaintiff can stop insisting on causing intentional ambiguity between themselves and the generic and descriptive term "Kentucky Colonels" which they adopted to sell products in 2002, their website copyright name in 2019, now services 2020, and now as their trade name which is not registered in Kentucky. The Plaintiff is having a field day with ideas, concepts, history, public domain and claiming it all as their own essential intellectual property, this must stop it is ambiguous.

37) Defendant *denies* that **COUNT TWO** regarding **Federal Trade Name Infringement** contains any relative facts that can be prosecuted against this defendant.

38) Defendant *denies* that it has infringed or led consumers to believe intentionally or unintentionally that we are the Plaintiff and has not committed trade name infringement in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). "Kentucky Colonels" is not the registered trade

name of the Plaintiff, their only registered trade name is "Honorable Order of Kentucky Colonels", the Plaintiff is causing its own trade name and trademark to seem ambiguous to overlap with the Defendant's descriptive use.

39) Defendant *denies* it has committed any act of trade name infringement, the Defendant has used the name "Kentucky Colonels International" since 1998 as an unincorporated trade name and the Plaintiff has had numerous contacts with the Defendant since, in 2000, 2001, 2016, 2017, 2018 and 2019 and our trade name has never been an issue of their concern until they decided to usurp our intellectual property and bring forth this lawsuit following their recent trademark applications on February 17, 2020, three days before filing this lawsuit.

40) Defendant *denies* that it has committed any acts of trade name infringement willfully against the Plaintiff or with any knowledge or foresight to cause any confusion between the Honorable Order of Kentucky Colonels and our own organization. The Honorable Order is attempting to confuse this court into believing that its trade name, trademark, servicemark, domain name, corporate name, products, services are all one in the same and distinctive of Plaintiff based on the false presumptions, ambiguous language and terms made in this complaint. Their trade name is "Honorable Order of Kentucky Colonels" not "Kentucky Colonels" and the Honorable Order does not have any "prior legal rights" to the use of "Kentucky Colonels" as a trade name or any registrations for the assumed name "Kentucky Colonels" at the time that the Defendant registered its trade name "Kentucky Colonels International" with the Secretary of State in Kentucky on January 30, 2020 or when KCI selected its trade name on Facebook in 2009, or online using the Internet when KCI registered its domain name and publicized its Registry and began selling memberships. The Defendant is entitled to the same equity and consideration in law that the Plaintiff is.

41) Defendant *denies* that it has caused any irreparable harm to the Plaintiff, quite the contrary; the Plaintiff has many remedies to stop, cease and desist in confusing the public, this court and the

media by intentionally ambiguating the term it adopted from the public domain and history in such a way to monopolize and dominate it beyond recognition and committing genericide upon themselves that crosses over to the merger doctrine for the term in the public domain.

42) Defendant *denies* that **COUNT THREE** regarding **Federal Unfair Competition and False Designation of Origin** contains any relative facts that can be prosecuted against this defendant.

43) Defendant *denies* the allegation that he has unauthorizedly used any mark that belongs to the Plaintiff, the Defendant's use is a descriptive function of his name based on an award he and other members have received from the Governor of the Commonwealth of Kentucky. Kentucky colonels are authorized by the Commonwealth under "letters patent" to identify themselves as a "Colonel", "Kentucky Colonel", "Honorable" or as an "Honorary Commissioned Officer". In no way has the Defendant or his organization ever indicated that it is a part of, affiliated, associated, endorsed, or sponsored by the Plaintiff, it is not a mere coincidence that the Plaintiff has decided to create ambiguity to trademark the term "Kentucky Colonels" which is a reference to two or more holders of this title, their actions are intentional and developed to confuse the public and usurp the ideal in a land-grab of a descriptive and generic term.

44) Defendant *denies* that he or other Defendants have unauthorizedly used in commerce any trademark belonging to the Plaintiff or constituted use of a false designation of origin and misleading description or representation of fact. The Defendant has been a legal citizen of the Commonwealth of Kentucky since 1992 and the organization I represent is located in Kentucky. The Plaintiff represented by a trademark attorney understands that "Kentucky" is not a claimable part of their alleged claimed mark, further the Plaintiff understands that "Kentucky Colonel" is a descriptive term that was adopted by their founders, that generically describes any person that has received an honorary title from the Governor based on their action or activity of a noteworthy deed. Such individuals are free to promote the state and themselves under letters patent issued by the Governor to form companies and represent themselves in the state and

abroad as goodwill ambassadors for the state and identify themselves as Kentucky colonels under their "letters patent".

45) Defendant *denies* his conduct as alleged herein was willful or intentional or is likely to have caused confusion, mistake, or deception as to the affiliation, connection, or association of Defendants with the Honorable Order. Members who are donors of the Honorable Order are very wary, intelligent and honorable people; likewise those who have joined or donated to us are equally intelligent and honorable people who all happen to be Kentucky colonels. The likelihood of confusion between us is equal or less than the likelihood of confusion between different Masonic Lodges, Lion's Clubs, United Way Charities, United Nations Associations or Rotary Clubs that are mostly all independently organized and operated. Similarly the Chamber of Commerce of Los Angeles is a distinct separate entity from the Chamber of Commerce of West Los Angeles or the National Chamber of Commerce or the International Chamber of Commerce. Chamber of Commerce cannot be trademarked for an actual chamber of commerce unless disclaimed. While the Honorable Order is focused on activities inside the State of Kentucky, Kentucky Colonels International are focused on activities at an international level and activities not inside the state.

