**FILED**
Vanessa L Armstrong, Clerk
Sep 30 2020
U.S. District Court
Western District of Kentucky

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | |
|---|---|
| THE HONORABLE ORDER OF KENTUCKY COLONELS, INC.<br>**Plaintiff**<br><br>vs.<br><br>COL. DAVID J. WRIGHT<br>**Defendant** | Civil Action No. 3:20-cv-132-RGJ-RSE<br><br>MOTION FOR JUDGEMENT ON THE PLEADINGS |

## DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS

Defendant in *pro se*, Col. David Wright respectfully moves for **judgment on the pleadings** pursuant to Federal Rule of Civil Procedure l2(c). For the reasons set forth in the memorandum supporting this motion, the Defendant requests that this motion be granted, and that judgment be entered in his favor and against Plaintiff The Honorable Order of Kentucky Colonels, Inc. ("Honorable Order") by dismissing this case with or without prejudice and the entry of a final order. Judgment on the pleadings is a motion made after pleading and before discovery. Rule 12(c) provides the benefits of the entry of judgment while strictly examining the sufficiency of the pleadings and relative facts. Alternatively Rule 12(d) states "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."

The United States Code of Federal Regulations 49 CFR § 821.17(c) Motions for judgment on the pleadings, states: A party may file a motion for judgment on the pleadings on the basis that — the pleadings disclose that there are no material issues of fact to be resolved and that party is entitled to judgment as a matter of law.

1

## PROCEDURAL BACKGROUND

On August 13, 2020 the Court issued an Order **[DN 58]** denying Defendant's dispositive motions, defaulting on other corporate defendants for failure to answer, granting a preliminary injunction to the Plaintiff and referring the remaining defendant in the matter "to the Magistrate Judge to conduct a Rule 16 case-management conference and entering a scheduling order." The resulting text order **[DE 59]** stated: "pursuant to 28 U.S.C. 636(b)(1)(A), this matter is REFERRED to U.S. Magistrate Judge Regina S. Edwards for resolution of all litigation planning issues, a scheduling conference, entry of scheduling orders, consideration of amendments thereto, and resolution of all non-dispositive matters, including discovery issues. Magistrate Judge Edwards is further authorized to conduct a settlement conference in this matter at any time. A separate order scheduling the Rule 16 Conference will be issued by the Chambers of United States Magistrate Judge Edwards." The Order did not instruct the remaining Defendant to file his answer upon denying motions for dismissal, however in accordance with Fed. R. Civ. P. 12 (a)(4)(A) and Fed. R. Civ. P. 8 the Defendant filed his answer on August 25, 2020.

Pursuant to a subsequent **Order for Meeting and Report** issued by Magistrate Judge Regina S. Edwards **[DN 61]** calling for the Parties to participate in a scheduled "case-management conference on October 16, 2020 at 11:30 a.m" and "meet within twenty-one (21) days from the date of service of this Order, pursuant to Rule 26(f), either in person or by telephone, to discuss the nature and basis of their claims and defenses and the possibilities for a prompt settlement or resolution of the case". In accordance with the order the Defendant has attempted to discuss the case in good-faith with the Honorable Order's counsel to reach a fair and equitable settlement in law resulting in a permanent injunction without damages as proposed by the Plaintiff based on the preliminary injunction incorporated in the Court Order **[DN 58]**, however Plaintiff's counsel reneged on a draft Private Settlement Agreement and Agreed Order proposed by the Defendant which they initially agreed to including their terms upon excluding several paragraphs, but further refuses to treat the Defendant with equity in law under the doctrine of compromise to settle this matter. Aware that the Defendant has answered the complaint, the Plaintiff has indicated to

the court their readiness for discovery, the Defendant withdrew from the Joint Rule 26(f) report prepared by the Plaintiff, the subject matter of which, **discovery, the facts, a procedural calendar and legal due process** were never actually discussed in the meeting because focus was on *settlement* with a non-monetary Agreed Judgement resulting in a consent decree based on the court ordered preliminary injunction. The Plaintiff believing that discovery should begin served interrogatories together with a draft joint schedule on the Defendant inquiring about intellectual property that is not subject to this complaint belonging to the Defendant regarding a pre-registered copyright that is protected by the U.S. Constitution. Without equitable relief the Defendant has nothing remaining to defend and this lawsuit no longer serves any purpose, nor can justice be served through continuing the matter without equity or consideration by the Court.

