UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

*Electronically Filed*

| | | |
|---|---|---|
| THE HONORABLE ORDER OF<br>KENTUCKY COLONELS, INC. | ) ) ) | |
| PLAINTIFF | ) ) ) | |
| v. | ) ) | CIVIL ACTION 3:20CV-132-RGJ-RSE |
| COL. DAVID J. WRIGHT | ) ) | |
| DEFENDANT | ) ) ) | |

**JOINT STATUS REPORT SUBMITTED PURSUANT
TO THE COURT'S 10/06/20 ORDER [DE 69]**

Plaintiff The Honorable Order of Kentucky Colonels, Inc. ("HOKC") and Defendant Col. David J. Wright ("Wright") hereby submit the following joint status report pursuant to the Court's Order dated October 6, 2020 **[DE 69]** directing the parties to report on the settlement discussions referenced in the pleadings identified in that Order.

1. **PLAINTIFF'S REPORT**

HOKC has made significant attempts to resolve this matter since the possibility of settlement was first raised by Wright in late August 2020 after the Court's entry of a Preliminary Injunction **[DE 58]**. (*See* Exhibit 1).[1] Unfortunately, the settlement options offered by Wright

---

[1] HOKC recognizes that the attached exhibits are voluminous and HOKC's intention is not to burden or inconvenience the Court with unnecessary filings. However, given the nature of the negotiations that are the subject of this filing, HOKC feels that it is important to provide the Court with the referenced communications so that the Court will not have to rely on HOKC's characterizations of those communications.

involved the "purchase of his intellectual property" for substantial consideration, agreeing that the KENTUCKY COLONELS Mark is a generic term, and/or negotiating a "merger and consolidation agreement" involving payment of significant consideration for his "services." (*See* Exhibit 2). HOKC advised Wright that settlement could be accomplished by entry of a final and permanent agreed order incorporating the provisions of the Preliminary Injunction. (*See* Exhibit 3). Wright responded, again demanding the payment of some type of consideration. (*See* Exhibit 4). HOKC then reiterated that it would not consider any settlement option that required payment to Wright. (*See* Exhibit 5).

Over the next several weeks, additional correspondence was exchanged wherein HOKC reiterated that it would be willing to resolve this matter if, as part of the settlement, Wright would consent to an agreed judgment substantially in the form of the preliminary injunction order entered by Judge Jennings. (*See* Exhibit 6). Wright then submitted a proposed "Private Settlement Agreement" which included numerous matters and issues that are not involved in this litigation. Moreover, many of the proposed terms purported to restrict, control, or govern HOKC's ability to use its protected KENTUCKY COLONELS Mark. (*See* Exhibit 7). Consequently, that proposal was rejected by HOKC. (*See* Exhibit 8). HOKC advised Wright, however, that it was willing to discuss including certain matters in a settlement agreement in addition to the previously demanded Agreed Permanent Injunction. (*See* Exhibit 8).

On September 18, 2020, HOKC forwarded Wright its proposed settlement agreement and accompanying Agreed Permanent Injunction. (*See* Exhibit 9). Wright responded proposing a revised draft of his agreement as well as a revised draft of a proposed agreed permanent injunction which deviated from the language of Judge Jennings' preliminary injunction order. (*See* Exhibit 10). HOKC once again rejected Wright's documents but tendered an alternative

settlement agreement and requested the same Agreed Permanent Injunction previously provided to Wright. (*See* Exhibit 11). That offer was rejected by Wright. (*See* Exhibit 12).

Most recently, Wright filed his sixth motion to dismiss **[DE 65]** which purported to include settlement overtures and various options for a final order to be entered in this case [**DE 65-6** and **DE 65-7**]. HOKC advised that each of those orders were unacceptable because they (1) deviate from the language of the Preliminary Injunction, (2) inject issues that are not involved in the litigation, and (3) impose restrictions on HOKC which are legally and factually unsupportable. (*See* Exhibit 13). Wright subsequently requested counsel send "a copy of your proposed agreed dismissal order and the proposed agreed motion to bring it before the Court referencing the private agreement." (*See* Exhibit 14). A proposed joint motion to dismiss and accompanying order were subsequently tendered to Wright. (*See* Exhibit 15). Upon receipt of those documents, Wright indicated that they were acceptable, but further stated that he required a "settlement agreement" with a "non-compete clause" which allowed him to offer services and "limit[ed] the services HOKC offers." (*See* Exhibit 16). HOKC advised that it would not agree to any such term and that further settlement discussions would not be productive. (*See* Exhibit 17).

