**FILED**

Vanessa L Armstrong, Clerk

November 20, 2020

U.S. District Court
Western District of Kentucky

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

|  |  |
|---|---|
| **THE HONORABLE ORDER OF KENTUCKY COLONELS, INC.** <br> **Plaintiff** <br><br> vs. <br><br> **COL. DAVID J. WRIGHT** <br> **Defendant** | Civil Action No. 3:20-cv-132-RGJ-RSE <br><br> **RESPONSE AND OBJECTION TO MOTION TO SHOW CAUSE** |

### RESPONSE AND OBJECTION TO PLAINTIFF'S MOTION TO SHOW CAUSE WHY DEFENDANT DAVID A. WRIGHT SHOULD NOT BE HELD IN CONTEMPT

Defendant in *pro se*, Col. David J. Wright, herein **responds and objects** to The Honorable Order of Kentucky Colonels, Inc. ("Honorable Order")'s, **Plaintiff's Motion To Show Cause Why Defendant David A. Wright Should Not Be Held In Contempt [DN 78],** this motion must be overruled.

### DEFENDANT'S ANSWER TO PLAINTIFF'S CONTEMPT ALLEGATION

The Plaintiff has managed to gain access to pages on our website that are not indexed by Google or public search engines using hacking techniques, bots, deep searching technologies or a back-door while our website was undergoing maintenance on November 18, 2020. Most of the pages they accessed that "would or could" be a violation of the Court's Order **[DE 58]** have not been indexed by Google, Bing or Yandex any other publicly accessible search engines **(See Exhibit 1, 1 page, 4 results)**. Defendant's Exhibit 1 lists all the pages that have been submitted or discovered by Google search engine bots for Commonwealth Colonels. Equally the following list of mostly Internet SPAM pages produced by the Plaintiff **(See Exhibit 3, 8 pages, 86 results)** reflects the Honorable Order's content that has been discovered as public and indexable by Google search bots.

As can be observed from the screenshots (printouts) offered by the Plaintiff as their evidence of contempt are located in a hidden web folder marked [**https://commonwealth.colonels.net/offline/***] these files can only be accessed by a knowledgeable website developer, a hacker, a bot, or someone looking for old outdated files *while* the website is undergoing routine maintenance or being edited. Many of the files (webpages) submitted to the Court **[DN 78-1]** are otherwise blocked and are not available in public search results as demonstrated by Defendant's Exhibit 1.

These pages the Plaintiff has accessed accidentally or by gaining illegal or coincidental access to our website while it was in maintenance mode were being preserved as Electronically Stored Information ("ESI") under the Federal Rules of Evidence, they are not indexed, present in our website menu nor are there any incoming links to them. Careful examination of Plaintiff's Exhibit **[DN 78-1]** will reveal that these pages are not publicly accessible. According to the "Federal Rules of Civil Procedure" (FRCP), organizations have a "Duty to Preserve" all Electronically Stored Information (ESI). "The amendments to the FRCP in 2015 describe the duty to preserve potential evidence when litigation can be reasonably anticipated." If a person is involved in potential litigation, they <u>will need to be able to quickly and easily access, search, place litigation holds and publish ESI</u>, otherwise, an organization could face fines, sanctions and other similar penalties.

The version of the Federal Rule of Civil Procedure that went into effect December 1, 2015. Subsection 37(e) replaces the previous subpart in its entirety, and features a new title: "Failure to Preserve Electronically Stored Information." In addition to this amendment to the previous rule, Rule 37(e) is accompanied by official Committee Advisory notes that clearly call out counsel to preserve clients' ESI, and that counsel should. "… become familiar with their clients' information systems and digital data – including social media – to address these issues." The implication of the new law is clear: social evidence is given at least equal weight and important as other forms of ESI such as email and documents.

The counsel for the Plaintiff is vexatious and playing a game to intentionally prejudice this court by alleging that the Defendant is in violation of the Court Order **[DE 58]** by equivocating ESI and actual published or publicly accessible content to make it appear that the Defendant is somehow engaged in

