**FILED**

VANESSA L ARMSTRONG, CLERK

Dec 16 2020

U.S. DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY

| | ) | |
|---|---|---|
| **THE HONORABLE ORDER OF** | ) | Civil Action No. 3:20-cv-132-RGJ-RSE |
| **KENTUCKY COLONELS, INC.** | ) | |
| **Plaintiff** | ) | |
| | ) | |
| **vs.** | ) | **MOTION FOR DECLARATORY** |
| | ) | **JUDGEMENT** |
| **COL. DAVID J. WRIGHT** | ) | |
| **Defendant** | ) | |
| | ) | |

## MOTION FOR DECLARATORY JUDGEMENT

COMES NOW Movant, Col. David J. Wright, ("Defendant") in *pro se* pursuant to Federal Rules of Civil Procedure 7, 11 and 57, Title 28 U.S.Code §§ 2201, 2202, and Title III of the United States Constitution, respectfully moves this Court for declaratory judgment, an order and/or such other relief as appropriate. Defendant moves to demonstrate and enter adjudicative facts so the Court may declare non-infringement, non-dilution, and so movant may show relevant cause with reasonable apprehension of continuing damages making it necessary to cancel some of Plaintiff's trademarks to settle this controversy as a matter of statutory law. Defendant's Motion for Declaratory Judgement states as follows:

## PARTIES

Defendant, **Col. David J. Wright**, is a legal resident of Madison County, Kentucky and a commissioned Kentucky Colonel under Commonwealth of Kentucky common law, who is currently living in Venezuela. The Defendant is admitted to the Court *pro se* under 28 U.S.C. § 1654 **[DE 46]**.

Plaintiff, **The Honorable Order of Kentucky Colonels, Inc.** is a corporation organized under the laws of the Commonwealth of Kentucky with its principal place of business located in Louisville, Kentucky. The Plaintiff is represented by counsel, the Wyatt Firm, also in Louisville.

# JURISDICTION

1. This Court has jurisdiction to hear this matter and grant the relief requested.

2. There is a justiciable controversy as to whether the Plaintiff is entitled to: hold, maintain or register United States trademarks that are generic, highly descriptive and property of the public domain; ambiguate confusingly their registered arbitrary and suggestive identical trademarks as their trade name, domain name, product names, service names, and as a specious copyright name simultaneously; bring irreparable harm to others who use [the mark] as a *term* descriptively and generically; misappropriate culture, history, iconography and sovereign identity of the state; and fraudulently file an application for trademark protection that *does not disclaim or disclose* (omits) their known competitors and/or similar independent organizations they are/were aware of that already use the mark/term as a part of their trade name.

3. That an actual controversy exists is further demonstrated by the filing The Honorable Order of Kentucky Colonels, Inc. v. Kentucky Colonels International, et al., Civil Action 3:20-CV-00132 currently before this Court.

4. The district courts of the United States shall have original jurisdiction of all actions arising under Title 15, Chapter 22, Trademarks, without regard to the amount in controversy or to diversity or lack of diversity of the citizenship of the parties. 15 U.S. Code § 1120(a)

5. A Court ordered Settlement Conference **[DE 77]** is scheduled in this case, the Plaintiff has however motioned the Court alleging contempt on the part of the Defendant **[DN 78]** aggravating the case into a controversy for exercising his rights under the U.S. Constitution and performing his voluntary duties as an honorary commissioned officer of the Commonwealth of Kentucky to uphold the values of Kentucky colonelcy as an independent author, publisher and webmaster.

6. New adjudicative facts have been discovered and have been revealed by the Movant (Defendant) within the jurisdiction of this Court that are subject to judicial notice that prevent the existence of this case and will resolve this controversy.

7. This is a controversy that deserves the attention of the Court because it involves legal fiction, cultural misappropriation, substantial injury, fraud, bad-faith and a vexatious opponent making a monopoly. Statutory fraud on the part of the Plaintiff is a Judicial Imperative of this Court that must be examined. "[P]roof of specific intent to commit fraud is not required, rather, fraud occurs when an applicant or registrant makes a false material representation that the applicant or registrant knew or should have known was false." *Torres v. Cantine Torresella*, 808 F.2d 46, 1 USPQ2d 1483 (Fed. Cir. 1986).

8. Reasonable apprehension exists "if the declaratory [movant] has in fact been threatened with litigation for infringement it should be allowed to bring an action for declaratory judgment to determine non-infringement, and join with it a claim of invalidity of the mark and a prayer for cancellation of the declaratory [nonmovant]'s federal registration." *Rhoades v. Avon Products, Inc.*, 504 F.3d 1151, 1157 (9th Cir. 2007)

## JUDICIAL GROUNDS

Defendant (Movant), herein files a **Motion for Declaratory Judgement of Non-Infringement and Non-Dilution** of Plaintiff's, The Honorable Order of Kentucky Colonels, Inc.'s, six identical marks KENTUCKY COLONELS and two identical marks HONORABLE ORDER OF KENTUCKY COLONELS *one or more* of which (unknown) was/were allegedly infringed upon (between January 13, 2020 and February 20, 2020) as stated in Verified Complaint **[DE 1]** filed on February 20, 2020 in the U.S. District Court of the Western District of Kentucky. Federal Rules of Civil Procedure, Rule 57 states **Declaratory Judgment**, "[R]ules govern the procedure for obtaining a declaratory judgment under 28 U.S.Code §2201." The code refers to Creation of Remedy (also known as the Declaratory Judgement Act). "The existence of another adequate remedy does not preclude a declaratory judgment that is otherwise appropriate. The court may order a speedy hearing of a declaratory-judgment action." Under the Federal Rules of Civil Procedure, the existence of another remedy does not bar remedy by declaratory judgment if such remedy is appropriate. *Yellow Cab Co. v. City of Chicago*, 186 F.2d 946 (7th Cir. 1951).

