**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**LOUISVILLE DIVISION**

| | |
|---|---|
| **THE HONORABLE ORDER OF KENTUCKY COLONELS, INC.** )<br>Plaintiff ) | Civil Action No. 3:20-cv-132-RGJ-RSE |
| vs. ) | **PROPOSED ORDER** |
| **COL. DAVID J. WRIGHT** )<br>Defendant ) | |

**DECLARATORY JUDGEMENT AND ORDER**

    It is ORDERED, Declaratory Judgement of Non-Infringement favoring for KENTUCKY COLONELS INTERNATIONAL, ET AL., Defendant(s), their trade name does not infringe on the trademark, HONORABLE ORDER OF KENTUCKY COLONELS, the non-profit organizations' names are different enough not to cause confusion between their supporters, members, the Commonwealth of Kentucky or other colonels. Neither party shall be permitted to use the term KENTUCKY COLONELS on its own as a trade name, trademark, service mark, or copyright because it is likely to cause confusion with the Commonwealth of Kentucky, the Defendant(s) and other living persons who have been awarded the "Honorable" title with letters patent, and may misappropriate culture that is inextricably intertwined with the Commonwealth of Kentucky dating back to before Kentucky became a state.

    The Court will not refer to the Plaintiff as a "Trademark Bully, as requested by the Defendant, instead we will just refer to them as the Plaintiff or by their legal name.

    Defendant and others will be damaged by the continued use and registration of [the mark] by Plaintiff for goods and services because persons in the relevant channel of trade who have been granted the 'honorable' title with the "Kentucky Colonel" commission and the public viewing Plaintiff's mark in its entirety…will mistakenly assume: that Plaintiff's goods and services are associated, connected, endorsed by, affiliated with, or in some other way related to or sponsored by the Defendant, the Commonwealth of Kentucky, Kentucky colonels (title

holders) that do not buy products from Plaintiff's licensees, make donations to or endorse their public charity, or other business that uses the term [mark] generically to describe their organizations and activities as Kentucky colonels or non-colonels; to the detriment of Defendant, other organizations and may potentially affect the reputation of the Commonwealth of Kentucky through commercialization of products and services for profit, third-party licensing, pecuniary gain, through silent non-consensual endorsement and any restrictive use of the term. As such Plaintiff's mark(s) is/are not entitled to registration with the USPTO, registration as a generic trade name, or use as a specious copyright based on the facts.

## Cancellation of Trademarks

The identical U.S. Trademarks "KENTUCKY COLONELS" are CANCELLED under USPTO Application Serial Numbers 88800020, 88800035 and 88800038 belonging to The Honorable Order of Kentucky Colonels, Inc. ("Plaintiff"). [The Mark] is too generic, merely and highly descriptive to serve as a trademark or trade name and it is a term that has been commonly and consistently used in the English language used to generally describe two or more Kentucky colonels doing something that colonels do or have done. It is also being used by the Plaintiff to represent many different things ambiguously that are all related to the *idea* of the "Kentucky Colonel" to essentially represent themselves as the "idea" of KENTUCKY COLONELS in the term's plural form, that are produced only by the Commonwealth of Kentucky and were present in American history and literature. [A company] "cannot appropriate the English language, and by doing so render a competitor inarticulate." *Blau Plumbing, Inc. v. S.O.S. Fix-It, Inc.*, 781 F.2d 604, 609-10 (7th Cir.1986).

The trademark applications omitted information about this lawsuit and the existence of confusion or doubt on the part of the trademark practitioner and should have included other users of the [term] that the Plaintiff knew about. These others that use the term needed to be stated as concurrent users or others). Other trademark registrations should be amended when necessary to disclaim the term "Kentucky Colonels" (the people) and (other organizations) to claim distinctiveness on the products line understanding it is a term from the public domain sourced by the Honorable Order of Kentucky Colonels and licensed out to third parties for the products they are arbitrarily applied to for sale online. It would be OK to trademark "Honorable

Order" or "HOKC" but not the term "Kentucky Colonels" because it already describes "what" and "for who" the Honorable Order is; and trademarking "Kentucky Colonels" for services would prevent others from competing as Kentucky colonels or forming organizations using the term creating an artificial barrier to competition resulting in unfair competition over many other persons who are Kentucky colonels.

