UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

*Electronically Filed*

| | |
|---|---|
| THE HONORABLE ORDER OF KENTUCKY COLONELS, INC.<br><br>PLAINTIFF<br><br>v.<br><br>KENTUCKY COLONELS INTERNATIONAL, et al.<br><br>DEFENDANTS | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)   CIVIL ACTION NO. 3:20CV-132-RGJ<br>)<br>)<br>)<br>)<br>)<br>) |

**PLAINTIFF'S SUPPLEMENTAL MOTION TO SHOW CAUSE WHY DEFENDANT DAVID J. WRIGHT SHOULD NOT BE HELD IN CONTEMPT**

Plaintiff, The Honorable Order of Kentucky Colonels, Inc. ("HOKC"), by counsel, hereby tenders this supplement to its motion requesting the Court direct Defendant David J. Wright to show cause why he should not be held in contempt. In addition to the blatant violations of the Court's August 13, 2020 preliminary injunction order **[DE 58]** (the "Injunction Order") identified in HOKC's original motion **[DE 78]**, Defendant Wright has engaged in the following conduct which violates the Injunction Order and, therefore, constitutes contempt.

    **1.**    **Wright is Violating the Injunction Order's Provision Regarding Social Media.**

Wright currently maintains a Facebook Community page under the name "Kentucky Colonel" with a handle of "@colonels.net." This Facebook page is linked from the website maintained by Wright with the domain name commonwealth.colonels.net. Such action is a clear violation of paragraph d of the Injunction Order, which states:

    d.    Defendants and anyone acting on their behalf, including their owners, members, officers, agents, servants, employees, attorneys, and any other person in active concert or participation with Defendants are enjoined from using the Facebook or any other social media platform user names "Kentucky Colonels International" or "Kentucky Colonel Foundation" or any other user name or handle that is confusingly similar to the KENTUCKY COLONELS Mark.

[Injunction Order **[DE 58]**, PageID #1236]. The confusion caused by Wright's violation of the Injunction Order is reflected on the Facebook page itself which was erroneously tagged in a congratulatory message for a newly commissioned Kentucky Colonel. [Screenshots of the referenced Facebook page are attached as Exhibit 1]. That post shows confusion by the newly commissioned Kentucky Colonel about the organization to which he is now a member and also causes the viewing public to be confused about the organization as well. Wright's Facebook page directly violates the Injunction Order, and he should be held in contempt for maintaining that page.

    **2.**    **Wright's Use of the Name "Commonwealth Colonels" Violates the Injunction Order.**

In response to the Injunction Order, Wright modified the domain name for the Kentucky Colonels International website, changing it to **commonwealth.colonels.net** and renaming the website "Commonwealth Colonels." [*See* **[DE 78-1]**]. The name of the website was then changed to "Kentucky Colonelcy" and recently changed back to "Commonwealth Colonels." Wright candidly acknowledges that the new website is substantially similar to the former Kentucky Colonels International website. [**[DE 82-1]**, PageID # 1887].[1] Like the Kentucky Colonels International website, the new website touts an "International Title Registry" stating that "those who have received a colonel's commission may apply to be recognized in the International

---

[1] While the "Commonwealth Colonels" website is modified on almost a daily basis, the version of the website as it appeared on December 16, 2020 was attached to Wright's recent filings with the Court [**DE 82-2**]. To avoid burdening the record, the instant motion reflects references to that iteration of the website.

Registry, an idea originated by our network group in 1998 …" and promises that the "program is scheduled to be online by the middle of 2021." [*Id.* at PageID # 1890]. The website further describes the "communications network [colonels.net]" allegedly "under development" by the organization "that empowers colonels" using a virtual private network and encourages members "to provide information relative to their status, engagement in local associations and participate in programs to further their abilities and prominence as honorable ladies and gentlemen serving as the state's goodwill ambassadors." [*Id.* at PageID # 1894].

The maintenance of this website clearly violates the Injunction Order which forbids the use of any mark confusingly similar to KENTUCKY COLONELS which is likely to create consumer confusion as to source, sponsorship, or affiliation of the services provided in connection with that mark. Specifically, the Injunction Order provides:

> b. Defendants and anyone acting on their behalf, including their owners, members, officers, agents, servants, employees, attorneys, and any other persons in active concert or participation with Defendants, are enjoined from using the KENTUCKY COLONELS Mark, or any mark that is confusingly similar to the KENTUCKY COLONELS Mark including, but not limited to, KENTUCKY COLONELS INTERNATIONAL and KENTUCKY COLONEL FOUNDATION, on any website, social media page, blog, or in such a way as is likely to cause consumers to be confused, mistaken, or deceived into believing that HOKC has sponsored, sanctioned, approved, licensed or is in any affiliated with Defendants or any organization or cause sponsored or supported by Defendants.

