EXHIBIT

5

# EXHIBIT 5

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

THE HONORABLE ORDER OF
KENTUCKY COLONELS, INC.,                                              Plaintiff,

v.                                                          Civil Action No. 3:20-cv-132-RGJ

KENTUCKY COLONELS
INTERNATIONAL et al.,                                               Defendants.

* * * * *

**ORDER**

This matter is before the Court on Plaintiff The Honorable Order of the Kentucky Colonels'

("HOKC"), Motion for Temporary Restraining Order and Preliminary Injunction [DE 7], Motion

for Preliminary Injunction [DE 39], and Motion for Entry of Default [DE 54]. This matter is also

before the Court on Defendant David J. Wright's ("Wright's") pro se Motions to Dismiss [DE 24,

DE 37, 47], pro se Motion for Leave to Seal Document [DE 44], pro se Motion to Drop Defendants

[DE 51], and pro se Motion for Leave to File Supplement to Amended Motion to Dismiss [DE 52].

For the reasons below, HOKC's motions are GRANTED and Wright's motions are DENIED in

part and GRANTED in part.

**BACKGROUND**

The Court granted a temporary restraining order to HOKC against Defendant Kentucky

Colonels International ("KCI") and its affiliated entities. [DE 14, 23]. The TRO prohibited

Defendants from using the KENTUCKY COLONELS trademark or any mark similar in a

competitive, confusing, or deceitful matter. [DE 14 at 502-04]. The TRO set a preliminary

injunction hearing and Wright received notice of this hearing. [DE 14 at 504; DE 23, Resp. Mot.

for TRO]. The Court then held a preliminary injunction hearing. [DE 22]. Defendants failed to

1

appear at the preliminary injunction hearing despite receiving notice. [DE 22, DE 23 at 728, DE 29 Trans. 03/04/20 Hrg. at 765-67]. The Court later extended the TRO and found that the Corporate Defendants' changing of the name to "Kentucky Colonel Foundation" and the domain name to "kentucky.colonel.net" has only brought the marks closer and does not comply with the TRO. [DE 32 at 820-21]. Since the TRO, Defendants have stated on their KCI website:

> Finally, since we are being forced to abandon our Assumed Name Corporation registration for "Kentucky Colonels International" in Kentucky as a result of this lawsuit, we have taken steps to offshore our international decentralized autonomous organization to the world theater that it has been developed for as goodwill ambassadors with our colonelships to establish ourselves as a foundation and benign non-state actors to better exercise our rights under Admiralty, Maritime, and International Customary law.

[DE 39-2]. Defendants state on the KCI website that "[HOKC] is engaged in deceptive practices using a non-existent membership status with their donors to influence their fundraising efforts" and that HOKC is working "directly with a former Governor to coerce donors to make contributions to retain the privilege to make nominations of new Kentucky Colonels . . ." [*Id.*].

The Court also ruled that Wright could represent himself pro se but not the other corporate Defendants—KCI, Ecology Crossroads Cooperative Foundation, Inc., and Globcal International, Inc. ("Corporate Defendants"). [DE 32 at 808]. The Court also ordered that Defendants, after obtaining counsel, must file an answer, counterclaim, or any brief in opposition to Kentucky Colonels' motion for preliminary injunction within sixty days. [DE 32 at 822]. Wright, pro se, has responded to the motion for preliminary injunction and moved to dismiss. [DE 24, 37, 42]. But the Corporate Defendants have not obtained counsel or responded. The Court permitted the Corporate Defendants another extension of twenty days to obtain counsel. [DE 46]. The deadline has passed and the Corporate Defendants have not obtained counsel.

The Court's previous Order granting HOKC's a TRO [14] and extending the TRO [DE 23] summarizes the record.  The Court may cite other information added to the record in this opinion. The Court has reviewed the filings since that time and does not see any issues of disputed facts that would require a second evidentiary hearing.  The parties disagree about the law, but Wright fails to demonstrate that factual disputes exist regarding the required elements for a preliminary injunction. Further, as discussed above, Wright had notice of the Court's previous preliminary injunction hearing and failed to appear.  He has filed multiple pleadings since, and he has not requested a hearing.  Holding a second preliminary injunction hearing is thus unnecessary. *ASI Bus. Sols., Inc. v. Otsuka Am. Pharm., Inc*., 233 F. Supp. 3d 432, 438 (E.D. Pa. 2017) ("Rule 65(a) does not always require a live hearing, and courts sometimes rule based on the parties' paper submissions, such as when the issues are strictly legal or the facts are not in dispute."); §73:49.*Requirement for hearing on preliminary injunction*, 14A Cyc. of Federal Proc. § 73:49 (3d ed.).

