EXHIBIT 11

# EXHIBIT 11

Col. David J. Wright
david.wright@colonelcy.org

VIA EMAIL

May 23. 2022

WYATT, TARRANT & COMBS, LLP
Julie Laemmle Watts — jwatts@wyattfirm.com

Dear Ms. Julie Watts,

I received a copy of your Cease and Desist Letter dated May 16, 2022—your firm, The Honorable Order of Kentucky Colonels, Inc. (HOKC) and a Magistrate from the US District Court have already settled this matter with me to the satisfaction of your client, your verified complaint and its grounds were dismissed without judgment as a matter of law.

Apparently your client is not satisfied with the terms, they are demonstrating contumacy for the law and court with the injunction seeking additional intellectual property territory and rights, however I have not violated any laws or terms by offering my "trademark Kentucky Colonel [cy] website" on Facebook to other Kentucky colonels **in a 'private community' that is not affiliated, associated, created, endorsed or sponsored by the HOKC**, nor can the HOKC bestow the title Kentucky Colonel upon a person, or discipline a Kentucky Colonel, much less for the pursuit of educational and historical facts that pre-date the HOKC. I view your discrimination as unlawful harassment, trademark misuse and continued trademark bullying to establish a monopoly. Further your client is undermining the historical significance of Kentucky colonelcy as an honorable title by recognizing white supremicists and disgraced politicians with medals as if they were earnest recognition with governmental legitimacy.

Simply put, your client **is not a source of Kentucky colonels (people)**, it encourages the rampant creation of colonels referring potential donors to the Governor's office to make dubious (non-traditional) nominations, but it is not an actual authoritative agency of the state, and they cannot issue certificates, commissions or credentials. The only source of a Kentucky Colonel Commission is the Commonwealth of Kentucky. Frankly, aside from our disclaimer, I am most reluctant to associate anything we do with the HOKC, a.k.a. Kentucky Colonels™ or comment about them because your client is not viewed as a credible or reliable source of academic information about the history or legacy of Kentucky Colonelcy 1775—1925 since at least September of 2020 when the Secretary of State, the State Archives, the EKU Library, the State Historical Society and the Filson Library were consulted about your client's 1813 aide-de-camp story, which was viewed to be propaganda, folklore or pseudohistory, perhaps qualifying as trade dress with a fraternal purpose created by them to compliment the Civil War officer uniform they embraced. During the time none of these parties were interested in taking any position in our civil matter as experts, one directed us to the HOKC 1941 Kentucky Colonel Dinner presentation where these stories emerged. It is clear that your client needs to be disambiguated from the historical title, the fraternal membership group it emulates, its ulterior purposes and the charity it represents.

I understand the Preliminary Injunction was created as a solution to protect your client's wordmarks [**KENTUCKY COLONELS**] and [**KYCOLONELS**] from confusion or damage during the trial and as implied trade names based on the [**KENTUCKY COLONELS ®**] Mark. Without the letter **'S'** or the ® does not your registered trademark make, that is unless an image serves as the mark in which case the words KENTUCKY and COLONEL are not claimed as being exclusive or distinguished by your client, much like your other disclaimers on file at the USPTO. Their logo would make a nice trademark, but I

also understand that is not registerable because it incorporates the American flag in the form of a shield that is used by the United States Military and Armed Forces, it is not representational of Kentucky Colonelcy or those designated by the Commonwealth of Kentucky as a Kentucky Colonel, we consider it misleading conspiration. Soon the HOKC may be forced to live up to its legacy with General J. Fred Miles, his whiskey brand and his reputation as its formational leader from 1939 to 1963.

KENTUCKY COLONEL™ is definitely not your client's trademark, nor is it a registrable trademark, in common-law—it belongs to the Commonwealth of Kentucky and all those who were commissioned as colonels past and present through *letters patent* (which is not an arcane term that you should disregard as an attorney), but as an organization it has. KENTUCKY COLONEL was introduced as a reaffirmed tradition to create prosperity for the Commonwealth in 1895 by recognizing its most prestigious citizens under William O'Connell Bradley, who was known as a Kentucky Colonel since he was 16 as a civilian. The term KENTUCKY COLONEL is a title that is endemic to Kentucky customs, there were colonels before the existence of the Virginia County of Kentucky (1776), the Kentucky District of Virginia (1778-1791) or the Commonwealth of Kentucky (1792).

If you notice a specific violation of your trademark "KENTUCKY COLONELS" being (mis)used as a trademark by me or other Kentucky colonels; without assuming that your client's trademark is based on the idea of a "KENTUCKY COLONEL" as a legal title or name moniker issued by the Commonwealth of Kentucky please inform me by providing the specific URL and we will be glad to correct it immediately. The American Colonels Network, Office of Civilian Colonelcy, and our Kentucky Colonelcy website (and social media accounts) are not responsible for comments or statements made by third parties or other Kentucky colonels that have been granted the Honorable title: **Kentucky Colonel**. Kentucky Colonelcy (the website) is responsible for publishing and republishing the rich history of the Kentucky Colonel in all of its glory and grandeur when Kentucky was just an idea before it was established in 1776 with a Kentucky Colonel from Virginia under a commission issued by Gov. Patrick Henry.

