E
X
H
I
B
I
T

3

# EXHIBIT 3

Motion for Temporary Restraining
Order and Preliminary Injunction

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

*Electronically Filed*

| | | |
|---|---|---|
| THE HONORABLE ORDER OF | ) | |
| KENTUCKY COLONELS, INC. | ) | |
| | ) | |
|     PLAINTIFF | ) | |
| v. | ) | CIVIL ACTION NO. 3:20CV-132-JRW |
| | ) | |
| KENTUCKY COLONELS | ) | |
| INTERNATIONAL, et al. | ) | |
| | ) | |
|     DEFENDANTS | ) | |

**MOTION FOR TEMPORARY RESTRAINING ORDER
AND PRELIMINARY INJUNCTION**

The Honorable Order of Kentucky Colonels, Inc. ("HOKC") is a Section 501(c)(3), Kentucky nonprofit corporation dedicated to supporting charitable activities throughout the Commonwealth of Kentucky. For decades, HOKC has pursued its charitable mission by, among other things, making annual grants to a large number of Kentucky charities small, mid-size and sometimes large, that operate across the state. This grant-making function is in turn funded by the generous donations of HOKC's active members, who reside not only in Kentucky, but also in other states and around the world. HOKC has an incredibly faithful and proud donor base, comprised of individuals who have been selected by a Kentucky Governor to receive the esteemed title of Kentucky Colonel, "the highest title of honor bestowed by the Governor of Kentucky."[1] After receiving this great honor, individual Kentucky Colonels then become members of HOKC, and part of the organization's long history of good works and strong donor relations. In order to protect the reputation and honor bestowed upon its members, the HOKC's role includes protecting the KENTUCKY COLONELS trademark and service mark (the

---

[1] *See* HOKC website www.kycolonels.org

"KENTUCKY COLONELS Mark"), which HOKC uses in connection with the goods and services it provides to its members and the public, as well as the charities served through its philanthropic work.

That valuable trademark has now been hijacked by Defendant David J. Wright ("Wright") and the Defendant entities which he controls. Through a byzantine network of strawman organizations, assumed names, and social media groups, Wright is operating a competing organization, Kentucky Colonels International ("KCI"), brazenly attempting to misappropriate the KENTUCKY COLONELS Mark for his own personal financial enrichment. Despite the fact that KCI is not a charity (nor, apparently, is the ecological organization that claims KCI as an assumed name), Defendants have attempted to raise funds from Kentucky Colonels under the guise of deductible charitable contributions, thereby intercepting, or attempting to intercept, relationships that HOKC has built over decades using the KENTUCKY COLONELS Mark. Having confused or misled a sufficient number of these individuals, Wright then sprung an unexpected and uninvited demand upon HOKC that it pay him a substantial amount of money in exchange for "merging" his "organization" into HOKC and then hire him as a consultant. When HOKC refused to yield, Wright responded by turning on HOKC, attacking it through the internet and social media with scurrilous accusations and specious claims. Having been rebuffed in demands, whose resemblance to extortion was buttressed by his insistence on silence and a quick payoff, Wright reacted like one would expect an extortionist to react. He retaliated. Because HOKC's reputation and ability to pursue its mission will be irreparably harmed, HOKC moves the Court to enter an order pursuant to Fed.R.Civ.P. 65 and U.S.C. §1116 directing Defendants to immediately cease their misappropriation of the KENTUCKY COLONELS Mark.

## FACTUAL BACKGROUND

### A.    For Decades, HOKC Has Been Dedicated to Serving the Commonwealth of Kentucky and its Citizens.

On May 2, 1931, Kentucky Governor Flem D. Sampson assembled a meeting of Kentucky Colonels at the State Capitol for the purpose of forming "a society or organization to restore the grandeur and sentiment of the original Kentucky Colonel; to more closely band together this group…for the advancement of Kentucky and Kentuckians…." [Verified Complaint, ¶ 12].  The minutes from that meeting reflect the prominence of being selected as a Kentucky Colonel: "because of this honor [Kentucky Colonels] are regarded highly in their own country and on their arrival here are treated with high honor and respect." [*Id*.]

From its inspired origins in 1931 through the present day, the HOKC has existed as a non-profit organization dedicated to supporting charitable purposes throughout the Commonwealth. In the last twenty years, HOKC has made more than 3,500 grants to non-profit organizations across Kentucky totaling in excess of $29 million. [*Id*. at ¶13]. Since 1951, HOKC has made more than 7,300 grants totaling almost $51 million. [*Id*.] To this day, the Governor of Kentucky serves as the Commander-in-Chief of the HOKC, along with a board of trustees. [*Id.* at ¶14].

For nearly a century, HOKC has pursued its mission to follow the objectives described by Governor Sampson in 1931, a significant aspect of which is promoting and protecting the goodwill of the KENTUCKY COLONELS Mark. [*Id*. at 15]. From the beginning, the Governor's office recognized the HOKC's role, making the HOKC responsible for adopting insignia, seals, and other indicia of the honor. [*Id*. at ¶ 14]. HOKC has carefully guarded the KENTUCKY COLONEL Mark which is an essential element of protecting the ability of HOKC to serve its charitable function with an unblemished reputation.

3

### B.   Protection of the KENTUCKY COLONELS Mark is Essential to HOKC's Mission.

HOKC has used the KENTUCKY COLONELS Mark since its inception in 1931, and that mark plays a critical role in the organization's fundraising efforts. [*Id.*]. The KENTUCKY COLONELS Mark is universally associated with HOKC and with aiding and promoting causes benefiting the health and welfare of Kentuckians. In addition to the KENTUCKY COLONELS Mark, HOKC is also the owner of THE HONORABLE ORDER OF KENTUCKY COLONELS, KENTUCKY COLONELS GOOD WORKS PROGRAM, KENTUCKY COLONELS DAY OF SERVICE, and the HOKC logo marks and other registered and unregistered marks, all of which are critical to the HOKC's charitable solicitation efforts.[2] HOKC has continuously used the KENTUCKY COLONELS Mark in connection with its philanthropic, membership, and social activities for decades and, as a result, the KENTUCKY COLONELS Mark carries a positive connotation worldwide. [Verified Complaint, ¶ 17].

### C.   Defendants are Using the KENTUCKY COLONELS Mark for Unauthorized and Improper Purposes.

Defendant David J. Wright purports to be the administrator of a Facebook group comprised of individuals who have been commissioned as Kentucky Colonels. According to Wright, he became the administrator of that group in 2008 and, soon thereafter, he "relaunched" a social media group he called "Kentucky Colonels International."[3]  On January 20, 2020, the

---

[2] A chart reflecting the numerous federal trademark registrations and applications HOKC holds for marks incorporating the KENTUCKY COLONELS Mark, as well the official documentation reflecting those registrations and applications, is attached to the Verified Complaint as Exhibit 2.  For the Court's convenience, that material is also attached hereto as Exhibit 1.

[3] Wright's candid admissions regarding his efforts to misappropriate the KENTUCKY COLONELS brand are reflected in a February 7, 2020 "editorial" blog post from https://blog.kycolonels.international/, which KCI posted to HOKC's Facebook page via a comment on or about February 9, 2020 (hereinafter the "Wright Editorial"). A copy of the Wright Editorial is attached to the Verified Complaint as Exhibit 4.  For the Court's convenience, a copy of the Wright Editorial is also attached hereto as Exhibit 2.

domain name "kycolonels.international" was registered [Verified Complaint ¶ 58] and, shortly thereafter, the website for KCI went live.[4]

KCI's website describes the organization as a "non-profit fraternal and mutual benefit membership organization" which is "incorporated in the Commonwealth of Kentucky" and in "good standing" with the Office of the Secretary of State [Kentucky Colonels International Website ("KCI Website"), 14].[5]   The website represents that KCI is "also known as the Kentucky Colonel Foundation" which it claims was "originally established in 1998 to give prominence to the Kentucky Colonel Commission as a meritory award with diplomatic credence that is respected and understood internationally." [*Id.* at 15].   The KCI Website includes an extensive discussion of the "Order of the Kentucky Colonel" and states that "Kentucky Colonels are recognized and commissioned for their life time to the order with letters patent which permits them to perform and take actions as a commissioned civilian officer of the Commonwealth of Kentucky." [*Id.* at 15-16].

The purpose of the KCI Website is readily apparent from the website's "drop down list." The third item on that list is "Donations" which solicits contributions for the "Kentucky Colonel's International Fund" and states that such donations can be made "using a major credit card or your PayPal account."  [*Id.* at 18.][6]   The page also includes an image of a QR code to

---

[4] As noted in the Wright Editorial, HOKC directed cease and desist letters to Wright concerning his social media and internet based activities on various occasions in the early 2000's and again in 2016.  Wright significantly curtailed his improper activities after that correspondence was sent.

[5] The KCI Website can be found at www.kycolonels.international, which is confusingly similar to HOKC's web address www.kycolonels.org.  For the Court's convenience, a print out of the KCI Website, from February 17, 2020, is attached as Exhibit 3.

[6] Notably, if you click on the provided donation hyperlink, you are redirected to a PayPal link that states "Donate to Ecology Crossroads Cooperative Foundation" with the "Purpose: Kentucky Colonels International." A copy of that page is attached as Exhibit 4.

allow donations "using a smart phone." [*Id.*] The KCI Website describes the purposes for which donations to the organization are used, explaining that those funds will "promote the careers, individual growth, … and champion the success of Kentucky Colonels all over the world...." [*Id.*]. The website further states that donations will "support the work of the Goodwill Ambassador Foundation and other programs developed by Kentucky colonels [*sic*]...." [*Id.*]. It also represents that the organization is "registered as an international civil society organization (ICSO) under Globcal International which provides us with recognition and legal standing as an international organization." [*Id*. at 19]. Finally, the website represents that donations to KCI are tax-deductible:

> Donations to KCI are now tax deductible in 2020, those who make donations of $25 or more will receive a personal thank you note from a commissioner. Donations of $1,200+ or the equivalent of 2% of a person's annual salary if US residents will also receive a tax-statement by email at the end of the year so they can deduct their contributions.

[*Id.*].

In addition to soliciting donations to "promote the careers" of individuals who have been commissioned as Kentucky Colonels, the KCI Website purports to offer services to members for a fee. For example, the website describes "public relations" services "recognizing fellow colonels." [*Id.* at 36].[7] Particularly concerning, KCI purports to offer an "International Registry of Kentucky Colonels" which entitles subscribers to "a certificate of registration, a lifetime ID card and additional Internet services…." [*Id.* at 5]. The website promises "those who register their title (letters patent) can also demonstrate themselves through a permanent web page which we will develop and maintain on their behalf that is linked to our roster.…" [*Id.* at 6].

---

[7] Those services are offered to only "members who support our organization with donations…." [*Id.*].

In addition to the website, KCI also maintains a dedicated blog site, a public Facebook page, and a private Facebook group. The blog, located at blog.kycolonels.international is another pulpit for Wright to misuse the KENTUCKY COLONELS Mark and associated goodwill as well as seek donations for KCI. The blog includes a "news release" dated February 7, 2020; the Wright Editorial dated February 7, 2020; and one additional article titled "Reorganizing the Kentucky Colonels International Commission and Foundation," dated January 30, 2020.[8] The KCI Facebook page "About" section states "Kentucky Colonels International is a non-governmental and non-state fraternal membership commission and foundation of *Globcal International* that has been developed to bring international attention to those who have been commissioned as Kentucky colonels...." and that it was "founded" in 1813 (emphasis added).[9] Membership to the KCI private Facebook group requires a person to answer several questions and be approved by the group administrator.

### D. Contrary to the Representations Made on its Website, KCI is not Recognized by the IRS as a Tax Exempt Organization.

The representations regarding the corporate and tax exempt status of KCI are not supported by the records of the Kentucky Secretary of State or the Internal Revenue Service. While KCI represents that "donations to KCI are tax deductible" the IRS has no record of KCI being granted tax exempt status.[10] Similarly, the IRS has no record of granting tax exempt status to the Kentucky Colonel Foundation, the Kentucky Colonels International Fund, or any other organization for which donations are solicited on the KCI Website. Notably, Ecology Crossroads

---

[8] For the Court's convenience, a printout of the KCI blog site from February 19, 2020 is attached as Exhibit 5.

[9] For the Court's convenience, a copy of the relevant portions of the KCI Facebook page is attached as Exhibit 6.

[10] Organizations granted tax exempt status can be identified on the website of the Internal Revenue Service at www.irs.gov/charities-non-profits/tax-exempt-organization-search. For the Court's convenience, a copy of the page reflecting the search results for KCI is attached as Exhibit 7.

Cooperative Foundation, Inc., the entity which only three weeks ago designated Kentucky Colonels International as an "assumed name," has never been certified as a tax exempt organization.[11] Globcal International, another assumed name for Ecology Crossroads Cooperative Foundation, Inc., has never been certified as a tax exempt organization. Thus, the representations made by Wright and KCI concerning the tax deductibility of donations to that organization are demonstrably untrue.

In addition, neither KCI nor any of its affiliates are registered as charitable organizations with the Office of the Kentucky Attorney General. The Attorney General maintains a registry of organizations authorized to engage in charitable solicitation activities in the Commonwealth of Kentucky.[12] KCI is not listed on that registry. Likewise, the list does not include the Kentucky Colonel Foundation, Kentucky Colonels International Fund, Globcal International, Ecology Crossroads Cooperative, or Ecology Crossroads Cooperative Foundation, Inc.[13] HOKC, on the other hand, *is* included on that list.[14]

In additional to misrepresenting the charitable and tax exempt status of KCI, the KCI Website also incorrectly states that KCI is "incorporated in the Commonwealth of Kentucky" and in "good standing" with the office of the Secretary of State. According to the Kentucky Secretary of State, Kentucky Colonels International was registered as an assumed name of

---

[11] An organization with a similar name "Ecology Crossroads Cooperative" apparently once held tax exempt status, but that status was apparently revoked on November 15, 2010. *See* www.irs.gov/charities-non-profits/tax-exempt-organization-search. For the Court's convenience, a copy of the page reflecting revocation of that entity's tax exempt status is attached as Exhibit 8.

[12] *See* https://ag.ky.gov/Priorities/Protecting-Kentuckians/charity/Pages/default.aspx.

[13] For the Court's convenience, copies of the pages reflecting the Defendants' absence on the list of charitable organizations registered in Kentucky are attached hereto as Exhibit 9.

[14] The page reflecting HOKC's inclusion on the registry of organizations authorized to engage in charitable solicitation activities is attached as Exhibit 10.

Ecology Crossroads Cooperative Foundation, Inc. on January 20, 2020, as was Globcal International.[15]  Ecology Crossroads Cooperative Foundation, Inc. was originally registered to do business in the Commonwealth of Kentucky in 1994.[16]  The Articles of Incorporation of Ecology Crossroads Cooperative Foundation, Inc. state that it is a "not-for-profit" corporation that makes "distributions to organizations that qualify as exempt organizations under Section 501(c)(3) of the Internal Revenue Code…."  [*See* Certificate of Organization and Article of Incorporation of Ecology Crossroads Cooperative Foundation, Inc. (included in the documents attached as Exhibit 11), 1].   The twenty-five year old articles do not mention KCI, the Kentucky Colonel Foundation, the Kentucky Colonels International Fund, or any other organization described on the KCI Website.  Significantly, the articles describe the "purposes" of the corporation, but none of those purposes refer to individuals commissioned as a Kentucky Colonel or any activity related to Kentucky charitable work.   Rather, the corporate purpose of Ecology Crossroads Cooperative Foundation, Inc. is described as educating the general public regarding "environmentally sensitive matters," informing the public "regarding natural resource conservation," introducing "sustainable development techniques," and other matters relating to "environmentally and ecologically sustainable intentional communities."  [*Id.* at 2-3].  Notably, the articles expressly state that "no part of the earnings of this Corporation shall ever inure to the particular benefit of, or be distributed to any Member, trustee, officer or individual having a personal or private interest in the activities of this Corporation …." [*Id.* at 3]. The articles are signed by, among others, "Rev. David Wright."  [*Id.* at 5].

---

[15]  The certificate of assumed name available on the Kentucky Secretary of State website is included in the compilation of corporate records regarding Ecology Crossroads Foundation, Inc., collectively attached as Exhibit 11.

[16]  The Articles of Incorporation of Ecology Crossroads Cooperative Foundation, Inc. are included in the corporate documents attached as Exhibit 11.

The records of the Kentucky Secretary of State also reflect that the entities under which Wright and KCI operate have regularly disregarded the legal requirements for maintaining a legitimate corporate existence. According to the Kentucky Secretary of State, Ecology Crossroads Cooperative Foundation, Inc. was formed in 1994, and administratively dissolved on November 3, 1998; reinstated on December 15, 1998, but administratively dissolved again on November 2, 1999; reinstated again on April 22, 2014, but administratively dissolved on October 12, 2015; and only recently reinstated on January 21, 2020.[17]   Thus, KCI's representations regarding its corporate structure, history, and tax-exempt status are simply not supported by the public record.

### E.   Defendants Recently Escalated Their Efforts to Misappropriate the KENTUCKY COLONELS Mark for Their Own Financial Benefit.

In late 2019, HOKC learned that Wright, under the guise of KCI and Globcal International, was soliciting participants for a "registry" of individuals who had been commissioned as Kentucky Colonels.  [Verified Complaint, ¶ 19].  As described by Wright, participation in the registry required payment of a fee.  [*Id.*]

In late December 2019, Wright approached HOKC to "initiate a discussion" regarding the activities of KCI.  [*Id.* at ¶ 20; *see also* Wright Editorial (attached as Exhibit 2) 6].  According to Wright, the purpose of that discussion was to determine whether HOKC would "either assist us in our project or perhaps merge our membership program into their own organization."  [Wright Editorial, 6].  Wright advised HOKC that he wanted to "find a way" that HOKC could "endorse the International Register and Kentucky Colonels International, with a sponsorship, while [HOKC] silently but transparently takes over the Register and International

---

[17] The corporate records reflecting the dissolution and reinstatement history of Ecology Crossroads Cooperative Foundation, Inc. are included in the corporate records attached as Exhibit 11.

Concept to become a program belonging to the HOKC." [Verified Complaint, ¶ 20]. When Wright contacted the Executive Director of HOKC to "explore the possibilities of a merger," she suggested that he submit his ideas in writing. [*Id.* at ¶ 21].

In mid-January 2020, Wright forwarded HOKC a package of documents which included a "Draft Merger, Acquisition and Consolidation Agreement." [*Id.* at ¶ 22]. Not surprisingly, Wright's "proposal" included provisions for generous financial payments to both himself and KCI. [*See* Draft Merger, Acquisition and Consolidation Agreement (included in Exhibit 3 to Verified Complaint), 1-7].[18] On January 20, 2020, HOKC notified Wright that it was not interested in his proposed "acquisition" of KCI. [Verified Complaint, ¶ 23]. Shortly thereafter, Wright advised HOKC that he and KCI intended to "move forward with our program and the formalization of the KCI agenda." [*Id.* at ¶ 24].

### F. After His Proposal Was Rejected, Wright Initiated a Social Media and Internet Campaign Aimed at Disparaging HOKC and Escalating His Misappropriation of the KENTUCKY COLONELS Trademark.

On February 8, 2020, Wright posted his "editorial" on HOKC's public Facebook page, disparaging HOKC and accusing HOKC of a variety of misconduct. [*Id.* at ¶ 25-27]. For example, Wright alleged that HOKC has "been misleading their donors and supporters for many years," has violated various state and federal statutes, and has otherwise engaged in "deception, and fraudulent presumptive behavior." [Wright Editorial (Exhibit 2), 9].

More importantly, Wright expressed his intentions to accelerate and increase his efforts to promote a competing organization using the KENTUCKY COLONELS Mark. Specifically, Wright stated:

---

[18] Because Wright demanded HOKC execute a confidentiality agreement, the package of material reflecting Wright's "acquisition proposal" has been filed under seal for the Court's review pending further orders of the Court.

So it is for these Kentucky Colonels that we are moving forward with our plans by forming our own International Commission to develop a genuine membership organization that is rightly so. We have taken several major steps already by getting a new dedicated website and forming a small commission of distinguished leaders to serve as the initial officers that share many of my sentiments and concerns.

* * *

To get the organization off the ground I have legalized the commission's formation under the same organization that I founded in 1994 by reinstating it with the Secretary of State in Frankfort on January 21. Now to take it where it needs to go we need donations from the public and will need to charge monthly or annual dues to members in order to provide member benefits and services beyond the social media. The online services we have been providing through administering the Facebook groups will remain without any membership fees including our blog and a new website being developed at [kycolonels.international].

* * *

On January 30 the formation of Kentucky Colonels International became official. We upgraded our status from an unincorporated membership organization and legalized the commission and foundation as an assumed name corporation in the Commonwealth of Kentucky belonging to Ecology Crossroads (est. 1994), who is our sponsor. To become an independent membership organization like we deserve to be, it is up to our members and other Kentucky colonels to come together and provide us with support we need in the form of donations to better formalize our efforts to succeed. Contributions can be made online through their sponsor using PayPal or a credit card.

[*Id*. at 10-12]. Thus, in addition to the express solicitations reflected on the Kentucky Colonel International website, Wright has candidly acknowledged that he and his affiliated organizations are soliciting, and will continue to solicit, contributions and payments using the KENTUCKY COLONELS Mark. He has also made it clear that those contributions will not be shared with HOKC or subject to scrutiny by anyone other than himself.

After his "acquisition proposal" was rejected, Wright also sought to advance his misappropriation of the KENTUCKY COLONELS Mark by significantly, and erroneously, editing the "Kentucky Colonel" Wikipedia page. [Verified Complaint, ¶ 28]. Among other

things, Wright, using the username "Problemsmith," removed a reference indicating that "Kentucky Colonels" is a registered trademark of HOKC. [*Id.*; *see* Exhibit 5 to Verified Complaint]. He also added an entire section to the article describing "Kentucky Colonels International."[19] [Kentucky Colonel Wikipedia Article, 2]. Thus, Wright and the other Defendants have extensively used the internet to confuse the public misappropriate the goodwill, and profit from the KENTUCKY COLONELS Mark.

## ARGUMENT

### HOKC IS ENTITLED TO A RESTRAINING ORDER AND INJUNCTION DIRECTING DEFENDANTS TO STOP THEIR MISSUE AND MISAPPROPRIATION OF THE KENTUCKY COLONELS TRADEMARK.

"The preliminary injunction serves an important purpose—'to allow a victory by [the plaintiffs] to be meaningful.'" *McGirr v. Rehme*, 891 F.3d 603, 614 (6th Cir. 2018) (citation omitted). When considering a motion for preliminary injunctive relief, the Court must weigh the following factors: "'(1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury without the injunction; (3) whether issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of the injunction.'" *Tumblebus Inc. v. Cranmer*, 399 F.3d 754, 760 (6th Cir. 2005) (quoting *PACCAR Inc. v. TeleScan Techs., L.L.C.*, 319 F.3d 243, 249 (6th Cir. 2003)). The four considerations applicable to preliminary injunction decisions are to be balanced; they are not prerequisites to be met. *Six Clinics Holding Corp., II v. Cafcomp Sys., Inc.*, 119 F.3d 393, 400 (6th Cir. 1997). "No single factor will be determinative as to the appropriateness of equitable relief." *Id.*

---

[19] *See* https://en.wikipedia.org/wiki/Kentucky_Colonel. A copy of the Wikipedia Article on "Kentucky Colonel" is attached to the Verified Complaint as Exhibit 5. For the Court's convenience, a copy of the Wikipedia Article is also attached hereto as Exhibit 12.

> For example, "a finding that the movant has not established a strong probability of success on the merits will not preclude a court from exercising its discretion to issue a preliminary injunction if the movant has, at minimum, 'show[n] serious questions going to the merits and irreparable harm which decidedly outweighs any potential harm to the defendant if the injunction is issued.'"

*Id.* at 399–400 (quoting *Gaston Drugs, Inc. v. Metro. Life Ins. Co.*, 823 F.2d 984, 988 n.2 (6th Cir. 1987)). "[A] preliminary injunction is customarily granted on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits. A party thus is not required to prove his case in full at a preliminary-injunction hearing" *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981).

In this trademark infringement case, a victory by HOKC will not be meaningful unless Defendants are ordered to stop infringing upon the KENTUCKY COLONELS Mark. They should be ordered to do so immediately because, with each passing day of Defendants' continuing infringement, HOKC and its valuable trademark is irreparably injured. HOKC's likelihood of success is high, and the requested injunction will cause no harm to Defendants, as any self-inflicted wound caused by infringement does not weigh against issuance of an injunction. The public interest is also served by the requested injunction, as it eliminates the intentional confusion caused by Defendants' infringement. The four injunction factors weigh strongly in HOKC's favor and warrant issuance of injunctive relief.

### A.   <u>HOKC Is Likely to Succeed on the Merits.</u>

Trademark rights in the United States arise from use. As the leading trademark commentator states "the first to use a designation as a mark in the sale of goods or services is the 'owner' and 'senior user.'" *See* 6 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair*

14

*Competition* § 16:4 (5th Ed.).[20]  Moreover, "[w]ith each sale of goods or services under such a business symbol, the seller builds up greater and greater legal rights in that symbol. *Id.* § 16:1. As the Sixth Circuit has stated, "trademark law now pursues two related goals–the prevention of deception and consumer confusion and, more fundamentally, the protection of property interests in trademarks." *Ameritech, Inc. v. American Information Technologies Corporation*, 811 F.2d 960, 964 (6th Cir. 1987). It is indisputable that HOKC has used the KENTUCKY COLONELS Mark for decades and has clearly-established rights and priority in the use of the KENTUCKY COLONELS Mark over Defendants. In addition to being federally registered, the Mark has become synonymous with HOKC's services to its members and its charitable mission to the Commonwealth and beyond.

The Lanham Act specifically provides for injunctive relief to prevent the violation of any right of a trademark holder. *See* 15 U.S.C. § 1116. HOKC's trademark registrations are prima facie evidence of the validity of its Mark. *See* 15 U.S.C. § 1115. "The touchstone of liability under § 1114 is whether the defendant's use of the disputed mark is likely to cause confusion among consumers regarding the origin of the goods [or services] offered by the parties." *Daddy's Junky Music Stores, Inc. v. Big Daddy's Family Music Ctr.*, 109 F.3d 275, 280 (6th Cir. 1997).

Courts in the Sixth Circuit evaluate likelihood of confusion cases using the eight-factor test set forth in *Frisch's Restaurants, Inc. v. Elby's Big Boy of Steubenville, Inc.*, 670 F.2d 642 (6th Cir. 1982). The "*Frisch's* factors," as they have come to be known, consist of: (1) strength of the plaintiff's mark; (2) relatedness of the parties' goods or services; (3) similarity of the

---

[20] *McCarthy on Trademarks and Unfair Competition* is available electronically and therefore, pursuant to LR 7.1(h), the cited portions are not attached.  However, Plaintiff will provide copies to the Court upon request.

parties' marks; (4) evidence of actual confusion between the parties' marks; (5) marketing channels used by the parties; (6) likely degree of purchaser care in the relevant consumer group; (7) the defendant's intent in selecting the mark; and (8) likelihood that either party will expand its product lines. *Id.* at 648; *see also Ga.-Pac. Consumer Prods. LP v. Four-U-Packaging, Inc.*, 701 F.3d 1093, 1100-01 (6th Cir. 2012).

While these factors are a guide to determine whether confusion is likely, HOKC does not need to show all, or even most, of the factors to prevail on its claim. *Wynn Oil Co. v. Thomas*, 839 F.2d 1183, 1186 (6th Cir. 1988); *Homeowners Grp., Inc. v. Home Mktg. Specialists, Inc.*, 931 F.2d 1100, 1107 (6th Cir. 1991) ("Each case presents its own complex set of circumstances and not all of these factors may be particularly helpful in any given case."). "The 'ultimate question [is] whether relevant consumers are likely to believe that the products or services offered by the parties are affiliated in some way.'" *Ohio State Univ. v. Thomas,* 738 F. Supp. 2d 743, 749 (S.D. Ohio 2010) (citations omitted). In this case, HOKC's Verified Complaint establishes that Defendants are intentionally and willfully infringing its KENTUCKY COLONELS Mark using an identical mark or nearly identical, offering what purports to be identical services. HOKC is highly likely to succeed on the merits on its claims for trademark infringement and therefore is entitled to the relief it seeks.

     **1.**    ***Frisch's* Factor No. 1*: KENTUCKY COLONELS is a very strong and well-known Mark throughout the world.**

The likelihood that consumers will confuse Defendants' use of HOKC's trademark as being authorized or endorsed by HOKC is extremely high. The stronger a trademark, the broader the scope of protection it enjoys, and the KENTUCKY COLONELS Mark is well-known throughout the world. As the Sixth Circuit recently noted, "[t]he stronger a mark is, the greater the risk of confusion." *Kibler v. Hall*, 843 F.3d 1068, 1073 (6th Cir. 2016) (citing *Homeowners*,

931 F.2d at 1107; *see also Champions Golf Club, Inc. v. The Champions Golf Club, Inc.*, 78 F.3d 1111, 1117 (6th Cir. 1996). ***A strong mark "casts a long shadow which competitors must avoid."*** *Kenner Parker Toys Inc. v. Rose Art Indus., Inc.*, 963 F.2d 350, 353 (Fed. Cir. 1992) (emphasis added). Accordingly, "the 'most important *Frisch* factors are similarity and strength of the mark." *Maker's Mark Distillery, Inc. v. Diageo N. Am., Inc.*, 679 F.3d 410, 424 (6th Cir. 2012) (quoting *Gray v. Meijer, Inc.*, 295 F.3d 641, 646 (6th Cir. 2002)).

To determine the strength of a mark, courts in the Sixth Circuit look at the conceptual and commercial strength of a mark. *Butler v. Hotel Cal., Inc.*, 106 F. Supp. 3d 899, 906 (N.D. Ohio 2015) (citing *Homeowners*, 931 F.2d at 1107). The KENTUCKY COLONELS Mark has developed a high level of conceptual strength, or distinctiveness in the marketplace, through its nearly decade of continual use by the HOKC. *See id.* And, understanding the scope of commercial strength of the KENTUCKY COLONELS Mark only requires mentioning a name like *Colonel* Sanders (emphasis added). The commercial strength of a mark considers the public's recognition of a mark—"the extent to which people associate the mark with the product [or services] it announces." *Kibler*, 843 F.3d at 1074.

In this case, HOKC has continuously and exclusively used the KENTUCKY COLONELS Mark since 1931 [Verified Complaint, ¶ 15]. As a result, the KENTUCKY COLONELS Mark has become well-known throughout the world, and it is inextricably intertwined with HOKC, its member services, and its charitable work. Any use of the famous KENTUCKY COLONELS Mark by Defendants will inevitably cause confusion and create the mistaken impression that HOKC is associated or affiliated with Defendants' organizations and activities.

17

Moreover, HOKC has an incontestable registration for KENTUCKY COLONELS. An incontestable registration—based on five or more years of continuous use on or in connection with certain goods or services provided certain conditions are met—is immune from challenge and presumed to be strong. *See* 15 U.S.C. § 1065; *Jet, Inc. v. Sewage Aeration Sys.*, 165 F.3d 419, 422 (6th Cir. 1999). Finally, the strength of HOKC's Mark is enhanced by the fact that there is no evidence of any other similar marks actively being used in commerce. *See Daddy's Junky*, 109 F.3d at 281.

## 2. *Frisch's* Factor No. 2: The services at issue are directly related and competitive.

The relatedness of the activities in which Defendants purportedly intend to engage equally supports the injunction requested by HOKC. "Services and goods 'are related not because they coexist in the same broad industry, but are related if the services are marketed and consumed such that buyers are likely to believe that the services, similarly marked, come from the same source, or are somehow connected with or sponsored by a common company.'" *Daddy's Junky*, 109 F.3d at 282-83 (citing *Homeowners Group, Inc. v. Home Marketing Specialists, Inc.*, 931 F.2d 1100, 1109 (6th Cir. 1991)). Here, HOKC engages in charitable fundraising services in connection with the KENTUCKY COLONELS Mark. Wright and the other Defendants are also soliciting charitable contributions and funds (although apparently under false pretenses) also using an identical or nearly identical mark. Defendants are intentionally using the KENTUCKY COLONELS Mark to confuse the consuming public into believing that they are the official and authorized membership organization for the KENTUCKY COLONELS services.  The competing enterprise maintained by Defendants would easily be confused by the public as being supported by or affiliated with HOKC.

3. *Frisch's* **Factor No. 3: The Parties' Marks are similar.**

Here, Defendant is intentionally using a mark that is not just similar, but identical or nearly identical. In assessing similarity, "'courts must determine whether a given mark would confuse the public when viewed alone, in order to account for the possibility that sufficiently similar marks may confuse consumers who do not have both marks before them but who may have a general, vague, or even hazy, impression or recollection of the other party's mark.'" *Maker's Mark*, 679 F.3d at 421 (quoting *Daddy's Junky*, 109 F.3d at 283). The identical or nearly identical nature of the marks, used in connection with essentially identical services, will create a likelihood of confusion. Accordingly, this *Frisch's* factor clearly weighs in favor of HOKC.

4. *Frisch's* **Factor No. 4: Actual confusion between the Marks.**

"Actual confusion" occurs when a consumer is confused about the source of goods or services because of similarity between two marks. While evidence of actual confusion is "'undoubtedly the best evidence of likelihood of confusion,'" it is very difficult to obtain. *See Daddy's Junky*, 109 F.3d at 284 (citation omitted). "Due to the difficulty of securing evidence of actual confusion, a lack of such evidence is rarely significant …." *Id.* (citations omitted); *see also Maker's Mark*, 679 F.3d at 422.

In this case, HOKC has already experienced evidence of actual confusion as a result of KCI's activities. In September 2019, two separate recipients of charitable grants from HOKC posted thank yous to their respective Facebook pages. In both posts, however, the grantees mistakenly tagged KCI's Facebook page instead of HOKC's Facebook page. [Verified Complaint, ¶ 29]. Such actual confusion not only showed confusion by the grantees about who provided the charitable giving, but also caused the viewing public of both posts to be confused

by who provided the grants. These incidents illustrate both (i) current grantees of HOKC who tagged the wrong entity in their posts; and (ii) the viewing public who saw the posts and would have assumed that KCI awarded the grants to the non-profit organizations demonstrating the kind of actual confusion that HOKC seeks to avoid by enjoining Defendants' further actions. This evidence of actual confusion weighs heavily in favor of HOKC.

**5.** ___*Frisch's* Factor No. 5: The Parties use identical marketing channels.___

Where marketing methods used to promote the services at issue are substantially similar, the likelihood of confusion among the services is higher. *Frisch's*, 670 F.2d at 648. Here, both HOKC and Defendants maintain an online presence through social media, including Facebook pages, Kentucky Colonel membership websites, charitable online giving features, and other similar marketing channels. More importantly, Defendants, through Wright, are intentionally creating confusion through social media accounts and the KCI Website.

**6.** ___*Frisch's* Factor No. 6: The likely degree of purchaser care is low.___

The sixth *Frisch's* factor requires the Court to determine the likely degree of purchaser care, which is not particularly applicable to this set of facts, in which Defendants are engaging in purposeful use of the KENTUCKY COLONELS Mark.  In this case, the purchaser, even in exercising care, may still be confused because of Defendants' purposeful attempts to appear to be an official organization affiliated with the KENTUCKY COLONELS Mark and to trade off of the goodwill of the KENTUCKY COLONELS brand.

**7.** ___*Frisch's* Factor No. 7: The Defendants intended to copy the Mark.___

The intent of Defendants is also assessed when determining the likelihood of consumer confusion. "Direct evidence of intentional copying is not necessary to prove intent. Rather, the use of a contested mark with knowledge of the protected mark at issue can support a finding of

intentional copying." *Daddy's Junky*, 109 F.3d at 286 (citation omitted). Based upon the correspondence between the parties, Defendants clearly are aware of HOKC's Mark and are obviously using it for their own personal and financial gain. In fact, Wright and his affiliated organizations dramatically increased their improper infringement activities after HOKC rejected Wright's extortionate attempt to have KCI "acquired" by HOKC.

### 8. *Frisch's* Factor No. 8: Expansion of product lines.

In this case, Defendants' fraudulent services are directly competing with HOKC's legitimate services. The Sixth Circuit holds that in such instances, where products or services are directly competing, there "is no need for discussion of this factor." *Little Caesar Enterprises, Inc. v. Pizza Caesar, Inc.,* 834 F.2d 568, 572 (6th Cir. 1987).

### 9. The *Frisch's* Factors, Taken Together, Weigh Strongly in Favor of HOKC.

Certainly, HOKC has a strong likelihood of success on the merits in its claim of trademark infringement. ***Cases like this are why trademark laws exist***. Trademark infringement is problematic in any case, but it simply cannot be tolerated when being done to divert charitable and membership dollars for Defendants' unjust personal financial gain, while simultaneously trying to strong-arm a six-figure "merger" deal for yourself. To prevent irreparable injury and maintain the status quo, the temporary restraining order and preliminary injunction requested by HOKC should be granted.

### B. Defendants' Continued Infringement of the Trademark of HOKC Poses a Threat of Irreparable Harm.

In the trademark context, the requirement of irreparable injury is to be interpreted liberally. The Sixth Circuit has unequivocally held that "irreparable harm is *presumed* from defendant[']s infringement of plaintiff's mark." *DaimlerChrysler v. The Net Inc.*, 388 F.3d 201, 208 (6th Cir. 2004) (citations omitted) (emphasis added). "The law of this Circuit holds that no

particular finding of likelihood of . . . irreparable harm is necessary for injunctive relief in trademark infringement or unfair competition cases." *Circuit City Stores, Inc. v. CarMax, Inc.,* 165 F.3d 1047, 1056 (6th Cir. 1999) (citing *Wynn Oil Co. v. Am. Way Serv. Corp.,* 943 F.2d 595, 608 (6th Cir. 1991)). Further, "[o]nce a moving party has demonstrated a likelihood of confusion, a finding of irreparable injury ordinarily follows." *Ohio State*, 738 F. Supp.2d at 755.

"The irreparable injury flows both from the potential difficulty of proof of plaintiff's damages, and also from the impairment of intangible values." *Wynn*, 943 F.2d at 608 (internal quotation marks omitted) (citations omitted)). Further, where a defendant is unlawfully infringing upon a trademark, irreparable injury follows from the damage to a plaintiff's reputation and the development of goodwill in its mark. *See DaimlerChrysler*, 388 F.3d at 208. A court may also consider the potential loss of control over the quality of goods associated with the plaintiff's mark and the risk of damage to the plaintiff's reputation and mark. *See Woodroast Sys., Inc. v. Rests. Unlimited, Inc.*, 793 F. Supp. 906, 918 (D. Minn. 1992), *aff'd* 994 F.2d 844 (8th Cir. 1993). The consequences of trademark infringement and unfair competition and the attendant loss of goodwill and injury to reputation along with control over the nature and quality of the goods are intangibles which cannot later be compensated by an award of money damages.

Defendants' use of HOKC's trademark poses certain and immediate threat of irreparable injury to the reputation and goodwill of HOKC. The injury to HOKC's goodwill and other charitable interests caused by this conduct will only increase as Defendants' activities continue. Indeed, it is likely that HOKC's support of numerous charities would be irreparably harmed if Defendants are permitted to profit from the KENTUCKY COLONELS Mark. Moreover, unless Defendants are enjoined from infringing HOKC's Mark, it will be difficult to subsequently

quantify how many contributions were lost due to Defendants' actions. *See, eg., Budish v. Gordon*, 784 F. Supp. 1320, 1337 (N.D. Ohio 1992).

The injury which will be sustained by HOKC is more than financial, however. HOKC has spent many years developing its reputation and goodwill throughout the world. Here, continued use of its Mark by Defendants could cause HOKC to suffer a substantial loss of goodwill among its members and the general public, as consumers are confused into thinking that HOKC is acting in concert with organizations and individuals that have no ties to HOKC. The fact that Wright and his affiliated organizations have misrepresented their corporate and tax exempt status further exacerbates the reputational harm that HOKC may suffer. The threat that the goodwill of HOKC will be diminished and the prestige and honor associated with the KENTUCKY COLONELS Mark tarnished is an injury which cannot be rectified monetarily. The injury is immediate and continuing and cannot be repaired. *See Basicomputer Corp. v. Scott*, 973 F.2d 507, 512 (6th Cir. 1992) (holding that "[t]he loss of customer goodwill often amounts to irreparable injury because the damages flowing from such losses are difficult to compute"); *Michigan Bell Telephone Co. v. Engler*, 257 F.3d 587, 599 (6th Cir. 2001) (noting same); *Genny's Diner & Pub, Inc. v. Sweet Daddy's, Inc.*, 812 F.Supp. 744, 747 (W.D. Ky. 1993) (finding that where confusion is highly likely, the loss of goodwill is irreparable or, at best, only very slowly regained, and noting that damages for such harm are clearly inadequate).

HOKC has sufficiently demonstrated the irreparable harm which it will suffer if the injunctive relief sought is not granted. The motion for a temporary restraining order and a preliminary injunction should be granted.

### C.     The Balance of Injuries Weighs Decidedly in Favor of HOKC.

Harm caused to apparent infringers is not entitled to consideration. *Worthington Foods, Inc. v. Kellogg Co.*, 732 F. Supp. 1417, 1461 (S.D. Ohio 1990). "[I]f the plaintiff alleging

trademark infringement can show a likelihood of success, the 'harm to others' factor of the preliminary injunction standard would normally favor the plaintiff as well." *Id*. at 1462. The threatened injury to HOKC therefore far outweighs whatever harm the issuance of an injunction may cause Defendants.

The relief requested by HOKC prohibits Defendants from doing what it should not be doing in the first place—using a trademark to which it has no legal right. "Where the harm to an alleged infringer from a preliminary injunction is self-inflicted, courts typically find that such harm is a natural consequence of infringing activity that does not weigh against issuance of an injunction." *Anderson v. TOL, Inc.,* 927 F. Supp. 2d 475, 488 (M.D. Tenn. 2013). Any harm to Defendants is self-inflicted, as Defendants knew of the HOKC's longstanding rights in the KENTUCKY COLONELS Mark. *See Papa John's Int'l, Inc. v. Specktacular Pizza, Inc.*, No. 3:05-cv-515-H, 2005 WL 3132337, at *5 (W.D. Ky. Nov. 21, 2005); *see also KFC Corp. v. Goldey*, 714 F. Supp. 264, 267 (W.D. Ky. 1989) ("As to the threatened harm to plaintiff compared with the threatened harm to the defendant, the courts have usually held that where the plaintiff is an authorized trademark holder and the defendant is improperly using the trademark, then the threatened harm to the trademark owner outweighs the threatened harm to the defendant.").

In fact, the relief requested will only prevent Defendants from doing what they should not be doing in the first place. "Where the only hardship that the defendant will suffer is lost profits from an activity which has been shown likely to be infringing, such an argument in defense 'merits little equitable consideration.'" *Budish v. Gorden*, 784 F.Supp. 1320, 1338 (N.D. Ohio 1992) (citations omitted). *See also Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 253 F.Supp.2d 943, 973 (E.D. Ky. 2003) ("One cannot build a business based upon infringing

24

another's intellectual property rights, and then be allowed to complain that making them stop will cause harm"). Furthermore, when a plaintiff has made a substantial investment of time and money in its mark as opposed to the investment by the infringer, the balance of hardships tips in the plaintiff's favor. *See Woodroast Sys., Inc. v. Restaurants Unlimited, Inc.*, 793 F.Supp. 906, 919 (D. Minn. 1992), *aff'd* 994 F.2d 844 (8th Cir. 1993).

HOKC has invested nearly a century in developing the goodwill behind its KENTUCKY COLONELS Mark. Defendants are using HOKC's trademark to lend authenticity to an organization which, by its own admission, is dedicated to promotion of the "careers and successes" of its individual members. Such self-promotion for individual and personal enrichment is completely inconsistent with the mission of the HOKC and contrary to the historical use of the KENTUCKY COLONELS Mark. It is particular harmful to HOKC's reputation since the individuals and entities misappropriating the Mark are misrepresenting their tax exempt status and have a history of utterly disregarding the law on corporate governance, formation, and status. Accordingly, as the only potential injury to Defendants would be profits lost from their infringing activities, the balance of equities lies heavily in favor of HOKC. The motion for injunctive relief should be granted.

### D.     Granting Injunctive Relief Is In the Public Interest.

The injunctive relief sought by HOKC is clearly in the best interest of the public. Unlike other types of preliminary injunction matters, in a trademark infringement matter, "a third party, the consuming public, is present and its interests are paramount." *See* 1 McCarthy, *supra* p. 8, § 2:22 (quoting *James Burrough Ltd. v. Sign of Beefeater, Inc.*, 540 F.2d 266, 274 (7th Cir. 1976)). When a trademark is infringed, what is actually infringed is the right of the public to be free of confusion and the synonymous right of the trademark owner to control its product's (or service's) reputation. *Id*. As a result, public policy concerns often "weigh in favor of preliminary

injunctive relief because an injunction would halt confusion in the marketplace." *Ohio State*, 738 F. Supp. 2d at 756-57. In the present case, it is certainly in the public interest to prevent confusion between the services provided by HOKC and the activities of others improperly using the KENTUCKY COLONELS Mark.

HOKC is a non-profit organization that distributes grants to non-profit organizations. To raise money for charity, HOKC solicits contributions from appointed Kentucky Colonels, holds an annual barbeque picnic, and engages in service, sells a wide variety of merchandise that bears the KENTUCKY COLONELS Mark, and other such fundraising activities. On an annual basis, HOKC raises and distributes millions of dollars to charitable and educational organizations across the Commonwealth and beyond, and confusion or harm to its goodwill could impair HOKC's efforts to raise money for such worthy causes. HOKC's motion for a temporary restraining order and a preliminary injunction is in the public interest and should be granted.

## CONCLUSION

HOKC is suffering irreparable injury from Defendants' infringement of its trademark, and membership of HOKC is being duped by Defendants for Defendants' own financial gain. HOKC has offered sufficient evidence to show that Defendants' use of the KENTUCKY COLONELS Mark is harming HOKC, and is causing actual confusion to the public. HOKC respectfully requests that its motion for a temporary restraining order and a preliminary injunction be granted and that the proposed Orders be entered with all possible haste.

Respectfully submitted,

*/s/ Cornelius E. Coryell II*
Cornelius E. Coryell II
Michelle Browning Coughlin
Julie Laemmle Watts
WYATT, TARRANT & COMBS, LLP
400 West Market Street, Suite 2000
Louisville, KY 40202
(502) 589-5235
ccoryell@wyattfirm.com
mcoughlin@wyattfirm.com
jwatts@wyattfirm.com

*Counsel for Plaintiff, the Honorable Order of Kentucky Colonels, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on February 21, 2020, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system. I further certify that a true and correct copy of the foregoing has been served upon the following, via U.S. Mail, on the 21st day of February, 2020:

Kentucky Colonels International
c/o Maya-Lis A. Wright
302 General Smith Drive
Richmond, KY 40475

Ecology Crossroads Cooperative Foundation, Inc.
c/o Maya-Lis A. Wright
302 General Smith Drive
Richmond, KY 40475

Globcal International
c/o Maya-Lis A. Wright
302 General Smith Drive
Richmond, KY 40475

David J. Wright
302 General Smith Drive
Richmond, KY 40475

*/s/ Cornelius E. Coryell II*
*Counsel for Plaintiff, the Honorable Order of Kentucky Colonels, Inc.*

100234362.2

# EXHIBIT 1

# TO MOTION FOR RESTRAINING ORDER

**THE HONORABLE ORDER OF KENTUCKY COLONELS TRADEMARK REGISTRATIONS AND APPLICATIONS**

| TRADEMARK | Status/<br>Key Dates | Goods/Services |
|---|---|---|
| **KENTUCKY COLONELS**<br><br>RN: 2812681<br>SN: 76499062 | Renewed February 10, 2014<br><br>First Use: October 21, 2002<br><br>Filed: March 10, 2003<br><br>Registered: February 10, 2004 | (Int'l Class: 06)<br><br>metal key chains; metal money clips; commemorative metal license plates<br><br>(Int'l Class: 14)<br><br>necklaces; rings being jewelry; ornamental lapel pins; cuff-links; tie-clips<br><br>(Int'l Class: 21)<br><br>coffee cups; drinking glasses; shot glasses; drinking flasks<br><br>(Int'l Class: 22)<br><br>multi-purpose cloth bags<br><br>(Int'l Class: 25)<br><br>clothing, namely, shirts, t-shirts, sweat shirts, jackets, vests, baseball caps [, sun visors ]<br><br>(Int'l Class: 26)<br><br>embroidered patches for clothing |
| **KENTUCKY COLONELS**<br><br>RN: 4596450<br>SN: 86168292 | Registered September 2, 2014<br><br>First Use: November 20, 2002<br><br>Filed: January 17, 2014 | (Int'l Class: 34)<br><br>cigars |
| **KENTUCKY COLONELS**<br><br>RN: 5981310<br>SN: 88423336 | Registered February 11, 2020<br><br>First Use: December 12, 2017<br><br>Filed: May 9, 2019 | (Int'l Class: 30)<br><br>Barbeque sauce; Candy; Caramel sauce; Chocolate candies; Chocolate confections, namely, bourbon infused candies; Chocolate sauce; Marinades; Salsa |

THE HONORABLE ORDER OF KENTUCKY COLONELS TRADEMARK REGISTRATIONS AND APPLICATIONS

| TRADEMARK | Status/<br>Key Dates | Goods/Services |
|---|---|---|
| **KENTUCKY COLONELS**<br><br>SN: 88800020 | First Use Commerce: 1951<br><br>Filed: February 17, 2020 | (Int'l Class: 36)<br><br>Charitable fundraising services; Charitable fundraising services by means of organizing and conducting special events; Providing grants to non-profit organizations |
| **KENTUCKY COLONELS**<br><br>SN: 88800035 | First Use: 1995<br><br>Filed: February 17, 2020 | (Int'l Class: 41)<br><br>Social club services, namely, arranging, organizing, and hosting social events, get-togethers, and parties for club members |
| **KENTUCKY COLONELS**<br><br>SN: 88800038 | First Use Commerce: 1951<br><br>Filed: February 17, 2020 | (Int'l Class: 35)<br><br>Association services, namely, promoting the interests of individuals selected by the Governor of the Commonwealth of Kentucky to receive an honorary commission; Promoting the interests of members of the organization by means of club services |
| **HONORABLE ORDER OF KENTUCKY COLONELS**<br><br>RN: 1227024<br>SN: 73299122 | Renewed Principal Register - Sec. 2(F) February 8, 2013<br><br>First Use: May 10, 1957<br><br>Filed: March 2, 1981<br><br>Registered: February 8, 1983 | (Int'l Class: 42)<br><br>eleemosynary services-namely, founding of scholarship, equipping playgrounds and the like and to collect historical and cultural material pertaining to Commonwealth of Kentucky |
| **HONORABLE ORDER OF KENTUCKY COLONELS**<br><br>RN: 4939909<br>SN: 86690496 | Registered Principal Register - Sec. 2(F) April 19, 2016<br><br>First Use: May 10, 1957<br><br>Filed: July 12, 2015 | (Int'l Class: 36)<br><br>charitable services, namely, providing financial assistance for programs and services of others; providing educational scholarships |

| From: | TMOfficialNotices@USPTO.GOV |
| Sent: | Thursday, February 6, 2014 11:01 PM |
| To: | mwilliams@wyattfirm.com |
| Subject: | Official USPTO Notice of Acceptance and Renewal Sections 8 and 9: U.S. Trademark RN 2812681: KENTUCKY COLONELS: Docket/Reference No. 031100.70239 |

**Serial Number:**  76499062
**Registration Number:**  2812681
**Registration Date:**  Feb 10, 2004
**Mark:**  KENTUCKY COLONELS
**Owner:**  Honorable Order of Kentucky Colonels, In, etc

Feb 6, 2014

## NOTICE OF ACCEPTANCE UNDER SECTION 8

The declaration of use or excusable nonuse filed for the above-identified registration meets the requirements of Section 8 of the Trademark Act, 15 U.S.C. §1058.  **The Section 8 declaration is accepted.**

## NOTICE OF REGISTRATION RENEWAL UNDER SECTION 9

The renewal application filed for the above-identified registration meets the requirements of Section 9 of the Trademark Act, 15 U.S.C. §1059.  **The registration is renewed.**

**The registration will remain in force for the class(es) listed below for the remainder of the ten-year period, calculated from the registration date, unless canceled by an order of the Commissioner for Trademarks or a Federal Court.**

**Class(es):**
006, 014, 021, 022, 025, 026

TRADEMARK SPECIALIST
POST-REGISTRATION DIVISION
571-272-9500

### REQUIREMENTS FOR MAINTAINING REGISTRATION IN SUCCESSIVE TEN-YEAR PERIODS

**WARNING: Your registration will be canceled if you do not file the documents below during the specified time periods.**

**What and When to File:** You must file a declaration of use (or excusable nonuse) **and** an application for renewal between every 9th and 10th-year period, calculated from the registration date.  See 15 U.S.C. §§1058, 1059.

**Grace Period Filings**

The above documents will be considered as timely if filed within six months after the deadlines listed above with the payment of an additional fee.

**\*\*\*The USPTO WILL NOT SEND ANY FURTHER NOTICE OR REMINDER OF THESE REQUIREMENTS.  THE REGISTRANT SHOULD CONTACT THE USPTO ONE YEAR BEFORE THE EXPIRATION OF THE TIME PERIODS SHOWN ABOVE TO DETERMINE APPROPRIATE REQUIREMENTS AND FEES.\*\*\***

To view this notice and other documents for this application on-line, go to http://tdr.uspto.gov/search.action?sn=76499062.  NOTE: This notice will only be available on-line the next business day after receipt of this e-mail.

Int. Cls.: 6, 14, 21, 22, 25 and 26

Prior U.S. Cls.: 1, 2, 7, 12, 13, 14, 19, 22, 23, 25, 27, 28, 29, 30, 33, 37, 39, 40, 42 and 50

Reg. No. 2,812,681

United States Patent and Trademark Office    Registered Feb. 10, 2004

## TRADEMARK
## PRINCIPAL REGISTER

## KENTUCKY COLONELS

HONORABLE ORDER OF KENTUCKY COLO-NELS, INC., THE (KENTUCKY CORPORA-TION)
1717 ALLIANT AVENUE, SUITE 14
LOUISVILLE, KY 40299

FOR: METAL KEY CHAINS; METAL MONEY CLIPS; COMMEMORATIVE METAL LICENSE PLATES, IN CLASS 6 (U.S. CLS. 2, 12, 13, 14, 23, 25 AND 50).

FIRST USE 10-21-2002; IN COMMERCE 10-21-2002.

FOR: NECKLACES; RINGS BEING JEWELRY; ORNAMENTAL LAPEL PINS; CUFF-LINKS; TIE-CLIPS, IN CLASS 14 (U.S. CLS. 2, 27, 28 AND 50).

FIRST USE 10-21-2002; IN COMMERCE 10-21-2002.

FOR: COFFEE CUPS; DRINKING GLASSES; SHOT GLASSES; DRINKING FLASKS, IN CLASS 21 (U.S. CLS. 2, 13, 23, 29, 30, 33, 40 AND 50).

FIRST USE 10-21-2002; IN COMMERCE 10-21-2002.

FOR: MULTI-PURPOSE CLOTH BAGS, IN CLASS 22 (U.S. CLS. 1, 2, 7, 19, 22, 42 AND 50).

FIRST USE 10-21-2002; IN COMMERCE 10-21-2002.

FOR: CLOTHING, NAMELY SHIRTS, T-SHIRTS, SWEAT SHIRTS, JACKETS, VESTS, BASEBALL CAPS, SUN VISORS, IN CLASS 25 (U.S. CLS. 22 AND 39).

FIRST USE 10-21-2002; IN COMMERCE 10-21-2002.

FOR: EMBROIDERED PATCHES FOR CLOTH-ING, IN CLASS 26 (U.S. CLS. 37, 39, 40, 42 AND 50).

FIRST USE 10-21-2002; IN COMMERCE 10-21-2002.

NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "KENTUCKY", APART FROM THE MARK AS SHOWN.

SER. NO. 76-499,062, FILED 3-10-2003.

MELVIN AXILBUND, EXAMINING ATTORNEY

# United States of America
## United States Patent and Trademark Office

# KENTUCKY COLONELS

**Reg. No. 4,596,450**

**Registered Sep. 2, 2014**

**Int. Cl.: 34**

**TRADEMARK**

**PRINCIPAL REGISTER**

THE HONORABLE ORDER OF KENTUCKY COLONELS, INC. (KENTUCKY CORPORATION)
1717 ALLIANT AVENUE
SUITE 14
LOUISVILLE, KY 40299

FOR: CIGARS, IN CLASS 34 (U.S. CLS. 2, 8, 9 AND 17).

FIRST USE 11-20-2002; IN COMMERCE 11-20-2002.

THE MARK CONSISTS OF STANDARD CHARACTERS WITHOUT CLAIM TO ANY PARTICULAR FONT, STYLE, SIZE, OR COLOR.

OWNER OF U.S. REG. NOS. 1,227,024 AND 2,812,681.

NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "KENTUCKY", APART FROM THE MARK AS SHOWN.

SER. NO. 86-168,292, FILED 1-17-2014.

JACLYN KIDWELL WALKER, EXAMINING ATTORNEY



Michelle K. Lee

**Deputy Director of the United States
Patent and Trademark Office**

## REQUIREMENTS TO MAINTAIN YOUR FEDERAL TRADEMARK REGISTRATION

### WARNING: YOUR REGISTRATION WILL BE CANCELLED IF YOU DO NOT FILE THE DOCUMENTS BELOW DURING THE SPECIFIED TIME PERIODS.

**Requirements in the First Ten Years\***
**What and When to File:**

> *First Filing Deadline:* You must file a Declaration of Use (or Excusable Nonuse) between the 5th and 6th years after the registration date. *See* 15 U.S.C. §§1058, 1141k. If the declaration is accepted, the registration will continue in force for the remainder of the ten-year period, calculated from the registration date, unless cancelled by an order of the Commissioner for Trademarks or a federal court.

> *Second Filing Deadline:* You must file a Declaration of Use (or Excusable Nonuse) **and** an Application for Renewal between the 9th and 10th years after the registration date.\* *See* 15 U.S.C. §1059.

**Requirements in Successive Ten-Year Periods\***
**What and When to File:**

> You must file a Declaration of Use (or Excusable Nonuse) **and** an Application for Renewal between every 9th and 10th-year period, calculated from the registration date.\*

**Grace Period Filings\***

The above documents will be accepted as timely if filed within six months after the deadlines listed above with the payment of an additional fee.

### The United States Patent and Trademark Office (USPTO) will NOT send you any future notice or reminder of these filing requirements.

**\*ATTENTION MADRID PROTOCOL REGISTRANTS:** The holder of an international registration with an extension of protection to the United States under the Madrid Protocol must timely file the Declarations of Use (or Excusable Nonuse) referenced above directly with the USPTO. The time periods for filing are based on the U.S. registration date (not the international registration date). The deadlines and grace periods for the Declarations of Use (or Excusable Nonuse) are identical to those for nationally issued registrations. *See* 15 U.S.C. §§1058, 1141k. However, owners of international registrations do not file renewal applications at the USPTO. Instead, the holder must file a renewal of the underlying international registration at the International Bureau of the World Intellectual Property Organization, under Article 7 of the Madrid Protocol, before the expiration of each ten-year term of protection, calculated from the date of the international registration. *See* 15 U.S.C. §1141j. For more information and renewal forms for the international registration, see http://www.wipo.int/madrid/en/.

**NOTE: Fees and requirements for maintaining registrations are subject to change. Please check the USPTO website for further information. With the exception of renewal applications for registered extensions of protection, you can file the registration maintenance documents referenced above online at** http://www.uspto.gov.

# United States of America

## United States Patent and Trademark Office

# KENTUCKY COLONELS

**Reg. No. 5,981,310**

**Registered Feb. 11, 2020**

**Int. Cl.: 30**

**Trademark**

**Principal Register**

The Honorable Order of Kentucky Colonels, Inc.  (KENTUCKY CORPORATION)
1717 Alliant Avenue, Suite 14
Louisville, KENTUCKY 40299

CLASS 30: Barbeque sauce; Candy; Caramel sauce; Chocolate candies; Chocolate confections, namely, bourbon infused candies; Chocolate sauce; Marinades; Salsa

FIRST USE 12-12-2017; IN COMMERCE 12-12-2017

THE MARK CONSISTS OF STANDARD CHARACTERS WITHOUT CLAIM TO ANY PARTICULAR FONT STYLE, SIZE OR COLOR

OWNER OF U.S. REG. NO. 4596450, 2812681, 1227024

No claim is made to the exclusive right to use the following apart from the mark as shown: "KENTUCKY"

SER. NO. 88-423,336, FILED 05-09-2019





Director of the United States
Patent and Trademark Office

## REQUIREMENTS TO MAINTAIN YOUR FEDERAL TRADEMARK REGISTRATION

### WARNING: YOUR REGISTRATION WILL BE CANCELLED IF YOU DO NOT FILE THE DOCUMENTS BELOW DURING THE SPECIFIED TIME PERIODS.

**Requirements in the First Ten Years***
**What and When to File:**

- *First Filing Deadline:* You must file a Declaration of Use (or Excusable Nonuse) between the 5th and 6th years after the registration date. See 15 U.S.C. §§1058, 1141k. If the declaration is accepted, the registration will continue in force for the remainder of the ten-year period, calculated from the registration date, unless cancelled by an order of the Commissioner for Trademarks or a federal court.

- *Second Filing Deadline:* You must file a Declaration of Use (or Excusable Nonuse) and an Application for Renewal between the 9th and 10th years after the registration date.* See 15 U.S.C. §1059.

**Requirements in Successive Ten-Year Periods***
**What and When to File:**

- You must file a Declaration of Use (or Excusable Nonuse) and an Application for Renewal between every 9th and 10th-year period, calculated from the registration date.*

**Grace Period Filings***

The above documents will be accepted as timely if filed within six months after the deadlines listed above with the payment of an additional fee.

**\*ATTENTION MADRID PROTOCOL REGISTRANTS:** The holder of an international registration with an extension of protection to the United States under the Madrid Protocol must timely file the Declarations of Use (or Excusable Nonuse) referenced above directly with the United States Patent and Trademark Office (USPTO). The time periods for filing are based on the U.S. registration date (not the international registration date). The deadlines and grace periods for the Declarations of Use (or Excusable Nonuse) are identical to those for nationally issued registrations. See 15 U.S.C. §§1058, 1141k. However, owners of international registrations do not file renewal applications at the USPTO. Instead, the holder must file a renewal of the underlying international registration at the International Bureau of the World Intellectual Property Organization, under Article 7 of the Madrid Protocol, before the expiration of each ten-year term of protection, calculated from the date of the international registration. See 15 U.S.C. §1141j. For more information and renewal forms for the international registration, see http://www.wipo.int/madrid/en/.

**NOTE: Fees and requirements for maintaining registrations are subject to change. Please check the USPTO website for further information. With the exception of renewal applications for registered extensions of protection, you can file the registration maintenance documents referenced above online at** http://www.uspto.gov.

**NOTE: A courtesy e-mail reminder of USPTO maintenance filing deadlines will be sent to trademark owners/holders who authorize e-mail communication and maintain a current e-mail address with the USPTO. To ensure that e-mail is authorized and your address is current, please use the Trademark Electronic Application System (TEAS) Correspondence Address and Change of Owner Address Forms available at** http://www.uspto.gov.

**Watts, Julie**

| | |
|---|---|
| **From:** | TEAS@uspto.gov |
| **Sent:** | Monday, February 17, 2020 2:51 PM |
| **To:** | Coughlin, Michelle; Laney, Deb; Trademarks |
| **Subject:** | Serial number 88800020: Received Your Trademark/Service Mark Application, Principal Register |

| | |
|---|---|
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Flagged |

**Filing Receipt for Trademark/Service Mark Application for Registration
on the Principal Register
and Next Steps in the Application Process**

Thank you for submitting your trademark application to the U.S. Patent and Trademark Office (USPTO). This filing receipt confirms your mark and serial number, describes next steps in the application process, and includes the information submitted in your application. Please read this receipt carefully and keep a copy for your records.

For an overview of important things to know after filing your application, visit our website to read the After You File page and watch video number 9 "After You File."

**1. Your mark.** KENTUCKY COLONELS (Standard Characters, mark.jpg)
The literal element of the mark consists of KENTUCKY COLONELS. The mark consists of standard characters, without claim to any particular font style, size, or color.

**2. Your serial number.** Your application was assigned serial number '88800020'. You must refer to your serial number in all communications about your application.

**3. What happens next—legal examination.** Your mark will not be registered automatically. In approximately three months, your application will be assigned to a USPTO examining attorney for review. The attorney will determine if your application meets all applicable legal requirements, and if it doesn't you will be notified in an email with a link to the official Office action (official letter from the USPTO). Visit our website for an explanation of application process timelines.

If your mark includes a design element, we will assign it one or more design search codes. We will notify you of these codes within the next few weeks and you can suggest that we add or delete a design search code from your file.

**4. Keep your addresses current in USPTO records.** We do not extend filing deadlines if you do not receive USPTO mail or email. If your postal address or email address changes, you must update the correspondence or owner's address using the address forms on our website.

**5. Check your application status in our database every three to four months.** To be sure that you don't miss an important email from us, and to avoid the possible abandonment of your application, check your application status and review your documents in our database, Trademark Status and Document Retrieval (TSDR), every three to four months.

**6. Warning about private companies offering trademark-related services.** Private companies may send you communications that resemble official USPTO communications. These private companies are not associated with the USPTO. All official correspondence will be from the "United States Patent and Trademark Office" in Alexandria, Virginia, and from emails with the domain "uspto.gov." If you are unsure about whether the correspondence is from us, check your records in our database, TSDR. Visit our website for more information on trademark-related communications that may resemble official USPTO communications.

**7. Questions?** Please visit our website, email us, or call us at 1-800-786-9199 and select option 1.

**8. Application data.** If you find an error in the data below, visit the After You File page on our website for information on correcting errors.

**The information submitted in the application appears below:**

Under the Paperwork Reduction Act of 1995 no persons are required to respond to a collection of information unless it displays a valid OMB control number.
PTO Form 1478 (Rev 09/2006)
OMB No. 0651-0009 (Exp 02/28/2021)

Trademark/Service Mark Application, Principal Register

**TEAS Plus Application**

***NOTE:*** *Data fields with the* *** are mandatory. The wording "(if applicable)" appears where the field is only mandatory under the facts of the particular application.*

The table below presents the data as entered.

| Input Field | Entered |
|---|---|
| **TEAS Plus** | **YES** |
| **MARK INFORMATION** | |
| ***MARK** | mark.jpg |
| ***STANDARD CHARACTERS** | YES |
| **USPTO-GENERATED IMAGE** | YES |
| **LITERAL ELEMENT** | KENTUCKY COLONELS |
| ***MARK STATEMENT** | The mark consists of standard characters, without claim to any particular font style, size, or color. |
| **APPLICANT INFORMATION** | |
| ***OWNER OF MARK** | The Honorable Order of Kentucky Colonels, Inc. |
| **DBA/AKA/TA/FORMERLY** | AKA Kentucky Colonels |
| ***MAILING ADDRESS** | 943 South 1st Street |
| ***CITY** | Louisville |
| ***STATE**<br>**(Required for U.S. applicants)** | Kentucky |

| | |
|---|---|
| **\*COUNTRY/REGION/JURISDICTION/U.S. TERRITORY** | United States |
| **\*ZIP/POSTAL CODE** (Required for U.S. and certain international addresses) | 40203 |
| **\*EMAIL ADDRESS** | scrose@kycolonels.org |

## LEGAL ENTITY INFORMATION

| | |
|---|---|
| **\*TYPE** | non-profit corporation |
| **\*** STATE/COUNTRY/REGION/JURISDICTION/U.S. TERRITORY WHERE LEGALLY ORGANIZED | United States |

## GOODS AND/OR SERVICES AND BASIS INFORMATION

| | |
|---|---|
| **\*INTERNATIONAL CLASS** | 036 |
| **\*IDENTIFICATION** | Charitable fundraising services; Charitable fundraising services by means of organizing and conducting special events; Providing grants to **non-profit organizations** |
| **\*FILING BASIS** | SECTION 1(a) |
| FIRST USE ANYWHERE DATE | At least as early as 00/00/1931 |
| FIRST USE IN COMMERCE DATE | At least as early as 00/00/1951 |
| SPECIMEN FILE NAME(S) | SPE0-20887237201-20200217 062101419506_._11_-_Day_o f_Service_-_Kentucky_Colo |
| | SPE0-20887237201-20200217 062101419506_._2019-Good- Works-Program-Guidelines. |
| | SPE0-20887237201-20200217 062101419506_._14_-_Award ed_Grants_-_Kentucky_Colo |
| SPECIMEN DESCRIPTION | Screenshots from Applicant's website showing mark prominently displayed in connection with the services |

## ADDITIONAL STATEMENTS SECTION

| | |
|---|---|
| **\*TRANSLATION** (if applicable) | |
| **\*TRANSLITERATION** (if applicable) | |
| **\*CLAIMED PRIOR REGISTRATION** (if applicable) | The applicant claims ownership of active prior U.S. Registration Number(s) 2812681 and 4596450. |
| **\*CONSENT (NAME/LIKENESS)** (if applicable) | |

3

| *CONCURRENT USE CLAIM (if applicable) | |
|---|---|
| **ATTORNEY INFORMATION** | |
| NAME | Michelle Browning Coughlin |
| ATTORNEY BAR MEMBERSHIP NUMBER | 93081 |
| YEAR OF ADMISSION | 2009 |
| U.S. STATE/ COMMONWEALTH/ TERRITORY | Kentucky |
| FIRM NAME | Wyatt Tarrant & Combs LLP |
| STREET | 400 West Market St, Suite 2000 |
| CITY | Louisville |
| STATE | Kentucky |
| COUNTRY/REGION/JURISDICTION/U.S. TERRITORY | United States |
| ZIP/POSTAL CODE | 40202 |
| PHONE | 502-562-7561 |
| FAX | 502-589-0309 |
| EMAIL ADDRESS | mcoughlin@wyattfirm.com |
| OTHER APPOINTED ATTORNEY | Matthew A. Williams, Max Bridges, Julie A. Laemmle |
| **CORRESPONDENCE INFORMATION** | |
| NAME | Michelle Browning Coughlin |
| PRIMARY EMAIL ADDRESS FOR CORRESPONDENCE | mcoughlin@wyattfirm.com |
| SECONDARY EMAIL ADDRESS(ES) (COURTESY COPIES) | dlaney@wyattfirm.com; TRADEMARKS@WYATTFIRM.COM |
| **FEE INFORMATION** | |
| APPLICATION FILING OPTION | TEAS Plus |
| NUMBER OF CLASSES | 1 |
| APPLICATION FOR REGISTRATION PER CLASS | 225 |
| *TOTAL FEES DUE | 225 |
| *TOTAL FEES PAID | 225 |
| **SIGNATURE INFORMATION** | |
| * SIGNATURE | /MBC/ |

| * SIGNATORY'S NAME | Michelle Browning Coughlin |
|---|---|
| * SIGNATORY'S POSITION | Attorney of record, Kentucky bar member |
| SIGNATORY'S PHONE NUMBER | 502-562-7561 |
| * DATE SIGNED | 02/17/2020 |

Under the Paperwork Reduction Act of 1995 no persons are required to respond to a collection of information unless it displays a valid OMB control number.
PTO Form 1478 (Rev 09/2006)
OMB No. 0651-0009 (Exp 02/28/2021)

## Trademark/Service Mark Application, Principal Register

## TEAS Plus Application

**Serial Number: 88800020**
**Filing Date: 02/17/020**

## To the Commissioner for Trademarks:

The applicant, The Honorable Order of Kentucky Colonels, Inc., AKA Kentucky Colonels, a non-profit corporation legally organized under the laws of United States, having an address of
  943 South 1st Street
  Louisville, Kentucky 40203
  United States
  scrose@kycolonels.org

requests registration of the trademark/service mark identified above in the United States Patent and Trademark Office on the Principal Register established by the Act of July 5, 1946 (15 U.S.C. Section 1051 et seq.), as amended, for the following:

International Class 036:  Charitable fundraising services; Charitable fundraising services by means of organizing and conducting special events; Providing grants to non-profit organizations

Use in Commerce: The applicant is using the mark in commerce on or in connection with the identified goods/services. The applicant attaches, or will later submit, one specimen as a JPG/PDF image file showing the mark as used in commerce on or in connection with any item in the class of listed goods/services, regardless of whether the mark itself is in the standard character format or is a stylized or design mark. The specimen image file may be in color, and the image must be in color if color is being claimed as a feature of the mark.

In International Class 036, the mark was first used by the applicant or the applicant's related company or licensee predecessor in interest at least as early as 00/00/1931, and first used in commerce at least as early as 00/00/1951, and is now in use in such commerce. The applicant is submitting one(or more) specimen(s)

5

showing the mark as used in commerce on or in connection with any item in the class of listed goods/services, consisting of a(n) Screenshots from Applicant's website showing mark prominently displayed in connection with the services.

Specimen-1 [SPE0-20887237201-20200217062101419506_._11_-_Day_of_Service_-_Kentucky_Colonels_-_www.kycolonels.org.pdf ]
Specimen-2 [SPE0-20887237201-20200217062101419506_._2019-Good-Works-Program-Guidelines.pdf ]
Specimen-3 [SPE0-20887237201-20200217062101419506_._14_-_Awarded_Grants_-_Kentucky_Colonels_-_www.kycolonels.org.pdf ]


**Claim of Active Prior Registration(s)**
The applicant claims ownership of active prior U.S. Registration Number(s) 2812681 and 4596450.


The owner's/holder's proposed attorney information: Michelle Browning Coughlin. Other appointed attorneys are Matthew A. Williams, Max Bridges, Julie A. Laemmle. Michelle Browning Coughlin of Wyatt Tarrant & Combs LLP, is a member of the Kentucky bar, admitted to the bar in 2009, bar membership no. 93081, and the attorney(s) is located at

    400 West Market St, Suite 2000
    Louisville, Kentucky 40202
    United States
    502-562-7561(phone)
    502-589-0309(fax)
    mcoughlin@wyattfirm.com

Michelle Browning Coughlin submitted the following statement: The attorney of record is an active member in good standing of the bar of the highest court of a U.S. state, the District of Columbia, or any U.S. Commonwealth or territory.

 The applicant's current Correspondence Information:

    Michelle Browning Coughlin

     PRIMARY EMAIL FOR CORRESPONDENCE: mcoughlin@wyattfirm.com
     SECONDARY EMAIL ADDRESS(ES) (COURTESY COPIES): dlaney@wyattfirm.com;
TRADEMARKS@WYATTFIRM.COM


 **Requirement for Email and Electronic Filing:** I understand that a valid email address must be maintained by the applicant owner/holder and the applicant owner's/holder's attorney, if appointed, and that all official trademark correspondence must be submitted via the Trademark Electronic Application System (TEAS).
A fee payment in the amount of $225 has been submitted with the application, representing payment for 1 class(es).

<div align="center">

**Declaration**

</div>

 [X] **Basis:**
        **If the applicant is filing the application based on use in commerce under 15 U.S.C. § 1051(a):**

        • The signatory believes that the applicant is the owner of the trademark/service mark sought to be registered;

- The mark is in use in commerce on or in connection with the goods/services in the application;
- The specimen(s) shows the mark as used on or in connection with the goods/services in the application; and
- To the best of the signatory's knowledge and belief, the facts recited in the application are accurate.

**And/Or**
**If the applicant is filing the application based on an intent to use the mark in commerce under 15 U.S.C. § 1051(b), § 1126(d), and/or § 1126(e):**

- The signatory believes that the applicant is entitled to use the mark in commerce;
- The applicant has a bona fide intention to use the mark in commerce on or in connection with the goods/services in the application; and
- To the best of the signatory's knowledge and belief, the facts recited in the application are accurate.

[X] To the best of the signatory's knowledge and belief, no other persons, except, if applicable, concurrent users, have the right to use the mark in commerce, either in the identical form or in such near resemblance as to be likely, when used on or in connection with the goods/services of such other persons, to cause confusion or mistake, or to deceive.

[X] To the best of the signatory's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, the allegations and other factual contentions made above have evidentiary support.

[X] The signatory being warned that willful false statements and the like are punishable by fine or imprisonment, or both, under 18 U.S.C. § 1001, and that such willful false statements and the like may jeopardize the validity of the application or submission or any registration resulting therefrom, declares that all statements made of his/her own knowledge are true and all statements made on information and belief are believed to be true.

**Declaration Signature**

Signature: /MBC/   Date: 02/17/2020
Signatory's Name: Michelle Browning Coughlin
Signatory's Position: Attorney of record, Kentucky bar member
Signatory's Phone Number: 502-562-7561

---

Thank you,

The TEAS support team
Mon Feb 17 14:51:00 ET 2020
STAMP: USPTO/FTK-4.17.80.94-20200217145059958790-88800020-710ba2db2408c27d76afc43e67a6942897c5afb72f6862c3530d5ede665ee8ea-DA-50594876-20200217144333207931

7

**Watts, Julie**

| | |
|---|---|
| **From:** | TEAS@uspto.gov |
| **Sent:** | Monday, February 17, 2020 3:01 PM |
| **To:** | Coughlin, Michelle; Laney, Deb; Trademarks |
| **Subject:** | Serial number 88800035: Received Your Trademark/Service Mark Application, Principal Register |

<div align="center">

**Filing Receipt for Trademark/Service Mark Application for Registration
on the Principal Register
and Next Steps in the Application Process**

</div>

Thank you for submitting your trademark application to the U.S. Patent and Trademark Office (USPTO). This filing receipt confirms your mark and serial number, describes next steps in the application process, and includes the information submitted in your application. Please read this receipt carefully and keep a copy for your records.

For an overview of important things to know after filing your application, visit our website to read the After You File page and watch video number 9 "After You File."

**1. Your mark.** KENTUCKY COLONELS (Standard Characters, mark.jpg)
The literal element of the mark consists of KENTUCKY COLONELS. The mark consists of standard characters, without claim to any particular font style, size, or color.

**2. Your serial number.** Your application was assigned serial number '88800035'. You must refer to your serial number in all communications about your application.

**3. What happens next—legal examination.** Your mark will not be registered automatically. In approximately three months, your application will be assigned to a USPTO examining attorney for review. The attorney will determine if your application meets all applicable legal requirements, and if it doesn't you will be notified in an email with a link to the official Office action (official letter from the USPTO). Visit our website for an explanation of application process timelines.

If your mark includes a design element, we will assign it one or more design search codes. We will notify you of these codes within the next few weeks and you can suggest that we add or delete a design search code from your file.

**4. Keep your addresses current in USPTO records.** We do not extend filing deadlines if you do not receive USPTO mail or email. If your postal address or email address changes, you must update the correspondence or owner's address using the address forms on our website.

**5. Check your application status in our database every three to four months.** To be sure that you don't miss an important email from us, and to avoid the possible abandonment of your application, check your application status and review your documents in our database, Trademark Status and Document Retrieval (TSDR), every three to four months.

**6. Warning about private companies offering trademark-related services.** Private companies may send you communications that resemble official USPTO communications. These private companies are not associated with the USPTO. All official correspondence will be from the "United States Patent and

Trademark Office" in Alexandria, Virginia, and from emails with the domain "uspto.gov." If you are unsure about whether the correspondence is from us, check your records in our database, TSDR. Visit our website for more information on trademark-related communications that may resemble official USPTO communications.

**7. Questions?** Please visit our website, email us, or call us at 1-800-786-9199 and select option 1.

**8.  Application data.** If you find an error in the data below, visit the After You File page on our website for information on correcting errors.

**The information submitted in the application appears below:**

Under the Paperwork Reduction Act of 1995 no persons are required to respond to a collection of information unless it displays a valid OMB control number.
PTO Form 1478 (Rev 09/2006)
OMB No. 0651-0009 (Exp 02/28/2021)

Trademark/Service Mark Application, Principal Register
**TEAS Plus Application**
*NOTE: Data fields with the * are mandatory. The wording "(if applicable)" appears where the field is only mandatory under the facts of the particular application.*

The table below presents the data as entered.

| Input Field | Entered |
|---|---|
| **TEAS Plus** | **YES** |
| **MARK INFORMATION** | |
| **\*MARK** | mark.jpg |
| **\*STANDARD CHARACTERS** | YES |
| **USPTO-GENERATED IMAGE** | YES |
| **LITERAL ELEMENT** | KENTUCKY COLONELS |
| **\*MARK STATEMENT** | The mark consists of standard characters, without claim to any particular font style, size, or color. |
| **APPLICANT INFORMATION** | |
| **\*OWNER OF MARK** | The Honorable Order of Kentucky Colonels, Inc. |
| **DBA/AKA/TA/FORMERLY** | AKA Kentucky Colonels |
| **\*MAILING ADDRESS** | 943 South 1st Street |
| **\*CITY** | Louisville |
| **\*STATE** (Required for U.S. applicants) | Kentucky |
| **\*COUNTRY/REGION/JURISDICTION/U.S. TERRITORY** | United States |

| | |
|---|---|
| **\*ZIP/POSTAL CODE**<br>**(Required for U.S. and certain international addresses)** | 40203 |
| **\*EMAIL ADDRESS** | scrose@kycolonels.org |
| **LEGAL ENTITY INFORMATION** | |
| **\*TYPE** | non-profit corporation |
| **\***<br>**STATE/COUNTRY/REGION/JURISDICTION/U.S. TERRITORY WHERE LEGALLY ORGANIZED** | Kentucky |
| **GOODS AND/OR SERVICES AND BASIS INFORMATION** | |
| **\*INTERNATIONAL CLASS** | 041 |
| **\*IDENTIFICATION** | Social club services, namely, arranging, organizing, and hosting social events, get-togethers, and parties for club members |
| **\*FILING BASIS** | SECTION 1(a) |
| **FIRST USE ANYWHERE DATE** | At least as early as 00/00/1931 |
| **FIRST USE IN COMMERCE DATE** | At least as early as 00/00/1995 |
| **SPECIMEN FILE NAME(S)** | SPE0-1-4178094-2020021713 5556237299_._PRIVATE_BOUR BON_TASTING_FOR_KENTUCKY_ |
| | SPE0-1-4178094-2020021713 5556237299_._KY_Col_Newsp aper_1995.jpg |
| | SPE0-4178094-202002171355 56237299_._11_-_Day_of_Se rvice_-_Kentucky_Colonels |
| | SPE0-1-4178094-2020021713 5556237299_._ireShot_Capt ure_012_-_Kentucky_Colone |
| **SPECIMEN DESCRIPTION** | Screenshots from Applicant's website, newspaper clippings, and photographs showing Applicant's mark prominently displayed in connection with the services |
| **ADDITIONAL STATEMENTS SECTION** | |
| **\*TRANSLATION**<br>**(if applicable)** | |
| **\*TRANSLITERATION**<br>**(if applicable)** | |
| **\*CLAIMED PRIOR REGISTRATION**<br>**(if applicable)** | The applicant claims ownership of active prior U.S. Registration Number(s) 2812681 and 4596450. |
| **\*CONSENT (NAME/LIKENESS)**<br>**(if applicable)** | |

3

| | |
|---|---|
| *CONCURRENT USE CLAIM (if applicable) | |
| **ATTORNEY INFORMATION** | |
| NAME | Michelle Browning Coughlin |
| ATTORNEY BAR MEMBERSHIP NUMBER | 93081 |
| YEAR OF ADMISSION | 2009 |
| U.S. STATE/ COMMONWEALTH/ TERRITORY | Kentucky |
| FIRM NAME | Wyatt Tarrant & Combs LLP |
| STREET | 400 West Market St, Suite 2000 |
| CITY | Louisville |
| STATE | Kentucky |
| COUNTRY/REGION/JURISDICTION/U.S. TERRITORY | United States |
| ZIP/POSTAL CODE | 40202 |
| PHONE | 502-562-7561 |
| FAX | 502-589-0309 |
| EMAIL ADDRESS | mcoughlin@wyattfirm.com |
| OTHER APPOINTED ATTORNEY | Matthew A. Williams, Max Bridges, Julie A. Laemmle |
| **CORRESPONDENCE INFORMATION** | |
| NAME | Michelle Browning Coughlin |
| PRIMARY EMAIL ADDRESS FOR CORRESPONDENCE | mcoughlin@wyattfirm.com |
| SECONDARY EMAIL ADDRESS(ES) (COURTESY COPIES) | dlaney@wyattfirm.com; TRADEMARKS@WYATTFIRM.COM |
| **FEE INFORMATION** | |
| APPLICATION FILING OPTION | TEAS Plus |
| NUMBER OF CLASSES | 1 |
| APPLICATION FOR REGISTRATION PER CLASS | 225 |
| *TOTAL FEES DUE | 225 |
| *TOTAL FEES PAID | 225 |
| **SIGNATURE INFORMATION** | |
| * SIGNATURE | /MBC/ |

| * SIGNATORY'S NAME | Michelle Browning Coughlin |
|---|---|
| * SIGNATORY'S POSITION | Attorney of record, Kentucky bar member |
| SIGNATORY'S PHONE NUMBER | 502-562-7561 |
| * DATE SIGNED | 02/17/2020 |

Under the Paperwork Reduction Act of 1995 no persons are required to respond to a collection of information unless it displays a valid OMB control number.
PTO Form 1478 (Rev 09/2006)
OMB No. 0651-0009 (Exp 02/28/2021)

## Trademark/Service Mark Application, Principal Register

## TEAS Plus Application

**Serial Number: 88800035**
**Filing Date: 02/17/020**

## To the Commissioner for Trademarks:

The applicant, The Honorable Order of Kentucky Colonels, Inc., AKA Kentucky Colonels, a non-profit corporation legally organized under the laws of Kentucky, having an address of

    943 South 1st Street
    Louisville, Kentucky 40203
    United States
    scrose@kycolonels.org

requests registration of the trademark/service mark identified above in the United States Patent and Trademark Office on the Principal Register established by the Act of July 5, 1946 (15 U.S.C. Section 1051 et seq.), as amended, for the following:

International Class 041: Social club services, namely, arranging, organizing, and hosting social events, get-togethers, and parties for club members

Use in Commerce: The applicant is using the mark in commerce on or in connection with the identified goods/services. The applicant attaches, or will later submit, one specimen as a JPG/PDF image file showing the mark as used in commerce on or in connection with any item in the class of listed goods/services, regardless of whether the mark itself is in the standard character format or is a stylized or design mark. The specimen image file may be in color, and the image must be in color if color is being claimed as a feature of the mark.

In International Class 041, the mark was first used by the applicant or the applicant's related company or licensee predecessor in interest at least as early as 00/00/1931, and first used in commerce at least as early as 00/00/1995, and is now in use in such commerce. The applicant is submitting one(or more) specimen(s)

showing the mark as used in commerce on or in connection with any item in the class of listed goods/services, consisting of a(n) Screenshots from Applicant's website, newspaper clippings, and photographs showing Applicant's mark prominently displayed in connection with the services.
Specimen-1 [SPE0-1-4178094-20200217135556237299_._PRIVATE_BOURBON_TASTING_FOR_KENTUCKY_COLONELS.jpg ]
Specimen-2 [SPE0-1-4178094-20200217135556237299_._KY_Col_Newspaper_1995.jpg ]
Specimen-3 [SPE0-4178094-20200217135556237299_._11_-_Day_of_Service_-_Kentucky_Colonels_-_www.kycolonels.org.pdf ]
Specimen-4 [SPE0-1-4178094-20200217135556237299_._ireShot_Capture_012_-_Kentucky_Colonels_-_www.kycolonels.org.pdf ]


**Claim of Active Prior Registration(s)**
The applicant claims ownership of active prior U.S. Registration Number(s) 2812681 and 4596450.


The owner's/holder's proposed attorney information: Michelle Browning Coughlin. Other appointed attorneys are Matthew A. Williams, Max Bridges, Julie A. Laemmle. Michelle Browning Coughlin of Wyatt Tarrant & Combs LLP, is a member of the Kentucky bar, admitted to the bar in 2009, bar membership no. 93081, and the attorney(s) is located at
  400 West Market St, Suite 2000
  Louisville, Kentucky 40202
  United States
  502-562-7561(phone)
  502-589-0309(fax)
  mcoughlin@wyattfirm.com


Michelle Browning Coughlin submitted the following statement: The attorney of record is an active member in good standing of the bar of the highest court of a U.S. state, the District of Columbia, or any U.S. Commonwealth or territory.

 The applicant's current Correspondence Information:
   Michelle Browning Coughlin
   PRIMARY EMAIL FOR CORRESPONDENCE: mcoughlin@wyattfirm.com
   SECONDARY EMAIL ADDRESS(ES) (COURTESY COPIES): dlaney@wyattfirm.com;
TRADEMARKS@WYATTFIRM.COM


 **Requirement for Email and Electronic Filing:** I understand that a valid email address must be maintained by the applicant owner/holder and the applicant owner's/holder's attorney, if appointed, and that all official trademark correspondence must be submitted via the Trademark Electronic Application System (TEAS).
 A fee payment in the amount of $225 has been submitted with the application, representing payment for 1 class(es).

<div align="center">

**Declaration**

</div>

 [X] **Basis:**
        **If the applicant is filing the application based on use in commerce under 15 U.S.C. § 1051(a):**

- The signatory believes that the applicant is the owner of the trademark/service mark sought to be registered;
- The mark is in use in commerce on or in connection with the goods/services in the application;
- The specimen(s) shows the mark as used on or in connection with the goods/services in the application; and
- To the best of the signatory's knowledge and belief, the facts recited in the application are accurate.

**And/Or**
**If the applicant is filing the application based on an intent to use the mark in commerce under 15 U.S.C. § 1051(b), § 1126(d), and/or § 1126(e):**

- The signatory believes that the applicant is entitled to use the mark in commerce;
- The applicant has a bona fide intention to use the mark in commerce on or in connection with the goods/services in the application; and
- To the best of the signatory's knowledge and belief, the facts recited in the application are accurate.

[X]  To the best of the signatory's knowledge and belief, no other persons, except, if applicable, concurrent users, have the right to use the mark in commerce, either in the identical form or in such near resemblance as to be likely, when used on or in connection with the goods/services of such other persons, to cause confusion or mistake, or to deceive.

[X]  To the best of the signatory's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, the allegations and other factual contentions made above have evidentiary support.

[X]  The signatory being warned that willful false statements and the like are punishable by fine or imprisonment, or both, under 18 U.S.C. § 1001, and that such willful false statements and the like may jeopardize the validity of the application or submission or any registration resulting therefrom, declares that all statements made of his/her own knowledge are true and all statements made on information and belief are believed to be true.

**Declaration Signature**

Signature: /MBC/   Date: 02/17/2020
Signatory's Name: Michelle Browning Coughlin
Signatory's Position: Attorney of record, Kentucky bar member
Signatory's Phone Number: 502-562-7561

---

Thank you,

The TEAS support team
Mon Feb 17 15:00:58 ET 2020
STAMP: USPTO/FTK-4.17.80.94-20200217150058043233-88800035-
710d55210a9f87b948240c2a14c4125a44450525514ffe6e933b291284b9581e5f-DA-00574960-
20200217145136602336

**Watts, Julie**

| | |
|---|---|
| **From:** | TEAS@uspto.gov |
| **Sent:** | Monday, February 17, 2020 3:04 PM |
| **To:** | Coughlin, Michelle; Laney, Deb; Trademarks |
| **Subject:** | Serial number 88800038: Received Your Trademark/Service Mark Application, Principal Register |

**Filing Receipt for Trademark/Service Mark Application for Registration
on the Principal Register
and Next Steps in the Application Process**

Thank you for submitting your trademark application to the U.S. Patent and Trademark Office (USPTO). This filing receipt confirms your mark and serial number, describes next steps in the application process, and includes the information submitted in your application. Please read this receipt carefully and keep a copy for your records.

For an overview of important things to know after filing your application, visit our website to read the After You File page and watch video number 9 "After You File."

**1. Your mark.** KENTUCKY COLONELS (Standard Characters, mark.jpg)
The literal element of the mark consists of KENTUCKY COLONELS. The mark consists of standard characters, without claim to any particular font style, size, or color.

**2. Your serial number.** Your application was assigned serial number '88800038'. You must refer to your serial number in all communications about your application.

**3. What happens next—legal examination.** Your mark will not be registered automatically. In approximately three months, your application will be assigned to a USPTO examining attorney for review. The attorney will determine if your application meets all applicable legal requirements, and if it doesn't you will be notified in an email with a link to the official Office action (official letter from the USPTO). Visit our website for an explanation of application process timelines.

If your mark includes a design element, we will assign it one or more design search codes. We will notify you of these codes within the next few weeks and you can suggest that we add or delete a design search code from your file.

**4. Keep your addresses current in USPTO records.** We do not extend filing deadlines if you do not receive USPTO mail or email. If your postal address or email address changes, you must update the correspondence or owner's address using the address forms on our website.

**5. Check your application status in our database every three to four months.** To be sure that you don't miss an important email from us, and to avoid the possible abandonment of your application, check your application status and review your documents in our database, Trademark Status and Document Retrieval (TSDR), every three to four months.

**6. Warning about private companies offering trademark-related services.** Private companies may send you communications that resemble official USPTO communications. These private companies are not associated with the USPTO. All official correspondence will be from the "United States Patent and

Trademark Office" in Alexandria, Virginia, and from emails with the domain "uspto.gov." If you are unsure about whether the correspondence is from us, check your records in our database, TSDR. Visit our website for more information on trademark-related communications that may resemble official USPTO communications.

**7. Questions?** Please visit our website, email us, or call us at 1-800-786-9199 and select option 1.

**8.  Application data.** If you find an error in the data below, visit the After You File page on our website for information on correcting errors.


**The information submitted in the application appears below:**

Under the Paperwork Reduction Act of 1995 no persons are required to respond to a collection of information unless it displays a valid OMB control number.
PTO Form 1478 (Rev 09/2006)
OMB No. 0651-0009 (Exp 02/28/2021)

Trademark/Service Mark Application, Principal Register
**TEAS Plus Application**
*NOTE: Data fields with the * are mandatory. The wording "(if applicable)" appears where the field is only mandatory under the facts of the particular application.*

The table below presents the data as entered.

| Input Field | Entered |
|---|---|
| **TEAS Plus** | **YES** |
| **MARK INFORMATION** | |
| **\*MARK** | mark.jpg |
| **\*STANDARD CHARACTERS** | YES |
| **USPTO-GENERATED IMAGE** | YES |
| **LITERAL ELEMENT** | KENTUCKY COLONELS |
| **\*MARK STATEMENT** | The mark consists of standard characters, without claim to any particular font style, size, or color. |
| **APPLICANT INFORMATION** | |
| **\*OWNER OF MARK** | The Honorable Order of Kentucky Colonels, Inc. |
| **DBA/AKA/TA/FORMERLY** | AKA Kentucky Colonels |
| **\*MAILING ADDRESS** | 943 South 1st Street |
| **\*CITY** | Louisville |
| **\*STATE**<br>**(Required for U.S. applicants)** | Kentucky |
| **\*COUNTRY/REGION/JURISDICTION/U.S. TERRITORY** | United States |

| | |
|---|---|
| **\*ZIP/POSTAL CODE**<br>**(Required for U.S. and certain international addresses)** | 40203 |
| **\*EMAIL ADDRESS** | scrose@kycolonels.org |
| **LEGAL ENTITY INFORMATION** | |
| **\*TYPE** | non-profit corporation |
| **\***<br>**STATE/COUNTRY/REGION/JURISDICTION/U.S. TERRITORY WHERE LEGALLY ORGANIZED** | United States |
| **GOODS AND/OR SERVICES AND BASIS INFORMATION** | |
| **\*INTERNATIONAL CLASS** | 035 |
| **\*IDENTIFICATION** | Association services, namely, promoting the interests of **individuals selected by the Governor of the Commonwealth of Kentucky to receive an honorary commission**; Promoting the interests of **members of the organization** by means of **club services** |
| **\*FILING BASIS** | SECTION 1(a) |
| **FIRST USE ANYWHERE DATE** | At least as early as 00/00/1931 |
| **FIRST USE IN COMMERCE DATE** | At least as early as 00/00/1951 |
| **SPECIMEN FILE NAME(S)** | SPE0-4178094-202002171355 56237299_._ireShot_Captur e_012_-_Kentucky_Colonels |
| | SPE0-4178094-202002171355 56237299_._Newspaper_arti cle_KY_Col_1991.jpg |
| | SPE0-4178094-202002171355 56237299_._KY_Col_Newspap er_1995.jpg |
| | SPE0-4178094-202002171355 56237299_._PRIVATE_BOURBO N_TASTING_FOR_KENTUCKY_CO |
| **SPECIMEN DESCRIPTION** | Photos of events and screenshots of Applicant's website showing mark prominently displayed in connection with various services offered to members |
| **ADDITIONAL STATEMENTS SECTION** | |
| **\*TRANSLATION**<br>**(if applicable)** | |
| **\*TRANSLITERATION**<br>**(if applicable)** | |
| **\*CLAIMED PRIOR REGISTRATION**<br>**(if applicable)** | The applicant claims ownership of active prior U.S. Registration Number(s) 2812681 and 4596450. |

3

| | |
|---|---|
| **\*CONSENT (NAME/LIKENESS)** (if applicable) | |
| **\*CONCURRENT USE CLAIM** (if applicable) | |
| **ATTORNEY INFORMATION** | |
| **NAME** | Michelle Browning Coughlin |
| **ATTORNEY BAR MEMBERSHIP NUMBER** | 93081 |
| **YEAR OF ADMISSION** | 2009 |
| **U.S. STATE/ COMMONWEALTH/ TERRITORY** | Kentucky |
| **FIRM NAME** | Wyatt Tarrant & Combs LLP |
| **STREET** | 400 West Market St, Suite 2000 |
| **CITY** | Louisville |
| **STATE** | Kentucky |
| **COUNTRY/REGION/JURISDICTION/U.S. TERRITORY** | United States |
| **ZIP/POSTAL CODE** | 40202 |
| **PHONE** | 502-562-7561 |
| **FAX** | 502-589-0309 |
| **EMAIL ADDRESS** | mcoughlin@wyattfirm.com |
| **OTHER APPOINTED ATTORNEY** | Matthew A. Williams, Max Bridges, Julie A. Laemmle |
| **CORRESPONDENCE INFORMATION** | |
| **NAME** | Michelle Browning Coughlin |
| **PRIMARY EMAIL ADDRESS FOR CORRESPONDENCE** | mcoughlin@wyattfirm.com |
| **SECONDARY EMAIL ADDRESS(ES) (COURTESY COPIES)** | dlaney@wyattfirm.com; TRADEMARKS@WYATTFIRM.COM |
| **FEE INFORMATION** | |
| **APPLICATION FILING OPTION** | TEAS Plus |
| **NUMBER OF CLASSES** | 1 |
| **APPLICATION FOR REGISTRATION PER CLASS** | 225 |
| **\*TOTAL FEES DUE** | 225 |
| **\*TOTAL FEES PAID** | 225 |
| **SIGNATURE INFORMATION** | |

| * SIGNATURE | /MBC/ |
|---|---|
| * SIGNATORY'S NAME | Michelle Browning Coughlin |
| * SIGNATORY'S POSITION | Attorney of record, Kentucky bar member |
| SIGNATORY'S PHONE NUMBER | 502-562-7561 |
| * DATE SIGNED | 02/17/2020 |

Under the Paperwork Reduction Act of 1995 no persons are required to respond to a collection of information unless it displays a valid OMB control number.
PTO Form 1478 (Rev 09/2006)
OMB No. 0651-0009 (Exp 02/28/2021)

## Trademark/Service Mark Application, Principal Register

## TEAS Plus Application

### Serial Number: 88800038
### Filing Date: 02/17/020

## To the Commissioner for Trademarks:

The applicant, The Honorable Order of Kentucky Colonels, Inc., AKA Kentucky Colonels, a non-profit corporation legally organized under the laws of United States, having an address of

    943 South 1st Street
    Louisville, Kentucky 40203
    United States
    scrose@kycolonels.org

requests registration of the trademark/service mark identified above in the United States Patent and Trademark Office on the Principal Register established by the Act of July 5, 1946 (15 U.S.C. Section 1051 et seq.), as amended, for the following:

International Class 035: Association services, namely, promoting the interests of individuals selected by the Governor of the Commonwealth of Kentucky to receive an honorary commission; Promoting the interests of members of the organization by means of club services

Use in Commerce: The applicant is using the mark in commerce on or in connection with the identified goods/services. The applicant attaches, or will later submit, one specimen as a JPG/PDF image file showing the mark as used in commerce on or in connection with any item in the class of listed goods/services, regardless of whether the mark itself is in the standard character format or is a stylized or design mark. The specimen image file may be in color, and the image must be in color if color is being claimed as a feature of the mark.

5

In International Class 035, the mark was first used by the applicant or the applicant's related company or licensee predecessor in interest at least as early as 00/00/1931, and first used in commerce at least as early as 00/00/1951, and is now in use in such commerce. The applicant is submitting one(or more) specimen(s) showing the mark as used in commerce on or in connection with any item in the class of listed goods/services, consisting of a(n) Photos of events and screenshots of Applicant's website showing mark prominently displayed in connection with various services offered to members.
Specimen-1 [SPE0-4178094-20200217135556237299_._ireShot_Capture_012_-_Kentucky_Colonels_-_www.kycolonels.org.pdf ]
Specimen-2 [SPE0-4178094-20200217135556237299_._Newspaper_article_KY_Col_1991.jpg ]
Specimen-3 [SPE0-4178094-20200217135556237299_._KY_Col_Newspaper_1995.jpg ]
Specimen-4 [SPE0-4178094-20200217135556237299_._PRIVATE_BOURBON_TASTING_FOR_KENTUCKY_COLONELS.jpg ]

**Claim of Active Prior Registration(s)**
The applicant claims ownership of active prior U.S. Registration Number(s) 2812681 and 4596450.

The owner's/holder's proposed attorney information: Michelle Browning Coughlin. Other appointed attorneys are Matthew A. Williams, Max Bridges, Julie A. Laemmle. Michelle Browning Coughlin of Wyatt Tarrant & Combs LLP, is a member of the Kentucky bar, admitted to the bar in 2009, bar membership no. 93081, and the attorney(s) is located at
   400 West Market St, Suite 2000
   Louisville, Kentucky 40202
   United States
   502-562-7561(phone)
   502-589-0309(fax)
   mcoughlin@wyattfirm.com

Michelle Browning Coughlin submitted the following statement: The attorney of record is an active member in good standing of the bar of the highest court of a U.S. state, the District of Columbia, or any U.S. Commonwealth or territory.

 The applicant's current Correspondence Information:
   Michelle Browning Coughlin
    PRIMARY EMAIL FOR CORRESPONDENCE: mcoughlin@wyattfirm.com
    SECONDARY EMAIL ADDRESS(ES) (COURTESY COPIES): dlaney@wyattfirm.com;
 TRADEMARKS@WYATTFIRM.COM

 **Requirement for Email and Electronic Filing:** I understand that a valid email address must be maintained by the applicant owner/holder and the applicant owner's/holder's attorney, if appointed, and that all official trademark correspondence must be submitted via the Trademark Electronic Application System (TEAS).
A fee payment in the amount of $225 has been submitted with the application, representing payment for 1 class(es).

<p align="center">**Declaration**</p>

 [X] **Basis:**
        **If the applicant is filing the application based on use in commerce under 15 U.S.C. § 1051(a):**

- The signatory believes that the applicant is the owner of the trademark/service mark sought to be registered;
- The mark is in use in commerce on or in connection with the goods/services in the application;
- The specimen(s) shows the mark as used on or in connection with the goods/services in the application; and
- To the best of the signatory's knowledge and belief, the facts recited in the application are accurate.

**And/Or**
**If the applicant is filing the application based on an intent to use the mark in commerce under 15 U.S.C. § 1051(b), § 1126(d), and/or § 1126(e):**

- The signatory believes that the applicant is entitled to use the mark in commerce;
- The applicant has a bona fide intention to use the mark in commerce on or in connection with the goods/services in the application; and
- To the best of the signatory's knowledge and belief, the facts recited in the application are accurate.

[X] To the best of the signatory's knowledge and belief, no other persons, except, if applicable, concurrent users, have the right to use the mark in commerce, either in the identical form or in such near resemblance as to be likely, when used on or in connection with the goods/services of such other persons, to cause confusion or mistake, or to deceive.

[X] To the best of the signatory's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, the allegations and other factual contentions made above have evidentiary support.

[X] The signatory being warned that willful false statements and the like are punishable by fine or imprisonment, or both, under 18 U.S.C. § 1001, and that such willful false statements and the like may jeopardize the validity of the application or submission or any registration resulting therefrom, declares that all statements made of his/her own knowledge are true and all statements made on information and belief are believed to be true.

**Declaration Signature**

Signature: /MBC/   Date: 02/17/2020
Signatory's Name: Michelle Browning Coughlin
Signatory's Position: Attorney of record, Kentucky bar member
Signatory's Phone Number: 502-562-7561

---

Thank you,

The TEAS support team
Mon Feb 17 15:04:16 ET 2020
STAMP: USPTO/FTK-4.17.80.94-20200217150415959066-88800038-710b0f5a5a9acc4856c50fad7a13a5a31d43cd95674791ef67749825b8f3b4d5e-DA-04154985-20200217150139845524

| From: | TMOfficialNotices@USPTO.GOV |
|---|---|
| Sent: | Wednesday, December 19, 2012 11:01 PM |
| To: | whollander@wyattfirm.com |
| Subject: | Trademark RN 1227024: Official Notice of Acceptance and Renewal under Sections 8 and 9 of the Trademark Act |

**Serial Number:** 73299122
**Registration Number:** 1227024
**Registration Date:** Feb 8, 1983
**Mark:** HONORABLE ORDER OF KENTUCKY COLONELS
**Owner:** Honorable Order of Kentucky Colonels, In, etc

Dec 19, 2012

## NOTICE OF ACCEPTANCE UNDER SECTION 8

The declaration of use or excusable nonuse filed for the above-identified registration meets the requirements of Section 8 of the Trademark Act, 15 U.S.C. §1058. **The Section 8 declaration is accepted.**

## NOTICE OF REGISTRATION RENEWAL UNDER SECTION 9

The renewal application filed for the above-identified registration meets the requirements of Section 9 of the Trademark Act, 15 U.S.C. §1059. **The registration is renewed.**

**The registration will remain in force for the class(es) listed below for the remainder of the ten-year period, calculated from the registration date, unless canceled by an order of the Commissioner for Trademarks or a Federal Court.**

**Class(es):**
042

TRADEMARK SPECIALIST
POST-REGISTRATION DIVISION
571-272-9500

### REQUIREMENTS FOR MAINTAINING REGISTRATION IN SUCCESSIVE TEN-YEAR PERIODS

**WARNING: Your registration will be canceled if you do not file the documents below during the specified time periods.**

**What and When to File:** You must file a declaration of use (or excusable nonuse) **and** an application for renewal between every 9th and 10th-year period, calculated from the registration date. See 15 U.S.C. §§1058, 1059.

**Grace Period Filings**

The above documents will be considered as timely if filed within six months after the deadlines listed above with the payment of an additional fee.

**\*\*\*The USPTO WILL NOT SEND ANY FURTHER NOTICE OR REMINDER OF THESE REQUIREMENTS. THE REGISTRANT SHOULD CONTACT THE USPTO ONE YEAR BEFORE THE EXPIRATION OF THE TIME PERIODS SHOWN ABOVE TO DETERMINE APPROPRIATE REQUIREMENTS AND FEES.\*\*\***

To view this notice and other documents for this application on-line, go to http://tdr.uspto.gov/search.action?sn=73299122. NOTE: This notice will only be available on-line the next business day after receipt of this e-mail.

Int. Cl.: 42

Prior U.S. Cl.: 100

## United States Patent and Trademark Office

**Reg. No. 1,227,024**
Registered Feb. 8, 1983

### SERVICE MARK
Principal Register

## HONORABLE ORDER OF KENTUCKY COLONELS

The Honorable Order of Kentucky Colonels, Inc. (Kentucky corporation)
5737 Watterson Trail
Louisville, Ky. 40291

For: ELEEMOSYNARY SERVICES—NAMELY, FOUNDING OF SCHOLARSHIP, EQUIPPING PLAYGROUNDS AND THE LIKE AND TO COLLECT HISTORICAL AND CULTURAL MATERIAL PERTAINING TO COMMONWEALTH OF KENTUCKY, in CLASS 42 (U.S. Cl. 100).

First use May 10, 1957; in commerce May 10, 1957.

Sec. 2(f).

Ser. No. 299,122, filed Mar. 2, 1981.

JAMES H. JOHNSON, Examining Attorney

# United States of America

## United States Patent and Trademark Office

# HONORABLE ORDER OF
# KENTUCKY COLONELS

**Reg. No. 4,939,909**
**Registered Apr. 19, 2016**
**Int. Cl.: 36**

**SERVICE MARK**

**PRINCIPAL REGISTER**

THE HONORABLE ORDER OF KENTUCKY COLONELS, INC. (KENTUCKY CORPORATION)
SUITE 14
1717 ALLIANT AVENUE
LOUISVILLE, KY 40299

FOR: CHARITABLE SERVICES, NAMELY, PROVIDING FINANCIAL ASSISTANCE FOR
PROGRAMS AND SERVICES OF OTHERS; PROVIDING EDUCATIONAL SCHOLARSHIPS
, IN CLASS 36 (U.S. CLS. 100, 101 AND 102).

FIRST USE 5-10-1957; IN COMMERCE 5-10-1957.

THE MARK CONSISTS OF STANDARD CHARACTERS WITHOUT CLAIM TO ANY PAR-
TICULAR FONT, STYLE, SIZE, OR COLOR.

OWNER OF U.S. REG. NOS. 1,227,024, 2,812,681, AND 4,596,450.

SEC. 2(F).

SER. NO. 86-690,496, FILED 7-12-2015.

CHRISTINA RIEPEL, EXAMINING ATTORNEY



Director of the United States
Patent and Trademark Office

## REQUIREMENTS TO MAINTAIN YOUR FEDERAL TRADEMARK REGISTRATION

### WARNING: YOUR REGISTRATION WILL BE CANCELLED IF YOU DO NOT FILE THE DOCUMENTS BELOW DURING THE SPECIFIED TIME PERIODS.

**Requirements in the First Ten Years\***
**What and When to File:**

> *First Filing Deadline:* You must file a Declaration of Use (or Excusable Nonuse) between the 5th and 6th years after the registration date. *See* 15 U.S.C. §§1058, 1141k. If the declaration is accepted, the registration will continue in force for the remainder of the ten-year period, calculated from the registration date, unless cancelled by an order of the Commissioner for Trademarks or a federal court.

> *Second Filing Deadline:* You must file a Declaration of Use (or Excusable Nonuse) **and** an Application for Renewal between the 9th and 10th years after the registration date.\* *See* 15 U.S.C. §1059.

**Requirements in Successive Ten-Year Periods\***
**What and When to File:**

> You must file a Declaration of Use (or Excusable Nonuse) **and** an Application for Renewal between every 9th and 10th-year period, calculated from the registration date.\*

**Grace Period Filings\***

The above documents will be accepted as timely if filed within six months after the deadlines listed above with the payment of an additional fee.

**\*ATTENTION MADRID PROTOCOL REGISTRANTS:** The holder of an international registration with an extension of protection to the United States under the Madrid Protocol must timely file the Declarations of Use (or Excusable Nonuse) referenced above directly with the United States Patent and Trademark Office (USPTO). The time periods for filing are based on the U.S. registration date (not the international registration date). The deadlines and grace periods for the Declarations of Use (or Excusable Nonuse) are identical to those for nationally issued registrations. *See* 15 U.S.C. §§1058, 1141k. However, owners of international registrations do not file renewal applications at the USPTO. Instead, the holder must file a renewal of the underlying international registration at the International Bureau of the World Intellectual Property Organization, under Article 7 of the Madrid Protocol, before the expiration of each ten-year term of protection, calculated from the date of the international registration. *See* 15 U.S.C. §1141j. For more information and renewal forms for the international registration, see http://www.wipo.int/madrid/en/.

**NOTE: Fees and requirements for maintaining registrations are subject to change. Please check the USPTO website for further information. With the exception of renewal applications for registered extensions of protection, you can file the registration maintenance documents referenced above online at** http://www.uspto.gov.

**NOTE: A courtesy e-mail reminder of USPTO maintenance filing deadlines will be sent to trademark owners/holders who authorize e-mail communication and maintain a current e-mail address with the USPTO. To ensure that e-mail is authorized and your address is current, please use the Trademark Electronic Application System (TEAS) Correspondence Address and Change of Owner Address Forms available at** http://www.uspto.gov.

# EXHIBIT 2

# TO MOTION FOR
# RESTRAINING ORDER



Friday, February 7, 2020

# Kentucky Colonels International: Restoring Traditions and Customs

## Defending the Ideals of the Kentucky Colonel

### Becoming a Kentucky Colonel and Ambassador of Goodwill

*Editorial by Col. David J. Wright*

There is really nothing much more important to me today than being a Kentucky colonel and working as a recognized goodwill ambassador with the United Nations Sustainable Development Goals Agenda.

Becoming a Kentucky colonel is an esteemed honor, one that I hold in the highest regard. While some people like to joke with me about it, when they learn I am a Kentucky colonel, I also know they



Commonwealth of Kentucky Coat of Arms (1876)

are kidding around and their jokes are in good jest and humor, especially when among close friends. It is not a tongue-in-cheek award like the Admiral of Nebraska, or something that should be

Case 3:20-cv-00023-DJH-DW Document # 42 Filed 03/25/23 Page 65 of 283 PageID #: 2026

taken lightly by those who are commissioned. Becoming a Kentucky colonel is a great honor in-deed and legal status denoted with letters patent.

I was conferred the lifetime commission in 1996 for bringing attention to the Commonwealth of Kentucky by Governor Paul Patton. The governor recognized me for a program that I had developed for Arbor Day and distributing millions of tree seedlings across the United States for urban reforestation to homeowners and organizations, a program I began in 1994 in Lexington, Kentucky following an ice storm that devastated the area. It came as a great surprise to me at the time and was presented to me by a good friend, the Honorable Col. Judge Ray Corns.

Being a Kentucky colonel has been more important to me than even my university degree, while I may have learned much of what I know from studying philosophy, it is not something I have ever bragged about much or considered noteworthy in my work as an international goodwill ambassador, although I am sure it has been a bonus to my critical thinking process. One thing I do know is that it is "indeed" a great privilege to hold the honorable title of the Kentucky Colonel.

## Starting Kentucky Colonels International (1998)

I was so impressed with becoming a Kentucky colonel that while operating the tree program, I decided to start an unincorporated association (using the skills that I learned as a web developer with the tree program, which by then was online) for others that were recognized as Kentucky colonels by the state's governor. In the process of developing the organization I discovered that the Honorable Order of Kentucky Colonels, to which, I implicitly belonged, was actually a private charitable organization in itself. However, when I became a Kentucky colonel in 1996, I was led to believe that it was somehow a part of the state, since the state sent me the initial information regarding them.

The next thing I knew after becoming a colonel, I began receiving frequent solicitations in the mail for donations from the organization several times a year; to which I donated on several occasions.

In setting up the membership organization having some professional experience in the law, research ability, and an intrepid nature I went to the state capitol to research more and discovered that the Honorable Order had **Amended and Restated Articles of Incorporation** on file there, upon reading them I discovered the organization has no members. This confused me somewhat as they had sent me a paper membership card, which I laminated each year. This led me to visit their office, review government archives, and I even went to the public

Case 3:20-cv-00032-GFVT Document 42 Filed 03/25/23 Page 66 of 283 PageID #: 2907
Case 3:20-cv-00032-GFVT Document 4-2 Filed 02/21/20 Page 4 of 46 PageID #: 2117

library in Louisville to learn all that I could about the organization and the distinguished honor that I was awarded.

What I discovered at the time, was that all Kentucky colonels were automatically considered their members, although the organization *did not have meetings or allow members to actively participate in the decisions made by the operations, management, or administration of the organization* like other membership associations. Their main activity was strictly charitable in nature, raising money for the Good Works Fund, holding an annual fundraising barbeque, and going to the Kentucky Derby; all of which are very nice, but not exactly what I thought being a Kentucky colonel was all about. Based on the research I performed justified me continuing with the endeavor of developing the organization I was forming online at [colonel.org] which was focused on developing membership services like a registry and websites for our members, at the time we already had nearly 100 members.

Considering all of the facts that I discovered about the Honorable Order it is probably more appropriate that they call their so-called members, 'donors or supporters', especially since they do not have bylaws that could be read by anyone except their officers, which they refer to as their Generals. It all sounded official enough, as it already led me to assume that I was part of something important that was really not as official as I believed it was. Looking back at the website on the Internet Archive and the chronological events surrounding its development, I had also offered to volunteer to help them develop a website prior to our beginning in 1998, an offer which they flatly rejected stating that they "did not need a website."

As it seems they like to call their donors and supporters, their members, but do not afford them any privilege or voice to express opinions or participate in any meaningful way. Legally, a membership organization in the United States under the law must provide bylaws to their members, allow members to control the organization, and give members a voice through providing voting privileges. None of these things were true about the Honorable Order, then or now.

## Moving on with a Kentucky Colonel Feather in my Hat

In 2000 and 2001, I received letters warning and threatening me from the legal counsel for "The Honorable Order of Kentucky Colonels, Inc. stating **that the website I created was illegal, violated their trademark rights, and that I should cease and desist**. I never replied or acknowledged the letters; actually, I did not think much of it at all, as I was in a transition period in my life to move overseas and work as an ambassador for the City of Caracas in Venezuela. So, I let

Case 3:20-cv-00023-JHM   Document 42   Filed 03/25/20   Page 67 of 283 PageID #: 2928

the website I developed expire while I published a message on the website for the members suggesting they support the Honorable Order of Kentucky Colonels. In the meantime I moved to Venezuela to collaborate with the mayor of a city of 5 million people as a professional ambassador to the United States in a Sister Cities project from Caracas to Miami and Fort Lauderdale.

A few years after becoming an official ambassador (thanks to my Kentucky colonelcy), the city's mayor was ousted by the socialist government currently running Venezuela. This caused me to get an extra bitter taste for politics (something I had already acquired in Kentucky), so I moved on to the private sector working as a business consultant and analyst. One of the things that impressed Venezuelan business owners the most was the fact that I was a Kentucky colonel, more so than my experience as their city's former goodwill ambassador. It was at that time that I vowed never to represent or be involved in political or religious agendas or ideals again.

## A New Start for Kentucky Colonels International

Several years later with the advent of social media, I decided to join Facebook and one of the first things I found online were groups with other Kentucky colonels so I joined all of them. The following year I became the administrator of one of them, and in 2008 I began to convince other group administrators and members to become part of a new objective I started online called the Model United Nations Social Networking Embassy (MUNSNE), since I recognized them as Kentucky's goodwill ambassadors. MUNSNE evolved to become Globcal International which continues today. It was led by myself and other aspiring social media advocates with the ideal of spreading goodwill to affect social change. The organization was so effective in the social media at the time, we went to meet with President Barack Obama at the Summit of the Americas in Trinidad in 2009 for his endorsement.

Globcal International became self-sufficient and it was quickly developing new programs with many others. I decided to focus on the formation of my own project in the Northern Amazon called Ekobius in 2011, while remaining as one of the organization's ambassadors and the administrator of **Kentucky Colonels International**.

Perhaps one of the worst decisions I have ever made with Globcal International, was I decided to give the opportunity of serving as the president to an inspiring young idealist who had great brave ideas he wanted to implement which I could not achieve at the time being located in Venezuela. When we changed the administration to recognize a new presidential figurehead from Saudi Arabia, he

incorporated Globcal International in Washington, DC. in late 2010 and the effort began to take off further; however because he allowed his personal endeavors to get in the way of the organization, the gusto soon fizzled and in late 2012 I took the organization back to reform it, decentralizing it as an unincorporated offshore organization with several of the original members, which continues today under my authority. The organization has also been reincorporated as of last week in Kentucky as part of the organization that I founded to distribute trees.

On the other hand, one of the best decisions I ever made early on in the formation was when I decided to relaunch Kentucky Colonels International in 2009 as one of the social media objectives of the groups I belonged to on Facebook. Many of the people we have today in Globcal International are Kentucky colonels, some of whom have become our most valued members.

In retrospect I made a series of high risk decisions starting with leaving Kentucky and moving to Venezuela, (risks that most are fearful of in many respects) but nonetheless, by never giving up on my ideals and doing what is right for others, the strongest and most worthwhile endeavors remain through my persistence and determination.

## Our Motto - One Good Turn Deserves Another

In the *reestablishment* of **Kentucky Colonels International** as an informal objective and unincorporated membership association we were once again becoming very active on Facebook. In 2016, we were approached again by legal counsel representing "The Honorable Order of Kentucky Colonels, Inc." who was insisting, now 15 years later, that we were infringing on their trademark rights again, so we agreed to post a disclaimer on our Facebook page which at the time we understood was to be reciprocal. While we have made this abundantly clear to those who join our groups and read our page, they have never once reciprocated on their website or Facebook page.

In 2018, when our Facebook members began discussing online that we were interested in establishing a registry for Kentucky colonels because they were interested in being better known for their commissions and the reformation of a membership development; we were approached by the Honorable Order's Executive Director, Col. Sherry Crose who expressed a desire to work together with us on the project we were planning and asked us to postpone our development until January of 2019, which we agreed to do. After all they are the kings of the realm, earned the respect of many famous Kentucky colonels, and were being provided all the names and addresses of all the new Kentucky colonels being commissioned by the Governor

Case 3:23-cv-00083-DJH   Document #: 2   Filed 03/25/23   Page 69 of 283 PageID #: 2230
Case 3:20-cv-00132-RGJ   Document #: 1-2   Filed 02/21/20   Page 7 of 16 PageID #: 44

through the office of the Secretary of State under state policy. However after not receiving any further collaboration or messages from them, we decided to move forward with the development later in the year.

Around the same time in November 2019 I also wrote an article on the Globcal International blog expressing our position on the current nomination procedure and potential impropriety that we began to address over these changes made in the procedure which required that *Kentucky colonels make donations to the Honorable Order to be able to nominate new colonels, and which needed to be done online instead of in writing*. These changes were implemented under former Governor Bevin and in my opinion (in retrospect) **were done to give deference to the organization**, *without regard to our formation or any other legitimate organizations* that were set up by Kentucky colonels (each with their legal letters patent) inside Kentucky or abroad. His actions, however, could have been based on the lack of understanding and knowledge which he admitted when he suspended the nominations in 2016 for review by his office, prior to changing the policy.

The first one to sign up for our registry project and membership program being developed was the HOKC Executive Director, Herself, Col. Sherry Crose who submitted the fee, but neglected to complete the form requesting personal information. All the other registrants did complete the form, however we discovered some errors in the form and the process, so we temporarily suspended the program. Meanwhile in late December, I decided to initiate a discussion with the Honorable Order to either assist us in our project or perhaps merge our membership program into their own organization. While contacting the executive director to inform her that she neglected to complete the registry form, after some greetings I suggested we explore the possibilities of a merger to allow them to gradually assume control over our Facebook groups and the online registry program; the HOKC executive requested that we submit a proposal for review by the Generals (their Board of Trustees).

## Never Underestimate Goodwill and Integrity

Over the years as a Kentucky colonel and an ambassador I learned a great deal about honor, respect, transparency, and integrity; which in a sense made me into a watchdog looking out for corrupt and inappropriate behavior to protect the organizations that I founded. Even with volunteers I learned to become very cautious and looked into the background of most of our members, I was careful not to permit those who were involved in shaky political or religious agendas as it could tarnish our image.

In the process of preparing the proposal we discovered that the

2/18/2020
Kentucky Colonels International: Restoring Traditions and Customs | Kentucky Colonels International

Case 3:20-cv-00092-JRW Document 42 Filed 03/25/20 Page 70 of 283 PageID #: 2991
Case 3:20-cv-00132-DJH-CHL Document 1-2 Filed 02/21/20 Page 8 of 261 PageID #: 2931

Facebook groups we have online were infiltrated by HOKC Generals, the president of their organization, the social media liaison, their grant administrator and other loyalists, none of whom ever presented their commissions, participated in the social media forum, or made any posts in either of the two groups we administer. This gave us reason to believe that they were there snooping on our membership activities, as informants and potential disruptors rather than as our own members. I learned this when I tried to propose a longer, more qualifying method for nominations to the groups that was used by previous governors suggesting written nominations by postal mail, when the organization's grants administrator spoke up commenting defending Governor Bevin's (their own) policy in one of the groups. As a result, the decision was made to remove all of the HOKC staff we could identify prior to submitting the proposal. Before we submitted our proposal to merge, we also reviewed many articles, an op-ed piece by their executive director, and many other documents that the organization has distributed over the decades to better include their needs in the proposal. Nonetheless the proposal we submitted on January 13th was rejected by the 20th, without a counter offer or any collaboration on their part with our membership program.

All of their activities taken against us and decisions made were contrary to the spirit of the state motto, "United We Stand, Divided We Fall." In my opinion, after so many years of controlling the ideal of what a Kentucky colonel is and denoting what a Kentucky colonel should do or does; they are acting as if they the king of the castle or elitists, which they should not. All of their intentions have been focused on alienating us rather than embracing the ideals and altruistic benevolent values which most Kentucky colonels collectively share.

So now here we are now, turning the table around after suffering great harm, being misled, spied on, and mistreated following numerous threats by lawyers advocating for dominance over thousands upon thousands of Kentucky colonels that have been granted "letters patent" to serve as the state's goodwill ambassadors (the only official duty they can exercise). This now puts us in a position to stand up to the HOKC without being bullied anymore or *deceived into believing that our only duty and privilege as Kentucky colonels is to fund their charity and support the causes selected by their generals.*

Kentucky is part of the United States and in the United States we have rights under the Constitution, the right to free speech, the right to be heard and the right to assemble. A good friend, one of our new commissioners, Honorable Col. J.D Wilkes reminded me of this recently after appearing in a feature article in Louisville a couple weeks ago and getting his article shared on our Facebook page, when we made contact once again. He had joined our original group formation in 1999, something I only learned the other day when

reviewing the Internet Archive.

# Standing Under the Law

Under the rights we possess provided by the First Amendment of the United States' Constitution, the US Code, and the Statutes of the Commonwealth of Kentucky we are here to recover the organization that we should have had, based on all that we have learned and come to understand. Someone needs to answer for the malfeasance aimed towards us in 2001, the freedom of others, respect for the law, and answer in the consequence of the scare tactics they implemented to intimidate us in the past.

People cannot stand under a misguided authority, especially a charity that prospers by conducting deceptive practices. There are too many legitimate causes out there that work very hard for the money, Kentucky colonels are not people that should not be beguiled to believe that by channeling their energy through a single organization is better than the actions they can take independently in their own communities. As we suggested to the new Governor, if there is going to be a quid pro quo attached to make nominations, where, Kentucky colonels must make an annual donation to a Kentucky charity to remain active in *his own registry*, let each colonel choose themselves which charity or cause their money should support; or restore the Commission and its previous nomination procedure to the policy as it stood before Governor Bevin took his elected office.

Based on what we discovered about the HOKC organization, it is abundantly clear that **they have been misleading their donors and supporters for many years** into believing they are members, at least since 1997, where Gary Gupton their former executive director and senior ambassador writes in an **introduction letter** to those receiving their commissions, *"The members-only organization is reserved exclusively for those titled as Kentucky Colonels."* but it is also clear that the letter which was sent out as late as 2015 was fraudulent, because they did not have a website when he supposedly wrote it, moreover he did not have any members.

The HOKC's **Amended and Restated Articles of Incorporation** on file in Frankfort, that have been on file since 1992 clearly state in Article 13, **"The Honorable Order of Kentucky Colonels has no members."** Additionally, a similar statement made in Article 6 states, **"The corporation shall have no voting members."** Both of these items in this document are a clear violation of what it means to call yourself a membership organization under US law.

The US Code of Federal Regulations (CFR) defines the term

membership organization as:

> "an unincorporated association, trade association, cooperative, corporation without capital stock, or a local, national, or international labor organization that is composed of members, some or all of whom are vested with the power and authority to operate or administer the organization, pursuant to the organization's articles, bylaws, constitution or other formal organizational documents; expressly states the qualifications and requirements for membership in its articles, bylaws, constitution or other formal organizational documents; makes its articles, bylaws, constitution or other formal organizational documents available to its members; expressly solicits persons to become members; expressly acknowledges the acceptance of membership, such as by sending a membership card or including the member's name on a membership newsletter list; and is not organized primarily for the purpose of influencing the nomination for election, or election, of any individual"

The impropriety, deception, and fraudulent presumptive behavior does not end here though, it goes to the core of the organization which provides thousands of donors with membership cards each year that have no validity or privileges connected with them, constantly referring to them as members headed by generals without any real authority over Kentucky colonels themselves. Each Kentucky colonel with his/her letters patent is independent and in reality, reports directly only to the governor. The HOKC is completely independent of the government under the law. Despite this, no one has ever challenged these ideas that they put forth or the decisions being made by their Generals, not even the governors since 1992 are fully aware of what exactly is going on. The **great deception** *of misleading Kentucky colonels, channeling their ideals, and moderating their honor has been taking place in plain sight well over 25 years*, instead of focusing on bringing prosperity to the honorable title through those to which the privilege truly belongs.

According to the Model Nonprofit Corporation Act, which defines the legal rights of members, includes:

> "formal membership nonprofits have a board of directors, and **the members serve as the governing arm of the organization**. The nonprofit's bylaws and articles of incorporation define the rules for membership issues, such as how to become a member, and also detail the rights and responsibilities of members."

They provide medals based on the amount a person donates that have no relation to valor or merit, but are basically for sale so they can

be shown off as if they were earned for some action. Some Kentucky colonels have them and others do not. While this seems strange in itself to those who I have spoken with who earn their brevets and medals, many organizations practice this, so it is probably one of the least questionable practices as to getting one signifies that a person has not done much more than make an above average contribution. Most Masonic Orders disagree with the practice as do others where recognition and degrees are earned as a person ascends the ladder as a member or based on an activity or achievement.

There is no room in America, not even in Kentucky, for a charity to operate ignorant of the needs of their members, **like a burgermeister or a 'good ole boys network'** which makes decisions for the benefit of the inner circle without giving due consideration to its constituents. Its principles are contrary to the democratic and social values of the Commonwealth and nation in which it was founded. In this case guiding an honorable and distinguished title that was bestowed without discrimination to so many fine ladies and gentlemen around the world based on their deeds, at their cost, with the sole purpose of developing and maintaining an organization where its members have no opportunity to participate within, to grow from or prosper within.

**United We Stand, Divided We Fall** - Kentucky entered the Union on June 1, 1792. A little over six months later, on December 20, 1792, the first Kentucky General Assembly adopted the official seal of the Commonwealth, including this phrase as the state motto.

## Taking on a Goliath to Restore the Tradition of the Kentucky Colonel

While writing this article I reflected considerably on the repercussions of my change of opinion about the Honorable Order of Kentucky Colonels as I gave them the same deference that former Governor Bevin did. I sent them a donation in January to reactivate my "so-called" membership, which I did not realize was just a way to gain their recognition as a donor, making myself eligible to nominate other colonels, and not a real member of anything really based on the presents of this editorial. Then I began to think about all the Kentucky colonels out there that are truly honored by being nominated and the governor commissioning them, as well, what it would mean to them to have a genuine membership organization that addresses them and the honorable commission with the integrity and respect they deserve, where they actively participate in the functionality of the organization.

While many people get their certificates and hang them on the wall and leave it at that, others do take great prestige in receiving the award and live up to its real meaning. So, it is for these Kentucky

<u>Colonels that we are moving forward with our plans by forming our own International Commission to develop a genuine membership organization that is rightly so.</u> We have taken several major steps already by getting a new dedicated website and forming a small commission of distinguished leaders to serve as the initial officers that share many of my sentiments and concerns.

We will also accept proposals for new commissioners to become part of our board based on their understanding, respect, and prominence as leaders in their own communities. Together I am confident that we can restore the significance of the Kentucky colonel and perhaps even eliminate the jokes and presumptions of it being a tongue-in-cheek award through the development of our organization.

To get the organization off the ground I have legalized the commission's formation under the same organization that I founded in 1994 by reinstating it with the Secretary of State in Frankfort on January 21st. Now to take it where it needs to go, we need donations from the public and will need to charge monthly or annual dues to members in order to provide member benefits and services beyond the social media. The online services we have been providing through administering the Facebook groups will remain without any membership fees including our blog and a new website being developed at [kycolonels.international].

Most of the ideas we will be proposing for our membership are on the table, while it is difficult for me to organize the project from abroad, the brunt of the work today for many organizations can be completed online. The majority of our officers are located in the United States (none live close to one another), so online development is very essential. We do have our registered agent and an official mailing address is in **Richmond, Kentucky**, which reinforces our formation. The formal membership forum is based on Facebook and remains open to all Kentucky colonels that have been granted a commission, without cost. Also we have Workplace and Google (paid services) we can rely on as well with our commissioners to provide more integral interaction with live online global meetings.

In addition to myself **Col. David Wright**, our current governing officers include: **Col. J.D. Wilkes, Col. Nicholas Wright, Col. Karen Cantrell, Col. Luis Cruz Diaz, Col. David Younce, Col. Michael Sher, Col. Maria Veneke Ylikomi,** and **Col. Jon Meier** all of whom serve honorably with prestige as commissioners without remuneration as our board. Other Kentucky colonels are currently under consideration as commissioners and officers to help lead our formation as the only 'membership organization' dedicated to Kentucky colonels serving as goodwill ambassadors for the Commonwealth authorized under the issuance of letters patent.

# Supporting Kentucky Colonels International

On January 30th the formation of Kentucky Colonels International became official. We upgraded our status from an unincorporated membership organization and legalized the commission and foundation as an assumed name corporation in the Commonwealth of Kentucky belonging to Ecology Crossroads (est. 1994), who is our sponsor. To become an independent membership organization like we deserve to be, it is up to our members and other Kentucky colonels to come together and provide us with support we need in the form of donations to better formalize our efforts to succeed. Contributions can be made online through their sponsor using PayPal or a credit card.

As the state's official goodwill ambassadors we have lots of great progressive ideas to implement through the organization including a promotional campaign that allows Kentucky (and non-Kentucky) businesses, travel destinations, and corporations to become involved. We will also accept contributions from the general public and those seeking nominations to become Kentucky colonels through our programs by supporting us and promoting Commonwealth. You can find us on Facebook, visit our website or email us.

By David J. Wright on February 07, 2020 ✉️

Labels: goodwill ambassador , Governor of Kentucky , HOKC , Honorable Order of Kentucky Colonels , KCI , Kentucky Colonel , Kentucky Colonel Foundation , Kentucky colonels , Kentucky Colonels International

Newer Post            Home                Older Post

Recommend    Share    53 people recon this. Sign Up to

## Subscribe To

🔲 Posts ⌄

🔲 Comments ⌄

## Follow by Email

Case 3:20-cv-00132-GFVT Document 1-2 Filed 02/21/20 Page 76 of 283 PageID #: 2907
Case 3:20-cv-00132-GFVT Document 1-2 Filed 02/21/20 Page 14 of 15 PageID #: 2207

| Email address... | Submit |



**Kentucky Colonels Inter...**
2,442 likes



Like Page

Be the first of your friends to like this



**Kentucky Colonels International**
on Monday

Soon after, I returned home to my family, with a determination to bring them as soon as possible to live in Kentucky, which I esteemed a second paradise, at the risk of my life and fortune. -Col. Daniel Boone

Col. Daniel Boone was known as the first settler of Kentucky in 1767, he became one of its leading citizens. He was actually commissioned a Lieutenant-Colonel in 1780, of the Fayette County Militia when Kentucky was made up of three Virginia counties



EN.WIKIPEDIA.ORG
**Daniel Boone - Wikipedia**
Daniel Boone (November 2, 1734 [O....



### Kentucky Colonels International: Restoring Traditions and Customs

Defending the Ideals of the Kentucky Colonel Becoming a Kentucky Colonel and Ambassador of Good Editorial by Col. David J. Wright ...



### Reorganizing the Kentucky Colonels International Commission and Foundation

A Digital Presence for Kentucky Goodwill Ambassadors Kentucky Colonels International Having a good social media presence has becom...



### Kentucky Colonels: Past, Present and Future

Kentucky Colonels in the News News Release News for Immediate Release RICHMOND Kentucky — Beginning last year Globcal Interna...

### Group Proposes Fair Maps Act - Spectrum News 1 - 1/13/2020

### Kentucky Black Caucus Outlines 2020 Priorities - Spectrum News 1 - 1/13/2020

### Kentucky Farm Bureau Unveils 2020 Legislative Priorities - Spectrum News 1 - 1/10/2020

### Protests Outside Mitch McConnell's House Ignite War of Words - Spectrum News 1 - 8/6/2019

### KY Lawmakers Propose Making Daylight Saving Time Permanent - Spectrum News 1 - 7/1/2019

# Contact Form

Name

Email *

Case 3:20-cv-00132-GNS  Document 9-4  Filed 02/21/20  Page 78 of 283 PageID #: 2939
Case 3:20-cv-00132-GNS  Document 1-2  Filed 02/21/20  Page 16 of 16 PageID #: 223

Message **\***

[                    ]

Send

© 2020. Powered by **Blogger**.

# EXHIBIT 3

# TO MOTION FOR
# RESTRAINING ORDER



# About Us

## About Kentucky Colonels International

Kentucky Colonels International is a non-profit, charitable membership organization made up of Kentucky colonels promoting and supporting other Kentucky colonels as goodwill ambassadors for the Commonwealth of Kentucky at home and abroad.

## History

Kentucky Colonels International (KCI) is an objective that began in 1998 online to extend goodwill and project fellowship internationally between the Commonwealth of Kentucky to people of other nations and states around the world, in the grand effort to bestow an official high regard upon the title of Kentucky Colonel as an internationally recognized award and proper title. The focus of KCI is upon its colonels being **legally designated as goodwill ambassadors,** nationally and internationally while being **officially recognized** as representatives of traditional Kentucky values when travelling abroad.

Kentucky Colonels International began as an idea conceived by Col. David Wright to establish **an active international membership organization** that members could participate in and perpetuate their recognition as Kentucky colonels in a dignified and professional manner. Perhaps more of an equal social order rather than as military Kentucky colonel brigade, command, sociopolitical group, or a subjective membership structure.

Between 2006 and 2009 the organization advanced its development by administering groups that were forming by Kentucky colonels for Kentucky colonels to share information and come together with other like-minded individuals. Today the organization assists and inspires other Kentucky colonels using the social media and the Internet to carry on what we have started while elevating the distinction of one another.

🔗
## Our International Commissioners

Now as an international civil society organization (iCSO) we have nine officers including **Col. Nicholas Wright, Col. Karen Cantrell, Col. Luis Cruz Diaz, Col. David Younce, Col. Michael Sher, Col. Maria Veneke, Col. Jon Meier, Col. Joshua D. Wilkes, and Col. David Wright;** all of them are considered executive council members to carry our formation forward; most of them have extensive experience in international affairs as goodwill ambassadors.

The title of "Kentucky Colonel" has come to be recognized by heads of state, at the United Nations, by international non-governmental organizations, and among royalty through these noteworthy individuals.

The organization's officers have extensive experience in human and civil rights or are cause advocates for social justice issues including the environment, migration, animal welfare, indigenous peoples, women and children. They are all coincidently Kentucky colonels, mostly from Globcal International. Globcal for those who do not know it is a non-state decentralized autonomous organization formed as a cooperative development association that works with the United Nations, sovereign states and other international organizations, it is operated by a team of over fifty goodwill ambassadors representing causes from around the world. Many of them have become Kentucky colonels over the years based on their deeds as members, some of them were already Kentucky colonels.

🔗
## Membership

To become a member in our international social fellowship a person must already behold a commission as a Kentucky colonel and make a declaration of their deed for which they received their title. There is no membership fee, all of our activities are conducted online and based on voluntary

contributions by active members and volunteers. Members are admitted based solely on providing a photograph of or with their Kentucky Colonel Commission.

In 2006 our errant group of Kentucky colonels began its journey in the social media on Facebook evolving to our current presence to pull together interested members in an association internationally to promote like-minded ideals, honor and values that are common and well-understood among Kentucky colonels. In 2009 we had 500 of 700 members living outside Kentucky with nearly 30% living overseas in our social media circles, today we are up to 3,500 members world-wide.

🔗
# International Registry of Kentucky Colonels

Our formation was developing a Registry Project that we announced in 2018 exclusively for Kentucky Colonels that wanted to be recognized in the international theater for their achievement or use their title internationally as goodwill ambassadors. The registry (a blockchain project) first became available in November 2019 for those who were interested in receiving an additional credential and having their title recognized in a publicly searchable database. Due to budget setbacks and technical problems the project stopped to be professionally redeveloped under our sister organization the Goodwill Ambassador Foundation. The project will now formally get restarted in 2020.

The registry offers colonels a **certificate of registration, a lifetime ID card** and additional **Internet services** with Google using a credential called **IDaaS (Identity-as-a-Service)**. The electronic online directory is searchable so Kentucky colonels can have their titles verified by a third party wherever they present it.

The identity service will be compatible with Chrome, iPhone and Android it can be used with any Mac, Windows or Linux based operating system to access special Google services provided by our organization.

🔗
# Other Program Services

To better project the image of the Kentucky Colonel title and what it means to us, those who register their title (letters patent) can also demonstrate themselves through a permanent web page which we will develop and maintain on their behalf that is linked to our roster (or can connect their personal website). This is an additional service which is provided to those that live outside (or inside) the Commonwealth of Kentucky.

🔗
# More About Us

Kentucky Colonels International is currently organized and **"now is incorporated"** (as of January 30, 2020) as non-governmental and non-state fellowship association

(commission) made up of Kentucky Colonels who have been nominated and awarded the 'Honorable' title for a notable meritorious deed or participation in a newsworthy event deserving the title. The organization in formation that we are developing **involves member participation** as stakeholders, therefore there may eventually be a voluntary membership fee with accountability to our supporters for work that we do with them. Currently there are **no annual fees** for social media participants or online development provided by KCI to its members.

Membership fees or dues which may be requested (in the future) will be used to provide membership and professional public relations services for those who need them. To date we have not needed to request membership fees nor have we charged anyone for the services we provide online. Meanwhile there is a donation page here on our website to provide better social media and Internet services for our voluntary members, so we will keep up the hope that people will make donations from time to time for the services that we do provide.

🔗
# Kentucky Colonels International is not the HOKC

**Kentucky Colonels International (KCI)** is **not** the **Honorable Order of Kentucky Colonels (HOKC)** nor is it a military brigade of Kentucky colonels; all of our members have been duly recognized by the Honorable Order as supporters

or donors of their independent charitable institution. The HOKC is a private non-profit organization and registered charity in Kentucky, it is **not a state operated institution or charter** of the state, its supporters have no voting powers, participation, or personal influence over the organization or its charitable activities. As is stated in their Articles of Incorporation that are on file in Frankfort, Kentucky; "The Honorable Order of Kentucky Colonels has no members."


Report abuse

# Contact Information

kycolonels.international/aboutus/contact

## Contact Kentucky Colonels International

Though we were established originally in Berea, Kentucky in 1998 at the Indian Fort Outpost, today we are a decentralized autonomous organization developed online with no physical office or street address. Legally we are an organization developed under Ecology Crossroads by Globcal International which maintains its mailing address in Richmond, Kentucky.

## Contact Us

You can contact Kentucky Colonels International seven days a week online using email or Facebook instant messaging. We provide access to membership services to those who are active in the social media on Facebook, Google, LinkedIn, Workplace and Twitter. In 2020 we are beginning an initiative with the United Nations Sustainable Development Goals and UNESCO where members will be able to connect with one another and take actions as Kentucky colonels on the behalf of the Commonwealth of Kentucky in an official capacity as its goodwill ambassadors.

## Contact Persons

Charge d'Affaires - Col. David J. Wright

Executive Liaison - Col. Karen S. Cantrell

Treasurer - Col. Nicholas A. Wright

ⓘ
Report abuse

# First Members

---

kycolonels.international/aboutus/memory

🔗
## Our First Members

Our organization was started originally in 1998 with the purpose of founding a true membership society. In 2001 our efforts were abruptly halted based on the threat of being sued by the Honorable Order of Kentucky Colonels which claimed that we were infringing on their trademark.

At the time we had reached nearly 100 members, however the record of all of their names cannot be located, what we have found though was our membership roster on the *Internet Archive which appeared in 2000. We also noticed that some of these members are still with us today and have once again become active in our efforts.

🔗
## First Members *(1998-2001)

- Col. Paul R. Mobley
- Col. Jack Wolfenson
- Col. E. E. Gene Sampson
- Col. Mary Louise Sampson
- Col. Prof. C. E. Lindgren, D.Ed.
- Col. Samuel L. Ferguson
- Col. Gerald Weaver

- Col. Ernest Michael Prince
- Col. Dennis A. Q. Santos, Esq.
- Col. Patrick J. Santos, Esq.
- Col. Barry K. Flores, Esq.
- Col. Joseph S. Carbullido, Esq.
- Col. Phillip P.S. Pearson
- Col. David Paasch
- Col. Douglas D. Caplan
- Col. David J. Wright
- Colonel John W. Corliss
- Colonel Matthew A. Magrum
- Col. James R. Greenhill
- Col. William New
- Col. Larry S. Shields, PhD
- Col. Reva Jean Taylor
- Col. Gene A. Bess
- Col. Roy T. Twombley
- Col. James Christian Selch
- Col. Dwayne Kent Hanson
- Col. Johnny M. Rich
- Col. Derek M. Wingfield
- Col. Timothy D. Hickman
- Col. Edgar A. Brown, Esq.
- Col. Gerri Hobdy
- Col. Roy R. Chance
- Col. Joshua Devan Wilkes, Esq.
- Col. Steven E. Germann
- Col. Hal Croft
- Col. Douglas Jackson
- Col. Robert D Bass, Sr.

- Col. Huiberto J. Oakes
- Col. Marvin D. Burns
- Col. William A. Donovan
- Col. Dana S. Hartwig


Report abuse

# Kentucky Colonels International

 kycolonels.international/index

## Kentucky's Goodwill Ambassadors

**Protagonists of Culture, Customs, and Tradition**

⌄

🔗
# Kentucky Colonel

**Kentucky Colonel** is the highest title of honor bestowed by the Commonwealth of Kentucky. Commissions for Kentucky colonels are given by the governor and the secretary of state to individuals in recognition of noteworthy accomplishments, contributions, and outstanding service to community, state, or the nation.

The Governor of Kentucky bestows the honor of a colonel's commission, through the issuance of letters patent. The commission is a legal act of the Office of the Governor and lifetime appointment.

🔗
## Our Organization

**Kentucky Colonels International** is now a non-governmental, non-profit fraternal and mutual benefit membership organization. We are incorporated in the Commonwealth of Kentucky and in "good standing" with the Office of the Secretary of State.

Formerly developed as an unincorporated fraternal association in October of 1998; **in January of 2020** our formation advanced to become an international civil society organization and cooperative membership association organized and established under the First Amendment of the United States Constitution, the US Code, and the Revised Statutes of the Commonwealth of Kentucky.

Historic representation of the Kentucky Coat of Arms (c. 1876). State motto, "United We Stand, Divided We Fall"

🔗
## About Us

**Kentucky Colonels International**, also known as the (Kentucky Colonel Foundation)was originally established in 1998 to give prominence to the Kentucky Colonel Commission as a meritory award with diplomatic credence that is respected and understood internationally. Our concept is the formation of a membership development program based on a fellowship. The organization is open to all those who have received the prestigious honorary title from the Governor of the Commonwealth in service as his '**aide-in-camp'** which designates them officially as a goodwill ambassador for the state with letters patent (which is a legal document) resulting in a lifetime commission.

Kentucky colonels serve both the state and the acting governor directly without regard to political party, race, gender, civil status, or religion.

As goodwill ambassadors, Kentucky colonels are dedicated to community service, contributing to the welfare of the state, and improving the lives of others to make the world a better and safer place for everyone. Today there are more than 100,000 Kentucky colonels living in 70 countries and more than 12 organizations that have been formed since the turn of the 21st century. Their official (optional) responsibilities include promoting tourism, economic development, participation in community service, and fostering the general prosperity of the Commonwealth of Kentucky and its citizens.

🔗
## Our Website

Our website is currently under development, the organization is requesting that members provide photos, news, videos, and other relevant information to make improvements for our online formation. As an organization, we will present a number of stated objectives, goals, and purposes herein which can be viewed publicly and transparently.

Kentucky Colonels International is not a secret society, our development online is to promote members as public figures, community leaders, and goodwill ambassadors that are well-respected, fair, and trustworthy ladies and gentlemen from all walks of life that have been recognized with the honor and virtue of becoming a Kentucky colonel.

We are planning on providing biographical services, news distribution and social media content on the behalf of our members using the website and a social media app that is in the works.

🔗
## The Order

Being admitted to the **Order of the Kentucky Colonel** represents that the award recipient has made a noteworthy contribution to society, performed a great deed, accomplished a remarkable personal achievement, or has been recognized for outstanding service to their

community. Kentucky colonels are recognized and commissioned for their lifetime to the order with letters patent which permits them to perform and take actions as a **commissioned civilian officer** of the Commonwealth of Kentucky.

## Nominations

In-deed the award is the highest form of recognition bestowed to individuals by the Commonwealth of Kentucky. It can only be granted by the Governor or the Secretary of State based upon being nominated by another Kentucky colonel or being recognized individually by the state's governor for a noteworthy act that commands the governor's attention. Historically there have been cases where the governor has recognized noteworthy individuals as Kentucky colonels based on formal written suggestions by citizens and officials of the Commonwealth.

## Fellowship

Membership to our non-governmental organization is voluntary and open to all Kentucky colonels around the world that have duly earned the distinguished honor to be part of our fellowship. Members of our organization are encouraged to provide information relative to their status and participate in programs to further their abilities and prominence as honorable ladies and gentlemen serving as the state's goodwill ambassadors. The organization supports the ideals of transparency, hospitality, integrity, respect, honor, and tradition among its members.

## Member Services

The organization provides online digital services to its members in the form of personal identification, a vanity email address, biographical websites, an online membership roster, and an electronic smartphone app (under development in 2020). Other ideas and suggestions are being discussed and based on our organization acquiring funding for development.

Since 2006 the organization has been active providing administrative and moderation services online in the social media with the first Facebook groups and fan page dedicated to promoting the development of fraternity, fellowship, and the sharing of news content for Kentucky colonels.

## International Title Registry

All those who have received a commission may voluntarily become additionally recognized in the International Title Registry (formerly KCI Registry), an ideal originally introduced by our organization, which recognizes all American and international meritory awards of honor and merit from around the world. The combined program is scheduled to be online the middle of 2020.

The International Title Registry will be operated by the Goodwill Ambassador Foundation.

### Disclaimer

Kentucky Colonels International (Kentucky Colonel Foundation) is not directly associated or affiliated with private charity, The Honorable Order of Kentucky Colonels, Inc. (HOKC). The HOKC is a non-profit charitable organization located in Louisville, Kentucky that provides assistance in the form of gifts to non-profit organizations and educational institutions in the State of Kentucky. The organization does not have **any members nor provide membership benefits** according to their Restated and Amended Articles of Incorporation that were filed in 1992.. The organization recognizes its donors as honorary members, it does not offer legal membership that is consistent with the Model Nonprofit Act or US law, or allow its members a vote or say in the operation of the organization.



Report abuse

# Donations

 kycolonels.international/donate

⊖
# Donate to the Kentucky Colonel Foundation

Contribute to the development of environmental, humanitarian, and social well-being projects organized and operated by Kentucky Colonels.

⊖
## Donate to the Kentucky Colonels International Fund

You can now donate to Kentucky Colonels International online using a major credit card or your PayPal account. PayPal is our payment processor, you are not required to have or sign-up for a PayPal account to make a donation. If you have trouble with the Donate button you can also use **this link.**

You can also use the QR-Code here on our page to make your donation if you are using a smartphone. Please retain your donation transaction number as evidence of your contribution, it will be provided to you by email.

Read more about the causes we support below.

⊖
# Mission

∧

⊖
## Mission Statement since 1998

To promote the careers, individual growth, public service projects, and champion the successes of Kentucky Colonels all over the world to enhance the growth of strong sustainable communities and friendships internationally.

⊖
# International

∧


## International Projects with Colonels

Kentucky Colonels International is a commission of distinguished Kentucky Colonels that is organized based on brotherhood, fellowship, and friendship through the social media. Though we are not incorporated, we are registered as an international civil society organization (ICSO) under Globcal International which provides us with recognition and legal standing as an international organization.

The organization supports the development of international cooperation and sustainable development programs involving Kentucky colonels taking on roles to make the world a better place through their individual contributions and dedication towards civic, environmental, humanitarian, and social causes. We support the work of the Goodwill Ambassador Foundation and other programs developed by Kentucky colonels involving service to others.

Kentucky colonels strongly believe in the proverb that says, "one good turn deserves another!"


## Membership

∧

## Membership Requirements

Membership in Kentucky Colonels International is **free** and based online using groups on Facebook. To become a member of either our social or fraternal groups applicants must show their Kentucky Colonel commission certificate, state the name of the governor that they were recognized by, give the date that they were commissioned and make a declaration of their deed. If you are already a Kentucky colonel you can join the groups from our Facebook page.

Donations to KCI are now tax-deductible in 2020, those who make donations of $25 or more will receive a personal thank you note from a commissioner. Donations of $1,200+ or the equivalent of 2% of a person's annual salary if US residents will also receive a tax-statement by email at the end of the year so they can deduct their contributions.

## Programs

∧

⊖
## Kentucky Colonels International Registry

In the planning stages on several occasions over the years without completion, our registry was proposed once again in 2017 and followed up with email by a great number of people in 2018 and 2019. Now under development once again in 2020 Kentucky Colonels International has lent its technology to develop a new project called the International Title Registry with its sister organization the Goodwill Ambassador Foundation. Details will be posted once the program is funded or reaches 1,000 registrants.

ⓘ
Report abuse

# Frequently Asked Questions (FAQ)

## Questions and Answers about Kentucky Colonels

Both the public and Kentucky Colonels alike have many questions about Kentucky colonels and about the Order of the Kentucky Colonel. Some questions are considered Frequently Asked Questions (FAQ) so we have developed this FAQ Page to help answer some of them.



State Seal of the Commonwealth of Kentucky

### How do you become a Kentucky Colonel?
Anyone over the age of 18 can become a Kentucky colonel. Only another Kentucky colonel can nominate someone to become a Kentucky colonel or they can be recognized and selected by the Governor of the Commonwealth of Kentucky. The best way to become a Kentucky Colonel is to know one who is willing to nominate you.

### Can you apply to become a Kentucky Colonel?
No, a person cannot apply to become a Kentucky colonel. Kentucky colonelcy is based on being nominated to become recognized by the seated Governor of Kentucky or being recognized by the governor directly.

### Do you have to be from Kentucky to become a Kentucky Colonel?
No, Kentucky colonels can be from anywhere in the world. Currently there are more than 100,000 Kentucky colonels living in more than 70 countries around the world.

The Governor of the Commonwealth of Kentucky can recognize anyone living anywhere in the world based on their deeds, noteworthy actions, or their accomplishments. Generally the governor only recognizes those who either have or who demonstrate their deeds or actions in connection with the state, however as an honorary award the governor frequently has been known to recognize those who have the potential to serve the needs of the state through their recognition.

### What does a Kentucky Colonel actually do?
Kentucky colonels are officially the goodwill ambassadors of the Commonwealth of Kentucky, they are commissioned by the governor as civilian offers who are recognized as the governor's aide-in-camp. Their unnamed task is to promote the cultural and traditional values of the Commonwealth of Kentucky in their everyday lives.

Although Kentucky colonels receive 'letters patent' it is a traditional **award of merit** and an **honorable title** that is bestowed by the head-of-state to recognize the individual to whom it is given based on their deeds, accomplishments, noteworthiness, or contributions to the community, state or nation in which they live.

mentation

## Who was the first Kentucky colonel?
There is some debate as to who the first Kentucky colonel was. According to Wikipedia it was Charles Stewart Todd, who was commissioned by Governor Isaac Shelby in 1813 as an aide-de-camp on the Governor's Staff with the rank and grade of colonel. Others say it was Richard M. Johnson who many considered very notorious that came long before Col. Todd. Prior to that before Kentucky as a state in the late 1700s the great Daniel Boone was a Colonel when the state was part of Virginia.

## How many organizations are there for Kentucky colonels?
There are a number of benevolent, civil, charitable, fraternal and membership associations or organizations that have been established around the world which base their membership on a person being recognized as a Kentucky Colonel.

- In Kentucky there are 5 organizations that coordinate local activities.
- World-wide there are 12 or more organizations that are based on a person being recognized by the Governor of Kentucky.

The largest and most dominant of these organizations has been "The Honorable Order of Kentucky Colonels" which is a charitable 501(c)(3) organization which was started in 1932 and was consolidated as a Kentucky corporation in 1957. It is dedicated to funding good works throughout the state of Kentucky and holds several fundraising events per year. They implicitly offer free honorary membership to those who are commissioned and donate to their Good Works Fund each year. The organization is operated by a Board of Trustees which they call their Generals. The organization is community oriented and helps Kentucky colonels find volunteer opportunities locally.

The second largest organization "Kentucky Colonels International" is a fraternal membership and international civil society organization. Which is now under reformation and development which was started originally in 1998. The organization is decentralized online and developed to include all participants no matter where they live in the world. It is the same organization that dominates Facebook and uses the social media to provoke activism.

## How can a Kentucky Colonel use their "Honorable" title?
In the formal sense of protocol, a Kentucky colonel is always addressed or referred to with the title "Honorable" before his or her name inside the state when it is known; outside the state they may use the full title "Kentucky Colonel" before his or her name. Most often among friends and colleagues this is shortened to serve as a moniker or nickname to just "Colonel".

Since the honorable title is a customary and traditional one it is often used to defer respect and honor, however it **should not** be used when presenting oneself or another Kentucky colonel as "Colonel" or "Col." to the United States Government, in another state or in another country because it could be confused with the proper official title of a military colonel. The title may be expressed in other places outside of the realm of Kentucky as "Ambassador" or "Kentucky Colonel" as a formal title. The style can also be represented as a position in representation of the state as an aide-in-camp following a person's proper name as "Kentucky Colonel", as "Goodwill Ambassador", or most precisely "Ambassador of Goodwill for the Commonwealth of Kentucky".

## What are the duties of a Kentucky Colonel?
As a meritory award and honorable title there are no dutiful obligations connected with being recognized as a Kentucky Colonel. Those who are recognized however are expected to be outstanding citizens and public figures, respectful of others, and law abiding.

Kentucky colonels are not paid a salary by the state, however many individuals and public figures including actors, athletes, musicians , professionals, and even diplomats who become Kentucky colonels have been known to present themselves as paid speakers promoting Kentucky history, values, traditions, and customs in public and private venues.

It is also a commission that can be rescinded or revoked based on a person's conduct in society or if it is gained by deception. There are few examples of this occurring, however is not very frequent, as most of those who are recognized truly deserve to be distinguished and carry the recognition with them throughout their lives.

## Was Colonel Saunders really a Kentucky Colonel?

Yes, Harland David Sanders received the commission of the Kentucky Colonel in 1935. He is also the most famous of all the Kentucky colonels and decided to use the title as his moniker (nickname) when he opened his restaurant chains. The style he introduced of an all white suit was his own, modeled after the ideal of the southern gentleman with a ribbon tie introduced by Opie Read.

## How many Kentucky colonels are there?

There are currently over 100,000 Kentucky colonels, living in more than 70 countries around the world.

## Other Questions

These are some of the most frequently asked questions that are posed by the public and by Kentucky colonels themselves about the Kentucky Colonel Commission. If you have other questions you are welcome to write to us and we will do our best answer them.

# Kentucky Colonels' News

🐿 **kycolonels.international**/news

🔗
# News about Kentucky Colonels

Before we had the Internet community and regional newspapers were more predominant and Kentucky colonels were noted more frequently and better-known for their local accomplishments. Today it is has become less common for newspapers to write about the positive things in life and the accomplishments of our neighbors. To better promote positivity in society we have established a news service which disseminates and recirculates some of the articles that we can find and develop new articles about the accomplishments, deeds and recognition of Kentucky colonels from around the world.

We are working now to extend this service to provide public relations on a broader scale recognizing fellow colonels. See our blog and publicity section for more information.

🔗
# News Feed

This is a RSS/Atom news feed that presents selected news articles about Kentucky colonels which have made it to the international news, the stories are extracted using Google

News Search and converted using FeedBurner. The feed displays the top articles of prominent sources that use Google News.

You can subscribe to this RSS feed using a feed reader program using your PC, laptop, tablet or smartphone. Subscribe here!


Report abuse

Kentucky Colonels in the News

- World War II veterans honored as Kentucky Colonels for 'amazing service' - WLKY Louisville

  February 12, 2020

- Kentucky Colonels are real and they have nothing to do with chicken - We Are The Mighty

  December 9, 2019

- Kentucky colonel to hosts annual grant party - WLKY Louisville

  September 15, 2019

- Wade spreads God's word to large audience | Local News - The Messenger

  February 11, 2020

- Curious Louisville: How Do You Become A Kentucky Colonel? - 89.3 WFPL News Louisville

  September 7, 2018

- Southern Gothic Sound: The Legendary Shack Shakers' JD Wilkes On The Past And Present - Louisville Eccentric Observer

  January 15, 2020

- Titus O'Neil Named Kentucky Colonel - ProWrestling.com

  June 25, 2019

- 2020 Kentucky General Assembly Session - Spectrum News 1

  January 6, 2020

- Moneycontrol Ultimate Business Quiz #79: Test your knowledge - Moneycontrol.com

  February 14, 2020

- KY drivers to pay more for some specialty license plates - WAVE 3

  December 26, 2019

- Roland White releases Kentucky Colonels tribute CD - Bluegrass Today

  October 26, 2018

- Kentucky's Pensions are Invested in the Marijuana Industry - Spectrum News 1

  January 13, 2020

- I'd Let Colonel Sanders Zinger My Box In This Very Real Dating Simulator - Pedestrian TV

  September 11, 2019

- Pro-Choice Advocates Speak Out Against Anti-Abortion Bill - Spectrum News 1

  January 9, 2020

- What Colonel Sanders Looks for in a Lover, and Other Things We Learned About KFC's New Dating Simulator - Slate

  September 12, 2019

- Kentucky Farm Bureau Unveils 2020 Legislative Priorities - Spectrum News 1

  January 10, 2020

- Living on dairy farm helped 'Walking Dead' creator get gory - Agri News

  January 16, 2020

- You Can't Be Knighted in the U.S., But You Can Be Named a Sagamore of the Wabash - Atlas Obscura

  November 8, 2017

- Gov. Bevin Ceremonially Signs KY Criminal Record Bill - Spectrum News 1

  August 9, 2019

- Dozens Come Out for Vigil Outside McConnell's Office - Spectrum News 1

  August 7, 2019

- Protests Outside Mitch McConnell's House Ignite War of Words - Spectrum News 1

  August 6, 2019

- Andy Beshear Campaigns With Adam Edelen for Unity Tour - Spectrum News 1

  June 26, 2019

- KY Lawmakers Propose Making Daylight Saving Time Permanent - Spectrum News 1

July 1, 2019

- Republican Party hosts 2019 Lincoln Dinner - WKYT

  August 18, 2019

- Retiring Alsco Executive Jim Divers Honored Prior to Alsco 300 - Speedway Digest

  July 12, 2019

- Kentucky Showing Progress in Child Welfare - Spectrum News 1

  July 5, 2019

- Former Navy SEAL Shares Experiences, Motivational Message At GOP Rally In Murray - WEKU

  August 5, 2019

- PHOTOS: Presidential turkey pardons — a look back - Yahoo News

  November 27, 2019

- Wickliffe's Economy Boat Store Rededicated After Weathering Storm - The Waterways Journal - The Waterways Journal

  October 25, 2019

- Luckett & Farley adds senior architect to Distilled Spirits Design Studio - The Lane Report

  August 23, 2019

- KFC's Colonel Sanders and the American Dream - Eater

  July 26, 2019

- When a Lexington WWII vet couldn't fly, Honor Flight Kentucky brought the trip to him - WKYT

  May 27, 2019

- Photos from the 2019 IBMA Awards - Bluegrass Today

  September 27, 2019

- Who Jimmy Page Called the Greatest Guitar Player of All Time - Showbiz Cheat Sheet

  January 4, 2020

- Singer-songwriter and Folklorist Nathan Blake Lynn Performs on Next Live Lunch - WKMS

  November 17, 2019

- How to grow mint, the ultimate plant for the incurably incompetent - Country Life

  April 7, 2019

- Boys and Girls Haven gets $10000 donation after fire destroys foster care building - WDRB

  November 28, 2018

- 2 Capitol officers recognized for life-saving actions - Kentucky Today

  October 5, 2018

- This Week In Weird Twitter, Volume 121 - The Federalist

  February 22, 2019

- 'Rambo' Has PTSD: The Strange Case of an International DEA Murder-For-Hire Drug Sting - VICE News

  December 11, 2014

- WLKY's Debbie Roberson: A Temp Job-Turned-43-Year TV Career - StyleBlueprint

  April 28, 2019

- Adrian Belew on his new record, Pop-Sided - Louisville Eccentric Observer

  April 3, 2019

- UTC softball sweeps Sunday doubleheader to get to 10-1 - WRCB-TV

  February 24, 2019

- Kentucky musicians featured on CMH 23 TV series - kentuckycountrymusic.com

  November 29, 2019

- Flipping the Bird - Forage - SRQ Magazine

  May 7, 2019

- Amaris Ketcham: A Poetic Inventory of the Sandia Mountains at Bookworks, Albuquerque - Weekly Alibi

September 14, 2019

- Benedictine: the Burnley miners' favourite - Stuff.co.nz

  January 11, 2020

- Kevin Williams: The Hilarious Guy Behind Gaither Shows - Country Thang Daily

  November 7, 2019

- Changes to Kentucky's special license plates to take effect Dec. 30 - WMKY

  December 19, 2019

- Ricky Skaggs, Rhonda Vincent and More Earn 2019 International Bluegrass Award Nominations - Wide Open Country

  July 25, 2019

- Julie Dolan - WLKY Louisville

  July 30, 2018

- Dolly Parton, Ricky Skaggs, Marty Raybon & More Earn International Bluegrass Music Awards Nominations - nashcountrydaily.com

  July 24, 2019

- Sturgill Simpson visits schools in Kentucky hometown - WKYT

  September 1, 2018

- You can sip a $1,000 mint julep at the Kentucky Derby — here's what makes it so pricey - CNBC

  May 5, 2018

- Final last call at old Century Bar to include Jager, big New Year's bash - dayton.com

  December 30, 2019

- Watch Del McCoury & Peter Rowan Pick & Grin At Roots Revival [Videos] - Live for Live Music

  October 12, 2019

- Roland White And Friends Bring New Life To An Honored Legacy - Broadway World

September 10, 2018

- KET to host preview of Ken Burns' documentary Country Music in Somerset - kentuckycountrymusic.com

  August 7, 2019

- Billy Ray Cyrus to perform at Titans Salute to Service - kentuckycountrymusic.com

  November 6, 2019

- The $1500 Patrón-and-Old Rip Van Winkle Mint Julep - UrbanDaddy

  May 4, 2018

- Council of Whiskey Masters Announces Inaugural Advisory Board Members - wineindustryadvisor.com

  November 15, 2019

- Adrian Belew Is Now A Colonel In Kentucky - Noise11

  June 13, 2017

- KFC bringing Colonels to Super Bowl LI for its 1st appearance as a Super Bowl brand - Marketing Land

  February 1, 2017

- That Time When Hunter S. Thompson Stopped For A Photo - Louisville Eccentric Observer

  July 17, 2019

- Steve Wariner inducted into Musicians Hall of Fame by Garth Brooks - kentuckycountrymusic.com

  October 23, 2019

- Here's What A $1000 Mint Julep Looks Like - Guestofaguest.com

  April 10, 2018

- Australian Author Nick Adams Recently Spoke at the Republican Club of Longboat Key March 12th Dinner at the Longboat Key Club - Broadway World

  March 17, 2019

- Tyler Childers releases new single and lyric video with All Your'n - kentuckycountrymusic.com

  June 21, 2019

- 'Kentucky Colonel' award for MK Stalin - Daily News & Analysis

  February 26, 2012

- 2019 Bluegrass Awards: Del McCoury, Billy Strings Win Big at IBMAs - Rolling Stone

  September 27, 2019

- The Kentucky Derby's Most Expensive Mint Juleps Are Off To The Races - Forbes Now

  April 30, 2018

- WWE News: Stephanie McMahon Watches Women's World Cup, Titus O'Neil Receives Honor From Kentucky, Samoa Joe Tweets About His Nephew - 411mania.com

  June 25, 2019

- July 03, 2015 The American Colonel Who Changed Asia By Colonel Robert Farley Who is the - The Diplomat

  July 3, 2015

- New Louisville program transports stranded, homeless people home for free - WDRB

  January 18, 2019

- Reverend Peyton's Big Damn Band is pretty small - San Diego Reader

  November 6, 2013

- The Mint Julep: 'The Very Dream of Drinks' - The Atlantic

  April 30, 2010

- Josh Hutcherson Was Almost Named Colonel Fightmaster and What?! - PureWow

  January 9, 2019

- Sextons Creek Names Cardwell Senior VP - Inside INdiana Business

  March 23, 2017

- Kentucky Derby Festival crowns new Royalty Court for 2018 - The Lane Report

January 9, 2018

- Learn to Play the Texas Fiddle Favorite "Beaumont Rag" - Acoustic Guitar

  August 3, 2019

- Plan your Mint Julep Month with creations from these 11 Charleston bars - Charleston City Paper

  April 17, 2019

- Nikki Haley So Sad Dylann Roof Made Confederate Flag All Racist - Wonkette

  December 6, 2019

- The Colonel's Real Secret Blend - Slate Magazine

  October 16, 2013

- Colonel Knowledge: J.D. Wilkes and the Dirt Daubers Try to Put the Edge Back in Roots Music - Cleveland Scene Weekly

  June 25, 2014

- Darrell Hammond Is Your New Colonel Sanders - Esquire.com

  May 19, 2015

- The Manual Podcast - The Manual

  August 20, 2019

- KFC Is Giving Away Colonel Sanders Pool Floaties — This is Not a Drill - The Manual

  May 24, 2018

- Kentuckians Share Memories of Kennedy Visit, 1963 Assassination - WKU Public Radio

  November 21, 2013

- What Goes into Making Woodford Reserve's $1,000 Mint Julep for the Kentucky Derby - TownandCountrymag.com

  May 3, 2018

- A look back at 2019 with Kentucky Country Music - kentuckycountrymusic.com

  December 31, 2019

- Something Old And Something New From The Prolific Jim Lauderdale - WMOT

  August 2, 2018

- Key West Round-Up - Powerboat Racing World

  November 12, 2019

- Poll: Honeymoon Over for Kentucky Governor Matt Bevin - WKMS

  May 31, 2016

- 20 Things you didn't know about Dave Adkins - Bluegrass Today

  May 24, 2018

- Chris Stapleton to be featured in special Hall of Fame exhibit - kentuckycountrymusic.com

  December 4, 2019

- Kentucky natives Loretta Lynn and Josh Osborne awarded for songwriting - kentuckycountrymusic.com

  September 18, 2019

- The World Of Maybelle Carter: A Turning The Tables Playlist - WAMU 88.5

  August 12, 2019

- Matt Bevin defends pardon of convicted child rapist in radio interview - msnNOW

  December 20, 2019

- Arts Around Ann Arbor - Pulp

  November 27, 2019

- State, local officials break ground for new Kentucky Owl Park distillery project - Nelson County Gazette

  November 9, 2017

Subscribe to this Feed

# Kentucky Colonels International Blog

---

🖼 **kycolonels.international**/news/blog

🔗
# KCI Blog

Members and news readers can access our blog using their web browser online or by subscribing to our Feed Burner Feed which renders as RSS, it is also available using you mobile device or can be sent directly by email when we publish new articles by Blogger.

🔗
# Member Provided Social Media Content

The **Kentucky Colonels International Blog** is a website used to promote and network news articles that are presented by members for development and integration into the historical record and to present our works in a concise written format for republication and sharing in the social media. The service uses Blogger one of Google's best and most active publishing services.

The blog features our own news releases, republished popular news articles, and articles that are found online which are condensed or rewritten for representation to our readers. The blog also connects and links members that have been

recognized following the distinction of being made a Kentucky
colonel that are actively promoting and serving the
Commonwealth of Kentucky as its Goodwill Ambassadors.


Report abuse

# Public Relations

kycolonels.international/news/publicity

🔗

# Publicity for Kentucky Colonels

As a service to our members who support our organization with donations our foundation offers online public relations and promotions of their events and projects where they represent themselves as Kentucky colonels. The content we develop can be used in the social media, online in their websites, and circulated to newspapers or other media providers in their region, nationally or internationally by email and facsimile.

To create a higher profile for our organization that is more broadly recognized on an international scale and bring prominence to the commission of the Kentucky Colonel title our organization has developed an ad hoc decentralized public relations initiative which connects the media with our officers. Currently the program is experimental and not very well funded, we are confident however that with some success the program will gain notoriety.

🔗

# News Release Guidelines

We have guidelines for members to be more successful in promoting themselves as Kentucky colonels when they initially receive their commissions and when they are participating in events or activities that they organize.

The information and consulting we provide is only available to members who are officers or by making contributions. If you are a member of a local chapter contact your representative officer for additional details, or if you need our help we will be glad to do do using email.


Report abuse

# Our Officers

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**kycolonels.international**/officers

🔗

# Commissioners

The commissioners are the functional organizing members, though they are subject to change, together they serve initially as co-founders for the consolidation and development of the organization. The initial commissioners were selected based on their training, knowledge, experience, and contributions to this formation. They are all transparent, of high moral character, and serve our commission honorably without remuneration.

- **Col. David J. Wright** - Cited for his achievements as a conservationist with Ecology Crossroads in 1996, when his tree program made the front page of the Louisville Courier-Journal in April, garnering the attention of Judge Ray Corns and Governor Paul Patton who commissioned him a Kentucky colonel, a title he takes in the highest-regard and understanding.

- **Col. Joshua D. Wilkes** - Lauded as a colonel in 1997 by Governor Paul Patton based on his work as a folk artist with the Legendary Shack Shakers. Col. Wilkes takes the honor seriously and uses the title as part of his name. Since becoming a Kentucky colonel he has authored a book about Kentucky's music and a novel about folklore. Today he continues to perform his stylistic themed music in Kentucky and abroad. In 2014 he was selected to represent Paducah in a cultural exchange to Ireland and Scotland with UNESCO.

- **Col David L. Younce** - Earned the award for his dedicated work with non-profits while working with teenagers to help them grow into mature young men and women. The recognition came in 1999 while Col. Younce was working with the Civil Air Patrol he also worked with police cadets and scouts in Oregon during the 70s and 80s, becoming a Kentucky colonel came as a surprise, it is an honor he holds close to his heart and lives up to everyday.

- **Col. Jon Meier** - Commissioned by Governor Steve Beshear in 2008 after being recognized for his service and leadership in the Boy Scouts of America when he obtained the rank of Eagle Scout in Berea, Kentucky. Today the colonel lives and works in Utah as a realtor and maintains the honorable title in high regard as a goodwill ambassador for the Commonwealth.

- **Col. Karen S. Cantrell** - Recognized for her work in the development of charitable efforts and upon becoming the Vice President of the UNA for the Inland Empire in California by Gov. Steve Beshear. Today she is the President of the United Nations Association of the Coachella Valley and continues her work with charities. In her local community she supports the fire department and provides guide dogs for the disabled

- **Col. Luis Cruz Diaz** - Became a Kentucky colonel in recognition for his community service and social media efforts as a consultant when he became the Secretary of Globcal International. Col. Cruz Diaz lives in Puerto Rico and was commissioned by Gov. Steve Beshear where he continues to work in his community and online with the United Nations SDGs.

- **Col. Michael L. Sher** - Indigenous artist and activist from Greater Toronto that was noticed for designing and introducing the International Indigenous Unity Flag as a symbol of unity and solidarity among indigenous people around the world. Since becoming a Kentucky colonel his flag has reached tribal communities living in 6 continents.

- **Col. Nicholas A. Wright** - Awarded the commission of the Kentucky colonel by Governor Steven Beshear based on winning a National Science Foundation (NSF) Scholarship for advancing solar energy technology while attending Western Kentucky University in Bowling Green.

- **Col. Maria Veneke Ylikomi** - From Sweden, Col.
  Veneke was bestowed the honor for her work in
  Cambodia as a volunteer and authorship of a book on
  the four big cats. She is a researcher, writer, peace
  advocate, and goodwill ambassador in every sense.
  She travels frequently to places around the world and
  talks about Kentucky to others when she does.

# Order of the Kentucky Colonel

 **kycolonels.international**/order


## Understanding the Order

The prestigious **Order of the Kentucky Colonel** is the oldest,
highest distinguished order of merit and recognition that can
be awarded to a civilian in the United States, it has been
awarded by the Commonwealth of Kentucky since 1813.
Today it is awarded to noteworthy individuals that are
nominated by holders of the "honorable" title. To be
designated to the **order** a person must demonstrate strong
moral character and be noteworthy for having accomplished a
good deed or service to community that deserves the
recognition of the Governor of Kentucky.


## Realizing the Commission

Only the serving Governor or the Secretary of State of the
Commonwealth of Kentucky can designate who will be
recognized based on nominations made by other Kentucky
colonels that were ordered (commissioned) already, his/her
own personal recognition of an individual for their
noteworthiness or based on letters written by Kentucky
citizens or government officials that warrant attention and
recognition.

Once a person is distinguished with an order it is for "life" as a recognition in full regard. An "Order" is not an organization, but a "title" under a "commission" as is the case for the **Order of the Kentucky Colonel**.

Wikipedia says: "An **order** is a visible honor awarded by a sovereign state, monarch, dynastic royal house or organization to a person, typically in recognition of individual merit, that often comes with distinctive insignia such as collars, medals, badges, and sashes worn by recipients.

Modern honor systems of state orders and dynastic orders emerged from the culture of orders of chivalry of the Middle Ages, which in turn emerged from the Catholic religious orders."

In another section it says: "A **state order**, or **national order**, is an order bestowed by a sovereign nation or state as part of an honors and recognition system. These orders, conferred for the merit of the recipient(s), are typically categorized as either orders of chivalry or orders of merit."

The **Order of the Kentucky Colonel** (Commission or Title) should not be confused with **The Honorable Order of Kentucky Colonels, Inc.** (est. 1932), which is a private non-profit charitable organization focused on developing their "Good Works Fund" in Kentucky; their organization operates a donorship program, raises funds for charity, and sell gifts (memorabilia) from their website to those who have been commissioned with the "Order of the Kentucky Colonel" whom are all invited to participate in the activities they promote.

🔗
# About the Order

The **Order of the Kentucky Colonel** is one of the greatest accolades of honor and distinction in the United States, it holds a rich history of evolution and tradition which stands apart from all others. It began as a special rank in the Kentucky Militia, evolving to the ideal of a Southern gentleman, finally to become the highest civilian honor resulting in the designation of "goodwill ambassador" for the Commonwealth. The **order** is often misunderstood today as a military order; whereas in reality is a state order, an order of merit, and a civil order.

Recipients who receive and accept the **Order of the Kentucky Colonel** are expected to live up to the honorary recognition reciprocally by being a model citizen that is considerate, fair, generous, kind, and understanding. Those distinguished are entitled to use "Honorable" or "Colonel" before their birth name in civil society and daily life; through the issuance of letters patent they can legally represent the state as its official goodwill ambassadors and are permitted to perpetuate the order by nominating others that they recognize for their deeds and noteworthy accomplishments.

🔗
# Entitlements of Letters Patent

Legitimately because of the wording and presentation the certificate is a form of "letters patent" that can be presented diplomatically to another head of state in representation of the Commonwealth of Kentucky. Symbolically it identifies the "Colonel" as an "Aide-in-Camp" to the Kentucky Militia that has been commissioned as an honorary lifetime representative of the Commonwealth acting as a "goodwill ambassador" from the state, designated under one of its Governors.

Letters patent is not diplomatic exequatur, but it is permission to represent Kentucky customs, traditions and values through the honor of a colonelship commission as a goodwill ambassador. Most persons sent by the Governor outside the state are eligible to become Kentucky colonels before or after they are dispatched.

Other states offer awards, honors and titles for their model citizens and for heroic acts as well, it is debatable as to whether they can all be considered to be "letters patent" unless they are employed as such in law, many are not issued as an order understanding a commission, but as a single award of merit.

Most of the awards given by other states and most nations are given similarly as orders of merit, some military orders and others are official state orders issued by the head of state.

The Order of the Kentucky Colonel represents a civil award and decoration, it is not a chivalric, dynastic, fraternal or religious order. People are **not named to become a Kentucky Colonel as a novelty**, but as an honor in recognition of a notable deed; however there is some fun that may found in the ideal of being a Kentucky colonel among friends relative to the Southern gentleman style and the world-famous Col. David Harland Sanders' (founder of KFC) in his expression of a Kentucky Colonel, who became one and used the title 120 years after it was established.


Report abuse

# Resources

## Resource Listing

There are a great number of resources available to Kentucky colonels who are interested in extending their honorable title through community involvement and benevolent societies around the world that are established by other colonels.

### Websites
- Kentucky Colonels International (KCI)
- Honorable Order of Kentucky Colonels® (HOKC)
- Kentucky Colonels Switzerland
- UK Brigade of Kentucky Colonels
- Kentucky Colonels Amateur Radio Club
- Kentucky Colonels of Central and Southeastern Kentucky
- German Brigade of the Honorable Order of Kentucky Colonels
- Philadelphia Kentucky Colonels

### Facebook Pages
- Kentucky Colonels International (KCI)
- Honorable Order of Kentucky Colonels (HOKC)
- I'm proud to be a Kentucky Colonel
- Tri-County Kentucky Colonels
- Philadelphia Kentucky Colonels
- Kentucky Colonels Spain
- Kentucky Colonels Switzerland
- Antipodean Brigade of Kentucky Colonels
- Kentucky Colonel Henderson Chapter

### Facebook Groups
- Kentucky Colonels International
- Kentucky Colonels On Facebook
- Honorable Order of Kentucky Colonels, New York City
- Pennyrile Area of Kentucky Colonels
- Georgia Masonic Kentucky Colonels
- Kentucky Colonels of Virginia
- Kentucky Colonels - Toronto Area, Canada and Abroad
- Georgia Chapter of Kentucky Colonels
- Honorable Order of Kentucky Colonels- Central PA
- KY Colonels in Action

## Other Useful Resources

- The Kentucky Encyclopedia - Kentucky Colonel
- Wikipedia article about the Kentucky Colonel
- Wikipedia article about the Goodwill ambassador
- First website dedicated to Kentucky Colonels *(colonel.org)

## Pre-Historical Resources

- The Kentucky Colonel: Richard M. Johnson and the Rise of Western Democracy

## Not so Useful Resources

- English Sheepdog Named a Kentucky Colonel (UPI News, 1980)

© 2020 Kentucky Colonels International Commission and FoundationMember of the Goodwill Ambassador FoundationAdministered by Globcal International (UN-iCSO)

# EXHIBIT 4

# TO MOTION FOR RESTRAINING ORDER

**Donate to**
**Ecology Crossroads Cooperative Foundation**

Purpose: Kentucky Colonels International

| $25.00 USD | $50.00 USD | $100.00 USD |
|---|---|---|

Other Amount

☐ Make this a monthly donation ?

Donate with PayPal

or

**Donate with a Debit or Credit Card**

Cancel and return to Ecology Crossroads Cooperative Foundation

Help & Contact (https://www.paypal.com/selfhelp/home) Security (https://www.paypal.com/webapps/mpp/paypal-safety-and-security)

English



©1999-2020  PayPal, Inc. All rights reserved.  |  Privacy (https://www.paypal.com/US/webapps/mpp/ua/privacy-full)

Legal (https://www.paypal.com/US/webapps/mpp/ua/legalhub-full)    Policy updates (https://www.paypal.com/US/webapps/mpp/ua/upcoming-policies-full)

# EXHIBIT 5

# TO MOTION FOR RESTRAINING ORDER

Case 3:20-cv-00132-RGJ Document 1-5 Filed 02/24/20 Page 132 of 23 PageID #: 279
Case 3:23-cv-00043-RGJ Document 99-4 Filed 03/29/23 Page 133 of 283 PageID #: 2994



**Blog**  News  Website

## Friday, February 7, 2020

# Kentucky Colonels: Past, Present and Future

**News Release**

**News for Immediate Release**



Kentucky Colonels in the News

**RICHMOND, Kentucky** — Beginning last year **Globcal International**, an international civil society organization from Kentucky that is registered with the United Nations entered into discussions to negotiate with **The Honorable Order of Kentucky Colonels**, a Louisville based charity, over a potential merger to assimilate their fraternal membership organization, **Kentucky Colonels International**. The merger proposal came following numerous attempts by the Honorable Order to terminate the operations and development of their fraternal counterpart which began online in Berea in 1998.

The **'Order of the Kentucky Colonel'** was established in 1813 as an award of merit and honorary title given to civilians by Governor Isaac Shelby who commissioned Charles Stewart Todd, one of his officers in his campaign, as an aide-de-camp on the Governor's Staff with the

rank and grade of colonel. Subsequent governors adopted the practice and the title of the 'Kentucky Colonel' became an integral part of the state's tradition and customs.

In the early part of the 20th century, Kentucky colonels began to come together to form sociopolitical and fraternal organizations in the state, most of which are gone now. Today there are well over 100,000 Kentucky colonels living in more approximately 70 countries around the world and there are at least twelve associations that have been established for social and fraternal purposes to promote fellowship in various countries including Germany, Spain, Italy, Canada, Switzerland, the United Kingdom and several others, there are currently four based in Kentucky including Kentucky Colonels International.

The oldest and largest, of all these organizations is The Honorable Order of Kentucky Colonels which was started by Governor Ruby Laffoon in 1932, who was the same governor that commissioned the famous Harland David Sanders, which later went on to start the restaurant chain known today as KFC. In 1957 the organization consolidated itself as a charitable and educational organization by filing its Articles of Incorporation with the state where the Governor of Kentucky once appointed a Commanding General for each of the US States. In 1992 they amended their legal documents privatizing the organization from the government and removed the powers of the governor and members; on page 9 of the organization's "Restated and Amended Articles of Incorporation" that are on file in Frankfort, Kentucky, the document states that **"The Honorable Order of Kentucky Colonels has no members."**

After amicable discussions between Col. David Wright, Executive Director of Kentucky Colonels International and Col. Sherry Crose, Executive Director of The Honorable Order of Kentucky Colonels, Inc. which began at the end of 2019 Col. Wright submitted a merger proposal on January 13, 2020 to the executive director of the Kentucky based charity's board which would have allowed the organization to assume control over the international membership association as one of their own programs. On the 20th of January, Col. Crose informed Col. Wright that the merger offer he submitted was rejected by the Honorable Order's Board of Trustees.

The Honorable Order approached Col. Wright in 2001 and 2016 with their legal counsel and once again in 2018 with their executive director in efforts to terminate (interfere) the membership organization's legal formation, ideals, plans, and development, which states that it was formed to create a **"true membership"** organization by *Kentucky colonels for Kentucky colonels using their letters patent issued by the governor*. With these numerous attempts to derail the fraternal international organization, Col. Wright decided to approach them with a fair proposal so the Honorable Order could adopt the international membership program they developed to avoid

further conflict and confrontations.

Col. Wright stated on Facebook and across the social media that he would attempt to resolve the inconsistencies he found with the Honorable Order directly with them, when he denounced them in a blog article that he wrote in November 2019, voicing his opinion over collaboration between the rival organization with former Governor Matt Bevin who had worked unilaterally with the Honorable Order to enact a decision in 2016 **which forces Kentucky colonels to donate annually to their private charity in order to preserve their privilege to make nominations** of new colonels to the governor's office.

While Col. Wright agrees that colonels should be active as goodwill ambassadors (their official role granted through the title and certificate), requiring that they donate annually to the private charity in order to retain a privilege granted by the governor is unethical and unjust, especially considering that it had not been required for over 200 years by the Commonwealth.

Under the suggestions of his organization's membership Col. Wright decided to try the old adage, "if you can't beat them, join them" and 'reactivated' his own membership by making a donation to the Honorable Order before submitting the merger proposal to them, to demonstrate goodwill. Now however, since they rejected the proposal the colonel has decided to "go public" with the facts, stating that "the Honorable Order is perpetrating a fraud by misleading other Kentucky colonels to believe they are members of an organization that does not have any members or any provide benefits as a membership organization as defined by US law" as evidenced in a recent editorial and this news release.

Most of the details regarding the merger proposal are covered under a confidentiality agreement made between the two organizations, so only publicly accessible information can be discussed by either party. What can be said is that Col. Wright is currently taking progressive steps to formalize Kentucky Colonels International, he has reinstated his umbrella organization Ecology Crossroads on January 21st in Kentucky's capitol, and has registered a new website domain. He has also formed an international commission which includes J.D. Wilkes, Karen Cantrell, and other notable colonels listed on the website.

Col. Wright also addressed his concerns of the impropriety with Governor Andy Beshear in a confidential letter delivered to his dispatch on January 21st after reinstating his non-profit. Concerns he raised include the sharing of private personal address information of future colonels with the Honorable Order and removal of the charity from the government website as it shows preference to them and leads colonels to believe that they offer a genuine membership privilege or are somehow an official agency of the state. ###

Copy of this News Release originally written on February 06, 2020 can
be found online in the following formats: [ PDF | Web | Docs ]
Members of the news media can contact us by email or at the phone
number provided in the PDF version..

By David J. Wright on February 07, 2020 ✉

Labels: Col. David Wright , Globcal International , Governor of
Kentucky , Honorable Order of Kentucky Colonels , Kentucky Colonels
International , membership organization , Order of the Kentucky
Colonel

# Kentucky Colonels International: Restoring Traditions and Customs

## Defending the Ideals of the Kentucky Colonel

### Becoming a Kentucky Colonel and Ambassador of Goodwill

*Editorial by Col. David J. Wright*

There is really nothing
much more important to
me today than being a
Kentucky colonel and
working as a recognized
goodwill ambassador with
the United Nations
Sustainable Development
Goals Agenda.

Becoming a Kentucky
colonel is an esteemed
honor, one that I hold in the
highest regard. While
some people like to joke
with me about it, when
they learn I am a Kentucky
colonel, I also know they



Commonwealth of Kentucky Coat of Arms (1876)

Case 8:20-cv-00043-CJH   Document 99-4   Filed 03/23/20   Page 137 of 283 PageID #:3998
Case 3:20-cv-00451-JRW   Document 1-5   Filed 02/12/20   Page 6 of 23   PageID #:282

are kidding around and their jokes are in good jest and humor, especially when among close friends. It is not a tongue-in-cheek award like the Admiral of Nebraska, or something that should be taken lightly by those who are commissioned. Becoming a Kentucky colonel is a great honor in-deed and legal status denoted with letters patent.

I was conferred the lifetime commission in 1996 for bringing attention to the Commonwealth of Kentucky by Governor Paul Patton. The governor recognized me for a program that I had developed for Arbor Day and distributing millions of tree seedlings across the United States for urban reforestation to homeowners and organizations, a program I began in 1994 in Lexington, Kentucky following an ice storm that devastated the area. It came as a great surprise to me at the time and was presented to me by a good friend, the Honorable Col. Judge Ray Corns.

Being a Kentucky colonel has been more important to me than even my university degree, while I may have learned much of what I know from studying philosophy, it is not something I have ever bragged about much or considered noteworthy in my work as an international goodwill ambassador, although I am sure it has been a bonus to my critical thinking process. One thing I do know is that it is "indeed" a great privilege to hold the honorable title of the Kentucky Colonel.

## Starting Kentucky Colonels International (1998)

I was so impressed with becoming a Kentucky colonel that while operating the tree program, I decided to start an unincorporated association (using the skills that I learned as a web developer with the tree program, which by then was online) for others that were recognized as Kentucky colonels by the state's governor. In the process of developing the organization I discovered that the Honorable Order of Kentucky Colonels, to which, I implicitly belonged, was actually a private charitable organization in itself. However, when I became a Kentucky colonel in 1996, I was led to believe that it was somehow a part of the state, since the state sent me the initial information regarding them.

The next thing I knew after becoming a colonel, I began receiving frequent solicitations in the mail for donations from the organization several times a year; to which I donated on several occasions.

In setting up the membership organization having some professional experience in the law, research ability, and an intrepid nature I went to the state capitol to research more and discovered that the Honorable Order had **Amended and Restated Articles of Incorporation** on file there, upon reading them I discovered the organization has no

members. This confused me somewhat as they had sent me a paper
membership card, which I laminated each year. This led me to visit
their office, review government archives, and I even went to the public
library in Louisville to learn all that I could about the organization and
the distinguished honor that I was awarded.

What I discovered at the time, was that all Kentucky colonels were
automatically considered their members, although the organization
*did not have meetings or allow members to actively participate in the
decisions made by the operations, management, or administration of
the organization* like other membership associations. Their main
activity was strictly charitable in nature, raising money for the Good
Works Fund, holding an annual fundraising barbeque, and going to the
Kentucky Derby; all of which are very nice, but not exactly what I
thought being a Kentucky colonel was all about. Based on the
research I performed justified me continuing with the endeavor of
developing the organization I was forming online at [colonel.org]
which was focused on developing membership services like a registry
and websites for our members, at the time we already had nearly 100
members.

Considering all of the facts that I discovered about the Honorable
Order it is probably more appropriate that they call their so-called
members, 'donors or supporters', especially since they do not have
bylaws that could be read by anyone except their officers, which they
refer to as their Generals. It all sounded official enough, as it already
led me to assume that I was part of something important that was
really not as official as I believed it was. Looking back at the website
on the Internet Archive and the chronological events surrounding its
development, I had also offered to volunteer to help them develop a
website prior to our beginning in 1998, an offer which they flatly
rejected stating that they "did not need a website."

As it seems they like to call their donors and supporters, their
members, but do not afford them any privilege or voice to express
opinions or participate in any meaningful way. Legally, a membership
organization in the United States under the law must provide bylaws
to their members, allow members to control the organization, and give
members a voice through providing voting privileges. None of these
things were true about the Honorable Order, then or now.

## Moving on with a Kentucky Colonel Feather in my Hat

In 2000 and 2001, I received letters warning and threatening me from
the legal counsel for "The Honorable Order of Kentucky Colonels, Inc.
stating **that the website I created was illegal, violated their
trademark rights, and that I should cease and desist**. I never

replied or acknowledged the letters; actually, I did not think much of it at all, as I was in a transition period in my life to move overseas and work as an ambassador for the City of Caracas in Venezuela. So, I let the website I developed expire while I published a message on the website for the members suggesting they support the Honorable Order of Kentucky Colonels. In the meantime I moved to Venezuela to collaborate with the mayor of a city of 5 million people as a professional ambassador to the United States in a Sister Cities project from Caracas to Miami and Fort Lauderdale.

A few years after becoming an official ambassador (thanks to my Kentucky colonelcy), the city's mayor was ousted by the socialist government currently running Venezuela. This caused me to get an extra bitter taste for politics (something I had already acquired in Kentucky), so I moved on to the private sector working as a business consultant and analyst. One of the things that impressed Venezuelan business owners the most was the fact that I was a Kentucky colonel, more so than my experience as their city's former goodwill ambassador. It was at that time that I vowed never to represent or be involved in political or religious agendas or ideals again.

## A New Start for Kentucky Colonels International

Several years later with the advent of social media, I decided to join Facebook and one of the first things I found online were groups with other Kentucky colonels so I joined all of them. The following year I became the administrator of one of them, and in 2008 I began to convince other group administrators and members to become part of a new objective I started online called the Model United Nations Social Networking Embassy (MUNSNE), since I recognized them as Kentucky's goodwill ambassadors. MUNSNE evolved to become Globcal International which continues today. It was led by myself and other aspiring social media advocates with the ideal of spreading goodwill to affect social change. The organization was so effective in the social media at the time, we went to meet with President Barack Obama at the Summit of the Americas in Trinidad in 2009 for his endorsement.

Globcal International became self-sufficient and it was quickly developing new programs with many others. I decided to focus on the formation of my own project in the Northern Amazon called Ekobius in 2011, while remaining as one of the organization's ambassadors and the administrator of **Kentucky Colonels International**.

Perhaps one of the worst decisions I have ever made with Globcal International, was I decided to give the opportunity of serving as the president to an inspiring young idealist who had great brave ideas he

Case 3:23-cv-00043-RGJ Document 99-4 Filed 03/29/23 Page 140 of 283 PageID #: 3901
Case 3:20-cv-00432-JRW Document 9-5 Filed 02/24/20 Page 9 of 23 PageID #: 235

wanted to implement which I could not achieve at the time being located in Venezuela. When we changed the administration to recognize a new presidential figurehead from Saudi Arabia, he incorporated Globcal International in Washington, DC. in late 2010 and the effort began to take off further; however because he allowed his personal endeavors to get in the way of the organization, the gusto soon fizzled and in late 2012 I took the organization back to reform it, decentralizing it as an unincorporated offshore organization with several of the original members, which continues today under my authority. The organization has also been reincorporated as of last week in Kentucky as part of the organization that I founded to distribute trees.

On the other hand, one of the best decisions I ever made early on in the formation was when I decided to relaunch Kentucky Colonels International in 2009 as one of the social media objectives of the groups I belonged to on Facebook. Many of the people we have today in Globcal International are Kentucky colonels, some of whom have become our most valued members.

In retrospect I made a series of high risk decisions starting with leaving Kentucky and moving to Venezuela, (risks that most are fearful of in many respects) but nonetheless, by never giving up on my ideals and doing what is right for others, the strongest and most worthwhile endeavors remain through my persistence and determination.

## Our Motto - One Good Turn Deserves Another

In the *reestablishment* of **Kentucky Colonels International** as an informal objective and unincorporated membership association we were once again becoming very active on Facebook. In 2016, we were approached again by legal counsel representing "The Honorable Order of Kentucky Colonels, Inc." who was insisting, now 15 years later, that we were infringing on their trademark rights again, so we agreed to post a disclaimer on our Facebook page which at the time we understood was to be reciprocal. While we have made this abundantly clear to those who join our groups and read our page, they have never once reciprocated on their website or Facebook page.

In 2018, when our Facebook members began discussing online that we were interested in establishing a registry for Kentucky colonels because they were interested in being better known for their commissions and the reformation of a membership development; we were approached by the Honorable Order's Executive Director, Col. Sherry Crose who expressed a desire to work together with us on the project we were planning and asked us to postpone our development until January of 2019, which we agreed to do. After all they are the

Case 3:20-cv-00132-RGJ-CHL Document 1-5 Filed 02/21/20 Page 141 of 283 PageID #: 300

kings of the realm, earned the respect of many famous Kentucky colonels, and were being provided all the names and addresses of all the new Kentucky colonels being commissioned by the Governor through the office of the Secretary of State under state policy. However after not receiving any further collaboration or messages from them, we decided to move forward with the development later in the year.

Around the same time in November 2019 I also wrote an article on the Globcal International blog expressing our position on the current nomination procedure and potential impropriety that we began to address over these changes made in the procedure which required that *Kentucky colonels make donations to the Honorable Order to be able to nominate new colonels, and which needed to be done online instead of in writing*. These changes were implemented under former Governor Bevin and in my opinion (in retrospect) **were done to give deference to the organization**, *without regard to our formation or any other legitimate organizations* that were set up by Kentucky colonels (each with their legal letters patent) inside Kentucky or abroad. His actions, however, could have been based on the lack of understanding and knowledge which he admitted when he suspended the nominations in 2016 for review by his office, prior to changing the policy.

The first one to sign up for our registry project and membership program being developed was the HOKC Executive Director, Herself, Col. Sherry Crose who submitted the fee, but neglected to complete the form requesting personal information. All the other registrants did complete the form, however we discovered some errors in the form and the process, so we temporarily suspended the program. Meanwhile in late December, I decided to initiate a discussion with the Honorable Order to either assist us in our project or perhaps merge our membership program into their own organization. While contacting the executive director to inform her that she neglected to complete the registry form, after some greetings I suggested we explore the possibilities of a merger to allow them to gradually assume control over our Facebook groups and the online registry program; the HOKC executive requested that we submit a proposal for review by the Generals (their Board of Trustees).

## Never Underestimate Goodwill and Integrity

Over the years as a Kentucky colonel and an ambassador I learned a great deal about honor, respect, transparency, and integrity; which in a sense made me into a watchdog looking out for corrupt and inappropriate behavior to protect the organizations that I founded. Even with volunteers I learned to become very cautious and looked into the background of most of our members, I was careful not to permit those who were involved in shaky political or religious agendas

as it could tarnish our image.

In the process of preparing the proposal we discovered that the Facebook groups we have online were infiltrated by HOKC Generals, the president of their organization, the social media liaison, their grant administrator and other loyalists, none of whom ever presented their commissions, participated in the social media forum, or made any posts in either of the two groups we administer. This gave us reason to believe that they were there snooping on our membership activities, as informants and potential disruptors rather than as our own members. I learned this when I tried to propose a longer, more qualifying method for nominations to the groups that was used by previous governors suggesting written nominations by postal mail, when the organization's grants administrator spoke up commenting defending Governor Bevin's (their own) policy in one of the groups. As a result, the decision was made to remove all of the HOKC staff we could identify prior to submitting the proposal. Before we submitted our proposal to merge, we also reviewed many articles, an op-ed piece by their executive director, and many other documents that the organization has distributed over the decades to better include their needs in the proposal. Nonetheless the proposal we submitted on January 13th was rejected by the 20th, without a counter offer or any collaboration on their part with our membership program.

All of their activities taken against us and decisions made were contrary to the spirit of the state motto, "United We Stand, Divided We Fall." In my opinion, after so many years of controlling the ideal of what a Kentucky colonel is and denoting what a Kentucky colonel should do or does; they are acting as if they the king of the castle or elitists, which they should not. All of their intentions have been focused on alienating us rather than embracing the ideals and altruistic benevolent values which most Kentucky colonels collectively share.

So now here we are now, turning the table around after suffering great harm, being misled, spied on, and mistreated following numerous threats by lawyers advocating for dominance over thousands upon thousands of Kentucky colonels that have been granted "letters patent" to serve as the state's goodwill ambassadors (the only official duty they can exercise). This now puts us in a position to stand up to the HOKC without being bullied anymore or *deceived into believing that our only duty and privilege as Kentucky colonels is to fund their charity and support the causes selected by their generals.*

Kentucky is part of the United States and in the United States we have rights under the Constitution, the right to free speech, the right to be heard and the right to assemble. A good friend, one of our new commissioners, Honorable Col. J.D Wilkes reminded me of this recently after appearing in a feature article in Louisville a couple weeks ago and getting his article shared on our Facebook page, when

we made contact once again. He had joined our original group formation in 1999, something I only learned the other day when reviewing the Internet Archive.

## Standing Under the Law

Under the rights we possess provided by the First Amendment of the United States' Constitution, the US Code, and the Statutes of the Commonwealth of Kentucky we are here to recover the organization that we should have had, based on all that we have learned and come to understand. Someone needs to answer for the malfeasance aimed towards us in 2001, the freedom of others, respect for the law, and answer in the consequence of the scare tactics they implemented to intimidate us in the past.

People cannot stand under a misguided authority, especially a charity that prospers by conducting deceptive practices. There are too many legitimate causes out there that work very hard for the money, Kentucky colonels are not people that should not be beguiled to believe that by channeling their energy through a single organization is better than the actions they can take independently in their own communities. As we suggested to the new Governor, if there is going to be a quid pro quo attached to make nominations, where, Kentucky colonels must make an annual donation to a Kentucky charity to remain active in *his own registry*, let each colonel choose themselves which charity or cause their money should support; or restore the Commission and its previous nomination procedure to the policy as it stood before Governor Bevin took his elected office.

Based on what we discovered about the HOKC organization, it is abundantly clear that **they have been misleading their donors and supporters for many years** into believing they are members, at least since 1997, where Gary Gupton their former executive director and senior ambassador writes in an introduction letter to those receiving their commissions, *"The members-only organization is reserved exclusively for those titled as Kentucky Colonels."* but it is also clear that the letter which was sent out as late as 2015 was fraudulent, because they did not have a website when he supposedly wrote it, moreover he did not have any members.

The HOKC's Amended and Restated Articles of Incorporation on file in Frankfort, that have been on file since 1992 clearly state in Article 13, **"The Honorable Order of Kentucky Colonels has no members."** Additionally, a similar statement made in Article 6 states, **"The corporation shall have no voting members."** Both of these items in this document are a clear violation of what it means to call yourself a membership organization under US law.

The US Code of Federal Regulations (CFR) defines the term

**membership organization** as:

> "an unincorporated association, trade association, cooperative,
> corporation without capital stock, or a local, national, or
> international labor organization that is composed of members,
> some or all of whom are vested with the power and authority
> to operate or administer the organization, pursuant to the
> organization's articles, bylaws, constitution or other formal
> organizational documents; expressly states the qualifications
> and requirements for membership in its articles, bylaws,
> constitution or other formal organizational documents; makes
> its articles, bylaws, constitution or other formal organizational
> documents available to its members; expressly solicits
> persons to become members; expressly acknowledges the
> acceptance of membership, such as by sending a membership
> card or including the member's name on a membership
> newsletter list; and is not organized primarily for the purpose
> of influencing the nomination for election, or election, of any
> individual"

The impropriety, deception, and fraudulent presumptive behavior does
not end here though, it goes to the core of the organization which
provides thousands of donors with membership cards each year that
have no validity or privileges connected with them, constantly
referring to them as members headed by generals without any real
authority over Kentucky colonels themselves. Each Kentucky colonel
with his/her letters patent is independent and in reality, reports directly
only to the governor. The HOKC is completely independent of the
government under the law. Despite this, no one has ever challenged
these ideas that they put forth or the decisions being made by their
Generals, not even the governors since 1992 are fully aware of what
exactly is going on. The **great deception** *of misleading Kentucky
colonels, channeling their ideals, and moderating their honor has been
taking place in plain sight well over 25 years*, instead of focusing on
bringing prosperity to the honorable title through those to which the
privilege truly belongs.

According to the Model Nonprofit Corporation Act, which defines the
legal rights of members, includes:

> "formal membership nonprofits have a board of directors, and
> **the members serve as the governing arm of the
> organization**. The nonprofit's bylaws and articles of
> incorporation define the rules for membership issues, such as
> how to become a member, and also detail the rights and
> responsibilities of members."

They provide medals based on the amount a person donates that
have no relation to valor or merit, but are basically for sale so they can

be shown off as if they were earned for some action. Some Kentucky colonels have them and others do not. While this seems strange in itself to those who I have spoken with who earn their brevets and medals, many organizations practice this, so it is probably one of the least questionable practices as to getting one signifies that a person has not done much more than make an above average contribution. Most Masonic Orders disagree with the practice as do others where recognition and degrees are earned as a person ascends the ladder as a member or based on an activity or achievement.

There is no room in America, not even in Kentucky, for a charity to operate ignorant of the needs of their members, **like a burgermeister or a 'good ole boys network'** which makes decisions for the benefit of the inner circle without giving due consideration to its constituents. Its principles are contrary to the democratic and social values of the Commonwealth and nation in which it was founded. In this case guiding an honorable and distinguished title that was bestowed without discrimination to so many fine ladies and gentlemen around the world based on their deeds, at their cost, with the sole purpose of developing and maintaining an organization where its members have no opportunity to participate within, to grow from or prosper within.

**United We Stand, Divided We Fall** - Kentucky entered the Union on June 1, 1792. A little over six months later, on December 20, 1792, the first Kentucky General Assembly adopted the official seal of the Commonwealth, including this phrase as the state motto.

## Taking on a Goliath to Restore the Tradition of the Kentucky Colonel

While writing this article I reflected considerably on the repercussions of my change of opinion about the Honorable Order of Kentucky Colonels as I gave them the same deference that former Governor Bevin did. I sent them a donation in January to reactivate my "so-called" membership, which I did not realize was just a way to gain their recognition as a donor, making myself eligible to nominate other colonels, and not a real member of anything really based on the presents of this editorial. Then I began to think about all the Kentucky colonels out there that are truly honored by being nominated and the governor commissioning them, as well, what it would mean to them to have a genuine membership organization that addresses them and the honorable commission with the integrity and respect they deserve, where they actively participate in the functionality of the organization.

While many people get their certificates and hang them on the wall and leave it at that, others do take great prestige in receiving the award and live up to its real meaning. So, it is for these Kentucky

Colonels that we are moving forward with our plans by forming our own International Commission to develop a genuine membership organization that is rightly so. We have taken several major steps already by getting a new dedicated website and forming a small commission of distinguished leaders to serve as the initial officers that share many of my sentiments and concerns.

We will also accept proposals for new commissioners to become part of our board based on their understanding, respect, and prominence as leaders in their own communities. Together I am confident that we can restore the significance of the Kentucky colonel and perhaps even eliminate the jokes and presumptions of it being a tongue-in-cheek award through the development of our organization.

To get the organization off the ground I have legalized the commission's formation under the same organization that I founded in 1994 by reinstating it with the Secretary of State in Frankfort on January 21st. Now to take it where it needs to go, we need donations from the public and will need to charge monthly or annual dues to members in order to provide member benefits and services beyond the social media. The online services we have been providing through administering the Facebook groups will remain without any membership fees including our blog and a new website being developed at [kycolonels.international].

Most of the ideas we will be proposing for our membership are on the table, while it is difficult for me to organize the project from abroad, the brunt of the work today for many organizations can be completed online. The majority of our officers are located in the United States (none live close to one another), so online development is very essential. We do have our registered agent and an official mailing address is in **Richmond, Kentucky**, which reinforces our formation. The formal membership forum is based on Facebook and remains open to all Kentucky colonels that have been granted a commission, without cost. Also we have Workplace and Google (paid services) we can rely on as well with our commissioners to provide more integral interaction with live online global meetings.

In addition to myself **Col. David Wright**, our current governing officers include: **Col. J.D. Wilkes, Col. Nicholas Wright, Col. Karen Cantrell, Col. Luis Cruz Diaz, Col. David Younce, Col. Michael Sher, Col. Maria Veneke Ylikomi,** and **Col. Jon Meier** all of whom serve honorably with prestige as commissioners without remuneration as our board. Other Kentucky colonels are currently under consideration as commissioners and officers to help lead our formation as the only 'membership organization' dedicated to Kentucky colonels serving as goodwill ambassadors for the Commonwealth authorized under the issuance of letters patent.

## Supporting Kentucky Colonels International

On January 30th the formation of Kentucky Colonels International
became official. We upgraded our status from an unincorporated
membership organization and legalized the commission and
foundation as an assumed name corporation in the Commonwealth
of Kentucky belonging to Ecology Crossroads (est. 1994), who is our
sponsor. To become an independent membership organization like
we deserve to be, it is up to our members and other Kentucky colonels
to come together and provide us with support we need in the form of
donations to better formalize our efforts to succeed. Contributions
can be made online through their sponsor using PayPal or a credit
card.

As the state's official goodwill ambassadors we have lots of great
progressive ideas to implement through the organization including a
promotional campaign that allows Kentucky (and non-Kentucky)
businesses, travel destinations, and corporations to become involved.
We will also accept contributions from the general public and those
seeking nominations to become Kentucky colonels through our
programs by supporting us and promoting Commonwealth. You can
find us on Facebook, visit our website or email us.

By David J. Wright on February 07, 2020

Labels: goodwill ambassador , Governor of Kentucky , HOKC ,
Honorable Order of Kentucky Colonels , KCI , Kentucky Colonel ,
Kentucky Colonel Foundation , Kentucky colonels , Kentucky Colonels
International

Thursday, January 30, 2020

# Reorganizing the Kentucky Colonels International Commission and Foundation

## A Digital Presence for Kentucky's Goodwill Ambassadors

### Kentucky Colonels International

Having a good social media presence has become an essential part of an organizational repertoire in today's society. Social networking has proven to be very big business for some companies who provide users with tools to communicate online so they can better organize and develop their programs and promote their purposes.

In 1998 we presented the first website for Kentucky Colonels to present and network themselves, however it was short lived because a larger and more powerful organization decided to challenge our development in 2001. In 2007 we began our comeback on Facebook, but as a volunteer organization and social formation, since then we never had as much time or money to invest as was necessary to further develop our formation. (More about this will be presented in our next articles.)

## New Website and Blog



Kentucky Colonels Website

We are introducing a new website and blog under the domain name [kycolonels.international] that is based on providing member support. The new endeavor will help to recover the work we began in 1998 and extend our presence as Kentucky's official goodwill ambassadors.

The new website and blog will be driven by our own Honorary Commission of Kentucky colonels who we are calling our officers. Together they will be responsible for driving our formation as a legal "membership organization" under the First Amendment of the United States Constitution, the Code of Federal Regulations (CFR) and the Kentucky Revised Statutes (KRS).

Some of the immediate goals will be to provide our formal members with **online credentials**, an **email address handler using their own personal names** with our website domain name, **access to Google Suite using IDaaS**, as well as **biographical pages** for members who participate distinguishing their deeds and honorable commission as a Kentucky colonel. Other membership benefits will also be provided as they are developed.

We are off to a great start with more than several thousand pages of data that can be entered and used in our website. Our purposes

Case 3:23-cv-00043RDJH DDoccumeenn 992-345 Fiiledd 0023/2525/2330 Paaggee 1489 of 2833 PaggeeIIDD## 36430 2940

however are primarily oriented towards providing membership
services and developing a member organization, so we have only
included the most formal and official information in our immediate
presentation. The website is really off to a great start, all members are
encouraged to support its development!

Our goal is to present the organization with the utmost transparency,
sincerity, dignity and formality to elevate the honorable title
accompanied by the official commission to the level of integrity and
respect they deserve. In the future we will consider a section of the
website to be focused some of the *informal humor* that has
developed surrounding the honorable title which many say has
beguiled it making it a tongue-in-cheek award for many who receive it.

## Reorganization and Reformation

We began our development in 1998 as the **only organization** (at the
time) established as a *genuine membership organization* formed
specifically to develop mutual and fraternal social benefits for our
members. Since we began and conceded defeat in 2001 to the HOKC
(the charity) other organizations that have been set-up for similar
purposes which have surpassed our development forming
membership associations under legal charters in Canada,
Switzerland, Germany, and the United Kingdom.

To propel our noble effort we need member support from the
Facebook groups we have helped to develop since 2007 and from the
public through our Facebook fanpage which now has a link for
supporters to make discretionary donations. We also have a page on
our new website where members and supporters can donate to give
our formation the independence it deserves.Supporters and members
can also make a **donation here using PayPal or a credit card**.

## Supporting our Development

While we need donations to make our formation better and more
resilient, we also need to build on what we already have begun in the
social media to strengthen our organization. Those who are already
members and page followers are encouraged to network our program
to other Kentucky colonels that they know and encourage them to join
our association through our groups and support our foundation online
to follow and share our Facebook page and Twitter page.

On Facebook you will find two social groups, the private groups are
open only to Kentucky colonels who have already received
commissions.

- **Kentucky Colonels International** (Facebook Group established 2006)
- **Kentucky Colonels on Facebook** (Facebook Group established 2009)

For the public, members and non-members we have our website, blog, a Facebook page and Twitter which was recently recovered. We have not begun to use Twitter but plan to soon interactively to promote the website and the accomplishments of our members.

- **Kentucky Colonels International Commission and Foundation** (Website)
- **Kentucky Colonels International Blog** (Google News and Blogger )
- **Kentucky Colonels International** (Facebook Page established 2009)
- **Kentucky Colonels International** (Twitter Feed established 2009)

We have taken all of the initial steps required in law to begin the reformation process with Globcal International which also supports the Goodwill Ambassador Foundation as Kentucky Colonels International's founding sponsor, our primary contact in Kentucky is the Ecology Crossroads Cooperative Foundation originally established in 1994.

## Our Organizational Commission

Currently we have nine (9) commissioners that are recognized as our initial officers. During our formation process we are accepting proposals for additional commissioners, chancellors which represent country chapters, ambassadors in charge of activity and event committees, as well as consular officers that work with ambassadors.

The commissioning officers that have already been selected are people with experience in leadership as goodwill ambassadors or leaders in their own communities, they have committed or donated $1,000 or more to our organization or charitable causes to hold their position as officers in recent years. They include colonels Nicholas Wright, Karen Cantrell, Luis Cruz Diaz, David Younce, Michael Sher, Maria Veneke Ylikomi, Jon Meier, Joshua Wilkes, and David Wright who serves as the Secretariat of our international membership organization.

Those who are interested in serving as an officer or being recognized as commissioners can **contact us directly by email** elaborating their qualifications by providing their Facebook profile, writing something about how they became colonels, tell us how they can contribute to the formation or would like to become officers, and by providing some basic biographical information. All those who are selected as commissioners will be asked to serve for a minimum of five years.

By David J. Wright on January 30, 2020. ✉️

Labels: blog , Facebook fanpage , Facebook groups , Kentucky Colonel
Foundation , Kentucky Colonels International , membership program ,
new website , social media development , US Constitution

Home

Subscribe to: Posts ( Atom )

Recommend     Share     53 people recom
                                  this. Sign Up to

# Subscribe To

🔲 Posts                              ⌄

🔲 All Comments ⌄

# Follow by Email

Email address...            Submit



**Kentucky Colonels Inter.**
2,443 likes



Like Page

Be the first of your friends to like this



**Kentucky Colonels International**
on Monday

Soon after, I returned home to my family, with a determination to bring them as soon as possible to live in Kentucky, which I esteemed a second paradise, at the risk of my life and fortune. -Col. Daniel Boone

Col. Daniel Boone was known as the first settler of Kentucky in 1767, he became one of its leading citizens. He was actually commissioned a Lieutenant-Colonel in 1780, of the Fayette County Militia when Kentucky was made up of three Virginia counties



EN.WIKIPEDIA.ORG
**Daniel Boone - Wikipedia**
Daniel Boone (November 2, 1734 [O…



### Kentucky Colonels Internatio
### Restoring Traditions and
### Customs

Defending the Ideals of the
Kentucky Colonel Becoming
Kentucky Colonel and Ambassador of Goo
Editorial by Col. David J. Wright ...



### Reorganizing the Kentucky
### Colonels International
### Commission and Foundation

A Digital Presence for Kentuc
Goodwill Ambassadors Kent
Colonels International Having a good socia
media presence has becom...



### Kentucky Colonels: Past, Pre
### and Future

Kentucky Colonels in the New
News Release News for
Immediate Release RICHMO
Kentucky — Beginning last year Globcal
Interna...

## More Than 300 Candidates File To
## For Office In Kentucky - Spectrum
## News 1 - 1/13/2020

## Inaugural Bluegrass Hall of Fame
## Induction Celebration in March -
## Bluegrass Today - 2/18/2020

## Group Proposes Fair Maps Act -
## Spectrum News 1 - 1/13/2020

## Kentucky Black Caucus Outlines 20
## Priorities - Spectrum News
## 1 - 1/13/2020

## Kentucky Farm Bureau Unveils 202
## Legislative Priorities - Spectrum Ne
## 1 - 1/10/2020

# Contact Form

Name

Email *

**Message** *

<br><br><br>

Send

© 2020. Powered by **Blogger**.

# EXHIBIT 6

# TO MOTION FOR RESTRAINING ORDER

2/19/2020 Kentucky Colonels International - About



Kentucky Colonels International



Julie    Home    Create    2



## Kentucky Colonels International
@KentuckyColonels

Home

**About**

Community

Groups

Photos

Posts

Reviews

Create a Page

Like    Follow    Share

Send Email    Send Message

## About

Suggest Edits

### BUSINESS INFO

⚑ Started on October 21, 1998

⚙ **Mission**
To promote the careers, individual growth, public service projects, and generally champion the successes of Kentucky Colonels all over the world to enhance the growth of strong sustainable communities and friendships internationally.

### CONTACT INFO

▣ m.me/KentuckyColonels ⓘ

✉ contact@kycolonels.international

🌐 https://kycolonels.international

### MORE INFO

ⓘ **Release Date**
2009

ⓘ **About**
International Commission of the Order of the Kentucky Colonel (est in 1813) responsible for promoting the traditions and customs of Commonwealth of Kentucky as the state's goodwill ambassadors and recognized patrons.

ⓘ **Impressum**
Kentucky Colonels International is a non-governmental and non-state fraternal membership commission and foundation of Globcal International that has been developed to bring international attention to those who have been commissioned as Kentucky colonels following recognition by the Governor of the Commonwealth of Kentucky for performing a meritorious deed, community leadership, an act of goodwill or demonstrating selflessness that deserves the attention of the Commonwealth of Kentucky.

The organization is open to all ladies and gentlemen who have received the honorable commission of the Kentucky Colonel from the governor wherever they may live in the world.

The organization is incorporated in the Commonwealth of Kentucky and exists as a decentralized autonomous organization through its sponsors and members in other countries around the world.

ⓘ **Company Overview**

### STORY

#### Kentucky Colonels International

Kentucky Colonels International is a non-governmental commission and non-profit membership organization based on a fellowship of "Kentucky Colonels" from around the world that have been recognized by the Governor of Kentucky for their contributions to society and our civilization through their deeds. Our organization was introduced in 1998 as the f...

See More

Case 3:20-cv-00132-JRW   Document 7-6   Filed 03/25/23   Page 157 of 283 PageID #: 3018
Case 3:20-cv-00132-JRW   Document 9-3   Filed 02/21/20   Page 8 of 88 PageID #: 302

Kentucky Colonels International

                                                        Julie        Home        Create        2



### Kentucky Colonels International

@KentuckyColonels

Home

**About**

Community

Groups

Photos

Posts

Reviews

Create a Page

Kentucky colonels to form and develop a fraternal membership order and registry of Kentucky colonels from around the world.

KCI is based on activities involving charity, fraternity and goodwill; it is not affiliated with the Honorable Order of Kentucky Colonels (HOKC) and is developed under Globcal International as a non state commission. Membership is voluntary and open to all persons that hold the commission of Kentucky Colonel!

ⓘ  Nonprofit Cooperative Commission of Kentucky Colonels around the world promoting the ideals of goodwill, charity, respect, honor, trust and integrity.

ⓘ  **Founding Date**
    1813

🏆  **Awards**
    Commission of the Kentucky Colonel

ⓘ  **Products**
    Members of the Order of the Kentucky Colonel are available for speaking engagements and as participating guests at events to represent and discuss the Commonwealth of Kentucky or to promote charitable events.

◎  **Privacy Policy**

**Non-Governmental Organization (NGO)** · **Society & Culture Website** · **Consulate & Embassy**

About    Create Ad    Create Page    Developers    Careers    Privacy    Cookies    Ad Choices    Terms    Help

Facebook © 2020

English (US)    Español    Français (France)    中文(简体)    العربية    Português (Brasil)    Italiano    한국어    Deutsch    हिन्दी    日本語

# EXHIBIT 7

# TO MOTION FOR RESTRAINING ORDER



Q  **HELP** ℹ  **MENU** ≡

**Home** > **Charities and Non-Profits** > **Search for Charities** > Tax Exempt Organization Search

# Results for Tax Exempt Organization Search

## Select Database ℹ

Search All  ⌄

## Search By ℹ

Organization Name  ⌄

## Search Term ℹ

Kentucky Colonels International

## City

Enter City

## State

All States  ⌄

## Country

United States  ⌄

| Search | Reset |

<u>Search Tips</u>

**Your search did not return any results. Please try again.**

**Need Help?** See <u>Search Tips</u> for guidance on effective searching, search criteria and logic, and selecting search terms.

## Additional information

- <u>Frequently asked questions</u> - *Exempt Organizations Select Check*

- Revocations of 501(c)(3) Determinations
- Suspensions Pursuant to Code Section 501(p)
- Exempt Organizations Business Master File Extract (EO BMF): a list of organizations recognized as exempt by the IRS
- Tax Exempt Organization Search: Bulk Data Downloads

*Page Last Reviewed or Updated: 6-Sept-2019*

 Share     Print





| Our Agency | Know Your Rights | Resolve an Issue | Other Languages | Related Sites |
|---|---|---|---|---|
| About IRS | Taxpayer Bill of Rights | Respond to a Notice | Español | U.S. Treasury |
| Work at IRS | | Office of Appeals | ?? | Treasury Inspector General for Tax Administration |
| Help | Taxpayer Advocate Service | Identity Theft Protection | ??? | |
| Contact Your Local Office | Accessibility | Report Phishing | P?????? | USA.gov |
| Tax Stats, Facts & Figures | Civil Rights | Tax Fraud & Abuse | Ti?ng Vi?t | |
| | Freedom of Information Act | | | |
| | No Fear Act | | | |
| | Privacy Policy | | | |

# EXHIBIT 8

# TO MOTION FOR
# RESTRAINING ORDER

Q  **HELP** ❶  **MENU** ☰

**Home** > **Tax Exempt Organization Search** > Ecology Crossroads Cooperative

‹ Back to Search Results

# Ecology Crossroads Cooperative

EIN: 61-1259384 | Berea, KY, United States

# Auto-Revocation List ❶

Organizations whose federal tax exempt status was automatically revoked for not filing a Form 990-series return or notice for three consecutive years. Important note: Just because an organization appears on this list, it does not mean the organization is currently revoked, as they may have been reinstated.

**Exemption Type:** 501(c)(3)

**Exemption Reinstatement Date:**

**Revocation Date:** 11-15-2010

**Revocation Posting Date:** 07-13-2011

*Page Last Reviewed or Updated: 6-Sept-2019*

 **Share**      **Print**

 IRS



| Our Agency | Know Your Rights | Resolve an Issue | Other Languages | Related Sites |
|---|---|---|---|---|
| About IRS | Taxpayer Bill of Rights | Respond to a Notice | Español | U.S. Treasury |

# EXHIBIT 9

# TO MOTION FOR RESTRAINING ORDER

Case 3:20-cv-00063-JRW Document 7-5 Filed 03/25/23 Page 164 of 283 PageID #: 3085

| ID | Name | DBA | Contributions | Revenue | Yr La Filed |
|----|------|-----|---------------|---------|-------------|
| 10352 | EB Research Partnership, Inc. | | $5,298,198.00 | $5,363,294.00 | 2018 |
| 242 | Echo Inc | | $3,507,996.00 | $4,099,565.00 | 2018 |
| 4521 | Ecohealth Alliance, Inc. | | $16,013,638.00 | $16,432,816.00 | 2017 |
| 4457 | Economic Development Properties, Inc | | $0.00 | $41,344.00 | 2018 |
| 10814 | EdChoice Kentucky, Inc. | | $216,685.00 | $216,685.00 | 2018 |
| 4819 | Edge Outreach, Inc. | Water Step | $742,605.00 | $885,730.00 | 2018 |
| 3890 | Edith & Henry Heuser Hearing Institute, Inc. | | $0.00 | $872,951.00 | 2017 |
| 12833 | Edmonton-Metcalfe County Chamber of Commerce, Inc. | | $33,800.00 | $42,031.00 | 2018 |
| 6525 | Edsils Place Apartments, Inc. | | $51,640.00 | $99,587.00 | 2017 |
| 12304 | Educate West Point Incorporated | | $0.00 | $0.00 | 2018 |
| 13576 | Educating With Hope, Inc. | | $0.00 | $0.00 | 2018 |
| 12746 | Education Development Center, Inc | | $153,875,475.00 | $155,645,130.00 | 2017 |
| 13408 | Education For All Children | | $1,003,338.00 | $1,092,665.00 | 2018 |
| 13836 | Educational Excellence Foundation of Gallatin County, Inc. | | $84,757.00 | $84,757.00 | 2018 |
| 10747 | Educational Foundation of Alpha Gamma Rho | | $2,434,734.00 | $3,015,432.00 | 2017 |
| 11908 | Educational Justice | | $703,346.00 | $703,346.00 | 2018 |
| 4794 | Educational Media Foundation | | $184,987,293.00 | $189,010,764.00 | 2018 |
| 13834 | Edward Jones Disaster Relief Fund | | $366,752.00 | $367,433.00 | 2018 |
| 10139 | Ehlers-Danlos National Foundation | | $1,257,357.00 | $1,606,827.00 | 2018 |
| 6321 | Eight Days of Hope, Inc. | | $6,510,908.00 | $6,507,614.00 | 2018 |
| 12461 | EKentucky Advanced Manufacturing Institute, Inc. | | $2,220,675.00 | $2,249,492.00 | 2018 |
| 13821 | EL Education, Inc. | | $7,716,967.00 | $22,600,614.00 | 2017 |
| 11870 | Elana Brophy Memorial Foundation Inc | | $0.00 | $0.00 | 2018 |
| 12386 | Elderheart, Inc. | Mission 22 | $1,646,208.00 | $1,633,179.00 | 2018 |
| 2953 | Elderhostel, Inc. dba Road Scholar | | $2,492,011.00 | $389,880,650.00 | 2018 |
| 5029 | Electronic Frontier Foundation, Inc. | | $12,915,696.00 | $15,913,065.00 | 2017 |
| 4805 | Elim Christian Services | | $4,728,480.00 | $25,451,243.00 | 2017 |
| 788 | Elizabeth Glaser Pediatric AIDS Foundation | | $199,285,861.00 | $199,909,040.00 | 2018 |
| 11051 | Elizabeth Taylor AIDS Foundation | | $2,081,762.00 | $2,485,336.00 | 2018 |
| 1032 | Elizabethtown Country Club | | $0.00 | $870,563.00 | 2017 |
| 310 | Elizabethtown Hardin County | | $0.00 | $418,516.00 | 2018 |

Case 3:20-cv-00083-DJH-RSE Document 7-5 Filed 03/25/20 Page 165 of 283 PageID #: 3026

Updated: 2/4/2020

| ID | Name | DBA | Contributions | Revenue | Yr La Filec |
|---|---|---|---|---|---|
| 7370 | Home Builders Association of Western Kentucky, Inc. | | $91,577.00 | $159,709.00 | 2018 |
| 8679 | Home for Little Wanderers, Inc. | | $8,973,302.00 | $54,754,622.00 | 2017 |
| 13078 | Home Instruction for Parents of Preschool Youngsters (HIPPY) USA | | $212,378.00 | $1,135,761.00 | 2017 |
| 440 | Home of the Innocents, Inc | | $6,326,055.00 | $38,442,346.00 | 2017 |
| 13527 | Home Port Alliance for the USS New Jersey, Inc. | | $2,599,984.00 | $4,456,910.00 | 2018 |
| 441 | Homeless and Housing Coalition of Kentucky | | $1,890,644.00 | $2,325,115.00 | 2018 |
| 9617 | Homeownership Preservation Foundation | | $1,496,579.00 | $7,194,035.00 | 2018 |
| 9956 | Homes For Hope | | $3,891,229.00 | $3,901,613.00 | 2018 |
| 4690 | Homes for Our Troops, Inc | | $28,648,056.00 | $29,430,045.00 | 2017 |
| 10853 | Homes For Veterans   A NJ Non Profit Corporation | | $1,684,305.00 | $1,684,305.00 | 2018 |
| 13248 | Homes On Wheels Alliance, Inc. (HOWA) | | $0.00 | $0.00 | 2018 |
| 2576 | Honor Bound Foundation, inc. | | $8,376,875.00 | $8,548,754.00 | 2017 |
| 8751 | Honor Flight Bluegrass Chapter | | $358,972.00 | $358,972.00 | 2018 |
| 5285 | Honorable Order of Kentucky Colonels, Inc. | | $2,088,553.00 | $2,953,193.00 | 2018 |
| 14086 | HonorHealth Foundation | | $19,393,100.00 | $27,145,462.00 | 2018 |
| 1492 | Hooved Animal Humane Society | | $458,916.00 | $472,891.00 | 2018 |
| 12130 | Hooves & Paws Animal Rescue, Inc. | | $854,634.00 | $859,332.00 | 2018 |
| 10715 | Hope 4 Kids International Arizona | | $3,863,857.00 | $3,880,376.00 | 2018 |
| 5655 | Hope Center Foundation, Inc. | | $75,000.00 | $314,425.00 | 2018 |
| 13529 | Hope Floats Foundation, Inc. | | $0.00 | $0.00 | 2018 |
| 7176 | Hope For Haiti, Inc. | | $14,379,438.00 | $14,813,049.00 | 2018 |
| 8740 | Hope for the Hungry | | $950,601.00 | $951,582.00 | 2018 |
| 9385 | Hope for the Warriors | | $5,825,881.00 | $5,961,030.00 | 2018 |
| 6820 | Hope for Tomorrow, Inc. | | $20,493.00 | $20,493.00 | 2018 |
| 5650 | Hope Foundation, Inc. | | $4,776,898.00 | $8,713,150.00 | 2018 |
| 13847 | Hope Harbor, Inc. | | $1,069,748.00 | $1,101,542.00 | 2018 |
| 9875 | Hope Haven Charitable Trust | Hope Haven (R) LTD. | $1,139,890.00 | $1,087,099.00 | 2018 |
| 10223 | Hope Health Clinic, Inc. | | $380,020.00 | $422,469.00 | 2018 |
| 9290 | Hope House Ministries, Inc. | | $677,224.00 | $978,323.00 | 2018 |
| 2764 | Hope International | | $18,193,260.00 | $18,178,977.00 | 2018 |
| 10538 | Hope Kabanana | | $36,260.00 | $36,260.00 | 2018 |

# Current Non-Profit Entities Filing IRS Tax Form 9!

Updated: 2/10/2020

| ID | Name | DBA | Contributions | Revenue | Yr La Filed |
|----|------|-----|---------------|---------|-------------|
| 7412 | Give An Hour Nonprofit Corporation | | $2,025,440.00 | $2,027,362.00 | 2018 |
| 6079 | Give Back Foundation, LLC | | $87,223,329.00 | $100,173,020.00 | 2018 |
| 383 | Give Kids the World Inc | | $45,523,855.00 | $58,474,847.00 | 2017 |
| 11922 | Give Lively Foundation, Inc. | | $15,312.00 | $15,312.00 | 2018 |
| 10588 | Give2Asia | | $10,724,453.00 | $10,802,230.00 | 2017 |
| 13632 | GiveClear Foundation | | $0.00 | $0.00 | 2018 |
| 13967 | GivePower Foundation | | $1,878,370.00 | $1,881,226.00 | 2018 |
| 11626 | Glacier National Park Conservancy | | $2,774,876.00 | $4,822,831.00 | 2018 |
| 13827 | Glasgow Barren County Chamber of Commerce | | $104,437.00 | $275,281.00 | 2018 |
| 384 | Glasgow Christian Academy | | $72,322.00 | $542,147.00 | 2018 |
| 386 | Glasgow Kiwanis Club | | $0.00 | $57,209.00 | 2017 |
| 13398 | Glendover Community Basketball League, Inc. | | $0.00 | $0.00 | 2019 |
| 6816 | Glenmary Sisters Charitable Trust | | $0.00 | $232,169.00 | 2018 |
| 2499 | Global Action | | $596,861.00 | $594,356.00 | 2017 |
| 10699 | Global Business Institute, Inc. | | $0.00 | $0.00 | 2018 |
| 7415 | Global FoodBanking Network | | $4,323,967.00 | $4,367,691.00 | 2017 |
| 13716 | Global Forest Generation, Inc. | | $511,831.00 | $511,831.00 | 2018 |
| 11508 | Global Foundation For Peroxisomal Disorders | | $519,446.00 | $533,082.00 | 2018 |
| 5803 | Global Fund for Children | | $8,261,719.00 | $8,361,619.00 | 2017 |
| 2663 | Global Fund for Women, Inc. | | $19,801,611.00 | $21,214,065.00 | 2017 |
| 12259 | Global Game Changers Education Initiative, Inc. | | $953,328.00 | $963,670.00 | 2018 |
| 10035 | Global Genes | | $4,955,803.00 | $4,930,932.00 | 2018 |
| 4382 | Global Giving Foundation, Inc. | | $58,582,313.00 | $60,847,693.00 | 2018 |
| 8603 | Global Greengrants Fund | | $11,813,488.00 | $11,855,904.00 | 2017 |
| 3633 | Global Hunger Project | The Hunger Project | $14,786,808.00 | $0.00 | 2018 |
| 466 | Global Impact | | $62,519,692.00 | $71,810,887.00 | 2017 |
| 9749 | Global Lyme Alliance, Inc. | | $4,889,010.00 | $4,623,616.00 | 2018 |
| 7902 | Global Media Outreach | | $5,837,890.00 | $5,447,172.00 | 2018 |
| 9613 | Global Mother Divine Org | TM Program For Women Professional | $76,886.00 | $484,939.00 | 2018 |
| 5021 | Global Partners In Care | Global Partners In Care | $491,601.00 | $491,601.00 | 2018 |

# Current Non-Profit Entities Filing IRS Tax Form 99

Updated: 2/10/2020

| ID | Name | DBA | Contributions | Revenue | Yr La Filed |
|----|------|-----|--------------|---------|-------------|
| 11660 | Kentucky Clovers 10U | | $0.00 | $0.00 | 2018 |
| 504 | Kentucky Coalition of Nurse Practioners and Midwives | | $60,949.00 | $569,974.00 | 2018 |
| 10177 | Kentucky Coalition, Inc. | | $2,865,477.00 | $3,244,594.00 | 2018 |
| 12057 | Kentucky College of Art and Design, Inc. | | $1,431,409.00 | $1,443,960.00 | 2017 |
| 3369 | Kentucky Community & Technical College System Foundation, Inc. | | $217,864.00 | $234,278.00 | 2018 |
| 10689 | Kentucky Concrete Association | | $501,331.00 | $987,624.00 | 2018 |
| 7403 | Kentucky Concrete Pavement Association, Inc. | | $207,842.00 | $207,842.00 | 2018 |
| 6236 | Kentucky Conference for Community and Justice dba The Plantory | The Plantory | $95,893.00 | ($8,310.00) | 2018 |
| 11406 | Kentucky Conservation Committee | | $59,818.00 | $92,798.00 | 2018 |
| 11405 | Kentucky Conservation Foundation, Inc. | | $268,854.00 | $289,903.00 | 2018 |
| 108 | Kentucky Conservation Officers Association | | $77,198.00 | $174,116.00 | 2017 |
| 506 | Kentucky Corn Growers Association, Inc. | | $72,316.00 | $1,974,376.00 | 2018 |
| 8203 | Kentucky Council for Children with Behavioral Disorders, Inc. | | $0.00 | $7,185.00 | 2018 |
| 7821 | Kentucky Council of Area Development Districts, Inc. | | $162,774.00 | $197,138.00 | 2018 |
| 5710 | Kentucky Council of Cooperatives, Inc. | | $0.00 | $0.00 | 2018 |
| 13513 | Kentucky Council of The Blind | | $0.00 | $0.00 | 2018 |
| 1011 | Kentucky Council on Child Abuse, Inc. | Prevent Child Abuse Kentucky | $994,303.00 | $1,201,338.00 | 2017 |
| 1501 | Kentucky Council on Problem Gambling, Inc. | | $67,412.00 | $67,412.00 | 2018 |
| 3933 | Kentucky Country Day School, Inc. | | $1,349,874.00 | $20,892,961.00 | 2017 |
| 14138 | Kentucky Dance Coaches Organization Inc. | | $3,550.00 | $40,911.00 | 2018 |
| 508 | Kentucky Dance Council, Inc. | Louisville Ballet | $2,747,847.00 | $4,559,310.00 | 2017 |
| 5146 | Kentucky Dataseam Initiative, Inc. | | $0.00 | $163,634.00 | 2018 |
| 3101 | Kentucky Derby Festival Foundation | | $97,284.00 | $131,916.00 | 2017 |
| 1786 | Kentucky Derby Festival, Inc | | $0.00 | $7,112,744.00 | 2017 |
| 12101 | Kentucky Derby Museum Corporation | | $1,649,558.00 | $8,483,226.00 | 2017 |
| 13117 | Kentucky Dermatological Association | | $28,929.00 | $34,058.00 | 2018 |
| 9706 | Kentucky Diabetes Camp for Children, Inc. | Camp Hendron | $629,435.00 | $685,268.00 | 2017 |
| 7932 | Kentucky Distillers' Association | | $1,828,237.00 | $2,314,006.00 | 2018 |
| 511 | Kentucky Educational Television Foundation | | $7,222,564.00 | $7,945,627.00 | 2017 |

# EXHIBIT 10

# TO MOTION FOR
# RESTRAINING ORDER

# Current Non-Profit Entities Filing IRS Tax Form 9?

Updated: 2/10/2020

| ID | Name | DBA | Contributions | Revenue | Yr La Filec |
|---|---|---|---|---|---|
| 11660 | Kentucky Clovers 10U | | $0.00 | $0.00 | 2018 |
| 504 | Kentucky Coalition of Nurse Practioners and Midwives | | $60,949.00 | $569,974.00 | 2018 |
| 10177 | Kentucky Coalition, Inc. | | $2,865,477.00 | $3,244,594.00 | 2018 |
| 12057 | Kentucky College of Art and Design, Inc. | | $1,431,409.00 | $1,443,960.00 | 2017 |
| 3369 | Kentucky Community & Technical College System Foundation, Inc. | | $217,864.00 | $234,278.00 | 2018 |
| 10689 | Kentucky Concrete Association | | $501,331.00 | $987,624.00 | 2018 |
| 7403 | Kentucky Concrete Pavement Association, Inc. | | $207,842.00 | $207,842.00 | 2018 |
| 6236 | Kentucky Conference for Community and Justice dba The Plantory | The Plantory | $95,893.00 | ($8,310.00) | 2018 |
| 11406 | Kentucky Conservation Committee | | $59,818.00 | $92,798.00 | 2018 |
| 11405 | Kentucky Conservation Foundation, Inc. | | $268,854.00 | $289,903.00 | 2018 |
| 108 | Kentucky Conservation Officers Association | | $77,198.00 | $174,116.00 | 2017 |
| 506 | Kentucky Corn Growers Association, Inc. | | $72,316.00 | $1,974,376.00 | 2018 |
| 8203 | Kentucky Council for Children with Behavioral Disorders, Inc. | | $0.00 | $7,185.00 | 2018 |
| 7821 | Kentucky Council of Area Development Districts, Inc. | | $162,774.00 | $197,138.00 | 2018 |
| 5710 | Kentucky Council of Cooperatives, Inc. | | $0.00 | $0.00 | 2018 |
| 13513 | Kentucky Council of The Blind | | $0.00 | $0.00 | 2018 |
| 1011 | Kentucky Council on Child Abuse, Inc. | Prevent Child Abuse Kentucky | $994,303.00 | $1,201,338.00 | 2017 |
| 1501 | Kentucky Council on Problem Gambling, Inc. | | $67,412.00 | $67,412.00 | 2018 |
| 3933 | Kentucky Country Day School, Inc. | | $1,349,874.00 | $20,892,961.00 | 2017 |
| 14138 | Kentucky Dance Coaches Organization Inc. | | $3,550.00 | $40,911.00 | 2018 |
| 508 | Kentucky Dance Council, Inc. | Louisville Ballet | $2,747,847.00 | $4,559,310.00 | 2017 |
| 5146 | Kentucky Dataseam Initiative, Inc. | | $0.00 | $163,634.00 | 2018 |
| 3101 | Kentucky Derby Festival Foundation | | $97,284.00 | $131,916.00 | 2017 |
| 1786 | Kentucky Derby Festival, Inc | | $0.00 | $7,112,744.00 | 2017 |
| 12101 | Kentucky Derby Museum Corporation | | $1,649,558.00 | $8,483,226.00 | 2017 |
| 13117 | Kentucky Dermatological Association | | $28,929.00 | $34,058.00 | 2018 |
| 9706 | Kentucky Diabetes Camp for Children, Inc. | Camp Hendron | $629,435.00 | $685,268.00 | 2017 |
| 7932 | Kentucky Distillers' Association | | $1,828,237.00 | $2,314,006.00 | 2018 |
| 511 | Kentucky Educational Television Foundation | | $7,222,564.00 | $7,945,627.00 | 2017 |

# EXHIBIT 11

# TO MOTION FOR
# RESTRAINING ORDER

# ECOLOGY CROSSROADS COOPERATIVE FOUNDATION, INC.

## General Information

| | |
|---|---|
| **Organization Number** | 0329183 |
| **Name** | ECOLOGY CROSSROADS COOPERATIVE FOUNDATION, INC. |
| **Profit or Non-Profit** | N - Non-profit |
| **Company Type** | KCO - Kentucky Corporation |
| **Status** | A - Active |
| **Standing** | G - Good |
| **State** | KY |
| **File Date** | 4/12/1994 |
| **Organization Date** | 4/12/1994 |
| **Last Annual Report** | 1/21/2020 |
| **Principal Office** | 302 GENERAL SMITH DR |
| | RICHMOND, KY 40475 |
| **Registered Agent** | MAYA-LIS A. WRIGHT |
| | 302 GENERAL SMITH DRIVE |
| | RICHMOND, KY 40475 |

## Current Officers

| | |
|---|---|
| **President** | DAVID J WRIGHT |
| **Vice President** | Nicholas A Wright |
| **Secretary** | TONY B LY |
| **Treasurer** | NICHOLAS A WRIGHT |
| **Director** | DAVID J WRIGHT |
| **Director** | MIKE GALLAGHER |
| **Director** | KAREN CANTRELL |
| **Director** | JAVIER VASQUEZ |
| **Director** | TONY B LY |
| **Director** | Nicholas A WRIGHT |

## Individuals / Entities listed at time of formation

| | |
|---|---|
| **Director** | RYAN FINNERAN |
| **Director** | MAXINE E ROSE-LENETT |
| **Director** | SALVATORE PERICE |
| **Director** | CALVIN D WILLIAMS |
| **Director** | DAVID J WRIGHT |
| **Incorporator** | RYAN FINNERAN |
| **Incorporator** | MAXINE E ROSE-LENETT |
| **Incorporator** | SALVATORE PERICE |
| **Incorporator** | CALVIN D WILLIAMS |
| **Incorporator** | DAVID J WRIGHT |

## Images available online

Documents filed with the Office of the Secretary of State on September 15, 2004 or thereafter are available as scanned images or PDF documents. Documents filed prior to September 15, 2004 will become available as the images are created.

| | | | | |
|---|---|---|---|---|
| Certificate of Assumed Name | 1/30/2020 | 1 page | tiff | PDF |
| Certificate of Assumed Name | 1/30/2020 | 1 page | tiff | PDF |
| Registered Agent name/address change | 1/28/2020 2:35:00 PM | 1 page | | PDF |
| Reinstatement Certificate of | 1/21/2020 3:02:44 PM | 2 pages | | PDF |

| Existence Reinstatement | 1/21/2020 3:01:57 PM | 2 pages | PDF | |
|---|---|---|---|---|
| Administrative Dissolution Return | 10/12/2015 | 1 page | tiff | PDF |
| Administrative Dissolution | 9/12/2015 | 1 page | PDF | |
| Sixty Day Notice Return | 7/28/2015 | 2 pages | tiff | PDF |
| Annual Report Return | 4/28/2015 | 2 pages | tiff | PDF |
| Reinstatement Certificate of Existence | 4/22/2014 1:23:01 PM | 2 pages | PDF | |
| Reinstatement | 4/22/2014 1:21:21 PM | 2 pages | PDF | |
| Administrative Dissolution | 11/2/1999 | 1 page | tiff | PDF |
| Administrative Dissolution Return | 11/2/1999 | 2 pages | tiff | PDF |
| Sixty Day Notice Return | 9/1/1999 | 2 pages | tiff | PDF |
| Certificate of Assumed Name | 1/12/1999 | 1 page | tiff | PDF |
| Certificate of Assumed Name | 1/12/1999 | 1 page | tiff | PDF |
| Reinstatement | 12/15/1998 | 2 pages | tiff | PDF |
| Statement of Change | 12/15/1998 | 1 page | tiff | PDF |
| Certificate of Assumed Name | 12/15/1998 | 1 page | tiff | PDF |
| Administrative Dissolution | 11/3/1998 | 1 page | tiff | PDF |
| Administrative Dissolution Return | 11/3/1998 | 2 pages | tiff | PDF |
| Sixty Day Notice Return | 9/1/1998 | 2 pages | tiff | PDF |
| Annual Report | 7/1/1998 | 1 page | tiff | PDF |
| Annual Report | 7/1/1997 | 1 page | tiff | PDF |
| Sixty Day Notice Return | 9/1/1996 | 2 pages | tiff | PDF |
| Sixty Day Notice Return | 9/1/1996 | 2 pages | tiff | PDF |
| Annual Report | 7/1/1996 | 1 page | tiff | PDF |
| Certificate of Assumed Name | 12/20/1995 | 1 page | tiff | PDF |
| Sixty Day Notice Return | 9/1/1995 | 2 pages | tiff | PDF |
| Annual Report | 7/1/1995 | 2 pages | tiff | PDF |
| Articles of Incorporation | 4/12/1994 | 5 pages | tiff | PDF |

## Assumed Names

| | |
|---|---|
| GLOBCAL INTERNATIONAL | Active |
| KENTUCKY COLONELS INTERNATIONAL | Active |
| ARBORDAY.COM | Inactive |
| ARBOR DAY | Inactive |
| ARBOR DAY FREE TREE PROGRAM | Inactive |
| ARBOR DAY, INC. | Inactive |
| ARBOR DAY | Inactive |

## Activity History

| Filing | File Date | Effective Date | Org. Referenced |
|---|---|---|---|
| Added assumed name | 1/30/2020 4:18:38 PM | 1/30/2020 | GLOBCAL INTERNATIONAL |
| Added assumed name | 1/30/2020 4:16:10 PM | 1/30/2020 | KENTUCKY COLONELS INTERNATIONAL |
| Registered agent address change | 1/28/2020 2:35:00 PM | 1/28/2020 2:35:00 PM | |
| Registered agent address change | 1/21/2020 3:03:15 PM | 1/21/2020 | |
| Reinstatement | 1/21/2020 3:02:38 PM | 1/21/2020 | |
| Admin Dis. A. report not in | 9/12/2015 | 9/12/2015 | |
| Reinstatement | 4/22/2014 1:22:58 PM | 4/22/2014 | |
| Admin Dis. A. report not in | 11/2/1999 | 11/2/1999 | |

Case 3:20-cv-00083-RGJ-RSE Document 99-1 Filed 03/25/23 Page 173 of 283 PageID #: 3034

| Added assumed name | 1/12/1999 | 1/12/1999 | ARBOR DAY FREE TREE PROGRAM |
| Added assumed name | 1/12/1999 | 1/12/1999 | ARBOR DAY, INC. |
| Reinstatement | 12/15/1998 | 12/15/1998 | |
| Registered agent address change | 12/15/1998 | 12/15/1998 | |
| Added assumed name | 12/15/1998 | 12/15/1998 | ARBORDAY.COM |
| Added assumed name | 12/15/1998 | 12/15/1998 | ARBOR DAY |
| Admin Dis. A. report not in | 11/3/1998 | 11/3/1998 | |
| Sixty day notification | 9/1/1998 | 9/1/1998 | |
| Principal office change | 9/3/1996 | 9/3/1996 | |

## Microfilmed Images

**Microfilm images are not available online. They can be ordered by faxing a Request For Corporate Documents to the Corporate Records Branch at 502-564-5687.**

| Administrative Dissolution Return | 11/2/1999 | 2 pages |
| Administrative Dissolution | 11/2/1999 | 1 page |
| Sixty Day Notice Return | 9/1/1999 | 2 pages |
| Certificate of Assumed Name | 1/12/1999 | 1 page |
| Certificate of Assumed Name | 1/12/1999 | 1 page |
| Certificate of Assumed Name | 12/15/1998 | 1 page |
| Certificate of Assumed Name | 12/15/1998 | 1 page |
| Statement of Change | 12/15/1998 | 1 page |
| Reinstatement | 12/15/1998 | 2 pages |
| Administrative Dissolution Return | 11/3/1998 | 2 pages |
| Administrative Dissolution | 11/3/1998 | 1 page |
| Sixty Day Notice Return | 9/1/1998 | 2 pages |
| Annual Report | 7/1/1998 | 1 page |
| Annual Report | 7/1/1997 | 1 page |
| Sixty Day Notice Return | 9/1/1996 | 2 pages |
| Annual Report | 7/1/1996 | 1 page |
| Certificate of Assumed Name | 12/20/1995 | 1 page |
| Sixty Day Notice Return | 9/1/1995 | 2 pages |
| Annual Report | 7/1/1995 | 2 pages |
| Articles of Incorporation | 4/12/1994 | 5 pages |

Case 3:23-cv-00032-DJH-RSE   Document 91-1   Filed 03/25/23   Page 174 of 283 PageID #:3085



**COMMONWEALTH OF KENTUCKY**
**MICHAEL ADAMS, SECRETARY OF STATE**

| 0329183.09 | sburgin |
| --- | --- |
| | ASN |

Michael G. Adams
Kentucky Secretary of State
Received and Filed:
1/30/2020 4:16 PM
Fee Receipt: $20.00

| Division of Business Filings<br>P.O. Box 718,<br>Frankfort, KY 40802<br>(502) 564-3490<br>www.sos.ky.gov | **Certificate of Assumed Name**<br>**(Domestic or Foreign Business Entity)** | **ASN** |
| --- | --- | --- |

Pursuant to the provisions of KRS 365, the undersigned applies to assume a name and, for that purpose, submits the following statement:

1. The assumed name is: Kentucky Colonels International

2. The name of the business entity (and in the case of general partnership, the partners) that is/are adopting the assumed name:

Ecology Crossroads Cooperative Foundation, Inc.
Name must be identical to the name on record with the Secretary of State.)

3. The "real name" is (you must check one):

| | |
| --- | --- |
| ☐ a Domestic General Partnership | ☐ a Foreign General Partnership |
| ☐ a Domestic Limited Liability Partnership | ☐ a Foreign Limited Liability Partnership |
| ☐ a Domestic Limited Partnership | ☐ a Foreign Limited Partnership |
| ☐ a Domestic Business Trust | ☐ a Foreign Business Trust |
| ☒ a Domestic Corporation | ☐ a Foreign Corporation |
| ☐ a Domestic Limited Liability Company | ☐ a Foreign Limited Liability Company |
| ☐ a Domestic Statutory Trust | ☐ a Foreign Statutory Trust |
| ☐ a Domestic Limited Cooperative Association | ☐ a Foreign Limited Cooperative Association |
| ☐ a Domestic Unincorporated Non-profit Association | ☐ a Foreign Unincorporated Non-profit Association |

4. This application will be effective upon filing, unless a delayed effective date and/or time is provided. The effective date or the delayed effective cannot be prior to the date the application is filed. The effective date is _____.

5. The business is organized and existing in the state or country of Kentucky _____.

6. The mailing address is:

| 302 General Smith Drive | Richmond | Kentucky | 40475 |
| --- | --- | --- | --- |
| Street Address or Post Office Box Numbers | City | State | Zip |

I declare under penalty of perjury under the laws of Kentucky that the forgoing is true and correct.

| _Nicholas Wright_ (signature) | Nicholas Wright | Vice-President/Treasurer | January 28, 2020 |
| --- | --- | --- | --- |
| Authorized Party Signature | Printed Name | Title | Date |

(1/20)

N601

**1/28/2020**
**0329183**

**Commonwealth of Kentucky**
**Michael G. Adams, Secretary of State**

0329183
Michael G. Adams
KY Secretary of State
Received and Filed
1/28/2020 2:35:00 PM
Fee receipt: $10.00

Michael G. Adams
Secretary of State
P. O. Box 718
Frankfort, KY 40602-0718
(502) 564-3490
http://www.sos.ky.gov

**Statement of Change of**
**Registered Office, Registered**
**Agent, or Both**

**RAC**

Pursuant to the provisions of KRS chapters 271B, 273, 275, or 362, the undersigned hereby applies to change the registered office, registered agent, or both on behalf of

# ECOLOGY CROSSROADS COOPERATIVE FOUNDATION, INC.

which is organized in the state of Kentucky, and for that purpose submits the following statements:

**1. Name of current registered agent**

AMERICAN BUSINESS & TECHNOLOGY
INCORPORATED

**2. Registered agent is hereby changed to:**

MAYA-LIS A. WRIGHT

**3. Address of current registered office**

306 ESTILL STREET
BEREA, KY 40403

**4. Registered office is hereby changed to:**

302 GENERAL SMITH DRIVE
RICHMOND, KY 40475

**5. Signature of officer or chairman of the board**

DAVID J. WRIGHT, PRESIDENT
Signature and Title

Type or print name and title

1/28/2020 2:35 PM
Date

**6. Consent of new agent**

I consent to serve as the new registered agent on behalf of this corporation.

MAYA-LIS A. WRIGHT
Signature and Title

Type or print name and title

0329183.09          vmiller
                    RST

**Michael G. Adams**
**Kentucky Secretary of State**
Received and Filed:
1/21/2020 3:02 PM
Fee Receipt: $190.00

## Commonwealth of Kentucky
## Michael G. Adams, Secretary of State

Michael G. Adams
Secretary of State
P. O. Box 718
Frankfort, KY 40602-0718
(502) 564-3490
http://www.sos.ky.gov

## Certificate of Existence

I, Michael G. Adams, Secretary of State of the Commonwealth of Kentucky, do hereby certify that according to the records in the Office of the Secretary of State,

### ECOLOGY CROSSROADS COOPERATIVE FOUNDATION, INC.

has eliminated all the grounds for dissolution, paid all fees and penalties owed to the Secretary of State, and met all other requirements for reinstatement. The effective date of reinstatement is January 21, 2020.

I further certify that ECOLOGY CROSSROADS COOPERATIVE FOUNDATION, INC. is a corporation duly incorporated and existing under the laws of the Commonwealth of Kentucky, whose date of incorporation is April 12, 1994, and whose period of duration is perpetual.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my Official Seal at Frankfort, Kentucky, this 21st day of January, 2020.



Michael G. Adams
Secretary of State
Commonwealth of Kentucky
0329183

| Organization ID #   0329183 | | 0329183.09 | vmiller |
| State of origin   KY | **Commonwealth of Kentucky** | | NPRF |
| Filing fee $190.00 | **Michael G. Adams, Secretary of State** | Michael G. Adams | |

**Organization ID #**  0329183
**State of origin**   KY
**Filing fee $190.00**

# Commonwealth of Kentucky
## Michael G. Adams, Secretary of State

0329183.09                                      vmiller
                                                NPRF
Michael G. Adams
Kentucky Secretary of State
Received and Filed:
1/21/2020 3:01 PM
Fee Receipt: $190.00

Michael G. Adams
Secretary of State
P. O. Box 718
Frankfort, KY 40602-0718
(502) 564-3490
http://www.sos.ky.gov

# Reinstatement Application and
# Reinstatement Annual Report
### For the years 2015 through 2020

**RST**

The principal office address and registered agent name/office address cannot be changed on this form. When reinstating, you cannot modify the addresses until the reinstatement is filed. Once the reinstatement is filed, the statement of change can be filed online at app.sos.ky.gov/ftsearch or can be downloaded from our website.

**Exact organization name and principal office address**
ECOLOGY CROSSROADS COOPERATIVE FOUNDATION, INC.
2036 BIG HILL RD
BEREA KY 40403

**Registered Agent and Registered Office Address**
AMERICAN BUSINESS & TECHNOLOGY INCORPORATED
306 ESTILL STREET
BEREA, KY 40403
If the above company is included in a parent company's Kentucky tax return as a disregarded company's information here (optional):
FEIN:_____  Name:_____

**Principal Officers** - List the name, address and title of all current officers. All organizations must list at least one (1) officer, even in the case of a sole officer. If not specified, officer addresses default to the principal office address. Corporations are required to list a Secretary or other officer serving as records custodian

| President | DAVID J WRIGHT | DAVID J WRIGHT |
| Vice President | BRUCE LEE BENEFIEL | NICHOLAS A WRIGHT |
| Secretary | TONY B LY | |
| Treasurer | NICHOLAS A WRIGHT | NICHOLAS A WRIGHT |

**Directors** - Non-profit corporations must have at least three (3) directors. All directors of the non-profit must be listed. If Not specified, director addresses default to the principal office address.

| DAVID J WRIGHT | DAVID J WRIGHT |
| MAYA-LIS WRIGHT | NICHOLAS A WRIGHT |
| MIKE GALLAGHER | MIKE GALLAGHER |
| KAREN  CANTRELL | KAREN CANTRELL |
| JAVIER VASQUEZ | JAVIER VASQUEZ |

The above entity was administratively dissolved on September 12, 2015 because the entity did not file its annual report for the year 2015. The undersigned states that the grounds for dissolution either did not exist or have been eliminated, and the entity's name satisfies the requirements of KRS 273.3181. Enclosed is a check in the amount of $190.00, payable to Kentucky State Treasurer.

Under penalty of perjury, the below signed hereby authorizes the Kentucky Department of Revenue to release any applicable tax information pertaining to ECOLOGY CROSSROADS COOPERATIVE FOUNDATION, INC. to the Secretary of State, as required for reinstatement pursuant to KRS 271B.14-220.

If not an officer of said entity, please provide a Declaration of Power of Attorney with the Reinstatement Application.

X _Col. Nicholas Wright_          Vice President                    Jan. 21, 2020
Signature of officer Or chairman of the Board (Required)        Title (Required)                    Date (Required)



**KENTUCKY DEPARTMENT OF REVENUE**
**DIVISION OF CORPORATION TAX**
501 HIGH STREET, STATION 52
FRANKFORT, KENTUCKY 40601-2103

Website: www.revenue.ky.gov
Phone: 502-564-8139
Fax: 502-564-0058

**ECOLOGY CROSSROADS COOPERATIVE**
**FOUNDATION, INC.**
**2036 BIG HILL RD**
**BEREA KY 40403**

Notice Date: January 21, 2020
KY SoS Org. ID: 0329183

| | |
|---|---|
| *RE:* | *Letter of Good Standing Request - Approved* |
| **SUMMARY** | You requested a letter of good standing, and your entity is in **good standing** with the Department of Revenue. |

**OUR DETERMINATION**

We verified the following information.

1. You are registered with the Department of Revenue.
2. An authorized person requested this letter.
3. You filed income and LLE tax returns as required, or you are exempt from filing.
4. You have no outstanding tax assessments with the Division of Collections or have a valid pay agreement in place.

This notice will remain current for 30 days from the notice date above.

**WHAT YOU NEED TO DO**

1. **If you are attempting to reinstate your entity,** please provide a copy of this letter to the Kentucky Secretary of State within 30 days of the notice date above.
2. **If you are a for-profit corporation,** you will also need to provide the Secretary of State a letter of good standing from the Division of Unemployment Insurance. Their telephone number is 502-564-6835.
3. **If you are a non-profit entity,** please remember to file a copy of your tax returns with the Kentucky Attorney General. The charity filing requirements website is: http://ag.ky.gov/family/consumerprotection/charity/Pages/registration.aspx.

**CONTACT INFORMATION**

If you have any questions regarding this notice, please contact me. Thank you.

Agent: Dottye REV3769, Taxpayer Specialist I
Email: Dottye.Roberts@ky.gov
Direct: 502-564-0102

**KENTUCKY SECRETARY OF STATE**
**P.O. BOX 718**
**FRANKFORT, KY 40602**



0329183

First Class Mail
US Postage Paid
Frankfort, KY
Permit No. 888

### Certificate of Dissolution

I, Alison Lundergan Grimes, Secretary of State
of the Commonwealth of Kentucky, do hereby
certify that according to the records in the
Office of the Secretary of State,

**IMPORTANT NOTICE**

### ECOLOGY CROSSROADS
### COOPERATIVE FOUNDATION, INC.

did not file its 2015 annual report within sixty
days after it was due. Accordingly, the
Secretary of State administratively dissolved
the company on September 12, 2015.

**ECOLOGY CROSSROADS COOPERATIVE
FOUNDATION, INC.
2036 BIG HILL RD
BEREA KY 40403**

NIXIE        402    FE 1009        0010/05/15



RETURN TO SENDER
NOT DELIVERABLE AS ADDRESSED
UNABLE TO FORWARD

BC:   40602071818     *0170-04359-22-41

# Success

Your gift payment was successfully sent.

GIFT AMOUNT
## $50.00

PAYMENT METHOD

 5278

PAYMENT DATE
## 02/10

RECIPIENT
## 502-319-5166

RETURN TO BOOST HOME



Learn about your California consumer privacy rights. Submit a request for Boost Mobile not to sell your personal information.

Case 3:20-cv-00132-SRW Document 97-31 Filed 03/25/23 Page 181 of 283 PageID #: 3052

C

Learn about your California consumer privacy rights. Submit a request for Boost Mobile not to sell your personal information.

X

https://myaccount.boostmobile.com/primary/guest-replenish    2/2

KENTUCKY SECRETARY OF STATE
P.O. BOX 718
FRANKFORT, KY 40602



0329183

First Class Mail
US Postage Paid
Frankfort, KY
Permit No. 888

## Certificate of Dissolution

I, Alison Lundergan Grimes, Secretary of State
of the Commonwealth of Kentucky, do hereby
certify that according to the records in the
Office of the Secretary of State,

**IMPORTANT NOTICE**

### ECOLOGY CROSSROADS
### COOPERATIVE FOUNDATION, INC.

did not file its 2015 annual report within sixty
days after it was due. Accordingly, the
Secretary of State administratively dissolved
the company on September 12, 2015.

ECOLOGY CROSSROADS COOPERATIVE
FOUNDATION, INC.
2036 BIG HILL RD
BEREA KY 40403

NIXIE        402    FE  1009        0010/05/15



RETURN TO SENDER
NOT DELIVERABLE AS ADDRESSED
UNABLE TO FORWARD

BC:  40602071818        *8170-04359-22-41

**KENTUCKY SECRETARY OF STATE**
P.O. BOX 718
FRANKFORT, KY 40602

0329183

First Class Mail
US Postage Paid
Frankfort, KY
Permit No. 888

## Certificate of Dissolution

I, Alison Lundergan Grimes, Secretary of State
of the Commonwealth of Kentucky, do hereby
certify that according to the records in the
Office of the Secretary of State,

**ECOLOGY CROSSROADS**
**COOPERATIVE FOUNDATION, INC.**

did not file its 2015 annual report within sixty
days after it was due. Accordingly, the
Secretary of State administratively dissolved
the company on September 12, 2015.

Alison Lundergan Grimes
Secretary of State

**IMPORTANT NOTICE**

ECOLOGY CROSSROADS COOPERATIVE
FOUNDATION, INC.
2036 BIG HILL RD
BEREA KY 40403

| 0329183.09 | amcray RST |
|---|---|
| Alison Lundergan Grimes Kentucky Secretary of State Received and Filed: 4/22/2014 1:22 PM Fee Receipt: $340.00 | |

**Commonwealth of Kentucky**
**Alison Lundergan Grimes, Secretary of**

Alison Lundergan Grimes
Secretary of State
P. O. Box 718
Frankfort, KY 40602-0718
(502) 564-3490
http://www.sos.ky.gov

## Certificate of Existence

I, Alison Lundergan Grimes, Secretary of State of the Commonwealth of Kentucky, do hereby certify that according to the records in the Office of the Secretary of State,

ECOLOGY CROSSROADS COOPERATIVE FOUNDATION, INC.

has eliminated all the grounds for dissolution, paid all fees and penalties owed to the Secretary of State, and met all other requirements for reinstatement. The effective date of reinstatement is April 22, 2014.

I further certify that ECOLOGY CROSSROADS COOPERATIVE FOUNDATION, INC. is a corporation duly incorporated and existing under the laws of the Commonwealth of Kentucky, whose date of incorporation is April 12, 1994, and whose period of duration is perpetual.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my Official Seal at Frankfort, Kentucky, this 22nd day of April, 2014.

Alison Lundergan Grimes
Secretary of State
Commonwealth of Kentucky
0329183



Alison Lundergan Grimes
Secretary Of State
Filings Division
P.O. Box 718
Frankfort, KY 40602-0718

0329183
IMPORTANT NOTICE

**NOTICE**
**Keep this copy for your records**

The image on the reverse side of this card serves as your confirmation and copy that the business filing submitted was successfully filed with the Office of the Secretary of State in accordance to Kentucky Revised Statutes.

**How to obtain a full page copy of your business filing**

To download full page copies of the document to take to the County Clerk's Office, please visit our web site at www.sos.ky.gov. If you would like to request copies of the document from our office, please download the Records Request Form at www.sos.ky.gov and submit to our Records department.

If you have additional questions concerning your filing, please contact our office at 502-564-3490.

ECOLOGY CROSSROADS COOPERATIVE
FOUNDATION, INC.
302 GENERAL SMITH DR
RICHMOND KY 40475

0329183.09 amcray
NPRF

Alison Lundergan Grimes
Kentucky Secretary of State
Received and Filed:
4/22/2014 1:21 PM
Fee Receipt: $340.00

**Organization ID #** 0329183
**State of origin** KY
**Filing fee $340.00**

# Commonwealth of Kentucky
## Alison Lundergan Grimes, Secretary of State

Alison Lundergan Grimes
Secretary of State
P. O. Box 718
Frankfort, KY 40602-0718
(502) 564-3490
http://www.sos.ky.gov

# Reinstatement Application and Reinstatement Annual Report
### For the years 1999 through 2014

**RST**

**Exact organization name and principal office address**
ECOLOGY CROSSROADS COOPERATIVE FOUNDATION, INC.
302 General Smith Drive
Richmond, KY 40475

The principal office address and registered agent name/office address cannot be changed on this form. When reinstating, you cannot modify the addresses until the reinstatement is filed. Once the reinstatement is filed, the statement of change can be filed online at app.sos.ky.gov/ftsearch or can be

**Registered Agent and Registered Office Address**
ECOLOGY CROSSROADS COOPERATIVE FOUNDATION, INC.
Maya-Lis Wright; 302 General Smith Drive, Richmond, KY 40475

**Principal Officers** - List the name, address and title of all current officers. All organizations must list at least one (1) officer, even in the case of a sole officer. If not specified, officer addresses default to the principal office address. Corporations are required to list a Secretary or other officer serving as records custodian

| | | |
|---|---|---|
| President | Col. David J. Wright | Fundo Ekobius, Via Gavilan Kilometer 24, Ekobius, Atures, Amazonas, Venezuela 7101— Tel. +58 212-516-0361 |
| Vice-President | Bruce Lee Benefiel | 925 S. Sailfish Dr., Gilbert, Arizona 85233 — Tel.+01 480-633-7179 |
| Secretary | Tony B. Ly | 23 County Fair Road  Norwich, Connecticut 06360 — Tel.+01 408 230-9520 |
| Treasurer | Nicholas A. Wright | Bell Valley Apartments, 198 Bell Valley Drive, Nashville, Tennessee 37209— Tel. +01 859-358-0117 |

**Directors** - Non-profit corporations must have at least three (3) directors. All directors of the non-profit must be listed. If not specified, director addresses default to the principal office address.

| | |
|---|---|
| Col. David J. Wright | Fundo Ekobius, Via Gavilan Kilometer 24, Ekobius, Atures, Amazonas, Venezuela 7101— Tel. +58 2125160361 |
| Maya-Lis Wright | 302 General Smith Drive Richmond, Kentucky 40475—Tel. +01 859-358-0568 |
| Mike Gallagher | 1730 West 4th Street Wilmington, Delaware 19805 — Tel. +01 667-213-0075 |
| Karen Cantrell | The Fashion House, 73608 Hwy 111, Suite 1, Palm Desert, California 92260— Tel +01 760-773-4949 |
| Javier Vasquez | 1730 West 4th Street Wilmington, Delaware 19805 — Tel. +01 302-377-9163 |

Tony B. Ly          23 County Fair Road  Norwich, Connecticut 06360 — Tel.+01 408 230-9520

The above entity was administratively dissolved on November 2, 1999 because the entity did not file its annual report for the year 1999. The undersigned states that the grounds for dissolution either did not exist or have been eliminated, and the entity's name satisfies the requirements of KRS 273.3181. Enclosed is a check in the amount of $340.00, payable to Kentucky State Treasurer.

Under penalty of perjury, the below signed hereby authorizes the Kentucky Department of Revenue to release any applicable tax information pertaining to ECOLOGY CROSSROADS COOPERATIVE FOUNDATION, INC. to the Secretary of State, as required for reinstatement pursuant to KRS 271B.14-220.

If not an officer of said entity, please provide a Declaration of Power of Attorney with the Reinstatement Application.

X _Col David J Wright_

Signature of officer or chairman of the board (Required)

President, Executive Director
Title (Required)

2/22/2014
Date (Required)



**THOMAS B. MILLER**
Commissioner

**FINANCE AND ADMINISTRATION CABINET**
**DEPARTMENT OF REVENUE**
**OFFICE OF INCOME TAXATION**

**ELYSE WEIGEL**
Deputy Commissioner

**BOB BROOKS**
Executive Director

April 22, 2014

**ECOLOGY CROSSROADS COOPERATIVE FOUNDATION, INC.**
**302 GENERAL SMITH DR**
**RICHMOND KY 40475**

Re: Request for a Letter of Good Standing

Based upon the Department of Revenue records and the information submitted, **ECOLOGY CROSSROADS COOPERATIVE FOUNDATION, INC.** is exempt from filing a Kentucky Corporation Income Tax Return pursuant to KRS 141.040, KRS 141.0401 and KRS 136.070. This exemption does not apply to any other taxes administered by the Commonwealth of Kentucky. The Department of Revenue requests the company's charter be reinstated provided all other requirements of the Secretary of State have been met by the corporation. This letter is valid for 30 days from the date of this letter.

Any changes in the corporation's articles of incorporation, by-laws, method of reporting, name or address, or ruling by the Internal Revenue Service must be reported to this office.

Sincerely,

Theresa Collins, Taxpayer Services Specialist II
Division of Corporation Tax
501 High Street, Mail Sta. 52
Frankfort, KY 40601
502-564-7288
FAX# 502-564-0058

Kentucky Secretary of State organization number 0329183



2/13/2020    apps.sos.ky.gov/ImageWebViewer/(S(gd1p0jmokgbo5wnxl2s4a355))/OBDBDisplayImage.aspx?id=1416092

Commonwealth of Kentucky
John Y. Brown III
Secretary of State

### Certificate of Dissolution

AMERICAN BUSINESS & TECHNOLOGY INCORPORATED        0329183
306 ESTILL STREET
BEREA, KY 40403

I, John Y. Brown, Secretary of State of the Commonwealth of Kentucky, do hereby
certify that according to the records in the office of the Secretary of State,

## ECOLOGY CROSSROADS COOPERATIVE FOUNDATION, INC.

did not file its 1999 annual report within sixty days after it was due. Accordingly, the
Secretary of State administratively dissolved the corporation on November 2, 1999.



IN WITNESS THEREOF, I have
hereunto set my hand and affixed my
official seal this 2nd day of November,
1999.

John Y. Brown III

John Y. Brown III
Secretary of State

Multi-page document. Select page: 1 2

## Commonwealth of Kentucky
## John Y. Brown III
## Secretary of State

### Certificate of Dissolution

**AMERICAN BUSINESS & TECHNOLOGY INCORPORATED**          **0329183**
**306 ESTILL STREET**
**BEREA, KY 40403**

I, John Y. Brown, Secretary of State of the Commonwealth of Kentucky, do hereby
certify that according to the records in the office of the Secretary of State,

### ECOLOGY CROSSROADS COOPERATIVE FOUNDATION, INC.

did not file its 1999 annual report within sixty days after it was due. Accordingly, the
Secretary of State administratively dissolved the corporation on November 2, 1999.



IN WITNESS THEREOF, I have
hereunto set my hand and affixed my
official seal this 2nd day of November,
1999.

John Y. Brown III

John Y. Brown III
Secretary of State

Multi-page document. Select page: 1 2

Multi-page document. Select page: 1 2



JOHN Y. BROWN III
SECRETARY OF STATE
P.O. BOX 1150
FRANKFORT, KY 40602-1150

☑ REGISTER TO VOTE

NOV 1 2 1999

SECRETARY OF STATE
COMMONWEALTH OF K...

RECEIVED

FORWARDING ORDER EXPIRED

RETURN TO SENDER

Multi-page document. Select page: 1 2

329183

**Commonwealth of Kentucky**
**John Y. Brown III**
**Secretary of State**



### Application for Reinstatement
(Nonprofit)

## ECOLOGY CROSSROADS COOPERATIVE FOUNDATION, INC.

was administratively dissolved under KRS 273.3181 or revoked under KRS 271.567 on **November 3, 1998** because the corporation did not:

- Fil its annual report for the **year 1998:**

The undersigned hereby applies for reinstatement of said nonprofit corporation and further states as follows:

1. the grounds for dissolution either did not exist or have been eliminated.
2. the corporation's name satisfies the requirements of KRS

The following documents and fees are enclosed with this application:

(1) A certificate from the Kentucky Revenue Cabinet reflecting that all taxes owed by the corporation have been paid.
(2) Reinstatement Annual Report.
(3) A check in the amount of **$12.00** which includes
   (a) **$8.00** reinstatement penalty fee
   (b) **$4.00** Annual report fee for 1 year
(4) Form SSD-03* -- Complete this form if a change has occurred in the current registered office or agent, or both. Add $5.00 to the total listed in section 3. Form SSD-03 is attached as part of this reinstatement.
(5) Articles of Amendment to the Articles of Incorporation if the corporation's name is unavailable for use at the time of reinstatement. Add $5.00 to the total listed. Such articles of amendment are being filed as part of this reinstatement.
(6) Articles of Amendment to the Articles of Incorporation if the change in the corporation's period of duration due to expiration. Add $5.00 to the total in section (3) if applicable. Such Articles are filed as part of this reinstatement.

12TH day of November, 19 98
Col David J. Wright
President

---

*Printable Name

Refer to KRS 14A.3.010 and 14A.3.020 for reinstatement and its completion requirements.

KRS 273.384 and 14A.3.010 and KRS 92.594 349.10 to make certain that its requirements for reinstatement articles of amendment changing.

Multi-page document. Select page: 1 2

COMMONWEALTH OF KENTUCKY
**REVENUE CABINET**
FRANKFORT
40620

November 16, 1998

COLONEL DAVID WRIGHT
ECOLOGY CROSSROADS
COOPERATIVE FOUNDATION
P O BOX 231
BEREA KY 40403

Dear Colonel Wright

    YOUR November 13, 1998 REQUEST FOR LETTER OF GOOD STANDING

    The Revenue Cabinet acknowledges receipt of your request for a letter of good standing for Ecology Crossroads Cooperative Foundation. Revenue records indicate that the corporation has not filed Kentucky Corporation Income and License Tax returns.

    Based on the information submitted, this office has determined that returns are not required as of the date of this letter. The Cabinet requests that the corporation's charter be reinstated providing all other requirements of the Secretary of State have been met by the corporation.

    This letter must be submitted to the office of the Secretary of State within thirty (30) days to be accepted for reinstatement.

Sincerely,

Ms Raemel Fanning, Revenue Auditor II
Corporation Tax Section
Division of Compliance & Taxpayer Assistance
200 Fair Oaks Lane, Second Floor
P O Box 1302, Station 52
Frankfort KY 40602
(502) 564-8139 ext. *4754

**AN EQUAL OPPORTUNITY EMPLOYER M/F/D**

Multi-page document. Select page: 1 2

# COMMONWEALTH OF KENTUCKY
## JOHN Y. BROWN III
## SECRETARY OF STATE

## CERTIFICATE OF DISSOLUTION

S. ANDREA WRIGHT
2972 MOUNT MCKINLEY WAY
LEXINGTON KY 40515

Record No: 0329183

Name of Corporation:

ECOLOGY CROSSROADS COOPERATIVE FOUNDATION, INC.

Pursuant to the provisions of KRS 271B.14-210 and KRS 273.3181, the above-named corporation has been administratively dissolved effective November 3, 1998 for the following reason indicated:

**X** 1. The corporation did not file its annual report with the Secretary of State within sixty days after it was due.

_____ 2. The corporation was without a registered agent or registered office in this state for sixty days or more.

_____ 3. The corporation did not notify the Secretary of State within sixty days that its registered agent or registered office had been changed, that its registered agent had resigned, or that its registered office had been discontinued.

_____ 4. The corporation's period of duration stated in its articles of incorporation expired.

A corporation administratively dissolved continues its corporate existence but may not carry on any business except that necessary to wind up and liquidate its business and affairs.

*John Y. Brown III*
John Y. Brown III
Secretary of State

Multi-page document. Select page: 1 2



JOHN Y. BROWN III
SECRETARY OF STATE
P.O. BOX 1150
FRANKFORT, KY 40602-1150

ATTENTION! DATED MATERIALS ENCLOSED!

RETURN TO SENDER
FORWARDING ORDER EXPIRED
LIBERTY ROAD STATION

RECEIVED

NOV 1 6 1998

SECRETARY OF STATE
COMMONWEALTH OF KY

Multi-page document. Select page: 1 2

Multi-page document. Select page: 1 2 3 4 5

**329183**

## CERTIFICATE OF ORGANIZATION AND ARTICLES OF INCORPORATION
## ECOLOGY CROSSROADS COOPERATIVE FOUNDATION, INC.

**The Articles of Incorporation of** the undersigned, all being of full legal age, and all being citizens or legal residents of the United States, do, voluntarily, under and by virtue of the laws of the United States of America, hereby associate themselves with the desire and intention to form a non-profit charitable membership organization in the benefit and interest of the public.

**The Undersigned,** in order to form a non-profit corporation for the purposes hereinafter stated, do so, under and pursuant to the provisions and outline of the Model Nonprofit Corporation Act (ABA), the Non-Profit Corporation Laws and Revised Statutes (KRS Chapter 273) of the State of Kentucky, other applicable laws of the State and the laws of the United States of America, and further do hereby make and adopt the following Certificate of Organization and Articles of Incorporation. We the incorporators do hereby certify as follows:

### ARTICLE I

The name of the corporation is the **Ecology Crossroads Cooperative Foundation,** Inc. hereafter known as the "Corporation". The Corporation shall commence business with the filing of these articles and from thereon be perpetual in its existence.

### ARTICLE II

**747791**

The initial registered office and the initial principal office of the Corporation in the State of Kentucky is located at 2972 Mount McKinley Way, Lexington, Fayette County, 40515. The regular mailing address of the Corporation is Post Office Box 12395, Lexington, Kentucky 40583-2395. The name of the Corporation's registered resident agent on whom process may be served at such addresses is that of the Acting Secretary of Records, at the time of this Incorporation that persons' name is S. Andrea Wright.

### ARTICLE III

The Corporation is a non-profit cooperative and public membership association organized and created exclusively for educational, environmental, literary, agricultural, cultural, scientific and charitable purposes, including, for such purposes, the making of distributions to organizations that qualify as exempt organizations under section 501(c)(3) of the Internal Revenue Code, or corresponding section of any future federal tax code.

The purposes for which the Corporation is formed, and the business and the objects to be carried on and promoted by it, are as follows:

A) To educate the general public regarding environmentally sensitive matters in need of attention, with special attention on local, national, and global ecological knowledge and understanding.

B) To provide and disseminate factual literature, resources, and information free of charge and/or at little cost in an effort to educate and inform the public regarding natural resource conservation, to foster that which is environmentally sound for the earth, and to promote ecologically sustainable values and social responsibility among the general population.

C) To introduce sustainable development techniques, environmentally safe products and green technologies to developing and underdeveloped areas of the world; including private property, public property, farms, communities, counties, states, federations and/or countries.

D) To extend the specific educational programs related to our purposes of universities and colleges to areas where universities do not exist through various modern technologies such as satellite and computer communications as well as future technologies as they are developed and become available.

E) To establish and/or assist others in the establishment of easements and land trusts that favor the preservation and natural ecology of indigenous environmental habitats for their use and continued existence as such, with special attention on stewardship land trust establishment, reforestation, wildlife management, ecological restoration, habitat enhancement and land preservation in general.

1 of 5

Multi-page document. Select page: 1 2 3 4 5

2/10/2020                    apps.sos.ky.gov/ImageWebViewer/(S(vtw1zq454034yg55ylbfuoaw))/obdbdisplayimage.aspx?id=2291972&page=2

F)        To stimulate and extend the appreciation of native flora and fauna of the Americas with special attention on keystone, rare, endangered and threatened species and their environments.

G)        To demonstrate, identify, research, promote, cultivate, champion, advocate, provide prototype and exhibit ecologically sustainable community development both in theory and practice, and to provide homes and develop community life within these establishments for the benefit of the public.

H)        To sponsor, establish, organize, promote and operate social, cultural, scientific, charitable and educational activities which are beneficial to this organization, the public interest and the members of the organization.

I)        To provide, distribute, manufacture and/or demonstrate on a non-profit basis natural, organic and other related products, foods and services free and/or at a low-cost to the members of the organization and general public.

J)        To establish and promote environmentally and ecologically sustainable intentional communities, membership housing cooperatives, and low-cost rural housing and housing programs with emphasis on agricultural reliance, self-sufficiency, natural resource conservation and land stewardship.

K)        To construct, develop, operate, maintain, occupy, control and improve and to buy, take, purchase, exchange, own, sell, convey, assign, lease or sublease and hold unlimitedly or otherwise alienate or dispose of, within and without the State of Kentucky and elsewhere, to mortgage or otherwise encumber and otherwise to handle and to deal in real estate, real property or land either improved or unimproved, and any interest rights therein incident to the provision of such aforementioned rural community or low cost housing program developed.

L)        To borrow or raise moneys for any of the purposes of this corporation and from time to time issue warrants, bonds, debentures, notes or other evidences of indebtedness, secured or unsecured, of this corporation for moneys so borrowed, in furtherance of any or all of the objects of the Corporation's business; to secure the same by mortgage, deed of trust, pledge or other lien upon any or all of the property rights, privileges or franchises of this corporation wheresoever situated, acquired or to be acquired, and to pledge, sell, or otherwise dispose of any or all of such bonds, debentures, notes and other obligations of this corporation for its corporate purposes.

M)        To build, erect, construct, purchase, lease, or otherwise acquire, own, provide, establish, maintain, hold and operate homes, schools, child nurseries, factories, laboratories, warehouses, agencies, depots, buildings, structures, offices, works, stores, plants, commissaries, and all other things of whatsoever kind and nature, suitable, necessary, useful, convenient or advisable in connection with any or all of the objects hereinbefore or hereinafter set forth.

N)        To employ, engage, hire and to appoint corporations, firms and individuals in any and all parts of the world to act as agents for this corporation in such capacity and on such conditions as may be determined from time to time by the Board of Trustees (directors), with the approval of the Regular Members.  The procedure necessary to obtain the approval of the membership shall be provided in the by-laws.

O)        To enter into, make, perform and carry out contracts of every sort and kind which may be necessary or convenient for the purposes of this corporation with any person, firm, association, corporation private, public or municipal, body politic, any State, territory or municipality of the United States or any foreign government, colony or body politic, or with the United States of America, any political, administrative or governmental subdivision therein, or any corporation formed within or by or supervised by the laws of the United States of America, or by any foreign government, colony or body politic as allowed.

P)        To seek, apply for, obtain or cause to be obtained, assistance in the form of volunteer work, in-kind contributions, bequests, gifts, grants, other contributions, loans, donations, awards and property of any nature or kind without limitation as to its amount or value from individuals, private foundations, non-profit organizations, corporations and governments and to hold, invest, reinvest, manage, use, option, donate or otherwise dispose of such property or income, principal and proceeds of such in order to accomplish any of the purposes set forth herein.

Q)        To enter into any kind of activity, engage itself in any business enterprise(s) whatsoever which this corporation may deem proper or convenient in connection with any of the foregoing purposes or otherwise, or which may be calculated directly or indirectly to promote the interests of this corporation, or to enhance the value of its property or business, to have and to exercise all of the powers conferred by the laws of the United States of America upon corporations formed under the laws pursuant to and under which this corporation is formed, as such laws are now in effect or may at any time hereafter be amended to the accomplishment of the non-profit purposes of the corporation.

2 of 5

apps.sos.ky.gov/ImageWebViewer/(S(vtw1zq454034yg55ylbfuoaw))/obdbdisplayimage.aspx?id=2291972&page=2                    1/1

2/10/2020                                apps.sos.ky.gov/ImageWebViewer/(S(vtw1zq454034yg55ylbfuoaw))/obdbdisplayimage.aspx?id=2291972&page=3

R)    To establish if ever necessary an ecumenical missionary church, and in connection therewith suitable and customary organizations, for the purpose of remote public worship and religious moral enlightenment, according to the rules and discipline of non-denominational churches under the supervision of those who attend to take charge of the affairs of the church.

S)    The funds of the corporation and/or benefits of membership of the corporation shall not be restricted in use to any people or be discriminate on the basis of race, faith, religion, color, life-style, ancestry, national origin, political party, sex, marital status, belief, creed, physical or mental handicap. Funds and benefits shall always be administered on an open nondiscriminatory and interdenominational basis.

T)    To operate and conduct the corporation's activities within the applicable guidelines, principles and ethics of 'The International Bill of Human Rights', 'The Rio Declaration on Environment and Development' as well as 'Agenda 21: Programme of Action for Sustainable Development', all of which are documents of the United Nations and any future revisions and/or amendments of these documents.

U)    To provide missionary relief, education, assistance, humanitarian aid and guidance to neighbors in need without reserve to the organization through cooperative means on an open free non-discriminatory, non-secular, eclectic and ecumenical basis.

V)    To solicit, receive, invest, administer and distribute funds for the above purposes, and for no other purposes.

### ARTICLE IV

No part of the earnings of this Corporation shall ever inure to the particular benefit of, or be distributable to any Member, Trustee, Officer or individual having a personal or private interest in the activities of this Corporation, except that the Corporation shall be authorized and empowered to pay reasonable compensation for services rendered and to make payments, reinbursements and distributions in furtherance of the purposes set forth in Article III hereof. No substantial part of the activities of the Corporation shall be the carrying on of propaganda, or otherwise attempting to influence legislation, and the Corporation shall not participate in, or intervene in (including the publishing or distribution of statements) any political campaign on behalf of or in the opposition to any candidate for any public office. Said Corporation shall not be authorized to accept gifts or contributions for other than the purposes hereinbefore stated. As a means of accomplishing the foregoing purposes, said Corporation shall have the power to do any and all such acts as are necessary or conducive to the attainment of any of the objects and purposes set forth herein, to the same extent and as fully as any natural person might or could do; provided, however, that notwithstanding any provision of these articles or any provisions of applicable state or federal law. Notwithstanding any other provision of these articles, the Corporation shall not carry on any other activities not permitted to be carried on (a) by a corporation exempt from federal income tax under section 501 (c)(3) of the Internal Revenue Code, or corresponding section of any future federal tax code, or (b) by a corporation, contributions to which are deductible under section 170 of the Internal Revenue Code or any future federal tax code.

The Corporation shall be subject to the following restrictions:

A)    The Corporation shall distribute it's income for each taxable year at such time and in such manner as not to become subject to the tax on undistributed income imposed by section 4942 of the Internal Revenue Code or corresponding provisions of any subsequent federal tax laws.

B)    The Corporation shall not engage in any act of self-dealing as defined in section 4941 (d) of the Internal Revenue Code or corresponding provisions of any subsequent federal tax law.

C)    The Corporation shall not retain any excess business holdings as defined in section 4943 (c) of the Internal Revenue Code or corresponding provisions of any subsequent federal tax law.

D)    The Corporation shall not make any investments in such manner as to subject it to tax under section 4944 of the Internal Revenue Code or corresponding provisions of any subsequent federal tax law.

E)    The Corporation shall not make any taxable expenditures as defined in section 4945 (d) of the Internal Revenue Code or corresponding provisions of any subsequent federal tax law.

3 of 5

apps.sos.ky.gov/ImageWebViewer/(S(vtw1zq454034yg55ylbfuoaw))/obdbdisplayimage.aspx?id=2291972&page=3                                1/1

Multi-page document. Select page: 1 2 3 4 5

## ARTICLE V

The Corporation shall be a membership cooperative association and individual membership organization and shall have no authority to issue any capital stock. The members shall have no right, title or interest whatsoever in the corporation, in its income, property, assets nor shall any member soley or collectively have right or claim to any legal portion or interest. The specific conditions of membership and the voting powers of the members shall be set forth in the By-Laws of the Corporation.

## ARTICLE VI

The business and affairs of the Corporation, and the control and disposition of its property and funds, shall be managed by or under the direction of the Board of Trustees of the Corporation. The qualification, tenure, number, election, selection, powers, and duties of the Board of Trustees shall be provided in the By-Laws of the Corporation. No officer, trustee, member or employee of the Corporation shall receive any pecuniary profit from the operations thereof, except reasonable compensation for services actually rendered on behalf of the Corporation.

A Trustee of the Corporation or an Officer of the Corporation shall not be personally liable to the Corporation or its members for monetary damages for breach of fiduciary duty as a Trustee or Officer, except that of liability (i) for any breach of the Trustee's or Officer's duty of loyalty to the Corporation or it's members, (ii) for acts or omissions not in good faith or which involve intentional misconduct, (iii) under any section of the laws pertaining to non-profit corporations, or (iv) for any transaction from which the Trustee or Officer derived any improper personal benefit. If the Laws of the State are amended after the filing of these Articles of Incorporation of which this article is a part to authorize corporate action further eliminating or limiting the personal liability of Trustees or Officers, then the liability of a Trustee or Officer of the Corporation shall be eliminated, enhanced or limited to the fullest accordance by such Laws as pertaining to non-profit corporations, as so amended.

Any repeal or modification of the foregoing paragraph by the members of the Corporation shall not adversely affect any right or protection of a Trustee or Officer of the Corporation at the time of such repeal or modification.

## ARTICLE VII

The Incorporators of the Corporation of whom are also the initial Board of Trustees of the Corporation, shall serve as Trustees until the first annual meeting of the members of the Corporation or until their successors are elected and qualify, whichever occurs first. Their names and addresses are as follows:

Ryan Finneran • 1236 Gainesway Drive, Lexington, Kentucky 40517
Maxine E. Rose-Lenett • 14344 Encanto Drive, Victorville, California 92392
Salvatore Perice • 132 Wagonwheel Court, Marlton, New Jersey 08053
Calvin D. Williams • 11 Cemetary Lane, Belize City, Belize, Central America
David J. Wright • 2972 Mount McKinley Way, Lexington, Kentucky 40515
S. Andrea Wright • 2972 Mount McKinley Way, Lexington, Kentucky 40515

## ARTICLE VIII

Each Initial Trustee / Incorporator named has consented to their appointment through mutual association and the filing of these Articles of Incorporation. The number of Trustees may be increased or decreased from time to time in accordance with the By-Laws, but shall never be less than three. The Regular Members shall elect the Trustees every year on a five year rotational basis. The By-Laws may provide for ex officio and honorary Trustees, and their rights and privilages.

## ARTICLE IX

This Corporation has been founded, chartered and organized initially by its Incorporators whom for as long as this Corporation remains in existence will be known as its Founders. This article shall not be changed, altered, amended, deleted or otherwise modified, unless done unanimously by said Founders. Henceforth each founder shall be known and may use within their affiliation of the organization the title of Co-Founder as long as they remain involved with the organization.

## ARTICLE X

The Officers of the Corporation shall consist of a President, Vice-President, Secretary, Treasurer and such other Officers, Assistant Officers, Committee Chairpersons, and Honorary Officers as may be provided in the By-Laws. Each Officer shall be

Multi-page document. Select page: 1 2 3 4 5

Multi-page document. Select page: 1 2 3 4 5

elected by the Board of Trustees (and may be removed by the Board of Trustees) at such time and in such manner as may be prescribed by the By-Laws.

**ARTICLE XI**

In the event of liquidations, dissolution, or winding up of this Corporation, whether voluntary, involuntary, or by operation of law, except as otherwise provided by law, the Board of Trustees and Officers of this Corporation shall have the power to dispose of the total assets of the Corporation in such manner as they, in the exercise of any absolute and uncontrolled discretion, may by a majority vote determine; provided, however, that such disposition shall; be calculated to carry out the objects and purposes for which the Corporation is formed and only such objects and purposes; provided further, that the recipients of such disposition shall be limited exclusively to the Federal Government, a State or local government, or to any organization which, at the time of disposition, is qualified exempt from tax under section 501(c)(3) of the Internal Revenue Code of 1986, or the corresponding provision of any subsequent United States Internal Revenue Law.

**ARTICLE XII**

The By-Laws of the Corporation are to be made and adopted by the Board of Trustees, and may be altered, amended or rescinded by the Board of Trustees.

**ARTICLE XIII**

This Corporation reserves the right to amend, alter, change, or repeal any provision contained in these Articles of Incorporation or any amendment to them, and all rights and privileges conferred upon the Members, Trustees and Officers are subject to this reservation, unless otherwise noted, in the manner now or hereafter prescribed by statute. All the rights conferred herein are granted subject to this reservation; provided, however, that no amendment shall authorize the Board of Trustees or it's Officers to conduct the affairs of the Corporation in any manner for any purpose which would cause it to lose its tax-exempt status under the provisions of the applicable Internal Revenue Codes, or the corresponding provisions of any future federal tax laws, as amended.

**ARTICLE XIV**

This Corporation shall begin to and continue to conduct its activities as a non-profit charitable entity as defined by section 501(c)(3) the Internal Revenue Service Code. The Corporation will further carry on its practices to apply to be recognized as a publically supported organization and in due process become classified as either a 509(a)(1) or 509(a)(2) organization within one year of such qualification expectation. The organization will immeadiately apply for an Internal Revenue Service (E.I.N.) Employer's Identification Number on the same day of this incorporation, this number will be used as the organization's tax identification number and as appropriate tax exemption number during the corporation's interim preemptive non-profit status.

**ARTICLE XV**

The Corporation shall hereforth proceed with its authority to organize and conduct business under the statues cited herein, applicable laws that may apply or come to apply to the operation of the corporation, including for such puposes laws of the lands it may eventually operate within.

In the hand of authorized representative Incorporators and Founders, this Certificate of Organization and Articles of Incorporation hath been finally filed with the Secretary of State of Kentucky in person at the State's Capitol in Frankfort on the twelfth day of April, in the nineteen hundred and ninety fourth year of the common era.

S. Andrea Wright

Calvin D. Williams

**COOPERATION**

Maxine E. Rose-Lennet

Rev. David J. Wright

5 of 5

Multi-page document. Select page: 1 2 3 4 5

# EXHIBIT 12

# TO MOTION FOR
# RESTRAINING ORDER

Case 3:20-cv-00431-JHW Document 9-1 Filed 02/25/23 Page 203 of 283 PageID #: 4064

WIKIPEDIA

# Kentucky Colonel

**Kentucky Colonel** is the highest title of honor bestowed by the Commonwealth of Kentucky. Commissions for Kentucky colonels are given by the governor and the secretary of state to individuals in recognition of noteworthy accomplishments, contributions to Kentucky society, remarkable deeds, and outstanding service to a community, state, or the nation. The Governor of Kentucky bestows the honor of a colonel's commission, by issuance of letters patent.



Historic Coat of Arms

## Contents

History
    Official modern role

Recipients
    Nominations

Kentucky colonel organizations
    Kentucky Colonels International
    The Honorable Order of Kentucky Colonels

Colonel toast

Cultural influence
    Business
    Sports
    Music

See also

References
    Bibliography

External links

## History

The title "Kentucky Colonel" was formalized in 1813, but it was previously used informally to refer to people with honored reputations, often related to military service in the American Revolution. It was also often associated with landowners respected in their communities.[1] When the Kentucky Militia was deactivated following the War of 1812, Governor Isaac Shelby commissioned Charles Stewart Todd, one of his officers in the campaign, as an aide-de-camp on the Governor's Staff with the rank and grade of colonel.[1]

Case 3:23-cv-00043-DJH-CHL Document 99-1 Filed 07/05/23 Page 204 of 283 PageID #: 4085
Case 3:20-cv-00431-DJH Document 1-1 Filed 06/22/20 Page 30 of 29 PageID #: 349

Early colonels served military roles in the state. In the latter part of the 19th century, the position took on a more ceremonial function. Colonels in uniform attended functions at the Governor's mansion and stood as symbolic guards at state events. By the late 19th century, the title had become more of an honorary one. Since commissioned Kentucky Colonels are considered honorary aides-de-camp to the Governor and members of his staff, all are entitled to the style of "Honorable" as indicated on their commission certificates. This is rarely used, however; Kentucky colonels are usually just referred to and addressed as "Colonel". In writing, usage is *Kentucky colonel* when the term is not being used as a specific title for an individual.[2][3][4][5]

In 1885, Governor William O'Connell Bradley commissioned the first honorary Kentucky colonels as a meritory award bestowed upon citizens for their individual contributions to the state, good deeds, and noteworthy actions. In 1890, a book was published by Opie Read, called 'A Kentucky Colonel' which evolved a new public perception of what a Kentucky colonel was, posing himself more as a refined, well-mannered southern gentleman, rather than a figure in the Kentucky militia. This view was further established by Zoe Anderson Norris with a series of twelve stories (https://exploreuk.uky.edu/catalog/xt7tht2g8079_49#page/1/mode/1up) published in *The Sun* (New York) in 1905 describing scenes and incidents in a Kentucky Colonel's life in the Southland, adding to the allure of the somewhat mythical life of the most distinguished Kentucky colonels.[6]

In the late 1920s into early 1930s, Kentucky colonels began to come together to form sociopolitical, fraternal organizations, founding the Honorable Order of Kentucky Colonels in 1932 by Gov. Ruby Laffoon.[7]

Prior to 1932, only about 1,000 people had received commissions as Kentucky colonels. Governor Ruby Laffoon, in office from 1931 to 1935, dramatically increased the number of colonels by issuing more than 5,000 commissions; one of the most famous of these was restaurateur Harland Sanders, who was commissioned in 1935. When Governor Happy Chandler took office in 1935, he took a much different view on the distinction of a Kentucky colonel commission. Governor Chandler issued only about a dozen new commissions annually on Derby Day. Governor Keen Johnson followed Governor Chandler's lead during his time in office from 1939 to 1943, commissioning only those select individuals who were deemed to have exhibited noteworthy accomplishments and outstanding service to a community, state or the nation.[8] The subsequent governors, however, were typically much more liberal in issuing Kentucky colonel commissions.

Under Governor Steve Beshear in 2008, so many commissions were being issued that state budget cuts led to a major change in the design of the commission certificate, the governor issued as many as 16,500 colonelships.[9] The certificate was downsized from the 10-by-15-inch (25 by 38 cm) size to 8.5 by 14 inches (22 by 36 cm). The wording remained the same on the certificate; however, the traditional gold seal and ribbon were replaced with a state seal that is embossed. Reducing materials for the new certificates was expected to save $5,000; the substantial savings was for excluding the labor formerly needed to apply the gold seal and ribbon by hand. The Honorable Order of Kentucky Colonels objected to the changes in the certificates, and the order offered to pay $5,000 a year to keep the traditional certificates. Due to the substantial savings in labor to produce the new certificates, the Secretary of State's office proceeded with the changes.[10]

## Official modern role

Today, Kentucky colonels serve the Commonwealth of Kentucky officially as its goodwill ambassadors that are responsible for preserving the traditions, culture, and customs of the state. Because they are issued letters patent by the head-of-state colonels as goodwill ambassadors, they are legally charged with promoting the interests of the state, tourism, economic development, and its prosperity under the duly elected governor. Colonels are found to frequently become involved in volunteerism and community service with non-profit causes and events inside and outside of Kentucky.[11]

# Recipients

The honor has been given to a broad variety of notable people – including various celebrities, artists, writers, athletes, performers, businesspeople, US and foreign politicians, and members of foreign royal families – some of whom have no obvious connection to Kentucky.[12] It has also been bestowed upon various people who are not generally considered especially notable – they have been people from "all walks of life",[1] as the selection process is intended to identify those with a reputation for high moral standards and a record of noteworthy accomplishments.

### Nominations

An individual can only become a Kentucky colonel if they are nominated by another colonel or personally identified by the Commonwealth's governor or his staff to be recognized with the award. In 2014 Governor Matt Bevin changed the nomination process so that only 'active colonels' who make annual contributions to the charitable organization, The Honorable Order of Kentucky Colonels could make nominations.[13] In 2019, the unincorporated fraternal membership organization Kentucky Colonels International raised concerns over the changes instituted by Governor Bevin indicating that the commission is a lifetime appointment as an honorary award that should not require colonels who have received the honorable title to donate annually in order to make nominations and retain their status or privileges.[14]

# Kentucky colonel organizations

Today there are a number of charitable, fraternal, and social organizations around the world that are either dedicated to, show deference to, or provide fellowship to Kentucky colonels. The social formation of these organizations created by those who have received the title has been facilitated by the use of social media allowing new fellowships and chapters to be created. There are currently organized fellowships (civil societies) located in the United Kingdom, Philadelphia, New York, Switzerland,[15] Spain, Toronto, Germany, and several other places.[16][17] Such groups have sometimes teamed together to support humanitarian causes like tornado disaster relief in Kentucky in 2012 and in Oklahoma in 2013. This has resulted in individuals spreading social media messages using Facebook diplomacy to generate goodwill towards the state of Kentucky and further recognition of the honorary title.[18]

### Kentucky Colonels International

One of these organizations is Kentucky Colonels International[19][20] which was a part of Globcal International[21] until January 2020. The membership organization originally started in 1998 and was active online until 2001.[22] In 2009, the organization reappeared on Facebook as a non-state decentralized civil society organization which lists, promotes and connects various organizations,

Case 3:20-cv-00432-JHM Document 1-3 Filed 06/15/23 Page 206 of 283 PageID #: 3107

international chapters, and online groups that have been developed and identified in the sphere of the Internet and the social media.[14] In January 2020 the organization reformed, incorporating itself as an assumed name corporation of Ecology Crossroads[23] (a Kentucky nonprofit). By February, they had set-up a commission of nine Kentucky colonels charged with the task of reorganizing the development as a brotherhood and fellowship of Kentucky colonels operating as a membership organization under the First Amendment of US Constitution, the US Code, and Kentucky law.[24] Their commission includes some of the original members, most notable of their officers are American folk musician, J.D. Wilkes of Paducah, Kentucky and Karen S. Cantrell[25] of Rancho Mirage in California. Col. Cantrell is also the president of the United Nations Association of the Coachella Valley who has been well-noted for her work in philanthropy.[26] The organization is decentralized using the Internet, has a website, blog, social media groups, and maintains its mailing address in Richmond, Kentucky.[20] According to their blog the organization's existence and formation has been challenged by the Honorable Order of Kentucky Colonels in 2001, 2016 and in 2019.[23]

### The Honorable Order of Kentucky Colonels

The Honorable Order of Kentucky Colonels (HOKC) is the largest and most well-known organization of Kentucky colonels; the organization maintains a very impressive supporter list. After a person receives a commission, they automatically become an honorary lifetime member of organization which is located in Louisville, Kentucky. Recipients are invited to donate and participate in charitable efforts throughout the state.[1][27] The Governor of Kentucky serves as the "Commander-in-Chief" of the Honorable Order, and its board of trustees recognized as its 'Generals' serve on a volunteer basis.[1] The mission of the organization is to aid and promote the Commonwealth of Kentucky and its citizens.[28] The organization raises money to support Kentucky charities, educational organizations, and to conduct other good works that will help the citizens of Kentucky. The organization's charitable efforts have also sometimes extended past the borders of the Commonwealth, such as contributing to natural disaster relief in neighboring states. By 1979, annual donations exceeded $500,000, and by 1992, they exceeded $1 million.[7] In 2019 the organization made grants to 265 organizations in the state in excess of 2.1 million dollars.[29]

An early example of charitable activities organized by the charitable organization was relief efforts for the Ohio River flood of 1937, which had a devastating effect on northern Kentucky and other states along the Ohio River. Colonels Fred Astaire, Eddie Cantor, and Irving Mills were especially instrumental in fund-raising for this project.[30]

# Colonel toast

In 1936, New York advertising agency owner Colonel Arthur Kudner wrote a toast to Kentucky colonels. The toast was quickly adopted by the HOKC, and it was widely promoted and published for use by colonels. The toast has since been ceremonionsly presented at each of the Kentucky Colonels' Derby Eve Banquets:

> I give you a man dedicated to the good things of life, to the gentle, the heartfelt things, to good living, and to the kindly rites with which it is surrounded. In all the clash of a plangent world he holds firm to his ideal – a gracious existence in that country of content "where slower clocks strike happier hours". He stands in spirit on a tall-columned veranda, a hospitable glass in his hand, and he looks over the good and fertile earth, over

ripening fields, over meadows of rippling bluegrass. The rounded note of a horn floats through the fragrant stillness. Afar, the sleek and shining flanks of a thoroughbred catch the bright sun. The broad door, open wide with welcome ... the slow, soft-spoken word ... the familiar step of friendship ... all of this is his life and it is good. He brings fair judgment to sterner things. He is proud in the traditions of his country, in ways that are settled and true. In a trying world darkened by hate and misunderstanding, he is a symbol of those virtues in which men find gallant faith and of the good men might distill from life. Here he stands, then. In the finest sense, an epicure ... a patriot ... a man. Gentlemen, I give you, the Kentucky Colonel.[31][32]

# Cultural influence

Those who have received the commission of the Kentucky Colonel have often used the title to promote their business or ideals while promoting the state and its traditions resulting in developing a long term impact on Kentucky culture associated with the honor.

## Business

The title of the founder and symbolic icon of the fast-food restaurant chain KFC, Colonel Harland Sanders, comes from his status as a Kentucky colonel. He became so well known that he was sometimes referred to simply as "The Colonel".

Another example of use of the Kentucky colonel title in business marketing is seen in the ongoing historic association between Kentucky and bourbon whiskey production. As of 2013, approximately 95 percent of all bourbon was produced in Kentucky, and the state had 4.9 million barrels of bourbon in the process of aging.[33][34] The historic distiller James B. Beam is referred to as "Colonel James B. Beam" for the marketing of the Jim Beam brand (the largest-selling brand of bourbon).[35] The Sazerac Company similarly refers to the distiller Albert Blanton as "Colonel Blanton" for their marketing of the Blanton's brand. In both cases, the "Colonel" title refers to being a Kentucky colonel. A brand of Kentucky bourbon called Kentucky Colonel was produced in the 1980s,[36] and at least two current brands of Kentucky bourbon have the word "Colonel" in their name, the Colonel E. H. Taylor and Colonel Lee bourbon brands.

## Sports

A number of sports teams in Kentucky, especially in Louisville, its largest city, have been known as the Kentucky Colonels or the Louisville Colonels. These include the Kentucky Colonels professional basketball team of 1967–1976, the Kentucky Colonels professional basketball team of 2004, and the Eastern Kentucky Colonels athletic teams of Eastern Kentucky University.

## Music

A popular bluegrass band of the 1960s was also called the Kentucky Colonels. It included Clarence White, who was later with The Byrds and who also worked extensively as a session musician with various highly prominent performers.

Case 3:20-cv-00043-DJH-CHL Document 99-3 Filed 03/25/23 Page 208 of 283 PageID #: 3029

# See also

- Colonel (title)
- Titles of honor
- Goodwill ambassador
- Nebraska Admiral
- Arkansas Traveler
- Rhode Island Commodore
- Order of the Long Leaf Pine (of North Carolina)
- Order of the Palmetto (of South Carolina)
- Sagamore of the Wabash (of Indiana)
- Kentucky Colonels (disambiguation)

# References

1. Kentucky Colonels (http://www.sos.ky.gov/admin/Executive/Pages/Kentucky-Colonels.aspx)
   Commonwealth of Kentucky. Retrieved September 28, 2013.
2. Dictionary definition #3 (http://dictionary.reference.com/browse/colonel).
3. Kentucky colonel definition (http://dictionary.reference.com/browse/Kentucky+colonel).
4. Websters Dictionary (http://www.websters-dictionary-online.com/definitions/colonel?cx=partner-pub-09394
   50753529744%3Av0qd01-tdlq&cof=FORID%3A9&ie=UTF-8&q=colonel&sa=Search#906) Archived (htt
   ps://web.archive.org/web/20110718015833/http://www.websters-dictionary-online.com/definitions/colonel?
   cx=partner-pub-0939450753529744%3Av0qd01-tdlq&cof=FORID%3A9&ie=UTF-8&q=colonel&sa=Sear
   ch) July 18, 2011, at the Wayback Machine.
5. Kentucky Virtual Library (http://kdl.kyvl.org/static/books/kyetexts/kyetexts_KUK-b92-92-27695147.html).
6. "Zoe A. Norris", Kentucky in American Letters 1784–1912, September 1913. p 136-137.
7. "Honorable Order of Kentucky Colonels Timeline" (https://web.archive.org/web/20070929034825/http://ky
   colonels.org/index.cgi?id=34). Archived from the original (http://kycolonels.org/index.cgi?id=34) on
   September 29, 2007. Retrieved September 5, 2007.
8. "You Too Can Be an Admiral", Youngstown Vindicator, August 3, 1947. A-6.
9. "In the Company of Colonels - Lane Report | Kentucky Business & Economic News" (https://www.lanerepo
   rt.com/14663/2008/10/in-the-company-of-colonels/). Retrieved January 19, 2020.
10. "Budget Strains Pare Back Kentucky Colonel Commissions" (http://www.wkyt.com/news/headlines/190539
    49.html) Archived (https://web.archive.org/web/20160303234515/http://www.wkyt.com/news/headlines/19
    053949.html) March 3, 2016, at the Wayback Machine. Associated Press, May 19, 2008
11. Grundhauser, Eric (November 8, 2017). "You Can't Be Knighted in the U.S., But You Can Be Named a
    Sagamore of the Wabash" (http://www.atlasobscura.com/articles/sagamore-commodore-colonel-ceremonial-
    title-honorary). Atlas Obscura. Retrieved January 19, 2020.
12. "Kentucky Colonel" (https://www.nndb.com/honors/256/000163764/). www.nndb.com. Retrieved
    January 19, 2020.
13. "Governor announces changes to Kentucky Colonel nomination process" (http://www.wkyt.com/content/ne
    ws/Governor-announces-changes-to-Kentucky-Colonel-nomination-process-381997951.html). WKYT.
    Retrieved September 28, 2017.
14. Wright, David J. "Kentucky Colonels: Advocates of Fair-Play and Honor" (https://blog.globcal.net/2019/11/
    kentucky-colonels-advocating-honor.html). Globcal International Blog. Retrieved January 19, 2020.
15. "Kentucky Colonels Switzerland - Homepage" (https://kycolonels.ch/). kycolonels.ch. Retrieved January 19,
    2020.

Case 3:20-cv-00043-DJH-CHL Document 1-4 Filed 03/25/23 Page 209 of 283 PageID #: 3470

16. Facebook (https://facebook.com/), Facebook Search, February 12, 2020

17. "Kentucky Colonels International - Resources" (https://kycolonels.international/resources). *kycolonels.international*. Retrieved February 12, 2020.

18. Kentucky Colonel gives back to tornado victims, *WHAS11*, June 5, 2013, Community (http://www.whas11.c om/community/Kentucky-Colonel-gives-back-to-tornado-victims-210328301.html) Archived (https://web.a rchive.org/web/20130927121350/http://www.whas11.com/community/Kentucky-Colonel-gives-back-to-tor nado-victims-210328301.html) September 27, 2013, at the Wayback Machine

19. Kentucky Colonels International (https://facebook.com/KentuckyColonels), Facebook public page

20. "Kentucky Colonels International" (https://kycolonels.international/). *kycolonels.international*. Retrieved February 12, 2020.

21. "Kentucky Colonels" (https://colonels.globcal.net/). *colonels.globcal.net*. Retrieved January 19, 2020.

22. "Kentucky Colonel Home Page and Registry" (https://web.archive.org/web/20010721140037/http://www.co lonel.org/). *web.archive.org*. July 21, 2001. Retrieved February 12, 2020.

23. "Kentucky Colonels International: Restoring Traditions and Customs" (https://blog.kycolonels.international/ 2020/02/restoring-tradition-in-kentucky.html) *Kentucky Colonels International*. Retrieved February 12, 2020.

24. "Ecology Crossroads" (https://eco.globcal.net/). *eco.globcal.net*. Retrieved February 12, 2020.

25. "Kentucky Colonels: Past, Present and Future" (https://blog.kycolonels.international/2020/02/kentucky-colo nels-international-news-release.html?fbclid=IwAR2QyMksQycWHP831ZL6Qb3UiOypeXOwIXUrXa1bO Kg8nym1C0GZ6g4l6h8). *Kentucky Colonels International*. Retrieved February 12, 2020.

26. "Karen S. Cantrell" (https://cantrell.globcal.net/). *cantrell.globcal.net*. Retrieved February 12, 2020.

27. "Home - Kentucky Colonels" (http://www.kycolonels.org/). *Kentucky Colonels*. Retrieved May 4, 2017.

28. Mission Statement of The Honorable Order of Kentucky Colonels (http://kycolonels.org/index.cgi?id=49) Archived (https://web.archive.org/web/20110727012300/http://kycolonels.org/index.cgi?id=49) July 27, 2011, at the Wayback Machine (access date May 2011).

29. "KY Colonels to give $2.1M to support non-profit organizations throughout the commonwealth - Lane Report | Kentucky Business & Economic News" (https://www.lanereport.com/117012/2019/09/ky-colonels-to-give-2-1m-to-support-non-profit-organizations-throughout-the-commonwealth/). Retrieved January 19, 2020.

30. Fred Astaire Danced for Kentucky (http://kycolonels.org/fred-astaire/) Archived (https://web.archive.org/we b/20131005054053/http://kycolonels.org/fred-astaire/) October 5, 2013, at the Wayback Machine, Honorable Order of Kentucky Colonels official web site.

31. Porter, Marion. *Howdy Colonel*. 1947. p8.

32. Colonel Toast (http://kycolonels.org/colonel-toast/) Archived (https://web.archive.org/web/2012110702360 7/http://kycolonels.org/colonel-toast/) November 7, 2012, at the Wayback Machine, Speech, *Kentucky Derby 1936*, Colonel Arthur Kudner

33. Maker's Mark to restore alcohol content of whiskey (https://www.usatoday.com/story/news/nation/2013/02/ 17/makers-mark-restore-proof/1926081/), *USA Today*, February 17, 2013.

34. Schreiner, Bruce, "Kentucky Bourbon Trail Expands to Include Stop in Downtown Louisville (http://www.b randonsun.com/business/breaking-news/kentucky-bourbon-trail-expands-to-include-stop-in-downtown-loui sville-206820581.html?thx=y) Archived (https://archive.is/20130628200445/http://www.brandonsun.com/b usiness/breaking-news/kentucky-bourbon-trail-expands-to-include-stop-in-downtown-louisville-20682058 1.html?thx=y) June 28, 2013, at Archive.today", *Associated Press*, May 9, 2013.

35. Beveragenet Reference (http://www.beveragenet.net/cheers/1998/0998/998burbn.asp) URL last accessed April 11, 2008. Archived (https://web.archive.org/web/20060501085333/http://www.beveragenet.net/cheer s/1998/0998/998burbn.asp) May 1, 2006, at the Wayback Machine

36. "Kentucky Colonel 4 Year Old - 1980s" (http://www.timeswhiskyclub.com/whiskies/kentucky-colonel-distil lery-co/kentucky-colonel-4-year-old-1980s-whiskey/). Retrieved October 21, 2017.

## Bibliography

- Carl Edwin Lindgren. Honorable Order of Kentucky Colonels (February/March 2001). *Il Mondo del Cavaliere*, Vol. I, No. 1, p. 14. ISSN 1592-1425 (https://www.worldcat.org/search?fq=x0:jrnl&q=n2:1592-1 425).

# External links

- Website of The Honorable Order of Kentucky Colonels (https://kycolonels.org/)
- Kentucky Secretary of State's site regarding the Order (http://sos.ky.gov/admin/Executive/Pages/Kentucky-Colonels.aspx)
- Website of Kentucky Colonels International (https://kycolonels.international/)

Retrieved from "https://en.wikipedia.org/w/index.php?title=Kentucky_Colonel&oldid=940408590"

**This page was last edited on 12 February 2020, at 11:10 (UTC).**

Text is available under the Creative Commons Attribution-ShareAlike License; additional terms may apply. By using this site, you agree to the Terms of Use and Privacy Policy. Wikipedia® is a registered trademark of the Wikimedia Foundation, Inc., a non-profit organization.

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

*Electronically Filed*

| | | |
|---|---|---|
| THE HONORABLE ORDER OF | ) | |
| KENTUCKY COLONELS, INC. | ) | |
| | ) | |
| PLAINTIFF | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 3:20CV-132-JRW |
| | ) | |
| KENTUCKY COLONELS | ) | |
| INTERNATIONAL, et al. | ) | |
| | ) | |
| DEFENDANT | ) | |

## **TEMPORARY RESTRAINING ORDER**

Upon the motion of Plaintiff, The Honorable Order of Kentucky Colonels, Inc. ("HOKC"), for a temporary restraining order pursuant to Fed. R. Civ. P. 65(b) and 15 U.S.C. § 1116, and the Court having reviewed the Verified Complaint, the motion of HOKC, and the documents submitted therewith, the Court hereby finds and concludes as follows:

A.     HOKC has presented proof which establishes a prima facie case of trademark infringement.  Specifically, HOKC has introduced Defendants' internet publications, social media postings and solicitations of donations wherein Defendants made use of the KENTUCKY COLONELS trademark.  HOKC has offered evidence of consumer confusion of the origin and/or affiliation of Defendants' services.  The Court finds it more likely than not that HOKC will succeed on the merits of their trademark infringement case at trial.

B.     HOKC has presented proof establishing a threat of irreparable harm posed by Defendants' continued infringement upon the trademark of HOKC.  HOKC has demonstrated the

threat to its interests in its trademark and in its goodwill and commercial relations with the community. Given these threats of irreparable injury, the Court finds that HOKC does not have an adequate remedy at law.

C.      The Court finds that HOKC will suffer more from the denial of the Temporary Restraining Order than Defendants will suffer from its issuance.

D.      The Court finds that it is in the interest of the public to issue this temporary restraining order.

E.      The foregoing shall constitute the Court's findings of fact and conclusions of law.

IT IS HEREBY ORDERED, pending further hearing and determination of this action, as follows:

1.      Defendants and anyone acting on their behalf, including their officers, agents, servants, employees, attorneys, and any other persons in active concert or participation with them, are enjoined from using the KENTUCKY COLONELS Mark, or any mark that is confusingly similar to the KENTUCKY COLONELS Mark, including but not limited to KENTUCKY COLONELS INTERNATIONAL, on or in connection with the sale of any goods or services and the solicitation of charitable donations.

2.      Defendants and anyone acting on their behalf, including their officers, agents, servants, employees, attorneys, and any other persons in active concert or participation with Defendants, are enjoined from using the KENTUCKY COLONELS Mark, or any mark that is confusingly similar to the KENTUCKY COLONELS Mark, including but not limited to KENTUCKY COLONELS INTERNATIONAL, in such a way as is likely to cause consumers to

2

be confused, mistaken, or deceived into believing that HOKC has sponsored, approved, licensed or is in any way affiliated with Defendants.

3.    Plaintiff shall, within forty-eight (48) hours, post security, in the form of a cash bond or corporate surety or other form approved by the Court, in the amount of $_____ for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully restrained, pending the hearing and determination of the continuation of this order.

4.    A hearing in this matter shall be held on Plaintiff's application for a preliminary injunction on the _____ day of _____, 2020, at _____ a.m./p.m.

        IT IS SO ORDERED.

100236153

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

*Electronically Filed*

| | |
|---|---|
| THE HONORABLE ORDER OF KENTUCKY COLONELS, INC. | ) ) ) |
| PLAINTIFF | ) ) |
| v. | ) CIVIL ACTION NO. 3:20CV-132-JRW ) |
| KENTUCKY COLONELS INTERNATIONAL, et al. | ) ) ) |
| DEFENDANT | ) ) |

## ORDER GRANTING PRELIMINARY INJUNCTION

Upon the motion of Plaintiff, The Honorable Order of Kentucky Colonels, Inc. ("HOKC") for a preliminary injunction pursuant to Fed. R. Civ. P. 65 and 15 U.S.C. §1116, the Court having reviewed the Verified Complaint, the motion of HOKC, the documents submitted therewith, and having held a hearing on the motion and heard arguments of counsel, the Court hereby finds and concludes as follows:

A.      HOKC has presented proof which establishes a prima facie case of trademark infringement.  HOKC has introduced evidence that it owns numerous federal trademark registrations and applications for marks incorporating the KENTUCKY COLONELS Mark in connection with the goods and services it provides to its members and the public, as well as the charities served through its philanthropic work; that Defendants are using an identical mark, or nearly identical mark, offering what purports to be identical or nearly identical services; and that Defendants are doing so without

authorization and contrary to the express wishes of HOKC.  The Court finds that HOKC has a likelihood of success on the merits of its infringement case at trial;

B.       HOKC has demonstrated the likelihood of consumer confusion and the threat to its interests and goodwill in its trademark, which is presumed to be an irreparable injury.  Given this presumption of an irreparable injury, the Court finds that HOKC does not have an adequate remedy at law;

C.       The Court finds that HOKC will suffer more from the denial of the requested injunctive relief than Defendants will suffer from its issuance; and

D.       The Court finds that it is in the interest of the public to issue this preliminary injunction.

The foregoing shall constitute the Court's findings of fact and conclusions of law.

IT IS HEREBY ORDERED, pending further hearing and determination of this action, as follows:

1.       Defendants and anyone acting on their behalf, including their officers, agents, servants, employees, attorneys, and any other persons in active concert or participation with Defendants, are enjoined from using the KENTUCKY COLONELS Mark, or any mark that is confusingly similar to the KENTUCKY COLONELS Mark, including, but not limited to, KENTUCKY COLONELS INTERNATIONAL, on or in connection with the sale of any goods or services and the solicitation of charitable donations.

2.       Defendants and anyone acting on their behalf, including their officers, agents, servants, employees, attorneys, and any other persons in active concert or participation with Defendants, are enjoined from using the KENTUCKY COLONELS

Mark, or any mark that is confusingly similar to the KENTUCKY COLONELS Mark, including, but not limited to, KENTUCKY COLONELS INTERNATIONAL in such a way as is likely to cause consumers to be confused, mistaken, or deceived into believing that HOKC has sponsored, sanctioned, approved, licensed, or is any way affiliated with Defendants.

3.    Defendants are ordered to provide a full accounting of all revenues, receipts, sales, and donations related to their use of "Kentucky Colonels International" from the first date Defendants used HOKC's Mark.

100238596

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

*Electronically Filed*

| | | |
|---|---|---|
| THE HONORABLE ORDER OF | ) | |
| KENTUCKY COLONELS, INC. | ) | |
| | ) | |
| PLAINTIFF | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 3:20CV-132-DJH |
| | ) | |
| KENTUCKY COLONELS | ) | |
| INTERNATIONAL, et al. | ) | |
| | ) | |
| | ) | |
| DEFENDANTS | ) | |

**SUPPLEMENT TO PLAINTIFF'S MOTION FOR
<u>TEMPORARY RESTRAINING ORDER</u>**

Plaintiff, The Honorable Order of Kentucky Colonels ("HOKC"), by counsel, pursuant to

the Court's Order dated February 21, 2020 [DN 12] directing it to supplement its Motion for

Temporary Restraining Order, hereby states and certifies as follows:

1. HOKC cannot contact Defendant Kentucky Colonels International ("KCI") by telephone

    as it does not have a phone number for KCI because, contrary to the representations made

    on the internet Website maintained by KCI (the "KCI Website"), KCI is not a tax exempt

    entity or registered as a charity with the Office of the Kentucky Attorney General.  In

    addition, no telephone number is included in the material filed with the Kentucky Secretary

    of State by KCI or its alleged affiliates, Globcal International ("Globcal") and Ecology

    Crossroads Cooperative Foundation, Inc. ("Ecology Crossroads").  Finally, the KCI

    Website does not include a phone number for KCI, Globcal, or Ecology Crossroads.

2. In addition to service of the Verified Complaint and Motion for Temporary Restraining Order by mail, HOKC has made numerous and significant efforts to contact KCI about this action. On February 22, 2020, the undersigned sent an email to the address provided on the KCI Website, contact@kycolonels.international, advising KCI of the filing of the Verified Complaint and the Motion for Temporary Restraining Order, and informing KCI that HOKC is seeking a hearing on the Motion for Temporary Restraining Order at the Court's earliest convenience [a copy of that email is attached as Exhibit 1].[1] That email also provided KCI with contact information for HOKC's counsel and attached copies of the Verified Complaint and Motion for Temporary Restraining Order.

3. Shortly after sending the email to contact@kycolonels.international, the undersigned received a delivery notification email response. [*See* delivery notification attached as Exhibit 2]. The undersigned has not received a response to the email.

4. On February 24, 2020, HOKC attempted to hand-deliver a package of material to KCI's registered agent for service of process, Maya-Lis A. Wright at 302 General Smith Drive, Richmond, Kentucky 40475. That package consisted of (1) a letter advising KCI of the filing of the Verified Complaint and the Motion for Temporary Restraining Order and informing KCI that HOKC is seeking a hearing on the Motion for Temporary Restraining Order at the Court's earliest convenience; (2) a copy of the Verified Complaint with

---

[1] Because of the volume of exhibits attached to the Verified Complaint and Motion for Temporary Restraining Order, those exhibits are not attached to the February 22, 2020 email. However, the below signed counsel certifies that the email included those documents with all exhibits.

exhibits; and (3) a copy of the Motion for Temporary Restraining Order with exhibits. [*See* Affidavit of Byron Dunn ("Dunn Affidavit"), attached as Exhibit 3, ¶¶ 3 – 4].[2]

5.  The person who answered the door at the address for service of process provided by KCI – which is a residential address – stated that Maya-Lis A. Wright does not live there and refused to accept delivery of the package. [*Id*. at ¶¶ 5 – 6]. HOKC therefore, left the package on the front porch of the residence. [*Id.* at ¶¶ 7 – 8].

6.  KCI and Globcal are both assumed names of Defendant Ecology Crossroads. The principal office and registered agent address for Ecology Crossroads is the same as the mailing address for KCI and Globcal. Moreover, Defendant David J. Wright is President and Incorporor of Ecology Crossroads as well as Director and Incorporator of KCI and Globcal. Due to the interconnectedness of all Defendants in this matter, the efforts to notify KCI simultaneously serve to notify all Defendants.

7.  The undersigned hereby certifies to the efforts made to give notice to Defendants regarding HOKC's Motion for Temporary Restraining Order. Despite HOKC's efforts, Defendants have not acknowledged receipt of the Verified Complaint or Motion for Temporary Restraining Order. Nevertheless, a restraining order should be issued without confirmed notice to Defendants based on the reasonable assumption that Defendants have actual notice of the existence of these proceedings. HOKC has attempted to provide Defendants with notice through mail, email, and personal service, and it appears that Defendants are attempting to avoid such service. In addition, HOKC continues to suffer irreparable

---

[2] Because of the volume of exhibits attached to the Verified Complaint and Motion for Temporary Restraining Order, those exhibits are not attached to the accompanying Dunn Affidavit. Only the main documents (the letter, the Verified Complaint, and the Motion for Temporary Restraining Order) are attached and included with this filing. However, the below signed counsel certifies that the package described in the Dunn Affidavit included all of the referenced exhibits.

damage as a result of the Defendants' actions as fully detailed in HOKC's Verified Complaint and Motion for Temporary Injunction, as well as additional confusion among the general public caused by the Defendants' conduct, evidence of which will be presented to the Court at the Court's convenience.

<div align="right">

Respectfully submitted,

*/s/* Cornelius *E. Coryell II*
Cornelius E. Coryell II
Michelle Browning Coughlin
Julie Laemmle Watts
WYATT, TARRANT & COMBS, LLP
400 West Market Street, Suite 2000
Louisville, KY 40202
(502) 589-5235
ccoryell@wyattfirm.com
mcoughlin@wyattfirm.com
jwatts@wyattfirm.com

*Counsel for Plaintiff, the Honorable Order of Kentucky Colonels, Inc.*

</div>

## CERTIFICATE OF SERVICE

I hereby certify that on February 24, 2020, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system. I further certify that a true and correct copy of the foregoing has been served upon the following, via U.S. Mail, on the 24th day of February, 2020:

Kentucky Colonels International
c/o Maya-Lis A. Wright
302 General Smith Drive
Richmond, KY 40475

Ecology Crossroads Cooperative Foundation, Inc.
c/o Maya-Lis A. Wright
302 General Smith Drive
Richmond, KY 40475

Globcal International
c/o Maya-Lis A. Wright
302 General Smith Drive
Richmond, KY 40475

David J. Wright
302 General Smith Drive
Richmond, KY 40475

<div align="right">

*/s/ Cornelius E. Coryell II*
*Counsel for Plaintiff, the Honorable Order of Kentucky Colonels, Inc.*

</div>

100240187

# EXHIBIT 1

**Coryell, Corky**

| | |
|---|---|
| **From:** | Coryell, Corky |
| **Sent:** | Saturday, February 22, 2020 11:24 AM |
| **To:** | contact@kycolonels.international |
| **Cc:** | Watts, Julie; Coughlin, Michelle |
| **Subject:** | Honorable Order of Kentucky Colonels vs. Kentucky Colonels International, et al. |
| **Attachments:** | DN 1 - Verified Complaint for Injunctive Relief and Damages filed 02-20-2020.pdf; DN 7 - Motion for Temporary Restraining Order and Preliminary Injunction filed 02-21-2020.pdf |

Be advised that attached Verified Complaint for Injunctive Relief and Damages and Motion for Temporary Restraining Order and Preliminary Injunction were filed yesterday in the United States District Court for the Western District of Kentucky. Further, be advised that Plaintiff is seeking a hearing on the motion at the Court's earliest convenience.

Inquiries concerning this matter should be directed to Plaintiff's counsel below.

**Cornelius E Coryell**

Wyatt, Tarrant & Combs, LLP
400 West Market Street
Suite 2000
Louisville KY 40202-2898
Direct: (502) 562-7376
Mobile: (502) 594-0832
Fax: (502) 589-0309
Email: ccoryell@wyattfirm.com



Louisville | Lexington | Memphis | Nashville | New Albany | www.wyattfirm.com

1

# EXHIBIT 2

**Coryell, Corky**

| | |
|---|---|
| **From:** | Microsoft Outlook |
| **To:** | contact@kycolonels.international |
| **Sent:** | Saturday, February 22, 2020 11:25 AM |
| **Subject:** | Relayed: Honorable Order of Kentucky Colonels vs. Kentucky Colonels International, et al. |

**Delivery to these recipients or groups is complete, but no delivery notification was sent by the destination server:**

contact@kycolonels.international (contact@kycolonels.international)

Subject: Honorable Order of Kentucky Colonels vs. Kentucky Colonels International, et al.

1

# EXHIBIT 3

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

*Electronically Filed*

| | | |
|---|---|---|
| THE HONORABLE ORDER OF | ) | |
| KENTUCKY COLONELS, INC. | ) | |
| | ) | |
| PLAINTIFF | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 3:20CV-132-DJH |
| | ) | |
| KENTUCKY COLONELS | ) | |
| INTERNATIONAL, et al. | ) | |
| | ) | |
| | ) | |
| DEFENDANTS | ) | |

### AFFIDAVIT OF BYRON DUNN

Comes the Affiant, Byron Dunn, and being first duly sworn, states as follows:

1. My name is Byron Dunn. I am employed by Epic Courier Services and work in the service center of the Lexington, Kentucky office of the law firm Wyatt, Tarrant & Combs, LLP, which is located at 250 West Main Street, Suite 1600, Lexington, Kentucky 40507.

2. I have made this Affidavit on the basis of personal knowledge of the matters set forth herein. I am over the age of eighteen and I am competent to testify to the matters set forth herein.

3. On the morning of February 24, 2020, I was asked to print the following documents, copies of which are attached hereto as Exhibit A:

    a. Letter dated February 24, 2020 from Cornelius E. Coryell II to Maya-Lis A. Wright with the subject line "The Honorable Order of Kentucky Colonels, Inc. v. Kentucky

Colonels International, et al.; United States District Court for the Western District of Kentucky; Civil Action No. 3:20CV-132-JRW";

b. Verified Complaint for Injunctive Relief and Damages, including exhibits; and

c. Motion for Temporary Restraining Order and Preliminary Injunction, including exhibits.

4. I was then asked to hand deliver the envelope in which the above-three documents and their respective exhibits were sealed to the following address:

> Maya-Lis A. Wright
> Agent for Service of Process
> Kentucky Colonels International
> Globcal International
> Ecology Crossroads Cooperative Foundation, Inc.
> 302 General Smith Drive
> Richmond, Kentucky 40475

5. When I arrived at the house located at 302 General Smith Drive, Richmond, Kentucky 40475, I asked the woman who answered the door for Maya-Lis A. Wright.

6. The woman who answered the door stated that Maya-Lis A. Wright does not live at that address. The woman who answered the door did not identify herself and did not accept the delivery.

7. I left the sealed envelope containing the three above-listed documents in a chair on the front porch of the residence.

8. I took three photographs showing the sealed envelope in a chair on the front porch of the residence. The three photographs are attached hereto as Exhibit B.

Further, Affiant sayeth naught.

_____
Byron Dunn

2

COMMONWEALTH OF KENTUCKY    )
                                       )     :SS

COUNTY OF FAYETTE              )

The foregoing instrument was subscribed, sworn to, and acknowledged before me this 24th

day of February, 2020, by Byron Dunn.

My commission expires: _2-20-2023_____.

_____
NOTARY PUBLIC

100240254

# EXHIBIT A TO
# DUNN AFFIDAVIT

Case 3:20-cv-00132-DJH Document 18-4 Filed 02/24/20 Page 2 of 31 PageID #: 447

WYATT, TARRANT & COMBS, LLP

400 West Market Street, Suite 2000
Louisville, Kentucky 40202
502.589.5235
Fax: 502.589.0309

Cornelius E. Coryell II
502.562.7376
ccoryell@wyattfirm.com

February 24, 2020

**VIA HAND DELIVERY**

Maya-Lis A. Wright
Agent for Service of Process
Kentucky Colonels International
Globcal International
Ecology Crossroads Cooperative Foundation, Inc.
302 General Smith Drive
Richmond, Kentucky 40475

Re: The Honorable Order of Kentucky Colonels, Inc. v. Kentucky Colonels International, et al.; United States District Court for the Western District of Kentucky; Civil Action No. 3:20CV-132-JRW

Dear Ms. Wright:

Be advised that the enclosed Verified Complaint for Injunctive Relief and Damages and Motion for Temporary Restraining Order and Preliminary Injunction were filed Thursday, February 20, 2020 in the United States District Court for the Western District of Kentucky. Further, be advised that Plaintiff is seeking a hearing on the motion at the Court's earliest convenience.

Inquiries concerning this matter should be directed to Plaintiff's counsel below.

Sincerely,

WYATT, TARRANT & COMBS, LLP

Corky Coryell /tk

Cornelius E. Coryell II

CEC/tk
Enclosures
100239828

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

*Electronically Filed*

THE HONORABLE ORDER OF )
KENTUCKY COLONELS, INC. )
    943 South First Street )
    Louisville, KY 40203 )
     )
    PLAINTIFF )
v. ) CIVIL ACTION NO.   3:20CV-132-JRW
KENTUCKY COLONELS )
INTERNATIONAL )
    302 General Smith Drive )
    Richmond, KY 40475 ) JURY TRIAL DEMAND
     )
    **Serve: Maya-Lis A. Wright** )
        **302 General Smith Drive** )
        **Richmond, KY 40475** )
     )
GLOBCAL INTERNATIONAL )
    302 General Smith Drive )
    Richmond, KY 40475 )
     )
    **Serve: Maya-Lis A. Wright** )
        **302 General Smith Drive** )
        **Richmond, KY 40475** )
     )
ECOLOGY CROSSROADS )
COOPERATIVE FOUNDATION, INC. )
    302 General Smith Drive )
    Richmond, KY 40475 )
     )
    **Serve: Maya-Lis A. Wright** )
        **302 General Smith Drive** )
        **Richmond, KY 40475** )
     )
DAVID J. WRIGHT, Individually and In His )
Capacity as President of Ecology Crossroads )
Cooperative Foundation, Inc. )
    302 General Smith Drive )
    Richmond, KY 40475 )
     )
UNKNOWN DEFENDANTS )
     )
    DEFENDANTS )

## VERIFIED COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

Plaintiff The Honorable Order of Kentucky Colonels, Inc. ("Plaintiff" or "the Honorable Order"), by counsel, for its Complaint against Defendants Kentucky Colonels International ("KCI"), Globcal International ("Globcal"), Ecology Crossroads Cooperative Foundation, Inc. ("Ecology Crossroads"), David J. Wright, individually and in his capacity as President of Ecology Crossroads Cooperative Foundation, Inc. ("Wright"), and Unknown Defendants (collectively referred to as "Defendants"), alleges as follows:

### PRELIMINARY STATEMENT

1.     This is an action for infringement of the Honorable Order's famous, federally registered trademark, KENTUCKY COLONELS, under Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1); for trade name infringement, unfair competition, and false designation of origin under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); for dilution under Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c); for cyberpiracy under the Anticybersquatting Consumer Protection Act, Section 43(d) of the Lanham Act, 15 U.S.C. § 1125(a); and for substantial and related claims under the common law of the Commonwealth of Kentucky, all arising from Defendants' unauthorized use of the KENTUCKY COLONELS Mark in connection with marketing, advertising, promotion and solicitations regarding Defendants' alleged services.

2.     The Honorable Order seeks injunctive and monetary relief.

### PARTIES

3.     The Honorable Order is a nonprofit, tax-exempt corporation organized and existing under the laws of the Commonwealth of Kentucky. Until February 17, 2020, the Honorable Order had its principal place of business at 1717 Alliant Avenue, Suite 14, Louisville,

Kentucky 40299.  As of February 17, 2020, the Honorable Order's primary place of business is 943 South First Street, Louisville, Kentucky 40203.

4.     According to the records maintained by the Kentucky Secretary of State, Defendant Ecology Crossroads Cooperative Foundation, Inc. ("Ecology Crossroads") is a corporation organized under the laws of the Commonwealth of Kentucky with its principal place of business at 302 General Smith Drive, Richmond, Kentucky, 40475. Its registered agent for service of process is Maya-Lis A. Wright, 302 General Smith Drive, Richmond, Kentucky 40475.

5.     According to the records maintained by the Kentucky Secretary of State, Defendant Kentucky Colonels International ("KCI") is an assumed name of Defendant Ecology Crossroads with its principal place of business at 302 General Smith Drive, Richmond, Kentucky, 40475. Its registered agent for service of process is Maya-Lis A. Wright, 302 General Smith Drive, Richmond, Kentucky 40475.

6.     According to the records maintained by the Kentucky Secretary of State, Defendant Globcal International ("Globcal") is an assumed name of Defendant Ecology Crossroads with its principal place of business at 302 General Smith Drive, Richmond, Kentucky, 40475. Its registered agent for service of process is Maya-Lis A. Wright, 302 General Smith Drive, Richmond, Kentucky 40475.

7.     Upon information and belief, Defendant David J. Wright is an individual who resides in La Culebra, Amazonas, Venezuela who is a citizen of the Commonwealth of Kentucky. According to the records maintained by the Kentucky Secretary of State, Wright is the President of Defendant Ecology Crossroads, whose registered agent for service of process is Maya-Lis A. Wright, 302 General Smith Drive, Richmond, Kentucky 40475.

8.     Upon information and belief, Unknown Defendants are individual employees, agents, owners, officers, or directors of Defendants Ecology Crossroads, KCI, or Globcal who have transacted business, engaged in conduct, or otherwise participated in the activities described in this Verified Complaint.

## JURISDICTION AND VENUE

9.     This Court has original jurisdiction over this action pursuant to 15 U.S.C. § 1121, 28 U.S.C. § 1331, and 28 U.S.C. § 1338(a) and (b) insomuch as this action arises under the Trademark Act of 1946, as amended, 15 U.S.C. § 1051 *et seq.* This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367(a).

10.     Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) in that a substantial part of the events or omissions giving rise to the claims below occurred in this District and because the intellectual property at issue substantially is located in this District.

11.     This Court has personal jurisdiction over Defendant Wright under KRS 454.210, Kentucky's long-arm statute, because, among other things, he directly and personally engaged in the actions complained of herein within this District, including infringing upon the Honorable Order's trademarks by marketing and promoting services under the mark KENTUCKY COLONELS INTERNATIONAL.  In addition, Defendant Wright engaged in actions within this District, intended to facilitate or allow the infringement upon the Honorable Order's trademarks described herein by registering the assumed names, entities, and organizations described and identified herein, and/or personally directing those Defendants to engage in the conduct described herein.

4

# FACTS

## The Honorable Order and its KENTUCKY COLONELS Mark

12.     On May 2, 1931, Kentucky Governor Flem D. Sampson assembled a meeting of Kentucky Colonels at the State Capitol for the purpose of forming "a society or organization to restore the grandeur and sentiment of the original Kentucky Colonel; to more closely band together this group … for the advancement of Kentucky and Kentuckians…." The minutes from that meeting are attached hereto as Exhibit 1.  Those minutes reflect the prominence of being selected as a Kentucky Colonel: "because of this honor [Kentucky Colonels] are regarded highly in their own country and on their arrival here are treated with high honor and respect."

13.     From its inspired origins in 1931 through the present day, the Honorable Order has existed as a nonprofit organization dedicated to supporting charitable purposes throughout the Commonwealth.  In the last twenty years, the Honorable Order has made more than 3,500 grants to nonprofit organizations across Kentucky totaling in excess of $29 million.  Since 1951, the Honorable Order has made more than 7,300 grants totaling almost $51 million.

14.     The Governor of Kentucky serves as the Commander-in-Chief of the Honorable Order, along with a board of trustees.  From the beginning, the Governor's office recognized the Honorable Order's role, making the Honorable Order responsible for adopting insignia, seals, and other indicia of the honor.

15.     For nearly a century, the Honorable Order has pursued its mission to follow the objectives described by Governor Sampson in 1931, a significant aspect of which is promoting and protecting the goodwill of the KENTUCKY COLONELS Mark.  That Mark plays a critical role in the Honorable Order's fundraising efforts.

5

16. The Honorable Order has filed and registered federal trademark applications for, and carefully protected and enforced, the KENTUCKY COLONELS Mark. A chart reflecting the numerous federal trademark registrations and applications owned by the Honorable Order incorporating the KENTUCKY COLONELS Mark, as well as the official documentation reflecting those registrations and applications, is attached as Exhibit 2.

17. The Honorable Order has continuously used the KENTUCKY COLONELS Mark in connection with its philanthropic, membership, and social activities for decades, and, as a result, the KENTUCKY COLONEL Mark carries a positive connotation worldwide

### Defendants' Unlawful Activities

18. In 2019, the Honorable Order was contacted by an individual who identified himself as David J. Wright. Wright purported to be the administrator of a Facebook group called "Kentucky Colonels International," which was allegedly comprised of individuals who have been commissioned as Kentucky Colonels by the Kentucky Governor.

19. In late 2019, the Honorable Order learned that Wright, under the guise of KCI and Globcal, was soliciting participants for a "registry" of individuals who had been commissioned as Kentucky Colonels. As described by Wright, participation in the registry required payment of a fee.

20. In late December 2019, Wright approached the Honorable Order to initiate a discussion regarding the activities of KCI. Through direct messages and text message, Wright indicated that he wanted to "find a way" that the Honorable Order could "endorse the International Register and Kentucky Colonels International, with a sponsorship, while [the Honorable Order] silently but transparently takes over the Register and International Concept to become a program belonging to the [Honorable Order]."

21.     When Wright contacted the Executive Director of the Honorable Order to "explore the possibilities of a merger," she suggested that he submit his comments and ideas in writing.

22.     In mid-January 2020, Wright forwarded the Honorable Order a package of documents which included a letter addressed to Sherry Crose, Executive Director of the Honorable Order, a document entitled "Presentation to Honorable Order of Kentucky Colonels, Inc.," and a document entitled "Draft Merger Acquisition and Consolidation Agreement." Copies of those documents are collectively tendered herewith as Exhibit 3.[1]  Wright's "proposal" included provisions for generous financial payments to both himself and KCI.

23.     On January 20, 2020, the Honorable Order notified Wright that it was not interested in the merger, acquisition, or transaction reflected in his proposal.

24.     Shortly thereafter, Wright advised the Honorable Order by text message that he and KCI intended to "move forward with our program and the formalization of the KCI agenda."

25.     On or about February 9, 2020, KCI left a comment on the Honorable Order's public Facebook page that also included a hyperlink to KCI's blog (https://blog.kycolonels.international), and referenced an "editorial" blog post purportedly authored by Wright on February 7, 2020. A copy of the editorial (the "Wright Editorial") is attached as Exhibit 4.

26.     In the Wright Editorial, Wright candidly acknowledged that he and his affiliated organizations are soliciting, and will continue to solicit, contributions and payments using the KENTUCKY COLONELS INTERNATIONAL Mark (the "Infringing Mark").

---

[1] Because Wright demanded HOKC execute a confidentiality agreement, the documents comprising Exhibit 3 will be filed under seal for the Court's review pending further orders of the Court.

27.     The Wright Editorial also disparaged the Honorable Order by accusing it of a variety of misconduct, including "misleading their donors and supporters for many years," violating various state and federal statutes, and otherwise engaging in "deception, and fraudulent presumptive behavior."

28.     In early February, the Honorable Order became aware that the "Kentucky Colonel" Wikipedia article had been significantly edited by someone with the username "Problemsmith." A copy of the "Kentucky Colonel" Wikipedia article, as of February 18, 2020, is attached as Exhibit 5. Upon information and belief, those modifications were made by Defendant Wright.  Among other things, "Problemsmith" removed a reference indicating that KENTUCKY COLONELS is a registered trademark of the Honorable Order.

29.     The Honorable Order has experienced actual confusion as a result of Defendants' activities using the Infringing Mark.  For example, on September 23, 2019, one of the recipients of a charitable grant in the amount of $10,000 from the Honorable Order posted a thank you on its Facebook page and specifically recognized the Honorable Order's KENTUCKY COLONELS GOOD WORKS PROGRAM. And, on September 30, 2019, another recipient of a charitable grant from the Honorable Order also posted a thank you on its Facebook page. However, in both of the thank you posts, the grantees mistakenly tagged KCI's Facebook page instead of the Honorable Order's Facebook page. A screenshot of these pages are attached as Exhibit 6. Such actual confusion not only showed confusion by the grantees about who provided the charitable giving, but also caused the viewing public of the posts to be confused about who provided the grants to the organizations.

30.     Wright and the other Defendants are using the internet and social media to confuse the public, misappropriate the goodwill, and profit from the KENTUCKY COLONELS

8

Mark.  Unless they are ordered to cease and desist their improper and unauthorized use of the KENTUCKY COLONELS Mark, Defendants will continue their infringing activity, thereby damaging the goodwill and reputation that the Honorable Order has built over decades.

31.    The Unknown Defendants have aided, abetted, and/or participated in the conduct and activities described above.  Those individuals and entities, through their affiliation with and support of Wright, KCI, Globcal, and/or Ecology Crossroads, have irreparably harmed and damaged the Honorable Order through their facilitation of and assistance with the unauthorized and improper use of the KENTUCKY COLONELS Mark described above.

## COUNT ONE
## Federal Trademark Infringement

32.    Each of the foregoing Paragraphs of this Verified Complaint is hereby incorporated in this Count by reference.

33.    Defendants' unauthorized use in commerce of the Infringing Mark as alleged herein is likely to deceive consumers as to the origin, source, sponsorship, or affiliation of Defendants' services, and is likely to cause consumers to believe, contrary to fact, that Defendants' services are offered, authorized, endorsed, or sponsored by the Honorable Order, or that Defendants are in some way affiliated with or sponsored by the Honorable Order. Defendants' conduct therefore constitutes trademark infringement in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

34.    Upon information and belief, Defendants have committed the foregoing acts of infringement with full knowledge of the Honorable Order's prior rights in the KENTUCKY COLONELS Mark and with the willful intent to cause confusion and trade on the Honorable Order's goodwill.

35.     Upon information and belief, Defendants have made and will continue to make profits and gains to which they are not entitled in law or equity.

36.     Defendants' conduct is causing immediate and irreparable harm and injury to the Honorable Order, and to its goodwill and reputation, and will continue to both damage the Honorable Order and confuse the public unless enjoined by this Court. The Honorable Order has no adequate remedy at law.

### COUNT TWO
### Federal Trade Name Infringement

37.     Each of the foregoing Paragraphs of this Verified Complaint is hereby incorporated into this Count.

38.     Defendants' unauthorized use in commerce of the Infringing Mark as alleged herein is likely to deceive consumers as to the origin, source, sponsorship, or affiliation of Defendants' services, and is likely to cause consumers to believe, contrary to fact, that Defendants' services are authorized, endorsed, or sponsored by the Honorable Order, or that Defendants are in some way affiliated with or sponsored by the Honorable Order. Defendants' conduct therefore constitutes trade name infringement in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

39.     Upon information and belief, Defendants have committed the foregoing acts of infringement with full knowledge of the Honorable Order's prior rights in the KENTUCKY COLONELS Mark and with the willful intent to cause confusion and trade on the Honorable Order's goodwill.

40.     Upon information and belief, Defendants have made and will continue to make profits and gains to which they are not entitled in law or equity.

41.     Defendants' conduct is causing immediate and irreparable harm and injury to the Honorable Order, and to its goodwill and reputation, and will continue to both damage the Honorable Order and confuse the public unless enjoined by this Court. The Honorable Order has no adequate remedy at law.

## COUNT THREE
### Federal Unfair Competition and False Designation of Origin

42.     Each of the foregoing Paragraphs of this Verified Complaint is hereby incorporated into this Count.

43.     Defendants' unauthorized use in commerce of the Infringing Mark as alleged herein is likely to deceive consumers as to the origin, source, sponsorship, or affiliation of Defendants' services, and is likely to cause consumers to believe, contrary to fact, that Defendants' services are authorized, endorsed, or sponsored by the Honorable Order, or that Defendants are in some way affiliated with or sponsored by the Honorable Order.

44.     Defendants' unauthorized use in commerce of the Infringing Mark as alleged herein constitutes use of a false designation of origin and misleading description and representation of fact.

45.     Upon information and belief, Defendants' conduct as alleged herein is willful and is intended to, is likely to, and already has caused confusion, mistake, or deception as to the affiliation, connection, or association of Defendants with the Honorable Order.

46.     Defendants' conduct as alleged herein constitutes unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

47.     Defendants' conduct as alleged herein is causing immediate and irreparable harm and injury to the Honorable Order, and to its goodwill and reputation, and will continue to both

damage the Honorable Order and confuse the public unless enjoined by this Court. The Honorable Order has no adequate remedy at law.

<div align="center">

**COUNT FOUR**
**Federal Trademark Dilution**

</div>

48. Each of the foregoing Paragraphs of this Complaint is hereby incorporated in this Count by reference.

49. The KENTUCKY COLONELS Mark is a distinctive and famous mark within the meaning of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

50. The KENTUCKY COLONELS Mark became distinctive and famous prior to Defendants' acts as alleged herein.

51. Defendants' acts as alleged herein have diluted by blurring and will, unless enjoined, continue to dilute by blurring, and are likely to dilute by blurring the distinctive quality of the Honorable Order's famous KENTUCKY COLONELS Mark.

52. Defendants' acts as alleged herein have tarnished and will, unless enjoined, continue to tarnish, and are likely to tarnish, the Honorable Order's KENTUCKY COLONELS Mark by undermining and damaging the valuable goodwill associated therewith.

53. Defendants' conduct as alleged herein constitutes dilution in violation of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

54. Defendants' conduct as alleged herein is intentional and willful in violation of Section 43(c)(1) of the Lanham Act, and has already caused the Honorable Order irreparable damage and will continue to so damage the Honorable Order unless enjoined by this Court. The Honorable Order has no adequate remedy at law.

## COUNT FIVE
### Anticybersquatting Consumer Protection Act

55.     Each of the foregoing Paragraphs of this Complaint is hereby incorporated in this Count by reference.

56.     The KENTUCKY COLONELS Mark is a distinctive and famous mark within the meaning of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

57.     According to publicly available WhoIs Data, on September 29, 2000 the Honorable Order registered the domain name www.kycolonels.org, which it continues to use today. A copy of the relevant WhoIs Data is attached hereto as Exhibit 7.

58.     According to publicly available WhoIs Data, on January 20, 2020 the domain name www.kycolonels.international registered. Upon information and belief, Defendants registered and now use this domain name. A copy of the relevant WhoIs Data as well as a screenshot of the domain name is attached hereto as Exhibit 8.

59.     Defendants' domain name incorporates the KENTUCKY COLONELS Mark and is identical or confusingly similar to the Honorable Order's domain name, or dilutive of the famous KENTUCKY COLONELS Mark.

60.     Defendants registered, and continue to use, the www.kycolonels.international domain name with a bad faith intent to profit from the KENTUCKY COLONELS Mark.

61.     Defendants' conduct as alleged herein constitutes cyberpiracy in violation of Section 43(d) of the Lanham Act, 15 U.S.C. § 1125(a).

62.     Defendants' conduct as alleged herein is causing immediate and irreparable harm and injury to the Honorable Order, and to its goodwill and reputation, and will continue to both damage the Honorable Order and confuse the public unless enjoined by this Court. The Honorable Order has no adequate remedy at law.

13

## COUNT SIX
### Defamation

63.     Each of the foregoing Paragraphs of this Complaint is hereby incorporated in this Count by reference.

64.     Defendants, by and through Wright, have made false and defamatory statements regarding the Honorable Order as reflected, among other places, in the Wright Editorial attached hereto as Exhibit 2, including but not limited to accusing the Honorable Order of a variety of misconduct, including:

      (a)    "misleading their donors and supporters for many years";

      (b)    violating various state and federal statutes; and

      (c)    otherwise engaging in "deception, and fraudulent presumptive behavior."

65.     These statements, and others made by Wright on behalf of Defendants, are false, and were made with malicious intent to harm the Honorable Order's ongoing business activities to fulfil its purpose and support its mission.

66.     These statements, and others made by Wright on behalf of Defendants, are defamatory in that they tend to injure the Honorable Order in its community and lower it in the estimation of that same community.

67.     Defendants, by and through Wright, published these statements through social media, blog posts, and websites to an unlimited number of third parties including, but not limited to, members of the Honorable Order as well as "members" of KCI, in the area in which the Honorable Order conducts its activities.

68.     Defendants, by and through Wright, intended to make these statements, made these statements with malice, and did so without any applicable privilege.

69.     These statements are actionable as a matter of law because they vilify and falsely imply serious wrongdoing, including criminal wrongdoing, by the Honorable Order.

70.     As a direct and proximate result of Defendants' statements, made by and through Wright,  the Honorable Order has suffered pecuniary damages, as well as harm to its reputation and impairment to its standing in the community.

<div align="center">

**COUNT SEVEN**
**Common Law Trademark Infringement and Unfair Competition**

</div>

71.     Each of the foregoing Paragraphs of this Complaint is hereby incorporated in this Count by reference.

72.     The KENTUCKY COLONELS Mark is valid and protectable.

73.     Defendants' use of the Infringing Mark is likely to cause confusion about the source or origin of the services in violation of the common law of the Commonwealth of Kentucky, in that such use of the Infringing Mark is likely to impair the goodwill of the Honorable Order's Mark and allow Defendants to unfairly profit from the use of a confusingly similar mark.

74.     Defendants' use of the Infringing Mark is likely to deceive consumers as to the origin, source, sponsorship, or affiliation of Defendants' services, and is likely to cause consumers to believe, contrary to fact, that Defendants' services are sold, authorized, endorsed, or sponsored by the Honorable Order, or that Defendants are in some way affiliated with or sponsored by the Honorable Order when in fact Defendants have no connection or affiliation with the Honorable Order.

75.     Defendants, through their use of the Infringing Mark, have engaged in misrepresentation, unfairly competing with the Honorable Order in violation of Kentucky common law.

<div align="center">15</div>

76.     Defendants' actions constitute trademark infringement and unfair competition in violation of the common law of the Commonwealth of Kentucky.

77.     Upon information and belief, Defendants have made and will continue to make substantial profits and gains to which they are not entitled in law or equity.

78.     Defendants' conduct as alleged herein is causing immediate and irreparable harm and injury to the Honorable Order, and to its goodwill and reputation, and will continue to both damage the Honorable Order and confuse the public unless enjoined by this Court. The Honorable Order has no adequate remedy at law.

## COUNT EIGHT
## Common Law Dilution

79.     Each of the foregoing Paragraphs of this Complaint is hereby incorporated in this Count by reference.

80.     The KENTUCKY COLONELS Mark is well known.

81.     Defendants' use of the Infringing Mark is likely to confuse, and has actually confused, consumers as to the source or sponsorship of Defendants' services.

82.     Defendants' use of the Infringing Mark is causing harm and will, unless enjoined, continue to cause harm to the reputation and goodwill of the KENTUCKY COLONELS Mark.

## COUNT NINE
## Unjust Enrichment

83.     Each of the foregoing Paragraphs of this Complaint is hereby incorporated in this Count by reference.

84.     Defendants are unlawfully using the Infringing Mark to their benefit at the expense of The Honorable Order.

16

85.     Defendants, through their unlawful use of the Infringing Mark, are soliciting and collecting donations from members of the public who believe they are donating to The Honorable Order.

86.     It would be unjust for Defendants to retain the donations they have received based on their unlawful use of the Infringing Mark.

## PRAYER FOR RELIEF

**WHEREFORE**, The Honorable Order of Kentucky Colonels prays for and requests as follows:

A.  Trial by jury on all issues so triable;

B.  Judgment in favor of the Honorable Order on all of its claims;

C.  Judgment holding that Defendants have violated Section 32 of the Lanham Act (15 U.S.C. § 1114(1)), Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a)), Section 43(c) of the Lanham Act (15 U.S.C. § 1125(c)); and Section 43(d) of the Lanham Act, (15 U.S.C. § 1125(a));

D.  Judgment holding that Defendants violated the common law of the Commonwealth of Kentucky;

E.  Judgment granting preliminary and permanent injunctive relief enjoining Defendants, their employees, agents, officers, directors, attorneys, successors, affiliates, subsidiaries, and assigns, and all of those in active concert and participation with any of the foregoing persons and entities who receive actual notice of this Court's order by personal service or otherwise from:

   i.    selling, marketing, advertising, promoting, or authorizing any third party to sell, market, advertise or promote goods or services bearing the

KENTUCKY COLONELS Mark, the KENTUCKY COLONELS INTERNATIONAL Mark, or any other mark that is a counterfeit, copy, simulation, confusingly similar variation, or colorable imitation of the KENTUCKY COLONELS Mark;

    ii.   engaging in any activity that infringes the Honorable Order's rights in its KENTUCKY COLONELS Mark;

    iii.   engaging in any activity that infringes the Honorable Order's trade name;

    iv.   engaging in any activity constituting unfair competition with the Honorable Order;

    v.   engaging in any activity that is likely to dilute, by tarnishing or blurring, the famousness of the Honorable Order's KENTUCKY COLONELS Mark;

    vi.   using or registering any domain name incorporating the KENTUCKY COLONELS Mark, the KENTUCKY COLONELS INTERNATIONAL Mark, or any other mark that infringes or is likely to be confused with the Honorable Order's KENTUCKY COLONELS Mark;

    vii.   publishing, through spoken or written means, any statements about the Honorable Order that are maliciously and intentionally false;

    viii.   making or displaying any statement, representation, or depiction that is likely to lead the public or the trade to believe that (i) Defendants' services are in any manner approved, endorsed, licensed, sponsored, authorized, or franchised by or associated, affiliated, or otherwise connected with the Honorable Order or (ii) the Honorable Order's goods and services are in

18

any manner approved, endorsed, licensed, sponsored, authorized, or franchised by or associated, affiliated, or otherwise connected with Defendants;

ix. using or authorizing any third party to use in connection with any business, goods, or services any false description, false representation, or false designation of origin, or any marks, names, words, symbols, devices, or trade dress that falsely associate such business, goods and/or services with the Honorable Order or tend to do so;

x. registering or applying to register any trademark, service mark, domain name, trade name, or other source identifier or symbol of origin consisting of or incorporating the KENTUCKY COLONELS Mark, the KENTUCKY COLONELS INTERNATIONAL Mark, or any other mark that infringes or is likely to be confused with the Honorable Order's KENTUCKY COLONELS Mark, or any goods or services of the Honorable Order, or the Honorable Order as their source; and

xi. aiding, assisting, or abetting any other individual or entity in doing any act prohibited by sub-paragraphs (i) through (x).

F. Judgment granting such other and further relief as this Court may deem proper to prevent the public and trade from deriving the false impression that any goods or services manufactured, sold, distributed, licensed, marketed, advertised, promoted, or otherwise offered or circulated by Defendants are in any way approved, endorsed, licensed, sponsored, authorized, or franchised by or

19

associated, affiliated, or otherwise connected with the Honorable Order or constitute or are connected with the Honorable Order's goods and services;

G. Judgment directing Defendants to immediately cease all display, marketing, advertising, promotion, sale, solicitation, and/or use of anything that features or bears any designation or mark incorporating the mark KENTUCKY COLONELS INTERNATIONAL or any other mark that is a counterfeit, copy, simulation, confusingly similar variation, or colorable imitation of the Honorable Order's KENTUCKY COLONELS Mark, and to direct all third parties or individuals wherever located in the United States that distribute, advertise, promote, sell, or offer for sale Defendants' goods or services to cease forthwith the distribution, marketing, advertising, promotion, sale, and/or offering for sale of any and all goods, or services, featuring or bearing the mark KENTUCKY COLONELS INTERNATIONAL or any other mark that is a counterfeit, copy, simulation, confusingly similar variation, or colorable imitation of the Honorable Order's KENTUCKY COLONELS Mark, and to immediately remove them from public access and view;

H. Judgment directing, pursuant to Section 35(a) of the Lanham Act (15 U.S.C. § 1116(a)), Defendants to file with this Court and serve upon the Honorable Order's counsel within thirty (30) days after service on Defendants of an injunction in this action, or such extended period as this Court may direct, a report in writing under oath, setting forth in detail the manner and form in which Defendants have complied therewith;

I.  Judgment awarding the Honorable Order all monetary remedies to which it is entitled, including any damages (trebled) sustained by the Honorable Order in accordance with Section 35(a) of the Lanham Act (15 U.S.C. § 1117(a)) and common law;

J.  Judgment awarding the Honorable Order punitive and exemplary damages as this Court finds appropriate to deter any future willful infringement;

K.  Judgment declaring that this is an exceptional case pursuant to Section 35(a) of the Lanham Act (15 U.S.C. § 1117(a)), and awarding the Honorable Order its costs and reasonable attorneys' fees thereunder;

L.  Judgment awarding the Honorable Order interest, including prejudgment and post-judgement interest, on the foregoing sums; and

M.  Such other and further relief as this Court deems just and proper.

## VERIFICATION

The undersigned hereby swears and affirms that she is currently the Executive Director of the Honorable Order of Kentucky Colonels, Inc., that she is authorized to sign this Verified Complaint and that the statements made herein are true and correct to the best of her knowledge.

_Sherry Crose_
Sherry Crose

COMMONWEALTH OF KENTUCKY )
                                                      ) :SS
COUNTY OF JEFFERSON          )

The foregoing instrument was acknowledged before me this _20th_ day of February, 2020, by Sherry Crose.

My commission expires: _December 5, 2022_ .

_Carm Klapheke_
Notary Public
Notary I.D. 612095

21

Respectfully submitted,

*/s/ Cornelius E. Coryell II*
Cornelius E. Coryell II
Michelle Browning Coughlin
Julie Laemmle Watts
WYATT, TARRANT & COMBS, LLP
400 West Market Street, Suite 2000
Louisville, KY  40202
(502) 589-5235
ccoryell@wyattfirm.com
mcoughlin@wyattfirm.com
jwatts@wyattfirm.com

*Counsel for Plaintiff, Honorable Order of Kentucky Colonels*

100236569.1

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

*Electronically Filed*

| | | |
|---|---|---|
| THE HONORABLE ORDER OF | ) | |
| KENTUCKY COLONELS, INC. | ) | |
| | ) | |
| PLAINTIFF | ) | |
| v. | ) | CIVIL ACTION NO. 3:20CV-132-JRW |
| | ) | |
| KENTUCKY COLONELS | ) | |
| INTERNATIONAL, et al. | ) | |
| | ) | |
| DEFENDANTS | ) | |

## MOTION FOR TEMPORARY RESTRAINING ORDER
## AND PRELIMINARY INJUNCTION

The Honorable Order of Kentucky Colonels, Inc. ("HOKC") is a Section 501(c)(3),
Kentucky nonprofit corporation dedicated to supporting charitable activities throughout the
Commonwealth of Kentucky. For decades, HOKC has pursued its charitable mission by, among
other things, making annual grants to a large number of Kentucky charities small, mid-size and
sometimes large, that operate across the state. This grant-making function is in turn funded by
the generous donations of HOKC's active members, who reside not only in Kentucky, but also in
other states and around the world. HOKC has an incredibly faithful and proud donor base,
comprised of individuals who have been selected by a Kentucky Governor to receive the
esteemed title of Kentucky Colonel, "the highest title of honor bestowed by the Governor of
Kentucky."[1] After receiving this great honor, individual Kentucky Colonels then become
members of HOKC, and part of the organization's long history of good works and strong donor
relations. In order to protect the reputation and honor bestowed upon its members, the HOKC's
role includes protecting the KENTUCKY COLONELS trademark and service mark (the

---

[1] *See* HOKC website www.kycolonels.org

"KENTUCKY COLONELS Mark"), which HOKC uses in connection with the goods and services it provides to its members and the public, as well as the charities served through its philanthropic work.

That valuable trademark has now been hijacked by Defendant David J. Wright ("Wright") and the Defendant entities which he controls. Through a byzantine network of strawman organizations, assumed names, and social media groups, Wright is operating a competing organization, Kentucky Colonels International ("KCI"), brazenly attempting to misappropriate the KENTUCKY COLONELS Mark for his own personal financial enrichment. Despite the fact that KCI is not a charity (nor, apparently, is the ecological organization that claims KCI as an assumed name), Defendants have attempted to raise funds from Kentucky Colonels under the guise of deductible charitable contributions, thereby intercepting, or attempting to intercept, relationships that HOKC has built over decades using the KENTUCKY COLONELS Mark. Having confused or misled a sufficient number of these individuals, Wright then sprung an unexpected and uninvited demand upon HOKC that it pay him a substantial amount of money in exchange for "merging" his "organization" into HOKC and then hire him as a consultant. When HOKC refused to yield, Wright responded by turning on HOKC, attacking it through the internet and social media with scurrilous accusations and specious claims. Having been rebuffed in demands, whose resemblance to extortion was buttressed by his insistence on silence and a quick payoff, Wright reacted like one would expect an extortionist to react. He retaliated. Because HOKC's reputation and ability to pursue its mission will be irreparably harmed, HOKC moves the Court to enter an order pursuant to Fed.R.Civ.P. 65 and U.S.C. §1116 directing Defendants to immediately cease their misappropriation of the KENTUCKY COLONELS Mark.

## FACTUAL BACKGROUND

### A. For Decades, HOKC Has Been Dedicated to Serving the Commonwealth of Kentucky and its Citizens.

On May 2, 1931, Kentucky Governor Flem D. Sampson assembled a meeting of Kentucky Colonels at the State Capitol for the purpose of forming "a society or organization to restore the grandeur and sentiment of the original Kentucky Colonel; to more closely band together this group…for the advancement of Kentucky and Kentuckians…." [Verified Complaint, ¶ 12]. The minutes from that meeting reflect the prominence of being selected as a Kentucky Colonel: "because of this honor [Kentucky Colonels] are regarded highly in their own country and on their arrival here are treated with high honor and respect." [*Id*.]

From its inspired origins in 1931 through the present day, the HOKC has existed as a non-profit organization dedicated to supporting charitable purposes throughout the Commonwealth. In the last twenty years, HOKC has made more than 3,500 grants to non-profit organizations across Kentucky totaling in excess of $29 million. [*Id*. at ¶13]. Since 1951, HOKC has made more than 7,300 grants totaling almost $51 million. [*Id*.] To this day, the Governor of Kentucky serves as the Commander-in-Chief of the HOKC, along with a board of trustees. [*Id.* at ¶14].

For nearly a century, HOKC has pursued its mission to follow the objectives described by Governor Sampson in 1931, a significant aspect of which is promoting and protecting the goodwill of the KENTUCKY COLONELS Mark. [*Id*. at 15]. From the beginning, the Governor's office recognized the HOKC's role, making the HOKC responsible for adopting insignia, seals, and other indicia of the honor. [*Id.* at ¶ 14]. HOKC has carefully guarded the KENTUCKY COLONEL Mark which is an essential element of protecting the ability of HOKC to serve its charitable function with an unblemished reputation.

3

### B. Protection of the KENTUCKY COLONELS Mark is Essential to HOKC's Mission.

HOKC has used the KENTUCKY COLONELS Mark since its inception in 1931, and that mark plays a critical role in the organization's fundraising efforts. [*Id.*]. The KENTUCKY COLONELS Mark is universally associated with HOKC and with aiding and promoting causes benefiting the health and welfare of Kentuckians. In addition to the KENTUCKY COLONELS Mark, HOKC is also the owner of THE HONORABLE ORDER OF KENTUCKY COLONELS, KENTUCKY COLONELS GOOD WORKS PROGRAM, KENTUCKY COLONELS DAY OF SERVICE, and the HOKC logo marks and other registered and unregistered marks, all of which are critical to the HOKC's charitable solicitation efforts.[2] HOKC has continuously used the KENTUCKY COLONELS Mark in connection with its philanthropic, membership, and social activities for decades and, as a result, the KENTUCKY COLONELS Mark carries a positive connotation worldwide. [Verified Complaint, ¶ 17].

### C. Defendants are Using the KENTUCKY COLONELS Mark for Unauthorized and Improper Purposes.

Defendant David J. Wright purports to be the administrator of a Facebook group comprised of individuals who have been commissioned as Kentucky Colonels. According to Wright, he became the administrator of that group in 2008 and, soon thereafter, he "relaunched" a social media group he called "Kentucky Colonels International."[3]  On January 20, 2020, the

---

[2] A chart reflecting the numerous federal trademark registrations and applications HOKC holds for marks incorporating the KENTUCKY COLONELS Mark, as well the official documentation reflecting those registrations and applications, is attached to the Verified Complaint as Exhibit 2.  For the Court's convenience, that material is also attached hereto as Exhibit 1.

[3] Wright's candid admissions regarding his efforts to misappropriate the KENTUCKY COLONELS brand are reflected in a February 7, 2020 "editorial" blog post from https://blog.kycolonels.international/, which KCI posted to HOKC's Facebook page via a comment on or about February 9, 2020 (hereinafter the "Wright Editorial"). A copy of the Wright Editorial is attached to the Verified Complaint as Exhibit 4.  For the Court's convenience, a copy of the Wright Editorial is also attached hereto as Exhibit 2.

domain name "kycolonels.international" was registered [Verified Complaint ¶ 58] and, shortly thereafter, the website for KCI went live.[4]

KCI's website describes the organization as a "non-profit fraternal and mutual benefit membership organization" which is "incorporated in the Commonwealth of Kentucky" and in "good standing" with the Office of the Secretary of State [Kentucky Colonels International Website ("KCI Website"), 14].[5]  The website represents that KCI is "also known as the Kentucky Colonel Foundation" which it claims was "originally established in 1998 to give prominence to the Kentucky Colonel Commission as a meritory award with diplomatic credence that is respected and understood internationally." [*Id.* at 15].  The KCI Website includes an extensive discussion of the "Order of the Kentucky Colonel" and states that "Kentucky Colonels are recognized and commissioned for their life time to the order with letters patent which permits them to perform and take actions as a commissioned civilian officer of the Commonwealth of Kentucky." [*Id.* at 15-16].

The purpose of the KCI Website is readily apparent from the website's "drop down list." The third item on that list is "Donations" which solicits contributions for the "Kentucky Colonel's International Fund" and states that such donations can be made "using a major credit card or your PayPal account."  [*Id.* at 18.][6]  The page also includes an image of a QR code to

---

[4] As noted in the Wright Editorial, HOKC directed cease and desist letters to Wright concerning his social media and internet based activities on various occasions in the early 2000's and again in 2016.  Wright significantly curtailed his improper activities after that correspondence was sent.

[5] The KCI Website can be found at www.kycolonels.international, which is confusingly similar to HOKC's web address www.kycolonels.org.  For the Court's convenience, a print out of the KCI Website, from February 17, 2020, is attached as Exhibit 3.

[6] Notably, if you click on the provided donation hyperlink, you are redirected to a PayPal link that states "Donate to Ecology Crossroads Cooperative Foundation" with the "Purpose: Kentucky Colonels International."  A copy of that page is attached as Exhibit 4.

allow donations "using a smart phone." [*Id.*]  The KCI Website describes the purposes for which donations to the organization are used, explaining that those funds will "promote the careers, individual growth, … and champion the success of Kentucky Colonels all over the world...." [*Id.*].   The website further states that donations will "support the work of the Goodwill Ambassador Foundation and other programs developed by Kentucky colonels [*sic*]...." [*Id.*]. It also represents that the organization is "registered as an international civil society organization (ICSO) under Globcal International which provides us with recognition and legal standing as an international organization." [*Id*. at 19]. Finally, the website represents that donations to KCI are tax-deductible:

> Donations to KCI are now tax deductible in 2020, those who make donations of $25 or more will receive a personal thank you note from a commissioner. Donations of $1,200+ or the equivalent of 2% of a person's annual salary if US residents will also receive a tax-statement by email at the end of the year so they can deduct their contributions.

[*Id.*].

In addition to soliciting donations to "promote the careers" of individuals who have been commissioned as Kentucky Colonels, the KCI Website purports to offer services to members for a fee.   For example, the website describes "public relations" services "recognizing fellow colonels."  [*Id.* at 36].[7]  Particularly concerning, KCI purports to offer an "International Registry of Kentucky Colonels" which entitles subscribers to "a certificate of registration, a lifetime ID card and additional Internet services…." [*Id.* at 5].   The website promises "those who register their title (letters patent) can also demonstrate themselves through a permanent web page which we will develop and maintain on their behalf that is linked to our roster.…"  [*Id.* at 6].

---

[7] Those services are offered to only "members who support our organization with donations…." [*Id.*].

In addition to the website, KCI also maintains a dedicated blog site, a public Facebook page, and a private Facebook group. The blog, located at blog.kycolonels.international is another pulpit for Wright to misuse the KENTUCKY COLONELS Mark and associated goodwill as well as seek donations for KCI. The blog includes a "news release" dated February 7, 2020; the Wright Editorial dated February 7, 2020; and one additional article titled "Reorganizing the Kentucky Colonels International Commission and Foundation," dated January 30, 2020.[8] The KCI Facebook page "About" section states "Kentucky Colonels International is a non-governmental and non-state fraternal membership commission and foundation of *Globcal International* that has been developed to bring international attention to those who have been commissioned as Kentucky colonels...." and that it was "founded" in 1813 (emphasis added).[9] Membership to the KCI private Facebook group requires a person to answer several questions and be approved by the group administrator.

### D. Contrary to the Representations Made on its Website, KCI is not Recognized by the IRS as a Tax Exempt Organization.

The representations regarding the corporate and tax exempt status of KCI are not supported by the records of the Kentucky Secretary of State or the Internal Revenue Service. While KCI represents that "donations to KCI are tax deductible" the IRS has no record of KCI being granted tax exempt status.[10] Similarly, the IRS has no record of granting tax exempt status to the Kentucky Colonel Foundation, the Kentucky Colonels International Fund, or any other organization for which donations are solicited on the KCI Website. Notably, Ecology Crossroads

---

[8] For the Court's convenience, a printout of the KCI blog site from February 19, 2020 is attached as Exhibit 5.

[9] For the Court's convenience, a copy of the relevant portions of the KCI Facebook page is attached as Exhibit 6.

[10] Organizations granted tax exempt status can be identified on the website of the Internal Revenue Service at www.irs.gov/charities-non-profits/tax-exempt-organization-search. For the Court's convenience, a copy of the page reflecting the search results for KCI is attached as Exhibit 7.

Cooperative Foundation, Inc., the entity which only three weeks ago designated Kentucky Colonels International as an "assumed name," has never been certified as a tax exempt organization.[11] Globcal International, another assumed name for Ecology Crossroads Cooperative Foundation, Inc., has never been certified as a tax exempt organization. Thus, the representations made by Wright and KCI concerning the tax deductibility of donations to that organization are demonstrably untrue.

In addition, neither KCI nor any of its affiliates are registered as charitable organizations with the Office of the Kentucky Attorney General. The Attorney General maintains a registry of organizations authorized to engage in charitable solicitation activities in the Commonwealth of Kentucky.[12] KCI is not listed on that registry. Likewise, the list does not include the Kentucky Colonel Foundation, Kentucky Colonels International Fund, Globcal International, Ecology Crossroads Cooperative, or Ecology Crossroads Cooperative Foundation, Inc.[13] HOKC, on the other hand, *is* included on that list.[14]

In additional to misrepresenting the charitable and tax exempt status of KCI, the KCI Website also incorrectly states that KCI is "incorporated in the Commonwealth of Kentucky" and in "good standing" with the office of the Secretary of State. According to the Kentucky Secretary of State, Kentucky Colonels International was registered as an assumed name of

---

[11] An organization with a similar name "Ecology Crossroads Cooperative" apparently once held tax exempt status, but that status was apparently revoked on November 15, 2010. *See* www.irs.gov/charities-non-profits/tax-exempt-organization-search. For the Court's convenience, a copy of the page reflecting revocation of that entity's tax exempt status is attached as Exhibit 8.

[12] *See* https://ag.ky.gov/Priorities/Protecting-Kentuckians/charity/Pages/default.aspx.

[13] For the Court's convenience, copies of the pages reflecting the Defendants' absence on the list of charitable organizations registered in Kentucky are attached hereto as Exhibit 9.

[14] The page reflecting HOKC's inclusion on the registry of organizations authorized to engage in charitable solicitation activities is attached as Exhibit 10.

Ecology Crossroads Cooperative Foundation, Inc. on January 20, 2020, as was Globcal International.[15]  Ecology Crossroads Cooperative Foundation, Inc. was originally registered to do business in the Commonwealth of Kentucky in 1994.[16]  The Articles of Incorporation of Ecology Crossroads Cooperative Foundation, Inc. state that it is a "not-for-profit" corporation that makes "distributions to organizations that qualify as exempt organizations under Section 501(c)(3) of the Internal Revenue Code…."  [*See* Certificate of Organization and Article of Incorporation of Ecology Crossroads Cooperative Foundation, Inc. (included in the documents attached as Exhibit 11), 1].   The twenty-five year old articles do not mention KCI, the Kentucky Colonel Foundation, the Kentucky Colonels International Fund, or any other organization described on the KCI Website.  Significantly, the articles describe the "purposes" of the corporation, but none of those purposes refer to individuals commissioned as a Kentucky Colonel or any activity related to Kentucky charitable work.   Rather, the corporate purpose of Ecology Crossroads Cooperative Foundation, Inc. is described as educating the general public regarding "environmentally sensitive matters," informing the public "regarding natural resource conservation," introducing "sustainable development techniques," and other matters relating to "environmentally and ecologically sustainable intentional communities."  [*Id.* at 2-3].  Notably, the articles expressly state that "no part of the earnings of this Corporation shall ever inure to the particular benefit of, or be distributed to any Member, trustee, officer or individual having a personal or private interest in the activities of this Corporation …." [*Id.* at 3]. The articles are signed by, among others, "Rev. David Wright."  [*Id.* at 5].

---

[15] The certificate of assumed name available on the Kentucky Secretary of State website is included in the compilation of corporate records regarding Ecology Crossroads Foundation, Inc., collectively attached as Exhibit 11.

[16] The Articles of Incorporation of Ecology Crossroads Cooperative Foundation, Inc. are included in the corporate documents attached as Exhibit 11.

The records of the Kentucky Secretary of State also reflect that the entities under which Wright and KCI operate have regularly disregarded the legal requirements for maintaining a legitimate corporate existence. According to the Kentucky Secretary of State, Ecology Crossroads Cooperative Foundation, Inc. was formed in 1994, and administratively dissolved on November 3, 1998; reinstated on December 15, 1998, but administratively dissolved again on November 2, 1999; reinstated again on April 22, 2014, but administratively dissolved on October 12, 2015; and only recently reinstated on January 21, 2020.[17]  Thus, KCI's representations regarding its corporate structure, history, and tax-exempt status are simply not supported by the public record.

### E.  Defendants Recently Escalated Their Efforts to Misappropriate the KENTUCKY COLONELS Mark for Their Own Financial Benefit.

In late 2019, HOKC learned that Wright, under the guise of KCI and Globcal International, was soliciting participants for a "registry" of individuals who had been commissioned as Kentucky Colonels.  [Verified Complaint, ¶ 19].  As described by Wright, participation in the registry required payment of a fee.  [*Id.*]

In late December 2019, Wright approached HOKC to "initiate a discussion" regarding the activities of KCI.  [*Id.* at ¶ 20; *see also* Wright Editorial (attached as Exhibit 2) 6].  According to Wright, the purpose of that discussion was to determine whether HOKC would "either assist us in our project or perhaps merge our membership program into their own organization."  [Wright Editorial, 6].  Wright advised HOKC that he wanted to "find a way" that HOKC could "endorse the International Register and Kentucky Colonels International, with a sponsorship, while [HOKC] silently but transparently takes over the Register and International

---

[17] The corporate records reflecting the dissolution and reinstatement history of Ecology Crossroads Cooperative Foundation, Inc. are included in the corporate records attached as Exhibit 11.

Concept to become a program belonging to the HOKC." [Verified Complaint, ¶ 20]. When Wright contacted the Executive Director of HOKC to "explore the possibilities of a merger," she suggested that he submit his ideas in writing. [*Id.* at ¶ 21].

In mid-January 2020, Wright forwarded HOKC a package of documents which included a "Draft Merger, Acquisition and Consolidation Agreement." [*Id.* at ¶ 22]. Not surprisingly, Wright's "proposal" included provisions for generous financial payments to both himself and KCI. [*See* Draft Merger, Acquisition and Consolidation Agreement (included in Exhibit 3 to Verified Complaint), 1-7].[18] On January 20, 2020, HOKC notified Wright that it was not interested in his proposed "acquisition" of KCI. [Verified Complaint, ¶ 23]. Shortly thereafter, Wright advised HOKC that he and KCI intended to "move forward with our program and the formalization of the KCI agenda." [*Id.* at ¶ 24].

  **F.**  **After His Proposal Was Rejected, Wright Initiated a Social Media and Internet Campaign Aimed at Disparaging HOKC and Escalating His Misappropriation of the KENTUCKY COLONELS Trademark.**

On February 8, 2020, Wright posted his "editorial" on HOKC's public Facebook page, disparaging HOKC and accusing HOKC of a variety of misconduct. [*Id.* at ¶ 25-27]. For example, Wright alleged that HOKC has "been misleading their donors and supporters for many years," has violated various state and federal statutes, and has otherwise engaged in "deception, and fraudulent presumptive behavior." [Wright Editorial (Exhibit 2), 9].

More importantly, Wright expressed his intentions to accelerate and increase his efforts to promote a competing organization using the KENTUCKY COLONELS Mark. Specifically, Wright stated:

---

[18] Because Wright demanded HOKC execute a confidentiality agreement, the package of material reflecting Wright's "acquisition proposal" has been filed under seal for the Court's review pending further orders of the Court.

11

So it is for these Kentucky Colonels that we are moving forward with our plans by forming our own International Commission to develop a genuine membership organization that is rightly so. We have taken several major steps already by getting a new dedicated website and forming a small commission of distinguished leaders to serve as the initial officers that share many of my sentiments and concerns.

\* \* \*

To get the organization off the ground I have legalized the commission's formation under the same organization that I founded in 1994 by reinstating it with the Secretary of State in Frankfort on January 21. Now to take it where it needs to go we need donations from the public and will need to charge monthly or annual dues to members in order to provide member benefits and services beyond the social media. The online services we have been providing through administering the Facebook groups will remain without any membership fees including our blog and a new website being developed at [kycolonels.international].

\* \* \*

On January 30 the formation of Kentucky Colonels International became official. We upgraded our status from an unincorporated membership organization and legalized the commission and foundation as an assumed name corporation in the Commonwealth of Kentucky belonging to Ecology Crossroads (est. 1994), who is our sponsor. To become an independent membership organization like we deserve to be, it is up to our members and other Kentucky colonels to come together and provide us with support we need in the form of donations to better formalize our efforts to succeed. Contributions can be made online through their sponsor using PayPal or a credit card.

[*Id*. at 10-12]. Thus, in addition to the express solicitations reflected on the Kentucky Colonel International website, Wright has candidly acknowledged that he and his affiliated organizations are soliciting, and will continue to solicit, contributions and payments using the KENTUCKY COLONELS Mark. He has also made it clear that those contributions will not be shared with HOKC or subject to scrutiny by anyone other than himself.

After his "acquisition proposal" was rejected, Wright also sought to advance his misappropriation of the KENTUCKY COLONELS Mark by significantly, and erroneously, editing the "Kentucky Colonel" Wikipedia page. [Verified Complaint, ¶ 28]. Among other

12

things, Wright, using the username "Problemsmith," removed a reference indicating that "Kentucky Colonels" is a registered trademark of HOKC. [*Id.*; *see* Exhibit 5 to Verified Complaint]. He also added an entire section to the article describing "Kentucky Colonels International."[19] [Kentucky Colonel Wikipedia Article, 2]. Thus, Wright and the other Defendants have extensively used the internet to confuse the public misappropriate the goodwill, and profit from the KENTUCKY COLONELS Mark.

## ARGUMENT

### HOKC IS ENTITLED TO A RESTRAINING ORDER AND INJUNCTION DIRECTING DEFENDANTS TO STOP THEIR MISSUE AND MISAPPROPRIATION OF THE KENTUCKY COLONELS TRADEMARK.

"The preliminary injunction serves an important purpose—'to allow a victory by [the plaintiffs] to be meaningful.'" *McGirr v. Rehme*, 891 F.3d 603, 614 (6th Cir. 2018) (citation omitted). When considering a motion for preliminary injunctive relief, the Court must weigh the following factors: "'(1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury without the injunction; (3) whether issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of the injunction.'" *Tumblebus Inc. v. Cranmer*, 399 F.3d 754, 760 (6th Cir. 2005) (quoting *PACCAR Inc. v. TeleScan Techs., L.L.C.*, 319 F.3d 243, 249 (6th Cir. 2003)). The four considerations applicable to preliminary injunction decisions are to be balanced; they are not prerequisites to be met. *Six Clinics Holding Corp., II v. Cafcomp Sys., Inc.*, 119 F.3d 393, 400 (6th Cir. 1997). "No single factor will be determinative as to the appropriateness of equitable relief." *Id.*

---

[19] *See* https://en.wikipedia.org/wiki/Kentucky_Colonel. A copy of the Wikipedia Article on "Kentucky Colonel" is attached to the Verified Complaint as Exhibit 5. For the Court's convenience, a copy of the Wikipedia Article is also attached hereto as Exhibit 12.

> For example, "a finding that the movant has not established a strong probability of success on the merits will not preclude a court from exercising its discretion to issue a preliminary injunction if the movant has, at minimum, 'show[n] serious questions going to the merits and irreparable harm which decidedly outweighs any potential harm to the defendant if the injunction is issued.'"

*Id.* at 399–400 (quoting *Gaston Drugs, Inc. v. Metro. Life Ins. Co.*, 823 F.2d 984, 988 n.2 (6th Cir. 1987)). "[A] preliminary injunction is customarily granted on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits. A party thus is not required to prove his case in full at a preliminary-injunction hearing" *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981).

In this trademark infringement case, a victory by HOKC will not be meaningful unless Defendants are ordered to stop infringing upon the KENTUCKY COLONELS Mark. They should be ordered to do so immediately because, with each passing day of Defendants' continuing infringement, HOKC and its valuable trademark is irreparably injured. HOKC's likelihood of success is high, and the requested injunction will cause no harm to Defendants, as any self-inflicted wound caused by infringement does not weigh against issuance of an injunction. The public interest is also served by the requested injunction, as it eliminates the intentional confusion caused by Defendants' infringement. The four injunction factors weigh strongly in HOKC's favor and warrant issuance of injunctive relief.

### A.  HOKC Is Likely to Succeed on the Merits.

Trademark rights in the United States arise from use. As the leading trademark commentator states "the first to use a designation as a mark in the sale of goods or services is the 'owner' and 'senior user.'" *See* 6 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair*

*Competition* § 16:4 (5th Ed.).[20]  Moreover, "[w]ith each sale of goods or services under such a business symbol, the seller builds up greater and greater legal rights in that symbol. *Id.* § 16:1. As the Sixth Circuit has stated, "trademark law now pursues two related goals–the prevention of deception and consumer confusion and, more fundamentally, the protection of property interests in trademarks." *Ameritech, Inc. v. American Information Technologies Corporation*, 811 F.2d 960, 964 (6th Cir. 1987). It is indisputable that HOKC has used the KENTUCKY COLONELS Mark for decades and has clearly-established rights and priority in the use of the KENTUCKY COLONELS Mark over Defendants. In addition to being federally registered, the Mark has become synonymous with HOKC's services to its members and its charitable mission to the Commonwealth and beyond.

The Lanham Act specifically provides for injunctive relief to prevent the violation of any right of a trademark holder. *See* 15 U.S.C. § 1116. HOKC's trademark registrations are prima facie evidence of the validity of its Mark. *See* 15 U.S.C. § 1115. "The touchstone of liability under § 1114 is whether the defendant's use of the disputed mark is likely to cause confusion among consumers regarding the origin of the goods [or services] offered by the parties." *Daddy's Junky Music Stores, Inc. v. Big Daddy's Family Music Ctr.*, 109 F.3d 275, 280 (6th Cir. 1997).

Courts in the Sixth Circuit evaluate likelihood of confusion cases using the eight-factor test set forth in *Frisch's Restaurants, Inc. v. Elby's Big Boy of Steubenville, Inc.*, 670 F.2d 642 (6th Cir. 1982). The "*Frisch's* factors," as they have come to be known, consist of: (1) strength of the plaintiff's mark; (2) relatedness of the parties' goods or services; (3) similarity of the

---

[20] *McCarthy on Trademarks and Unfair Competition* is available electronically and therefore, pursuant to LR 7.1(h), the cited portions are not attached.  However, Plaintiff will provide copies to the Court upon request.

parties' marks; (4) evidence of actual confusion between the parties' marks; (5) marketing channels used by the parties; (6) likely degree of purchaser care in the relevant consumer group; (7) the defendant's intent in selecting the mark; and (8) likelihood that either party will expand its product lines. *Id.* at 648; *see also Ga.-Pac. Consumer Prods. LP v. Four-U-Packaging, Inc.*, 701 F.3d 1093, 1100-01 (6th Cir. 2012).

While these factors are a guide to determine whether confusion is likely, HOKC does not need to show all, or even most, of the factors to prevail on its claim. *Wynn Oil Co. v. Thomas*, 839 F.2d 1183, 1186 (6th Cir. 1988); *Homeowners Grp., Inc. v. Home Mktg. Specialists, Inc.*, 931 F.2d 1100, 1107 (6th Cir. 1991) ("Each case presents its own complex set of circumstances and not all of these factors may be particularly helpful in any given case."). "The 'ultimate question [is] whether relevant consumers are likely to believe that the products or services offered by the parties are affiliated in some way.'" *Ohio State Univ. v. Thomas,* 738 F. Supp. 2d 743, 749 (S.D. Ohio 2010) (citations omitted). In this case, HOKC's Verified Complaint establishes that Defendants are intentionally and willfully infringing its KENTUCKY COLONELS Mark using an identical mark or nearly identical, offering what purports to be identical services. HOKC is highly likely to succeed on the merits on its claims for trademark infringement and therefore is entitled to the relief it seeks.

1.   *Frisch's* **Factor No. 1*:* KENTUCKY COLONELS is a very strong and well-known Mark throughout the world.**

The likelihood that consumers will confuse Defendants' use of HOKC's trademark as being authorized or endorsed by HOKC is extremely high. The stronger a trademark, the broader the scope of protection it enjoys, and the KENTUCKY COLONELS Mark is well-known throughout the world. As the Sixth Circuit recently noted, "[t]he stronger a mark is, the greater the risk of confusion." *Kibler v. Hall*, 843 F.3d 1068, 1073 (6th Cir. 2016) (citing *Homeowners*,

931 F.2d at 1107; *see also Champions Golf Club, Inc. v. The Champions Golf Club, Inc.*, 78 F.3d 1111, 1117 (6th Cir. 1996). ***A strong mark "casts a long shadow which competitors must avoid."*** *Kenner Parker Toys Inc. v. Rose Art Indus., Inc.*, 963 F.2d 350, 353 (Fed. Cir. 1992) (emphasis added). Accordingly, "the 'most important *Frisch* factors are similarity and strength of the mark." *Maker's Mark Distillery, Inc. v. Diageo N. Am., Inc.*, 679 F.3d 410, 424 (6th Cir. 2012) (quoting *Gray v. Meijer, Inc.*, 295 F.3d 641, 646 (6th Cir. 2002)).

To determine the strength of a mark, courts in the Sixth Circuit look at the conceptual and commercial strength of a mark. *Butler v. Hotel Cal., Inc.*, 106 F. Supp. 3d 899, 906 (N.D. Ohio 2015) (citing *Homeowners*, 931 F.2d at 1107). The KENTUCKY COLONELS Mark has developed a high level of conceptual strength, or distinctiveness in the marketplace, through its nearly decade of continual use by the HOKC. *See id.* And, understanding the scope of commercial strength of the KENTUCKY COLONELS Mark only requires mentioning a name like *Colonel* Sanders (emphasis added). The commercial strength of a mark considers the public's recognition of a mark—"the extent to which people associate the mark with the product [or services] it announces." *Kibler*, 843 F.3d at 1074.

In this case, HOKC has continuously and exclusively used the KENTUCKY COLONELS Mark since 1931 [Verified Complaint, ¶ 15]. As a result, the KENTUCKY COLONELS Mark has become well-known throughout the world, and it is inextricably intertwined with HOKC, its member services, and its charitable work. Any use of the famous KENTUCKY COLONELS Mark by Defendants will inevitably cause confusion and create the mistaken impression that HOKC is associated or affiliated with Defendants' organizations and activities.

17

Moreover, HOKC has an incontestable registration for KENTUCKY COLONELS. An incontestable registration—based on five or more years of continuous use on or in connection with certain goods or services provided certain conditions are met—is immune from challenge and presumed to be strong. *See* 15 U.S.C. § 1065; *Jet, Inc. v. Sewage Aeration Sys.*, 165 F.3d 419, 422 (6th Cir. 1999). Finally, the strength of HOKC's Mark is enhanced by the fact that there is no evidence of any other similar marks actively being used in commerce. *See Daddy's Junky*, 109 F.3d at 281.

**2**.    *Frisch's* **Factor No. 2: The services at issue are directly related and competitive.**

The relatedness of the activities in which Defendants purportedly intend to engage equally supports the injunction requested by HOKC. "Services and goods 'are related not because they coexist in the same broad industry, but are related if the services are marketed and consumed such that buyers are likely to believe that the services, similarly marked, come from the same source, or are somehow connected with or sponsored by a common company.'" *Daddy's Junky*, 109 F.3d at 282-83 (citing *Homeowners Group, Inc. v. Home Marketing Specialists, Inc.*, 931 F.2d 1100, 1109 (6th Cir. 1991)). Here, HOKC engages in charitable fundraising services in connection with the KENTUCKY COLONELS Mark. Wright and the other Defendants are also soliciting charitable contributions and funds (although apparently under false pretenses) also using an identical or nearly identical mark. Defendants are intentionally using the KENTUCKY COLONELS Mark to confuse the consuming public into believing that they are the official and authorized membership organization for the KENTUCKY COLONELS services.  The competing enterprise maintained by Defendants would easily be confused by the public as being supported by or affiliated with HOKC.

18

### 3. *Frisch's* **Factor No. 3: The Parties' Marks are similar.**

Here, Defendant is intentionally using a mark that is not just similar, but identical or nearly identical. In assessing similarity, "'courts must determine whether a given mark would confuse the public when viewed alone, in order to account for the possibility that sufficiently similar marks may confuse consumers who do not have both marks before them but who may have a general, vague, or even hazy, impression or recollection of the other party's mark.'" *Maker's Mark*, 679 F.3d at 421 (quoting *Daddy's Junky*, 109 F.3d at 283). The identical or nearly identical nature of the marks, used in connection with essentially identical services, will create a likelihood of confusion. Accordingly, this *Frisch's* factor clearly weighs in favor of HOKC.

### 4. *Frisch's* **Factor No. 4: Actual confusion between the Marks.**

"Actual confusion" occurs when a consumer is confused about the source of goods or services because of similarity between two marks. While evidence of actual confusion is "'undoubtedly the best evidence of likelihood of confusion,'" it is very difficult to obtain. *See Daddy's Junky*, 109 F.3d at 284 (citation omitted). "Due to the difficulty of securing evidence of actual confusion, a lack of such evidence is rarely significant …." *Id.* (citations omitted); *see also Maker's Mark*, 679 F.3d at 422.

In this case, HOKC has already experienced evidence of actual confusion as a result of KCI's activities. In September 2019, two separate recipients of charitable grants from HOKC posted thank yous to their respective Facebook pages. In both posts, however, the grantees mistakenly tagged KCI's Facebook page instead of HOKC's Facebook page. [Verified Complaint, ¶ 29]. Such actual confusion not only showed confusion by the grantees about who provided the charitable giving, but also caused the viewing public of both posts to be confused

19

by who provided the grants. These incidents illustrate both (i) current grantees of HOKC who tagged the wrong entity in their posts; and (ii) the viewing public who saw the posts and would have assumed that KCI awarded the grants to the non-profit organizations demonstrating the kind of actual confusion that HOKC seeks to avoid by enjoining Defendants' further actions. This evidence of actual confusion weighs heavily in favor of HOKC.

### 5. *Frisch's* Factor No. 5: The Parties use identical marketing channels.

Where marketing methods used to promote the services at issue are substantially similar, the likelihood of confusion among the services is higher. *Frisch's*, 670 F.2d at 648. Here, both HOKC and Defendants maintain an online presence through social media, including Facebook pages, Kentucky Colonel membership websites, charitable online giving features, and other similar marketing channels. More importantly, Defendants, through Wright, are intentionally creating confusion through social media accounts and the KCI Website.

### 6. *Frisch's* Factor No. 6: The likely degree of purchaser care is low.

The sixth *Frisch's* factor requires the Court to determine the likely degree of purchaser care, which is not particularly applicable to this set of facts, in which Defendants are engaging in purposeful use of the KENTUCKY COLONELS Mark. In this case, the purchaser, even in exercising care, may still be confused because of Defendants' purposeful attempts to appear to be an official organization affiliated with the KENTUCKY COLONELS Mark and to trade off of the goodwill of the KENTUCKY COLONELS brand.

### 7. *Frisch's* Factor No. 7: The Defendants intended to copy the Mark.

The intent of Defendants is also assessed when determining the likelihood of consumer confusion. "Direct evidence of intentional copying is not necessary to prove intent. Rather, the use of a contested mark with knowledge of the protected mark at issue can support a finding of

intentional copying." *Daddy's Junky*, 109 F.3d at 286 (citation omitted). Based upon the correspondence between the parties, Defendants clearly are aware of HOKC's Mark and are obviously using it for their own personal and financial gain. In fact, Wright and his affiliated organizations dramatically increased their improper infringement activities after HOKC rejected Wright's extortionate attempt to have KCI "acquired" by HOKC.

### 8. *Frisch's* Factor No. 8: Expansion of product lines.

In this case, Defendants' fraudulent services are directly competing with HOKC's legitimate services. The Sixth Circuit holds that in such instances, where products or services are directly competing, there "is no need for discussion of this factor." *Little Caesar Enterprises, Inc. v. Pizza Caesar, Inc.,* 834 F.2d 568, 572 (6th Cir. 1987).

### 9. The *Frisch's* Factors, Taken Together, Weigh Strongly in Favor of HOKC.

Certainly, HOKC has a strong likelihood of success on the merits in its claim of trademark infringement. ***Cases like this are why trademark laws exist***. Trademark infringement is problematic in any case, but it simply cannot be tolerated when being done to divert charitable and membership dollars for Defendants' unjust personal financial gain, while simultaneously trying to strong-arm a six-figure "merger" deal for yourself. To prevent irreparable injury and maintain the status quo, the temporary restraining order and preliminary injunction requested by HOKC should be granted.

### B. Defendants' Continued Infringement of the Trademark of HOKC Poses a Threat of Irreparable Harm.

In the trademark context, the requirement of irreparable injury is to be interpreted liberally. The Sixth Circuit has unequivocally held that "irreparable harm is *presumed* from defendant[']s infringement of plaintiff's mark." *DaimlerChrysler v. The Net Inc.*, 388 F.3d 201, 208 (6th Cir. 2004) (citations omitted) (emphasis added). "The law of this Circuit holds that no

particular finding of likelihood of . . . irreparable harm is necessary for injunctive relief in trademark infringement or unfair competition cases." *Circuit City Stores, Inc. v. CarMax, Inc.,* 165 F.3d 1047, 1056 (6th Cir. 1999) (citing *Wynn Oil Co. v. Am. Way Serv. Corp.,* 943 F.2d 595, 608 (6th Cir. 1991)). Further, "[o]nce a moving party has demonstrated a likelihood of confusion, a finding of irreparable injury ordinarily follows." *Ohio State*, 738 F. Supp.2d at 755.

"The irreparable injury flows both from the potential difficulty of proof of plaintiff's damages, and also from the impairment of intangible values." *Wynn*, 943 F.2d at 608 (internal quotation marks omitted) (citations omitted)). Further, where a defendant is unlawfully infringing upon a trademark, irreparable injury follows from the damage to a plaintiff's reputation and the development of goodwill in its mark. *See DaimlerChrysler*, 388 F.3d at 208. A court may also consider the potential loss of control over the quality of goods associated with the plaintiff's mark and the risk of damage to the plaintiff's reputation and mark. *See Woodroast Sys., Inc. v. Rests. Unlimited, Inc.*, 793 F. Supp. 906, 918 (D. Minn. 1992), *aff'd* 994 F.2d 844 (8th Cir. 1993). The consequences of trademark infringement and unfair competition and the attendant loss of goodwill and injury to reputation along with control over the nature and quality of the goods are intangibles which cannot later be compensated by an award of money damages.

Defendants' use of HOKC's trademark poses certain and immediate threat of irreparable injury to the reputation and goodwill of HOKC. The injury to HOKC's goodwill and other charitable interests caused by this conduct will only increase as Defendants' activities continue. Indeed, it is likely that HOKC's support of numerous charities would be irreparably harmed if Defendants are permitted to profit from the KENTUCKY COLONELS Mark. Moreover, unless Defendants are enjoined from infringing HOKC's Mark, it will be difficult to subsequently

quantify how many contributions were lost due to Defendants' actions. *See, eg., Budish v. Gordon*, 784 F. Supp. 1320, 1337 (N.D. Ohio 1992).

The injury which will be sustained by HOKC is more than financial, however. HOKC has spent many years developing its reputation and goodwill throughout the world. Here, continued use of its Mark by Defendants could cause HOKC to suffer a substantial loss of goodwill among its members and the general public, as consumers are confused into thinking that HOKC is acting in concert with organizations and individuals that have no ties to HOKC. The fact that Wright and his affiliated organizations have misrepresented their corporate and tax exempt status further exacerbates the reputational harm that HOKC may suffer. The threat that the goodwill of HOKC will be diminished and the prestige and honor associated with the KENTUCKY COLONELS Mark tarnished is an injury which cannot be rectified monetarily. The injury is immediate and continuing and cannot be repaired. *See Basicomputer Corp. v. Scott*, 973 F.2d 507, 512 (6th Cir. 1992) (holding that "[t]he loss of customer goodwill often amounts to irreparable injury because the damages flowing from such losses are difficult to compute"); *Michigan Bell Telephone Co. v. Engler*, 257 F.3d 587, 599 (6th Cir. 2001) (noting same); *Genny's Diner & Pub, Inc. v. Sweet Daddy's, Inc.*, 812 F.Supp. 744, 747 (W.D. Ky. 1993) (finding that where confusion is highly likely, the loss of goodwill is irreparable or, at best, only very slowly regained, and noting that damages for such harm are clearly inadequate).

HOKC has sufficiently demonstrated the irreparable harm which it will suffer if the injunctive relief sought is not granted. The motion for a temporary restraining order and a preliminary injunction should be granted.

### C.     The Balance of Injuries Weighs Decidedly in Favor of HOKC.

Harm caused to apparent infringers is not entitled to consideration. *Worthington Foods, Inc. v. Kellogg Co.*, 732 F. Supp. 1417, 1461 (S.D. Ohio 1990). "[I]f the plaintiff alleging

trademark infringement can show a likelihood of success, the 'harm to others' factor of the preliminary injunction standard would normally favor the plaintiff as well." *Id*. at 1462. The threatened injury to HOKC therefore far outweighs whatever harm the issuance of an injunction may cause Defendants.

The relief requested by HOKC prohibits Defendants from doing what it should not be doing in the first place—using a trademark to which it has no legal right. "Where the harm to an alleged infringer from a preliminary injunction is self-inflicted, courts typically find that such harm is a natural consequence of infringing activity that does not weigh against issuance of an injunction." *Anderson v. TOL, Inc.,* 927 F. Supp. 2d 475, 488 (M.D. Tenn. 2013). Any harm to Defendants is self-inflicted, as Defendants knew of the HOKC's longstanding rights in the KENTUCKY COLONELS Mark. *See Papa John's Int'l, Inc. v. Specktacular Pizza, Inc.*, No. 3:05-cv-515-H, 2005 WL 3132337, at *5 (W.D. Ky. Nov. 21, 2005); *see also KFC Corp. v. Goldey*, 714 F. Supp. 264, 267 (W.D. Ky. 1989) ("As to the threatened harm to plaintiff compared with the threatened harm to the defendant, the courts have usually held that where the plaintiff is an authorized trademark holder and the defendant is improperly using the trademark, then the threatened harm to the trademark owner outweighs the threatened harm to the defendant.").

In fact, the relief requested will only prevent Defendants from doing what they should not be doing in the first place. "Where the only hardship that the defendant will suffer is lost profits from an activity which has been shown likely to be infringing, such an argument in defense 'merits little equitable consideration.'" *Budish v. Gorden*, 784 F.Supp. 1320, 1338 (N.D. Ohio 1992) (citations omitted). *See also Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 253 F.Supp.2d 943, 973 (E.D. Ky. 2003) ("One cannot build a business based upon infringing

another's intellectual property rights, and then be allowed to complain that making them stop will cause harm"). Furthermore, when a plaintiff has made a substantial investment of time and money in its mark as opposed to the investment by the infringer, the balance of hardships tips in the plaintiff's favor. *See Woodroast Sys., Inc. v. Restaurants Unlimited, Inc.*, 793 F.Supp. 906, 919 (D. Minn. 1992), *aff'd* 994 F.2d 844 (8th Cir. 1993).

HOKC has invested nearly a century in developing the goodwill behind its KENTUCKY COLONELS Mark. Defendants are using HOKC's trademark to lend authenticity to an organization which, by its own admission, is dedicated to promotion of the "careers and successes" of its individual members. Such self-promotion for individual and personal enrichment is completely inconsistent with the mission of the HOKC and contrary to the historical use of the KENTUCKY COLONELS Mark. It is particular harmful to HOKC's reputation since the individuals and entities misappropriating the Mark are misrepresenting their tax exempt status and have a history of utterly disregarding the law on corporate governance, formation, and status. Accordingly, as the only potential injury to Defendants would be profits lost from their infringing activities, the balance of equities lies heavily in favor of HOKC. The motion for injunctive relief should be granted.

### D. Granting Injunctive Relief Is In the Public Interest.

The injunctive relief sought by HOKC is clearly in the best interest of the public. Unlike other types of preliminary injunction matters, in a trademark infringement matter, "a third party, the consuming public, is present and its interests are paramount." *See* 1 McCarthy, *supra* p. 8, § 2:22 (quoting *James Burrough Ltd. v. Sign of Beefeater, Inc.*, 540 F.2d 266, 274 (7th Cir. 1976)). When a trademark is infringed, what is actually infringed is the right of the public to be free of confusion and the synonymous right of the trademark owner to control its product's (or service's) reputation. *Id.* As a result, public policy concerns often "weigh in favor of preliminary

injunctive relief because an injunction would halt confusion in the marketplace." *Ohio State*, 738 F. Supp. 2d at 756-57. In the present case, it is certainly in the public interest to prevent confusion between the services provided by HOKC and the activities of others improperly using the KENTUCKY COLONELS Mark.

HOKC is a non-profit organization that distributes grants to non-profit organizations. To raise money for charity, HOKC solicits contributions from appointed Kentucky Colonels, holds an annual barbeque picnic, and engages in service, sells a wide variety of merchandise that bears the KENTUCKY COLONELS Mark, and other such fundraising activities. On an annual basis, HOKC raises and distributes millions of dollars to charitable and educational organizations across the Commonwealth and beyond, and confusion or harm to its goodwill could impair HOKC's efforts to raise money for such worthy causes. HOKC's motion for a temporary restraining order and a preliminary injunction is in the public interest and should be granted.

## CONCLUSION

HOKC is suffering irreparable injury from Defendants' infringement of its trademark, and membership of HOKC is being duped by Defendants for Defendants' own financial gain. HOKC has offered sufficient evidence to show that Defendants' use of the KENTUCKY COLONELS Mark is harming HOKC, and is causing actual confusion to the public. HOKC respectfully requests that its motion for a temporary restraining order and a preliminary injunction be granted and that the proposed Orders be entered with all possible haste.

Respectfully submitted,

*/s/ Cornelius E. Coryell II*
Cornelius E. Coryell II
Michelle Browning Coughlin
Julie Laemmle Watts
WYATT, TARRANT & COMBS, LLP
400 West Market Street, Suite 2000
Louisville, KY 40202
(502) 589-5235
ccoryell@wyattfirm.com
mcoughlin@wyattfirm.com
jwatts@wyattfirm.com

*Counsel for Plaintiff, the Honorable Order of Kentucky Colonels, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on February 21, 2020, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system. I further certify that a true and correct copy of the foregoing has been served upon the following, via U.S. Mail, on the 21st day of February, 2020:

Kentucky Colonels International
c/o Maya-Lis A. Wright
302 General Smith Drive
Richmond, KY 40475

Ecology Crossroads Cooperative Foundation, Inc.
c/o Maya-Lis A. Wright
302 General Smith Drive
Richmond, KY 40475

Globcal International
c/o Maya-Lis A. Wright
302 General Smith Drive
Richmond, KY 40475

David J. Wright
302 General Smith Drive
Richmond, KY 40475

*/s/ Cornelius E. Coryell II*
*Counsel for Plaintiff, the Honorable Order of Kentucky Colonels, Inc.*

100234362.2

# EXHIBIT B TO
# DUNN AFFIDAVIT





