FILED

JAMES J. VILT JR., CLERK
U.S. DISTRICT COURT
W/D OF KENTUCKY

Date: _____ Mar 29, 2023 _____

**UNITED STATES DISTRICT COURT**

**WESTERN DISTRICT OF KENTUCKY**

**LOUISVILLE DIVISION**

| | | |
|---|---|---|
| **THE HONORABLE ORDER OF** | ) | **Civil Action No. 3:23-cv-00043-RGJ** |
| **KENTUCKY COLONELS, INC.** | ) | |
| Plaintiff | ) | |
| | ) | |
| vs. | ) | **MOTION TO DISMISS COMPLAINT** |
| | ) | |
| **COL. DAVID J. WRIGHT, et.al.** | ) | |
| Defendant | ) | |
| | ) | |

### DEFENDANTS' MOTION TO DISMISS VERIFIED COMPLAINT

COMES NOW, **Col. David J. Wright**, ("Defendant") in *pro se* pursuant to Federal Rules of Civil Procedure 7, 11 and 57, Title 28 U.S.Code §§ 2201, 2202, Title III of the United States Constitution, First and the 14th Amendment, previously recognized in title, understanding this Honorable Court on February 23, 2021 when similar allegations were **dismissed with prejudice, in-law, without any finding in law, justly and under a court mediated settlement to evade and prevent this Court from hearing Defendant's Answer and Affirmative Defenses and consider a pending Motion for a Declaratory Judgment to cancel the Plaintiff's registered trademarks in Case 3:20-cv-00132 which now rests in** *res judicata*.

### INTRODUCTION

In this new case, Civil Action 3:23-cv-00043 the Plaintiff is using the previous Agreed Permanent Injunction by abusing civil rights of the Kentucky Colonel, is making false allegations, harassing, bullying, weaponizing their trademark(s), and ultimately diminishing the reputation of an editorial workgroup of individual Kentucky colonels exercising their guaranteed **"rights, privileges and**

1

**responsibilities,"** awarded by Kentucky governors engaged in cooperative educational and informative self-determined Creative Commons publishing activities; it violates Title 17 of the U.S. Copyright Act and the United States Constitution. This <u>Plaintiff, bringing this case is the only one violating the terms of the Agreed Permanent Injunction</u> with a third-party contractor and *misusing it to cause irreparable damage* to the 250th Anniversary of Col. Daniel Boone discovering and settling Kentucky, it is a highly important event for the Commonwealth of Kentucky in Boonesborough on May 23, 2025, the Defendant is preparing for this event and all his research is focused here, "a narrative created by the Defendant". The Plaintiff is manipulating the legal system and defrauding the American public with a false designation of origin story from 1813 that was concocted by socialites for recreational purposes in 1941 and it is diluting the significance of the "Kentucky Colonel" title mark by selling cheap foreign made products bearing the trademark "Kentucky Colonels" and the actual title mark Kentucky Colonel which is only conveyed to human beings that it claims to serve with the unofficial purpose of commercialization. The Plaintiff must be stopped because naming products arbitrarily after the Honorable Title confuses people and dilutes the prestige of the title; the **more colonels and more products is ambiguous and dilutive plain and simple**.

**This is not a lawsuit, it is a controversy** about whether a fictitious militia of Kentucky Colonels operated by self-designated military generals, has any rights at all to interfere with an academic and educational cooperative pursuit focused on their own discovery of the semantic "Kentucky Colonel" as their own subjective topic from history. The Defendant does not believe in the Honorable Order of Kentucky Colonels background story since he discovered during the previous lawsuit that the story he believed until September of 2020 was abjectly false based on an event that never occurred.

The Plaintiff is making grandiose overreaching exhibitionist claims about a "term usage" as a "trademark" confusing people to believe that <u>they are somehow our authority</u> or <u>some sort of an authority</u> in the **Common Law Realm of the Kentucky Colonelcy**, because they simply <u>are not</u>. The Plaintiff is actually quite the contrary (has never been an authority) and it is using it's trademark to bully us **(all colonels)** into submission without using it in accordance with US Law, they must distinguish their trademark use with the ® Symbol simply because it has become profusely ambiguous with their trade

name, false copyright claim, and membership chapters: there is no reasonable way to determine or distinguish any difference between their trade name, products and trademarks which implicitly causes confusion preventing the fair-use of it by their members, which they are fully aware of by having an descriptive and generic trademark registered under many arbitrary classes, this was advised to the Plaintiff by the USPTO in 2020 which they have wantonly disregarded. The Plaintiff is attempting with great contempt of their own general knowledge that a "Kentucky Colonel" somehow belongs to them or that a colonel is graced or originated by the organization, again simply not true, there have been colonels in Kentucky since 1775 and the people of the world have been talking about the Kentucky Colonel since 1833 when the descriptive Honorable Title "first emerged" in London in the National Gazette and Literary Register on April 20.

