FILED

JAMES J. VILT JR., CLERK
U.S. DISTRICT COURT
W/D OF KENTUCKY

Date: _____Apr 24, 2023_____

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

|  |  |
|---|---|
| **KENTUCKY COLONELS ®** Plaintiff  vs.  **COL. DAVID J. WRIGHT, et.al.** Defendant | Civil Action No. 3:20-cv-00132-RGJ  **EMERGENCY MOTION FOR EXPEDITED CONSIDERATION AND RELIEF TO AVOID IRREPARABLE HARM AND DAMAGES**  **DEFENDANT'S RESPONSE TO ORDER TO SHOW CAUSE [DE-105] AND MOTION TO HOLD PLAINTIFF IN CONTEMPT OF SETTLEMENT** |

## DEFENDANT'S RESPONSE TO COURT ORDER [DE-105], COUNTER-RESPONSE AND OPPOSITION TO PLAINTIFF'S RESPONSE TO THE COURT'S SHOW CAUSE DIRECTIVE, AND MOTION TO CHARGE PLAINTIFF FOR CONTEMPT

COMES NOW, **Col. David J. Wright**, ("Defendant") a Kentucky Colonel, in *pro se* and *in forma pauperis* pursuant to Federal Rules of Civil Procedure 7, 11 and 57, Title 28 U.S.Code §§ 2201, 2202, Title III of the United States Constitution, First and the 14th Amendment, understanding this Honorable Court on February 23, 2021 when similar allegations were **dismissed with prejudice, in-law, without any finding in law, justly and under an equitable confidential court mediated settlement agreement to evade and prevent this Court from hearing "Defendant's Answer and Affirmative Defenses" [DN-62], "Defendant's Motion for Judgement on the Pleadings" [DN-65] and consider a pending "Motion for a Declaratory Judgment" [DN-82] to cancel the Plaintiff's pending and registered trademarks in Case 3:20-cv-00132-RGJ and to prevent Defendant's "Opposition and Protest Proceedings to Plaintiff's Trademarks in the USPTO, Trademark Trial and Appeal Board."**

None of the timely filed motions made by the Defendant were considered or heard by the Court because the Plaintiff wanted to settle the case which was concluded in the Settlement Conference (2020).

## EMERGENCY MOTION

A **Court Mediator's Proposal** executed by the Parties **[Agreement Exhibit 1]** which is <u>not a part</u> <u>of this "Public Case File"</u> (and not a sealed document) is hereby being introduced to stop the Plaintiff from continuing to damage and harm the Defendant's reputation and a non-profit charitable organization he founded in 1994 with overreaching false allegations, attacking his First Amendment Rights and directly targeting his public participation within the civil society at-large. It is an **Emergency Motion** because <u>the</u> <u>integrity and terms of the **[Confidential] Court Mediator's Proposal** have **never been met** by the</u> <u>Plaintiff,</u> the Court manifested agreement is recklessly and wantonly being directly attacked by the Plaintiff in the disguise of a lawsuit as if the document did not exist. The Plaintiff with its counsel is a wolf dressed in sheep's clothing, together they are inflicting great damage on the Defendant with commentary in the social media, email to members and in the news **[Email Exhibit 2]** and **[News Release Exhibit 3]** with its allegations of wrongdoing on the part of the Defendant and claims of the Defendant's common-law intellectual property which is protected by this Court Mediated Settlement Agreement. The Defendant believes that the Mediator's Proposal (preceding settlement) is **contractually obligated by the Court to the Agreed Permanent Injunction and is actively being overlooked by the Plaintiff and this Court**; this new adversarial, ambiguous and overreaching complaint of 1,100 pages (casting a wide-net), its conversion into this case, the directive to show cause in this case, and contempt hearing are all outside the Court Mediator's intended guidelines creating extreme austerity for the Defendant which since January when he was being accused publicly of deception and fraudulent activity by the Plaintiff; viable legal avenues and remedies of the Plaintiff for any equitable or mutually agreed remediation and resolution of an Agreed Permanent Injunction must be within the terms of the Mediator's Proposal (which does not warrant a new case, much less a SLAPP suit) and it does not warrant a social media announcement and news release accusing the Defendant of outrageous new claims based outside the terms of the settlement.

This new complaint **"Kentucky Colonels 2"** never should have been filed, because it does not agree with the **Court Mediator's Proposal**, the Court must dismiss this case again and order the Plaintiff to refile an appropriate motion to amend, appeal or modify the Agreed Permanent Injunction to be more restrictive (against itself statutorily for clarity). This Defendant **has not violated the Agreed Permanent Injunction or the Confidential Mediator's Proposal**, the Plaintiff does not present a *prima facie* case for infringement, confusion, or dilution against any one else but itself, with its *nine distinctive trademarks* for nine different things that the Defendant does not claim to be the source of any of them. If the Plaintiff had a *prima facie* case then there would be statutory first-rate evidence.

The **Agreed Permanent Injunction needs to be amended based on the Parties equitable compliance with statutory law** that defines clearly the Plaintiff's rights and defines its limitations which are more numerous and specific under the Lanham Act than the Copyright Act. The laws and terms by which the Plaintiff must comply with *as a registered trademark owner* are more restrictive than Unregistered Common-Law Trademark Rights or the Rights of Unincorporated Civil Associations, Authors, Comedians, Cynics, Critics, Entertainers, Historians and the Defendant. This may require appointing a "special master" to this case to keep the allegations of the Plaintiff within context. Any such amendment will require actual examples and limitations under US Code Statutes within the amendment.

**15 U.S. Code § 1125 - False designations of origin, false descriptions, and dilution forbidden:**

**Exclusions** (c)(3) The following <u>shall not be actionable as dilution by blurring or dilution by tarnishment</u> under this subsection:

(A) Any fair use, including a nominative or descriptive fair use, or facilitation of such fair use, of a famous mark by another person <u>other than as a designation of source</u> for the person's own goods or services, including use in connection with—

(i) advertising or promotion that permits consumers to compare goods or services;

(ii) identifying and parodying, criticizing, or commenting upon the famous mark owner or the goods or services of the famous mark owner.

