FILED
JAMES J. VILT JR., CLERK
U.S. DISTRICT COURT
W/D OF KENTUCKY

Date: Apr 25, 2023

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# LOUISVILLE DIVISION

| | |
|---|---|
| **THE HONORABLE ORDER OF KENTUCKY COLONELS, INC.** <br> Plaintiff <br><br> vs. <br><br> **COL. DAVID J. WRIGHT, et.al.** <br> Defendant | Civil Action No. 3:20-cv-00132-RGJ <br><br> ANTI-SLAPP MOTION TO DISMISS <br> KY UPEPA, H.B. 222, § 2(1)(c) <br><br> SPECIAL MOTION FOR <br> EXPEDITED RELIEF <br><br> CASE IS BETWEEN KENTUCKY PARTIES, OVER A KENTUCKY TITLE, WITHIN KENTUCKY, ABOUT KENTUCKY ICON |

### DEFENDANTS' SPECIAL MOTION TO DISMISS SLAPP ACTION
### WITH STATEMENTS IN FACT WITH MERIT

COMES NOW, **Col. David J. Wright, ("Defendant")** in *pro se* and *forma pauperis* pursuant to Federal Rules of Civil Procedure 7, 11, 12 and 57, Title 28 U.S.Code §§ 2201, 2202, and Title III of the United States Constitution, previously recognized understanding this Honorable Court on February 23, 2021 when similar allegations were **dismissed with prejudice, in-law, and under a Court Mediator's Proposal with an Agreed Permanent Injunction**.

### PETITION CLAUSE IMMUNITY

The Defendant herein asserts **petition clause immunity** and argues that the claim concerns conduct protected by the First Amendment under the **Noerr–Pennington doctrine** and that the Plaintiff has filed another strategic lawsuit against public participation (SLAPP) litigation against the Defendant which is now contrary to state law, contrary to this case's Permanent Agreed Injunction and contrary to the Court Mediator's Proposal which became effective when this case was dismissed with prejudice in *res judicata* on February 23, 2021. The evidence of petition clause immunity rests in Defendant's

petitions with this Court which were never given due process consideration favoring the outcome of a Confidential Settlement Conference which preserved the Defendant's intellectual property dating back to 1998 that were not forfeited like his business name and domain name, "Kentucky Colonels International" which was restricted early in this case based on a very heavy handed almost indefensible onslaught to gain a TRO by the Plaintiff's counsel against an organization with a zero-sum bank balance, SLAPP 1.

More motions, defense pleadings, letters to the Governor, letters to the Secretary of State, Senators and Congressman, letters of protest to the United States Patent and Trademark Office, and prepared proposals (petitions) by the Defendant are all aimed at protecting the civil rights of the Kentucky Colonel (title holder), the title holder's "rights, privileges and responsibilities" under the Commonwealth of Kentucky Constitution, the laws of the United States of America and especially under the First Amendment of the United States Constitution, but moreover the right to notwithstand the Plaintiff's private non-profit charitable organization, its ideas, fictitious narrative or brand name store. A Kentucky Colonel is a Colonel with or without the Plaintiff for their lifetime. There are no laws or official acts of the governor that give the Plaintiff any authority over its honorary members or colonels. Individual Kentucky colonels began making their own badges and ID cards, SLAPP 2.

## STRATEGIC LAWSUIT AGAINST PUBLIC PARTICIPATION

The Kentucky General Assembly has adopted the Kentucky Uniform Public Expression Protection Act ("UNPEPA"), which provides the Bluegrass State with Anti-SLAPP legislation for the first time. Many other states have adopted the UPEPA, the legislation has been used in Federal Court.

Regarding SLAPP, Judge J. Nicholas Colabella wrote in *Gordon v. Marrone* (N.Y . 1992), "Short of a gun to the head, a greater threat to First Amendment expression can scarcely be imagined."

The Plaintiff is seeking for this Court to restrict published works like Defendant's Creative Commons websites and blogs, social media commentary and impair his liberal freedoms of expression, publishing and speech, simply because the Defendant's Origin Story for a Colonels differs significantly from its own tracing the First Kentucky Colonel on stage to Colonel Nimrod Wildfire in 1833 and the

First Kentucky Colonel to be Col. Daniel Boone in 1775, his name even appears on a United States Official Government Map in 1784.

