UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION


THE HONORABLE ORDER OF
KENTUCKY COLONELS, INC.,                                          Plaintiff,

v.                                                    Civil Action No. 3:20-cv-132-RGJ

KENTUCKY COLONELS
INTERNATIONAL et al.,                                           Defendants.

\* \* \* \* \*

**MEMORANDUM OPINION AND ORDER**

In light of The Honorable Order of Kentucky Colonels, Inc.'s ("HOKC") filings in *The Honorable Ord. of Kentucky Colonels, Inc. v. Globcal Int'l*, No. 3:23-CV-43-RGJ (W.D. Ky. 2023) ("*Kentucky Colonels II*"), the Court reopened this case to enforce the Permanent Injunction Order entered on February 23, 2021 [DE 93] and directed the Clerk of Court to refile the motions and documents from *Kentucky Colonels II* related to the request for injunctive relief in this case. [*See Kentucky Colonels II*, DE 19] (order denying temporary restraining order as moot and refiling the motion for temporary restraining order and injunction in *Kentucky Colonels I* as a motion to enforce).

The Court now considers HOKC's Motion for Temporary Restraining Order and Preliminary Injunction [DE 99] which the Court treats as a motion to enforce the Permanent Injunction Order [DE 93]. The Court also considers Defendant David Wright's ("Wright") various motions.[1] Wright moved the Court "to Take Judicial Notice of Adjudicative Facts" [DE 103], to dismiss the complaint [DE 104], to hold HOKC in contempt and to expedite consideration of this

---

[1] Wright as an individual has proceeded pro se in both cases. There has been no entry of appearance on behalf of the Corporate Defendants.

1

matter [DE 113], again to "Dismiss SLAPP Action" [DE 116], for leave to move to stay [DE 127], and to stay the case.  [DE 128].  For the reasons below, the Court **GRANTS** HOKC's motion to enforce the Permanent Injunction Order [DE 99] and **DENIES** Wright's various motions [DE 103; DE 104; DE 116; DE 127; DE 128].

## I.      BACKGROUND

The Court incorporates by reference the background in its temporary restraining order [DE 32] and the information set forth in the Agreed Permanent Injunction Order against Global International, Ecology Crossroads Cooperative Foundation, Inc. ("Ecology Crossroads," together the "Corporate Defendants"), Wright (collectively, "Defendants"), and anyone acting on their behalf, prohibiting them from using KENTUCKY COLONELS and any confusingly similar trademark.  [DE 93].

HOKC argues that Wright is infringing on its KENTUCKY COLONELS trademark through his operation of a "competing organization" called "Kentucky Colonel$^{TM}$."  [DE 99 at 2722].  HOKC asks the Court to issue a temporary restraining order enjoining Defendants from this and other confusingly similar marks and activity because they are violating the Court's Agreed Permanent Injunction Order.   [DE 99].

The Court ordered the parties to appear for an evidentiary contempt hearing to determine whether Defendants' use of "Kentucky Colonels$^{TM}$" and other use as alleged violates the Court's Agreed Permanent Injunction Order [DE 105].  The Court held an in-person hearing on April 25, 2023 and continued it on May 9, 2023.  The parties presented evidence in the form of testimony and plaintiff's exhibits.  After the hearing, the Court ordered the parties to file proposed findings of fact and conclusions of law.  [DE 120].  HOKC moved for, and the Court granted, an extension of time until June 28, 2023, for the parties to file their findings of fact and conclusions of law.  [DE

125].  HOKC filed its findings of fact and conclusions of law on June 28.  [DE 126].  Neither the

Corporate Defendants nor Wright filed findings of fact and conclusions of law.  After the deadline

for filings, Wright moved "for Leave to file Motion to Stay Proceedings on Multiple Grounds and

Continuance" [DE 127], and moved "for Continuance, Time Extension and/or Stay."  [DE 128].[2]

## II.    DISCUSSION

### A.  Motion to Enforce the Agreed Permanent Injunction

HOKC argues that Wright violates the Agreed Permanent Injunction by using the Kentucky

Colonel trademark and asks the Court to hold Wright in contempt.  [DE 126].  In all his filings and

at the hearing, Wright argued that his use does not infringe on HOKC's rights and thus does not

violate the Agreed Permanent Injunction.  [*See* DE 121; DE 122].

