UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

```
                                            FILED
                                            JAMES J. VILT JR., CLERK
                                            U.S. DISTRICT COURT
                                            W/D OF KENTUCKY

                                            Date:      Jan 22, 2024
```

| | |
|---|---|
| **THE HONORABLE ORDER OF KENTUCKY COLONELS, INC.** <br> Plaintiff <br><br> vs. <br><br> **KENTUCKY COLONELS INTERNATIONAL, et.al.** <br> Defendant(s) & Appellant | Civil Action No. 3:20-cv-00132-RGJ <br><br> **SUPPLEMENTAL MOTION FOR LEAVE TO FILE IN FORMA PAUPERIS** <br><br> **MOTION FOR PAUPER STATUS** <br> **MOTION TO STAY JUDGMENTS** <br><br> — FEE WAIVER REQUESTED — |

## SUPPLEMENTAL MOTION FOR LEAVE TO FILE IN FORMA PAUPERIS

Comes now the **Pro-Se, Defendant-Appellant, Col. David J. Wright, a Kentucky Colonel,** to humbly move for leave in the U.S. District Court to reaffirm his socioeconomic status and qualify him as a *forma pauperis* appellant under 28 U.S.C. § 1915 and in order to waive the filing fee under Fed. R. App. P. 24 for his **Supplemental Notice of Appeal** with the Sixth Circuit Court of Appeals, filed with this Court on **December 13, 2023 in [DE 142].**

The 6th Circuit Court of Appeals has automatically docketed the Supplemental Notice of Appeal as **a new Appellate Case under Number 23-6108** on **December 20, 2023**, therefore the Circuit Court formally **requires a new fee waiver for the new filing**. The Circuit Court stated in **[Document 1 of 23-6108]**: "You have until January 26, 2024 to either pay the $605.00 appellate filing fee or file a motion for leave to proceed on appeal in forma pauperis and an accompanying financial affidavit. Either one must be paid/filed with the U.S. District Court. Failure to do one or

the other may result in the dismissal of the appeal without further notice. If you move for pauper status and the district court denies your motion in part or in full, or if you are otherwise dissatisfied with the district court's ruling, you may renew the motion for pauper status in this court within 30 days of that ruling."

This Motion for Leave is presented to the Court in good-faith; in a timely fashion prior to January 26, 2024; in accordance with Federal Rules of Civil Procedure; in accordance with Federal Rules of Appellate Procedure; and as a matter of due diligence on the part of Defendant/Appellant, who filed a Motion for Affirmative Relief in the Sixth Circuit Court on January 02, 2024 to combine the two appeals; combining the new Circuit Court Case Number 23-6108 with Case Number 23-5795 from this Court's August 9, 2023 ruling on WDKY 3:20-cv-00132 and the August 16, 2023 ruling on WDKY 3:23-cv-00043, which have both been dismissed and closed.

## MOTION FOR PAUPER STATUS

The Pro-Se Defendant/Appellant states: "I move to waive the payment of the appellate filing fee under Fed. R. App. P. 24; because I am a pauper, neither my income nor the income of my endeavors that provide sustenance have neither increased nor decreased by more or less than 10-20%, as a result of this case and other unrelated facts my personal income remains well below the poverty line as it has been since this case began on February 20, 2020."

The US Department of Health and Human Services ("HHS") has released the 2024 federal poverty levels (FPLs) that will be used for means-tested public benefits, including Medicaid and

CHIP. The poverty level for an individual has increased from $14,580 to $15,060. The annual income of the Defendant living on the Orinoco River in Colombia is under $10,000 per year. This motion is supported by the following Affidavit in Support of this Motion.

## AFFIDAVIT IN SUPPORT OF MOTION

I swear and affirm under penalty of perjury that, because of my poverty, I cannot prepay the docket fees of my appeal or post a bond for them. Being required to pay these fees would cause undue hardship for me as a pro-se appellant and justice would not be served. I strongly believe I am entitled to redress in HOKC v KCI, et.al. (Kentucky Colonels I) and (Kentucky Colonels II) cases litigated before this Court, there are numerous errors in these cases prompted by the plaintiff. I swear or affirm under penalty of perjury under United States laws that the information provided in this affidavit is true and correct. (28 U.S.C. §§ 1746; 18 U.S.C. §§ 1621.)

