UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

*Electronically Filed*

| | |
|---|---|
| THE HONORABLE ORDER OF KENTUCKY COLONELS, INC. ) ) ) | |
| PLAINTIFF ) | |
| v. ) | CIVIL ACTION NO. 3:20-CV-132-RGJ |
| ) | |
| KENTUCKY COLONELS INTERNATIONAL, et al. ) ) ) | |
| DEFENDANTS ) | |

**RESPONSE AND OBJECTION TO DEFENDANT'S MOTION FOR**
**UNBONDED STAY OF ENFORCEMENT OF JUDGMENTS [DE 145]**

Plaintiff, The Honorable Order of Kentucky Colonels, Inc. ("HOKC"), by counsel, hereby tenders the following response to the Motion to Stay Judgments tendered by Defendant David J. Wright ("Wright") [DE 145] ("Wright's Motion").[1] The motion must be denied because Wright has not, and cannot, establish *any* of the elements necessary to support such a request.

---

[1] Wright's filing is also styled "Supplemental Motion for Leave to File in Forma Pauperis." HOKC does not take a position on that request or the factual representations made to support that request other than to note that they appear to be inconsistent with Wright's acknowledgement that he owns a "large parcel of land" on the Orinoco River in Columbia and that his affiliate, Globcal International, is actively engaged in the development of that property as a "tourist attraction and sponsored planned maintenance site." *See* Puerto Carreno Tourism Council webpage https://www.puertocarreno.com/orinoco-river-beach (hard copy attached hereto as Exhibit 1). Wright further fails to disclose that the development initiative is "seeking a total of 4.3 million US dollars to make improvements" to the area. Wright's failure to identify such business ventures seems inconsistent with his demand that the Court recognize him as a pauper.

**BACKGROUND**

On February 20, 2020, HOKC filed its Verified Complaint alleging, among other things, that Wright and his affiliates misappropriated HOKC's federally registered trademark, KENTUCKY COLONELS, and engaged in conduct constituting trade name infringement, unfair competition, false designation of origin, and cyberpiracy. (Verified Complaint [DE 1]). During the course of the litigation, the Court entered a Temporary Restraining Order [DE 14] and a Preliminary Injunction [DE 58] finding, on multiple occasions, that HOKC had established (1) a likelihood of success on the merits of its claim; (2) that it would suffer irreparable harm in the absence of an injunction; (3) that any potential harm to Wright if an injunction was granted was outweighed by the potential harm to HOKC; and (4) that the public interest was best served by enjoining Wright's activities. (*See e.g.*, 8/13/20 Order [DE 58], PageID #1221-1229). On February 23, 2021, the Court entered an Agreed Permanent Injunction prohibiting Wright and his affiliates from "using the KENTUCKY COLONELS Mark, or any mark that is confusingly similar to the KENTUCKY COLONELS Mark" in connection with the sale of goods or services, the solicitation of charitable donations, or the formation of any membership organization or charitable fundraising endeavor. (Agreed Permanent Injunction [DE 93], PageID #2057). Wright ***knowingly agreed*** to the restrictions in the Agreed Permanent Injunction to resolve the claims made against him in HOKC's Verified Complaint.

Wright began violating the Agreed Permanent Injunction in May 2022. After conducting an extensive evidentiary hearing, the Court found Wright in contempt of the Agreed Permanent Injunction and awarded HOKC damages resulting from Wright's violation of that order. (8/9/23 Memorandum Opinion and Order [DE 129], PageID #3714). The Court

further ordered that Wright and his affiliates were "required to abide by the Agreed Permanent Injunction Order that remains in place and are **ORDERED TO CEASE USE OF THE KENTUCKY COLONELS TRADEMARK**." *Id.* at PageID #3726 (emphasis added).

