# EXHIBIT - Honorable Order of Kentucky Colonels v. Building Champions, LLC, 345 F. Supp. 2d 716 (W.D. Ky. 2004)

**345 F. Supp. 2d 716 (2004)**

**THE HONORABLE ORDER OF KENTUCKY COLONELS, Plaintiff**

**v.**

**BUILDING CHAMPIONS, LLC d/b/a Kentucky Colonels Basketball, Defendant**

No. 3:04CV-165-H.
**United States District Court, W.D. Kentucky.**

October 29, 2004.

*718 Steven L. Snyder, Roxanne Baus Edling, William H. Hollander, Wyatt, Tarrant & Combs, Louisville, KY, for Plaintiff.

Amy Burge, Holland N. McTyeire, V, Greenebaum Doll & McDonald PLLC, Louisville, KY, Stephanie A. Hale, Michelle Bray, Sommer Barnard PC, Indianapolis, IN, for Defendant.

## MEMORANDUM OPINION

HEYBURN, Chief Judge.

The Honorable Order of the Kentucky Colonels, Inc. (the "Honorable Order"), brings this trademark infringement and unfair competition lawsuit against Building Champions, LLC, which operates the newly organized Kentucky Colonels basketball team. The Honorable Order seeks to stop Building Champions from using the trademarked words "Kentucky Colonels" on all t-shirts and novelty items that the team sells. The Court has held an evidentiary hearing and now considers the pending motion for a preliminary injunction.

**\*719 I.**

The Honorable Order is a not-for-profit Kentucky corporation that distributes grants to needy causes that are either Kentucky based or that serve Kentucky citizens. Persons who have received "Kentucky Colonel" commissions from the sitting Governor of Kentucky are eligible for membership. The

Honorable Order invites such persons to become members and charges an annual fee. The primary purpose of the Honorable Order is to raise charitable donations from its members through membership fees, contributions and sales of merchandise. The Honorable Order makes charitable donations totaling about $1,000,000 annually.

The Honorable Order has used "Kentucky Colonels" on merchandise since its formation in 1931 but has only recently begun to consider a concentrated marketing effort to capitalize on the goodwill associated with its mark. As part of this effort, on February 4, 2004, the Honorable Order registered the mark "Kentucky Colonels" for use on t-shirts, hats, and other novelty merchandise. The Honorable Order offers these items for sale on its website and through its direct mail campaign. The Honorable Order has plans to sell merchandise with the mark "Kentucky Colonels" to a much larger audience in the future and is also interested in licensing its mark for use on other goods. It has one licensing deal already in place for a "Kentucky Colonels" credit card. The Honorable Order hopes that its products will find their way into retail outlets throughout Kentucky, indeed throughout the nation. All of these retail efforts are part of a larger campaign to raise money to benefit the Honorable Order's charitable donations.

Building Champions owns the recently formed American Basketball Association team in Louisville, Kentucky. After soliciting advice from the public, Building Champions decided to name its team the "Kentucky Colonels." Previously, an entirely separate entity operated a team in the old American Basketball Association between 1967 and 1976 that was also named the Kentucky Colonels. The most recent "Kentucky Colonels" basketball team is scheduled to begin their inaugural season sometime in the fall of 2004. Building Champions sells merchandise bearing its stylized rendition of the term "Kentucky Colonels," which incorporates a red, white and blue basketball. Building Champions has plans to sell its "Kentucky Colonels" merchandise to a much larger audience in the future and plans to open a retail shop at its arena in Louisville.

Plaintiffs do not seek to enjoin the use of "Kentucky Colonels" as the name of Building Champions' basketball team. The subject of this lawsuit and the motion for preliminary injunction is solely the use of the mark "Kentucky Colonels" on novelty merchandise sold to supporters of the basketball team bearing the same name.