46) Defendant *denies* that his or other Defendant's conduct as alleged herein constitutes unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

47) Defendant *denies* that the Honorable Order is or has been suffering irreparable harm or we would have heard about this a long time ago between 1998 and 2019. The fact is that we stepped up the pace despite being more popular online at one time to formalize our membership development project after offering the Honorable Order the opportunity to merge, buy us out or otherwise negotiate the acquisition of our ideas, concepts, and intellectual property. One of the things that the Honorable Order can do is disambiguate itself by investing more energy into promoting its legal trade name "The Honorable Order of Kentucky Colonels" instead of ambiguating itself

with its trademark registered in 2002 which represents its brand name clothing and product line that is marketed by and licensed by Upper Right Marketing, LLC. operated by James "Jimmy" Dawahare of Lexington who is the primary beneficiary of their product line trademark(s) and brand name.

48) Defendant *denies* that **COUNT FOUR** regarding **Federal Trademark Dilution** contains any relative facts that can be prosecuted against this defendant.

49) Defendant *denies* that "KENTUCKY COLONELS" is a distinctive and famous mark within the meaning of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c). Claiming distinction involves a complex test, since the ideal of "Kentucky Colonels" was published in newspapers around the world before the existence of the Plaintiff it is just as distinctive as "Chamber of Commerce" is for a group that promotes businesses under the merger doctrine, it would not be allowed, but this does not preclude it from being registered as a trademark for an unrelated business. The fact is that "Kentucky Colonels" is a descriptive term that describes people who actually are Kentucky colonels, for those same people to use it in a way that is not descriptive of themselves cannot preclude others from using it as well in its descriptive or generic form. There are more than 12 other organizations that use the term Kentucky Colonels to describe themselves, the Honorable Order is coming after us because we have intellectual property, first use rights online and great potential that they want but refuse to pay for.

50) Defendant *denies* that the Honorable Order's Mark became distinctive and/or famous before our alleged actions in the complaint, Kentucky Colonels International has been using "KENTUCKY COLONELS" since 1998, at the time we first established ourselves online there were sports teams, musical groups, quartettes, marching bands, universities and other fraternal organizations that had previously used the term as their trademark, trade name or brand some descriptively and some uniquely having nothing to do with actual Kentucky colonels.

51) Defendant *denies* he has diluted, blurred or otherwise harmed the Plaintiff's trademark because the Defendant does not produce, sell or market any products that the Honorable Order does using their mark, nor does the Defendant organize events, provide charitable grants or any other services similar that the Honorable Order has registered or applied for registration for. The Defendant is engaged in providing Internet services, writing biographies, and providing a registry that the public and other colonels who are members can access to identify whether a person has been commissioned or not on a voluntary basis.

52) Defendant *denies* that he has tarnished the reputation or goodwill of the Honorable Order or their trademark.

53) Defendant *denies* that he is to be held accountable or responsible for any dilution in violation of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

54) Defendant *denies* that he is responsible as alleged in the Complaint of any intentional and willful in violation of Section 43(c)(1) of the Lanham Act. If any harm has been brought to the Plaintiff it was based on their own acts and omissions of fact to their honorary members because of the Plaintiff's failure to disclose the actual status of members and their own engagement in political meddling to coerce donors to donate under Governor Bevin. It is my free, civil and liberal right to openly criticize and report such actions that I view as inappropriate or unethical.

55) Defendant *denies* that **COUNT FIVE** regarding **Anticybersquatting Consumer Protection Act** contains any relative facts that should be prosecuted against this defendant.

56) Defendant *denies* that the Plaintiff's KENTUCKY COLONELS trademark is a distinctive and famous mark within the meaning of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c). The Plaintiff's Mark is a descriptive term that should and <u>can be used to describe persons</u> that have been commissioned as Kentucky colonels. There is case law that precludes a trademark that is both descriptive and generic from being used descriptively as a website domain. A trademark cannot be used to serve generically, descriptively and distinctively at the same time.

57) Defendant *admits* that according to publicly available WhoIs Data, on September 29, 2000 the Honorable Order registered the domain name [www.kycolonels.org].

58) Defendant *admits* that according to publicly available WhoIs Data, on January 21, 2020 the domain name www.kycolonels.international was registered by the Defendant.

59) Defendant *denies* that it incorporated the "KENTUCKY COLONELS" trademark in their domain name. Defendant admits Defendants' domain name incorporates the term "Kentucky Colonels" descriptively as a domain name and is similar to the Honorable Order's domain name, but it is not dilutive or exactly the same, it is merely descriptive. The Plaintiff when approached on January 13, 2020 was given written notice by the Defendant that we were intending to register [kycolonels.international], their response on January 20, 2020 did not reject the idea, so our concept was acted upon with their implied consent and without any objection. Moreover the Honorable Order does not market products directly from their website [kycolonels.org] but from another site owned by Upper Right Marketing which incorporates their trademark non descriptively [kycolonelsstore.com]. Likewise the Plaintiff does not own [kycolonels.com] or [kycolonels.ch] so they have no exclusive right to use their domain as a trademark for its goods. There is no claim in their privacy information or elsewhere that the website domain is their trademark, nor should it be assumed since it is being used descriptively to describe a site that is about and caters to those who have been commissioned with the honorary title "Kentucky Colonel". If the Plaintiff wanted to protect its website it would have registered it with an ISSN to properly copyright it. Currently the website uses the © symbol for a copyright that they have not applied, it would be permissible if they used their registered company name with the © 2000-2020 Honorable Order of Kentucky Colonels but they are not, they use a trademark to represent their copyright with the © symbol.