## ARGUMENT & FACTS

The Defendant respectfully submits, that he has contemporaneously answered the complaint **[DN 1]**, and that on the application of controlling legal principles of the uncontroverted facts presented to the Court in his **Answer, Affirmative Defenses, and Inconsistent Claims and Defenses [DN 62]** and upon the pleadings therein mandates the conclusion that the Plaintiff's complaint is barred by laches, failure to state a claim for which relief can be granted and for numerous other reasons asserted by the affirmative defenses as a matter of law, and that the Defendant is entitled to judgement in favor of **[DN 62]** based on the memorandum in support of this motion and understanding from the Court.

The Defendant is not ready for discovery under Rule 26 without the court first considering this motion and the contemporaneously filed answer and affirmative defenses. Further the Plaintiff without a "valid trademark" for "association services" cannot proceed with this lawsuit, Defendant was not engaged selling miscellaneous products under three, two or even one of the Plaintiff's registered trademarks, moreover based on judicially noticeable information the Plaintiff filed fraudulent or mistaken information with the USPTO that omits known facts required in the trademark applications filed on February 17th,

2020, three days before filing this complaint. Without a valid trademark in an infringement dispute for the services that were being provided this case should not exist, has no merit and must be dismissed.

This case is about the difference in perception between the trade name "The Honorable Order of Kentucky Colonels, Inc." and the registered assumed name "Kentucky Colonels International" (now defunct), it could be about the difference between the trademark HONORABLE ORDER OF KENTUCKY COLONELS and the trade names KENTUCKY COLONELS INTERNATIONAL or KENTUCKY COLONEL FOUNDATION; however, **it is not** about the differences between trade name KENTUCKY COLONELS INTERNATIONAL the association and the three registered arbitrary trademarks KENTUCKY COLONELS for products like t-shirts, ball caps, jewelry, personalized items and coffee mugs; or as an arbitrary name for barbecue sauce, chocolate sauce, and bourbon filled candies; or as an arbitrary mark applied to cigars which in all three cases are licensed out to a third-party. This is not a case about the difference between KENTUCKY COLONELS INTERNATIONAL the fraternal membership association and the descriptive trademarks KENTUCKY COLONELS to provide charitable services; or for social events that the Plaintiff claimed as distinctive under 15 U.S. Code § 1052(f) because a court cannot consider use of a descriptive term as evidence of "actual or conceptual" infringement, registering a trademark registration based on *acquired distinctiveness* is an admission that the trademark is descriptive. FINALLY, this case cannot be about the differences between KENTUCKY COLONELS INTERNATIONAL the association and KENTUCKY COLONELS the association because KENTUCKY COLONELS is not a registered or a registrable trademark for the Plaintiff or Defendant in the USPTO for "association services" and **it is not registered as a trade name** of the Plaintiff in the Commonwealth of Kentucky. The USPTO says in so many words that, the term KENTUCKY COLONELS is generic and merely descriptive when applied as a trademark for "association services" to "colonels" in Kentucky; and would probably be even more so when applied to a group of "colonels from Kentucky" or "Kentucky colonels from around the world". However thanks to the persistence of the Plaintiff pushing a fallacious and sophisticated complaint presented to the U.S District Court, this case has endured to become one

about fraudulent and mistaken applications made to the USPTO by the Plaintiff recently and in the past which have only recently been discovered, their spurious use of the copyright symbol © of the U.S. Copyright Office and the use of the registered ® symbol of the U.S. Patent and Trademark Office prematurely, erroneously, falsely and illegally in such a way as to confuse and ambiguate a term from the public domain to its own consumers, donors and the court in an overbearing lawsuit and scheme to obtain a preliminary injunction that has done significant damage to an organization with a 20 year history, a grassroots effort that has been held together with cellophane tape and superglue by the Defendant since it began in 1998. The court must answer the question, [W]hich of the eight trademarks claimed by the Plaintiff was actually infringed upon? It certainly cannot be the one for association services because it cannot be trademarked and no longer substantiates this claim. Other questions have also been raised by the defense through the Plaintiff's insistence on pursuing their claim.