Shortly thereafter, the Court issued the order directing the parties to report on settlement discussions **[DE 69]**. Upon receipt of that order, Wright expressed that he believed the Court was directing the parties to settle using his proposed orders [**DE 65-6** and **DE 65-7**] and withdrew his approval of the Agreed Permanent Injunction. (*See* Exhibit 18). HOKC advised that it considered the parties to, once again, be at an impasse. (*Id.*). By email dated October 7, 2020, Wright denied that the parties are at an impasse but reiterated his belief that the Court, in its October 6, 2020 order [DE 69], suggested that Wright's settlement proposals were "viable"

3

and that those proposals should form the basis of any further negotiations. (*See* Exhibit 19). HOKC does not agree with Wright's interpretation of the Court's order and believes the parties are at an impasse.

As demonstrated in the accompanying exhibits, HOKC has attempted to negotiate settlement of this matter, in good faith, for more than two months. HOKC has repeatedly advised Wright that the matter can be resolved through the simple entry of an Agreed Permanent Injunction which is identical to the preliminary injunction entered by Judge Jennings. That overture has been met with threats, personal insults, disparaging comments, and repeated lectures about the "manipulated history" of the Kentucky Colonels. Wright insists that any resolution of this matter include restrictions on HOKC's activity, payment of consideration to him, and/or other matters not at issue in this litigation. It appears that Wright's demands are intended to facilitate his efforts to monetize the title of Kentucky Colonel for his own personal gain by establishing a new enterprise under the name "Commonwealth Colonels" to provide "membership services" and promote an initiative "where members will be able to connect with one another and take actions as Kentucky Colonels on behalf of the Commonwealth of Kentucky in an official capacity as its goodwill ambassadors." (*See* Exhibit 20). Because Wright continues to demand consideration to which he is not entitled, the parties are at an impasse and HOKC does not believe that further negotiations between the parties will be productive. HOKC respectfully suggests that additional settlement discussions will only be productive if those discussions occur in the context of a settlement conference presided over by the Magistrate Judge.

## 2. DEFENDANT'S REPORT

The Defendant, Wright has come to understand that the Plaintiff is not entitled to register, their now six identical trademarks, "KENTUCKY COLONELS" for the purposes for which two were published on October 20, 2020 for opposition, which were applied for only three days prior to bringing this lawsuit, as they may harm other Kentucky colonels (persons) in the future. This is demonstrated by the harm they have caused to this Defendant forcing reorganization to use a term that has been part of the public domain since the 1880s. The Plaintiff does not make Kentucky colonels, the only authority that can make a Kentucky colonel is the Commonwealth of Kentucky. "Kentucky Colonels" is a descriptive term applied to individuals and is implicitly a common law trademark of the State since at least 1895, the term should not be registered as a trademark except in an arbitrary or suggestive way, both of the recently published trademarks have been claimed as distinctive relative to the Plaintiff using them descriptively for charity and to organize social events. As a term "Kentucky Colonels" emerged in the 1880's when the two words were merged together into the public domain (under the merger doctrine) by newspaper editors, the generic and descriptive term has been in publication ever since and does not necessarily refer to the Plaintiff, nor should anyone come to understand or confuse themselves to believe that *Kentucky colonels* and the trademark KENTUCKY COLONELS are somehow the same thing in their reference to *colonels made by the Commonwealth of Kentucky*.

This Defendant has made a number of good faith (non-financial) settlement offers that show equity to the Plaintiff, to himself, other Kentucky colonels who may someday want to develop a fraternal organization, to acknowledge the other ten or more organizations that currently exist, and the other ten or more organizations that existed before the Honorable Order of Kentucky Colonels began sometime between 1933 and 1957. The Plaintiff tries to tell the

Court that they have made all sorts of efforts to settle this matter, but in reality when ordered "to participate in meaningful settlement discussions" they flatly refused to have any discussions whatsoever, filing a Motion for Time **[DN 70]** creating their portion of this report filed as an exhibit in Defendant's response **[DN 71]**.

The Defendant has closed his organization "Kentucky Colonels International" and "Kentucky Colonel Foundation" due to the Tempórary Restraining Order **[DE 14]** and the Preliminary Injunction **[DE 58]** and has also unpublished his works on the Internet that used the descriptive term as a domain name. The Defendant was engaged in promoting a "good-faith" business offer to the Honorable Order of Kentucky Colonels on January 13, 2020 that was submitted to this court as intellectual property by the Plaintiff and Defendant currently owns a copyright for "Kentucky Colonels:..." a non-fiction book scheduled to be released in 2021/2022. Now engaged, the Court may need to closer examine the dispute and the facts presented by the Defendant. The Preliminary Injunction protects the Plaintiff's rights, but violates Defendant's rights to exercise his own and the rights of others in its essence.