actively selling memberships or products using the Plaintiff's arbitrary trademark for goods from a folder that is marked as offline. All of the files that can be viewed as contemptuous were preserved between February 25th and March 04th, 2020 under FRCP 37, others have never been accessed, engaged or executed by any member of the public or even Google, only the Plaintiff using an exploitative technology or back-door on November 18, 2020 managed to view the files and saw it as an opportunity to make an allegation of contempt. Defendant believes that the Plaintiff first gained access to the unpublished and blocked HTML file entitled "Sitemap" from the *offline folder* that was being used to preserve older content which was part of a previous version of the website Kentucky Colonel Foundation: **[https://commonwealth.colonels.net/offline/sitemap]**. This file is clearly marked at the bottom of some of the Plaintiff's Exhibit **[DN 78-1]**, normally a sitemap is used to submit and index HTML files so they are discoverable by search engine bots, these pages are encoded with instructions that either allow or disallow public search engines such as Google to perform their work. On November 18, 2020 the Commonwealth Colonels had not yet created or submitted a sitemap to Google's Webmaster Tools or to their searchable index, the sitemap accessed by the Plaintiff was ESI content of the Kentucky Colonel Foundation under a different URL, and a different website title, and a name that were selected to be in compliance with the Court Order **[DE 58]** was in essence a preliminary injunction not use any name that contained the "mark" KENTUCKY COLONELS or KENTUCKY COLONEL.

## STATEMENT OF FACTS

This Defendant, Col. David J. Wright *has not* solicited, marketed, sold, or otherwise engaged in *any* commerce using the generically descriptive term "Kentucky Colonels" from the public domain which confusingly resembles the Plaintiff's trademark "KENTUCKY COLONELS" for any of the purposes for which the Plaintiff has it registered or has applied for registration in the USPTO. Any and all alleged activity of infringement or other wrongdoing made by the Plaintiff on the part of the Defendant occurred between January 20, 2020 and February 26, 2020.

The Defendant's Creative Commons Work located at Commonwealth Colonels is clearly a matter of free speech, history and is the only authoritative account and exhibit of history based on public knowledge about the origin of Colonels from Kentucky in 1775/77: **See [commonwealth.colonels.net]**

The Plaintiff is duping the court to believe that they have an absolute right as a matter of law to usurp "KENTUCKY COLONELS" as a generic, descriptive, arbitrary, suggestive, and/or fanciful trademark and an assumed DBA or AKA to establish or control in a monopolistic way, an idea and concept that does not belong to them that they did not invent for their sole monetary gain in the name of charity while licensing it in its arbitrary and suggestive forms to a third-party for profit LLC.

## ARGUMENT AND DISCUSSION

The Plaintiff is a *trademark bully*, they are in the process of usurping the rights of others with an attempt to dominate a term as an exclusive trademark that was well-known in the public domain fifty years prior to their existence to create a monopoly both for profit and for benevolence. All of their allegations are false and their motion must be denied. Their attorney, a member of the Wyatt Firm, is acting in bad-faith, twisting-reality, vexatious and is fully aware that the source of this ESI data they found through accidental or exploitative means is not part of the Defendant's current agenda as Commonwealth Colonels, they are fully aware they accessed a file that was not intended to be accessed or viewed in a marked **"offline"** folder. As an attorney they were fully aware that they found something that was not supposed to be online or meant to be accessed, or while the website was being maintained. Before spending time filing an allegation as serious as "contempt" for the court based on files that were not marked or shown in the main root directory or in the menus, available publicly as being online; because offline files like the "old sitemap" for our website is ESI, the Plaintiff probably did not even refresh the material on our website 12-24 hours later to see if they perhaps reached the same files, or with Google Servers which take 24-48 hours in some cases to update. What I see and what you see that are publicly accessible are those pages listed on Google are the "only pages considered publicly accessible," not files found in an "offline" folder.

This case must either continue, be adjudicated, be dismissed or be settled under agreeable terms without delay. The Answer and Affirmative Defenses **[DN 62]** and a Motion for Judgement on the Pleadings **[DN 65]** are pending review by the Court since August and September, both parties have mutually agreed to conduct a Settlement Conference under Magistrate Judge Regina S. Edwards **[DE 77]**.

## ALL PLAINTIFF'S CLAIMS MUST BE REJECTED

In the event the Plaintiff does not find a way to agree to one of the more than eight legal possible settlement options they have received from the Defendant, balanced against their one, or we can not find grounds for negotiating with good-faith and equitably to achieve a fair-settlement that: I hereby, motion <u>this Court</u> for Leave from the Court to Amend and Supplement Defendant's Answer and Motion for Judgement on the Pleadings. The Defendant has a great deal of information regarding the use of "most notable literary history" created about "Kentucky Colonels" dating back to 1889 and earlier or until the date the Kentucky Colonel became a cultural icon. This similar success is like that of "Colonel Sanders" and then "Kentucky Fried Chicken" or "KFC" which was slang by the public mindset before being trademarked, through advertising and franchising. People knew Col. Sanders, knows he was a Kentucky Colonel and nearly everyone knows he was, to such a degree that people today often call KFC by the nickname "Kentucky Colonel" or "Kentucky Colonel Chicken", but as we know Kentucky Colonels Chicken without assuming the chicken is being made by Kentucky Colonels cannot be trademarked based on the assumption of validity without disclaiming its parts and for what purposes it is being used for; in this case it would qualify as distinctive, but probably could not be registered for a farm that grows the Kentucky Colonels Chicken Farm "a gamecock strain or for a company that produces spice mixes like "Shake and Bake" producing "Kentucky Colonels Chicken Recipe" without disclaiming KFC within their rights, or not registering at all, without infringing on anyone's rights, or have to disclaim the Honorable Order of Kentucky Colonels in either case.