The Court *will find* that *if the Plaintiff was truthful, if the Plaintiff's trademark practitioner was not a conscious scienter* and they **had not committed fraud** on the United States Patent and Trademark Office ("USPTO") on February 17, 2020 by omitting **known others** in their trademark applications (oblivious of other organizations) that <u>are and were legally entitled to use the generic and descriptive term</u> KENTUCKY COLONELS, *that this case* and <u>several other cases decided in federal jurisdictions claiming other identical marks would never have existed</u> because the USPTO would never have approved or registered [the mark] in the first place. The Plaintiff's mark is naturally confusing and *statutorily illegal* because it is fraudulent, generic, highly descriptive, was usurped from the public domain and is a form of cultural misappropriation because the term KENTUCKY COLONELS is "inextricably intertwined" with the history of the Commonwealth of Kentucky. The mark has been used to harm others, empower the Plaintiff, wrongfully bring lawsuits, dominate collaborators and confuse the public to create the false impression that they are in charge of Kentucky colonelcy and are transparently administered by the Commonwealth of Kentucky. Each person that becomes a Kentucky Colonel holds an individual choice and right to support, not support, patronize, recognize or reject the non-profit Plaintiff and their mythical history with their fraudulent mistaken trademarks.

The Court has within its jurisdictional authority the duty to exercise its powers to grant the relief being requested by the Movant, end the controversy, resolve the case, and/or design other appropriate relief and remedies by entering a declaratory judgement based on the adjudicative facts as a matter of law and statutory justice under the Lanham Act codified in Title 15 U.S. Code §§ 1051, 1056, 1063, 1117, 1119, 1120, 1121 and 1125 as well as under sections of the Copyright Act. It is necessary to end this controversy before this case can continue.

This is a case (controversy) that has had a direct impact of the Defendant's civil rights, his rights under the Copyright Act, the Equal Access to Justice Act (EAJA), the Lanham Act (Trademark Act), the Volunteer Protection Act of 1997, the Model Nonprofit Corporation Act of the American Bar Association, Chapter 273 of the Kentucky Revised Statutes, and the First Amendment of the Constitution of the United States affecting his freedom of speech, right to peacefully assemble, right to address grievances in

government and freedom of the press. It would also have an impact on common law rights of the thousands of Kentucky colonels and its governors with different perspectives now, past and future, it can also impact the English language and distort history through misappreciation.

Defendant contends that he is entitled to declaratory judgment as a matter of law because three of six of these identical [marks] owned by the Plaintiff are generic and/or highly descriptive of living *persons* awarded the *honorable* title as a "Kentucky Colonel" with letters patent, are part of the public domain, are based on fraudulent applications dated three days prior to this lawsuit, and that these marks and other marks are not entitled to complete protection on their own, neither as a trade name, trade dress and/or trademark for a group made up of "Kentucky colonels" (people) providing services and/or products without the addition of an adjective or adverbial term, symbol, design or other additional common bywords. Only an *inherently distinctive* trademark is entitled to absolute or adequate strong protection to bring an infringement or dilution claim. The Plaintiff's generic and highly descriptive trademarks must be cancelled to protect the public, preserve the integrity of American literature, disambiguate the Plaintiff with the Commonwealth of Kentucky, eliminate confusion caused by the Plaintiff, protect the holders of *letters patent* issued by the Commonwealth, and serve the interests of cultural history. The Plaintiff has embargoed a part of the English language and Kentuckiana with the filing of their service marks. The Plaintiff must shoulder the blame for the ambiguity and confusion that has been created by owning many identical trademarks for many different purposes using them generically to refer to themselves as the official or primary source of Kentucky colonels which has misled members of the public and authorities to believe that they created Kentucky colonelcy and Kentucky colonels.

The Plaintiff's trademark applications filed on February 17, 2020 were fraudulent because they failed to disclaim, state or acknowledge the Defendant(s) (or others) who was/were (or are) legally in business within the scope of Plaintiff's knowledge and was/were using the registered assumed trade name "Kentucky Colonels International" registered with the Secretary of State during the same days and times under the control of the same law firm that was in the process of developing a Strategic Lawsuit Against Public Participation (SLAPP suit) against the Defendant (a tactic commonly used by trademark bullies),

averred under oath that **we did not exist** to the USPTO. Refusal to disclose known competitors that use the term as a name or mark in essence is fraud by omission of known facts. Failure to state or indicate none, may be the difference of intention, negligence and deception or scienter, but not by mistake through the same law firm by the same litigating attorneys, or simply because *trademark practitioners know* that by leaving the space blank allows applications to be processed more quickly, normally without doubt, friction or question, with less complications since applications are submitted in good-faith and under oath are accepted by the government as truthful. Based on the omission of factual information requested by a Federal Government body under oath means that the Plaintiff's applications submitted to the USPTO were in bad-faith or ill-will and are fraudulent on *prima facie* grounds. A list of organizations was submitted to the Court by the Plaintiff in this case, were all omitted in their trademark applications **[DE 7-3 Pages 49, 50 PageID# 272 & 273]**. There is no doubt that the Plaintiff knows the Defendant, they have known and have communicated with Defendant as "KENTUCKY COLONELS INTERNATIONAL" since at least 2014 and as early as 2001, they are also aware of other organizations legally entitled to use KENTUCKY COLONELS as a descriptive or arbitrary part of their trade name likely to cause confusion.

The Defendant, a Kentucky colonel, seeks immediate relief for his injuries and due consideration in this matter before and at the discretion of the U.S. District Court. This matter was brought by a known trademark bully using a SLAPP suit to create a monopoly and usurp a principle "idea" from the English language being used by others globally that belongs in the public domain. The Plaintiff must surrender their trademarks or lose them to this Court. There is no infringement against a descriptive, fraudulent, generic, misappropriated, or mistaken trademark adopted from the historical theater of the public domain.

The "Honorable Order of Kentucky Colonels" is infringing on (hijacking) a term that must be precluded from use as a generic or descriptive trademark, service mark, trade name, copyright, website title, or as an assumed identity in commerce. Affected parties seeking to stop cultural appropriation can base their response on the likelihood of confusion and dilution. A dilution claim is more powerful as it does not require a likelihood of consumer confusion, and instead requires either "blurring" of the distinctiveness or "tarnishment" of the mark (15 U.S.C. §1052 (f)) or in this case to blur a cultural icon.