Allowing a trademark or service mark to gain such broad usage (generically) for many types of different goods and services by a single company ambiguously, arbitrarily, generically, suggestively and distinctively for a term that has been admitted as "descriptive" which is "wholesomely generic" or "exists in the public domain" to be owned by an enterprise could create a monopoly if their name became the same as the trademark. The Defendant's website is full of over 600 exhibits that exemplify the generic and descriptive use of the words "KENTUCKY COLONEL", "KENTUCKY COLONELS", and "COLONEL" from resources gathered from online libraries, public news resources and the Chronicling America Project on the United States Library of Congress website. The Defendant has a bibliography page which displays 250 links to original electronic digitized resources and a newspaper page linked to 390 original news articles with a great majority of them using "Kentucky Colonels" generically and descriptively.

"Defendant, Col. David J. Wright is DECLARED, as a matter of law, <u>not to have engaged in trademark infringement with respect to any of plaintiff's trademarks</u> that are known in the Complaint [DE 1]. Defendant is AWARDED, as the prevailing party in an action brought under the Lanham Act, which permits a "court in exceptional cases [to] award reasonable attorney fees to the prevailing party" (See 15 U.S.C. § 1117(a)). Following the Supreme Court's interpretation of an "exceptional case" in an identical provision of the Patent Act, the Fourth Circuit has held that a determination of "exceptional" cases requires, "in light of the totality of the circumstances, that: (1) there is an unusual discrepancy in the merits of the positions taken by the parties, based on the non-prevailing party's position as either frivolous or objectively unreasonable; (2) the non-prevailing party has litigated the case in an unreasonable manner; or (3) there is otherwise the need or particular circumstances to advance considerations of compensation and deterrence" (See *Georgia-Pacific Consumer Products LP v. von Drehle Corp.*, 781 F.3d 710, 719-21 (4th Cir. 2015) relying on *Octane Fitness, LLC v. ICON Health &*

*Fitness, Inc.*, 134 S. Ct. 1749 (2014)). This case appears to have at least two of these three elements of any one would be required to consider it such an exceptional case. Such damages can also be applied for an *infringement case* under the Copyright Act, see 17 U.S.C. § 505; therefore reasonable attorney's fees (partial incidental damages) in the amount of $48,500 are awarded to the Defendant to be paid by the Plaintiff, and Plaintiff will also pay court costs estimated in the amount of $_____. The total judgement in favor of the Defendant is $_____ to be paid in 10 days from the time of this judgement, interest shall accrue at the annual rate set forth in 28 U.S.C. § 1961 from the date of judgment until paid in full.

## Prohibition of Use of Term as Trademark

The PLAINTIFF shall refrain from the use of "KENTUCKY COLONELS" as their *trade name* **and** *copyright name* at [www.kycolonels.org]. Plaintiff shall encode their web pages to represent their full business name mark "HONORABLE ORDER OF KENTUCKY COLONELS" and the "PAGE TITLE" to make their company and pages more searchable using their "real name". Likewise the Plaintiff may freely use the term "Kentucky colonels" descriptively to refer to the individuals, or "Kentucky Colonels" along with any descriptive adjective or adverb such as "Kentucky Colonels International", "Philadelphia Kentucky Colonels", "Antipodean Kentucky Colonels", "Kentucky Colonels in Action" or "Kentucky Colonels Barbecue".  The use of the term "KENTUCKY COLONELS" on its own creates a problem for all the competitors and similar organizations to be found at all, it creates the impression that other organizations not affiliated or associated with the Plaintiff somehow are part of the holder of the actual trade name. This is not the case when the Plaintiff uses its full name where they themselves use the term "Kentucky Colonels" as an idea to become the concept in itself. They are literally originators of an "[h]onorable [o]rder" of  "Kentucky [c]olonels" in 1933, but they were not the first or only organization when they started that used the term "KENTUCKY COLONELS" as a descriptive part of their name to emulate a genericized idea being used commercially as early as 1892. The full trade name "HONORABLE ORDER OF KENTUCKY COLONELS" is already distinctive, to shorten it to "KENTUCKY COLONELS" with a compound trademark is less distinctive and it makes the other trademark more ambiguous. As logic would dictate, a term that is descriptive and generic cannot be