[Injunction Order [**DE 58**], PageID #1235]. Wright's use of "Commonwealth Colonels" as the mark for his purported membership and registration endeavors directly violates that provision. Under the *Frisch's* factors applied and analyzed by the Court in entering the Injunction Order, "Commonwealth Colonels" is, at least, similarly confusing, if not virtually identical under the "sight, sound, and meaning" test. The element "COLONELS" is identical; the adoption of the term "COMMONWEALTH" instead of KENTUCKY does not defeat trademark similarity since consumers will perceive COMMONWEALTH and KENTUCKY as conveying essentially the

3

same meaning. "Similarity is not limited to the eye or ear. The mental impact of a similarity in meaning may be so pervasive as to outweigh any visual or phonetic differences." J. Thomas McCarthy, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 23:26 (5th ed.); *see also Kraft General Foods, Inc. v. BC-USA, Inc.,* 840 F. Supp. 344, 350 (E.D. Pa. 1993) ("A fifth factor is the marks' similarity of sight, sound, and meaning. Both "Pennsylvania" and "Philadelphia" are geographic place names. Their meanings are similar in that Philadelphia is (best known as) a city in Pennsylvania."). Even in a case where marks look and sound totally dissimilar, courts have found "confusing similarity" based on the meaning, or consumer connotation, of the mark; for instance, the marks TORNADO and CYCLONE, both used in connection with wire fencing, were found to be confusing "since the two words mean the same thing to the ordinary consumer's mind." MCCARTHY § 23:26 (5th ed.) (discussing *Hancock v. American Steel & Wire Co.*, 203 F.2d 737 (C.C.P.A. 1953)).

Furthermore, while actual confusion is not necessary to demonstrate likelihood of confusion,[2] it is "undoubtedly the best evidence of likelihood of confusion." *Daddy's Junky Music Stores, Inc. v. Big Daddy's Family Music Ctr.*, 109 F.3d 275, 284 (6th Cir. 1997) (citation omitted). Here, the Court found that there was actual confusion in granting the Injunction Order [**DE 58,** PageID #1223-24]. There is continued actual confusion as demonstrated by Wright's Facebook page (which he maintains despite the Injunction Order) where recipients of the Kentucky Colonels commission are unwittingly tagged to become members of that page's "community."

---

[2] "The test of infringement is the likelihood of confusion, not the proof of actual confusion." 4 McCarthy, § 23:12 (5th ed); *Innovation Ventures, LLC v. N2G Distributing, Inc.*, 763 at 3rd 524, 536 (6th Cir. 2014) (there is no need for plaintiff to show actual confusion in order to prove infringement.); *Maker's Mark Distillery, Inc. v. Diageo North America, Inc.*, 769 at 3rd 410, 422 (6th Cir. 2012).

Importantly, Wright has also edited the Wikipedia page on Kentucky Colonels to make it appear that his organization is equally relevant to HOKC and linked his website directly to the Kentucky Colonels Wikipedia page immediately below the HOKC website link. Combined with Wright's ongoing online activities and failure to comply with the Preliminary Injunction, his adoption of the "Commonwealth Colonel" mark evidences his bad faith intent, and as the Sixth Circuit has observed, intent to confuse customers gives rise to an inference of likely confusion because a defendant who purposely chooses a particular mark because it is similar to that of a senior user is saying, in effect, that he thinks that there is at least a possibility that he can divert some business from the senior user. *Kibler v. Hall*, 843 F.3d 1068, 1081 (6th Cir. 2016), *petition for certiorari filed* (U.S. May 12, 2017) ("This court may infer a likelihood of confusion from evidence that defendant chose its mark to confuse consumers about the source of the parties' products.").

Even if the "Commonwealth Colonels" mark was not deemed a likely source of confusion, in this case, the "Safe Distance Rule" adopted by the Sixth Circuit precludes their use by Wright. The Safe Distance Rule is an equitable remedy that allows courts to create a zone of safety around trademark holders victimized by unlawful use of a protected mark. The rule requires courts to apply injunctive relief broadly enough to ensure that a past infringer will not have the opportunity to infringe on an owner's right in the future. *See Dominic's Rest. of Dayton v. Mantia*, 2009 WL 4680223 (S.D. Ohio, December 3, 2009). The rule "prevents known infringers from using trademarks whose use by non-infringers would not necessarily be actionable." *Innovation Ventures, LLC v. N2G Distrib., Inc.*, 763 F.3d 524, 544 (6th Cir. 2014); *see also Tamko Roofing Products, Inc. v. Ideal Roofing Co., Ltd.*, 282 F.3d 23, 40 (1st Cir. 2002). Like the infringement in *Innovation Ventures*, Wright's activities in causing consumer confusion through his

infringement of the KENTUCKY COLONELS Mark is not "magically remedied by *de minimis* fixes. Instead, the confusion lingers, creating the need for [Wright] not only to secure a new non-infringing name … but one so far removed from any characteristic of [KENTUCKY COLONELS] so as to put the public on notice that the two are not related." *Id., citing Taubman v. Webfeats,* 319 F.3d 770, 778-79 (6th Cir. 2003). The Safe Distance rule compels a finding that Wright's current internet and social media activities violate the Injunction Order.

For the reasons set forth herein, as well as in HOKC's original motion, Defendant David J. Wright should be held in contempt of Court.

Respectfully submitted,

*/s/ Cornelius E. Coryell II*
Cornelius E. Coryell II
Michelle Browning Coughlin
Julie Laemmle Watts
WYATT, TARRANT & COMBS, LLP
400 West Market Street, Suite 2000
Louisville, KY  40202
(502) 589-5235
ccoryell@wyattfirm.com
mcoughlin@wyattfirm.com
jwatts@wyattfirm.com

*Counsel for Plaintiff, the Honorable Order of Kentucky Colonels, Inc.*

**CERTIFICATE OF SERVICE**

       I hereby certify that on December 18, 2020, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system. I further certify that a true and correct copy of the foregoing has been served upon the following, via electronic mail, on the 18th day of December, 2020:

  David J. Wright
  david.wright@globcal.net
  Edificio Torre 997, Local B
  San Juan, Caracas
  Distrito Capital, Venezuela 1021

                                        */s/ Cornelius E. Coryell II*
                                        *Counsel for Plaintiff, the Honorable Order of*
                                        *Kentucky Colonels, Inc.*

100410609