## DISCUSSION

### 1. Motion for Leave to File Supplemental Motion to Dismiss

Wright moves pro se for leave to file a supplemental pleadings and present new information on his motions to dismiss. [DE 52].  This is the fourth motion to dismiss filed by Wright.  The Court will permit the supplemental filing and has considered it below in addressing Wright's motions to dismiss.

### 2. Motion for Preliminary Injunction.

In the Sixth Circuit,

[f]our factors guide the decision to grant a preliminary injunction: "(1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury absent the injunction; (3) whether the injunction

3

would cause substantial harm to others; and (4) whether the public interest would be served by the issuance of an injunction."

*S. Glazer's Distribs. of Ohio, LLC v. Great Lakes Brewing Co.*, 860 F.3d 844, 849 (6th Cir. 2017) (quoting *Bays v. City of Fairborn*, 668 F.3d 814, 818-19 (6th Cir. 2012)). "[T]hese are factors to be balanced, not prerequisites to be met." *Id.* (citing *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 542 (6th Cir. 2007)). "For example, 'a finding that the movant has not established a strong probability of success on the merits will not preclude a court from exercising its discretion to issue a preliminary injunction if the movant has, at minimum, shown serious questions going to the merits and irreparable harm which decidedly outweighs any potential harm to the defendant if the injunction is issued." *Six Clinics Holding Corp., II v. Cafcomp Sys., Inc.*, 119 F.3d 393, 399–400 (6th Cir. 1997) (internal quotations and brackets omitted).

A.    Likelihood of Success on the Merits.

HOKC seek relief under both federal and state law, alleging federal trademark infringement, unfair competition, dilution, and violation of the Anticybersquatting Consumer Protection Act and state-law claims of defamation, common-law trademark infringement, unfair competition, dilution, and unjust enrichment. [DE 1, at 9–16]. HOKC's motion for preliminary injunction only addresses the trademark infringement and cyberpiracy claims.

1.   *Trademark Infringement*

In granting the TRO, the Court evaluated in detail HOKC's trademark infringement claim under the eight factor test.[1] [DE 32 at 813-20]. As to the first factor, the Court held that HOKC's

---

[1] These factors are: (1) strength of the plaintiff's mark; (2) relatedness of the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) likely degree of purchaser care; (7) defendant's intent in selecting the mark; [and] (8) likelihood of expansion of the product lines. *Frisch's Rests., Inc. v. Elby's Big Boy of Steubenville, Inc.*, 670 F.2d 642, 648 (6th Cir. 1982).

4

mark is moderately strong [*Id*. at 815] and this factor has not changed. Wright argues in response, as he did before, that the Mark is part of the "public domain" because the term "Kentucky Colonel" has been engaged since the 18th century to market different products and is part of Kentucky's history and culture. [DE 42-1 at 984-87]. The Court had held this argument fails because the HOKC has an incontestable mark in the "Honorable Order of Kentucky Colonels" as it relates to eleemosynary services and Wright presents no evidence that the mark is invalid. [DE 32 at 815]. Further, Wright's public domain argument fails because legally protected intellectual property, such as the trademark here, is the exception to the general rule that creations in the public domain are not protected. § 1:23. *Public domain is the general rule: intellectual property is the exception*, 1 MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 1:23 (5th ed.). In other words, "[a] thing is truly in the 'public domain' only if no intellectual property right protects it." § 1:26. *What is in the public domain?*, 1 MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 1:26 (5th ed.). HOKC has presented unrefuted evidence that it has legally defined exclusive rights to the KENTUCKY COLONELS mark for use in connection with certain good and services. [DE 48 at 1042-43; DE 1-2 at 27-19 (chart of HOKC's trademark registrations and applications)]. As a result, the KENTUCKY COLONELS mark is not in the public domain when used in connection with certain goods and services as identified in its registrations and pending applications.