We are very clear on the first four paragraphs quoted in your letter from the Agreed Injunction, and <u>you should be equally clear about the paragraph you did not include</u>. Paragraph number 5 (five) of the Agreed Permanent Injunction clearly states:

> "Notwithstanding the aforestated prohibitive terms and conditions, this Agreed Permanent Injunction does not prohibit the Defendant, Col. David J. Wright or other Kentucky colonels (as individuals) from using "Kentucky Colonel," "Kentucky colonels" and/or "Kentucky colonelcy" as words or terms to describe Kentucky colonels, as an a honorary title, or for editorial, educational, informative, journalistic, literary or other non-commercial purposes so long as the use is not related to the trademark or service mark uses registered, or pending, by the HOKC with the U.S. Patent and Trademark Office.

Your client is an organization that depends on Kentucky colonels which are not its actual legal members (but donors) to receive its propaganda to generate its goodwill and its affiliated private Kentucky Colonels Shop owned by Jimmy Dawahare depends on Kentucky colonels to buy merchandise endorsed by your client which most assume is going to charity. The HOKC is permitted as the registrants and Upper Right Marketing as its licensees to use the term "KENTUCKY COLONELS" as their trademark, if there is any doubt they are supposed to affix the ® to distinguish and protect the fine line or the difference between KENTUCKY COLONELS (organization and brand) as a trademark with the original KENTUCKY COLONEL, this Kentucky colonel's hat, them Kentucky colonels, the Kentucky Colonels Little League team, the Eastern Kentucky Colonels ®, the Kentucky Colonels (band) or the ABA Kentucky Colonels. When the *term* KENTUCKY COLONELS is used with the ® symbol there should not be any doubt that it is being used as a trademark or it would behold a different meaning like in the sentence "I just met some Kentucky colonels." which has nothing to do with your client or their trademark, failure to use the ® symbol confuses the public and your donors..

You should most likely leave me alone, not make frivolous or overreaching claims. You are engaged in speciously claiming and ambiguating the *term and trademark*, along with anything connected to the

generic idea and the highly descriptive concept "Kentucky Colonel" (which is part of Kentucky culture) by routinely bullying those who are Kentucky Colonel(s) in law. You might confuse the court with double talk, but you cannot confuse me or those with knowledge about actual Kentucky Colonel history.

Does your law firm really want to take me back to court to risk losing everything including the injunction and your trademarks? If you do then we may as well make a big show of it, we should do it in Washington, DC where the issues can be viewed more fairly; Judges have already recused themselves for being Kentucky colonels in Louisville. The last document in our case says that **the claims asserted in the Complaint … are hereby, dismissed with prejudice**. It was never determined that any infringement ever occurred, neither side gave the other anything, nothing was exchanged, we voluntarily changed our name three times to satisfy Mr. Coryell and **never surrendered any of our intellectual property**, not even the ideas expressed in the sealed exhibit were considered an infringement. It is clear we are not using the [**KENTUCKY COLONELS ®**] trademark or confusing anyone to make them believe that we are your client. Kentucky colonels are not created by the state for the benefit of your client, your organization was created for Kentucky colonels that already existed.

If the **KENTUCKY COLONELS ®** trademark ever becomes so ambiguated or assimilated with the term|title **KENTUCKY COLONEL** then the trademark your client is protecting becomes generic and too descriptive to serve as a distinctive trademark. After all the KENTUCKY COLONELS MARK does not belong to all Kentucky colonels, it does not belong to members of the HOKC, nor does it belong to the Commonwealth, it belongs to the HOKC for commercial purposes which is obligated to use it within the jurisdiction of the law; without contumacy (or contempt) for other legal uses, as well as understand all fair-use circumstances considering your voluntary ambiguation with so many products, services and events, afterall it is a trademark and/or service mark you should use it like one.

Sincerely,

Col. David J. Wright

**Postscript:** I have assimilated and indexed more than 5,000 references in American and Genealogical History to our website Kentucky Colonelcy [kycolonelcy.us] from 1775-1925 and our first-use online copyright work Kentucky Colonels:... at [colonel.org] from 1998 which your law firm is fully aware of. Seeking sponsors, collaborators, investors, patrons, publishers or writers, or anything else to further develop our online creative commons works, presence or my own written work will not be interfered with "if for editorial, educational, informative, journalistic, literary or other non-commercial purposes." Our book, copyright and creative works about Kentucky colonels are not an infringement of any of your client's trademarks, all of our content is protected by the First Amendment.

Your client is infringing on the rights of the holders of the Kentucky Colonel Commission who are not made colonels to (solely or partially) support the mystical HOKC, their false historical narrative, listen to its almighty fake generals or participate in a fictitious militia of donors under an unlawful simulated command. It is only their dream, you have no legal grounds to contact me further unless it is to make a good-faith offer with consideration for my intellectual property, social media assets, websites and/or 1998 first-use in electronic publication copyright.