In good-faith and humility I make this appearance today to defend my rightfully commissioned "Honorable Title" of "Kentucky Colonel" placed upon me by the Most Honorable Former Governor, Colonel Paul E. Patton in 1996 which is being diluted, hazed and damaged by **the Plaintiff** which is not a **Kentucky Colonel**, because Governor (Colonel) John Y. Brown, Jr., made certain in his official and regular acts that "Waldo the Dog" or "nothing other than a living human being" could ever be made a Kentucky Colonel again. *How Waldo became a Kentucky Colonel, 1980*. Under Kentucky common-law only the government official that issued the title can revoke it.

This Court must agree based on my claim and the Plaintiff's fictitious claims that the First Kentucky Colonel exists is in the Public Domain and the Creative Commons, if there ever was one prior to 1927, which is where this Court has implicitly authorized us (a group of colonels) to perform research and republish these works in an educational and informational format, if we are stepping out of those guidelines based on the presumptive allegory (wolf crying) of the Plaintiff we should probably all read about it in a book, and the Court does not need to be involved. The Defendant likes the Agreed Permanent Injunction just the way it is; this is an overt attempt by the Plaintiff to extend its trademark rights.

In Kentucky for a fictitious militia with phony generals that sells trinkets and merchandise to fill their pockets in the name of a Kentucky Colonel by falsely designating the origin of the Kentucky

3

Colonel, making the Kentucky Colonel Commission easier to get, falsely describing the Kentucky Colonel, passing-off a fictional origin as fact about the Kentucky Colonel, diluting the title with product names are all forbidden under **15 U.S. Code § 1125 - "False designations of origin, false descriptions, and dilution forbidden."** The name in title right here in § 1125 is the the only sentence in the law that is relevant here, may need to be determined in hearing focused on the validity of the HOKC trademarks in question as to whether the trademarks have the capacity to harm the Title for which none can actually be named. With absolute certainty the Plaintiff is the only culprit here, its use of an attorney as a sophist to create sophisticated arguments and construct an 11 pound Federal Case (more than two reams of paper) has no place in this Court, in this State, or in the United States. A case like this should only move forward under a Communist Government controlled by the State.

No one is using their name as a trademark in any way that defeats the purpose of the Agreed Permanent Injunction which is well understood as a valid way to disambiguate our real colonels from the Honorable Order of Kentucky Colonels which represents the interests of about 15 fake generals, a store, ecommerce website and 30,000 donors (active members) of the 400,000 colonels that are recognized in the world (only honorarily in the Plaintiff's organization) with no voting powers or legal membership benefits (privileges) with bylaws like the NRA, BSA or the Sierra Club (at least they did not when the Defendant was a member from 1996-2020); now however since the Plaintiff has stolen the pre disclosed Creative Work and Intellectual Property of the Defendant by creating a new "Chapters System" based on the ideas described in the "Sealed Document" from Case 3:20-cv-00132 DN-7 it may have developed a new membership program based on the insights provided by the Defendant. The Injunction allows for the clear distinction between the Honorable Order of Kentucky Colonels (KENTUCKY COLONELS) ® Mark for the fictitious use as it is registered AND the legally **unregistered and recommended KENTUCKY COLONEL™ (Title Mark)** created by the Defendant which can only be used by an actual Kentucky Colonel, not a corporation.

The only thing the court cannot do is abolish the title or overtake the rights of a colonel in Kentucky, therefore any challenges or questions regarding the validity of the "rights, privileges and

responsibilities" of a Kentucky Colonel must be respected in law within the state, likewise under the jurisdiction of the USPTO that understands the jurisdiction of the Library of Congress which has recognized the Kentucky Colonel (but not the Smitsonian because of the HOKC). We want all of the HOKCs Trademarks canceled, based on their recent and overt actions with our title as a non-colonel, here and now. This Court should also be aware that the Kentucky Colonel Title was recognized in the US House of Representatives (Congress) in 1936, making it a legal title today. Currently the Plaintiff's presence makes it difficult to make the Kentucky Colonel an icon in the UNESCO World Heritage Program of the United Nations. Customarily and in this case, the Defendant's actions that are **not prohibited by the Commonwealth or statutorily in US law, or common-law** cannot be controlled or suggested by the Plaintiff, the burden of proof exists for the Plaintiff to take theoretical allegations and ideas in-law to apply them to an unincorporated group of authors that are critical of the "background story narrative" of the Plaintiff. There is no basis for this claim; the Court will not take away the rights of a publisher or restrict an individual's freedom of speech. This case may lead to the Defendant establishing the First Church of the Kentucky Colonel or the Kentucky Colonel Cannabis Company; the Plaintiff would still have no case based on Clause 5 of the Agreed Permanent Injunction.