(B) All forms of news reporting and news commentary.

(C) Any noncommercial use of a mark.

**Burden of Proof** (c)(4) In a civil action for trade dress dilution under this chapter for trade dress not registered on the principal register, the person who asserts trade dress protection has the burden of proving that—

(A) the claimed trade dress, taken as a whole, is not functional and is famous; and

(B) if the claimed trade dress includes any mark or marks registered on the principal register, the unregistered matter, taken as a whole, is famous separate and apart from any fame of such registered marks.


It is an **Emergency Motion** because the confidentiality of the entire settlement conference, six hours of mediation with a Magistrate Judge, competent mediation negotiations would not be protected if this contentious controversy under the terms of the Mediator's Proposal (Agreement) which treated the Defendant equitably and was aware of Defendant's social media assets and new potential website names is the issue. The Plaintiff is bullying the Defendant with this case, the Plaintiff has never recognized the equity created under the Agreed Permanent Injunction when it is combined with the Court Mediator's Proposal. This new case in its entirety violates Kentucky Anti-SLAPP Legislation enacted in 2022, this will come as another special motion if this case is continued. The Plaintiff is making a "big stink" and "bullying" the Defendant (placing him under duress with this legal action) to abandon ideas, derail initiatives, and/or force him to relinquish his intellectual property through hegemony; moreover alienate him through communications with other members of the public causing Defendant to suffer from irreparable defamation of character, which is directly contrary to the purpose of Court Mediator's Proposal which became a Confidential Agreement between the Court and the Parties when the Agreed Permanent Injunction was signed and filed by the Defendant and Plaintiff.

## WRITTEN APPEARANCE AND ARGUMENT FOR APRIL 25, 2023 HEARING

Defendant, **COL. DAVID J. WRIGHT**, herein APPEARS before this Court to exercise his civil rights and defend his warranted legal constitutional "rights, privileges and responsibilities" as a Kentucky Colonel, commissioned and recognized as "Honorable" within the Commonwealth of Kentucky by Former Governor Col. Paul E. Patton in 1996 for providing one million trees to the people of North Carolina following Hurricane Fran through his Kentucky non-profit charitable organization, the Ecology Crossroads Cooperative Foundation. It is the policy of Ecology Crossroads and its cooperative Globcal International (2009) to work only with people that have an "Honorable Title" for their role, or position within the organization such as a Goodwill Ambassador, Kentucky Colonel or a Global Citizen.

The DEFENDANT seeks a GENERAL RESTRAINING ORDER against the PLAINTIFF FORTHWITH and REQUESTS the COURT hold the PLAINTIFF RESPONSIBLE FOR CIVIL CONTEMPT, DAMAGES and FAILURE TO COMPLY WITH THE **CONFIDENTIAL MEDIATOR'S PROPOSAL** that PRECEDES THE AGREED PERMANENT INJUNCTION. The DEFENDANT requests the COURT SANCTION PLAINTIFF COUNSEL for lack of due diligence and failure to comply with the Court Mediator's Agreement implied and redacted by this Court.

The Defendant seeks the Court grant relief for the equivalent of reasonable attorney's fees for hardship created defending this case since it began in the amount of $50,000 USD (approximately 10% of the total amount billed to Plaintiff by their counsel since 2020) and believes the Plaintiff should pay all current associated Court costs and time in this matter because of the bad-faith and ill-will of its overzealous counsel's rambunctious attack made upon the Defendant(s) with a SLAPP suit diminishing the capacity of the Defendant's organization publicly, causing irreparable damage to Defendant and his program developments, it is an action that must be compensated for, quashed and vacated to restore the equity of the **Court Mediator's Agreement**. The question arises as to whether the Plaintiff's counsel signed the Mediator's Proposal as a formality and never actually delivered it to the Plaintiff? The Plaintiff is building a house of straw next to a fire while begging the question, it cannot show good cause for its

own actions and violations against condition number five (5) the injunction **[DE-93]**, rationale for overreaching its own boundaries or any reasonable motive for its contempt of the Confidential Court Agreement based on its own suspicions of the Defendant's activities or growing popularity (which stopped when the new case was filed and emails were distributed to nearly 100,000 individuals.). Further because this case has targeted and effectively restrained the Defendant's civil (human and international) rights as a published author (and presumed legal member of the Plaintiff's organization for 25 years) during a period several months in 2020; the new case seeks to remove the Defendant's constitutional rights again to address grievances and freedom of speech; therefore the Civil Rights Attorney's Fees Award Act of 1976 applies here as a matter of law in the United States codified in 42 U.S.C. § 1988(b). It is often referred to as "Section 1988." It allows a Federal court to award reasonable attorney's fees to a prevailing party in certain civil rights cases involving the First Amendment and a US Citizen's Civil Rights.

When a **[DE-1] Verified Complaint against someone is litigated, presented and ripened, then dismissed with prejudice the Defendant has obviously prevailed**. It is too late for the sore loser, the Plaintiff jumped the gun and repeated the SLAPP litigation technique again to isolate the Defendant causing greater and more significant damage based on several emails and announcements to 10's of thousands of colonels warning them about the Defendant and hazing the Defendant by name, resulting in threats of vengeance and violence by the Plaintiff's so-called members on Facebook and by email. The Defendant is now entitled to this email list, because emails were sent with ill-will contrary to the terms of the Settlement Agreement.