## KENTUCKY HOUSE BILL 222

House Bill 222 passed on April 20, 2022, creates new KRS sections that establish procedures for dismissing legal actions filed in response to a party's exercise of 1) free speech; 2) right to petition; or 3) right to association. The law was adopted following a case that was decided in the Kentucky Supreme Court and courts over half of all US States. This immediate complaint seeks to remove all those rights from Defendant without cause or merit or under the injunction using false unsubstantiated claims. The Plaintiff is not the State, nor has it come here as the state, to diminish, harm and silence an officer of the state that has not been charged by the state. It would be ridiculous to place the rights of a non-colonel that cannot ever become a colonel, over the "rights, privileges and responsibilities" of a living Kentucky Colonel that is actively engaged in their Kentucky colonelcy. Due to the lack of this legislation these Defendant's lost their trade name, a domain name, reputation, legal expenses and ended up with a 30 year debt to the US Government during COVID as a result of this lawsuit.

The new law applies broadly to suits **based on a person's exercise of speech, press, assembly, petition, and association rights "on a matter of public concern." UPEPA, H.B. 222, § 2(1)(c). The law defines "matter of public concern" broadly, to include any statement or activity regarding "a public official, public figure, or other person who has drawn substantial public attention due to the person's official acts, fame, notoriety, or celebrity," "[a] matter of political, social, or other interest to the community," or "[a] subject of concern to the public." *Id.* § 1(4). UPEPA also applies to lawsuits based on a person's communications in a legislative, executive, judicial, administrative, or other government proceeding and to communications on an issue under consideration by any of those bodies. *Id.* § 2(1)(a)–(b).** This law fits this case to a tee!

This case involves the words and speech of politicians and their official acts since 1775, it involves Col. Daniel Boone, the First Kentucky Colonel, which is actually a time that precedes the jurisdiction of United States Law, it would violate the First Amendment Rights of Defendant and other

unknown colonels engaged in journalism in the pursuit of higher learning. The curious thing about finding the law to make this motion was discovered on the Plaintiff's counsel website where they justify the purpose of some SLAPP actions as a way of silencing criticism a month before the law was enacted.

The Wyatt Firm says:

> "While SLAPPs may appear to be ordinary civil lawsuits, their true purpose is to silence criticism: A SLAPP does not need to be successful in court to have its intended effect. The goal of a SLAPP is to retaliate against critics. Even a meritless lawsuit can drag on for years, draining a defendant's resources through costly and time-consuming litigation. The lawsuit can also take a toll on the defendant's reputation and morale. In many cases, SLAPP bullies hope that the lawsuit will end in a binding settlement that muzzles the critic's future rights to free speech."

Kentucky's law deviates from the model UPEPA statute by specifically stating that it applies to *information-gathering activity related to artistic and journalistic work even if that information is never publicly communicated, and to consumer reviews of businesses. Id. § 2(2)(b)*. It also carves out additional exceptions to its broad scope, including for certain property-related claims, personal injury and wrongful death claims, insurance claims, *common law fraud claims, whistleblower and certain employment-related claims*, and Kentucky Consumer Protection Act claims. *Id.* § 2(2)(a). Like the model UPEPA, Kentucky's statute exempts suits against government employees and *"entities acting in their official capacities"* and suits brought by government agents to enforce public health or safety measures. *Id.* Emphasis added because when Governor Bertram Combs was on the Supreme Court of Kentucky Bench he compared the Kentucky Colonel to a Notary Public in 1953 stating that both are officers of the Commonwealth.

Under the anti-SLAPP law, Defendants have 60 days after a claim is brought to file a special motion for expedited relief to dismiss the suit. *Id.* § 3. Once the motion is filed, all proceedings between the parties—including discovery—are stayed, though the court may allow limited discovery if the parties require it to substantiate or resist the motion. *Id.* § 4(1), (4). The court must then hold a hearing

on the motion within 60 days of the filing, unless the court orders a later hearing to allow for discovery or for "other good cause." *Id.* § 5(1). The court must then rule within 60 days of hearing the motion. § 8.