### i.    Standard

A federal court possesses inherent power to enforce its judgments.  *See Peacock v. Thomas*,

516 U.S. 349, 356 (1996) ("We have reserved the use of ancillary jurisdiction in subsequent

proceedings for the exercise of a federal court's inherent power to enforce its judgments.  Without

jurisdiction to enforce a judgment entered by a federal court, the judicial power would be

incomplete and entirely inadequate to the purposes for which it was conferred by the

Constitution.") (internal quotation marks and citation omitted).  A court's contempt power is "one

weapon in its arsenal" that may be deployed to enforce its orders.  *Elec. Workers Pension Tr. Fund

of Loc. Union |58, IBEW v. Gary's Elec. Serv. Co.*, 340 F.3d 373, 378 (6th Cir. 2003).

A party seeking a civil contempt order "must prove by clear and convincing evidence that

the respondent violated the court's prior order."  *Glover v. Johnson*, 138 F.3d 229, 244 (6th Cir.

---

[2] The Court notes that though Wright now seeks a stay in the case, he has also filed "emergency" motions asking the Court to "expedite" its review of this matter.  [DE 113; DE 116].

3

1998). "Clear and convincing evidence is a not a light burden and should not be confused with the less stringent, proof by a preponderance of the evidence." *Electrical Workers Pension Trust Fund of Local Union |58, IBEW*, 340 F.3d at 379. The movant must show that the non-movant "violated a definite and specific order of the court requiring him to perform or refrain from performing a particular act or acts with knowledge of the court's order." *N.L.R.B. v. Cincinnati Bronze, Inc.*, 829 F.2d 585, 590–91 (6th Cir. 1987) (internal quotation omitted). "The burden of showing that an order is definite and specific is heavy." *Gascho v. Glob. Fitness Holdings, LLC*, 875 F.3d 795, 800 (6th Cir. 2017). This requirement "guards against arbitrary exercises of the contempt power" and helps ensure that the sanction is "reserved for those who 'fully understand[ ]' the meaning of a court order and yet 'choose[ ] to ignore its mandate.'" *Id.*

"Once the movant establishes his prima facie case, the burden shifts to the contemnor who may defend by coming forward with evidence showing that he is *presently* unable to comply with the court's order." *Electrical Workers Pension Trust Fund of Local Union |58, IBEW*, 340 F.3d at 379 (emphasis in original). The respondent can assert an inability to comply, but the "defendant must show 'categorically and in detail' why he or she is unable to comply with the court's order." *Rolex Watch U.S.A., Inc. v. Crowley*, 74 F.3d 716, 720 (6th Cir. 1996). "Willfulness is not an element of civil contempt, so the intent of a party to disobey a court order is irrelevant to the validity of [a] contempt finding." *Id.* (quotation omitted). "[T]he test is not whether defendants made a good faith effort at compliance but whether 'the defendants took all reasonable steps within their power to comply with the court's order.'" *Glover*, 138 F.3d at 243 (citing *Glover v. Johnson*, 934 F.2d 703, 708 (6th Cir. 1991). Good faith is not a defense in a civil contempt action. *Id.* An officer of a corporation responsible for its affairs is "subject to the court's order just as the

4

corporation itself." *Electrical Workers Pension Trust Fund of Local Union |58, IBEW*, 340 F.3d at 382.