The Defendant/Appellant is a single male American citizen, Kentucky Colonel and expat, a self-styled perpetual tourist and digital nomad that maintains his virtual business presence and legal residency from Kentucky through family members in Madison County, Kentucky while living abroad. Colonel Wright has been living outside of the United States almost continuously since 2004 in Venezuela with his wife Sonia and two children, in November 2020 the Colonel became a widow when his wife died in Caracas, Venezuela. In 2023 once his youngest daughter turned 18, Colonel Wright left the family home and went into exile from Venezuela crossing the Orinoco River to Puerto Carreño in Colombia after being singled-out and targeted by government officials, as a Kentucky Colonel and Goodwill Ambassador to escape the xenophobic government

of the Bolivarian Republic of Venezuela which has refused to grant him legal residency or transient status since 2014, he managed to remain from 2016 until 2023 only at the grace of local authorities while living among his family members. On February 28, 2023, Colonel Wright was required to sign an "ACTA NO VEJAMENES" (NON-VEJAMENESS ACT) when he was debriefed as a non-resident and temporarily detained in Puerto Paez in Venezuela by the navy at the river crossing with his family, friends and belongings. The Non-Vehemeness document he was obligated to sign states that he and his party was not mistreated by Venezuelan authorities and that no extortion occurred while in Venezuela. (See Exhibit 1)

Colonel Wright has two adult children in Venezuela and two adult children in the United States, he currently resides in Colombia in a very remote capital city and outpost where he can be close to his younger children, a place where his children in Kentucky can come visit, and where he can attend to his 25 acre hobby farm called "Ekobius" located 60 kilometers away on the Catañiapo River in Venezuela's Amazon (an intentional community and ecotourism project on hold since 2014 bordering an Indigenous reservation).  From time to time his children assist him with his living expenses and he draws a subsistence income base salary of $150 United States Dollars per week (less than < $200 per week) for the administration of dozens of educational and thematic blogs and websites where he is the primary author, creator and webmaster; as well as the administrator of a publishing platform that he has developed using open source components, premium services, and communications tools called APIs. Colonel Wright gives private English classes to supplement his income at the rate of $5-$8 (five to eight dollars) per class hour from

7-10 hours per week. As a perpetual tourist in Colombia, Colonel Wright is very limited occupationally.

The Defendant/Appellant, Col. David J. Wright states as follows:

1. I have been blocked from pursuing my rights to dual-citizenship, my personal real-estate, and legal residence status in Venezuela because the country's government refused to acknowledge me since 2014 based on a xenophobic autocratic government policy of "Gringo Go Home". Since 2019, when the US Embassy pulled-out and the US Ambassador left Venezuela my real-estate investment in Venezuela has been a total loss costing $3,000 per year or $120 USD every fortnight to maintain and keep secure. This is currently my greatest debt and my son in Venezuela often pays this bill for me.

2. My income is $600 per month based on funds becoming available for the work I perform for Globcal International members who support my endeavors (their endeavors) and work with me under Ecology Crossroads as their executive director and administrator. In 2015, the Globcal International executive council resolved that I could be paid up to $200 per week for providing administrative services to the membership.

3. Sometimes I provide English classes locally in Colombia and sometimes consultancy services online remotely, on average I earn $80 to $150 (eighty to one-hundred fifty dollars) per month, some months I do not earn any additional income at all.

4. I do not own any real estate in the United States, I do not own any stocks or bonds, I do not receive any dividends or any interest on any debts owed to me.

5. I do not currently own any automobiles, motor homes, or other vehicles. I do not own any trailers, pleasure craft, boats or waterborne vessels.

6. I do not have any life insurance policies and cannot afford to pay for medical insurance.

7. No one owes me any money for any contracts or work performed that has not been paid.

8. I currently have less than $280.00 saved in the Globcal International bank account in Kentucky towards my February monthly budget.

9. I have no debts except minor amounts between friends and family that do not exceed $1,000 total. My children (all four) and ex-wife help me from time to time to cover some living expenses in months where there are income shortfalls.

10. No single person owes me more than a few dollars if anything at all, because I never loan more than I can spare or afford to spend, therefore loans I make are all forgiven before they are granted. Each year I receive up to $1,000 in cash gifts and/or tips from people that I work with or encounter in creating and developing websites and publishing content for my causes. I never loan much more than I ever receive as gifts.