By Order dated November 13, 2023, the Court awarded HOKC attorneys' fees and costs incurred in prosecuting the motion for contempt. The Court found that the fee requested by HOKC ($94,254.75) was reasonable inasmuch as the case required substantial time and labor "due solely to Defendants' continual contemptuous conduct and myriad demands." (11/13/23 Order [DE 138], PageID #3843). The Court noted that "all attorneys' fees incurred since the entry of the [Agreed Permanent Injunction] stem from Defendants' unwillingness to comply with their own negotiated terms." (*Id.* at PageID #3844). Nevertheless, the Court awarded only 10% of HOKC's fees because of "Wright's financial condition." *Id.* The Court believed that the fee award would still be "sufficient to reflect the seriousness of Wright's contemptuous conduct and ***promote deterrence***." *Id.* (emphasis added).

Now, Wright asks the Court to stay enforcement of the Agreed Permanent Injunction which reflects the terms that he negotiated and agreed to in order to settle HOKC's claims for his blatant trademark infringement. Wright has the gall to make this request even though, to this day, he brazenly continues to violate the Agreed Permanent Injunction.[2] Not only

---

[2] Even though the Court has found Wright in contempt for violating the Agreed Permanent Injunction, awarded HOKC damages for his violation of the Agreed Permanent Injunction, sanctioned him with attorneys' fees for violating the Agreed Permanent Injunction, and specifically ordered him to cease using the Kentucky Colonels trademark, he continues to solicit charitable donations and create I.D. cards as well as maintain a website and Facebook groups using the KENTUCKY COLONELS Mark. Now he is engaged in such actions under the guise of the "Kentucky Colonel Council." Wright claims that the Kentucky Colonel Council is "a new initiative that is protected in law by the Office of the Governor" and he is offering "membership benefits" for an initial donation of Twenty-five Dollars ($25), Fifty Dollars

3

have the Court's efforts to "promote deterrence" failed, but Wright demands the Court endorse his continued contemptuous conduct by effectively nullifying its prior orders.

Wright also requests the Court stay enforcement of the money judgments entered against him solely on the grounds that he lacks the financial wherewithal to post a bond. The Court has already taken Wright's alleged pauper status into consideration, dramatically reducing the amount of attorneys' fees awarded to HOKC based on Wright's "financial condition." (*See* 11/13/23 Memorandum Opinion and Order [DE 138], PageID #3844). There is no legal or equitable basis for allowing Wright to further exploit his alleged pauper status by staying enforcement of the Court's orders.[3]

**ARGUMENT**

**I.  WRIGHT'S MOTION TO STAY ENFORCEMENT OF THE INJUNCTION AND CONTEMPT ORDERS MUST BE DENIED.**

Wright asks the Court to stay enforcement of the Agreed Permanent Injunction [DE 93] as well as the Memorandum Opinion and Order finding him to be in contempt of the Agreed Permanent Injunction [DE 129]. (Wright's Motion, 15). Under Fed. R. Civ. P. 62(d), the Court has the power to suspend, modify, restore, or grant an injunction during the pendency of an appeal. However, Wright is utterly unable to establish any of the grounds necessary to support such relief.

Courts have outlined a four part test for whether an injunction should be granted, amended, modified, or suspended pursuant to Rule 62(d). The criteria are identical to those

---

($50), or One Hundred Dollars ($100). HOKC's January 12, 2024 cease and desist letter concerning Wright's "new initiative" and Wright's response to that letter are attached as Exhibit 2.

[3] HOKC has moved the Court for entry of default judgment against Wright's affiliates, Ecology Crossroads Cooperative Foundation, Inc. and Globcal International [DE 139]. That motion stands fully briefed and submitted for a decision.

used in determining whether motions for injunctive relief of any nature will be granted. Those factors are:

    (1)    That the petitioner is likely to prevail on the merits on appeal;

    (2)    That the petitioner is likely to suffer irreparable injury if the stay is denied;

    (3)    That other parties involved will not be substantially harmed by the granting of the stay; and

    (4)    That granting the stay will serve the public interest.

*Grutter v. Bollinger*, 247 F.3d 631, 632-33 (6th Cir. 2001); *Miner v. Ogemaw County Road Commission*, 647 F. Supp.3d 582, 584 (E.D. Mich. 2022). This Court has already recognized that Wright cannot establish any of these factors.