## II.

To succeed on a motion for preliminary injunction, Plaintiffs must show that: (1) they have "a strong likelihood of success on the merits"; (2) they would "suffer irreparable injury" if the injunction is not issued; (3) the injunction would not cause "substantial harm to others"; and (4) "the public interest would be served by issuance of the injunction." *ACLU of Ky. v. McCreary County,* 354 F.3d 438, 445 (6th Cir.2003) (quoting *Rock and Roll Hall of Fame & Museum, Inc. v. Gentile Prods.,* 134 F.3d 749, 753 (6th Cir.1998)) (internal quotation marks omitted). Courts must balance these four factors none of which is singly dispositive. *Id.*

To evaluate whether Plaintiff has shown a strong likelihood of success on the merits, *720 the Court must consider the likelihood of confusion among consumers about the competing marks. The Lanham Act, 15 U.S.C. § 1114(1), prohibits infringement of a registered mark. That section imposes civil liability for "use in commerce [of] any... copy, or colorable imitation of a registered mark ... likely to cause confusion, or to cause mistake, or to deceive." *Id.* To prevail on its trademark infringement claims,

the Honorable Order must demonstrate that Building Champions' use of the mark "Kentucky Colonels" creates a likelihood of confusion regarding the origin of the goods or services offered by the two corporations. *Daddy's Junky Music Stores, Inc. v. Big Daddy's Family Music Ctr.,* 109 F.3d 275, 280 (6th Cir.1997).

The Sixth Circuit has established an eight-factor test useful in determining whether confusion is likely. Courts should consider: (1) the strength of the plaintiffs mark, (2) the relatedness of the goods or services offered by the plaintiff and the defendant, (3) the similarity of the marks, (4) any evidence of actual confusion, (5) the marketing channels used by the plaintiff and the defendant, (6) the likely degree of purchaser care and sophistication, (7) the defendant's intent in selecting its mark, and (8) the likelihood that either party will expand its product line to compete with the other using the marks. *Therma-Scan, Inc. v. Thermoscan, Inc.,* 295 F.3d 623, 629 (6th Cir.2002) (citing *Daddy's Junky Music Stores,* 109 F.3d at 280) (internal citation omitted). The application of these eight factors to any given case implies no mathematical precision. *Homeowners Group, Inc. v. Home Mktg. Specialists, Inc.,* 931 F.2d 1100, 1107 (6th Cir.1991) (footnote omitted). Rather, the factors considered individually are also interrelated. Moreover, some actions will implicate all eight factors and others will not. *Id.*

**A. The strength of the senior mark**

To evaluate the strength of the senior mark, the Court focuses first on the distinctiveness of that mark. Here, that is the tendency of that mark to identify goods as emanating from the Honorable Order.

Trademark terms fall into one of four categories ranging from weakest to strongest: (1) generic, (2) descriptive, (3) suggestive, and (4) arbitrary or fanciful. *Abercrombie & Fitch Co. v. Hunting World, Inc.,* 537 F.2d 4, 9 (2d Cir.1976). The stronger the mark, the more likelihood that encroachment will cause confusion. "A generic term is one that refers, or has come to be understood as referring, to the genus of which a particular product is a species." *Id.* Generic terms cannot be registered and receive no protection under trademark law because a generic term cannot function as a trademark. At the other end of the spectrum, arbitrary or fanciful terms receive the strongest protection because they "neither suggest nor describe any ingredient, quality or characteristic of those goods or services." 2 *McCarthy on Trademarks,* §§ 11:8-11. Between these two extremes terms may be either descriptive or suggestive. Descriptive terms receive protection only if they are accompanied by a showing of secondary meaning where the consumer links the product with its source. Suggestive terms, which only "suggest" and do not "describe" a quality or ingredient of the good or service being offered, do not require a showing of secondary meaning to receive protection. These categories are guideposts which establish presumptions about a term's strength as a trademark. Courts will not consider even an arbitrary mark, which receives the greatest protection, a strong mark "if it does not achieve broad public recognition across product lines." *721 Therma-Scan,* 295 F.3d at 631 (citing *Homeowners Group,* 931 F.2d at 1107).

At issue here is the use of the term "Kentucky Colonels" on novelty merchandise consisting of t-shirts, key rings, hats and other novelty items. Plaintiffs argue that "Kentucky Colonels" is an arbitrary term as applied to its goods and is thus inherently strong. Defendants respond that "Kentucky Colonels" is a generic term describing a type of product rather than its producers. Neither argument seems entirely persuasive.