60) Defendant *denies* using its website in bad faith or in any attempt to deceive anyone or unfairly benefit from the use of the trademark "KENTUCKY COLONELS" which refers to products marketed from the [kycolonelsstore.com] operated by Upper Right Marketing.

61) Defendant *denies* committing any acts or participating in conduct as alleged which constitute cyberpiracy in violation of Section 43(d) of the Lanham Act, 15 U.S.C. § 1125(a).

62) Defendant *denies* the conduct as alleged herein is causing immediate and irreparable harm and injury to the Plaintiff, and to its goodwill and reputation. The Honorable Order has alternatives to better planning and better strategic Internet marketing practices available to them such as using a clearly distinctive domain name that is not descriptive like [hokc.org], [hokc.net], [hokc.info] and/or [hokc.com] which are all distinctive and provide protectable IP that are not descriptive.

63) Defendant *denies* that **COUNT SIX** regarding **Defamation** contains any relative facts that should be prosecuted against this defendant.

64) Defendant *denies* making any false or defamatory statements against the Plaintiff, the opinion editorial (commentary) piece that I wrote on our blog is based on true, factual information where numerous links are provided so that readers can check with official documents registered by the Plaintiff with the State of Kentucky and actual documents provided by the Plaintiff. Defendant, as the writer I am within my First Amendment Constitutional Rights to criticize, declare and publicly voice my opinion especially when it is backed up by written evidence. It is crystal clear that the Plaintiff willfully deceives its donors into believing they are actual members, while they do not follow US Code of Federal Regulations (CFR) definition of a membership organization or follow the Model Nonprofit Corporation Act's guideline, which defines the legal rights of members. There are no disclaimers or statements referring to honorary or conditional membership in the Plaintiff's materials, it is a condition and policy of the organization to require a donation in order to receive an annual membership card. I stand behind my editorial and commentary.

65) Defendant *denies* making any false statements about the Plaintiff, all of the published claims are true and factual and evidence supporting these claims has been submitted to the Court.

66) Defendant *denies* making statements that intend to injure or harm the Plaintiff in any way, after complaints and objective criticism relative to the policies and donation scheme that is based on a quid pro quo of making a donation to acquire a license plate, a membership card or make a nomination violate the ethical protocol of providing a "free honorary membership" when no actual genuine membership exists. The Defendant was writing on the behalf of <u>many others</u> that brought the matter up in discussions using social media channels, and further wrote the article to help disambiguate the organizations from one another. Anyone reading the articles will be clearer and less confused between the groups if they were confused previously based on the ambiguity created by the Plaintiff by calling itself by other than its legal trade name or attempting to make its trade name the same as its trademark.

67) Defendant *admits* that comments were shared on public pages where the Plaintiff conducts their activities and the Plaintiff has full control over which words, terms, and people that can view and comment on their page. Page owners are capable of blocking these comments it may feel are damaging to it, however the Plaintiff  did not choose to block, moderate or otherwise censor these comments or posts from its "public" page. Some of their supporters voluntarily are also our supporters, but their organization is private. Our organization uses the US Code of Federal Regulations (CFR) definition of a membership organization is public, whereas the Plaintiff obtains its supporters (members) based on an inappropriate (perhaps illegal) insider arrangement where the addresses, phone numbers and emails are obtained from the Kentucky State Government that violated personal privacy laws at the time the blog article was written. The Plaintiff is not a state mandated or controlled organization, it is a private charity that depends on the state creating new colonels and donations from those colonels.

68) Defendant *denies* that any comments were made by himself or other Defendants with any malice, all comments were appropriately placed in reply to "status post(s)" made by the Plaintiff or its social media page employees (operators), who have the ability to moderate, censor, delete or block social media users and filter profanity or other words they may find objectionable.

69) Defendant *denies* that any of the statements made by himself, members or any other Defendants are actionable or were beyond the privilege of constitutional free speech and a person's ability to voice their grievances in an organization where they may be a donor or a member. The Defendant captured a number of screenshots of comments that were truly defamatory made against us by the Plaintiff and other people that refused to read or inform themselves properly relative to the evidence and criticism I presented.

70) Defendant *denies* responsibility for any pecuniary damages, all statements made by its unpaid members, were made as volunteers or neutral observers and are exempted under US Law by the Volunteer Act. The Plaintiff must enjoin those particular members, volunteers or persons in a separate legal action if it feels it was harmed or has suffered any damages or has sufficient information to engage them, the Defendant denies acting in concert with any party in any sort of conspiracy to harm the Plaintiff, all of the actions made by the Defendant were made with a sense of objective criticism meant to better or change policies of the Plaintiff's non-democratic organization.