Based on historical research, the Defendant has uncovered that the Plaintiff has manipulated state history leading to a propagandist narrative account diminishing the importance and significance of the Kentucky colonel as a cultural icon of the Commonwealth and place in American literature. Since they began their effort in 1957 and by previous governors since 1931 engaging actors, celebrities, socialites and board members (as generals) have disgraced, diluted and diminished the meaning of the honorable title with official statements like "The only purpose of this organization is to have a party on Derby eve," in 1941 and other statements in 1947 like "No Kentucky colonel, in our time, takes his title seriously" as well as statements that demeaned and disparaged former negro slaves that worked for Kentucky colonels on plantations included in their Derby Eve Dinner Program from 1941 presented by the Secretary Col. Anna Friedman to whom they claim affinity. In the program, the Secretary admitted Governor Flem Sampson's vision of a "non-political brotherhood" in 1931 was not followed by the subsequent governor Ruby Laffoon (1932) who is credited as the organization's flamboyant founder who used the granting of the title to celebrities to garner political influence, she quotes him as saying, "The folks who are Colonels are the ones who make presidents and governors." She continued to say, "[d]oubtless Governor Laffoon

meant this in all sincerity and certainly more than 10,000 Kentucky Colonels throughout the country have played an important role in state and national politics." The Plaintiff has embellished the ideals of informality, pomperosity, social status, celebrity and political advantage by superimposing them over honor to change and distort the genuine meaning behind the ideal and purpose of the Kentucky colonel. The organization has changed critical dates, disregarded previous organizations and ignored prominent figures in American history to make the honor their own and undermine the title with unqualified authority. Because of their social standing in early years and the use of honor in conference with some of the governors of the state they gained trust and hoodwinked the actual historical account of the Kentucky colonel dating back to the days of Daniel Boone who was one of the first colonels of the Transylvania Company and one of the writers of the Kentucky Magna Charta in 1775. Their misconstrued historical account citing 1813 has destroyed and undermined public integrity and resulted in organizations like the Kentucky Historical Society and the Commonwealth of Kentucky utilizing their false narrative in print based solely on their branded propaganda supported by the trust that has been conferred to them by their associative relationship with governors. History is important because its data is the basis for laws and social standards such as honor.

Based on the pleadings, documents incorporated into the pleadings, and judicially noticeable documents, including those filed as exhibits or referred to in the contemporaneously filed **Answer, Affirmative Defenses and Inconsistent Claims and Defenses** submitted by the Defendant are uncontroverted by the Plaintiff, therefore this Court can resolve the parties' competing claims for a declaratory judgement or otherwise render a final judgment on the core issue in this case: whether the Defendant infringed on any valid or registered trademark belonging to the Plaintiff which will make the complaint moot. As explained in the accompanying memorandum in support of this motion, the Plaintiff's claim for injunctive relief has been satisfied (despite being acquired using sophisticated argument) and monetary damages are precluded under United States law, *see* 15 U.S Code § 1111*, because* Defendant had no notice from Plaintiff or any way of knowing that the plaintiff had any alleged rights or was making

claims to any of the trademarks that they applied for three days prior to bringing this lawsuit nor did the plaintiff publish any public notification.

New understanding that should be judicially noticed as fact, demonstrates clearly Plaintiff has used a highly sophisticated complaint with loaded suggestive language to engage the court into taking misgiven assumptions, ambiguating the trademarks and mistaking six identical trademarks with different purposes with the only one that could have been infringed upon being "refused as unregistrable" by the United States Patent and Trademark Office, was never registerable since this case began, and is the only alleged or claimed use for which this Defendant **did use it** as a descriptive component of a trade name for over 20 years with the full knowledge of the Plaintiff since the year 2000. The Defendant requests that the court consider the Answer and take judicial notice that all of the trademarks applied for by the Plaintiff were applied for omitting basic required information about the Defendant (and/or other organizations of which they were and are aware, had knowledge of, and should have included in their applications) as requested under 15 U.S. Code § 1051(a)(3)(B), (C) and (D)(i) and (ii)(I), (II) and (IV) which are as well subject to other sections of 15 U.S. Code § 1051, § 1052, § 1055, § 1056 and § 1064. *Ignorantia legis neminem excusat* (ignorance of law excuses no one), [W]ithout having any rights to begin with to make a claim for association services with/and knowing the defendant's use of the term "Kentucky Colonels" as part of our name "Kentucky Colonels International" for almost 20 years, the Plaintiff has illegally attempted to get trademark protection for a term that Plaintiff knew it had no entitlement to or any intention to use in order to obtain a temporary restraining order and a preliminary injunction, to foul the intended efforts of the Defendants. This case would not exist and Plaintiff would have a different decision from the USPTO if it were required to re-apply and make full disclosure under 15 U.S. Code § 1051(a)(3)(B), (C) and (D)(i) and (ii)(I), (II) and (IV) except for their arbitrarily claimed uses for products, food items, t-shirts, hats and cigars which there are no potential allegations or any confusion, yet the Plaintiff by ambiguating a single term that has 5-6 different representations as **"identical word marks"** there is reason to presume that the Plaintiff is intentionally creating its own cloud of confusion to manufacture a virtual monopoly effect to