The Plaintiff may only be protected expressly for the purposes by which they have applied for their trademarks *in commerce*, not for other overarching purposes; but this Court is entertaining them, on August 13, 2020 ordered (through a preliminary injunction) that the Defendant take down a website that did not contain **any commercial content** or offers that was published strictly to provide educational information.

Neither the Court, the Plaintiff or the USPTO has taken a comprehensive account of the real history of "Kentucky Colonels", afterall the law is based on history, not *vice versa*. The Plaintiff, which has, *with reckless disregard of historical fact* misconstrued the truth of the Kentucky Colonel in history to such a degree that it has influenced Wikipedia, the

Commonwealth of Kentucky, the Kentucky Historical Society and countless others with false narratives in their own biased propaganda circulated since 1957 and prior to being incorporated.

The Plaintiff maintains that they are the only party with any rights in this matter, however the Defendant has proven to the Court that he was online first in 1998, made the first e-commerce transactions from a page titled "Kentucky Colonels" at [colonel.org], and was on Facebook five years prior to the Plaintiff using a trade name "**Kentucky Colonels International**" that was distinctive in its own right when compared to Plaintiff's actual trade name "**Honorable Order of Kentucky Colonels**". The sudden decision of the Plaintiff to attempt to control Kentucky Colonels; the people, the term, the idea and the definition is the purpose of this lawsuit to legally restrict others and create a virtual monopoly.

The Defendant is willing to accept an equitable (non-financial) settlement with the Court taking notice of the errors and mistakes made by the Plaintiff and their counsel in seeking their trademarks, using their trademarks, misusing their trademarks and preventing them from further trademark abuse or trying to quash the rights of others. The Plaintiff has refused to take account of any of the facts presented by the Defendant and is insisting on an inequitable one-sided settlement in their favor.

The Defendant needs acknowledgement for his intellectual property, which the Plaintiff has taken to use against him calling it extortion, "no suh" this is not the case. The Merger and Consolidation Proposal is a legally tendered offer based on 20 plus years of work starting in 1998, included professional services and was reasonably priced considering the potential benefit. The Plaintiff will not even admit that we existed in October 1998 despite having proof provided in Defendant's Answer. Most recently in August the offer was retendered to include our copyright on a book and first publication rights online that can be best marketed by the Plaintiff.

The Plaintiff has demonstrated they are not interested in anything being offered, but they likewise will not get away with destroying Defendant's work effort or usurping the ideas presented in the proposal.

The Defendant *can agree*, as stated previously before this Court in a Supplement **[DE 52-2]** to his motion for dismissal, "not to engage in commercial activities" using the term 'Kentucky Colonels' as part of its trade name for any charitable fundraising purposes or for the purposes of organizing paid events. Or for any of the other purposes the Plaintiff currently has their trademarks registered for that are applied arbitrarily and suggestively for products it sells and markets through a third-party. This can easily be done in a private settlement agreement without the supervision or guidance of the Court.

Col. David J. Wright respectfully suggests that the Court consider his Answer, Affirmative Defenses, and Inconsistent Claims and Defenses **[DN 62],** as well as his Motion for Judgement on the Pleadings **[DN 65]** to settle this case with justice and as a matter of law. As the Court stated either proposed order **[DN 65-6]** or **[DN 65-7]** is viable and can resolve this case giving equitable consideration to both the parties indiscriminately.

As stated in recent motions, replies and responses **[DE 66]**, **[DE 68]** and **[DN 71]**, Defendant attempted to engage in good-faith settlement negotiations with the Plaintiff, but was inequitably denied mutual consent or any negotiation, most recently, immediately denied and refuted by the Plaintiff less than 24 hours following the Court's Order **[DE 69]** with their unmovable and non-negotiable demands. Additional settlement discussions will only be productive if those discussions occur as part of a court ordered settlement conference considering the facts equitably, notwithstanding any injunctive or monetary relief that is presided over by the Magistrate Judge.

<table>
<tr><td>

*/s/ Cornelius E. Coryell II*
Cornelius E. Coryell II
Michelle Browning Coughlin
Julie Laemmle Watts
WYATT, TARRANT & COMBS, LLP
400 West Market Street, Suite 2000
Louisville, KY 40202
(502) 589-5235
ccoryell@wyattfirm.com
mcoughlin@wyattfirm.com
jwatts@wyattfirm.com

*Counsel for Plaintiff, the Honorable Order of Kentucky Colonels, Inc.*

</td><td>

*/s/ David J. Wright* (w/permission)
Col. David J. Wright
Edificio Torre 997, Local B
San Juan, Caracas
Distrito Capital, Venezuela 1021
(859) 379-8277
david.wright@globcal.net

</td></tr>
</table>

100378698.2