The motion will intend to direct the court to understand that all of the activities of the Honorable Order of Kentucky Colonels from the time they began as part of a governor's tax proposal agenda in 1933, usurped the rights and popularity of other organizations while they changed the image of who and what a

Kentucky Colonel was and Kentucky Colonels Clubs and Societies already were. Based on new historically referenced information, the new evidence shows that the Plaintiff is and was aware of but does not admit and did not disclose which has happened during their existence and prior to their existence in history and the public makes this case frivolous to the degree that the Plaintiff should be impeached. It is probably why the idea of the *"Mystic Cabala HOKC No. 1 Qui Ex Umbra"* evolved, because they were the only ones to account for 1813, as a day that never happened. The Defendant has yet not taken any extralegal measures against trademark bullying to preserve a favorable settlement and show good-faith.

The Defendant has recently discovered in the defense of this case and writing his book that the Plaintiff's very foundational existence and propriety is based on corruption, fiction, fraud, propaganda and a myth that dishonors the integrity of the Commonwealth's genuine history and cheats the admirable pioneer founders of the state of their valor as Kentucky's first colonels. The Plaintiff is responsible for passing off pseudohistory as truth which was accepted as fact that has misconstrued the historical record of the Kentucky's Historical Society and beguiled all of the state's governors since the Laffoon Administration 1931-1935 with a fictitious story of the origin of the "Honorable Order" and the "Kentucky Colonel" himself. And moreover it just never operated as any "order".

The Plaintiff began their initial pursuit against the Defendant between 1998 and 2001 when he was operating an ecommerce and educational information website, **[colonel.org]** under the title Kentucky Colonels. This *is prior* to Plaintiff using or registering the trademark "KENTUCKY COLONELS" in 2003 as an arbitrary mark for promotional items in their Pomperoser catalog and later for online marketing licensed to a third-party for profit LLC. On December 30, 2014, shortly after the "Honorable Order of Kentucky Colonels" established a Facebook page to compete in the social media they discovered "Kentucky Colonels International" (an unincorporated civil society) was online there since 2009 and the Defendant was operating two popular social media communication groups for people who have been awarded the title of Kentucky Colonel by the governor since 2007. Attorney, Matthew Williams of the Wyatt Firm contacted the Defendant by email expressing concerns relative to our commercial activities to protect the Plaintiff's arbitrary trademark (for cigars and promotional items). We responded amicably in

good-faith indicating to Mr. Williams that we had resolved his concerns and indicated that we were not engaged in any commercial activities or enterprise. In 2016 we were contacted again by the Wyatt Firm by email requesting that we publish a disclaimer of non-affiliation on our Facebook page like the one we use in our Facebook groups, we obliged them. In 2019 the Plaintiff extended their trademark protection to include food items using the trademark "KENTUCKY COLONELS", another arbitrary and suggestive use as their brand which has nothing actually to do with the people who have been awarded the title of Kentucky Colonel.

Now most recently in this instant suit the Plaintiff has engaged the Defendant again, this time by filing three deceptive and omissive trademark applications with the USPTO on February 17, 2020 that conflict directly with the Defendant and ten (10) other organizations; this "SLAPP suit" was filed three days later <u>without providing any notice of trademark ownership</u> on the Plaintiff's website or serving the Defendants with a cease-and-desist letter. On February 23, 2020 (currently published on their website) the only notice of trademark ownership made by the Plaintiff was present on a page entitled "Our Trademark" which does not claim or state they hold any valid USPTO registration. **(See Exhibit 2)**

> **Our Trademark (Plaintiff)**
> "The Kentucky Colonels' trademark reflects the military role from which our organization grew. Designated as Aide-de-Camp, early Colonels were official representatives of the Kentucky Governor. Today we celebrate that 200-year-old heritage with the venerable Aide-de-Camp crest as a foundation of the Kentucky Colonels' logo. Kentuckians first, Kentucky Colonels are also proud Americans, echoed in the traditional red-white-and-blue color scheme of our mark."