Allegations of fraud on the USPTO can come into play in the private cause of action under Section 38 of the Trademark Act (Lanham Act), 15 U.S.C. 1120, which provides that "[a]ny person who shall procure registration in the Patent and Trademark Office of a mark by a false or fraudulent declaration or representation, oral or in writing, or by any false means, shall be liable in a civil action by any person injured thereby for any damages sustained in consequence thereof." This case is a controversy, the Plaintiff is subject to multiple lawsuits, a number of parties for the blurring and tarnishment of misappropriated cultural icons and historical heritage using trademarks and service marks and their fraudulent applications and registrations which omitted dozens of persons, organizations and other known civil actors that use and have used the term to describe themselves that all use a third, fourth, or fifth word in addition to the [term] KENTUCKY COLONELS as part of their name that are not the HONORABLE ORDER OF KENTUCKY COLONELS. The Plaintiff has created a blockade to competition by any other "organization" to engage in "commercial activities" or that are administered and qualify as "preferential non-commercial activities" (non-profit) against another non-profit advocacy and educational organization likewise engaged in "non-commercial activities". Commercial activities do not include private, community service, state sponsored, or free speech activities.

The Defendant has no objection to rolling back the clock, cancelling the fraudulent trademarks, and let the Plaintiff reapply for them under the consensus of strict adherence of the Trademark Examiners Manual of Procedure ("TEMP") disclosing all others. The Trademark Examiner for the February 17, 2020 applications was not provided enough information, known facts were omitted, and knowledge that other organizations that use the identical term as a part of their name. If the trademark examiner had known that the trademarks were applied for in bad faith specifically to allege confusion in a U.S. District Court they never would have been approved.. Before actual trademark examination began, the Plaintiff successfully filed a lawsuit based on filing three new trademarks without the defendant's name, the Commonwealth of Kentucky, other common law organizations or clubs that use the [term/trademark] within their scope of knowledge. Exclusion of competitors that legally "use" the intended trademark as a component of their name known by the plaintiff must be stated as a matter of law. Plaintiff was oblivious to all other legal

organizations with tolerance, they are and have been knowledgeable of many others that use the [term] as part of their name, but they never admitted or disclosed this information on their applications in 1981, 2002, 2014, 2016, 2019, and 2020, where many others can be discovered to have existed that the Plaintiff was aware of and knew. The Plaintiff and their protagonists were on their way to appropriating culture while supplanting a fictional state history with fraudulent misappropriated trademarks from the public domain at the potential detriment of many others until this lawsuit, there are many injured parties.

## PROCEDURAL BACKGROUND

A Preliminary Injunction was imposed against the Defendant **[DE 58]**. Defendant filed his Answer, Affirmative Defenses with Inconsistent Claims and Defenses **[DN 62]** on August 25, 2020, waited 30 days for the pleadings to be considered as closed by the Court, at which time Defendant filed a *timely* Motion for Judgement on the Pleadings **[DN 65]** on September 30, 2020 prior to the Plaintiff attempting to compel discovery. Understanding an equitable settlement was possible the Court delayed in hearing the Defendant's answer, the parties were ordered by Magistrate Judge Regina S. Edwards to participate in meaningful settlement discussions **[DE 69]** which the Plaintiff refused to participate in within 24 hours and requested time to respond to Defendant's Motion for Judgement on the Pleadings **[DE 70].** Plaintiff notified the defendant there was an impasse to settlement **[DE 71]**. The Court granted a Time Extension **[DE 72]** to the Plaintiff to respond to Defendant's Motion for Judgement on the Pleadings **[DN 65]**. The Plaintiff submitted the Parties Joint Status Report with the Defendant's portion therein before November 1, 2020 **[DN 73]**. The matter was scheduled for a status conference **[DN 76]** held on November 13, 2020. This case is now before a Magistrate Judge with a Settlement Conference Order **[DE 77]** scheduled for December 29, 2020.

On November 18, 2020 the Plaintiff aggravated and escalated the matter by filing a Motion to Show Cause Why Defendant Should Not Be Held in Contempt **[DN 78]** based on Defendant changing the domain name and renaming the website to comply with the Preliminary Injunction **[DE 58]** and their discovery of archived (never published) Electronically Stored Information ("ESI") created on February 26,

2020 located in an offline file folder which the Defendant responded and objected to **[DN 79]** and filed a declaration under oath as a *pro se* Defendant **[DN 80]** which the Plaintiff replied to reasserting their claim of contempt **[DN 81]**.

## CASE OR CONTROVERSY

In preparing for the Settlement Conference the Defendant performed additional research on the history Kentucky colonelcy and investigation into the case against him and came to the understanding, that <u>no private or court supervised settlement between the parties</u> will properly serve justice, protect the interests of over 100,000 living Kentucky colonels, preserve the integrity of American literature and history or properly address the corruption which has occurred that risks the ethical standards and persons of the offices of the Governor and the Secretary of State in the Commonwealth through the ambiguity and confusion created by the Plaintiff.

Therefore, Defendant seeks a declaratory judgement asserting facts discovered in the public realm of knowledge through the litigation process of this lawsuit to eliminate the *legal fiction* created by the Plaintiff understood by the Court as fact prejudicing the Defendant and to cancel the mistaken fraudulent registration applications submitted to the USPTO which erred based on historical facts compelling *overwhelming evidence* to be brought forth herein, that Plaintiff has refused to acknowledge, disclose, recognize or understand. In their blissful ignorance and reckless disregard of history and justice in bad-faith the Plaintiff has attempted to suppress historical evidence in hundreds of books, newspapers and American literature with their Motion to Show Cause **[DN 78]** alleging contempt by the defendant and does not want the Court (or the public) to take notice of these facts uncovered by the defense, excusing their intrepidity with the citation of files they found in an offline folder. Refusal to recognize the deliberately published content presented on the Defendant's website **[Exhibit 1]** that dispute the Plaintiff's rights to continue their farce; instead of trying to confound the dispute alleging contempt using ESI from an offline files folder further prior to a scheduled settlement conference shows bad-faith and prevents this

case from proceeding or being litigated any further. The case against the Defendant is now a controversy against, created and ignited by the Plaintiff.

Ever since the U.S. Supreme Court in *MedImmune, Inc. v. Genetech, Inc.*, 549 U.S. 118, 127 S, Ct, 764, 166 L. Ed.604 (2007) courts have considered a wide variety of factual circumstances in deciding which meet the Court's redefinition of "controversy." To state that this case does not involve a controversy would be unjust to the Defendant, the public and a violation of statutory law. The Declaratory Judgment Act provides that "[i]n a case of actual controversy within its jurisdiction…any court of the United States…may declare the rights and other legal relations of any interested party seeking such a declaration, whether or not further relief is or could be sought." See Title 28 U.S. Code § 2201(a).