accepted by the public as uniquely identifiable for a singular organization, when the term encompasses many historical events and cultural definitions prior to an entity's establishment; this term already transcends beyond any singular human existence… A reasonable man needs a descriptive and generic way of naming an organization (that maintains its uniqueness), however, the term must not cross into a state of ambiguity or blur lines. Every competitor or similar organization made up of "Kentucky colonels" has an equal right to use the term and express the idea the same way the Plaintiff has to describe the "HONORABLE ORDER" as their company. The Plaintiff and other parties should take it under advisement of the Court to show better discretion using their trademarks and the term Kentucky Colonels as a trademark ambiguously, when not directly in reference to licensed trademarks for arbitrary and suggestive products. The more trademarks an entity possesses, the greater the responsibility to keep the arbitrary and suggestive trademarks from being confused with the idea adapted to serve as a trademark. Trademark owners have a responsibility for proper trademark use and preventing ambiguous or confusing use of their own trademarks. Services offered by Kentucky Colonels for Kentucky colonels is not a trademarkable concept because it is too descriptive and relatively generic.

The Plaintiff can continue to use the trademark [KENTUCKY COLONELS] for its products if it does not anger or upset Kentucky colonels, if the products are made by Kentucky colonels or produced exclusively for all Kentucky colonels, or Honorable Order donors, should be clearly known on both the trademark owner's website as well as the third-party licensees website. Trademark infringement is a serious allegation and is not taken lightly. Ambiguous language should not be used to infer that the products are the same as the people or that Kentucky Colonels is the Honorable Order of Kentucky Colonels or vice versa. The Plaintiff and the Defendant should consider collective membership marks for Honorable Order of Kentucky Colonels and Kentucky Colonels International with their images or words for those who support them. Only the Commonwealth of Kentucky makes real Kentucky Colonels; in common law, letters patent is already a form of copyright and trademark for holders of the Honorable title to become a Kentucky Colonel.

**History is Unclear, So is the Future**

Evidence suggests that not even the Plaintiff's historical claim to the "first Kentucky colonel" is valid. Col. Todd was not in Kentucky from 1813-1814; when he returned to Frankfort, he became involved in Freemasonry, and he never actually met Isaac Shelby until proposing marriage to his daughter in 1816, according to The *Memoirs of Chas. S. Todd*. The book does discuss the special relationship developed between Col. Todd and his father-in-law, but there is nothing that suggests that Col. Charles Todd was commissioned or worked under Governor Isaac Shelby as his aide-de-camp previously. Captain Charles S. Todd became a colonel when his commission to colonel was made by General Duncan McArthur when Todd became the Inspector General of the Michigan Territory; after Todd served from 1813-1815 honorably for General William Harrison as his personal aide. The purpose of creating a false narrative in 1941 is unclear, but for the purposes of the Plaintiff, it strengthens their trademark, HONORABLE ORDER OF KENTUCKY COLONELS, with the addition of a unique mythical story, or old folklore; from before we knew better.

The motion for declaratory judgement <u>was not</u> a COUNTERCLAIM, so there is no award for any other compensatory, incidental, consequential, or punitive damages sought by the Defendant specifically at this time under Declaratory Judgement, however the *Plaintiff is civilly liable* under the Lanham Act and the Copyright Act for equitable damages caused by this lawsuit from at least January 30, 2020 through January 30, 2022 based on Defendant's estimated and projected development presumed from on the Merger and Consolidation Proposal submitted by Defendant to the Plaintiff as a Sealed Document **[DN 6]** for the Court. The Defendant should provide a detailed list of its planned expenses as if the Defendants were uninhibited by this lawsuit and the degree of damaging news media experienced, with consideration minimizing these plans due to COVID-19 implicitly included, no one should be the victim of lost time, which is estimated as being reasonable legal expenses during 2020.