Wright also argues that HOKC has committed "copyfraud" of content in the public domain. [DE 47 at 1022-23]. But "copyfraud" is inapplicable. Plaintiff does not claim copyright infringement. "Copyfraud" is a type of copyright infringement where "someone [is] actively misrepresenting the protected status of a work." Matthew Cooper, *The Keepers of the Culture: How the Creation of A Public Domain Registry Could Prepare Fine Art Museums for the Digital Age*, 47 AIPLA Q.J. 119, 128 (2019). As discussed above, the KENTUCKY COLONELS mark

is not in the public domain when used in connection with certain goods and services as identified in its registrations and pending applications. The strength of the mark factor remains in support of a substantial question of infringement.

As to the second factor, the Court found relatedness of the goods supported a finding of infringement. [DE 32 at 816-17]. Among several similarities, the Court found HOKC and Kentucky Colonels International both seek donations from individuals who want the Kentucky Colonels name preserved in integrity and put to good use. [*Id*.] Wright doe not rebut the relatedness of the goods and services offered by the parties. HOKC offers proof that the KCI website and blog continue to describe the entity as offering related services as HOKC [DE 39-2] and Wright intends for KCI to offer paid memberships, provide credentials to members, and charge monthly dues for his services. [DE 23 at 720]. Wright cites unrelated businesses that may use HOKC's mark, but HOKC does not claim to have the right to use its mark in connection with hotels or horse racing promotors. [DE 48 at 1044]. This factor thus continues to support a likelihood of success on the infringement claim.

As to the third factor, the similarity of the marks, HOKC holds a registered and incontestable trademark for "Honorable Order of Kentucky Colonels" for eleemosynary associations, scholarships, and grants, and it similarity with "Kentucky Colonels International," remains. [DE 32 at 817]. As before, Wright's organization's name change to "Kentucky Colonel Foundation" lessens the distinction between the organizations and implies the organization has a philanthropic purpose associated with the title of Kentucky Colonel. [DE 32 at 816-17]. This factor thus continues to support a likelihood of success on the infringement claim.

The Court found the fourth through seventh factors, evidence of actual confusion, the marketing channels used, likely degree of purchaser care, and defendant's intent, all supported

HOKC's infringement claim. [DE 32 at 817-19]. Wright presents no evidence to rebut the Court's previous finding the HOKC has presented evidence of actual confusion with Facebook posts and the testimony of Sherry Crose ("Crose"), HOKC's executive director, at the preliminary injunction hearing. [DE 32 at 818]. The parties use virtually identical marketing channels—Facebook and online platforms—to communicate, solicit donations, and maintain memberships. [DE 32 at 819]. As to Wright's intent, he admits that he has "developed a program that provides genuine membership services to Kentucky Colonels and fairly competes with the their [HOKC's] organization . . ." [DE 37, Mot. Dis. at 838]. Crose testified at the preliminary injunction hearing that Wright tried to "shakedown" HOKC when he submitted a "merger proposition" that would allow Wright to serve as a consultant for HOKC with a six-figure buyout. [DE 32 at 810, DE 29 at 784]. Wright intends to continue to infringe on the KENTUCKY COLONELS mark by using the name Kentucky Colonel Foundation and continuing to offer products and services. [DE 23 at 720, 726]. And although degree of purchaser care is low, there is a high possibility of actual confusion. [DE 32 at 819]. These factors thus continue to support a likelihood of success on the infringement claim.

As for the eight factor, expansion of product lines, it remains of little relevance. [DE 32 at 820]. HOKC continues to show likelihood of success on it trademark infringement claim.

### 2. *Anticybersquatting Claim*

HOKC moves for a preliminary injunction prohibiting Defendants' alleged cyber piracy activity under the Anticybersquatting Consumer Protection Act ("ACPA") because of Wright's using of the domain name kentucky.colonels.net and kycolonels.international. [DE 39 at 857]. The TRO prohibited infringement, including the website and domain name at the root of HOKC's cyberpiracy claim. [DE 32 at 813]. But in response to the TRO, Wright changed the name of the

organization from "Kentucky Colonel International" to "Kentucky Colonels Foundation." [DE 23 at 726]. These actions made the distinction between the entities even less clear. [DE 32 at 821]. Wright changed the domain name to kentucky.colonels.net. [DE 39 at 860].