In common-law and contemporary law, the State of Kentucky is most likely the more appropriate jurisdiction for this matter since the Kentucky Colonel wrote most of its founding laws and its very constitution, colonels built the first courthouses and designated the first pioneer justices. Federal jurisdiction inside Kentucky does not create a fair-perspective for the Defendant and the case would never get a fair-perspective considering most attorneys and judges in the state are Kentucky colonels themselves. It also involves "rights, privileges and responsibilities" which exist only under Kentucky jurisdiction that are granted to the Defendant as a Kentucky Colonel in customary and traditional law, and Defendant will also simply state, that this organization **cannot resolve their issue without attributing credit where credit is due** for us having revealed over 5,000 pages of content that make the idea of the Kentucky Colonel more relevant in today's society, as well my discovery of the source of the Kentucky Colonel Title and its, use. Someone needs to wake up to the fact that *we are not them* **nor are we passing ourselves off**

**as them, we publish content**. As Honorable Col. Freddy Mercury would say today "we have committed no crime". This organization of the Plaintiff is not a real Kentucky Colonel and therefore cannot sue a colonel or the organization a colonel authorized or licensed others to use their own title in law for a work credential or ID card, or the creation of a badge it is as simple as that, **because those are the legal rights of a colonel**, and a colonel also has the right <u>not to be harassed by a non-colonel</u> that is an organization with the same legal standing as Col. Waldo Wrecker was a dog.

Currently the Plaintiff's organization is diluting the Honorable Title: Kentucky Colonel by over promoting it, most freely and far too openly; the Plaintiff has unfairly enchanted and influenced the current Governor with contributions to additionally dilute the Title further by producing thousands upon thousands of Kentucky colonels non-traditionally, there is nothing in Kentucky Law that makes the Plaintiff any authority on Kentucky Colonelcy, except 80 years of deception with a mythical tale that never occurred. Customarily and traditionally in Kentucky Common Law from 1896 until 2020 only a Kentucky Colonel could nominate another to become a Kentucky Colonel. The Kentucky Colonel Title was one of Kentucky's best kept secrets and the individual colonels themselves granted "rights, privileges and responsibilities" not available to other Kentuckians. To maintain the great integrity and validity of the Honorable Title with all of its "rights, privileges and responsibilities" guaranteed by "letters patent" the Commonwealth of Kentucky as a civilian officer the title must be issued more sparingly. Today, anyone who has a PC can make a nomination of a Kentucky Colonel under the *current Governor's requirements* based on the corrupt and unwelcome influence of a charitable "for-profit/non-profit" corporation has poisoned the well, it is confusing itself with the historical, semantic and lawful Kentucky Colonel Title, most recent governors dating back to 1992 have also been influenced by the "Kentucky Colonels" which in law is not an actual colonel, "Kentucky colonels" are. Many governors dating back to 1931 never knew anything more about the Kentucky Colonel Commission than what was understood by the previous administration of each elected head-of-state until 1957 when the HOKC was incorporated which is also when the legal standing of "aide-de-camp" was dropped on all commissions as well as the "honorary

rank" in the militia under Governor Col. Bertram Combs. Today there are few if anyone that can lay claim to the Honorable Rank of Aide-de-Camp from 1932-1956, when this commission type was issued.

The Plaintiff emerged in 1933 and changed the narrative by 1941 the Honorable Order of Kentucky Colonels was comparable in popularity, recreation and activities as was the Mickey Mouse Club. Their "Origin and Background Story" had no basis in law or fact, it is pure fiction just like Mickey Mouse which is a cartoon character; the Plaintiff operates a mythical militia headed by fake generals with over 30,000 colonels that are honorary members without having access to the bylaws or benefits enjoyed by its board of generals that are, not real based on a vacated military order thought up by a desperate governor during the Great Depression. This very case is comparable to Walt Disney suing Sir David Attenborough for comparing a Mickey Mouse to a real mouse for younger viewers, because the show host did not credit Walt Disney. The Plaintiff has no business meddling with the idea of the Kentucky Colonel and no stake at all in its origin which they have passed-off causing injury to gullible authors, editors and publishers that believed their fiction to create erroneous works, but also far more others (academics and historians) that have all refused to write about Kentucky colonels or touch on the subject of a Kentucky Colonel because they do not believe it to have a true origin, this has been going on over the past 80 years; today becoming a Kentucky Colonel has become a joke for many people, but it has not to the Defendant.

Commissions must be issued more sparingly and harder to get, require documentation, photographs and background checks, unless they are going to restore the Colonel's Rights and Privileges to once again become the Official Nominators of New Kentucky Colonels, instead of ordinary citizens that were only recently afforded the privilege by Governor Andy Beshear.

Colonels should receive much more credit than they do for the Commonwealth of Kentucky and stop allowing the Honorable Order of Kentucky Colonels to take credit for the "actions of individual colonels" or distribute donations for individual colonels, here's why: Kentucky colonels all around the world are directly responsible for over 10 billion dollars per year in annual tourism income plus the Kentucky Colonel brought in more than 10 billion dollars more in 2022 in economic development revenue. We can even provide more detailed information if the court so desires. We can also show that

Kentucky colonels (individuals) are responsible for 70% of the counties, their names and the initial laws as well as courthouses of each county. All of this was accomplished without the HOKC, by individual Kentucky colonels themselves whether they use a Kentucky Colonel badge or an ID card or just by telling others they are colonels. Compared to the 20 billion dollars that the Kentucky Colonel is already responsible for generating, they do not need an organization diluting the Title, attempting to make it more famous than Colonel Sanders and others already have or by arbitrarily applying ideas to creating products that dilute it, like Colonel Sanders also did.