## REQUEST TO APPOINT A SPECIAL MASTER

ALTERNATIVELY or INCLUSIVELY, the Defendant requests that the COURT designate a "Special Master" (former trademark examiner) as an ARBITER or EXPERT for REMEDIATION of the AGREED PERMANENT INJUNCTION (if the case returns to mediation) under STATUTORY LEGAL GUIDELINES to **better disambiguate the nine distinct registered trademark rights of the Plaintiff and better define the more liberal fair-use common-law rights Defendant retains under state**

**common-law statutes, the Copyright Act and the Lanham [Trademark] Act**. It is most likely that *only a court-selected expert* can distinguish, examine or policize the actual use or non-use of a legal trademark that is unmarked with the ® symbol (*see* 15 U.S. Code § 1111), properly marked with the ® symbol, fair-use of a trademark, common-law use, descriptive use, nominal use, generic use, parody use, satirical use, educational use and that which is considered informative or newsworthy use; then further who is entitled to use an unregistered title mark or trademark (™) and determine other non-infringing use under the Copyright Act and Common-Law. **[Exhibit 4] is not a convincing legal disclaimer or notification.** Courts are fully aware that only a Registered Trademark can infringe on an Unregistered Trademark using ™, not vice-versa. The **remediation process of the equitable and mutual injunction should be paid for by the Plaintiff**, because it alone has raised the outrageous question as to the Injunction's effectiveness (spending tens of thousands of dollars to file a new SLAPP suit) despite Defendant changing his background story narrative to the year 1775 and perspective of the ideal of the Kentucky Colonel in February 2021, the Plaintiff says the Defendant is infringing despite the Defendant being a Kentucky Colonel under the Common-Law of the Commonwealth of Kentucky. The Plaintiff's shenanigans are a vile attempt to falsely impeach and restrict the Defendant's Creative Work and civil rights within the United States with allegations, fabrications and inconclusive evidence for their own exploitation. The Plaintiff has a duty as a trademark holder to transparently and publicly disambiguate their legal trademarks *which has never been done*, instead it freely uses all of its trademarks for nine different things ambiguously (and for other things) as if they were a single mark without disclaimers and extends their rights to a greater gamut of products and ranges of services it believes it has an exclusive right to, such as to make or sell bourbon **[See HOKC Official Trademark Notice on Website Exhibit 4]**. The Plaintiff organization claims that it knows little or nothing at all about the subject of Kentucky Colonelcy prior to 1931, whereas the Defendant claims there are 5,000 news articles that were published in the public domain from 1775-1927. Perhaps only a "special master" can delineate all of these variables including the times in history when the "Kentucky Colonel" became famous during the 19th century.

**COURTS DO NOT REOPEN MOOT CASES ONCE DISMISSED**

This HOKC Case is a classic moot case based on an allegory of fictitious statements as "assumed facts" dressed in the sophisticated trappings of a bona fide lawsuit, this was clearly understood when the case was mediated by the Court and settled by the Parties; the damages being claimed now by the Plaintiff are based on planned emergent activities of the Defendant(s) that are not within the scope of violating the Plaintiff's intellectual property rights statutorily, the Defendant's historical narrative is distinctly different from the Plaintiff, and is relative to the semantic origin. An attempt to obtain a judicial ruling on a hypothetical question by this method should be dismissed as soon as the collusive character of the proceeding becomes known to the court. as was this case previously on October 06, 2020, when this Court delayed in hearing the Defendant's answer, affirmative defense pleadings and a timely motion which were all set-aside when the Court ordered the Parties to engage in meaningful settlement discussions **[DE-69]**. In addition to the constitutional requirement, an obvious consideration of public policy dictates this result, the Plaintiff cannot stop the Defendant from writing his book, getting pages sponsored by other colonels or seeking funding for his book, creative works (or this lawsuit defense) through unique new creative program developments (spontaneously created new intellectual property that do not infringe on the Plaintiff) with the nearly 4,000 members of his private Facebook groups established in 2007 and 2009 (*social media assets and websites retained in settlement*). It is only in the atmosphere of an honest dispute involving actual, present and real facts that a court can function with propriety and justice. The adversary character of a United States District Court proceeding is a "safeguard essential to the integrity of the judicial process." *United States v. Johnson*, 319 U. S. 302, 305 (1943).

"[A] moot case is one which seeks to get a judgment on a pretended controversy, when in reality there is none, or a decision in advance about a right before it has been actually asserted and contested, or a judgment upon some matter which, when rendered, for any reason, cannot have any practical effect upon a then existing controversy." *Ex parte Steele*, 162 Fed. 694, 701 (N. D. Ala. 1908).

A case may involve actual facts and still be dismissed as moot because it seeks the court's advisory opinion. Cases in this category most often *involve the theoretical invalidity of a statute*. The facts may be real enough, and the parties may differ strenuously in their interpretation of the law, but the difficulty is that no justiciable controversy has yet arisen. The case is premature, generally because the actual rights of the plaintiff have not yet been invaded or threatened with invasion by the Defendant. The Plaintiff reacted to the Defendant expanding on his common-law rights over the course of 18 days in 2020 by applying for three new trademarks before bringing this suit; all three were initially rejected by the USPTO.

**The basic requirement that a lawsuit must be controversial in character is obviously lacking where the "opposing" parties are "not truly adverse" to one another.** This classification subdivides into two groups: cases in which both sides of the litigation are under the control of the same person; and cases in which the plaintiff actually has no real interest.

Before this case can be continued the Court must recall the actual source of the first "Colonel" in title (in-law) that appeared within the US District Court in Kentucky since 1789; then it must determine if the "Honorable Order of Kentucky Colonels" possesses any rights at all over an idea that was created and used by thousands (almost exactly) 100 years before they were initialized in 1933 by Governor Laffoon; in Defendant's Motion to Take Judicial Notice **[DN-103]** the term is coined during 1833 in London. Seven years later in 1840 vice-presidential candidate Col. Richard Mentor Johnson was being referred to as a "Kentucky Colonel." The Court must also determine whether the corporation *has any rights at all* over another or other Kentucky Colonel(s) that do not prescribe to its philosophy or represent its values, but moreover whether a corporation can depose a Kentucky Colonel in the Commonwealth about a colonel's use of this term in any form that is not employed as a trademark, but a title mark and signature line for a Kentucky Colonel (a person) not an organization and the Office of the Kentucky Colonelcy. It is not a crime or any violation of the Plaintiff's rights within the terms of the Injunction or Statutory Law for the Defendant to believe, foster ideas and promote the fact that "Col. Daniel Boone" was/is the "First and Original Kentucky Colonel" it is a popular idea that was authored, conceived, discovered, hypothesized and proven by the Defendant in research carried out in 2020 as a result of this case for inclusion in a book,

documentary and educational website. It is also an idea that is completely different than ever to the Plaintiff, their trademark and their logo for 1813; especially since the Defendant discovered the first source of a Kentucky Colonel to actually be Boonesborough in 1775. The "Kentucke" land map made by John Filson around 1784 definitively pinpoints place names which include the property of "Colonels" such as Col. Isaac Shelby and Col. Daniel Boon. This discovery narrative from the public domain belongs to and is credited to the Defendant.