This case may be particularly unusual because the evidence presented by the Plaintiff was acquired from a private Facebook group that is 16 years old, 7 years prior to the Plaintiff's first content appearing online, the group description disclaims the HOKC so there is no possibility anyone there could be confused, unless they simply cannot read. This material that was leaked may be the cause of this lawsuit. We were planning to ramp up publishing activities, engage new writers, and social media promoters for our book and website which the Plaintiff excluded, passed on and rejected during the Court Mediated Settlement on December 29, 2020 when the Defendant's "Kentucky Colonel" assets were offered in settlement. As soon as they heard we were making ID cards for ourselves (editors) and decorative official personalized Kentucky Colonel badges the Plaintiff began harassing us and even had one of its board members attempt to enter Defendant's private groups fraudulently, Mr. Nick Isling. It is obvious from Plaintiff's exhibits that an unidentified "person" for the Plaintiff harvested data from the private Facebook group, a violation of its civil society rules and Facebook user rules on privacy; the equivalent of spying on a Boy Scout Meeting.

## ARGUMENT AN AFFIRMATIVE DEFENSE

In this case, **Civil Action 3:23-cv-00132 (Kentucky Colonels I) and Civil Action 3:23-cv-00043 (Kentucky Colonels II)** now combined, the Plaintiff is abusing the previous [Agreed Permanent Injunction 3:20-cv-00132 [DE-93]](#) and challenging the ethical use of the American legal system by asserting overt false claims, creating false descriptions, ambiguating national origin, engaging in harassment, misconstruing American heritage, and usurping upon the "Rights, Privileges and Responsibilities" of *legally designated honorable state officials* (honorary civilian officers in law) by using a fictitious narrative based on a mythical point in time 1813, the Defendant is not obligated to believe their story or use it. The Plaintiff cannot bring a case based on a hypothetical controversy formed on Defendant's intent or the suspicion of his actions in truth or fiction in his career as a Kentucky Colonel, it violates the ideas of America's and Kentucky's Founders who were mostly "colonels". Early

in the case the Plaintiff, a fictitious voluntary member militia (corporation) staffed by self-appointed generals beguiled and duped this Court to believe and understand a pseudo Kentucky history (propaganda) from the year 1813 which has been passed-off as fact, the organization has been shown to have caused significant damages to the image of the Kentucky Colonel for the past 82 years according to older news articles and historians. Some school textbooks have adopted the myth as a fact. Now, rights granted and secured by the 'Agreed Permanent Injunction' affirmed by the Parties, created by this Honorable Court and dominant recognized authority of the Commonwealth of Kentucky with the Kentucky Colonel Commission itself a legal position, <u>cannot be subjected or underpinned in this action</u>. If the Plaintiff has any case at all, it must be with the Kentucky Colonel Commission authorizing body, not with the Defendant(s); the Plaintiff is making presumptive false allegations, taking their rights as a corporation to interfere with legal standing of honorable ex-officio officers of Kentucky produced by over 400,000 governmental acts dating back two centuries, using honorary members to which are not their own, for weaponizing their commercial trademark(s) to dominate the public theater for commercial benefit, and ultimately diminishing the reputation of an unincorporated academic editorial workshop activity owned and sponsored by individual Kentucky Colonel[s] and organizations that employ Kentucky colonels that are exercising their own attributed "Rights, Privileges and Responsibilities" engaged and invested in cooperative educational, informative, and historical self-determined publishing activities within the terms of the injunction and the title itself; the Plaintiff's new allegations violate Title 17 of the U.S. Copyright Act, Title 15 U.S. Code § 1125 and the United States Constitution.