When it has been established that a party has violated the court's order, the Court may impose both coercive and compensatory sanctions as a civil remedy. *United States v. United Mine Workers of Am.*, 330 U.S. 258, 303–04 (1947). A compensatory fine is payable to the complainant while a coercive fine is payable to the court. *United States v. Bayshore Assocs., Inc.*, 934 F.2d 1391, 1400 (6th Cir. 1991); *Winner Corp. v. H. A. Caesar & Co.*, 511 F.2d 1010, 1015 (6th Cir. 1975) ("Contempt awards to private complainants are to be compensatory."). A compensatory "fine must of course be based upon evidence of complainant's actual loss, and his right, as a civil litigant, to the compensatory fine is dependent upon the outcome of the basic controversy." *United Mine Workers of America*, 330 U.S. 258; *Penfield Co. of Cal. v. Sec. & Exch. Comm'n*, 330 U.S. 585 (1947) ("When the court imposes a fine as a penalty, it is punishing yesterday's contemptuous conduct."). In contrast, when a fine is coercive, the Court must "consider the character and magnitude of the harm threatened by continued contumacy, and the probable effectiveness of any suggested sanction in bringing about the result desired." *Id.* Relevant factors also include "the amount of defendant's financial resources and the consequent seriousness of the burden to that particular defendant." *Id.*

  *ii. Analysis*

   *a. Contempt*

The Agreed Permanent Injunction states:

1. Defendants and anyone acting on their behalf, including their owners, members, officers, agents, contractors, employees, attorneys, and any other persons in active concert or participation with Defendants, are permanently enjoined and prohibited from using the KENTUCKY COLONELS Mark, or any mark that is confusingly similar to the KENTUCKY COLONELS Mark, including, but not limited to, KENTUCKY COLONELS INTERNATIONAL and

KENTUCKY COLONEL FOUNDATION, on or in connection with the sale of any goods or service including, but not limited to, the solicitation of charitable donations and the promotion of charitable and philanthropic causes.

2. Defendants and anyone acting on their behalf, including their owners, members, officers, agents, contractors, employees, attorneys, and any other person in active concert or participation with Defendants, are permanently enjoined and prohibited from using the KENTUCKY COLONELS Mark, or any mark that is confusingly similar to the KENTUCKY COLONELS Mark, including, but not limited to, KENTUCKY COLONELS INTERNATIONAL and KENTUCKY COLONELS FOUNDATION, on any website, social media page, or blog in such a way as is likely to cause consumers to be confused, mistaken, or deceived into believing that HOKC has sponsored, sanctioned, approved, licensed, or is any way affiliated with Defendants or any organization or cause sponsored or supported by Defendants.

3. Defendants and anyone acting on their behalf, including their owners, members, officers, agents, servants, employees, attorneys, and any other person in active concert or participation with Defendants, are permanently enjoined and prohibited from using the domain names [kycolonels.international], [kentucky.colonels.net], or any other domain name that is confusingly similar to [kycolonels.org], or any domain name that incorporates the KENTUCKY COLONELS Mark, or any mark that is confusingly similar to the KENTUCKY COLONELS Mark, including, but not limited to, KENTUCKY COLONELS INTERNATIONAL and KENTUCKY COLONEL FOUNDATION.

4. Defendants and anyone acting on their behalf, including their owners, members, officers, agents, contractors, employees, attorneys, and any other persons in active concert or participation with Defendants, are permanently enjoined and prohibited from using Facebook or any other social media platform usernames "Kentucky Colonels International" or "Kentucky Colonel Foundation" or any other username or handle that is confusingly similar to the trademark KENTUCKY COLONELS for the purposes of forming a membership organization, a civil society association or other non-commercial activity such as an event or charitable fundraising endeavor.

[DE 93, Agreed Permanent Injunction Order].  The Court looks at this language in determining whether Defendants' use violates the Court's order.  The Court also looks to the mediator's proposal—as both parties argued for—which was signed by both parties and attached by HOKC. [DE 97-6].  The Court's Order was definite and specific: Defendants were enjoined from using

6

any semblance of the name Kentucky Colonel unless he was referring to himself as a Kentucky Colonel.  [DE 93; DE 97-6].

HOKC presented evidence that Defendants have been violating the Agreed Permanent Injunction Order.  They detailed Wright's use of "Kentucky Colonel" on Facebook, for example posting under the name "Kentucky Colonel" which offered to sell "the trademark Kentucky Colonel website with four domains . . . [f]or commercial development for advertising," and administering Facebook groups such as "Kentucky Colonel Community" and "Kentucky Colonel Club." [DE 121 at 3524-27].  They presented evidence of his use of the mark on other social media sites, in domain names, and in fundraising.  [*See, e.g.*, *id.* at 3524-29; DE 126 at 3671-76].  Much of the evidence presented at the evidentiary hearing was originally attached to HOKC's Complaint and motion for temporary injunction in *Kentucky Colonels II* and Wright had the opportunity to respond to it at the hearing.  [*See* DE 97-1; DE 97-3; DE 97-4; DE 97-7; DE 97-8; DE 97-12; DE 97-13; DE 97-14; DE 97-15; DE 97-16; DE 97-17; DE 97-18; DE 97-19; DE 97-20; DE 97-21; DE 97-22; DE 97-23; DE 97-24; DE 97-25].