11. I have a judgment against me from this Court from November 13, 2023 where I am "ordered to pay Plaintiff, The Honorable Order of Kentucky Colonels, Inc. a portion of its attorneys' fees in the amount of $9,425.00 … and ordered to pay Plaintiff The Honorable Order of Kentucky Colonels, Inc. its costs in the amount of $1,052.25 — within ninety (90) days." which herein is one of the subjects of my appeal as one of the Plaintiff's

donors, members and volunteers for almost 25 years. I am unable to pay this debt, which I understand was automatically stayed on appeal.

12. I borrowed $3,000 from the Small Business Administration during the COVID Pandemic and lock-down period to comply with the Temporary Restraining Order, keep the business open and defend this lawsuit. I will need additional time to pay this US Federal Government debt due to the lawsuit and this judgment.

13. While living here in Colombia and on the Orinoco River my monthly expenditures exceed my monthly income by approximately 20-25%. The cost of living, including rent, food, utilities and other expenses is $720 per month for myself and my dog, this is the monthly average based on living here now for 11 months.

14. I have not stated the cost of clothing, dining out and recreation because there is rarely any money for that, the total in these categories together would be under $500 per year.

15. I have my Kentucky Colonel Title which is my greatest intangible personal asset, it is valued at over $3,000,000 to me in my $10,000,000 life, more valuable than a college degree; it is a direct source of income for the work I discreetly perform for the Commonwealth of Kentucky (some of its citizens and its colonels) using the Honorable title and my letters patent as one of its (their) official/unofficial goodwill ambassadors and as a civilian state officer. It directly qualifies me for many occupations, once the employers know I am a Kentucky Colonel, I am usually hired. I have managed to impress quite a few people as "Col. David J. Wright" in Kentucky and as "Hon. David J. Wright,

Kentucky Colonel" everywhere else, since Governor Patton recognized me as "Honorable David Wright" in 1996 with a Kentucky Colonel Commission I have signed my name /s/ Col. David J. Wright. I have been recognized by Heads of State, Newspapers, International Governments and US Senators as Colonel David J. Wright.

16. All other assets and claims I hold, have initiated or maintain are speculative promotional ideals, development concepts, some pompous wishes and dreams of a Kentucky Colonel in need of funding, that are either too poorly funded or not funded at all, or fully active yet; in part due to this lawsuit taking up all my time and challenging me publicly. None of these ideas or projects in formation, being planned and/or for development produce income until they are actually funded. Million dollar ideas and projected income do not equate to material earnest wealth in the present.[1]

---

[1] "Personal campaigning and self-promotion within the scope of proposed ideas that make a positive or sound social impact for the public benefit owned by "others" based on estimated speculative values or those estimated with prowess now or in the future are not prohibited by law (in the United States) nor can such values be considered part of a [Defendant's] income before the [idea] can factually be manifested and counted as asset for as long as it is mere speech in a projection of [my] personal ability or desires. Constructive future claims and proposed ideas borne from the fabric of the "American Dream" [in other countries] cannot be considered income until they actually produce real capital, are manifested by its members, and proven to yield an income sustainably and substantively." The Plaintiff has interjected the prejudicial allegation arguing to the Sixth Circuit Court of Appeals that my income and wealth should be examined by the court (that the Circuit Court should deny my Motion for Pauper Status) in **Sixth Circuit Court Case: 23-6108, Document: 9, Filed by Plaintiff on 01/08/2024, on Page: 5**; because it "believes" I am a well-financed individual with the organizational aspirations I have conceived and created in projects that are currently on hold and/or proposed despite the fact that no evidence is presented of funds having been raised and the Plaintiff has not made any investment therein which might give it grounds to raise such an argument. The Circuit Court should clearly see that the Plaintiff's arguments are nothing more than suspicious admonishable attempts to create an unfavorable bias in the court and are prejudicial to the Appellant's case. The argument that follows in HOKC's Document 9 argues that the Appellant would not benefit by the appointment of pro-bono counsel despite its law firm representative of a team of licensed attorneys litigating against a pro-se pauperis defendant is ridiculous and prejudicial as well.

17. I have no dependent children, do not pay child support, pay or receive alimony, I am not retired, do not receive any pension payments, do not receive welfare benefits, public assistance, and do not consider myself unemployed since the COVID Pandemic.