Wright's attempted justifications for his misappropriation of the KENTUCKY COLONELS Mark have been repeatedly rejected, and the Court has consistently found that he blatantly violated the Agreed Permanent Injunction. (*See* 8/9/23 Memorandum Opinion and Order [DE 129], PageID #3720-21). Thus, Wright cannot establish that he is "likely to prevail on the merits on appeal." In addition, Wright continues to violate the Agreed Permanent Injunction by soliciting memberships to the "Kentucky Colonel Council." He cannot demonstrate that he is "likely to suffer irreparable injury if the stay is denied" because he clearly intends to ignore the Agreed Permanent Injunction even though the Court ordered him to cease using the KENTUCKY COLONELS Mark. Finally, HOKC and the public interest will clearly be harmed if the Court stays enforcement of the Agreed Permanent Injunction, thereby approving Wright's continued violation of that order.

Generally, enforcement of an injunction is only appropriate to maintain the status quo of the parties pending the outcome of the appeal. *Mayweathers v. Newland*, 258 F.3d 930, 935-36 (9th Cir. 2001). Here, granting Wright's motion to stay would have the exact opposite

effect. Wright negotiated and agreed to the provisions in the Agreed Permanent Injunction in order to resolve claims made against him. The Agreed Permanent Injunction has been in full force and effect for almost three years. The Court has specifically directed him to comply with the terms of the Agreed Permanent Injunction. Thus, granting Wright's motion to stay would completely disrupt that status quo.

## II. WRIGHT IS NOT ENTITLED TO STAY OF THE ORDERS AWARDING DAMAGES AND ATTORNEYS' FEES RESULTING FROM HIS CONTEMPOUS CONDUCT.

A judgment debtor is entitled to a stay of enforcement pending appeal upon posting a sufficient supersedes bond or other security. *See* Fed. R. Civ. P. 62(b). A district court may, however, in its discretion, grant a stay without requiring the posting of a bond or other security. *Dillon v. City of Chicago*, 866 F.2d 902, 904-05 (7th Cir. 1988). Wright's motion provides no grounds for a stay without posting a bond.

When Rule 62 was amended in 2018, "[s]ubdivisions (a), (b), (c), and (d) of former Rule 62 [were] reorganized and the provisions for staying a judgment [were] revised." Fed. R. Civ. P. 62 Advisory Committee's Notes to 2018 Amendment. In particular, "Subdivision 62(b) carries forward in modified form the supersedes bond provisions of former Rule 62(d)." *Id*. New Rule 62(b)'s "text makes explicit the opportunity to post security in a form other than a bond." *Id*. Fed. R. Civ. P. 62(b) now provides that "[a]t any time after judgment is entered, a party may obtain a stay by providing a bond ***or other security***. The stay takes effect when the court approves the bond ***or other security*** and remains in effect for the time specified in the bond ***or other security***" (emphasis added).

Discussing Rule 62(b)'s predecessor, former Rule 62(d), the Second Circuit Court of Appeals explained:

6

> [The] purpose of the rule is to insure that the prevailing party will recover in full, if the decision should be affirmed, while protecting the other side against the risk that payment cannot be recouped if the decision should be reversed. A district court therefore may, in its discretion, waive the bond requirement ***if the appellant provides an acceptable alternative means of securing the judgment***.

*In Re Nassau County Strip Search Cases*, 783 F.3d 414, 417 (2nd Cir. 2015) (citation omitted; emphasis added). When determining whether to waive the posting of a bond, the Seventh Circuit Court of Appeals has ruled that the court may consider:

> (1) The complexity of the collection process; (2) the amount of time required to obtain a judgment after it is affirmed on appeal; (3) the degree of confidence that the district court has in the availability of funds to pay the judgment …; (4) whether the defendant's ability to pay the judgment is so plain that the cost of a bond would be a waste of money …; and (5) whether the defendant is in such a precarious financial situation that the requirement to post a bond would place other creditors of the defendant in an insecure position…."