The term "Kentucky Colonels" is neither wholly generic nor is it fanciful or arbitrary. Rather, the Court finds that "Kentucky Colonels" as it pertains to the Honorable Order is either a descriptive mark with established secondary meaning or a suggestive mark. The mark "Kentucky Colonels" is descriptive as to a connection to the source of the goods and that purchase of a t-shirt or like item will benefit the charitable works of the Honorable Order. The mark is more suggestive as to the imputed qualities of the goods derived from their association with the Honorable Order. The Honorable Order's federal registration of the mark "Kentucky Colonels" for these goods raises a presumption that the mark is not merely descriptive and thus entitled to greater protection. *Champions Golf Club, Inc. v. The Champions Golf Club, Inc.,* 78 F.3d 1111, 1118 (6th Cir.1996). The Court finds no evidence sufficient to rebut this presumption of some protection and plenty of evidence to support it.

Assessing the strength of the "Kentucky Colonels" trademark is complicated by the fact that the words have diverse associations that are distinct from the Honorable Order. For some, the term "Kentucky Colonel" may define an idealized personage or image apart from the organization that is the Honorable Order. Through the years, Kentucky Fried Chicken's use of the Kentucky Colonel image, Colonel Sanders, in its national advertising, has strengthened this image. Not so long ago in Kentucky, the name was strongly identified for many years with the old American Basketball Association team.[1] Neither party has submitted consumer recognition surveys, and none of these are registered uses of the "Kentucky Colonels" mark. Notwithstanding these considerations, the use of similar, even identical, terms in the market over time lessens the strength of the Honorable Order's mark today. These public enhancements and diversification of the Kentucky Colonel name have greatly increased recognition of the name, though probably weakened its identification directly with the Honorable Order.

Considering all these factors, the Court concludes that the Honorable Order's "Kentucky Colonels" mark is generally quite distinctive and widely recognized. Its identification directly with the Honorable Order is somewhat less strong. Its recognition on t-shirts and other novelty items is also relatively less strong.

**B. The relatedness of the goods and services**

If goods and services are related, confusion among consumers regarding their source is more likely. *Homeowners Group,* 931 F.2d at 1109. The Court looks here to whether, in the mind of a prospective customer, the goods will be connected and serve the same function such that customers will be confused about the origin of those goods. *Daddy's Junky Music *722 Stores,* 109 F.3d at 283; *Champions Golf Club,* 78 F.3d at 1118. If the Honorable Order and Building Champions compete directly with their goods or services, then confusion is more likely if the marks are sufficiently similar. If the goods and services are somewhat related but not competitors, the likelihood of confusion may depend on other of the eight factors. Finally, if the goods and services are totally unrelated, confusion is unlikely even where the words used are identical or nearly so. *See CBS, Inc. v. Liederman,* 866 F. Supp. 763 (S.D.N.Y.1994), affirmed 44 F.3d 174; *Amstar Corporation v. Domino's Pizza, Inc.,* 615 F.2d 252 (5th Cir.1980).

The instance of "Kentucky Colonels" tshirts and other souvenir merchandise seems to fall squarely in the middle of these three categories. The goods in question, t-shirts, are identical. However, in neither instance would the consumer be looking merely to buy a t-shirt. One article is purchased in support of the Honorable Order's charity group, and one is purchased in support of Building Champions' basketball

team. Souvenir merchandise sold alternately for charity and for profit are somewhat related but not, strictly speaking, in competition with one another. The likelihood of confusion therefore will depend on the other factors.

### C. The similarity of the marks

In order to evaluate the similarity of the two marks, the Court considers whether, if presented with one mark in the absence of the other, a potential consumer would be confused as to the product's source. "It is the overall impression of the mark, not an individual feature, that counts." *Homeowners Group,* 931 F.2d at 1109. This factor is accorded considerable weight. *Daddy's Junky Music Stores,* 109 F.3d at 283; *Champions Golf Club,* 78 F.3d at 1119. The term "Kentucky Colonels" used on Building Champions' merchandise is identical to the Honorable Order's registered term. Because the mark is at least descriptive and has acquired secondary meaning by way of recognition among consumers, the Honorable Order is entitled to protection from confusingly similar marks.