71) Defendant *denies* that **COUNT SEVEN** regarding **Common Law Trademark Infringement and Unfair Competition** contains any relative facts that should be prosecuted against this defendant.

72) Defendant *admits* that the Plaintiff has a protectable trademark "KENTUCKY COLONELS" which is protected under US Trademark Law relative to the sale and commercial marketing as a brand name by them and by their licensees for certain classes of merchandise which was first acquired in 2002. Defendant denies that this registered trademark extends to the common law

jurisdiction, because it is too descriptive and generic and used by many organizations, sports teams, clubs, fraternities, companies and corporations that have existed before the Plaintiff used the trademark and continue to exist today. The Plaintiff's trademark is not valid or protectable in any universal way for all purposes, nor to describe Kentucky colonels engaged as Kentucky colonels, any and all claims asserted by the Plaintiff for these purposes are subject to genericide by other Kentucky colonels that do not necessarily support their organization.

73) Defendant *denies* that he is likely to cause any confusion about the source or origin of the services in violation of the common law of the Commonwealth of Kentucky, such use of a descriptive term excluding the words "Honorable" and "Order" is not likely to impair the goodwill of the Honorable Order's mark or actual trade name, There are several other organizations in Kentucky that use the term "Kentucky Colonels" to describe themselves which are groups independent of the Plaintiff made up of Kentucky colonels and it has never been a problem in the past.

74) Defendant *denies* that it is infringing on the Plaintiff's common law trademark it claims to have or otherwise deceiving consumers as to the origin, source, sponsorship, or affiliation of Defendants' services, and not likely to cause consumers to believe, that Defendants' services are sold, authorized, endorsed, or sponsored by the Honorable Order, or that Defendants are in some way affiliated with or sponsored by the Honorable Order because in fact Defendants have no connection or affiliation with the Honorable Order except many of our members are also their donors.

75) Defendant *denies* use of the Plaintiff's common law trademark, has not engaged in misrepresentation or unfairly competed with the Honorable Order in violation of Kentucky common law.

76) Defendant *denies* its actions constitute trademark infringement or unfair competition in violation of the common law of the Commonwealth of Kentucky, otherwise the Secretary of State would not have permitted us to file our Assumed Name Registration on January 30, 2020.

77) Defendant *denies* that he or other Defendants have not made any substantial profits or gains as a result of Kentucky Colonels International or the Kentucky Colonel Foundation, our organization is based on benevolence and fraternity and was not developed based on the ideals of making money. Our total income from membership and donations during 2019 and 2020 combined does not exceed $500 because we never had the opportunity to fully develop our objectives, implement our intellectual property plan or launch the technology we developed.

78) Defendant *denies* causing any immediate or irreparable harm or injury to the Honorable Order, or to its goodwill and reputation or confuses the public. The Honorable Order is not a public charity; it depends on an insider relationship connected with the state government which provides them with the names, addresses, phone numbers and emails of all those who become Kentucky colonels. Contrary to the Honorable Order's claim all other organizations that are not privileged to this private and confidential information are the ones being harmed. The Plaintiff has various remedies included but not limited to, buying out their potential competitors or better educating their own donors, but they are not entitled to use the law to bully and discourage others with good initiatives, ideas, subject them to criticism or suppress their Constitutional Rights under the color of law to dominate and monopolize a term that exists in the public domain which is both generic and descriptive of a group of people that have been granted an award by a state official as a private charity.

79) Defendant *denies* that **COUNT EIGHT** regarding **Common Law Dilution** contains any relative facts that should be prosecuted against this defendant.

80) Defendant *denies* that the Plaintiff's common law trademark is as well-known in relation to them as they would like it to be because it is based on a term that was created and existed long before

they did as the Plaintiff themselves have stated *supra* the ideal was already well-known and established when it was taken on by Governor Sampson. It did not belong to the Plaintiff when it was adopted by the Governor and it does not belong to them now, the ideal belongs to the history of the state and existed before the state officially adopted it in 1895. Kentucky Colonel is a descriptive term that appeared in US newspapers more than 50,000 times before the existence of the Plaintiff, this can be proven using any newspaper search database.

81) Defendant *denies* that he has used any trademark common law or registered mark , in such a way to confuse anyone or to indicate that the Plaintiff and the Defendant are sponsored by, associated or affiliated in any way.

82) Defendant *denies* that the use of "Kentucky Colonel" or "Kentucky Colonels" is likely to harm the goodwill of the Plaintiff. The award is separate and distinct from both the Plaintiff and Defendant, individuals are nominated to become Kentucky colonels, but not necessarily to support or become donors of the Plaintiff or members of the Defendant or their organizations. Upon information and belief prior to beginning our objectives in 1998, the award is granted by the Governor independently of the Plaintiff, the Defendant, or other organizations according to records provided by the state. Showing deference for a private organization is unconstitutional.

83) Defendant *denies* that **COUNT NINE** regarding **Unjust Enrichment** contains any relative facts that should be prosecuted against this defendant.

84) Defendant *denies* that he has used any trademark belonging to the Plaintiff or has caused any expense except perhaps the Plaintiff wasting their money on the bringing of this 1,200 page lawsuit which has caused great suffering, damages and destruction of the Defendant's intellectual property, plans and objectives.