7

apply the mark(s) as their unregistered trade name deceiving the court to mistake the distinct differences for each trademark individually in commerce, their specific purposes as individual trademarks, the defendant's alleged and actual use, the marks' limitations of what they can represent, and usurping the rights of others to fill in the void with the creative commons of unregistrable generic and merely descriptive terms and ideas that in truth are describing themselves in such a way that was affirmed on May 12, 2020 by the USPTO that KENTUCKY COLONELS for "association services" is *not trademarkable* for being too generic and descriptive of an group, club or association in Kentucky that provides services to "colonels" to be a trademark under International Class 035, the mark was also definitively refused as a service mark for not being used in commerce by the Plaintiff.

The Plaintiff has also presented that their track record of providing grants should be somehow considered here and used it as a key factor to acquire a preliminary injunction, but from the standpoint of the Court as a matter of law regarding the complaint it is not a factor in this case nor does it have anything to do with the issue at hand, which is infringement of a registered trademark.

Defendant asserts that Plaintiff engaged in fraudulent and inequitable conduct in the procurement of their federal service mark and trademark registrations. This allegation forms the basis of a potential counterclaim for cancellation of plaintiff's federal registrations, supports the affirmative defense of unclean hands and prayer for attorneys' fees and damages pursuant to 15 U.S.C. §§ 1119, 1120. Specifically, defendant asserts that despite the Honorable Order's knowledge and awareness of numerous other users of the term "Kentucky Colonels" at the time Plaintiff filed its applications for registration of service marks in 1983, 2016 and 2020, the verifier fraudulently or mistakenly averred that to the best of their knowledge, <u>no other person, firm, corporation or association was using or had the right to use</u> the term "Kentucky Colonels" including other Kentucky colonels and other organizations with legal standing. The truth most likely is that the Plaintiff did not want the USPTO to know or consider that many others were using the term such as the "Chicago Kentucky Colonels Club" which was registered in 1977 and

renewed under USPTO Serial Number 73,083,867 prior to and concurrently with Plaintiff's first 1983 registration of HONORABLE ORDER OF KENTUCKY COLONELS.

Associations called "Kentucky Colonels ____", "____ Kentucky Colonels" and "Kentucky Colonels Club" are part of the public domain which were active, assembled and published in newspapers at least 30 years or more prior to the existence of the Plaintiff, the term "Kentucky Colonel" is subject to the merger doctrine dating back to 1776, these terms are merely too descriptive and generic when they are being used to identify a particular group, club or association of "Kentucky colonels" and cannot be trademarked or afforded trademark protection like a unique creative term or conceptualization. Kentucky colonels is a term born in history; the term is not the invention of the Plaintiff, their choice to use it as a trade name and trademark is not a good business decision. Like "Raisin Bran" is a type of bran flake cereal and "Shredded Wheat" is a type of wheat cereal, "Kentucky Colonels" are a type of colonel, therefore it cannot be trademarked in its merely descriptive and generic sense, although the Plaintiff is welcome to trademark "Kentucky Colonels" as a cereal product to increase the effect of their ambiguous artificial monopoly, it cannot serve as a trademark or a trade name to describe a group of Kentucky colonels without an additional word or words to distinguish it from other groups of Kentucky colonels. (e.g. Post's Raisin Bran, Kellog's Raisin Bran, Skinner's Raisin Bran, Kroger Raisin Bran, etc.) See *Skinner Mfg. Co. v. General Foods Sales Co.*, 52 F. Supp. 432 (D. Neb. 1943) (quotations omitted)