Federal Rule of Civil Procedure 11 requires plaintiffs to perform a <u>reasonable prefiling investigation before bringing suit</u>, and given that Rule 11 violations are extremely rare, it stands to reason that the majority of plaintiffs perform the required due diligence. Title 28 U.S. Code § 1927 and 35 U.S. Code § 285 allows courts cases to award reasonable attorneys' fees to the prevailing party in "exceptional cases."

Experience shows that in practice Rule 11 has not been effective in deterring Plaintiff abuses. See *Wright & Miller, Federal Practice and Procedure*: *Civil* §1334 (1971). There has been considerable confusion as to (1) the circumstances that should trigger striking a pleading or motion or taking

disciplinary action, (2) the standard of conduct expected of attorneys who sign pleadings and motions, and (3) the range of available and appropriate sanctions. See *Rodes, Ripple & Mooney, Sanctions Imposable for Violations of the Federal Rules of Civil Procedure 64–65*, Federal Judicial Center (1981).

The Court stated in denying Defendants' motion to appoint counsel **[DE 35]** and proceed in forma pauperis **[DE 35]** that this is not a case with exceptional circumstances. See Court Order **[DE 46]**. In the Defendant's opinion however, this is an extraordinary and exceptional case because it involves trademark bullying by a multi-million dollar, self-proclaimed high-profile organization that has instituted a SLAPP suit claiming infringement in an attempt to create a monopoly over a term that is part of the public domain since it was merged in 1889 and has been awarded to individuals by letters patent since 1895 by Commonwealth of Kentucky governors. A trademark cannot be held in "general exclusivity" for a term that is admitted as descriptive to claim distinctiveness and has been viewed by the USPTO as merely descriptive and generic to represent an idea in its true descriptive sense under many classes for specific purposes without disclaiming the actual idea itself. This Court must adopt the opinion of the "Refusal Letter" from the US Patent and Trademark Office one of the exhibits from **[DN 65-3]** which the Honorable Order has accepted and acknowledged.

While the Plaintiff has been very *successful in bullying* beer companies, tobacco companies and many others out of the use of the terms "Kentucky Colonel" and "Kentucky Colonels" in legal battles and outside the courts in the past, they will not be successful in this instance to exclude or bully the admirable ladies and gentlemen that have legally received the honorable title independently of the Plaintiff who wish to generically describe themselves and civil societies with "Kentucky Colonel" as their monikers or "Kentucky Colonels" as a descriptive component of their organization name, business name or trade name, made up of colonels or not made up of colonels without associating themselves with the Honorable Order, seeking permission, or paying licensing fees for the use of the term from the Commonwealth of Kentucky or the The Honorable Order of Kentucky Colonels, Inc.

The Plaintiff is an organization (but not the only one or the first one) that is made up of Kentucky colonels (persons independently awarded the title of Kentucky Colonel), that depends on the state to

independently make new Kentucky colonels (other persons independently awarded the title of Kentucky Colonel). The organization is motivated to sell and provide products that are arbitrarily called and branded as "KENTUCKY COLONELS" such as cigars to Kentucky colonels, under the distinctive trademark "KENTUCKY COLONELS" the Honorable Order of Kentucky Colonels also provides grants, engages in collective philanthropy, and organizes events called Kentucky Colonels, while they sell t-shirts, hats, clothing, barbecue sauce, bourbon filled bon-bons, stationary supplies, from a website called Kentucky Colonels, with a spurious copyright claim as Kentucky Colonels, under the unregistered assumed name Kentucky Colonels none of which are actually Kentucky colonels as they were known in history and American literature from the 1870s until 1933 or 1939 or 1957 when the Plaintiff created a mythical propaganda based pseudo-historical account relative to the origin of the title, Kentucky Colonel and claimed authority as the originator of the Honorable Order of Kentucky Colonels. Holding many identical trademarks for distinctively different things ambiguously makes the Plaintiff responsible as the source of confusion, the Plaintiff makes no attempt to clarify their trademark registrations in this lawsuit which further makes them more ambiguous. None of the products are actually produced by Kentucky colonels and they are hoping this court finds in their favor to prevent two or more Kentucky colonels from producing a product or service that competes with them.