In *MedImmune*, the Court noted that it had explained in prior opinions that the "case of actual controversy" language in the Act refers to the U.S. Constitution's Article III's case-or-controversy requirement, and that a "controversy" under the Declaratory Judgment Act did not require any greater showing than that required under Article III. The Court clarified that declaratory judgment jurisdiction required disputes to be "'definite and concrete, touching the legal relations of the <u>parties having adverse legal interests</u>'; and that it be 'real and substantial' and 'admit of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.'" 127 S. Ct. at 771. Or, as put another way, "[t]he question in each case is whether the facts alleged, under all circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of <u>sufficient immediacy and reality to warrant the issuance of a declaratory judgment</u>." *Id.*

In general, declaratory judgment jurisdiction should be exercised only when the declaratory relief sought: (i) is not premature, (ii) "will serve a useful purpose in clarifying and settling the legal relations in issue," (iii) "will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding," and (iv) is not being used merely as a procedural device for a declaratory judgment [movant] to select the choice of forum. *Aetna Cas. & Sur. Co. v. Ind-Com Elec. Co.*, 139 F.3d 419, 422 (4th Cir. 1998) (citations omitted).

The Act's purposes are better served by encouraging parties to attempt resolution of disputes prior to initiating litigation, and, therefore, in the circumstances at bar, the exercise of jurisdiction runs counter to the policy of (i) encouraging settlement of disputes prior to litigation and (ii) preventing parties from using declaratory judgment actions as a tool to strengthen a negotiation position or to preempt claimant's choice of forum. The Sixth Circuit applies a five part test for cases decided at the District Court level: (1) whether the judgment would settle the controversy; (2) whether the declaratory judgment action would serve a useful purpose in clarifying the legal relations at issue; (3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race for res judicata"; (4) whether the use of a declaratory action would increase the friction between our federal and state courts and improperly encroach on state jurisdiction; and (5) whether there is an alternative remedy that is better or more effective. *Allstate Insurance Co. v. Mercier*, 913 F.2d 273, 277 (6th Cir. 1990). *Scottsdale*, 211 F.3d at 967 (citations omitted). The court suggested that the fourth factor is best analyzed by tackling three additional sub-factors: 1. whether the underlying factual issues are important to an informed resolution of the case; 2. whether the state trial court is in a better position to evaluate those factual issues than is the federal court; and 3. whether there is a close nexus between the underlying factual and legal issues and state law and/or public policy, or whether federal common or statutory law dictates a resolution of the declaratory judgment action. *Id* at 968.

## PRIMARY CAUSE FOR THIS ACTION

Defendant and others have and will continue to be damaged by the continued use and registration of [the mark] by Plaintiff for goods and services because persons in the relevant channel of trade who have been granted the 'honorable' title with the "Kentucky Colonel" commission and the public viewing, Plaintiff's mark in its entirety…will mistakenly assume: that Plaintiff's goods and services are associated, connected, endorsed by, affiliated with, or in some other way related to or sponsored by the Defendant, the

Commonwealth of Kentucky, Kentucky colonels (title holders) that do not buy products from Plaintiff's licensees, make donations to or endorse their public charity, or other business that uses the *term* [mark] generically to describe their organizations and activities as *Kentucky colonels or non-colonels*; to the detriment of the Defendant, other organizations, and may potentially affect the reputation of the Commonwealth of Kentucky through commercialization of products and services for profit, third-party licensing, pecuniary gain, through silent non-consensual endorsement and any restrictive use of the term. As such, Plaintiff's mark(s) is/are not entitled to registration with the USPTO, as service marks, use as a generic trade name, or as a specious copyright based on the facts. Let the evidence and facts respectfully submitted in good-faith hereforward be considered by the Court.

## NATURE OF CLAIMS

Plaintiff, The Honorable Order of Kentucky Colonels, Inc., owners of the multiple identical registered (or otherwise approved) trademarks KENTUCKY COLONELS sued Defendant, for trademark and trade name infringement, unfair competition, and dilution under the Lanham Act and has also asserted parallel state common law claims arising out of Defendant's use of this term as a component of his former legally registered trade name.

Defendant, Col. David J. Wright upon discovering new evidence and adjudicative facts presented in the Memorandum in Support of this motion makes valid claims seeking a declaratory judgment and relief, stating that: (1) three of Plaintiff's marks are too generic and highly descriptive to function as service marks for commercial services provided by Kentucky colonels; (2) the marks were applied for fraudulently to bring suit causing irreparable harm to defendant; (3) the marks were not properly examined because the applications submitted deceived and misled the USPTO; (4) the marks have been used by the Plaintiff to ambiguously and deliberately cause confusion between the Plaintiff, the Defendant, other organizations, the Commonwealth of Kentucky, and Kentucky colonels; (5) if the marks are not cancelled they will continue to harm the Defendant, the Commonwealth of Kentucky, the public and living persons who are Kentucky colonels; and (6) the marks will dilute American literature, misappropriate culture,

distort history as well as continually cause harm to individual Kentucky colonels that do not support the motives of the Plaintiff.

A well-developed cited argument is delineated and presented herewith in the **Memorandum of Support for Declaratory Judgment** providing **adjudicative facts and access to hundreds of judicially noticeable exhibits** <u>from many different parties on the public record</u> which suggests that the term, KENTUCKY COLONELS is generic, highly descriptive and part of the public domain **[Supra Exhibit 1 Defendant's Website]** which cannot be trademarked <u>except for arbitrary, suggestive or fanciful purposes as a matter of law</u>. Additionally, facts found in documents recorded by or submitted to the government indicate that the Plaintiff has deceived, defrauded or otherwise omitted essential information requested by the USPTO in their applications averred under oath for trademark protection by providing invalid dates, deceptively misleading information and failing to provide names of other organizations that are entitled to use the term/trademark as a generic and descriptive component of their names, activities, businesses, organizations, programs which they were/are aware of, had foresight of and were responsible to disclose to the USPTO prior to having their applications considered or approved for publication and/or registration. This omissive, preclusive and wanton unlawful behavior appears to be a common denominator in all of the Plaintiff's trademark applications dating back to 1981. This motion for declaratory judgement targets just three of these trademarks but requests that the court consider cancellation of all the Plaintiff's trademarks <u>based on the Court taking judicial notice</u> of the type of actual fraud that has taken place and the Plaintiff's awareness and knowledge that "others" who have/had rights to use the term were deliberately and selectively **omitted from all of their trademark applications and registration documentation** filed with the USPTO. A favorable decision for the Defendant will favor justice, the law and send a strong message to infractors of the United States Code and the Lanham Act.