There are no damages considered for fraud perpetrated on the USPTO by omission, forfeiture of time, fees and work, there is liability for damages against others as a result of a fraudulent trademark. It is apparent that the Plaintiff was simultaneously filing trademarks while filing for a civil suit with the same actors against a legally engaged organization(s) may be in oversight, but their failure to include or their voluntary will to exclude others that use the

trademark as part of their names, or manipulate or mistake the dates of use and in-commerce claims over an Approved Trademark Application or Registered Trademark once approved cannot be amended to be reconsidered with due process, the only penalty is trademark cancellation. This does not prevent the trademark claimant from their common law rights in a more specific jurisdiction such as in Kentucky where they hold known events, nor shall it prevent them from policing their trademarks inside/outside Kentucky or online internationally for marketing products bearing the registered mark for products like merchandise, chocolate, liquor, cigars or anything else like ball caps that is not really a Kentucky colonel. Nor would it prevent the product trademarks in-use for the "KENTUCKY COLONELS STORE" from stating "exclusive providers of official **Kentucky Colonels** ® merchandise" as a "fair-use" and "strong-use" tagline example expected of a trademark by an authorized licensee. All parties that hold trademarks should have appropriate legal language for each trademark representation and what they are being used for present on their website. The exhibit submitted by the Defendant shows a trademark statement that is hardly understandable relative to trademark use.

### Defendant Did Not Infringe

It is clear the Defendant was not infringing on the trademark because he was not using the singular term "KENTUCKY COLONELS" as a trademark or trade name nor was he using the trademark "HONORABLE ORDER OF KENTUCKY COLONELS" in such a way to create confusion, **[DN 7-4, 7-5 7-11]**, the name of the unincorporated organization "KENTUCKY COLONELS INTERNATIONAL" was instated as a registered assumed name corporation in Kentucky to conduct business as a membership organization on January 30, 2020, was legal and was not an infringement on the Plaintiff's legal trade name, nor in conflict with the Plaintiff's marks because of its generic and descriptive representation. The Defendant's name was being used descriptively and was being used for a great number of years with the consent and knowledge of the Plaintiff. The Defendant's reputation suffered as a result of the word, "infringement" in the lawsuit, newspaper reports, and nature of the civil charges. A legal dance kept this lawsuit in the Court until Defendant could demonstrate a strong likelihood of success on the merits of his defense position and/or present enough relevant information that will have weight in a circuit court appeal.

The ORDER **[DE 58]** is vacated. The Plaintiff has no time to show cause based on the adjudicative facts or grounds as to why this Declaratory Judgement should not be entered and the facts accepted. The Complaint in this matter is ( <u>dismissed with prejudice</u> ) / ( <u>continued</u> ) with the DEFENDANT named as the PREVAILING party of Declaratory Judgement of Non-Infringement and Non-Dilution. The Court ( <u>will not need to</u> ) / ( <u>will now</u> ) consider the Defendant's Answer **[DN 62]** and his Motion for Judgment on the Pleadings **[DN 65]**.

The Plaintiff has not demonstrated that the Defendant infringed because a Kentucky Colonel cannot be precluded from using a term like "Kentucky Colonels" to describe a group of Kentucky colonels performing a service or conducting an activity, likewise a historian cannot be prevented from utilizing an idea like "Yesterday's Kentucky Colonels" without inferring a relationship with the Plaintiff. This should not prevent the Plaintiff from applying for a new trademark like "Kentucky's Good Works Colonels" or getting a collective membership mark for "Honorable Order of Kentucky Colonels." They can also invest in endearing promotional and advertising campaigns using "Kentucky's Colonels", but cannot use the term "Kentucky Colonels" as a trade name, trademark, website copyright, or as a service mark for the Honorable Order of Kentucky Colonels which is the source of the same services and other arbitrarily trademarked products. This is because it will confuse the term with the idea, the products, the state, the organization, the books, historic figures, other organizations, the people, the history and the culture of Kentucky, to which they are all inextricably intertwined together.