The Court first considers whether HOKC is likely to success on the merits of its claim under the ACPA. The ACPA, an amendment to the Lanham Act, prohibits "cybersquatting" and applies to a party who "registers, traffics in, or uses a domain name" that is "identical or confusingly similar to" a "distinctive" mark or that is "identical or confusingly similar to or dilutive of" a "famous" mark. 15 U.S.C. § 1125(d)(1)(A). 9. "Cybersquatting" occurs when a person other than a trademark holder registers a domain name of a well-known trademark and then attempts to profit by either ransoming the domain name back to the trademark holder or by using the domain name to divert business from the trademark holder to the domain name holder. *Daimlerchrysler v. The Net Inc*., 388 F.3d 201, 204 (6th Cir. 2004) (citing *Sporty's Farm L.L.C. v. Sportsman's Market, Inc*., 202 F.3d 489, 493 (2d Cir. 2000)). To successfully establish a claim for violating the statute, HOKC must show: (1) they have a valid trademark entitled to protection; (2) the mark is distinctive or famous; (3) the Defendants' domain name is identical or confusingly similar to, or with famous marks, dilutive of, the owner's mark; and (4) the Defendants used, registered, or trafficked in the domain name (5) with a bad-faith intent to profit. *Ford Motor Co. v. Catalanotte*, 342 F.3d 543, 546 (6th Cir. 2003).

As to the first and second elements, the Court has analyzed the strength of HOKC's mark above and in its previous order [DE 32] based on the filings and the evidence presented at the preliminary injunction hearing. [DE 29]. HOKC has presented sufficient evidence that they have a valid mark entitled to protection that is distinct. The domain names above used by Wright are confusingly similar to HOKC's marks as Wright's domain name incorporates the KENTCUKY

8

COLONELS mark. *N. Light Tech. v. N. Lights Club*, 97 F. Supp. 2d 96, 117 (D.Mass.2000) (In making this determination, the Court is to make a "direct comparison between the protected mark and the domain name itself," rather than an assessment of the context in which each is used or the content of the offending website). There is no dispute by Wright as to the use of the kentucky.colonel.net domain name.

As to the fifth element, 15 U.S.C. § 1125(d)(1)(B)(i) outlines the factors for the Court to consider in determining whether the plaintiff has shown a bad faith intent to profit:

(I) the trademark or other intellectual property rights of the person, if any, in the domain name;

(II) the extent to which the domain name consists of the legal name of the person or a name that is otherwise commonly used to identify that person;

(III) the person's prior use, if any, of the domain name in connection with the bona fide offering of any goods or services;

(IV) the person's bona fide noncommercial or fair use of the mark in a site accessible under the domain name;

(V) the person's intent to divert consumers from the mark owner's online location to a site accessible under the domain name that could harm the goodwill represented by the mark, either for commercial gain or with the intent to tarnish or disparage the mark, by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the site;

(VI) the person's offer to transfer, sell, or otherwise assign the domain name to the mark owner or any third party for financial gain without having used, or having an intent to use, the domain name in the bona fide offering of any goods or services, or the person's prior conduct indicating a pattern of such conduct;

(VII) the person's provision of material and misleading false contact information when applying for registration of the domain name, the person's intentional failure to maintain accurate contact information, or the person's prior conduct indicating a pattern of such conduct;

(VIII) the person's registration or acquisition of multiple domain names which the person knows are identical or confusingly similar to marks of others that are distinctive at the time of registration of such domain names, or dilutive of famous

marks of others that are famous at the time of registration of such domain names, without regard to the goods or services of the parties; and

(IX) the extent to which the mark incorporated in the person's domain name registration is or is not distinctive and famous within the meaning of [the Act].

15 U.S.C. § 1125(d)(1)(B)(i). These factors are not exhaustive and the Court may also consider "unique circumstances . . . which do not fit neatly into the specific factors enumerated by Congress." *Sporty's Farm*, 202 F.3d at 499. Wright admits that he has "developed a program that provides genuine membership services to Kentucky Colonels and fairly competes with the their [HOKC's] organization using . . . 'the Internet.'" [DE 37, Mot. Dis. at 838; DE 42-1 at 989-90]. Wright is using a domain name that incorporates HOKC's mark and links directly to the KCI website, which provides membership services to compete with HOKC. Given the evidence of confusion discussed above, there is enough in the record to demonstrate a bad faith intent to profit.