Kentucky colonels, that is, each Kentucky Colonel has a qualified right to the authority of the Honorable Title, these rights are guaranteed by the Commonwealth; completely and totally notwithstanding the **The Honorable Order of Kentucky Colonels, Inc. (*also known as* Kentucky Colonels)** or more popularly under the fictitious legal trademarks and service mark registrations 6939801, 6236898, 5981310, 6292185, 6286056, 4596450, 2812681, 1227024, and 4939909 as **KENTUCKY COLONELS®** are ambiguous and the organization's confusing behavior of registering over and over again the same identical mark for many different things *creates confusion for the Kentucky Colonel* and dilutes our existence as colonels, even more so now understanding the HOKC Origin has been proven to be a hoax passed-off as fact. By failure to use the Registered ® Symbol and use their full legal name when it should be used, they are ambiguating themselves with the English Language; even a legal semantic English linguistic professor will tell you, Kentucky Colonels is not Kentucky colonels or a Kentucky Colonel, there could be Kentucky Colonel's property or some Kentucky colonels', but a Kentucky colonel is a type of colonel, whereas the term "Kentucky Colonel" itself is a proper name and title which is a legal common-law mark (letters patent) of a colonel, we also know that 90% of all Kentucky colonels (individuals) do not subscribe to the Honorable Order of Kentucky Colonels rhetoric or ever send a donation for anything more than a new membership card for their wallet.

"The Honorable Order of Kentucky Colonels" needs a new name and a new business model that offers real membership as opposed to honorary free membership attached to a donation to have a wallet card. It is an organization based on some type of unknown order, but it is not a state order as the

Defendant previously believed. There is, nor has ever been a condition of the government to quid pro quo the nomination of a new colonel until Governor Matt Bevin which erroneously gave credence to the Honorable Order of Kentucky Colonels by deferring to their ex-officio authority as a fraternal order requiring a Kentucky Colonel to make a donation in order to access the privilege of making and nominating a new colonel, by another colonel. The problem was he paused in making colonels when he was elected as the governor, because he did not know anything about the idea of colonelcy and relied on an unqualified non-authority to learn, the Plaintiff, instead of doing his own research. Other governors have shown great deference to "The Honorable Order of Kentucky Colonels" due to their lack of background knowledge about the myth of 1813 they created.

## THIS APPEARANCE

This Court understands and recognizes the fact that I, Col. David J. Wright, was commissioned a Kentucky Colonel by the head-of-state here in the Commonwealth of Kentucky; it also understands that I am the general counsel, president, founder and executive director *for both* additional Defendants, which are non-profit organizations: **ECOLOGY CROSSROADS COOPERATIVE FOUNDATION** and **GLOBCAL INTERNATIONAL,** these two entities since January 30, 2020, are actually one in the same.

Globcal International (Non-State Network) is 80% cooperatively owned by Ecology Crossroads; the other 20% represents its members and their cooperative investments in the [globcal.net] decentralized publishing platform, it is a legal 'Assumed Name Corporation' or DBA of "**Ecology Crossroads Cooperative Foundation, Inc.**" in Madison County, Kentucky, the organization is a non-profit charity and was founded in 1994. **Globcal International** is a decentralized collective of members that provides professional services for Ecology Crossroads, they are connected globally in a virtual workplace, each member is designated in their own territory with an honorific title such as Goodwill Ambassador or Kentucky Colonel once they earn them. Both organizations today are operated by persons holding Honorific Titles and Official Titles such as Colonel, Arkansas Traveller, Ambassador, Goodwill Ambassador, Global Citizen, Georgia Colonel, Kentucky Colonel, Kentucky Admiral, and Rhode Island

Commodore among others, all of these titles are singular proper nouns as titles of living people with individual civil liberties and rights. All of the subject matter that the organizations deal with is manifested from the development of their Creative Commons and Public GNU content from the public domain prior to the year 1927, granted a free license or is a subject of the American news record.