If the Defendant were to start the "Kentucky Colonel Cannabis Company", "Kentucky Colonel Corn" or patent the "Kentucky Colonel" cannabis variety based on its genetic code; the Plaintiff would still bring a lawsuit despite not having a claim in an attempt to disrupt and interfere with the advancement of the legal activity to claim it may, has or will damage its reputation. The title "Kentucky Colonel" can be applied to many products and has been since the 1870s until the Plaintiff in 2001 began to beat down the users of the term, as they have in Federal cases with Heritage Tobacco, the Neeley Family, Kentucky Colonels Basketball, the Eastern Kentucky Colonels some with greater success than others, the Plaintiff has engaged or threatened all these parties and many others including two beer types named Kentucky Colonel Ale and Kentucky Colonel Draft Beer. The Plaintiff is a trademark bully, even the Coca-Cola ® Company permits the use of Santa Claus when the infringer is not selling soft drinks or water! So let's start to compare the Kentucky Colonel" with "Santa Claus" considering in 1934 Governor Ruby Laffoon (HOKC Founder) commissioned "Santa Claus" as a Kentucky Colonel, this is a fact! The Court must also now consider "who may use those things created by elected officials in office?" and "if those things belong to the public domain?". Nearly all of the cases they bring become "moot" eventually normally by reaching an understanding.

**ORDER [DE-105] DEFIES MEDIATOR'S AGREEMENT AND SETTLEMENT CONFERENCE**

The **Confidential Court Mediated Settlement Conference** which resulted in an **Agreed Dismissal Order** and **Agreed Permanent Injunction** included *court mediated* inter-party negotiations, intellectual property belonging to the Defendant over 22 years (ie. first website copyright published in

1998, first-use in e-commerce in 1999 and first-use on Facebook in 2007 and 2009 - facts acknowledged in confidence by this court), the Plaintiff's trademarks and service marks, pending USPTO registration opposition and protest proceedings, Internet domains, issues mediated and social media assets which the Plaintiff waived their interest in under the confidential seal of the Court Mediator, Magistrate Judge Regina S. Edwards on December 29, 2020, **[Exhibit 1]** where disclaimers, discussions, mediation, negotiations, offers and waivers that were considered and realized during the conference by the Defendant and the Plaintiff. **"Confidentiality of mediation communications and information is essential to its validity and effectiveness."** *In re Teligent, Inc.*, 640 F.3d 53, 57-58 (2d Cir. 2011). It promotes a candid flow of information between defendants and plaintiffs that informs the Court Mediator of issues and concerns which, if resolved, could lead to settlement. The Plaintiff agreed that the Agreed Permanent Injunction: "is not an admission by Defendants of any liability nor is it an admission by Defendants that Plaintiff has any rights against it." *Mediator's Proposal 3:20-cv-00132*.

Confidentiality is at the heart of a mediation session and is critical to a successful resolution. The parties must be assured that they can share sensitive information at the session, where it is necessary to see that their true needs and interests may be met, without fear of subsequent disclosure to their detriment. Such confidentiality plays an important role both in the joint sessions involving all of the disputants at the mediation session, as well as in private caucuses which the mediator may have with one or more of the parties during the course of the session. A mediator will seek openness and candor, particularly in such private caucuses, and it is often confidences that are shared in these private caucuses that are most helpful to the mediator in assisting the parties in sculpting a resolution that meets the needs of all parties involved.

The confidentiality of a mediation process is protected, in varying manners, *by the terms of the mediation agreement signed, by statute or in-law with the Court*. Mediator's Proposal **[Exhibit 1]** (not part of the case record) was signed prior to fully resolving the action **"The Honorable Order of Kentucky Colonels, Inc. v. Kentucky Colonels International, et al., Civil Action No. 3:20-CV-00132-RGJ-RSE"**. The **Mediator's Proposal** is a legal document that became an effective agreement once the Agreed Permanent Injunction was in place; now evidence that this case was concluded

and settled (without fault of the Defendant), in exchange for the Defendant not seeking the cancellation of Plaintiff's trademarks in the USPTO or moving forward with **DN-62, DN-65 and DN-82**. The Plaintiff failed to carry out its responsibilities and reneged with regard to the Mediator's Proposal as specified: "Upon execution of the Mediator's Proposal and entry of the Agreed Permanent Injunction and Agreed Order of Dismissal, Plaintiff agrees to post an announcement on its website and public social media pages stating that the claims made in the Civil Action have been resolved through a mutually agreed settlement and that the Civil Action has been dismissed[]"; instead the Plaintiff made it appear as if it won the case by concluding that the Temporary Injunction was preserved and that the Defendant(s) remained at fault for the case/controversy as the cause **[Exhibit 6]**. The Plaintiff failed to "acknowledge that agreement to the Mediator's Proposal is not an admission by Defendants of any liability nor is it an admission by Defendants that Plaintiff has any rights against it" *Id.* and further "Plaintiff agreed that there will be no interference with any book [or other publishing activities] Defendants wish to publish regarding the history of the Kentucky Colonel, Kentucky colonels or Kentucky colonelcy so long as the terms of the Agreed Permanent Injunction are abided by." *Id.* The only perceptible winner of "Kentucky Colonels 1 Case" was Col. David J. Wright simply because the case was *dismissed with prejudice* based on an Agreed Permanent Injunction. Now that "Injunction" is being misconstrued, misinterpreted and mistaken as a restrictive order against the Defendant or something else that it is not, because it also serves as an order that equally restricts the Plaintiff, its agents, its licensees, its members, and followers from unlawfully usurping the Defendant's rights which permit "the Defendant, Col. David J. Wright [and/] or other Kentucky colonels (as individuals) from using "Kentucky Colonel," "Kentucky colonels" [and/] or "Kentucky colonelcy" as words or terms to describe Kentucky colonels, as an a honorary title, [and/] or for editorial, educational, informative, journalistic, literary [and/] or other non-commercial purposes *so long as the use is not related to the trademark or service mark uses registered, or pending, by the HOKC with the U.S. Patent and Trademark Office.*" **[DE-93]** *(emphasis added)*