**It does not matter what the Plaintiff believes, the Defendant did not infringe upon any registered trademarks previously in the dismissed case and is not actively violating the corporation's intellectual property rights now.** Defendant's website, its words and *all materials* are sourced from the Creative Commons and the Public Domain; the content demonstrated by the Plaintiff was sourced from private Facebook Communities that the Plaintiff cannot become legally engaged where they have sent trolls, social media actors (impersonators) to disrupt and steal Defendant data, ideas and thoughts discussed among a private group. This **entire matter must first be heard under the jurisdiction of the Commonwealth of Kentucky within the guidelines of Anti-SLAPP Legislation**

enacted in April of 2022 particularly because the Kentucky Colonel Title is involved; because this case involves the Governor and the Secretary of State personally, actions they have taken during their term of office (and actions they have not taken); because their actions in office as elected officials and observers in the previous case; because my own my title and the unknown titles of over 400,000 Honorable Citizens and Colonels of Kentucky; because the Plaintiff (a corporation) belongs to the state; because each and every Kentucky Colonel is an individual designated by the head-of-state; and because Defendant as one of them is actively involved as a publisher and writer about Kentucky Colonel Title holders (which are legally public figures) created in public acts, with over 300 creative works and publications online.

The previous case and this converted motion to hold Defendant in contempt is a sham that fits **all the hallmarks and highlights of the Kentucky Anti-SLAPP Legislation**; however in the previous case this legislation did not exist. Somehow this Plaintiff believes in the "Fame of the Kentucky Colonel". the Kentucky Colonels ABA Team, Kentucky Colonels Bluegrass Music, Kentucky Fried Chicken, Col. Nimrod Wildfire, Col. Jim Bowie, Col.. Daniel Boone, Col. John Bowman, Col. Cassius Clay, Col. Henry Clay, Jr., Col. Waldo Wrecker, Marse Henry, Kentucky Insurrection, Col. Richard Milhouse Nixon, Col. Mae West, the Eastern Kentucky Colonels, Colonel Sanders, Col. Elvis Presley, Col. John Y. Brown Jr., Col. Jack Chinn, or Col. George Chinn somehow belongs to it, but none do, nor did any of these people ever wholeheartedly support the efforts of the Plaintiff, nor has the Plaintiff supported or told all these stories we dug up from Kentucky and American Heritage, because it is obfuscating the facts and the truth asserting it has more rights than it really has as a corporation.

If anyone is FAMOUS at all it is the Kentucky Colonel itself, not the "Kentucky Colonels ®" which 99% of all people in the world have never even heard of, so if anyone will be called Famous in regards to the Kentucky Colonel over 40% of all people identify Colonel Sanders as the most famous.

"Famous" is nothing of the kind in describing Plaintiff's activities that were created specifically to enhance the things and people around the "famous" idea of the **Kentucky Colonel** reminiscent of the state in its formative period. Through the creation of a Kentucky Colonel in a public common-law act beginning in 1896 *or earlier* the Kentucky Colonel became more famous and was famous long before

the Plaintiff became popular (1933-1936) then from (1939-1956) among a very specific demographic of colonels from Kentucky, interested in their fraternal benefits while others did as they should and would with their own Kentucky colonelcies. The proof is that only colonels up to the date of incorporation of the Plaintiff in Kentucky in 1957, were made colonels as Aide-de-Camp, everyone since has been made an Honorable Colonel under colonial common-law. Even the "commission certificate wording" has changed since the HOKC incorporated in 1957 in Kentucky to exclude the military rank. Yet the Plaintiff insists on falsely promoting the idea of Aide-de-Camp because it fits their patent and style.

## ANTI-SLAPP MOTION

Anti-SLAPP motions provide speedy relief for individuals or entities sued for conduct involving their rights of free speech or petition to potentially obtain an early exit from litigation before significant costs accrue, by creating a procedural mechanism whereby defendants can require plaintiffs alleging such claims to substantiate their merits at the case's earliest stages.

The legal advocates driving new anti-SLAPP Legislation in all 50 states said, "Strategic Lawsuits Against Public Participation" (SLAPPs) are a particularly dangerous form of lawsuit. SLAPPs target civil society actors, advocates, community leaders, journalists, whistleblowers, and everyday people who exercise their Constitutional rights. SLAPPs masquerade as ordinary civil lawsuits, but their true purpose is to silence criticism. The most common and distinguishing features of SLAPP is always intended to silence or *suppress free speech and other constitutionally protected activities requesting injunctive relief*.