At the hearing, Wright did not dispute his or the Corporate Defendants' use of the mark as described by HOKC; he argues that his use does not infringe on HOKC's rights because he has a right to use "Kentucky Colonel."  [DE 121; DE 122].  Wright has used the KENTUCKY COLONELS mark repeatedly, and notably on social media and for fund raising.  In using Kentucky Colonels in any way except as a personal descriptor, Wright has violated the Agreed Permanent Injunction Order.[3]  Wright's argument that he has a right to use the mark is irrelevant

---

[3] The Court notes that the Corporate Defendants have never responded to any filing in this lawsuit or Kentucky Colonels II.  By failing to retain counsel as the Court ordered and allowed time for, the Corporate Defendants have waived any response and by default could be found in violation of the Court's Agreed Permanent Injunction Order.  The evidence shows that Wright uses the Corporate Defendants in his use of the mark, and they are factually in violation of the Court's order as well.

where he has already been enjoined from doing so.  The activities Wright is engaged in violates both the letter and spirit of the Agreed Permanent Injunction Order and accompanying mediator's proposal.  Wright has presented no evidence that he was or is unable to comply with the Agreed Permanent Injunction Order. *See Electrical Workers Pension Trust Fund of Local Union |58, IBEW*, 340 F.3d at 379 ("Once the movant establishes his prima facie case, the burden shifts to the contemnor who may defend by coming forward with evidence showing that he is *presently* unable to comply with the court's order.") (emphasis in original).  The Court finds Wright's use of "Kentucky Colonel" and "Kentucky Colonel$^{TM}$" are uses prohibited the Agreed Permanent Injunction Order.  Removing an "s" and adding "TM" to the mark do not distinguish it from HOKC's registered "Kentucky Colonels" trademark or the actions of Wright and the Corporate Defendants that previously resulted in the Court's Permanent Injunction Order.  *See Victoria's Secret Stores v. Artco Equip. Co.*, 194 F. Supp. 2d 704, 726–27 (S.D. Ohio 2002) ("The singular and plural forms of the same word are essentially indistinguishable in the trademark context.") (citing *Mushroom Makers, Inc. v. R. G. Barry Corp.*, 580 F.2d 44, 47–48 (2d Cir. 1978)); *and T. Marzetti Co. v. Roskam Baking Co.*, No. 2:09-CV-584, 2010 WL 2162903, at *3 (S.D. Ohio May 27, 2010), *aff'd*, 680 F.3d 629 (6th Cir. 2012) (noting that "a TM symbol" is "trademark indicia").  Thus, the Court finds clear and convincing evidence that Wright and the Corporate Defendants are in violation of the Court's Order.

### b.  Sanctions

The Court next turns to the question of sanctions.  The extent of the sanctions imposed should be assessed by weighing the harm caused by noncompliance, "and the probable effectiveness of any suggested sanction in bringing about the result desired." *United Mine Workers of America*, 330 U.S. at 304.  The "primary purposes" of sanctions for civil contempt "are to

compel obedience to a court order and compensate for injuries caused by noncompliance." *Redken Lab'ys, Inc. v. Levin*, 843 F.2d 226, 229–30 (6th Cir. 1988). As Wright has violated this Court's order and infringed on HOKC's rights, the Court finds HOKC is entitled to compensatory damages. In its briefing and at the evidentiary hearing, HOKC submitted proof that Wright raised $7,500 using the KENTUCKY COLONELS mark. [*See* DE 97-11; DE 121 at 3545-49]. Wright's "Kentucky Colonel™" crunchbase.com website states that he raised $7,500 through that website, which, as above, the Court has determined is infringing use. [DE 121 at 3545-47; DE 126 at 3677]. Wright testified that all funds he raised on that website "have been spent" on what the Court has determined is further infringing use. [DE 121 at 3545]. Wright testified that the actual amount he raised was lower because he "was overreporting . . . to make us look good." [*Id.* at 3548-49]. But Wright presented no evidence of his actual income from the website or evidence that the $7,500 amount was overstated. Thus, the Court finds actual damages of $7,500 are appropriate.