18. I am partially disabled from a workplace injury in 1993 at General Electric as a maintenance engineer, however since retraining and rehabilitation in 1994 into the field of technology and Internet development. I have not applied for, needed to apply for, and do not receive Social Security Disability Insurance benefits.

FURTHER AFFIANT SAYETH NAUGHT, praying that the affidavit be deemed adequate to determine that the Defendant/Appellant be considered Pauperis by the Honorable Court.

Puerto Carreño, Colombia
Dated: January 22, 2024

*[signature: Col. David J. Wright]*

Col. David J. Wright

## MOTION TO STAY JUDGMENT(S)

The Defendant moves this Court to Stay the Judgment(s) under Fed. R. Civ. P Rule 8(a)(1) in Case Number 3:20-cv-00132 on ORDER [DE-58], AGREED PERMANENT INJUNCTION [DE-93], AGREED ORDER OF DISMISSAL [DE-94], MEMORANDUM OPINION AND ORDER [DE-129] and MEMORANDUM OPINION AND ORDER [DE-138] and further suspend any further post case activity and proceedings in the closed case pending a justified resolution in Circuit Court Case Numbers 23-5795 and 23-6108 for this matter.

Defendant respectfully requests a stay of the judgment(s) (orders) issued in Case Number 3:20-cv-00132, a stay that is both essential and urgent to prevent a grave miscarriage of justice and civil rights conspiracy against the Defendant created by the Plaintiff through the use of the Court's powers. The recent filing of Circuit Court Cases 23-5795 and 23-6108 sheds stark new light on this matter, revealing crucial evidence, and legal arguments that were absent from the onset of this case involving the Defendant's civil and constitutional rights in both common and statutory law. The Court was deprived by the Plaintiff of a number of known facts that would have otherwise prevented this case from being heard. Allowing the current judgments to stand while these critical factors remain unexamined would be both prejudicial to Defendant, exacerbate damages, cause harm, and injury to the Defendant, and will be detrimental to the pursuit of truth and justice in this case.

The Circuit Court cases delve into facts and knowledge that should have been presented by the Plaintiff that may have been intentionally omitted with sophistication or was fraudulently concealed, by the Plaintiff's counsel causing the court to err in its judgments; or if the information was not disclosed by the Plaintiff to its own counsel (discoverable upon appeal). This previously undisclosed information directly contradicts key assumptions that underpinned the original judgments, initial case decisions, those made during litigation, raising compelling questions about their validity. Holding the stay ensures that these vital elements are not unjustly neglected and that Defendant's due process rights and civil rights are fully protected. There is little doubt that the Defendant's mediated equity was not fully considered by the Court when contempt of the Agreed

Permanent Injunction was erroneously and mistakenly substituted as the inequitable violation of the Preliminary Injunction in the mind of the court opinion.

Furthermore, Defendant's ability to fully engage in the appeals process is now severely hampered by the financial burdens imposed by this protracted litigation. The stay affords time and the minimal resources to properly analyze evidence, construct a robust appeal, and ensure a level playing field in the Appellate Court. To proceed without a stay would essentially silence Defendant's voice, usurp his rights and allow an incomplete, potentially flawed judgment to stand, a scenario fundamentally incompatible with the principles of justice in the United States.

Granting the stay serves not only Defendant's interests but also the larger pursuit of a just outcome. It allows for a comprehensive examination of all relevant facts and arguments, leading to a final judgment that reflects the full picture and upholds the integrity of the judicial process. In the face of such compelling reasons, denying the stay would be tantamount to perpetuating an injustice and jeopardizing the very possibility of fair redress. The court should be aware that none of the allegations made in now two complaints that strongly bear the resemblance of SLAPP actions have been dismissed, the Plaintiff has not shown any *prima facie* evidence of trademark infringement by the Defendant. The only thing the Plaintiff has shown the Court is that it is a local charity with a golden reputation that deserves to be protected from the Defendant in name, this merit is demonstrated in the Preliminary Injunction and would be credible "if the Defendant were found to be infringing or diluting the Plaintiff's mark". Further the Plaintiff has demonstrated to the Court that "editorials" written by the Defendant that were allegedly defamatory, makes it

abundantly clear that the Defendant was not infringing in these commentaries, but engaging socially, exercising his rights to free speech, to redress grievances, and nominatively refer to the Plaintiff's name and/or trademarks that the Plaintiff had not yet applied for. The actions of the Defendant between December 31. 2019 and February 09, 2020 were nothing less than legal, including a letter that was hand delivered to Governor's Dispatch about the Plaintiff. The complaint filed on February 20, 2020 was nothing less than retaliation for going to the governor, exercising civil rights, and continuing Defendant's project originated in 1998 with the Kentucky Colonel Registry. It is clear the trademark filings made by the Plaintiff three days earlier on February 17, 2020 were made in bad-faith.