*Dillon*, 866 F.2d at 904-05. Applying this framework, the Second Circuit stayed a judgment in *Nassau County* without a bond or other security because the appellant had appropriated the funds to pay the judgment and made arrangements "to provide for immediate payment" if the appeal was unsuccessful. *Nassau County*, 783 F.3d at 418. Accordingly, the court of appeals found "no practical reason to require *Nassau County* to post a bond or deposit funds in order to secure a Rule 62(d) stay pending appeal." *Id*.

However, in *Xerox Corp. v. JCTB, Inc.*, No. 6:18-cv-06154-MAT, 2019 WL 6000997 *3 (W.D. N.Y. Nov. 14, 2019), the court applied these factors to deny an unbonded stay because the judgment debtor could not establish its financial wherewithal to satisfy the judgment. The *Nassau County* factors contemplate waiving the requirement of a supersedes bond when a court is "satisfied that the debtor would be able to pay the judgment with ease." In *Xerox Corp.*, the judgment debtors relied on their ***inability*** to pay the judgment as a basis for the stay. The court in *Xerox Corp.* found that the "judgment-debtors' assertions of

7

impecuniousness weigh heavily **against** granting a stay without a bond." *Id*. (emphasis added) (citing *Frye v. Lagerstrom*, No. 15 Civ. 5348 (NRB), 2018 WL 4935805, at *4 (S.D. N.Y. Oct. 10, 2018) ("Unlike in *Nassau County*, here the defendant avers that he is unable to pay the $33,371.98 judgment in support of his motion for stay. The defendant's concession is determinative of the second, third, and fourth factors of the *Nassau County* framework, and assures the court that a 'bond is necessary to safeguard [the plaintiff's] recovery.'"). Thus, even though the Court has discretion to enter an unbonded stay, it must still consider whether a stay will secure HOKC pending appeal.

Here, like in *Xerox Corp.*, Wright relies on his alleged **inability** to pay the judgment as the basis for his stay request. In fact, Wright has repeatedly claimed, both to this Court and to the Sixth Circuit Court of Appeals, that he is "a pauper" and that neither his income nor the income of his endeavors has risen above the "poverty line" since February 2020. (Wright's Motion, 2). That is precisely the reason that his motion to stay should be denied. None of the factors articulated in *Nassau County* "take into account the consideration of the debtor's financial insecurity as a reason alone to waive the bond." *Butler v. Ross*, No. 16 CV 1282 (DLC), 2017 WL 6210843, *4 (S.D. N.Y. Dec. 7, 2017). Rather, courts have clearly stated that an unbonded stay is **only** appropriate "if the appellant provides an acceptable alternative means of securing the judgment." *Nassau County*, 783 F.3d at 417. Wright does not suggest **any** "alternative means of securing the judgment" much less an "acceptable" one. His motion to stay must be denied.

8

## CONCLUSION

Wright cannot establish that he is entitled to a stay of enforcement of the Agreed Permanent Injunction or the orders awarding HOKC damages and attorneys' fees. His motion to stay must be denied.

Respectfully submitted,

*/s/ Cornelius E. Coryell II*
Cornelius E. Coryell II
Julie Laemmle Watts
WYATT, TARRANT & COMBS, LLP
400 West Market Street, Suite 2000
Louisville, KY  40202
(502) 589-5235
ccoryell@wyattfirm.com
jwatts@wyattfirm.com

*Counsel for Plaintiff, the Honorable Order of Kentucky Colonels, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on January 25, 2024, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system. I further certify that a true and correct copy of the foregoing has been served upon the following, via U.S. Mail and/or electronic mail, on the 25th day of January, 2024:

| | |
|---|---|
| Globcal International<br>c/o Maya-Lis A. Wright<br>302 General Smith Drive<br>Richmond, KY 40475 | Ecology Crossroads Cooperative Foundation, Inc.<br>c/o Maya-Lis A. Wright<br>302 General Smith Drive<br>Richmond, KY 40475 |
| David J. Wright<br>302 General Smith Drive<br>Richmond, KY 40475<br>David.wright@globcal.net | |

*/s/ Cornelius E. Coryell II*
*Counsel for Plaintiff, the Honorable Order of Kentucky Colonels, Inc.*

101466045.1