It may seem counterintuitive that the exact same words in two uses would not create confusion. Nevertheless, there are some sound reasons suggesting that this may be so in our circumstances. Building Champions uses a red, white, and blue logo styled to include a basketball as well as the tag "Louisville" below an arching "Kentucky Colonels." The Honorable Order uses "Kentucky Colonels" alone or more commonly accompanied by the state seal of Kentucky or the term "The Honorable Order of preceding "Kentucky Colonels." Each t-shirt or other novelty item contains an attached tag certifying that it is produced and authorized by the Honorable Order. Other than the words themselves, there is little similarity in the design and presentation of the two uses. The style and typography of the basketball use seems entirely distinguishable from any presentation the Honorable Order intends to market. Evaluated in their entirety, the Court concludes that the two marks do not appear to be from the same source. This lack of similarity lessens the likelihood of confusion.

### D. Evidence of actual confusion

Evidence of actual confusion between two marks is only accorded significant weight if actual evidence is present. The amount of consideration to which this evidence is entitled depends on both the quality and quantity of the confusion. *Homeowners Group,* 931 F.2d at 1110. The Honorable Order offers evidence of a newscaster's confusion regarding the *723 source of a relief donation and the anecdotal evidence of two passersby's confusion regarding the source of a hat and shirt carrying the mark of the Honorable Order. This type and amount of confusion, while favoring the Plaintiff to some extent, is accorded much less weight by the Court than are the "chronic mistakes and serious confusions of actual customers." *Id.* The Honorable Order offers that these two corporation's merchandise has not been marketed simultaneously for very long.

Considering all of these circumstances, the Court concludes that the several instances presented provide only weak support for a likelihood of confusion.

### E. Marketing channels used and likelihood that product lines will be expanded

The Court considers how the parties' products are marketed to consumers and where and to whom they are sold. *Daddy's Junky Music Stores,* 109 F.3d at 285. Both parties currently sell merchandise over the Internet. The Sixth Circuit has identified three questions to consider when deciding whether the Internet constitutes a common marketing channel: (1) whether both parties use the Internet as a substantial marketing and advertising channel, (2) whether the parties marks are used in connection with Internet products, and (3) whether the parties' marketing channels overlap in other ways. *Therma-Scan,* 295 F.3d at 637 citing *Entrepreneur Media, Inc. v. Smith,* 279 F.3d 1135, 1151 (9th Cir.2002). Both parties use the Internet as a substantial marketing and advertising channel. Some initial confusion between the two websites is certainly possible. Regardless of these present or future marketing efforts, however, the predominant customers of the two parties appear to be inherently distinct. The customer base for the Honorable Order is composed primarily of members who seek to support their charitable efforts. Inevitably, the customer base for Building Champions are those individuals who seek to show support for their basketball team.

Each party wants to expand its base, thus creating the potential of a significant overlap of individuals who fall into both customer bases. For example, their plans for future marketing channels overlap in at least one way; they both plan to attempt to place their merchandise in retail stores. The Honorable Order, in particular, asks the Court to consider and predict the degree of confusion among these potential customers. Generally speaking, trademark law protects the senior user's right to enter into a related field or marketing area in the future. *Scarves by Vera, Inc. v. Todo Imports, Inc.,* 544 F.2d 1167, 1172 (2nd Cir.1976). However, the Honorable Order did not make a convincing case that it could easily expand beyond selling merchandise to its own members. The Colonels basketball team naturally hopes that its popularity will become widespread, presumably including members of the Order who would be well aware of the differences between the organizations.

The Court concludes that these factors do not weigh strongly in favor of likely confusion.