85) Defendant *denies* collecting any money whatsoever intended for the Plaintiff, nor has any person ever mistakenly donated any money and requested a refund intended for the Plaintiff.

86) Defendant *denies* receiving any donations that it has unjustly received nor has the Defendant ever used any trademark to collect donations. In all appeals for donations submitted to this Court it is crystal clear that we are not the Plaintiff and there has never been a mistake relative to donations.

## PRAYER FOR RELIEF

WHEREFORE, Defendant denies that Plaintiff is entitled to any of the relief requested following their "WHEREFORE" clause following Paragraph 86, including subparts (A) through (M) all inclusive, and respectfully requests that the Court dismiss the Complaint in its entirety and enter judgment in his favor and against Plaintiff. The final paragraph regarding verification requires no response, but is not true to the extent that the Plaintiff knows more than they are leading the Court to believe, Plaintiff is omitting essential information, Plaintiff's organization has known the Defendant for over 20 years, and Plaintiff knows the Defendant as one of its donors. To the extent a responsive pleading is required, Defendant denies that Plaintiff is entitled to a jury trial or further action by this Court.

## AFFIRMATIVE DEFENSES

Inasmuch, the Defendant submits the foregoing Affirmative Defenses which may be brought forth in this case under Fed. R. Civ. P. 8 (c), the following are submitted in good faith:

## FIRST DEFENSE

The Complaint fails to state a claim against Col. David J. Wright or any of the other Defendants named in this Complaint for which relief can be granted.

## SECOND DEFENSE

Upon information and belief, Plaintiff's claims are barred, in whole or in part, by applicable statutes of limitation. The Plaintiff had full knowledge in advance dating back to 1998 to enjoin this Defendant, purchase his idea or otherwise legally have transferred Defendant's copyright, common law rights or

other rights to them legally. Plaintiff has had numerous contacts with the Defendant over 20 years and does not include any of this content in their Complaint. Further the Plaintiff's claims are barred by laches, in that Plaintiff has unreasonably delayed efforts to enforce its rights, if any exist, due to its full awareness of the Defendant's actions beginning in 1998.

## THIRD DEFENSE

Upon information and belief, Plaintiff's claims are barred, in whole or in part, based upon the doctrines of accord and satisfaction, contributory negligence, failure of consideration, release, disclaimer, membership, first-use, license, fair-use, first-sale, descriptive fair-use, public domain, waiver, consent, acquiescence, unclean hands, duress and estoppel.

## FOURTH DEFENSE

Upon information and belief, Plaintiff's claims are barred, in whole or in part, because all decisions made with regard to Plaintiff were at all times motivated by legitimate, non-discriminatory, equal and lawful factors, and Col. David J. Wright as well as other Defendants at no time acted in an unlawful manner in connection with any decision regarding Plaintiff.

## FIFTH DEFENSE

Plaintiff's claims are barred to the extent that Defendant made good faith efforts in the past and presently to reasonably accommodate Plaintiff by publishing disclaimers either voluntarily or in collaboration with Plaintiff's counsel, most recently changing its name and website domain to reflect a more descriptive and generic rendition of his organization's trade name which does not incorporate the Plaintiff's claimed trademark for goods or services that it provides.

## SIXTH DEFENSE

Upon information and belief, Plaintiff's claims are barred, in whole or in part, by Plaintiff's failure to take reasonable steps to mitigate their claims of damages, claim the existence of such damages previously, or engage with the Defendant under the doctrine of fair business practice and due diligence, therefore Plaintiff's claims herein must be denied.

## SEVENTH DEFENSE

Upon information and belief, Plaintiff's claims and damages are barred, in whole, by Plaintiff's failure to give or publish a notice of any legal registration or notify the Defendant with any actual notice of the registration on their website or provide written notice of potential infringement claims.

## EIGHTH DEFENSE

Plaintiff's claims under the Lanham Act and U.S. Code of Federal Regulations are barred to the extent that their claim is not qualified against an individual holding a legally obtained title of "Colonel" or "Kentucky Colonel" issued by "letters patent" who has been commissioned and honorary officer by a former Governor of Kentucky and therefore has no standing to initiate this action and no right to any relief under the Lanham Act or other laws of the U.S. Code.

## NINTH DEFENSE

Upon information and belief, Plaintiff's claims under Kentucky Common Law, the Lanham Act and U.S. Code of Federal Regulations are barred to the extent that their claim is not qualified relative to it being a descriptive term, a generic term, a term that exists in the public domain, a term that is qualified by the merger doctrine predating their existence, a term that has been used by other organizations prior to their founding for the same or similar purposes, or a term that was created by an elected official while in office, notwithstanding the establishment of a specific statute. Terms, ideals and statements created or coined or used to benefit others by government officials in office are part of the public domain and cannot serve as trademarks for the same purpose for which they exist by a private organization.

## TENTH DEFENSE

Upon information and belief, Plaintiff's claims under the Lanham Act and U.S. Code of Federal Regulations are barred to the extent that their claim is not qualified relative to Defendant's fair use of the Plaintiff's claimed trademark under the Fair Use Statute of the Lanham Act; the Defendant may use the term as a descriptive element of a trade name, a domain name, a title, or a user name. Descriptive fair use permits use of another's trademark to describe the user's products or services, *rather than as a*

*trademark* to indicate the source of the products or services. This usually is appropriate where the trademark concerned *has* a **descriptive meaning** in addition to its *secondary meaning* as a trademark.