**Judge Ruth Bader Ginsburg** in her opinion on *a very similar case* said, "A generic term does not merely identify a particular characteristic or quality of some thing; it "connotes the 'basic nature'" of that thing. *Zatarains*, 698 F.2d at 790 (citation omitted). Because a generic term denotes the thing itself, it cannot be appropriated by one party from the public domain; it therefore is not afforded trademark protection even if it becomes associated with only one source. See, e.g., *National Conf. of Bar Examiners v. Multistate Legal Studies*, 692 F.2d 478, 487 (7th Cir.1982), cert. denied, 464 U.S. 814, 104 S. Ct. 69, 78 L. Ed. 2d 83 (1983); *Abercrombie & Fitch*, 537 F.2d at 9. Analogously, if an organization's own name is generic, a competitor's subsequent use of that name may give rise to an unfair competition claim if the

competitor's failure adequately to identify itself as distinct from the first organization causes confusion or a likelihood of confusion." See *Liquid Controls*, 802 F.2d at 939-40 (suggesting that "Liquid Controls Corp." could have valid claim against "Liquid Control Corp." if there were more evidence of confusion than merely misdirected mail). "[T]he subsequent competitor cannot be prevented from using the generic term to denote **itself or its product**, but it may be enjoined from passing itself or its product off as the first organization or its product. Thus, <u>a court may require the competitor to take whatever steps are necessary to distinguish itself or its product</u> from the first organization or its product." In the paradigm case, *Kellogg Co. v. National Biscuit Co.*, 305 U.S. 111, 59 S. Ct. 109, 83 L. Ed. 73 (1938), for example, the Supreme Court held that the term "shredded wheat" is generic; the National Biscuit Company therefore was not entitled to exclusive use of the term. *Id.* at 116, 59 S.Ct. at 112. <u>Under the approach set forth in these cases, a court will not act to remedy or prevent "confusion generated by a mere similarity of names."</u> *Liquid Controls*, 802 F.2d at 940; see also *Standard Paint Co. v. Trinidad Asphalt Mfg. Co.*, 220 U.S. 446, 461, 31 S. Ct. 456, 460, 55 L. Ed. 536 (1911)." 872 F.2d 1035. The precedential case *Blinded Veterans Association v. Blinded American Veterans Foundation*, 872 F.2d 1035 (D.C. Cir. 1989) was decided by three U.S. Circuit Court Judges, its opinion written by Circuit Appellate Judge Ruth Bader Ginsburg encompasses and reflects this lawsuit well, it calls for the court to take actions involving the parties, both the Plaintiff and the Defendant by fashioning equitable relief to settle the dispute, it includes 39 authorities, paradigm cases and has been cited by 76 federal court judges in judicial opinions. *BVA v. BAVF,* 872 F.2d 1035 may serve as an adequate and appropriate precedential guideline for adjudicating the present matter and settling the dispute, it is also adequate grounds for a dismissal with prejudice.

**CONCLUSION**

Based on the pleadings, the affirmative defenses, uncontroverted claims, the documents referred to therein, the associated evidence and exhibits submitted to the court by the Defendant and judicially noticed facts from the United States Patent and Trademark Office the Plaintiff does not have a valid claim

for trademark infringement or the other alleged counts in the complaint. Based on additional facts being presented by the Defendant as many of five of eight of the Plaintiff's trademarks are subject to cancellation and opposition based on being mistaken. This motion for judgment on the pleadings is timely, distinct from Defendant's previous motions to dismiss, and can be adjudicated, given equitable consideration by the court. For the reasons explained in this motion and the memorandum in support, filed concurrently herewith, the Court should dismiss this case. WHEREFORE, Defendant respectfully requests that this Court grant his Motion for Judgment on the Pleadings to dismiss this case with or without prejudice or otherwise enter an appropriate final judgement by fashioning equitable relief that is not misgiven to the parties as a matter of law.

Caracas, Venezuela
Dated: September 30, 2020

Col. David J. Wright
Edificio Torre 997, Local B
San Juan, Caracas
Distrito Capital, Venezuela 1021
david.wright@globcal.net
+1 (859) 379-8277

## Certificate of Service

I hereby certify that on September 30, 2020 before 5:00 PM EST, I emailed for filing the foregoing Motion with attachments to the Clerk of the Court for the United States District Court of the Western District of Kentucky using the special Pro Se Intake Email per General Orders 20-04 and 20-11 for entry to the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Clerk's Office
601 W. Broadway, Rm 106
Gene Snyder United States Courthouse
Louisville, KY 40202