Based on recently discovered evidence submitted to the Court by the Defendant in his Answer and Affirmative Defenses **[DN 62]**, Motion for Judgement on the Pleadings **[DN 65]**, additional evidence discovered recently by the Defendant in writing his book "Kentucky Colonels:..." under a pre-registered copyright with the U.S. Copyright Office, and additional new information that is being procured for inclusion in the book to build a historical interactive online publication with over 500 verifiable references from the Library of Congress, the Internet Archive, the Gutenberg Project, the NewspaperArchive, public libraries and other very well-known Creative Commons Internet sources **clearly show that the Plaintiff has no legitimate claim or rights to trademark** "KENTUCKY COLONELS" in its sense as a term from history and American literature that has been used in the public domain before being adopted officially by the Commonwealth of Kentucky between 1895 and 1899.

Through passing off or misappropriation as a source or origin the Plaintiff has managed to create a false impression that they are in some way responsible for making and protecting "Kentucky colonels" but in reality the only maker of Kentucky colonels is governor of the Commonwealth of Kentucky. Inasmuch as "a governor" founded the Honorable Order of Kentucky Colonels in 1933/1934 to help the state and his political career during the Great Depression as is known, it is not clear how the state transferred the organization or "order of merit" to private hands considering there are no official acts or records of any transaction; with the exception of some favoritism between one of the governors and the purchase of land by J. Fred Miles which became what is known as the Old Fairgrounds. Whatever may have happened or if any transaction ever occurred at all it is unclear if the Honorable Order belonged to the state, was ever official or how it became a private non-profit organization, only the latter can be proven with the Honorable Order and its incorporation in 1957, with the first meeting being held in May of 1934 when it was operated by the state under Governor Ruby Laffoon.

## CONCLUSION

The **Plaintiff's Motion To Show Cause Why Defendant David A. Wright Should Not Be Held In Contempt [DN 78]** is a motion made in bad-faith upon discovering files are hidden from view, contained in an offline folder, not indexed publicly, and not linked within the website, that are present online as ESI in an attempt to discredit or harm the Defendant prior to attending a mutually agreed Settlement Conference scheduled for the end of December. The Plaintiff clearly objects to the public domain educational information and historical facts that were uncovered and introduced based on immutable resources by the Defendant on his new website "Commonwealth Colonels" which transparently and legally demonstrate the Plaintiff's corrupt and immoral behavior dating back 80 years or more, because it threatens their foundational existence.

In the Plaintiff's Exhibit they state that they only showed a partial exhibit due to volume, but in actuality failed to show the 500 credible references from the Library of Congress that prove their incredible existential claims are false and this case should not be entertained by the U.S. Courts.

The Plaintiff's counsel and Plaintiff are multiplying these proceedings unreasonably and vexatiously, this jeopardizes amicable and equitable settlement, subjectively they may be required by the court to satisfy the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct under U.S. Law and should be sanctioned. The Defendant has adequate information to clearly demonstrate and allege *trademark bullying* to file a significant counterclaim or pursue cancellation and/or opposition of the Plaintiff's allegedly incontestable trademarks that were acquired by mistake and fraud in this Court or in the USPTO, and/or seek trebled legal fees and damages since the onset of this suit. Neither the Plaintiff or the Court has any affirmative evidence that demonstrates this Defendant is unreasonable, has never refused to negotiate, shown any bad-faith in this case or in previous encounters with the Plaintiff in 2001, 2014 or 2016 or should be held in contempt. The Plaintiff on the other hand refused to have "meaningful settlement discussions" (in writing) during a three week period with the Defendant upon Court Order **[DN 69]** within hours of it being issued. The Plaintiff did not perform a reasonable pre-filing investigation before bringing suit or made any attempt to negotiate. The Plaintiff should be sanctioned.

The Defendant and the Plaintiff have mutually agreed to a Court ordered Settlement Conference before the Magistrate Judge Regina S. Edwards to resolve this dispute forthwith. Notwithstanding a fair and equitable settlement at the Settlement Conference the Defendant motions the Court for Leave to Amend and Supplement his Answer and Affirmative Defenses **[DN 62]** and his Motion for Judgement on the Pleadings **[DN 65]**. Respectfully submitted in good-faith,

Caracas, Venezuela
Dated: November 20, 2020

*Col. David J. Wright*

Col. David J. Wright
Edificio Torre 997, Local B
San Juan, Caracas, Venezuela 1021
david.wright@globcal.net
+1 (859) 379-8277

## Certificate of Service

I hereby certify that on November 20, 2020, I emailed for filing the foregoing Response and Objection with attachments to the Clerk of the Court for the United States District Court of the Western District of Kentucky using the special Pro Se Intake Email per General Orders 20-04 and 20-11 for entry to the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Clerk's Office
601 W. Broadway, Rm 106
Gene Snyder United States Courthouse
Louisville, KY 40202

*David J. Wright*