Plaintiff in making three applications on February 17, 2020 to the USPTO had full awareness and knowledge that the Defendant *was legally engaged in business preparing to accept donations* and sell membership services under the legal trade name "*Kentucky Colonels International*", the Plaintiff sued two associated Defendants and Defendant, Col. David J. Wright, in this instant suit less than three days later.

The Plaintiff averred under oath that *no other entity* was doing business or had any legal rights to do business or use the term "Kentucky Colonels" as part of their trade name to the best of their knowledge **15 U.S. Code § 1051(a)(3)(D)**. The Plaintiff's crafty, calculated, diligent and intentional engagement of counsel to make application for <u>three new trademarks, performing pre-filing investigations in accordance with Fed. R. Civ. P. Rule 11, and finally filing this lawsuit, during a course of just three days is clearly no coincidence</u>, was collusive, concurrent, ill intentioned, dependent on one and the other, relative and demonstrates their applications are clearly fraudulent by omission of factual required information that would have produced a different result if legally disclosed in good-faith to the United States Government. Under 15 U.S. Code §§ 1064(3) and 1120, the Plaintiff's trademarks must be cancelled because they cannot be voluntarily amended once approved by an examiner. This case was brought to the U.S. District Court in bad-faith by scienter and to perpetrate or sustain fraud to usurp part of the English language and create a monopoly. [A company] "cannot appropriate the English language, and by doing so render a competitor inarticulate." *Blau Plumbing, Inc. v. S.O.S. Fix-It, Inc.*, 781 F.2d 604, 609-10 (7th Cir.1986)

The actions of the Plaintiff bringing suit three days after filing their trademark applications resulted in a Temporary Restraining Order within five days following the commencement of this lawsuit. Under duress, the individual Defendant, Col. David J. Wright, in his capacity as executive director and president of the Corporate Defendants executed an order to the Registered Agent to cease all commercial business activities by the other defendants and withdraw the <u>legal assumed name registration "Kentucky Colonels International</u>" as he began to seek legal representation for the three corporate defendants. This lawsuit caused the newly reinstated cooperative charitable organization to cancel its plans to offer membership and receive donations to provide association membership services for Kentucky colonels in a fraternal benevolent civil society organization. The organization existed in formation over 20 years and was an earnest published effort developed by the Defendant starting in 1998, giving the Defendant first-use in authorship and first-use in commerce rights, unclaimed because they were part of the public domain in 1998. Once a merged term enters the public domain as a generic term, that serves the purpose of a particular idea, it remains there.

Because the Defendant, Col. David Wright states that "[M]any Kentucky colonels are disappointed with the treatment of Kentucky colonelcy by the Governor and by their treatment as donors (so-called members) by the Honorable Order of Kentucky Colonels. I know this, I have often been contacted by individual Kentucky colonels, social media group members and by other international groups of Kentucky colonels.", the Court should accept this adjudicative fact into consideration on good-faith.

Both the Defendant and the Plaintiff are non-profit 501(c)(3) organizations engaged in non-commercial activity with expressed public interests in Kentucky colonelcy, however, the Plaintiff has trademark(s) that were taken for arbitrary and suggestive use between 2002 and 2019 for "unrelated products" labelled "KENTUCKY COLONELS" produced by a **for-profit third-party commercial activist** and licensee which are *now* in 2020 being applied as merely descriptive, generic, but distinctive [identical marks] as "service marks" in such a way to infer ownership of a term to a great enough degree to assume a monopoly by using it as a trade name, website title, keyword, and specious copyright which infers a direct or official connection with the Commonwealth of Kentucky, **to create an exploitative state of cultural elements that are being lost and distorted when they are removed from their originating cultural contexts, and that such displays are disrespectful or even a form of historical desecration**. It would be totally false to suggest that all *Kentucky colonels* are: horse racing fans; their superiors are generals; their commander-and-chief, the governor; that meet periodically to have a good time drinking mint juleps and eating barbecue; that "no one takes their title seriously"; and it is their duty to donate to them to help Kentuckians, however the Plaintiff has applied and registered trademarks that are for providing services to *all* Kentucky colonels by *some* Kentucky colonels under the trademark(s) and servicemark(s) Kentucky Colonels®, by using it as their trade name, in a form of a specious copyright name and as a website title unfairly because they are not the source for "Kentucky Colonels" and it confuses them with the state and with history. These trademarks in themselves under their primary meaning are cultural elements that have deep significance to the original culture and pioneer founders of the State during and before its existence from 1775-1925, part of the public domain. This is clearly demonstrated by the Defendant's website *American Colonels Network* at [colonels.net] which is about

Colonelcy in America. Evidence also suggests that the Plaintiff's history since 1941 is based on blatant false precepts, is false, fictitious pseudohistory, that is based on propaganda and a mythical tale of an event which never occurred, even the most significant event of the Plaintiff's foundational history in 1813 has been passed off as fact altering contemporary history creating a stain on the face of the state. The disregard for the idea of the Kentucky Colonel prior to 1813, as early as 1774 until 1930 in preference of a fictitious event suppresses the reality behind the formation of the Kentucky colonel and distorts his role in the state's culture and history. Currently this unsustainable tale that has no foundation that has been adopted as an official account of history is causing harm to the State, the history of Kentucky colonelcy, individual Kentucky colonels and the general public because it is not factual.

Under all these circumstances the Movant must succeed in a declaratory judgement on these merits and seek cancellation for non-infringement of the Plaintiff's trademark and gain acknowledgement from the Court that "Kentucky Colonels" represents an idea that cannot be trademarked or serve as a business name, copyright, or supercede any title within its "own meaning" as a term from the English language, Americana, widely used internationally, and that beholds an integral cultural and historic significance with many living and deceased people, that are/were within their rights cultural, historical, iconographic, military and civilian figures through time.

Cultural appropriation sets arbitrary limits on intellectual freedom, artists' self-expression, reinforces group divisions, or promotes a feeling of enmity or grievance rather than of liberation.