In sum, HOKC has shown a likelihood of success on the merits of its claim under the ACPA.

B.    Irreparable Harm to Plaintiff

"To demonstrate irreparable harm, the plaintiffs must show that . . . they will suffer actual and imminent harm rather than harm that is speculative or unsubstantiated." *Abney v. Amgen, Inc.*, 443 F.3d 540, 552 (6th Cir. 2006). An injury is irreparable if "'it is not fully compensable by monetary damages.'" *Tenke,* 511 F.3d at 550. (quoting *Overstreet v. Lexington–Fayette Urban County Gov't*, 305 F.3d 566, 578 (6th Cir. 2002)). Ordinarily, "irreparable injury . . . 'follows when a likelihood of confusion or possible risk to reputation appears' from infringement or unfair competition." *Circuit City Stores, Inc. v. CarMax, Inc.,* 165 F.3d 1047, 1056 (6th Cir. 1999), quoting *Wynn Oil Co. v. Am. Way Serv. Corp.*, 943 F.2d 595, 599 (6th Cir. 1991). As noted above, the Court finds a likelihood of confusion as a result of the Defendants' use of the mark and domain

names. Thus, the Court finds that HOKC will suffer irreparable harm if the Court does not enjoin the Defendants' use of the mark and operation of the domain names and linked sites

### C.  Substantial Harm to Others

Next, the Court must determine whether an injunction would harm others. *Tenke,* 511 F.3d at 550–51. This factor requires the Court to determine whether HOKC's harm absent an injunction outweighs the Defendants' or others' harm if the Court grants the preliminary injunction. As before, if individuals are confusing KCI with HOKC and unknowingly donating money to the wrong organization, the public may be harmed.  *See Tenke*, 511 F.3d at 550–51 (quoting *Tumblebus Inc. v. Cranmer*, 399 F.3d 754, 760 (6th Cir. 2005)). As discussed in the Court's previous TRO and above, the public has confused KCI (now marketed as Kentucky Colonels Foundation) and HOKC. [DE 29, Prelim. Inj. Hrg. at 798; DE 32 at 821].  The distinction between the two entities is even less clear [DE 27] as a result of Wright's changes to the name and domain. This factor thus supports the preliminary injunction and any harm to Defendants is outweighed by HOKC's and the public's potential harm.

### D.  Public Interest

The final factor the Court should evaluate is "whether the public interest would be served by the issuance of the [restraining order]." *Tenke,* 511 F.3d at 551. 'Trademark infringement, by its very nature, adversely affects the public interest in the 'free flow' of truthful commercial information.'" *Big Boy Restaurants v. Cadillac Coffee Co.,* 238 F. Supp. 2d 866, 873 (E.D.Mich.2002) (quoting *Gougeon Bros., Inc. v. Hendricks,* 708 F. Supp. 811, 818 (E.D.Mich.1988)). Allowing Defendants to continue to use HOKC's marks violates the statutory protections guaranteed to HOKC, and increases the chance that potential customers might inadvertently purchase Defendants' services when they intend to procure HOKC's services. *Audi*

*AG,* 469 F.3d at 550 (6th Cir. 2006) (affirming the district court's decision to issue an injunction to "prevent consumers from being misled."). So this factor supports a preliminary injunction as well.

Having considered these factors, the Court finds that a preliminary injunction is appropriate.

### 3. Motion for Entry of Default

HOKC moves for entry of default [DE 54] under Rule 55(a) against the Corporate Defendants. Under Rule 55(a) "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules and that fact is made to appear by affidavit or otherwise, the clerk shall enter the party's default." HOKC has shown by affidavit that the Corporate Defendants have failed to plead or otherwise defendant this action after being properly served. HOKC's motion is granted and the Court directs the Clerk of Court to make entry of default.