**Globcal International is an online publisher**, this Court, the Magistrate Court, the Plaintiff and Counsel *are fully aware of the fact that it is my intention to publish a book* and *that I published a website about Kentucky Colonels in 1998*, this information was disclosed during the Court Mediated Settlement and was used as a bargaining chip to settle this matter previously, which was rejected by the Plaintiff. When my first website entitled Kentucky Colonels was published, 3 full years prior to the HOKC's appearance online, which is prior to, during and after the previous legal fiasco of false allegations, trumped up charges and misleading claims were all aimed and made by the Honorable Order of Kentucky Colonels against myself and other colonels (who are their so-called members) to diminish, interfere, strip and tarnish my legally entitled benefits, **"rights, privileges and responsibilities"** guaranteed to the Defendant by Governor Paul E. Patton as **"Honorable"** and yes, **a Kentucky Colonel** in 1996, completely independent of the HOKC and their fraternal society or charity, its recreational activities and commercial enterprise store most of which did not yet exist. Even this Court was reluctant to recognize me as a Kentucky Colonel due to the allegations in the HOKC's previous assault using the law, *until the very end* of the previous **dismissed lawsuit 3:20-CV-132**. They cannot be allowed a repeat performance before this Court, they must Appeal the Case! The previous action and this immediate action are both SLAPP type actions, that seek to interfere with Defendant's personal First Amendment Rights to congregate and socialize with other colonels, publish educational materials, and peacefully assemble in reverence to the First Kentucky Colonel Daniel Boone who founded Kentucky in 1775.

All the allegations are categorically false, based solely on trademark bullying by the Plaintiff overreaching their registration rights by ambiguating themselves with the public domain to cover up misrepresentation of the origin and speciously confuse the jurisdiction of their trademarks to meddle with the American English language and the state's heritage with a myth and creative work of fiction. There is

no evidence that shows any cause for this Court to find this Defendant in civil contempt of the Court Order or any violation of the Agreed Permanent Injunction; everything the Defendant is doing is legally defined as *different and cannot be misconstrued as infringement*. However, there is abundant evidence that shows the Plaintiff is directly contrary to the injunction (Paragraph 5) with more than 1,000 products through their store that are interfering with Defendant's common-laws rights and the rights of other Kentucky colonels under **the same law Title 15 U.S. Code § 1125 - "False designations of origin, false descriptions, and dilution forbidden"** as it applies to the public record in its very title; the Plaintiff and their activities are clearly documented and understood as recreational, philanthropic and of a fictional origin which has been **passed off as fact for over 80 years** intentionally misleading thousands to believe in their authority with fake generals that are not even real, one of those fraternal and ex-officio military things, somewhere between the Sons of Liberty and the Freemasons. This case once again is an attempt to stifle the Kentucky Colonel and continue to distort history and deny Kentucky colonels their rights from no position of authority whatsoever except for 9 identical ambiguous trademarks for different products which the Defendant is not infringing upon. This should warrant this court to make a ruling of non-infringement based on the facts presented by the Plaintiff which do not imply any wrongdoing, that is not consistent with the Agreed Permanent Injunction (an Equitable Consent Decree). The HOKC has bullied more than 10 different Kentucky colonels out of naming different products that do not infringe on their marks, this pattern of behavior and unnecessary conduct must be stopped or we will have to engage the assistance of Col. John Oliver or Col. Jimmy Kimmel which may soon file a class-action suit against the favorite charity of the Kentucky Colonel. No Kentucky Colonel is obligated nor can they be obligated to support the Plaintiff, unless they want a license plate, then there is a *quid pro quo*.

I believe the Court needs to hold a hearing based on my Motion for Dismissal at the expense of the Honorable Order of Kentucky Colonels, after all it is the Plaintiff that seeks the relief from the ambiguity of its own trademarks, its members are causing, its trademark licensee is causing, the Defendant is *perfectly happy* with the **Agreed Permanent Injunction** the way it is and is thankful for his ability to reconcile any doubts as to what the HOKC's trademarks really are is a fraud. Therefore at the request of

the HOKC considering the cost of the previous case, they should pay all required expenses of an integral trademark examination by three independent experts to examine our Title Mark use and their Nine Registered Trademark uses owned by the HOKC (without any public disclosure effort made) to file their recommendations with the court; all three should be provided all of the relevant briefed information from each party and this case by the parties. We are certain that the trademark experts will all agree that the Defendant's use of the term "Kentucky Colonel" is totally exclusive of any previous use and clearly different from those of the HOKC.

The Plaintiff cannot be allowed to continue to use its successful trademark with an S as a weapon of attack against the Honorable Title that does not use an S semantically in a court of law, if it is registered for non-semantic commercial or non-commercial use, the Registered Trademark is not the Title it is honorary membership, purveyed as a benefit and the various products for which it is registered to represent in fiction, it does not erase or hijack public history or fact without an act of congress. The Agreed Permanent Injunction provides all the legal purpose and guidelines to satisfy the requirement to better disambiguate the Honorable Title guaranteed by state governors to over 500,000 people independently of the HOKC and the HOKC Marks themselves under the Title 15 U.S. Code § 1125: "False designations of origin, false descriptions, and dilution forbidden" because that is the same law that prevents the Disney Company from passing-off Mickey as a real mouse and makes Disney use the ® Symbol to distinguish their trademark, it is very basic common sense, whereas Disney uses the ® Symbol, Disney's attorneys insist on its use to keep their trademarks accountable in law; the HOKC chooses not to follow this strategy to protect their marks, but likewise we are not infringing on them through the use of our Titles by forming a social enterprise that employs only colonels, especially considering we have colonels from all diverse ethnic groups, there is nothing we are doing wrong.