## ORDER [DE-105] DISREGARDS DEFENDANT'S EQUITABLE RIGHTS

The Court has mistakenly prejudiced the background of this case **[DE-105]** as being previously set forth in the Court's Order granting HOKC's temporary restraining order **[DE 32]** (which limited the Defendant's civil and constitutional rights to publication temporarily) because the case was actually dismissed with prejudice under a Magistrate's Mediator's Proposal. The Court is in error to say it "granted HOKC an *Agreed Permanent Injunction against* Global International, Ecology Crossroads Cooperative Foundation, Inc. ("Ecology Crossroads," together the "Corporate Defendants"), Wright (collectively, "Defendants"), and anyone acting on their behalf, from using the KENTUCKY COLONELS and any confusingly similar trademark, **[DE 93]**" (emphasis added) because the **agreed permanent injunction was defined and devised as an equitable settlement** in a Court Mediated Settlement and therefore is <u>as much an Injunction for the Defendant and against the Plaintiff as it is against the Defendants</u>. *See Agreed Permanent Injunction #5.*

This Court may need to designate a special master (expert in trademark examination, the Lanham Act and the Copyright Act) that can determine if either the "Defendant's", "Plaintiff's" or any other "third-parties" actions and uses since February 23, 2021 are in violation of the Agreed Permanent Injunction, interview the Parties to make recommendations or suggest limitations of the Defendant's and Plaintiff's conduct within statutory law; the term **"special master"** is used in an expansive sense to refer to adjuncts appointed to address a court's need for special expertise in a particular case. The titles most often given to such adjuncts are "special master" and "court-appointed expert." Other names given to judicial adjuncts such as "special masters" include arbiters, auditors, assessors, appraisers, commissioners, examiners, inspectors, monitors, referees, and trustees.

Federal Rule of Civil Procedure 53 (Rule 53) provides that a "court in which any action is pending may appoint a special master therein" Fed. R. Civ. P. 53(a), and that a "reference to a special master shall be the exception and not the rule."  In discussing the powers to be assigned to special masters, Rule 53(c) appears to contemplate the traditional activity of a special master in holding evidentiary hearings and

issuing reports with factual findings to facilitate a trial. Rule 53 contains neither an explicit authorization for nor a prohibition of pretrial or post trial activities of a special master.

## PLAINTIFF'S WITNESSES [DN-111]

The witnesses for this hearing should have direct ties to the Plaintiff legally to be presented as "members" or be "members of the private Facebook group" administered by the Defendant since 2007; therefore they must be employees or board members because the HOKC does not have any legal members. Further to the best of my knowledge none of them as honorary state officers can give information that could be detrimental to the commission of another Kentucky Colonel without representative authorization of the governor, therefore they must disclaim their Honorable status as Kentucky colonels and represent themselves as individuals. Several of the witnesses on the list were removed or blocked from the Defendant's private non-HOKC Facebook Groups for insubornination.

While it appears that the Plaintiff represents the rights of an organization of members, nothing can be further from the truth, it is stated in the Plaintiff's Articles of Incorporation filed in 1992 on page nine "THIRD: The Honorable Order of Kentucky Colonels has no members … and General George H. Sullivan." **[Articles Exhibit 5]** Whereas, the "Honorable David Wright of Berea, Kentucky" (Defendant) represents the "rights, privileges and responsibilities" *of all Kentucky colonels* that are not aligned consensually with the beliefs, ideology or methods of the Plaintiff's organization; the Defendant potentially represents the civil rights of over 300,000 Kentucky colonels that never supported or aligned themselves with the Plaintiff philosophy. Most likely this Court needs a special master for this case to determine if the Commonwealth of Kentucky has any sovereign authority to guarantee its Honorable designates a legal title granting special "rights, privileges and responsibilities" under the guise of a civilian officer's commission with letters patent, or if its trademark icon Kentucky Colonel even . This Court does not possess the general recordable knowledge of the 18th century when Kentucky colonels were engaged in several major cases within the Commonwealth and District courts, or the outcomes of those cases. In

1953, Kentucky Chief Justice Bertram Combs compared the Kentucky Colonel Commission to that of a Notary Public Commission concluding that both titles designate civilian officers of the commonwealth.

## DEFENDANT REFUTES DISCOVERY AND JURISDICTION

The Defendant is not under arrest, has committed no crime and is not subject to disclosure or discovery because this case once it was dismissed no longer required a Rule 26(f) scheduling conference and under Rule 26(a)(1)(B) under Proceedings Exempt from Initial Disclosure include: "(ii) a forfeiture action in rem arising from a federal statute" (voluntarily forfeiting a right to oppose trademark registration, sacrificing an internet domain name and a registered assumed trade name) and "(viii) a proceeding ancillary to a proceeding in another court", because this Court understands that the Defendant had a pending protest proceeding in the USPTO with an opposition case mustered against three of the Plaintiff's trademarks which were abandoned when the case was dismissed under the Court Mediator's Proposal. Discovery being conducted on a closed and moot case, is prevented by the Court Mediator's Proposal.