## PLAINTIFF'S MOTIVE IS TO SILENCE DISSENT

The Honorable Order of Kentucky Colonels believes they have a right to silence other colonels in the world that do not support their efforts or support other efforts using their title, 90% of all Kentucky colonels — in excess of 300,000, do not support the Plaintiff financially; despite this the Plaintiff calls them all honorary members (even the Defendant) and provides them the opportunity to donate to the private mistaken militia group of volunteers doing good deeds (that's fine, but it is not

official and its not original, the Knights of Pythias started it in the 19th century). The lawsuit was filed because we "published" the fact that we legalized an unincorporated association **[Kentucky Colonels International]** that began a Registry and Website in 1998 causing us to withdraw our fictitious name registration in Kentucky shortly after 22 years of development. This time around their SLAPP attack is targeting Defendant and an organization **that only employs goodwill ambassadors and colonels** as Honorable Title holders to work on programs as authors, creators, designers, developers and social media enthusiasts, all of our objectives are very distinctly our own, since 2021 our background story focus is Col. Daniel Boone, our subject content focus is based on a 1780 definition that describes the colonel as the "head of a colony" or "head of company" <u>not a military rank and not in conjunction with any generals</u>. There were micro-colonies headed by colonels and wanna-be colonels all through the first 15 years of the state's development and establishment, everyone should know these claims.

Since the previous case filed by the Plaintiff was dismissed with prejudice, was based on Defendant publishing, and with none of the allegations found to be true or have any real merit (with the exception of our own irregular defensive actions after the case began) when Defendant actually believed the Original and Respected Honorable Order of Kentucky Colonels background story of 1813, until in researching the idea we found it was a mythical origin. In this case the Plaintiff wants to shut up Defendant, which is essentially effective among colonels simply through the filing of the lawsuit. It is too late what has been retracted that was published previously and the content published today, bears little or any resemblance to them. The Defendant concluded in February 2021 our perspective of the Plaintiff is just a section in our 33 chapter book, a single page on a website of over 500, and a focus on their highlights from 1933 to 2023 now. Today our narrative does not resemble the HOKC in any way.

Our <u>Kentucky Colonel</u> and our <u>Kentucky Colonel™</u> (Title Mark) project is for professional colonels who are writers, actors, lawyers, and public figures from several US States and in Europe, our cooperative workgroup has a very distinct focus on the <u>History of the Kentucky Colonel</u> from 1775-1927 which is the cut-off date for the public domain, next year the cut-off date will be 1928. We are engaged in autonomous self-publishing activities, using our website and our blog; absolutely none of our activities violate the law.

All of the Plaintiff's Verified Complaint and its 1,100 pages with exhibits are focused on legal activities which it alleges violates their rights, "Our Publishing Activities" focused on facts, history and non-fiction about everything involving the Honorable Title including words that are not used, frequently or have never been used by the Plaintiff:

1. Kentucky Colonel,
2. Kentucky colonels,
3. Kentucky colonelling,
4. Kentucky colonelcy,
5. Kentucky colonelcies,
6. Kentucky colonel-ship, and being
7. Kentucky colonelly, or getting
8. Kentucky colonelled by another colonel.

Of these 8 distinct and actual terms during the entire 90 year existence the Plaintiff has only used the first two terms duly on occasion to reference them as nouns and subjects in descriptive articulation and context; but neither of these terms as they appear here can be relative to their trademark otherwise the trademark would be unregistrable. As colonels, creators, developers, editors and publishers of a Creative Commons, copyrighted materials and the biographies of "famous, not so famous, noteworthy, scandalous, authoritative, fraudulent and controversial Kentucky colonels" it is clear that the Plaintiff has their attention focused on our publishing activity which is endorsed by several world-class states and has added the Kentucky Colonel to a global title register. These activities and other activities such as our Creative Commons published coverage of Kentucky Colonel Bourbon, Kentucky Colonels Basketball, Old Kentucky Colonel Spirits, Kentucky Colonel Mint, the Kentucky Colonel Coffee Tree, Kentucky Colonels' Mint Julep Recipe, Kentucky Colonel Burgoo and over 100 other things are all within the scope of our published creative works.