HOKC argues that the Court should treble actual damages under the Lanham Act. The Lanham Act allows for treble damages where Defendant's contempt was willful. *See* 15 U.S.C. § 1117(b). But "in selecting contempt sanctions, a court is obliged to use the 'least possible power adequate to the end proposed.'" *Spallone v. United States*, 493 U.S. 265, 276 (1990) (citation omitted). And while the Court may rely on the Lanham Act in assessing appropriate sanctions here, it is not bound by such when considering sanctions for contempt of a court order. *See N. Atl. Operating Co., Inc. v. eBay Seller Dealz_for_You*, No. 17-10964, 2018 WL 3031092 (E.D. Mich. June 19, 2018), at *7 ("[B]ecause the Lanham Act is used as a framework, particularly in prejudgment cases such as this one, the Court is not bound by the statutory language and declines to award treble damages."). "Based on the requirement to use the least possible power, the Court's discretion both in fashioning civil contempt sanctions and awarding treble damages under the

9

Lanham Act framework, and the need to ensure the sanction is compensatory and coercive but not punitive," the Court declines to award treble damages in this case. *Gus's Franchisor, LLC v. Terrapin Rest. Partners, LLC*, No. 2:20-CV-2372-JPM-CGC, 2021 WL 918075, at *6 (W.D. Tenn. Mar. 10, 2021)

### c. Attorneys' Fees and Costs

HOKC also requests attorneys' fees and costs. [DE 121 at 3557; DE 126 at 3689]. Wright had ample opportunity to respond to this request, which HOKC has raised multiple times including at the evidentiary hearing. "[A]n award of attorney's fees is appropriate for civil contempt in situations where court orders have been violated." *McMahan & Co. v. Po Folks, Inc.*, 206 F.3d 627, 634 (6th Cir. 2000); *see also Cernelle v. Graminex, L.L.C.*, 539 F. Supp. 3d 728, 740 (E.D. Mich. 2021), *aff'd,* No. 21-1579, 2022 WL 2759867 (6th Cir. July 14, 2022) ("an award of attorney's fees and expenses in a contempt proceeding is an *equitable* remedy" (emphasis in original)). Defendants infringed on HOKC's rights in violation of this Court's Agreed Permanent Injunction Order. HOKC sought to resolve this issue with Defendants without Court intervention, and Wright refused to cease infringement. [*See* DE 97-10; DE 126 at 3690]. The Court finds granting attorney's fees and expenses for the effort extended in enforcing the Agreed Permanent Injunction is appropriate here. To determine the amount of fees, HOKC must submit billing and an affidavit describing in detail the legal services performed, hours worked, hourly rate claimed, and expenses sought. The Court will review such filings for reasonableness before ordering the amount of attorney's fees due.

### B. Wright's Various Motions

Wright moved the Court "to Take Judicial Notice of Adjudicative Facts" [DE 103], to dismiss the complaint [DE 104], to hold HOKC in contempt and to expedite consideration of this

matter [DE 113], again to "Dismiss SLAPP Action" [DE 116], for leave to move to stay [DE 127], and to stay the case.  [DE 128].

In his requests to hold HOKC in contempt [DE 113] and to dismiss the action [DE 116], Wright asks the Court to expedite its review of this matter.  These motions are contradictory with his motions to stay the case.  [DE 127; DE 128].  As a result, they are denied.