## ARGUMENT SUPPORTING STAY

The Appellant's case in the Sixth Circuit Court will argue the the Kentucky Colonels Cases I and II never should have been entertained by the Court which made a series of procedural errors, mistakes that hinge on judicial bias colored by the plaintiff where the court failed to examine critical evidence that was submitted before the Court Mediated Settlement Conference that resulted in an Agreement created by the Magistrate of the Court. The Appellant never having applied for the "KENTUCKY COLONELS" trademark in the USPTO will also argue:

1. **Case was Presented as a Pretextual Lawsuit:** This refers to a lawsuit where the stated legal claim is an understandable mere pretext or cover for the real purpose, which is to suppress the defendant's protected activity (in this case, fair use).

2. **Case was a Strategic Lawsuit Against Public Participation (SLAPP):** This refers to lawsuits filed against individuals or organizations engaged in public participation activities (like free speech, redress or criticism) with the intent to silence them through the burden of defending the lawsuit, regardless of its merit. While trademark cases aren't typically considered SLAPPs, the concept might apply if the trademark claim seems frivolous and intended to chill the defendant's fair use of a term that is not a trademark.

3. **Case was a Colorable Claim:** This refers to a legal claim that, while ultimately weak (dismissible), has enough surface plausibility to survive an initial challenge and proceed to further litigation. In this case, the court might consider the trademark claim colorable, delaying and defying consideration of the underlying fair-use civil rights argument until later stages of the case before it can be proven to be an actual controversy.

4. **Case was Mischaracterized as a Trademark Issue:** This simply refers to an inaccurate description of the case's true nature when it was presented. The District Court labeled it a "trademark issue" when it also involves a clear civil rights aspect not presented by the Plaintiff, then it could be seen as a mischaracterization of the underlying dynamics and would cause an erroneous framing of the case by the court.

5. **Case Suffers from its Procedural Posture:** This is a legal term that describes the current stage of the case within the judicial system. In our Kentucky Colonels cases, the case being on appeal means it's in the "procedural posture" of **appellate review**, which might

influence the focus on specific legal issues like trademarks and corporate rights compared to an individual's civil rights, the right to publicity and/or copyright at different stages.

Ultimately, the specific terms used creating an appeal might not be as important to the appellant as clearly articulating the arguments that the underlying civil rights concern (fair use) is central to the case, even if it was initially framed as a different legal issue where fair-use or other legal use was not considered in the absence of a legal trademark framing where infringement was never proven.

## CONCLUSION

Therefore, for the reasons stated in the motions above, and within the context of his Affidavit in Support of Status as a Pauper, Defendant implores the Court to grant a stay of the judgment(s) suspending Case Number 3:20-cv-00132 and all such orders that are not automatically stayed based on the Notice of Appeal [DE-132] and Supplemental Notice of Appeal [DE-142] currently pending in the soon to be combined Sixth Circuit Court Cases 23-5795 and 23-6108 as a *pro-se forma pauperis* appellant. Justice demands nothing less.

Puerto Carreño, Colombia
Dated: January 22, 2024

*Col. David J. Wright* (signature)

Col. David J. Wright
david.wright@globcal.net
+1 (859) 379-8277

## Certificate of Service

I hereby certify that on January 22, 2024, I emailed for filing the foregoing Notice of Appeal with attachments to the Clerk of the Court for the United States District Court of the Western District of Kentucky using the special Pro Se Intake Email per General Orders 20-04 and 20-11 for entry to the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system once the document is filed and assigned a document number by the Clerk of the Court.

Clerk's Office
601 W. Broadway, Rm 106
Gene Snyder United States Courthouse
Louisville, KY 40202

*Col. David J. Wright*