### F. Likely degree of purchaser care

A greater than usual degree of purchaser care lessens the likelihood of confusion between two products with similar marks. The standard normally used by courts is "the typical buyer exercising ordinary caution." *Wynn Oil Co. v. Am. Way Serv. Corp.,* 943 F.2d 595, 602 (6th Cir.1991). A hypothetically higher degree of care is appropriate where the buyer has some expertise, is making an expensive or unusual purchase, or has some other reason *724 to use a higher degree of care. *Homeowners Group,* 931 F.2d at 1111. Normally, the purchaser of a t-shirt would exhibit minimal care. However, a customer who purchases or attempts to purchase a t-shirt in support of either a specific charity or a favorite sports team is likely a much more careful consumer.

Most of the customers the Honorable Order targets are themselves Kentucky Colonels. Their familiarity with the Honorable Order and its mission gives them a special expertise in recognizing its products. Moreover, a fan who is already familiar with Building Champions' team will be looking for the colors and logo design that accompany the words "Kentucky Colonels" on that corporation's products. Neither group of consumers would likely mistakenly purchase the other's materials. The evidence is that both

parties would market their t-shirts to augment support for their distinctive organizations and their objectives, not as an isolated or whimsical t-shirt purchase.

The expectation of greater attention, appropriate in this case, weighs significantly against finding a likelihood of confusion. *Id.*

### G. Defendant's intent in selecting mark

Evidence of intentional infringement will strengthen the conclusion that confusion will likely result. *Wynn Oil Co.,* 943 F.2d at 602. There is some evidence that Building Champions knew of the Honorable Order's use of the "Kentucky Colonels" mark, and courts may infer intentional infringement from such knowledge. The weight of the evidence in this case, however, suggests Building Champions named its basketball team the Kentucky Colonels for reasons having nothing to do with the Honorable Order and used the "Kentucky Colonels" mark on its merchandise in order to associate team paraphernalia with the team. This factor is thus neutral in evaluating likelihood of confusion.

### III.

It is helpful to keep in mind that "[T]he ultimate question remains whether relevant consumers are likely to believe that the products or services offered by the parties are affiliated in some way." *Homeowners Group,* 931 F.2d at 1105. Doing so in a given case involves more art than science.

Reviewing all the relevant factors, the Court finds only the strength of mark to be solidly in the Order's favor. Similarity and marketing channels weigh narrowly in favor of Building Champions. The degree of care is solidly in favor of Building Champions. Neither relatedness nor Defendant's intent favors the Honorable Order. At best, these factors are neutral. The Honorable Order has not provided other evidence that the novelty merchandise consumer would find the two marks confusingly similar when Building Champions is allowed to operate and brand a team under the same mark. Weighing the influence of these factors, the Court finds that the unrelatedness of the underlying activity, the dissimilarity of the overall impression as well as the likelihood of purchaser care all to be significant enough to outweigh the importance of a strong trademark. In the end, the Court's analysis provides convincing support for its intuition that consumers coming upon Building Champions' t-shirts will not confuse them with those of the Honorable Order. Consumers are likely to look at a t-shirt bearing the team's stylized design and affiliate that product with its true source. This is true even though the names advertised are the same.

Without establishing a strong likelihood of success on the merits, the Honorable *725 Order has also failed to demonstrate that it would suffer irreparable injury if Building Champions was allowed to continue selling its products. Injuries that do result could be compensated for through an action for damages. The balancing test of whether an injunction would cause substantial harm to others or be in the public interest is somewhat inconclusive. Both corporations engage in business activities that benefit the public and, absent a strong likelihood of infringing activity, both have an interest in continuing to market and sell its products. The motion for preliminary injunction is therefore denied.

The Court will enter an order consistent with this Memorandum Opinion.

## ORDER

The Honorable Order of Kentucky Colonels has moved for a preliminary injunction to prevent Defendant from using its trademark on t-shirts. For the reasons set forth in the accompanying Memorandum Opinion and being otherwise sufficiently advised,

IT IS HEREBY ORDERED that the Honorable Order's motion for a preliminary injunction is DENIED.

NOTES

[1] There is some evidence of third party registrations for the mark "Kentucky Colonels." Notwithstanding these registrations and the other diverse associations, the Court finds no existing trademark registrations that overlap with the Honorable Order's registered use.