## ELEVENTH DEFENSE

The claims made in the Complaint are barred, in whole or in part, because any infringement, if any has actually occurred, was innocent and unintentional.

## TWELFTH DEFENSE

Plaintiff's claims made in the Complaint are barred, in whole or in part, on the basis that the mark at issue is generic and/or descriptive in its meaning, or lacks secondary meaning as it is being applied erroneously to make an infringement claim and bring a fraudulent claim.

## THIRTEENTH DEFENSE

Plaintiff's claims made in the Complaint are barred, in whole or in part, by the First Amendment to the Constitution of the United States and the doctrine of public domain.

## FOURTEENTH DEFENSE

Upon information and belief, Plaintiff's claims are barred, in whole or in part, by fraud perpetrated on the United States Patent & Trademark Office.

## FIFTEENTH DEFENSE

The claims made in the Complaint are barred, in whole or in part, by reason of other third parties' use of any marks at issue.

## SIXTEENTH DEFENSE

Without admitting that the Complaint states a claim, there has been no damage in any amount, manner or at all by reason of any act alleged against Defendant in the Complaint, and the relief prayed for in the Complaint therefore cannot be granted.

## SEVENTEENTH DEFENSE

Plaintiff's punitive damages claims are barred because Defendant did not act with malice or with reckless indifference to any common law, state or federally protected rights of Plaintiff.

## EIGHTEENTH DEFENSE

Plaintiff is not entitled to punitive or compensatory damages because Defendant made good faith efforts to comply with fair-business practices, common, state, federal, international and other applicable laws.

## INCONSISTENT CLAIMS AND DEFENSES

The Defendant submits the foregoing which are presented as Inconsistent Claims and Defenses which may be brought forth in this case under Fed. R. Civ. P. 8 (d)(3), they are presented as statements of fact in an effort to settle the lawsuit and will otherwise be included and/or proven by the defense at trial as mitigating factors.

1. Upon information and belief, Plaintiff has usurped our intellectual property, our ideas, our ambitions, made false accusations, has a record of bullying the Defendant using intimidation resulting in duress dating back to 1998 with my first contact with their executive director Col. Glen Bastin at which time I established the first website for the benefit of Kentucky colonels.

2. The Plaintiff has a history of using tricky and deceiving quid pro quo schemes with its donors in order for them to get an annual membership card which does not provide donors with any member benefits, privileges, voice in the organization, ability to select board members, rights to help to guide charitable contributions or permit voting rights.

3. Upon information and belief, Plaintiff uses the ideal of a mythical militia staffed by fake generals and provides an honorary role to the active governor as its commander-in-chief to psychologically dominate and manipulate its donors with the ideals of honor, membership and valor. If the title of "colonel" is the "highest honor" awarded by the Governor then, the ideal of placing a "general" not appointed by the Governor above or ahead a "colonel" to imitate the United States military ranking system which began in 1802, depreciates and subjects the "colonel" to lesser authority and a lesser honor subjective of the organization.

4. Upon information and belief, Plaintiff's members are not members in accordance with the definition of a member under US Law (CFR) or the Model Non-Profit Organization Act of the ABA and Plaintiff states in their Articles of Incorporation that they "have no members".

5. The Plaintiff's former commanding general in 1947 ridiculed the honorability of the title publicly in a major contemporary academic history periodical of the time.

6. Upon information and belief, Plaintiff's claimed founder Governor Flem Sampson acting in his capacity as an elected official intrepidly stopped a prominent Louisville businessman and citizen, Col. Andrew Morris from incorporating and starting the Kentucky Colonels Association, so Governor Sampson could benefit politically and announce the development of the Honorable Order or Ancient and Honorable Order as a state chartered fraternal order of merit. The Governor was the first one known to name babies as colonels which diminished the esteem of the title, but it also led to his successors repeating these mistakes building on their own social clout, political careers, presenting radio shows and gaining personal prestige for themselves using the award by naming several children and well-known celebrities, resulting in the commission's eventual demise several years later in 1936 under the attorney general, before being rescued by the Lt. Governor Keen Johnson shortly thereafter. Subsequent administrations beginning with soon thereafter elected Keen Johnson treated the award with higher regard.

7. Upon information and belief, Plaintiff has used this lawsuit and the color of law to underhandedly and unethically in bad-faith to cause irreparable significant damage using the news media and social media to the Defendant and stop his activities.

8. Upon information and belief, Plaintiff has performed a number of unknown things based on its social contacts and private meetings to influence the opinions of past Governors to make Kentucky colonels donate to their organization and is currently being given an unfair advantage by the government showing them deference over other organizations that cater to Kentucky colonels which have equal rights as private non-profit organizations or fraternal associations.

9. Upon information and belief, Plaintiff (posing as something other than a private non-profit organization) has been in a non-contractual assumed deferential relationship with the offices of the Governor and Secretary of State to obtain the names which are public information and other confidential information such as addresses, telephone numbers, and emails of all those who are nominated as colonels, which was a violation of privacy laws until the Governor's office placed a notification on the electronic nomination form as of February 19, 2020, which notifies nominators that the information will be shared with Plaintiff.