## DEFENDANT HAS STANDING TO CHALLENGE PLAINTIFF'S MARKS AS MISTAKEN, MERELY DESCRIPTIVE, GENERIC AND FRAUDULENT

To be valid, a trademark needs to be distinctive enough to perform its dual identifying and distinguishing functions. Trademark law provides three categories of distinctiveness for trademarks: inherently distinctive, descriptive, and generic. Inherently distinctive marks (fanciful, arbitrary or suggestive) are inherently capable of acting as source identifiers. Descriptive marks, on the other hand, describe an aspect of the good or service they are used to identify. Descriptive marks are only valid if they

have "acquired distinctiveness" or "secondary meaning," meaning that consumers have come to associate the mark with the product or service it identifies. A generic mark refers to "what" the good or service is, and, as such, is not capable of acting as a source identifier for that good or service.

Challengers seeking to oppose or cancel a trademark on the basis that it falsely suggests a connection with a person or an institution, must show that: 1) the mark is the same as, or a close approximation of, the name or identity previously used by another person or institution; 2) the mark would be recognized as such, in that it points uniquely and unmistakably to that person or institution; 3) the person or institution named by the mark is not connected with the activities performed by the applicant under the mark; or 4) the fame or reputation of the person or institution is such that, when the mark is used with the applicant's goods or services, a connection with the person or institution would be presumed according to Trademark Trial and Appeal Board Manual of Procedure (TEMP §1203.03 (C)(i)).

In the Trademark Examiner's Manual of Procedure, TEMP §309.03(b), any person who believes it is or will be damaged by registration of a mark has standing to file a complaint; the Plaintiff <u>has relied on its ownership of its application or registration in another proceeding between the parties, or trademark holder has asserted a likelihood of confusion in another proceeding between the parties involving the same marks</u>; when *descriptiveness or genericness* of the mark is in issue; someone who may plead (and later prove) standing by alleging that it is engaged in the sale of the same or related products or services and <u>that there is an interest in using the term descriptively in business</u>; or a competitor may be made in connection with other claims as well. If [Movant] can show standing on one ground, [he] has the right to assert any other grounds in an opposition or cancellation proceeding. TEMP §309.03(c)(1) example grounds for opposition and for cancellation against the Plaintiff *in this case* include: (5) did not have a bona fide intent to use the mark in connection with the identified goods/services as of the filing date of the application under Trademark Act § 1(b), 15 U.S.C. § 1051(b), (12) mark represents multiple marks in a single application (or registration) ("phantom mark"); (17) has used its mark so as to misrepresent the source of its goods or services; (19) markholder committed fraud in the procurement of its registration or during the prosecution of its application for registration; (21) application is barred from registration by

claim or issue preclusion; (22) mark is the title of a single creative work and not considered a trademark; and (27) the mark is not in lawful use in commerce where the provision of the identified goods and/or services is unlawful under federal law.

To qualify for the Principal Register of the USPTO actual evidence of acquired distinctiveness, such as sales figures, advertising expenditures, advertising and promotional materials, and evidence of consumer recognition of the mark, including consumer affidavits and surveys <u>may be required</u> (applicant did not provide none of these). The U.S. Trademark Office requires the filing of specimens of use of the mark as it is actually used in U.S. commerce on or in connection with the identified goods or services at the following times: (a) at the time of filing a use-based U.S. application, (b) when filing a statement of use before or after the issuance of a notice of allowance in an intent-to-use-based U.S. application, (c) by the six-year anniversary date of a U.S. registration, and (d) with every ten-year renewal of a U.S. registration. While only one specimen of use is required for each class of goods or services identified in the application or registration, this should not be misunderstood as lowering the very strict use in U.S. commerce standards. For services, a specimen of use must show the mark as actually used in the <u>sale or advertising of the services</u>, and the services being offered must be described on the specimens. Acceptable specimens of use include <u>newspaper and magazine advertisements</u>, signage, brochures, billboards, handbills, direct-mail leaflets, menus (for restaurants), and the like; however, <u>printer's proofs for advertisements, publicity releases to news media, or printed articles resulting from such releases</u>, **are not accepted**, <u>because they do not show use of the mark by the applicant in the sale or advertising of the services in U.S. commerce</u>. Business documents, such as letterhead and invoices, may be acceptable service mark specimens of use if they show the mark and also refer to the relevant services and commercial activity.

Inaccurate material statements, oaths or declarations of use can lead to the cancellation of a U.S. registration if, for example, it is falsely indicated that a mark is in use on a good or a service when in fact it is not, and that fact <u>was known or should have been known to the applicant</u>. While the U.S. Trademark Office will normally have no reason to doubt the veracity of a statement of use, a third party can rely on a

misstatement of use to defend itself against an opposition, a petition for cancellation of a registration, or a trademark infringement claim by aggressively attacking a registration claiming it was obtained by a fraud perpetrated on the U.S. Trademark Office. Under *Medinol Ltd. v. Neuro Vasx, Inc.*, 67 U.S.P.Q. 2d 1205, 1209 (T.T.A.B. 2003), and its progeny, the Court considers a false material statement that a mark is in use on all of the identified goods or services, when it was in fact only in use on some of them, to be fraud on the U.S. Trademark Office and the U.S. District Court or the TTAB will cancel the entire registration.

Overly broad specification of goods and services can lead to the cancellation of the entire U.S. registration. From the beginning of the application process, the applicant for a U.S. trademark registration—whether it is a foreigner or a domestic applicant—must have a *bona fide* intent to use the mark in U.S. commerce on all listed goods and services. Broad identifications also make it more likely that the registration will be refused due to perceived likelihood of confusion conflicts with prior registrations of similar marks covering goods and services that are identical to or closely related to those listed in the registration application. Because the U.S. trademark registration system considers relative grounds for refusing a registration during the examination process, third party rights can prevent a registration before an opposition is ever filed by the owner of a similar registered trademark.

Preliminary search results may not identify non-identical but similar marks, nor will they identify prior common law rights in marks that are not registered. Limiting the search to active registrations in the U.S. Trademark Office is also dangerous. It can result in missing relevant continuing common law rights in marks that have not been abandoned and are thus still enforceable, even though their U.S. registrations have been abandoned or cancelled. It is also important that a U.S. trademark practitioner not only design the search instructions, but also review the search results, rather than having them analyzed by a non-U.S. in-house or outside counsel. This not only avoids the risk of overlooking prior common law marks and/or misjudging the likelihood of confusion analysis, but it also provides a detailed outside counsel's opinion that will help to defend against a possible claim for willful trademark infringement. *Lang v. Retirement Living Publ'g Co., Inc.*, 21 U.S.P.Q. 2d 1041, 1047 (2d Cir. 1991); *Breuer Elec. Mfg. Co. v. Hoover Co.*, 48 U.S.P.Q. 2d 1705, 1716 (N.D. Ill. 1998). In the United States, marks that are generic as applied to the

goods or services they are intended to identify are never protectable or registrable as trademarks. Marks that are deemed to be merely descriptive of the goods or services they are intended to identify lack the required distinctiveness for immediate protectability or registration.