### 4. Motions to Dismiss

Wright moves to dismiss under Rule 12(b)(1) for lack of jurisdiction and under Rule 12(b)(6) for failure to state a claim upon which relief may be granted. [DE 24, 37, 47, DE 52-2 Supp. Mot. Dis.]. Wright also argues that the Court should grant summary judgment on Kentucky Colonels' claims. [DE 47 at 1033; DE 52-2 at 1097]. The Court will address each motion in turn below.

### A. Motions to Dismiss under Rule 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) allows dismissal for "lack of jurisdiction over the subject matter" of claims asserted in the Complaint. Fed. R. Civ. P. 12(b)(1). Generally, Fed. R. Civ. P. 12(b)(1) motions fall into two categories: facial attacks and factual attacks. Fed. R. Civ. P.

12(b)(1); *United States v. Richie*, 15 F.3d 592, 598 (6th Cir. 1994). In a facial attack, the Defendant asserts that the allegations in a Complaint are insufficient on their face to invoke federal jurisdiction. *Id.* By contrast, in a factual attack, the Defendant disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction and the Court is free to weigh the evidence. *Id*. Plaintiff has the burden of proving subject matter jurisdiction to survive a motion to dismiss pursuant to Rule 12(b)(1). *Madison-Hughes v. Shalala,* 80 F.3d 1121, 1130 (6th Cir. 1996). Lack of subject matter jurisdiction is a non-waivable, fatal defect. *Von Dunser v. Aronoff*, 915 F.2d 1071, 1074 (6th Cir. 1990).

Federal district courts have original jurisdiction of civil actions arising under any act of Congress relating to trademarks. 28 U.S.C. § 1338(a); *see* 15 U.S.C. § 1114 et seq. (federal district courts have original jurisdiction of cases arising under the Lanham Trademark Act). When a complaint specifically alleges a federal statutory provision at issue, subject matter jurisdiction exists. *Rote v. Zel Custom Mfg. LLC*, 816 F.3d 383, 387-97 (6th Cir. 2016) (affirmative pleading of precise statutory basis for federal subject matter jurisdiction is not required as long as complaint, read as a whole, alleges enough facts to establish jurisdiction). Likewise, federal district courts have original jurisdiction, concurrent with state courts, of civil actions asserting state law claims of unfair competition or defamation joined with substantially related claims under the federal trademark laws. 28 U.S.C. § 1338(b); *Astor-Honor, Inc. v. Grossett & Dunlap, Inc*., 441 F.2d 627, 629-30 (2d Cir. 1971).

HOKC's Verified Complaint states the federal statutes that provide the basis for recovery and describes the factual detail the underlying the alleged violations of those statutes. HOKC's Verified Complaint [DE 1] cites several federal statutes: 15 U.S.C. § 1114(1); 15 U.S.C § 1125(a); and 15 U.S.C. § 1125(c). The Verified Complaint alleges that (1) HOKC has promoted and

protected the goodwill of the KENTUCKY COLONELS Mark for almost a century [DE 1, at 5];
(2) the Mark plays a critical role in HOKC' fundraising efforts [*Id.*].; (3) HOKC owns federal
trademark registrations for the Mark, filed federal trademark applications for the Mark, and has
carefully protected and enforced the Mark [*Id.* at 6]; (4) HOKC continuously used the Mark in
connection with its philanthropic activities and the Mark carries a positive connotation worldwide
[*Id.*]; and (5) HOKC experienced actual confusion because of Wright's activities infringing on the
Mark [*Id.* at 8]. The Verified Complaint thus survives Wright's facial attack under Rule 12(b)(1).

The Verified Complaint also survives Wright's factual attack under Rule 12(b)(1). Wright
argues that HOKC's mark is part of the "public domain" and thus not intellectual property that
trademark may protect. [DE 47 at 1024-28]. Wright's factual attack under 12(b)(1) fails because
merits based attacks are not appropriate for attacks on subject matter jurisdiction. *Reeves v.
Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150-51 (2000). Thus this argument is more
appropriately characterized as one under Rule 12(b)(6).

B. Motions to Dismiss under Rule 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) instructs that a court must dismiss a complaint if
the complaint "fail[s] to state a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6).
To properly state a claim, a complaint must contain "a short and plain statement of the claim
showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). When considering a motion
to dismiss, courts must presume all factual allegations in the complaint to be true and make all
reasonable inferences in favor of the non-moving party. *Total Benefits Planning Agency, Inc. v.
Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008) (citation omitted). "But the
district court need not accept a bare assertion of legal conclusions." *Tackett v. M & G Polymers*,
USA, LLC, 561 F.3d 478, 488 (6th Cir. 2009) (citation omitted). "A pleading that offers labels

and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted).