It makes no sense to trade off the fraudulent misappropriation of history or perhaps mistaken pseudohistory based on a drunken night before the Derby simply because of an excellent charitable record; at the end of the day the HOKC is still a good charity that is known as a magical, mystical, and mythical militia based on a vacated military order with both feet firmly planted in Gov. Ruby Laffoon's muddy

understanding at that time doing some highly unusual things without consideration of previous history over a fifth of Kentucky Colonel vintage bourbon from 1908.

This is a case where the Plaintiff must prove beyond any doubt that it is not the one that is confusing themselves with so many ambiguous trademarks for "Kentucky Colonels" objects and products meaning so many things that are not an actual Kentucky Colonel™ which represent the "Unregistered Trademark" of a real common-law Kentucky Colonel, which an organization cannot be in law. Considering as much as we have selected the common-law usage of the term as our title as a duly marked "Unregistered Trademark" cannot interfere with a "Registered Trademark" that uses the ®, nor can it be confused by any intelligent human being. Quite frankly based on everything the Defendant has read about the law, failure to use the ® Symbol makes the Honorable Order of Kentucky Colonels trademark KENTUCKY COLONELS weaker and less protected from fair-use or unauthorized use which recently began in 2021 with its own poorly regulated disconnected chapters that implicitly license their intellectual property from the HOKC. Failure to use the ® they bought and paid for makes their own use more ambiguous, the ® Symbol without the "s" or without is not trademarkable in its common-law or semantic usage. In accordance with the Agreed Injunction our use without the capital letter "C" of the word "colonel" with or without an "s" is always permitted

The entire purpose and rationale for involvement of the court in the first complaint and now this second complaint is to disambiguate the Honorable Order of Kentucky Colonels from programs and projects that I do with my friends and family, and have been doing since 1998, and started doing on Facebook at least 6 years *before the Plaintiff was using Facebook* which only serves its active members. The Defendant was even an active member when they sued him in 2020 a month after he paid a membership fee to get a new membership card in January, which provided no benefits under any membership bylaws with any rights. The HOKC did not even have the courtesy of providing a C&D Letter prior to filing 3:20-cv-00132 and having sent C&D letters in 2001, 2010, 2014 and 2016 which never resulted in lawsuits. This same type and class of complaint has been brought before this Court in the past by the Plaintiff (Kentucky Colonels v. Building Champions (aka Kentucky Colonels ABA Team),

now twice against us by a relentless trademark bully the abuse must stop and victims of their abuse must be compensated and restitution must occur. The HOKC has not apologized for any of its errors in their decisions to harm others with their trademarks and are not using them in accordance with law, they must be reprimanded for these abuses of their rights using the law, their activities dilute the Honorable Title and a solution for them and for us is the Agreed Permanent Injunction, unless it can be improved by the court to add specifics details regarding public domain, Creative Commons and the First Amendment of the United States Constitution, perhaps something else that favors our copyright from 1998 to the First Published Account of the Kentucky Colonel with our rights clearly detailed by the Electronic Frontier Foundation, if that would please this Honorable Court.

The Agreed Permanent Injunction states:

> "Notwithstanding the aforestated prohibitive terms and conditions, this Agreed Permanent Injunction does not prohibit the **Defendant, <u>Col. David J. Wright</u> or other Kentucky colonels (as individuals) from using "Kentucky Colonel," "Kentucky colonels" and/or "Kentucky colonelcy"** as words or terms to describe Kentucky colonels, *as an a honorary title*, or for editorial, educational, informative, journalistic, literary or other non-commercial purposes so long as the use is not related to the trademark or service mark uses registered, or pending, [at that moment in time] by the HOKC with the U.S. Patent and Trademark Office.

The Agreed Permanent Injunction does not prohibit the Defendant from establishing a professional group of Kentucky Colonel Title holders engaged in cooperative business and/or private joint investment enterprises, publishing, filmmaking, promoting documentaries or establishing a cannabis company especially for people that are a Kentucky Colonel no matter how many trademarks the Plaintiff owns. The Plaintiff is misinterpreting and stretching its legal rights beyond the actual scope of the statutory law that the Agreed Permanent Injunction was developed to better define, constrict and limit which settled the previous controversy. It is likely that this controversy can only be settled and justice may only be served when a Declaratory Judgment is made by the Court with strict compliance to the statutory law, defining the parameters of the Plaintiff's marks with full-consideration for the judicially noticeable adjudicative facts being presented in a separate motion.