## PLAINTIFF'S DEMANDS OVERREACH THE COMMON-LAW WISDOM OF THE COURT

While the Plaintiff has failed to recognize the content of the Mediator's Agreement, it would be perfectly happy to have the Court favor its position and wants to substitute their new Verified Complaint **[DE 97]** in place of a moot case that has been dismissed with prejudice **[DE-1]** because the counsel for the Plaintiff will stop at nothing for his hourly fee to continue to try to squeeze blood from a turnip and destroy the Defendant which has been threatened repeatedly for his lawful behavior since 1998. The lawsuit is a smokescreen to limit and impede the Defendant from exercising his constitutional rights and the civil rights granted and preserved by the Agreed Permanent Injunction.

Inconsistent with the appropriate legal procedures of **arbitration** agreed upon by the Parties (made in confidence) to address issues with the Agreed Permanent Injunction (in future disputes); the Plaintiff went overboard by filing a "new case" another strategic lawsuit against the public participation (SLAPP)

suit (weighing 11 pounds - 1,100 pages) instead of filing a motion to simply enforce the Agreed Permanent Injunction directly through arbitration; making instead a wide-range of irrelevant, underhanded, overreaching and unsustainable claims about the term usage of "Kentucky Colonel" which is not its own trademark, the Plaintiff is seeking rights to which it has no entitlement. The Plaintiff's elaborate and sophisticated scheme "new demand" seeks to stop the Defendant from using the actual source of the Plaintiff's arbitrary, descriptive and generic trademarks from the public domain 1775-1927, the actual title KENTUCKY COLONEL in common-law; which is not Plaintiff's trademark, service mark, or name and is not its copyright or patent.

With most principles and policies, there are important competing interests that nibble at the edges of the confidentiality of court mediated agreements creating exceptions. Those are *usually statutory exceptions,* but they also include *judicially-made exceptions* that balance the integrity and protections of the mediation process against even weightier needs and interests such as those found in equitable settlements and resolutions resulting in the dismissal of cases.

Some of the statutory exceptions include (1) when disclosure is necessary for criminal prosecution; (2) when necessary to prove coercion or fraud led to the mediated settlement; (3) in order to establish the existence or terms of a settlement agreement; and (4) when necessary to impose sanctions or to discipline counsel in connection with a mediation proceeding. (See "*The Protections and Limits of Confidentiality in Mediation*," two-part article in November and December 2006 "Alternatives," published by the CPR International Institute for Conflict Prevention & Resolution.) This case shall definitely involve three of these four conditional exceptions; this case's entire defense strategy was asserted in November of 2020 in its twilight of proving fraudulent, inconsistent and omissive USPTO applications, filings and previous registrations by the Plaintiff which were averted by the **Confidential Court Mediated Settlement** resulting in a *modified version* of the Temporary Preliminary Injunction with the addition of context addressing the Defendant's rights as a Kentucky Colonel making the **Agreed Permanent Injunction** an equitable settlement.

A December 2019 decision from the Southern District of New York illustrates the balancing and cautious approach when applying the last of the above-listed exceptions, determining whether sanctions should be imposed upon counsel or whether a case can be litigated further. *Arthur Usherson v. Bandshell Artist Management*, 2019 WL 6702069 (S.D.N.Y. December 9, 2019).

The court allowed a "limited inquiry" into the communications between plaintiff's counsel and the mediator in order to clarify whether the mediator did, in fact, give the advance permission to depart from the rules. That exception to the general scope of confidentiality was critical to determine non-compliance with the court's orders and the rules, as well as assessing if plaintiff's counsel had committed perjury (his statements to the court were both on the record and in a sworn declaration). In this case the Plaintiff is coming after Defendant's "intellectual property", "social media assets" and "publications" protected under the US Copyright Act which it has intentionally refused to acknowledge or name as the property of the Defendant that were considered, disclosed and discussed with the Court Mediator and are within the scope of knowledge of the Plaintiff. Plaintiff's refusal to acknowledge the assets of the Defendant does not make them nonexistent because they were all disclosed to the Plaintiff on December 29, 2020.

The court must set boundaries of public disclosure of the contested proceedings, again striking a balance between the presumptions favoring public access to judicial documents versus the confidentiality bubble. The court should conclude that the public has a strong interest in knowing about the plaintiff's truthfulness simply because it is a public charity, and further that the considerations against public disclosure are weak. It is clear based on the actions considered by this court in reopening this case that the Plaintiff's assumed, presumptive rights and privileges are being considered to hold greater importance and significance than those of the Defendant who is being discriminated against as an individual creator.

When confidentiality is at the heart of a mediation session and is critical to a successful resolution, the parties must be assured that they can share sensitive information at the session, where it is necessary to see that their true needs and interests may be met, without fear of subsequent disclosure to their detriment. Such confidentiality plays an important role both in the joint sessions involving all of the disputants at the mediation session, as well as in private caucuses which the mediator may have with one or more of the

parties during the course of the session. A mediator will seek openness and candor, particularly in such private caucuses, and it is often confidences that are shared in these private caucuses that are most helpful to the mediator in assisting the parties in sculpting a resolution that meets the needs of all parties involved.

The confidentiality of a mediation process is protected, in varying manners, by the terms of the mediation agreement signed, by statute or law, this is a case where the Court must exercise *sua sponte,* to dismiss this case with greater prejudice because it has a hand in its previous dismissal, because positions taken and statements or concessions made during the confidential court mediation process shall not be admissible as evidence during any court proceedings. Furthermore, the mediator (a Federal Court Magistrate) may not be called or listed as a witness in any matter in which he or she served. See *L.R. 16.2*.