As the First Amendment Project explains, "No one ever admits to filing a SLAPP." SLAPPs will usually be disguised as lawsuits for defamation, dilution, trademark, patent and copyright infringement. The Court can generally identify a SLAPP by its telltale signs:

1. **Targets protected First Amendment activity:** This lawsuit directly targets activity that is very clearly a constitutionally protected form of free speech, a peaceful protest, or petitioning of the government; it targets a publisher that began exercising these rights since 1998 as an authorized independent Kentucky Colonel and state officer designated by Governor Paul E. Patton. It is a well-known fact in Kentucky and in the United States Congress in 1936 that there are many famous Kentucky colonels that have been engaged in publishing and as newspaper editors since the late 1800's, it is also understood that a Kentucky Colonel has "rights, privileges and responsibilities" beyond the scope of both the United States and the Constitution of the Commonwealth of Kentucky. It was established in the US Congress that the Kentucky Colonel is an icon of the "commonwealth's" history dating back to the origins of the state itself, with no assistance from the Honorable Order of Kentucky Colonels or their name being mentioned Congressman Edward Wester Creal made the Kentucky Colonel title a Famous Title when it was canceled by the Attorney General of the Commonwealth. As a Title it can easily be shown connected to the 9th Vice President of the United States, Col. Richard Mentor Johnson who was attributed as the "First Actual Title Holder" (introspectively) a "Kentucky Colonel" during his term in office as the vice-president by national newspapers. Johnson was criticized for his interracial relationship with Julia Chinn, a mixed-race slave who was classified as octoroon (or seven-eighths white); this fact adds even more fame to the Honorable Title.
2. **Exploits a power imbalance:** While the limitations of the "rights, privileges and responsibilities" of a Kentucky Colonel have never been clearly defined by the governor or the title holders themselves that are defined by the office, the Plaintiff is clearly exploiting its economic advantage to put pressure on the Defendants who are freelance publishing a topic from American history at a ratio far in excess of 999 to one (1).

3. **Threatens to bankrupt the defendant:** The remedies being sought in this case are unusually aggressive and disproportionate for the conduct targeted; there are and have been many other options available to the Plaintiff without inflicting damages upon the Defendant in this case and the previous case that would satisfactorily resolve the Plaintiff's desires, needs and wants.
4. **Attempts to remain in court as long as possible:** The Plaintiff is engaged in 1-2-3 punch legal procedural maneuvers that appear intended (if defended) to drag out the case and drive up costs, such as costly discovery or appeal with little prospect of success on the merits of law.
5. **Casts a wide net:** The lawsuit targets individuals as well as the organizations for which they work. The lawsuit is part of a wider public relations offensive designed to bully or intimidate critics of a charity behind their corporate branding enterprise.
6. **Follows a pattern of serial bullying:** The Plaintiff has a history of using SLAPPs and threatening legal action in order to scare critics into silence. The Plaintiff has pursued numerous (more than ten) users of the Honorable Title: Kentucky Colonel that were not infringing on their trademark, from the perspective of trademark examiners and US District Court Judges in the past, the Plaintiff has successfully bullied most using the name of the charity and the product trademarks to create more ambiguation and confusion for even trademark examiners to review or disambiguate.

All of the Plaintiff's motives are relative to removing the Defendants from the Internet, detaining any and all legal publishing activities; if the Plaintiff cannot have that it, will accept censoring and limiting our ability as colonels to use our proper name and title or with any purposeful activity which is not aligned with the Plaintiff's goals as a multimillion dollar brand targeted at their own select group of donors, for its own sake. Everytime the Defendant publishes educational information or holds chats about the Title of the Kentucky Colonel and the "rights, privileges and responsibilities" of a Kentucky Colonel since 1775 which is a different Kentucky Colonel than their own which never existed, the Plaintiff cringes. For the Plaintiff to be so deeply concerned about our style of semantic Kentucky

Colonelcy simply because it is so unrelated to what the Plaintiff does for recreation, it is an invasion of our privacy and rights to be left alone and our right to assemble and believe what we want.