In his motion for the Court to "Take Judicial Notice of Adjudicative Facts," Wright asks the Court to take judicial notice of "nine[] unordered facts."  [DE 103 at 3314].  Federal Rule of Evidence 201 allows the Court to take judicial notice of a fact that is "not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  "[C]ourts do not take judicial notice of documents, they take judicial notice of facts." *Abu-Joudeh*, 954 F.3d at 848.  Indisputability of facts to be noticed is "a prerequisite" to judicial notice, and "dispensing with traditional methods of proof should only occur in clear cases." *United States v. Ferguson*, 681 F.3d 826, 834 (6th Cir. 2012).  A court cannot take judicial notice of facts subject to reasonable dispute by the parties. *Abu-Joudeh*, 954 F.3d at 848-49.  In his motion for judicial notice, Wright includes several pages of information related to the history of KENTUCKY COLONEL, the Kentucky Colonels, and many of their founding members.  [DE 103 at 3314-23]. Wright's briefing is largely unsupported by citations or attached documents.[4]  The information Wright asks the Court to take judicial notice of is not indisputable fact.  The information is not

---

[4] While Wright does attach several exhibits, they do not clearly support his assertions.  For example, "Exhibit 2" appears to be a scanned copy of a newspaper which mentions a "Kentucky Colonel." [DE 103-2 at 3328].  The exhibit is captioned "[f]irst known publication of the complete term "Kentucky Colonel" and its introduction to the English language. . ." [*Id.*].  Wright points to this exhibit in support of his contention that the "first public domain merger (word pairing) to create the lexeme "KENTUCKY COLONEL" to represent a proper name (*noun*) made (merged in the public domain) was in London in 1833. . ." [DE 103 at 3313].  There is neither date, location, nor any other evidence within the exhibit to directly support Wright's contention.

readily determined from sources whose accuracy cannot reasonably be questioned. The information is thus inappropriate for the Court to take judicial notice of. Furthermore, the purported 'facts' are irrelevant to the Court's resolution of the matters before it. As a result, this motion is also denied.

Throughout his filings, Wright makes various arguments in support of his argument that he has not violated the Agreed Permanent Injunction Order, all of which go to his argument that he is legally allowed to use "Kentucky Colonel." To the extent that Wright's arguments in his motions to dismiss go to dismissing the Complaint, these arguments are moot, as that complaint is not operative in this action. [DE 104; DE 116]. To the extent that Wright's arguments go to his opposition to the TRO and enforcement of the permanent injunction, the Court considered these arguments and found Wright in contempt of the permanent injunction.

In Wright's most recent filings, he argues that he needs time to find an attorney who will take his case pro bono or to raise funds to pay for an attorney. [DE 128 at 3698]. The Court has previously allowed Wright more than ample time to obtain an attorney and has denied his request for the Court to appoint him an attorney. [DE 46; DE 105]. Over seven months have passed since the start of this enforcement action and this request only comes after all the deadlines for briefing have passed. [DE 97]. The Court explicitly allowed the Corporate Defendants time to retain counsel. [DE 105 at 3363-68]. And while Wright requests time to object and respond to HOKC's proposed findings of fact and conclusions of law [DE 127 at 3693], he fails to justify such request, which was filed out of time over a month after such filings were due. Having reviewed each of Wright's filings, the Court concludes that the arguments in Wright's various motions are meritless, and **DENIES** his various motions [DE 103; DE 104; DE 113; DE 116; DE 127; DE 128].

### III.    CONCLUSION

For the reasons above, and being otherwise sufficiently advised, **THE COURT ORDERS AS FOLLOWS**:

1. Defendants are **HELD** in **CONTEMPT** of the Permanent Injunction entered by this Court on February 23, 2021 [DE 93].  Defendants are required to abide by the Agreed Permanent Injunction Order that remains in place and are **ORDERED** to cease use of the Kentucky Colonels trademark;

2. Defendants are **ORDERED** to pay $7,500 in compensatory sanctions for failure to abide by the Agreed Permanent Injunction Order;

3. HOKC is allowed **10 days to file a motion for attorneys' fees** including a detailed affidavit and billing;

4. Wright's various motions [DE 103; DE 104; DE 113; DE 116; DE 127; DE 128] are **DENIED**.

Rebecca Grady Jennings, District Judge
United States District Court

August 9, 2023

Cc:    Counsel of record
       Defendant, pro se

13