10. The Plaintiff is engaged in creating ambiguity to beguile and dominate a term as its own trademark, trade name, domain name and copyright from the public domain which is descriptive, generic, iconographic and an essential key part of state and national history dating back to the 18th century, in an effort to prevent other organizations including Defendant's from using the term "Kentucky Colonels" as a trade name or incorporate it in any way for the benefit of Kentucky colonels.

11. Upon information and belief, Plaintiff is using its power, influence, goodwill and social connections to make it seem that it is a publicly beneficial and innocent charity in the meantime making millions privately from product sales and celebrating celebrities, selling false honors, subjugating donors, while it is consistently manipulating the tradition of the Kentucky colonel in the public sphere using a medium that I first developed for benevolent and fraternal purposes by and for Kentucky colonels, the Plaintiff has dirty hands.

12. Upon information and belief, Plaintiff has taken my own and others rights to advancements, creations, ideas and innovations to take credit for them, monopolize upon them and claim them as their own without providing any acknowledgement, payment, credit or consideration for such work and efforts and subjugate them to their control to assert these claims being made in the complaint.

13. Upon information and belief, Plaintiff has manipulated historical accounts, changed dates, hidden facts, and distorted records with unclear rationale, motivation and willful intent to create an ambiguous, deceptive and confusing history of the origins of the Kentucky colonel dating back several years for their convenience; facts known by the Defendant are based on public research information from public libraries, private libraries, universities, state archives, former governor's personal papers, the Internet Archive, the Library of Congress, and the Chronicling America Project including newspapers, books and magazines.

14. Upon information and belief, Plaintiff is engaged in committing fraud with the United States Patent and Trademark Office to obtain trademark rights to which they are not entitled, using attorneys as their brokers and  representatives, who are either not fully informed or intentionally manipulating submitted documents or submitting false information.

15. Upon information and belief, Plaintiff has omitted essential facts, suppressed history, used false information, sophistry, and misapplied the law to acquire a temporary restraining order, a preliminary injunction and has caused irreparable permanent damage to myself and other Defendants.

16. Upon information and belief, Plaintiff has applied a fallacious and misleading argument stating that their record of charitable goodwill and benevolence within Kentucky dominates the Defendant's rights to use the term "Kentucky Colonels" in the public interest, which has influenced the opinion of the court, violates the fundamental rule of law, violates the rights of others, contradicts 200 years of historical fact, and is contrary to the United States Constitution.

17. The Plaintiff is actively engaged in the promotion, marketing and sales of merchandise using the ® symbol implying registration with the USPTO for a variation of their trademark they are not entitled to which has been falsely designated on products it has been selling for several years, this violates 15 U.S.C. § 1125(a) and the Uniform Deceptive Trade Practices Act or the Model

Trademark Bill in most states. This activity is considered to be both false advertising and trademark abuse.

18. The Plaintiff applied for the trademark "Kentucky Colonels" with the USPTO on February 17, 2020 under International Class 035 "Association services, namely, promoting the interests of individuals selected by the Governor of the Commonwealth of Kentucky to receive an honorary commission." which is a trademark that it knowing applied for with fraudulent intent claiming their first-use in 1931, with the full understanding and knowledge that other organizations and associations were already using despite not being eligible for it as their trademark because the Plaintiff has not engaged it in commerce by selling membership or association services, whereas the Defendant has as early as 1998 and likewise others have dating back to the late 1800's.

19. The Plaintiff applied for the trademark "Kentucky Colonels" with the USPTO on February 17, 2020 under International Class 041 and U.S Class(es): 100, 101, & 107 for "Social club services, namely, arranging, organizing, and hosting social events, get-togethers, and parties for club members" and International Class 036 and U.S Class(es): 100, 101, & 102 for "Charitable fundraising services; charitable fundraising services by means of organizing and conducting special events; providing grants to non-profit organizations". These trademark registration applications were approved for publication by the USPTO for "opposition" on August 23, 2020 in the Official Gazette. *Upon information and belief*, the Plaintiff made false claims and provided fraudulent information to the Federal Trademark Examiner to claim "distinctiveness" and false dates in their original applications to obtain approval for their initial publication to the principal register.

20. Upon information and belief, the Plaintiff has no legal claims of existence or legal status as a corporation or non-profit organization prior to 1957 when it was incorporated by General J. Fred Miles, a prominent horseman, oilman, and socialite. In 1949 Governor Earle Clements made J. Fred Miles the Commanding General of the **"Ancient and Honorable Order of Kentucky**

**Colonels"** as it was called at the time by the state with an office at the capitol in Frankfort. Later Governor A.B. 'Happy' Chandler permitted the General to privatize and incorporate the fraternal state order of merit into a private non-profit organization renaming it **"The Honorable Order of Kentucky Colonels, Inc."** removing its members with a plan to create membership chapters in each state, a development which never fully manifested. In 1992, the HOKC restated their Articles of Incorporation to remove its members.