Misunderstanding on the part of the attorney does not preclude a finding of fraud. Applicant and its attorney share the duty to ensure the accuracy of the application and the truth of its statements. *Hachette Filipacchi Presse v. Elle Belle LLC*, 85 USPQ2d 1090 (TTAB 2007)


## ADJUDICATIVE FACTS FAVORING DECLARATORY JUDGEMENT

Federal Rules of Evidence, Rule 201: Judicial Notice of Adjudicative Facts (a) Scope. This rule governs judicial notice of an adjudicative fact only, not a legislative fact. Nearly any one or some combination of several or *all* of the following numbered items are facts (historic, public and substantive) that are adequate grounds for adjudication sustaining the Defendant's claims under the Declaratory Judgement Act 28 U.S. Code § 2201(a), "In a case of actual controversy within its jurisdiction, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such for the Court to grant relief." None of the facts stated in the Memorandum in Support or the Defendant's Statement of Facts **[Exhibit 2]** are disputable by the Plaintiff or the Court and are all facts subject to judicial notice.

The sets of facts presented categorized in the memorandum and statement address this controversy in its entirety. All of the facts presented herein are considered to be subject to *judicial notice* because they are based on historical evidence including encyclopedias, non-fiction books, newspapers and are present on United States government servers located at the Library of Congress and other web servers frequently used by the general public and the government to perform historical and genealogical research, and are otherwise readily accessible within the jurisdiction of this Court. Rule 201 of the Federal Rules of Evidence permit the Court to take notice of Adjudicative Facts, (b) [t]he court may judicially notice any fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's

territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned. (d) The court may take judicial notice at any stage of the proceeding.

Conveniently all the files are linked directly to the Internet using a Google Public DNS Server which are used by all governmental agencies the Defendant's websites public address for **[Supra Exhibit 1]** is actually at our own Google Public Server [sites.google.com/colonels.net/kentucky]

## PRIMARY EXHIBIT

Exhibit 1 demonstrates 600 links to publicly accessible websites containing independently sourced authorities located on governmentally accessible servers using Google Sites that form the base of the Defendant's website and book about Kentucky colonels. Over 250 of these History > News Articles are to the Library of Congress Chronicling America Project, over 75% of the Resources > Bibliography are on the Internet Archive Library server. [sites.google.com/colonels.net/kentucky/history/newsarticles]

## LEGAL IMPERATIVE

Generally, the USPTO does not investigate fraud on the office, so fraud cases play out in Trademark Trial and Appeal Board (TTAB) or in **U.S. District Court** cases where one party is trying to have a trademark registration cancelled on the grounds it was obtained fraudulently. Oftentimes, asserting a fraud claim comes as a counterclaim, motion for declaratory judgement or as likelihood of confusion cases in district courts. Trademark examiners were not given a straightforward set of facts that are essential to a trademark examiner, they did not know that less than three days later Plaintiff would file a lawsuit against a legal entity that was engaged in business and they did not know that the trademarks were being used to allege confusion.

Claiming use on goods and/or services when they are not in use yet is a common way of fraud being committed on the USPTO. Other examples of fraud and mistaken claims leading to trademark cancellation include:

- Not submitting the correct *first use* or *in commerce* dates;

- Failure to disclaim widespread use of the mark (term) by others;

- Failure to state other uses of a mark as a component of a trade name already in use;

- Discovery or evidentiary claim that a mark is generic;

- Mistake or error made by the USPTO based on lack of information;

- Knowingly not meeting all the standards in a Declaration for Incontestability when signing it; and

- Failure to disclose a transliteration or translation.

It is important to note that trademark registrations provide valuable trademark rights but even if fraud is proven and registrations are cancelled, the trademark owner retains whatever trademark rights it has in common law, *if any*, whether or not they are registerable.

The standard of showing fraud is relatively high. In order to prove fraud, as the Second Circuit noted in *Orient Express Trading Co. v. Federated Department Stores*, fraudulent statements made in a trademark application "may not be the product of mere error or inadvertent, but must indicate a deliberate attempt to mislead the USPTO." In other words, making a mistake is chalked up to human error and will not be fraud. But when a person knowingly lies or shows a "reckless disregard for the truth," and it can be proven, then fraud has been committed. *Orient Express Trading Co. v. Federated Department Stores*, 842 F. 2d 650.

The USPTO defines fraud as:

"Fraud or fraudulent means conduct that involves a misrepresentation of material fact made with intent to deceive or a state of mind so reckless respecting consequences as to be the equivalent of intent, where there is justifiable reliance on the misrepresentation by the party deceived, inducing the party to act thereon, and where there is injury to the party deceived resulting from reliance on the misrepresentation. Fraud also may be established by a purposeful omission or failure to state a material fact, which omission or failure to state makes other statements misleading, and where the other elements of justifiable reliance and injury are established." *U.S. Trademark Law, Rules of Practice & Federal Statutes*, USPTO, February 15, 2020, Page 138

Intent to deceive the USPTO can be inferred from indirect and circumstantial evidence. Case law has also supported the proposition that intent to deceive may be inferred if the accused party's testimony

lacks credibility, *Global Maschinen GmbH v. Global Banking System*, 227 USPQ 862 (TTAB 1985). If a claim of fraud is sustained based on a false statement of use, even as to one item in a long list of items, <u>the remedy will be to hold the application or registration void</u> as to the entire class. *Meckatzer Lowenbrau Benedikt Weib KG v. White Gold, LLC*, 95 USPQ2d 1185 (TTAB 2010) [precedential].

The evident fact that the Plaintiff engaged the same law firm for filing their trademark applications as they did to bring the present case resulting in this controversy is adequate to demonstrate knowledge and awareness by the law firm and the Plaintiff of either collusive fraud by scienter or extreme legal incompetence.