To survive a motion to dismiss, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). "A complaint will be dismissed . . . if no law supports the claims made, if the facts alleged are insufficient to state a claim, or if the face of the complaint presents an insurmountable bar to relief." *Southfield Educ. Ass'n v. Southfield Bd. of Educ.*, 570 F. App'x 485, 487 (6th Cir. 2014) (citing *Twombly*, 550 U.S. at 561–64).

Wright's motions to dismiss under Rule 12(b)(6) fail. As discussed above and in the Court's previous TRO [DE 32], the Court has analyzed and found HOKC has presented a substantial question on its trademark and cyberpiracy claims based on the documents presented and preliminary injunction hearing. The Court rejected Wright's primary arguments that HOKC's mark is part of the public domain [DE 52-2, Supp. Mot. Dis. at 1078] and that HOKC has committed copyfraud for the reasons stated previously [DE 32] and above. As reiterated above, HOKC's rights related to the KENTUCKY COLONELS mark in connection to charitable organizations and membership services and it is not in the public domain as it relates to these services. Wright's motions to dismiss under Rule 12(b)(6) are thus denied.

C. Summary Judgment

Wright moves the Court to grant summary judgment on HOKC's claims. [DE 47 at 1033]. But Wright does not address genuine issues of fact or law on any of HOKC's claims. Wright states

that the Defendants were "only reinstated and legally incorporated since January 21, 2020 and that previously we operated as an unincorporated civil society from 2001 until 2019" and "do not understand why the Plaintiff has not convened or accepted our offers to negotiate a settlement . . . does not understand the Court's authority to encumber our rights . . . or to make decisions that encompass civil right over property that belong in the public domain." [DE 47 at 1034]. The Court addressed the public domain issue above and, in the Court's previous order. Wright has not met his burden of setting forth the basis and support for his motion for summary judgment. Thus, the motion for summary judgment is denied.

### 5. Motion for Leave to Seal Document

Wright moves the Court to "File Notification with the Court Under Seal." [DE 44]. Wright states that "I am hereby requesting leave from the Court to provide a notification 'under seal' stating the reasons and explaining the premises for their inability to send me or deliver postal mail to me." [*Id.* at 1006]. Wright also states

> Defendant respectfully request that the Court grant an Order permitting leave and issue a Memorandum relative to the unredacted document presented in the form of a Notification to the Court supplement the Court record in confidence . . . Defendant has not contacted Plaintiffs' counsel because this matter is not related to the case itself nor should its influence the outcome of the case and should be unopposed, it is an issue relative to service by the Court to the Defendant . . .

[*Id.*]

Under Local Rule 5.7(c), a party wishing to have a document sealed must move to do so if no federal statute, rule of civil procedure, local rule, or standing order applies. The moving party must state specific reasons why the Court should seal the document and why it deserves protection from public disclosure. *Id.* The Sixth Circuit has long recognized a "strong presumption in favor of openness" for court records, although there are certain interests that overcome this

"strong presumption." *Rudd Equip. Co., Inc. v. John Deere Construction & Forestry Co.*, 834 F.3d 589, 593 (6th Cir. 2016) (citing *Brown & Williamson Tobacco Corp. v. FTC*, 710 F.2d 1165, 1179 (6th Cir. 1983)). In determining whether to seal records, the Court considers the public's interest in the litigation's subject matter, whether the information is required by statute to be maintained in confidence, and the privacy interests of innocent third parties. *Shane Group, Inc. v. Blue Cross Blue Shield of Michigan*, 825 F.3d 299, 305, 308 (6th Cir. 2016).

Wright's motion is unclear and the Court does not have information sufficient to make specific findings and legal conclusions which justify nondisclosure to the public of the exhibit submitted by Wright for the Court to seal. The motion is accordingly denied.