## PLAINTIFF INTENTIONALLY MISNAMED DEFENDANT

Rule 15(c) addresses "'the problem of the misnamed defendant.'" *Rendall-Speranza v. Nassim*, 107 F.3d 913, 918 (D.C. Cir. 1997) (quoting Fed. R. Civ. P. 15 advisory committee's note). Rule 15(c) explicitly requires that the party to be brought in by amendment "knew, or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party." This language presupposes that "'the reason for [a defendant] not being named was a mistake of identity.'" *Grigsby v. Johnson, Civ. A.* No. 95-213 (TFH/DAR), 1996 WL 444052, at *5 (D.D.C. May 14, 1996) (quoting *Cornwell v. Robinson*, 23 F.3d 694, 705 (2d Cir. 1994)). The rule permits a plaintiff to correct the situation where the proper, but misnamed, defendant is before the court, not the situation where "the plaintiff fails to originally name a defendant because he lacks knowledge of [his] identity[.]" *Id. See also Roberts v. Michaels*, 219 F.3d 775, 777-78 (8th Cir. 2000) (holding that "[t]he district court erred in failing to consider the well-recognized distinction between a complaint that sues the wrong party, and a complaint that sues the right party by the wrong name")

The Plaintiff is not a stranger to the legal standing of a Kentucky Colonel, they have formed their organization around the idea of one, and it also understands that this case and every element of it, is a case between it as a corporation and has recognized the Defendant as a Kentucky Colonel. This membership acknowledgement is signed by a Commanding General (more fiction that the Plaintiff wants its member (donors) to believe which is a false designation of origin). **[Exhibit 1]**



Exhibit 1: Fictitious membership acknowledgement from Plaintiff for Defendant

It should be abundantly clear to the US District Court that the counsel for the Plaintiff, knowing that the Defendant is a Kentucky Colonel fails to recognize that David J. Wright is a Kentucky Colonel, has made donations and is their member, despite the Court Ordered "Agreed Permanent Injunction" reaffirming the fact is most deliberately done in a stroke of bad-faith and fails international diplomatic protocol witnessed before this very Court, it is also distractive from this particular case because of the legal standing of the Defendant. It is a violation of customary law, common-law and Kentucky traditions not to address the Defendant as **"Col. David J. Wright"** considering **they have been since 1998** in correspondence with the same Defendant.

In Kentucky dating back to the early days of its founding a "Colonel" could represent the Commonwealth as Honorable in a court of law. The Colonels were responsible for the designation of the first governor and the creation of the first government; they selected the justices, coroners, clerks and sheriffs of the state's original nine counties; the colonels created the capitol, wrote the constitution, built the courthouses and went on to make nine (9) counties into one hundred and twenty (120). Evidence that the Kentucky Colonel Commission exists and that it beholds ex-officio powers (i.e. "rights, privileges and responsibilities) or special significance that cannot be emulated by the Plaintiff is illustrated today in **Kentucky School Laws**, most recently in 2022: "Accepting a commission as a Kentucky colonel while

holding a state or local office would not create an incompatible situation. No incompatibility would exist if a notary public were to hold another public office." *OAG 70-607*. In 2022, candidate for District Court Judge, Col. William Leger said on Facebook;

> "The commission of Kentucky Colonel is the highest title of honor that the governor of Kentucky can bestow. It's given in recognition of outstanding service to our community, our Commonwealth, and/or our Country. I am proud to have received my commission several years ago. Last night I had the opportunity to present Julie and John Enneking with their commissions on stage at historic Renfro Valley in front of a sold out crowd! A couple Years ago I was also fortunate enough to have presented Jamey Johnson his commission on the same stage."

## CASE OR CONTROVERSY CONTINUES

In preparing for the Settlement Conference the Defendant performed additional research on the history Kentucky colonelcy and investigation into the case against him and came to the understanding, that <u>no private or court supervised settlement between the parties</u> will properly serve justice, protect the interests of over 250,000 living Kentucky colonels, preserve the integrity of American literature and history or properly address the corruption which has occurred that risks the ethical standards and persons of the offices of the Governor and the Secretary of State in the Commonwealth through the ambiguity and confusion created by the Plaintiff.

Therefore, Defendant may seek a declaratory judgment asserting facts discovered in the public realm of knowledge through the litigation process of this lawsuit to eliminate the *legal fiction* created by the Plaintiff understood by the Court as fact prejudicing the Defendant and to cancel the mistaken fraudulent registration applications submitted to the USPTO which erred based on unknown historical facts compelling *overwhelming evidence* to be brought forth herein, that Plaintiff has refused to acknowledge, disclose, recognize or understand. In their blissful ignorance and reckless disregard of history and justice in bad-faith the Plaintiff has attempted to suppress historical evidence in hundreds of books, newspapers and American literature Refusal to recognize the deliberately published content

presented on the Defendant's website **[Exhibit 2 See https://www.kycolonelcy.us/]** that dispute the Plaintiff's rights to continue their farce; instead of trying to confound the dispute alleging contempt using data harvested from private forums. The case against the Defendant is now a controversy against, created and ignited by the Plaintiff.

Ever since the U.S. Supreme Court in *MedImmune, Inc. v. Genetech, Inc.*, 549 U.S. 118, 127 S, Ct, 764, 166 L. Ed.604 (2007) courts have considered a wide variety of factual circumstances in deciding which meet the Court's redefinition of "controversy." To state that this case does not involve a controversy would be unjust to the Defendant, the public and a violation of statutory law. The Declaratory Judgment Act provides that "[i]n a case of actual controversy within its jurisdiction…any court of the United States…may declare the rights and other legal relations of any interested party seeking such a declaration, whether or not further relief is or could be sought." See Title 28 U.S. Code § 2201(a).