### A PERMANENT AGREED INJUNCTION PRECEDES THIS CASE

The dismissal of **3:20-cv-00132** stated that "the claims asserted in the Complaint be, and they are hereby, dismissed with prejudice" were understood by the Court and the Parties as contingent upon implementing, negotiating and maintaining a **Permanent Agreed Injunction** to protect the mutual and distinct equitable interests of both "Parties" and in the further interest of justice *to better disambiguate the Plaintiff's nine nearly identical wordmarks* using the single lemma "KENTUCKY COLONELS" as registered trademarks and service marks define Plaintiff's rights <u>*and the rights* of the Defendant(s)</u>, **in particular the "rights, privileges and responsibilities" of the "KENTUCKY COLONEL", "HONORABLE DAVID J. WRIGHT" within his office of the "KENTUCKY COLONELCY"** to which the Plaintiff is <u>not entitled in any way</u> *in personam*. This Court must understand the law which it has made and the underlying facts behind the idea of the colonelcy which the Plaintiff is ambiguating; the Plaintiff has disclaimed in-law "KENTUCKY" and "COLONELS" and "KENTUCKY COLONEL" through the act of registration to create their "legal fiction of nine or more trademarks" in commerce representative of goods and services they offer; none of this "legal fiction", may or shall become so ambiguous within the context of legal fact or historically accepted doctrine which is the fabric of our reality. <u>An **Agreed Permanent Injunction** is a very special remedy (an equitable one) which involves</u>

impartial consensus of the Court and mutual consent of the Parties to create precedential law between defendants and plaintiffs. *See Cornell Law* "injunction" (https://www.law.cornell.edu/wex/injunction)

An injunction is a court order requiring an individual or corporation to do or omit doing a specific action. *An injunction is an extraordinary remedy* that courts utilize in **special cases** to alter or maintain the status quo, protecting the *parties*, depending on the circumstances. **Injunctive remedies are a discretionary power of the court**, in which the court balances the irreparability of harm and inadequacy of damages if an injunction were not granted against the damages that would [or could] result if an injunction was granted. An <u>individual</u> (or legal person) who has been given adequate notice of an injunction but fails to follow the court's orders may be punished for contempt of court. **A <u>permanent injunction is an equitable remedy</u>**, and is therefore available only in cases of *in-personam* jurisdiction, and not in *in-rem* or *quasi-in-rem* jurisdiction. In this case, the Magistrate Regina Edwards of this Court mediated a mutually **Agreed Permanent Injunction** considering the legal rights of the Defendant, Col. David J. Wright as a Kentucky Colonel and the degrees of protection conferred statutorily in law by the United States Patent and Trademark Office (USPTO) over two words used under various registered classes of merchandise, goods and services that are not a Kentucky Colonel. For the purposes of serving as an "equitable remedy" stipulations #5 and #6 were negotiated over a period of 20 days (post court mediated conference) by the Parties.

**An equitable remedy that is mediated by the Court upon dismissal with prejudice of a case is resolved in the binding mediation mustering the dispute, controversy and/or complaint which brought the case, indefinitely.** <u>A remedy that was created under the consent and advice of the Court</u>, within the conditions and terms of a confidential settlement conference with a magistrate that remains under the jurisdiction of the Court cannot be set aside, challenged, modified or amended without the mutual consent of the Parties and the consent of the Court on motion; likewise the parties are entitled to appeal the Court's decision. If either party violates an Agreed Permanent Injunction, the dispute is over the Injunction, it is not a new case over a complaint redrawn that was dismissed which might include intellectual property negotiated or rejected during a court mediation, or the intellectual property created as

a result of the Agreed Permanent Injunction because justice would not be served and equity would not exist. It would be clear to the Magistrate that mediated this case that the Plaintiff is coming after intellectual property such as copyrights established when Congress passed the Digital Millennium Copyright Act (DMCA) in 1998 to establish a protocol for online copyright matters and **the Plaintiff wants to interfere with Col. David J. Wright as an author, as a Kentucky Colonel, as a Kentuckian, and as an American Citizen** to prevent the rightful assembly of an organization of a private supportive workgroup of authors and critics that are commissioned by the Governor of Kentucky with the Honorable Title: Kentucky Colonel.

Any case involving the **Agreed Permanent Injunction** shall be resolved *in personam* with the same parties; therefore this Court must recognize that both "Corporate Defendants" were in default, of a case that was dismissed with prejudice, leaving only a single Kentucky Colonel named as "Col. David J Wright" (representaive of the default parties) and the Plaintiff organization "The Honorable Order of Kentucky Colonels, Inc." to resolve the controversy/case. The fact that the court allowed the Defendant to settle on behalf of the Corporate Defendants without an attorney, should exempt the requirement for them to appear again in this Court with counsel or be defaulted upon a second time in the same case, neither the Defendant nor the Corporate Defendants have requested that the default standing be set-aside or vacated. The court may set aside an entry of default for good cause, it is not automatic, and it may set aside a final default judgment under Rule 60(b), however it has not. The non-presence and defaulted status of the 'Corporate Defendants' for the December 29, 2020 Court Mediated Settlement Conference, excludes their requirement to be represented by counsel in this case or any case for the same complaint in whole or in part under seal of the mediation and confidential settlement conference *in personam*. It was also understood by this Court that the dismissal with prejudice meant that the previous case **had no merits, consequences, damages or findings *against or for* the Plaintiff *or* the Defendant, the Court Mediator's Agreement dictates behavioral guidelines of the Parties to enforce and maintain the Mediated Settlement**.

The Plaintiff itself created its organization around the idea of the "Kentucky Colonel" which the Defendant is, *in fact*. The Plaintiff depends on donations from Kentucky colonels like the Defendant, it wants to sell merchandise using its trademarks. However it has become a bully with its trademarks since 2003 when it believed they were more famous than the Kentucky Colonels Basketball Club (Building Champions, LLC) in this Court; it even believes that it is more famous for the idea and the personage of Colonel Harland Sanders became, was or still is since his death in 1980, even taking credit for his accomplishments; the Plaintiff also thinks it is more famous than Col. Daniel Boone was, which is beyond comprehension Col. Daniel Boone has a National Forest and town named after him, the Plaintiff does not. The Corporation might also think that Jimmy Kimmel or Whoopie Goldberg are greater colonels than Harland Sanders or Daniel Boone, but the Defendant does not and neither do Jimmy Kimmel and Whoopie Goldberg.