This SLAPP action must be dismissed, the Defendant(s) clearly establish that our speech is covered by the Act's scope, and the Plaintiff has and will fail to establish otherwise. *Id.* § 7(1)(a)-(b). Now that this threshold is established, the burden shifts to the Plaintiff to establish a *prima facie case* as to each essential element of the claim. If Plaintiff cannot do so, the Court will dismiss the action. Even if the Plaintiff satisfies this burden, a court will still dismiss the claim because the Defendant has established either that the Plaintiff has failed to state a claim upon which relief can be granted or that there is no genuine issue of material fact and that the defendant is therefore entitled to judgment as a matter of law which is the same standard used in a traditional motion for summary judgment to resolve claims before trial. *Id.* § 7(1)(c). As soon as the court decides the motion, either party may immediately appeal as of right. *Id.* § 9. Although rarely used the Defendant can move the Court for a fact finding hearing with a motion for declaratory judgment when there is a genuine controversy at hand such as those between the rights of a publisher in the United States with a 1998 common-law copyright and the rights of a public charity with a trademark seeking to protect their reputation to obliterate state history over which they have no control or authority in law.

Over the last three years, federal district and appellate courts have held that some acts involving copyrights and trademarks, such as filing a trademark application or sending a copyright termination notice, are protected acts within the meaning of the anti-SLAPP provision because they attempt to "establish a property right. The petition clause of the First Amendment guarantees, in part, "the right of the people. . .to petition the government for a redress of grievances." The abridgment of this right distinguishes a SLAPP suit from other cases based on similar allegations.

Defendants in SLAPP suits who plead a defense of petition clause immunity will almost always succeed in having the claims dismissed. This immunity is often known as the "Noerr-Pennington immunity" based on its role in *Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc.* (1961) and *United Mine Workers v. Pennington* (1965).

In 1991 the Supreme Court established in *Columbia v. Omni Outdoor Advertising* (1991) that a defendant is entitled to immunity unless the plaintiff can prove that the defendant's petitioning was a "sham." To prove a sham, the plaintiff must show that the petitioning was objectively baseless, and that it was not genuinely aimed at attaining some favorable government or political action (or inaction).

If the court grants the special motion to dismiss, it must award the Defendant their court costs, reasonable attorneys' fees, and litigation expenses related to the motion. *Id.* § 10(1). However, if the court denies the motion and finds it was brought without good cause, the Plaintiff is entitled to recover these fees from the Defendant. *Id.* § 10(2). If this Court chooses to, it can dismiss this case to dispose of it by ordering the parties to an Arbitration and Mediation Counsel to focus on addressing the Plaintiff's complaints to amend or modify the Agreed Permanent Injunction to better accommodate disambiguation between the parties and clarify the parameters of statutory law within the injunction.

**SUMMARY AND CONCLUSION**

The Plaintiff in this **Case** is "crying wolf" using a sophisticated (sophist) combination of allegations, claims and with overwhelming legal maneuvers, some of which are identical to the previous **Case 3:20-cv-00132 [DE-1]** when the Plaintiff requested a **Court Mediated Settlement Conference** following filing of a Defendant's late **Answer and Affirmative Defenses [Case 3:20-cv-00132-RGJ-RSE Document 62, Page 1243]** which could not be heard without the other Defendants first defaulting in the case and a **Motion for Declaratory Judgment [Case 3:20-cv-00132-RGJ-RSE, Document 82, Page 1819]** with **Memorandum in Support of Declaratory Judgment [Case 3:20-cv-00132-RGJ-RSE Document 82-1, Page 1846]** none of which were considered by this court. During the settlement conference the Plaintiff had every opportunity to reasonably settle the lawsuit, purchase Defendant's book and documentary copyrights, Creative Commons content online since 1998 and first publication copyright "© Kentucky Colonels 1998 and © "Kentucky Colonels: Model Figures…" , but instead rejected all options presented with one legitimizing paragraph that disambiguates myself and other Kentucky colonels from their trademarks.