21. Upon information and belief, the Plaintiff is not legally entitled to conduct business using "Kentucky Colonels" as their fictitious name, trade name, assumed name or use the designations T/A (trading as), DBA (doing business as), or AKA (also known as) because the Plaintiff does not have or hold nor have they ever applied for a valid Assumed Name Registration Certificate in Kentucky under KRS 365.015(2)(d), a statute which has been in effect since 1992.

22. Upon information and belief, the Plaintiff has no legal rights to validate or verify their claim of continuous existence or any particular rights to make claims to the name "Kentucky Colonels" because they have not perpetually existed since 1931 or because they are not a state mandated agency that appropriated that name from their claimed beginning. It is the Defendant's belief that the Plaintiff has omitted basic relevant facts of history, selectively ignored state records, and is refusing to acknowledge widely publicized news articles since 1870 for its own convenience, to fraudulently manifest itself under false pretenses, dominate the Defendants, cause intentional and willful harm to the title, the public, other colonels, and myself for Plaintiff's own monetary gain and supplement a misconstrued account of facts in its favor.

23. Upon information and belief, the Plaintiff has no legal authority or rights to claim things (such as terms) that are part of the public domain to call them their own in their descriptive or generic meaning. In the U.S., any work created by a government employee or officer is in the public domain, provided that the work was created in that person's official capacity while in office.

24. Upon information and belief, the Plaintiff cannot claim a term as a trademark for a concept that exists in the public domain such as the term "Kentucky Colonels" as it had already been merged with a defined idea that was well-known before they existed. This is known as the "merger doctrine"—meaning the idea and the expression are merged or inseparable.

What made the title of the "Kentucky Colonel" distinctive are Kentucky colonels themselves, not the Plaintiff. The Plaintiff should have its trademarks cancelled for intending to abuse them, manipulate history, garner undue influence, harm others, subjugate those awarded with the title and diminishing or diluting the title to become a privately held brand label with no apparent benefit for all the honorable ladies and gentlemen that have earned the title and the right to call themselves, Kentucky colonels.

WHEREAS, the Defendant only claims the right to use the term "Kentucky Colonels" as a descriptive and generic term to describe his international organization, a website title, a copyrighted book title, and uses our first-use on the Internet as an affirmative defense, the Defendant makes no particular claim to "KENTUCKY COLONELS" exclusively, however under the law must claim it proprietarily to defend this case and because we were well aware at the time we began using it that it was part of the public domain and American consciousness. On the other hand, the Plaintiff has trademarked the term and claims it in all of its forms exclusively is abusive, harms others, is reckless and reaches beyond the law by identifying themselves as the sole owner of the term and bringing a lawsuit for a nine count complaint against the Defendant demanding damages is incomprehensible and should not be entertained. Based on the information aforesaid and presented to the Court, the Judge should dismiss this case and set Kentucky Colonels free, for all colonels to enjoy and use in accordance with their "letters patent" issued by past governors of the Commonwealth.

## ADDITIONAL DEFENSES

Defendant reserves the right to assert additional defenses based on information learned or obtained during discovery, Defendant reserves the right to file a counterclaim or cross-claim, Defendant reserves the right to independently pursue opposition and/or cancellation of the Plaintiff's trademark(s) in the United States Patent and Trademark Office, Defendant reserves the right to bring a separate action in the future to recover damages incurred from the bringing of this lawsuit against the Defendant if dismissed or otherwise adjudicated, notwithstanding an amicably agreed settlement between the parties.

WHEREFORE, Defendant prays for judgment as follows:

1. That "The Honorable Order of Kentucky Colonels, Inc." takes nothing by way of its Complaint;

2. That the Complaint, and each and every purported claim for relief therein, be dismissed with prejudice.

3. That Col. David Wright be awarded his costs of suit incurred herein, including attorneys' consultation fees, time and expenses; and

4. For such other and further relief as the Court deems just and proper.

The Defendant also cordially requests that the Court reprimand the counsel of the Plaintiff for their failure to better investigate his firm's own legal records relative to contact with this Defendant or attempt to make a good-faith settlement for intellectual property conceived and/or created by the Defendant or notify the Defendant of their intended actions prior to bringing this case to the U.S. District Court to make their fraudulent or misleading demands costing US taxpayers money to entertain the Plaintiff.

This Defendant reserves his right to seek damages now or in the future against the Plaintiff unless the matter is settled within 14 days upon the receipt of the presentation of this Answer, Affirmative Defenses, and Inconsistent Claims and Defenses made herein.

Under Federal Rule of Civil Procedure 11, I certify to the best of my knowledge, information, statements, belief and understanding that this answer and defenses: (1) are not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) are supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support and, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the answer otherwise complies with the requirements of Rule 11.

Respectfully submitted to the US District Court,


Caracas, Venezuela
Dated: August 25, 2020

Col. David J. Wright
Edificio Torre 997, Local B
San Juan, Caracas
Distrito Capital, Venezuela 1021
david.wright@globcal.net
+1 (859) 379-8277


**Certificate of Service**

I hereby certify that on August 25, 2020 this Answer was delivered by Email with a delivery receipt to the Plaintiff and was sent via Email to the Clerk of the Court on August 25, 2020 during normal working hours.

Clerk's Office
601 W. Broadway, Rm 106
Gene Snyder United States Courthouse
Louisville, KY 40202