## RELIEF AND REMEDY

In good-faith, the Defendant moves the Court for declaratory judgement relief with a conciliatory award of costs commensurate with reasonable legal expenses and payment of court costs incurred from bringing this lawsuit by the Plaintiff, The Honorable Order of Kentucky Colonels, Inc., which has fraudulently, willingly and wrongfully accused Col. David J. Wright, of trademark infringement, unfair competition, and dilution under the Lanham Act. The Defendant seeks relief as the *prevailing party* in an action brought under the Lanham Act, which permits a "court in exceptional cases [to] award reasonable attorney fees to the prevailing party" (See 15 U.S.C. § 1117(a)). The Supreme Court's interpretation of an "exceptional case" in an identical provision of the Patent Act, the Fourth Circuit has held that a determination of "exceptional" cases requires, "in light of the totality of the circumstances, that: (1) there is an unusual discrepancy in the merits of the positions taken by the parties, based on the non-prevailing party's position as either frivolous or objectively unreasonable; (2) the non-prevailing party has litigated the case in an unreasonable manner; *or* (3) there is otherwise the need or particular circumstances to advance considerations of compensation and deterrence" all of which apply in this case to some degree. (See *Georgia-Pacific Consumer Products LP v. von Drehle Corp.*, 781 F.3d 710, 719-21 (4th Cir. 2015) relying on *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749 (2014)).

Notwithstanding a fair restitutionary award for reasonable legal expenses incurred defending this case, the Defendant petitions and seeks whatever discretionary, compensatory or punitive damages the Court may deem appropriate as/for *civil liability* of injury sustained to Defendant and the Defendants *in default* as a consequence of fraud and the bringing of this lawsuit under 15 U.S. Code § 1120.

In the event this Motion for Declaratory Judgement is not successful in settling the present controversy that exists between the parties, Defendant reserves his right to seek relief by: converting this motion into a counterclaim to seek both statutory and equitable relief to include punitive and incidental damages; appealing an unfavorable decision by the U.S. District Court to the United States Court of Appeals for the Sixth Circuit; or if inadequately presented or submitted by the *pro se* defendant, hereby requests advisement from the court in re/submitting the motion as a pleading or amending it with a supplement as may be necessary at the discretion or request of the Court. Defendant also reserves his rights due to the nature of the of the fraud allegation and/or conspiracy to commit fraud and the degree of damages experienced during 2020, caused as a result of this proceeding, to bring a separate action or equitable claim in the future for the losses of the Defendants in default and/or augment this motion to include Fed. R. Civ. P. Rule 11 sanctions against Plaintiff's counsel, *unless* the Court takes their own action under Rule 11 or provides partial relief for Plaintiff's statutory civil liability for injuries to the Defendant under 15 U.S. Code § 1120.

WHEREFORE, Defendant, Col. David J. Wright asks that this honorable Court issue an Order granting his request for declaratory relief specifying that (1) the Plaintiff's U.S. trademark application numbers 88800020, 88800035, and 88800038 are cancelled; (2) that the allegation of infringement under the Lanham Act against the Defendant(s) be declared as fair-use non-infringement; (3) that all standing orders in this case be vacated; (4) that all intellectual property disclosed in the Confidential Merger and Consolidation Proposal **[DN 7]** submitted to Plaintiff on January 13, 2020 remain confidential and unexecutable by Plaintiff for at least 10 years; and (5) whatever other actions the Court deems as appropriate or necessary to end the controversy to deliver justice and bring civil understanding to the

parties on the grounds of common law, civil law, statutory law and precedential law under the United States Code and the Lanham Act.

Defendant moves that this **Motion for Declaratory Judgement and Relief** be granted based on the **Memorandum in Support**, the **Statement of Facts [Supra Exhibit 2]** and *associated exhibits* so that the attached Proposed Order or a similar judicial order for Declaratory Judgment be entered by the Court.

Respectfully submitted in good-faith,

Caracas, Venezuela
Dated: December 16, 2020

Col. David J. Wright
Edificio Torre 997, Local B
San Juan, Caracas, Venezuela 1021
david.wright@globcal.net
+1 (859) 379-8277

## **Certificate of Service**

I hereby certify that on December 16, 2020, I emailed for filing the foregoing motion with attachments to the Clerk of the Court for the United States District Court of the Western District of Kentucky using the special Pro Se Intake Email per General Orders 20-04 and 20-11 for entry to the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.


Clerk's Office
601 W. Broadway, Rm 106
Gene Snyder United States Courthouse
Louisville, KY 40202

# United States District Court for the Western District of Kentucky

For the Defendant(s) comes now Col. David J. Wright, Defendant
in Pro Se in Civil Action 3:20-cv-00132 RGJ-RSE

## Honorable Order of Kentucky Colonels
## vs.
## Col. David J. Wright

**FILED**

VANESSA L ARMSTRONG, CLERK

Dec 16 2020

U.S. DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY

Judge Rebecca Grady Jennings
Presiding Judge in this Case

To the Clerk of the Court

Relative to Case 3:20-cv-00132 RGJ-RSE brought by the Plaintiff, **The Honorable Order of Kentucky Colonels** with an Order made by Magistrate Judge Regina S. Edwards scheduling Settlement Conference on December 29, 2020 and ordering parties to prepare settlement statements "comes **Col. David J. Wright**, *Defendant, pro se* under 28 U.S.C. § 1654.

The Defendant herein submits a "**Motion for Declaratory Judgement**", "**Memorandum in Support of Motion**" and "**Statement of Facts**" with various exhibits. Declaratory Judgement can be applied as a motion and with a claim or as a separate counterclaim. The court may order a speedy hearing of a declaratory-judgment action.

Attached:

1) **Motion for Declaratory Judgement with Certificate of Service (3:20-CV-132)**
2) **Memorandum in Support of Motion (1 PDF Print File)**
3) **Exhibit 1 - Commonwealth Colonels Website (1 PDF Print File)**
4) **Exhibit 2 - Statement of Facts (1 PDF Print File)**
5) **Exhibit 3 - Plaintiff's Website (1 PDF Print File)**
6) **Exhibit 4 - Plaintiff's False Claim (1 PDF Print File)**
7) **Exhibit 5 - Kentucky Secretary of State Webpage (1 PDF Print File)**
8) **Proposed Order for Declaratory Judgement (1 PDF Print File)**