6. **Motion to Drop Defendants**

Wright moves under Rule 21 "to drop defendants" from the case. [DE 51]. Wright argues that the Court should drop the Corporate Defendants from the case because the Corporate Defendants could not obtain counsel, answer the lawsuit, or defend the case. [DE 51 at 1062]. The motion is denied. Rule 21 is inapplicable. Rule 21 states, "[m]isjoinder of parties is not a ground for dismissing an action. On motion or on its own, the court may at any time, on just terms, add or drop a party. The court may also sever any claim against a party." Rule 21 applies to technical mistakes in the mistjoinder or non-joinder of a party. *United States v. Commercial Bank of N. Am.*, 31 F.R.D. 133, 135 (S.D.N.Y. 1962) ("'it is intended to permit the bringing in of a person, who through inadvertence, mistake or for some other reason, had not been made a party and whose presence as a party is later found necessary or desirable . . .'"). Wright's motion is a repackaging of his motions to dismiss, which the Court has addressed above. Wright's motion is thus denied.

**CONCLUSION**

**IT IS ORDERED** as follows:

1. Defendant Wright's pro se Motion for Leave to File Supplement to Amended Motion to Dismiss [DE 52] is GRANTED.

2. The Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction [DE 7] and Motion for Preliminary Injunction [DE 39] are GRANTED and:

   a. Defendants and anyone acting on their behalf, including their owners, members, officers, agents, servants, employees, attorneys, and any other persons in active concert or participation with Defendants, are enjoined from using the KENTUCKY COLONELS Mark, or any mark that is confusingly similar to the KENTUCKY COLONELS Mark, including, but not limited to, KENTUCKY COLONELS INTERNATIONAL and KENTUCKY COLONEL FOUNDATION, on or in connection with the sale of any goods or services including, but not limited to, the solicitation of charitable donations and the promotion of charitable and philanthropic causes.

   b. Defendants and anyone acting on their behalf, including their owners, members, officers, agents, servants, employees, attorneys, and any other persons in active concert or participation with Defendants, are enjoined from using the KENTUCKY COLONELS Mark, or any mark that is confusingly similar to the KENTUCKY COLONELS Mark, including, but not limited to, KENTUCKY COLONELS INTERNATIONAL and KENTUCKY COLONEL FOUNDATION, on any website, social media page, blog or in such a way as is likely to cause consumers to be confused, mistaken, or deceived into believing that HOKC has sponsored, sanctioned, approved, licensed, or is any way affiliated with Defendants or any organization or cause sponsored or supported by Defendants.

    c. Defendants and anyone acting on their behalf, including their owners, members, officers, agents, servants, employees, attorneys, and any other persons in active concert or participation with Defendants, are enjoined from using the domain names kentucky.colonels.international, kycolonels.international, kentucky.colonels.net, or any domain name that is confusingly similar to "kycolonels.org" or any domain name that incorporates the KENTUCKY COLONELS Mark, or any mark that is confusingly similar to the KENTUCKY COLONELS Mark, including, but not limited to, KENTUCKY COLONELS INTERNATIONAL and KENTUCKY COLONEL FOUNDATION.

    d. Defendants and anyone acting on their behalf, including their owners, members, officers, agents, servants, employees, attorneys, and any other persons in active concert or participation with Defendants, are enjoined from using the Facebook or any other social media platform usernames "Kentucky Colonels International" or "Kentucky Colonel Foundation" or any other username or handle that is confusingly similar to the KENTUCKY COLONELS Mark.

    e. The entered bond will remain in place.

    f. The preliminary injunction shall remain in place during the pendency of this action until the claims are resolved on the merits.

3. Plaintiff's Motion for Entry of Default [DE 54] is GRANTED and the Clerk of Court is DIRECTED to enter the Order [DE 54-2] tendered by Plaintiff.

4. Defendant David J. Wright's ("Wright's") pro se Motions to Dismiss [DE 24, DE 37, DE 47, DE 52-2] are DENIED.

5. Defendant Wright's, pro se Motion for Leave to Seal Document [DE 44] is DENIED.

19

6. Defendant Wright's pro se Motion to Drop Defendants [DE 51] is DENIED.

7. The Court will issue a separate order referring this matter to the Magistrate Judge to conduct a Rule 16 case-management conference and entering a scheduling order.

Rebecca Grady Jennings, District Judge

United States District Court

August 12, 2020

20