In *MedImmune*, the Court noted that it had explained in prior opinions that the "case of actual controversy" language in the Act refers to the U.S. Constitution's Article III's case-or-controversy requirement, and that a "controversy" under the Declaratory Judgment Act did not require any greater showing than that required under Article III. The Court clarified that declaratory judgment jurisdiction required disputes to be "'definite and concrete, touching the legal relations of the <u>parties having adverse legal interests</u>'; and that it be 'real and substantial' and 'admit of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.'" 127 S. Ct. at 771. Or, as put another way, "[t]he question in each case is whether the facts alleged, under all circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of <u>sufficient immediacy and reality to warrant the issuance of a declaratory judgment</u>." *Id.*

In general, declaratory judgment jurisdiction should be exercised only when the declaratory relief sought: (i) is not premature, (ii) "will serve a useful purpose in clarifying and settling the legal relations in issue," (iii) "will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding," and (iv) is not being used merely as a procedural device for a declaratory judgment

[movant] to select the choice of forum. *Aetna Cas. & Sur. Co. v. Ind-Com Elec. Co.*, 139 F.3d 419, 422 (4th Cir. 1998) (citations omitted).

The Act's purposes are better served by encouraging parties to attempt resolution of disputes prior to initiating litigation, and, therefore, in the circumstances at bar, the exercise of jurisdiction runs counter to the policy of (i) encouraging settlement of disputes prior to litigation and (ii) preventing parties from using declaratory judgment actions as a tool to strengthen a negotiation position or to preempt claimant's choice of forum. The Sixth Circuit applies a five part test for cases decided at the District Court level: (1) whether the judgment would settle the controversy; (2) whether the declaratory judgment action would serve a useful purpose in clarifying the legal relations at issue; (3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race for res judicata"; (4) whether the use of a declaratory action would increase the friction between our federal and state courts and improperly encroach on state jurisdiction; and (5) whether there is an alternative remedy that is better or more effective. *Allstate Insurance Co. v. Mercier*, 913 F.2d 273, 277 (6th Cir. 1990). *Scottsdale*, 211 F.3d at 967 (citations omitted). The court suggested that the fourth factor is best analyzed by tackling three additional sub-factors: 1. whether the underlying factual issues are important to an informed resolution of the case; 2. whether the state trial court is in a better position to evaluate those factual issues than is the federal court; and 3. whether there is a close nexus between the underlying factual and legal issues and state law and/or public policy, or whether federal common or statutory law dictates a resolution of the declaratory judgment action. *Id* at 968.

**MOTION TO DISMISS**

The Defendant respectfully moves this Court to dismiss the verified complaint and accept this Motion to Dismiss for Failure to State a Claim under Fed. R. Civ. P. 12 (b)(6), a final order and/or such other relief as appropriate to reimburse my legal consultation expenses and research to defend this action. Defendant moved with **[DN-17]** to demonstrate factual evidence and judicially notice adjudicative facts so the Court may declare non-infringement, non-dilution, and so movant may show relevant cause with

reasonable apprehension of continuing damages making it necessary to review more than 5,000 pages of transcripts and case filings to settle this controversy as a matter of statutory law to disambiguate the English language and Kentucky history so that the Plaintiff's Intellectual Property cannot be used semantically to harm the heritage of the state or the public domain where it originated from. Defendant's Motion for Dismissal states as follows:

Defendants Col. David J. Wright and Globcal International, a subsidiary of the Ecology Crossroads Cooperative Foundation as the founder on their behalf, hereby move this Court for an order dismissing with prejudice Plaintiffs' Verified Complaint, "3:23-cv-00043-RGJ" (the "Complaint").

The Complaint should be dismissed for any of the reasons stated herein, or the reasons stated in Defendant's Motion to Take Judicial Notice of Adjudicative Facts [DN-17] and if it would please this Court to hold a hearing on this matter the Defendant is willing to prepare a Memorandum of Points and Authorities. First, Plaintiffs lack Article III standing, and additional references why the Complaint should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction. Second, the Complaint fails to state a claim upon which relief can be granted and therefore should be dismissed under Federal Rule of Civil Procedure 12(b)(6).


Respectfully submitted in good-faith,

Rio Orinoco, Colombia
Dated: March 27, 2023

Col. David J. Wright
david.wright@globcal.net
+1 (859) 379-8277

**<u>Certificate of Service</u>**

I hereby certify that on March 29, 2023, I re-emailed for filing the foregoing motion with attachments to the Clerk of the Court for the United States District Court of the Western District of Kentucky using the special Pro Se Intake Email per General Orders 20-04 and 20-11 for entry to the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Clerk's Office
601 W. Broadway, Rm 106
Gene Snyder United States Courthouse
Louisville, KY 40202