The Plaintiff cannot sue the source of their "trademark" (the Defendant) since 1998, for believing or suspecting a different background story than the Plaintiff or creating a new one; nor should it be in-front of a US District Court to resolve controversaries with its so-called members such as the Defendant **[DE-104]**. The Court should view this case much like the "Amish Schisms", which now has 40 different sects in America and other parts of the world.

## CONCLUSION

This APPEARANCE should not impede this Court from hearing and considering Defendant's Initial Response which was his **Motion for Dismissal [DE-104]** preceded by his **Motion for the Court to Take Judicial Notice of Adjudicative Facts [DE-103]** which is aimed to prevent the Plaintiff from dominating or monopolizing the idea of the "Kentucky Colonel" for which it was founded and provide the Court with essential factual knowlege of Kentucky Colonelcy. This **Emergency Motion and Response** should not impede this Court from dismissing this case and granting the relief requested by the Defendant based on the **Plaintiff violating the Settlement Agreement which is bound to the Agreed Permanet Injunction** or granting other amenable relief. The Defendant is not opposed to the Court designating a

"special master" at the expense of the Plaintiff to resolve the questions surrounding the liberal use of the Unregistered Trademark Symbol as opposed to the Registered ® Trademark Symbol and clarify all the exceptions for fair-use by the so-called members and non-members of the Plaintiff's organization, the Plaintiff should not be overreaching its rights or be permitted to cause injury to its members based on speculation or theoretical fishing expeditions. The Plaintiff does not produce ID Cards or Badges for its legal members, nor does it have a trademark that provides it an exclusive right to do so.

Respectfully and humbly submitted in good-faith,

Rio Orinoco, Colombia
Dated: April 24, 2023

Col. David J. Wright
david.wright@globcal.net
+1 (859) 379-8277

**<u>Certificate of Service</u>**

I hereby certify that on April 24, 2023, I emailed for filing the foregoing motion with attachments to the Clerk of the Court for the United States District Court of the Western District of Kentucky using the special Pro Se Intake Email per General Orders 20-04 and 20-11 for entry to the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Clerk's Office
601 W. Broadway, Rm 106
Gene Snyder United States Courthouse
Louisville, KY 40202

|  |  |  |
|---|---|---|
| **KENTUCKY COLONELS ®**<br>**Plaintiff** | ) ) ) | Civil Action No. 3:20-cv-00132-RGJ-RSE |
|  | ) | **ORDER ON DEFENDANT'S** |
| **vs.** | ) | **EMERGENCY MOTION** |
|  | ) |  |
| **COL. DAVID J. WRIGHT, et.al.**<br>**Defendant** | ) ) ) |  |

## INTERIM ORDER

This Court has learned from the Defendant that a **[Confidential] Court Mediator's Proposal** not disclosed by the Plaintiff that is not part of the Case File prevents this case from moving forward. In light of the fact that the **Mediator's Proposal prepared by Magistrate Regina S. Edwards** was matured to a Contractual Agreement between the Court and the Parties upon the filing of the Agreed Permanent Injunction it is the decision of this Court that case **Kentucky Colonels 1** and the new case **Kentucky Colonels 2** are both dismissed with prejudice and moot. The most relevant part of this case is subject to the Confidential Settlement Conference and its outcome which was deemed an equitable settlement on February 23, 2021. Plaintiff's counsel is not excused from failing to acknowledge or disclose this document which counsel signed prior to the Parties filing the Agreed Permanent Injunction.

In a case where the Original Verified Complaint is dismissed with prejudice, the Defendant is the victor; this case however was settled on mutual and amicable terms with a neutral settlement arrangement which restrains both the Defendant and the Plaintiff, under their mutual agreement not to take particular actions against one another and behave accordingly. The Defendant is correct in saying that the bar for compliance with trademark law rests upon the Plaintiff which only has a legal right to enforce and exercise their trademarks within the limits of the law using the ® Symbol or no damages can be assumed against the mark in accordance with 15 U.S. Code § 1111 - Notice of registration;

display with mark; recovery of profits and damages in infringement suit. The rules of conduct using an Unregistered Common-Law Trademark and or Fair-Use are much less restrictive. The Plaintiff should have a disclaimer or legal statement posted on its website about its trademarks especially in the aftermath of Kentucky Colonels 1, the current trademark notice is inadequate. **[Exhibit 4]**

The Defendant should make a clear accounting for its legal fees and time within the next 3 days, as well as document and elaborate irreparable injury and his costs so the Court can better understand the scope of the damages suffered by each Defendant. The Defendants that were in default in 2020 are no longer in "default", the default judgment in August 2020 against them is herein vacated. The Plaintiff will be held in contempt of the settlement agreement and an award in the amount of $50,000 USD against the Plaintiff to compensate Defendant's reasonable legal fees request since this case began. Courts of equity do not require a trial or a jury.

The Plaintiff with clear *prima facie* evidence and a just or reasonable cause should file an appropriate motion to request to amend, appeal, enforce, or modify the Agreed Permanent Injunction at their own expense following arbitration or mutual negotiation within the terms of the Private Party Settlement Agreement (formerly called Court Mediator's Proposal). Any violation of the Settlement Agreement nullifies a party's actual rights under the Agreed Permanent Injunction.

When a case is dismissed with prejudice under a Court Mediated Agreement it is a final judgment under the conditions of the Private Agreement created by the Court enabling the Agreed Permanent Injunction to function as an equitable decision. The Plaintiff cannot claim rights over suspected possible offenses against it to build a circumstantial case, involving claims of misappropriated or prohibited intellectual property belonging to the Defendant at the time of settlement or that which survives settlement or from the injunction within its own terms, however the Plaintiff does retain the right to seek to renegotiate the Agreed Permanent Injunction at its own expense within the terms of the Private Agreement signed by Plaintiff's counsel and the Defendant beforehand.

A final order will be made within 10 days.