The Plaintiff has gone overboard in 3:23-cv-00043, its semantic reality is based on the custom that a church must excommunicate and persecute non-believers of "its story" and "borrowed ideas". There is no relative comparison between our content and the Plaintiff's content, not even the dates match and the Plaintiff's company name has never been used as our own. Kentucky colonels are not under any legal or moral obligation to the Plaintiff based on the nature of becoming a colonel, because the organization is engaged in the private solicitation of funds and the management of private mailing lists it may also be an unfair violation of the Privacy Act for the Commonwealth of Kentucky to share the personal details of nominations and colonelcies with the Plaintiff organization or solicit the sales of memorabilia from its store based on the state's cooperation for a non-existent membership in an organization with a false historical origin. The Governor should know the truth behind the curtain.

This case must be dismissed because the Plaintiff has not made a good-faith effort or any effort to resolve their position as an entity that is not a real colonel; the Plaintiff has not made any good-faith attempt to send a cease and desist demand for a particular issue or detail any particular contextual issue that could be resolved by our publishing group. This case must be dismissed because within the context of law it violates the Rules of Civil Procedure of this Court and other courts without first challenging the authority of the Agreed Permanent Injunction, requesting the Court's Review and Consent, or seek Mediation prior to bringing a new case using the same SLAPP SUIT TACTIC used against various parties since 2003 when they sued the Kentucky Colonels ABA Team that was owned by Governor John Y. Brown, Jr. and his wife at one time.

This <u>Plaintiff, bringing this case is the only 'legal body' violating the terms of the Agreed Permanent Injunction</u> and *misusing it to cause irreparable damage* to the 250th Anniversary of Col. Daniel Boone discovering and settling Kentucky, it is a highly important event for the Commonwealth of Kentucky in Boonesborough on May 23, 2025, Defendant is preparing for this event and research is focused on Madison County dozens of organizations in the United States will make a pilgrimage to Boonesborough. The Plaintiff is making grandiose overreaching exhibitionist claims about a descriptive "term usage" as a "trademark" confusing people to believe that <u>they are somehow our authority</u> or <u>somehow sort of an authority</u> in the **Lawful Realm of the Kentucky Colonelcy**.

The Plaintiff is actually quite the contrary and it is using it's trademark to bully us (all colonels) without using it in accordance with US Law, they must distinguish their trademark use with the ® Symbol simply because it has become ambiguated with their trade name, false copyright claim, there is not reasonable way to determine or distinguish any difference between their trade name, products and trademarks which causes confusion preventing the fair-use of it by their members, which they are fully aware of by having a descriptive and generic trademark registered under many arbitrary classes, this was advised to the Plaintiff by the USPTO in 2020 which they have wantonly disregarded and registered a descriptive mark as distinctive. The Plaintiff is attempting with great contempt of their own general knowledge that a "Kentucky Colonel" somehow belongs to them or that it is originated by the organization, again simply not true, there have been colonels in Kentucky since 1775 and the people of the world have been talking about the Kentucky Colonel since 1833 when the descriptive Honorable Title "first emerged" in London in the National Gazette printed in Philadelphia on April 20.

The Defendant prays that the Court grant the appropriate relief requested by the Defendant, consider all of the options for the Plaintiff and grant an appropriate remedy to preserve the equity of the Agreed Permanent Injunction [DE-93], the Agreed Order of Dismissal [DE-92] and the Court Mediator's Agreement to preserve the Defendant's right to the Confidential Court Mediated Conference with petition clause immunity and dismiss this instant action "Motion to Enforce the Permanent Injunction Order" [DE-99] as a SLAPP action under Kentucky H.B. 222, § 2(1)(c).

Respectfully submitted in good-faith,

Rio Orinoco, Colombia
Dated: April 25, 2023

*Col. David J. Wright*

Col. David J. Wright
david.wright@globcal.net
+1 (859) 379-8277

## Certificate of Service

I hereby certify that on April 25, 2023, I emailed for filing the foregoing motion with attachments to the Clerk of the Court for the United States District Court of the Western District of Kentucky using the special Pro Se Intake Email per General Orders 20-04 and 20-11 for entry to the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Clerk's Office
601 W. Broadway, Rm 106
Gene Snyder United States Courthouse
Louisville, KY 40202

*Col. David J. Wright*