**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**LOUISVILLE DIVISION**

**FILED**
James J. Vilt Jr,
Clerk
3/17/2025
U.S. District Court
Western District of Kentucky

| | |
|---|---|
| THE HONORABLE ORDER OF KENTUCKY COLONELS, INC. <br>     Plaintiff <br><br> vs. <br><br> KENTUCKY COLONELS INTERNATIONAL, et. al. <br>     Defendants | ) ) ) ) ) ) ) ) ) |

Civil Action No. 3:20-cv-00132-RGJ

**MOTION FOR JUDICIAL NOTICE**

# **DEFENDANT'S MOTION FOR JUDICIAL NOTICE FRE 201(b)**

## **TO THE HONORABLE COURT:**

I, Defendant, **Col. David J. Wright**, appearing *pro se* and *in forma pauperis*, move this Court to **Take Judicial Notice** of adjudicative and indisputable facts under **Federal Rules of Evidence 201(b), 803, 902, and 1006** in *The Honorable Order of Kentucky Colonels, Inc. v. Kentucky Colonels International, et al.*, Case No. 3:20-cv-00132 (a closed case filed February 20, 2020). This case is currently on appeal before the **Sixth Circuit Court of Appeals** under case numbers **23-5795 and 23-6108**, where Defendant has challenged **judicial bias, judicial hubris, undue deference to Plaintiff, and fraud upon this Court**.

Defendant previously filed a **Motion to Take Judicial Notice of Adjudicative Facts** [DE-103]; however, as a *pro se* litigant without the benefit of legal counsel, that filing was **procedurally deficient** and was denied. To correct the record and ensure proper consideration, Defendant now submits this **renewed and revised motion** with additional supporting evidence and in full compliance with procedural requirements.

Defendant specifically requests that this Court take judicial notice of Plaintiff's **material misrepresentations, omission of known facts, use of a distorted historical narrative, elimination of known competitors, and fraudulent concealments** in its **trademark applications and litigation filings**

before this Court through its counsel. These **deliberate and misleading bad-faith misrepresentations** —which are **beyond reasonable dispute**—have **directly influenced prior rulings in this case since the beginning**. These **falsehoods**, which can be **conclusively established** through public records, historical evidence, and Plaintiff's own filings, have resulted in **rulings contrary to both law and fact**.

Immediate recognition of these adjudicative facts is necessary to **bring clarity, protect the integrity of these proceedings, and prevent further reliance on misrepresented evidence** that Plaintiff has strategically manipulated **in bad faith** with malicious and **retaliatory intent** after **backing out of a planned merger** being negotiated with Defendant.

## Judicial Notice is Necessary for Further Relief and Cure

These facts are **not only critical to resolving the present controversy but will also serve as the foundation for additional motions in the US District Court, including:**

- **A Rule 11 Motion for Sanctions**

  - Against **Plaintiff and its counsel** for knowingly engaging in **deceptive litigation tactics**, misrepresenting key facts to the Court, and suppressing material information.

- **A Motion to Cancel Plaintiff's Fraudulently Obtained Trademarks** (*15 U.S.C. § 1119*)

  - As the evidence will establish, **Plaintiff's trademark registrations were procured through fraud**, making them **unenforceable, void, and subject to cancellation.**

- **A Rule 60(b) Motion to Vacate Prior Rulings and Judgments**

  - Because **fraud on the court** has resulted in **unlawful injunctions, adverse rulings, and improper procedural advantages** for Plaintiff.

- **A Civil Rights Claim Under 42 U.S.C. § 1983 for Deprivation of Rights**

  - **Plaintiff's fraudulent lawsuit has resulted in unlawful restrictions on Defendant's First Amendment rights, financial damages, and irreparable harm, warranting judicial intervention and potential relief.**

- **A Potential Lawsuit Against Plaintiff for Irreparable Harm, Costs, and Loss of Reputation**

  - **Plaintiff's fraudulent litigation has caused Defendant severe financial losses, destruction of goodwill, loss of friendships, damage to professional status, and harm to personal and business reputation.**

  - **Defendant reserves the right to seek compensatory and punitive damages for Plaintiff's willful and malicious conduct.**

Judicial notice of these adjudicative facts being submitted in *good-faith* **will ensure that future motions and proceedings are not tainted by fraud and will prevent further abuse of the judicial process** by Plaintiff.

# I. LEGAL STANDARD

Under **Federal Rule of Evidence 201(b)**, a court may take **judicial notice of a fact that is not subject to reasonable dispute** because:

1. **It is generally known within the trial court's jurisdiction, or**

2. **It can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.**

A court **must take judicial notice** if a party requests it and provides the necessary information and adjudicative facts that cannot reasonably be disputed under **FRE 201(c)(2).**

## Courts Routinely Take Judicial Notice for the Following Evidence:

**Government Records and Filings**

- **USPTO trademark records**, state incorporation documents, and official business registrations.

  - *See* **Passa v. City of Columbus, 123 F. App'x 694, 697 (6th Cir. 2005)** (*Judicial notice is proper for public records, including official business filings and government databases.*)

- - *See* **Jackson v. City of Cleveland, 925 F.3d 793, 810 (6th Cir. 2019)** (*Courts may take judicial notice of public records, including court decisions and government filings, when they are undisputed*)

- **Prior Court Decisions and Filings, Even from Separate Cases**

  - Judicial notice is commonly taken of prior **judicial opinions, pleadings, and records from separate but related litigation.**

  - *See* **New England Health Care Employees Pension Fund v. Ernst & Young, LLP, 336 F.3d 495, 501 (6th Cir. 2003)**, (*which affirms that judicial notice may be taken of public records and prior proceedings.*)

  - *See* **United States v. Ferguson, 681 F.3d 826, 834 (6th Cir. 2012)** (*Judicial notice is appropriate for prior court filings that are not subject to reasonable dispute.*)

**Publications, Newspapers, and Other Media Used to Establish Historical Facts**

- Courts routinely take judicial notice of **historical newspaper articles, media reports, and widely available publications** that establish **public knowledge of events.**

  - *See* **D.S. v. E. Knox Cnty. Bd. of Educ., 706 F.3d 600, 607 (6th Cir. 2013)** (*Judicial notice is proper for newspaper archives documenting historical facts.*)

  - *See* **Von Saher v. Norton Simon Museum of Art, 592 F.3d 954, 960 (9th Cir. 2010)** (*Judicial notice taken of historical newspaper reports documenting public knowledge of an event.*)

**Materials in the Public Domain and Government Archives**

- **Books, manuscripts, government-published documents, and historical records in the public domain** are widely accepted as proper subjects for judicial notice.

  - *See* **Rowe v. Gibson, 798 F.3d 622, 628-29 (7th Cir. 2015)** (*Judicial notice is appropriate for books and government documents that provide undisputed background information.*)

  - *See* **United States v. Lovasco, 431 U.S. 783, 790 n.7 (1977)** (*Judicial notice may be taken of matters of public record, including government publications and historical archives.*)

**Genealogical Records and Historical Archives**

- Courts have accepted **genealogical records, historical letters, and archived manuscripts** as evidence when they help confirm factual history.

  - *See* **Gould Elecs. Inc. v. Livingston Cnty. Rd. Comm'n, 470 F. Supp. 3d 735, 748 (E.D. Mich. 2020)** (*Courts may take judicial notice of historical facts documented in widely accepted publications and archives.*)

  - *See* **Hicks v. PGA Tour, Inc., 897 F.3d 1109, 1112 (9th Cir. 2018)** (*Judicial notice is proper for historical photographs, publicly available records, and archival research.*)

**Photographs, Newsreels, and Video Evidence Documenting Historical Events**

- **Photographs and news footage** that document **historical figures, government actions, and public events** have been recognized as proper evidence for judicial notice.

  - *See* **Daniels-Hall v. Nat'l Educ. Ass'n, 629 F.3d 992, 998 (9th Cir. 2010)** (*Publicly available online records, government-published media, and video archives are proper subjects of judicial notice.*)

  - *See* **Mullis v. United States Bankr. Ct., 828 F.2d 1385, 1388 n.9 (9th Cir. 1987)** (*Courts may take judicial notice of photographic and video evidence documenting government actions and public history.*)

# II. ARGUMENT

## Courts within the Sixth Circuit's Jurisdiction Should Ensure Proper Judicial Notice to Prevent Misrepresentation of Historical Facts Resulting in Historical Revisionism and Trademark Fraud

The need for judicial notice in this case is not merely procedural; it is essential to **prevent the continued reliance perpetuated upon false historical claims in Kentucky that have directly influenced prior rulings in this litigation and have caused damage to countless unknown others based on their gullibility by trusting the Plaintiff's deceptive narratives.** Judicial notice is particularly important where **a party has deliberately distorted historical records, state history, and public domain materials to**

manufacture standing, mislead the Court, and obtain improper relief in lawsuits capable of harming others by preempting nominative and descriptive fair-use.

This is not a speculative concern. The **Sixth Circuit has long recognized that judicial notice is necessary when a case involves facts derived from indisputable historical sources.** *See*:

- **United States v. Ferguson, 681 F.3d 826, 834 (6th Cir. 2012)** (*Judicial notice must be taken of historical facts and public records that are not subject to reasonable dispute.*)

- **D.S. v. E. Knox Cnty. Bd. of Educ., 706 F.3d 600, 607 (6th Cir. 2013)** (*Historical newspaper reports may be judicially noticed if they document undisputed public events.*)

- **In re Omnicare, Inc. Sec. Litig., 769 F.3d 455, 468 (6th Cir. 2014)** (*Judicial notice is proper for documents whose authenticity is not in question and which are referenced in the litigation.*)

Plaintiff has made **false historical assertions** regarding:

- **The origins of the "Kentucky Colonel" custom, tradition, and title**
- **The origin of the "Honorable Order" itself**
- **The alleged continuity of its organization from 1931**
- **The exclusivity, fame, distinctiveness, and incontestability of its claimed trademarks**

**Had the Court and the United States Patent and Trademark Office been presented with the correct historical facts about the Kentucky Colonel title transparently from the outset in 1981 when the organization applied for its first trademark, the litigation landscape today would have been drastically different.** Judicial notice is necessary to **correct these errors before further procedural and substantive harm occurs to the Defendant, the public, and the state.**

The **Sixth Circuit has repeatedly held that courts should not permit parties to manipulate history and public domain materials for litigation advantage.** *See*:

- **Gould Elecs. Inc. v. Livingston Cnty. Rd. Comm'n, 470 F. Supp. 3d 735, 748 (E.D. Mich. 2020)** (*Judicial notice is appropriate for widely recognized public archives, historical documents, and government records.*)

- **Passa v. City of Columbus, 123 F. App'x 694, 697 (6th Cir. 2005)** (*A party cannot ignore or suppress well-documented historical facts in an effort to reshape judicial outcomes.*)

If the District Court **fails to take judicial notice** of these adjudicative facts, **the Sixth Circuit must do so on appeal to ensure that prior rulings were not based on historical revisionism and misrepresentation of the title's origin.** Judicial notice is not discretionary in this context—it is **required** under **FRE 201(b)** when the facts are **indisputable and capable of verification from public sources such as the United States Patent and Trademark Office (USPTO), Library of Congress (LoC), this Court, and the U.S. House of Representatives.**

## Judicial Notice is Required to Prevent Further Misrepresentation and Trademark Fraud

Failure to take judicial notice of these materials would:

1. **Allow Plaintiff to benefit commercially and non-commercially from demonstrably false historical claims** (pseudohistory) that contradict public records, archival evidence, and widely accepted historical fact replacing it with propaganda and a fraudulent narrative of the past.

2. **Undermine the legitimacy of prior rulings** in this case that were based on misleading or incomplete fraudulent deceptive context and cases such as *Honorable Order of Kentucky Colonels v. Building Champions, LLC*, 345 F. Supp. 2d 716 (W.D. Ky. 2004) where this Plaintiff's facts were taken for granted despite their inaccuracy, such as their claim of beginning in 1931.

3. **Create a procedural defect based on the activities of the Western District Court that the Sixth Circuit will be required to address on appeal**, further prolonging this litigation.

Judicial notice is not simply appropriate in this case—it is **essential** to prevent further distortion of historical facts, to correct prior procedural errors, and to ensure that the judicial process is **guided by truth rather than strategic and sophisticated misrepresentations resulting in consensual fraud.**

# III. ADJUDICATIVE FACTS SUBJECT TO NOTICE

## Judicial Notice is Essential to Prevent Historical and Trademark Injustice

## A) Sixth Circuit Precedent Recognizes that Historical Designations Do Not Create Private [Non-Commercial or Commercial] Rights

In *United Daughters of the Confederacy v. Vanderbilt University*, 674 F. App'x 443 (6th Cir. 2017), the Sixth Circuit **rejected the argument that a historical designation creates an immutable private right**. The court recognized that **history does not belong to any one organization**—even if that organization had long associated itself with a particular historical identity.

Here, **Plaintiff's claim to exclusive ownership of "Kentucky Colonels" rests on a falsely asserted historical narrative of an 1813 incident that never occurred**, much like the claims rejected in *United Daughters of the Confederacy*. Judicial notice of the actual historical record **is necessary to prevent this Court from relying on a fabricated version of history to justify Plaintiff's alleged rights and monopolistic ambitions for Kentucky and Kentuckians**.

## B) Judicial Notice Protects Against Trademark Abuse Based on False or Misleading Statements to the USPTO

The Federal Circuit in *In re Bose Corp.*, 580 F.3d 1240 (Fed. Cir. 2009), made clear that **a trademark obtained through false or misleading statements is void *ab initio*** (invalid from the start). *Chattanooga Mfg., Inc. v. Nike, Inc.*, 301 F.3d 789, 796 (6th Cir. 2002), supports canceling fraudulently obtained trademarks. The Lanham Act does not permit a party to **secure intellectual property rights through false designation of origin, misrepresentation, or fraud**.

Plaintiff obtained its three trademarks through **fraudulent omission of known users applied for merely three days prior to bringing this case in 2020**, misrepresenting its exclusive right to the "Kentucky Colonels" designation as a descriptive and generic name representative to the identification of a class of people granted the 'honorable' government issued title, this case potentially affects over 500,000 people.

These fraudulent claims have **been used to mislead this Court's judiciary and secure improper relief expanding the Plaintiff's trademarks beyond the scope of the Lanham Act and placing a prior restraint on Defendant's speech**. Judicial notice will ensure that **the Court is not further misled by trademarks that should never have been granted** or *applied for in the first place*.

## C) The First Amendment Bars the Use of Trademarks to Suppress Public Discussion and Expression of Significant Cultural and Historical Terms

The Supreme Court in *Matal v. Tam*, 582 U.S. 218 (2017) (The Slants Case), reaffirmed that **trademark rights cannot be used as a weapon to silence historical discourse or prevent public discussion of culturally significant names [or titles]**. *Radiance Foundation, Inc. v. NAACP***,** 786 F.3d 316, 330 (4th Cir. 2015), holds that trademark law **cannot be used to silence speech**.

Plaintiff has **weaponized its trademarks to suppress Defendant's unincorporated social assembly, his writings, speech, and historical research work**—a clear violation of First Amendment principles. Most recently on January 11, 2025 using the Court's **Memorandum Opinion and Order [DE-129]** to impede the Defendant's speech on Facebook and subsequently remove civil society forums established fifteen years ago predating Plaintiff's use of Facebook where its board members and new chapter members participated previously which were maintained following an **Agreed Permanent Injunction [DE-93]** and **Agreed Dismissal Order [DE-94]** in 2021. Judicial notice is critical to ensuring that this case is not **perverted into a vehicle for unconstitutional censorship** and unfair prior restraint on constitutionally protected activities.

## D) Historical Titles and Symbols Created by the Government Cannot Be Privatized Through Manipulation and Misrepresentation Before the Courts

The Supreme Court in *American Legion v. American Humanist Ass'n*, 588 U.S. ___ (2019), recognized that **public symbols and honors with deep historical roots should not be easily stripped from public use**. Just as a war memorial cross could not be retroactively privatized, neither can Plaintiff claim ownership over a **government-issued honorary title** with a history spanning over two centuries.

Judicial notice is necessary to confirm that the **Kentucky Colonel title is and has always been a public honor and was never intended to be monopolized by any single entity**. Plaintiff's trademarks do not grant it the power to **rewrite history or prevent others from honoring the true legacy of the Kentucky Colonelcy dating back to the very foundation of the state in Boonesborough, 250 years ago**.

**"Judicial Notice Prevents Courts and Government from Endorsing an Alternative, Fictional or Mythical Historical Narrative Created by a Private Entity" — Defendant**

Taken together, these cases make clear that **false historical claims cannot be used to establish legal rights**, whether in **trademark law, public honors, or in cultural discourse for private gain**. Judicial notice is essential to prevent:

- **A wrongful monopoly over a historical title** (*United Daughters of the Confederacy*).
- **Trademark abuse based on fraudulent claims** (*Bose*).
- **Suppression of protected speech** (*Matal v. Tam*).
- **The privatization of government-created honors** (*American Legion*).

This Court has a duty to ensure that **its rulings are based on adjudicative facts, not historical fiction, myths, or folklore**. Judicial notice is the only appropriate remedy to prevent **continued reliance on a false historical narrative to justify improper trademark enforcement** and expansionism that can interfere with the inalienable rights granted to Americans under the First Amendment.

## E) Plaintiff Misled the Court by Constructively Concealing Material Facts Relevant to This Case that are Subject to Judicial Notice

Plaintiff **The Honorable Order of Kentucky Colonels, Inc. (HOKC) has misrepresented material facts that are subject to judicial notice**, misleading the Court into granting extraordinary relief. Judicial notice is appropriate when a party **conceals, distorts, or omits facts that directly impact the Court's understanding of the case**. See *United States v. Ferguson*, 681 F.3d 826, 834 (6th Cir. 2012) (holding that

judicial notice is proper where factual accuracy is beyond dispute and failure to acknowledge such facts would mislead the court). *See* **[Exhibit A: Defendant's Declaration on Recusal of RGJ]**.

Here, Plaintiff has deliberately mischaracterized **good-faith merger negotiations** as a "shakedown" by an unknown competitor, **when in fact Defendant has been well-known to Plaintiff for over 23 years as a member and donor** by submitting what it *characterized as extortion* in a **sealed document [DE-6]**. *See* **[Exhibit B: Defendant's Merger Proposal]** *unsealed* by its author now and subject to judicial notice. This Court may take judicial notice of Plaintiff's past public records, internal documents, and prior acknowledgments of Defendant's activities, all of which contradict its current claims. See *United States v. Bonds*, 12 F.3d 540, 553 (6th Cir. 1993) (noting that judicial notice may be taken of facts that a party cannot plausibly deny based on its prior conduct and public statements).

Additionally, Plaintiff **mischaracterized Defendant's constitutionally protected speech as trademark infringement**, failing to disclose that Defendant's publications are **lawful fair-use, noncommercial, and fall under First Amendment fair use protections**. *See* **[Exhibit C: SLAPP Suit Targets]** subject to judicial notice. The **Sixth Circuit has recognized that mislabeling protected speech as infringement constitutes a First Amendment violation**. See *Taubman Co. v. Webfeats*, 319 F.3d 770, 775 (6th Cir. 2003) (holding that noncommercial speech, including criticism and discussion of trademark holders, is protected under the First Amendment and cannot be enjoined under trademark law). Plaintiff's omission of this key distinction is an attempt to **manipulate the Court into restricting Defendant's speech, seek redress, and freedom to assemble outside the proper scope of trademark law**.

These misrepresentations, taken together, establish that Plaintiff's lawsuit is a **Trojan Horse**, improperly invoking the Court's jurisdiction and authority to suppress protected speech, mischaracterize lawful business dealings, and fabricate an intellectual property claim where none previously existed. Under **28 U.S.C. § 455(a),** judicial integrity requires that courts recognize and correct factual misrepresentations when they are exposed. Given the clear and indisputable nature of these facts, Defendant respectfully requests that the

Court take **judicial notice** of Plaintiff's omissions and misrepresentations, as doing otherwise would allow a manifest injustice to stand.

## Key Citations in Support of Judicial Notice and Misrepresentation Claims:

1. **Judicial Notice of Undisputed Facts**:

   ○ *United States v. Ferguson*, 681 F.3d 826, 834 (6th Cir. 2012) – Judicial notice is proper where factual accuracy is beyond dispute and failure to acknowledge such facts would mislead the court.

   ○ *United States v. Bonds*, 12 F.3d 540, 553 (6th Cir. 1993) – Courts may take judicial notice of facts that a party cannot plausibly deny based on its past conduct.

2. **First Amendment Protection Against Mischaracterization as Trademark Infringement**:

   ○ *Taubman Co. v. Webfeats*, 319 F.3d 770, 775 (6th Cir. 2003) – Holding that noncommercial speech, including criticism and discussion of trademark holders, is protected under the First Amendment and cannot be enjoined under trademark law.

3. **Fraud on the Court and Abuse of Process**:

   ○ *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 246 (1944) – Courts must intervene when a party secures judicial relief through **fraudulent misrepresentation**.

   ○ *Demjanjuk v. Petrovsky*, 10 F.3d 338, 354 (6th Cir. 1993) – Fraud upon the court is a **grave offense** that mandates judicial correction.

   ○ *Workman v. Bell*, 178 F.3d 759, 767 (6th Cir. 1998) – A party's failure to disclose material facts may constitute **an abuse of process** requiring judicial correction.

**Other Evidence Subject to Judicial Notice:**

● **Evidence: Defendant's** HOKC Membership Card & Donation Acknowledgement Supporting his Claim of a 23-Year Member, Donor, Volunteer Relationship

● **Relevance:** Plaintiff falsely represented Defendant as an "unknown infringer" in its **Complaint [DE-1]** and **Motion for a Preliminary Injunction [DE-7]**, despite **issuing him a new annual**

membership card in January 2020—just 33 days before filing suit. Plaintiff also **acknowledged receipt of a $25 donation from Defendant** in an official letter using its stationary. *See* [**Exhibit - HOKC Membership & Donation Acknowledgement**][1]. This proves that HOKC knew exactly who Defendant was and intentionally concealed this fact to manufacture a false controversy, compel the Court to impose a Temporary Restraining Order, disparage him with the news media, and send emails to thousands of members.

- **Judicial Notice Basis:** Plaintiff's own internal records confirm these facts. Because they are **verifiable, contemporaneous business records created by Plaintiff itself**, they qualify for judicial notice under FRE 201(b) as adjudicative facts not subject to reasonable dispute.

## F) Plaintiff's Last-Minute Trademark Filings Demonstrate Bad Faith and Retaliatory Litigation Practices

### Plaintiff Made Three Fraudulent Trademark Applications (February 17, 2020) in Bad-Faith to Fabricate Legal Standing and Weaponize the Court

Most egregiously, Plaintiff **failed to plainly disclose to the Court that it applied for the very trademarks at issue merely three days before filing this lawsuit in their pleadings**, leading the Court to assume that its rights stem from **longstanding, well-established use of other identical marks for products rather than a last-minute opportunistic filing**. This deceptive litigation tactic is precisely the kind of **fraud on the court** that the Supreme Court has condemned. See *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 246 (1944) (holding that courts must intervene when a party secures judicial relief through fraudulent misrepresentation). The Sixth Circuit has similarly rejected attempts to secure relief based on **selective or misleading evidence**. See *Workman v. Bell*, 178 F.3d 759, 767 (6th Cir. 1998) (noting that a party's failure to disclose material facts may constitute an abuse of process).

On February 17, 2020, Plaintiff, The Honorable Order of Kentucky Colonels, Inc. (HOKC), filed three new separate trademark applications for the term "Kentucky Colonels" (Serial Nos. **88800020, 88800035, and 88800038**) as a wordmark for membership services, that the Defendant was negotiating implementing with

---

[1] Pursuant to FRCP 1, Defendant has labeled exhibits with descriptive short titles rather than sequential letters or numbers to enhance clarity and judicial efficiency. This method allows the Court to quickly identify the relevance of each exhibit, reducing unnecessary cross-referencing and ensuring a more streamlined review of the evidence.

the Plaintiff between January 13 and January 20, 2020. The Plaintiff also made false claims in these applications of *first-use* in 1931 before it was conceived as an idea in 1933 and *first-use in commerce* in 1951 before it was a legally incorporated entity in Kentucky. *See* **[Exhibit - Trademark Applications 88800020, 88800035, & 88800038].** All three of its claims are directly contradicted by the Plaintiff's Articles of Incorporation, *see* **[Exhibit- HOKC Articles of Incorporation (1957)]** and by one of its Executive Board Members, **Robert A. Metry** in his notarized Trademark Application in 1981 saying *"The service mark (Honorable Order of Kentucky Colonels) was first used in connection with the services set forth [..] on May 10, 1957, and the mark, The Honorable Order of Kentucky Colonels, was used by the unincorporated association as early as 1934;" see* **[Exhibit - 1981 Metry Trademark Application 73299122]**. The statement made by Metry makes perfect sense considering that, "The Honorable Order of Kentucky Colonels" was based on an idea created by Governor Ruby Laffoon with Anna Bell Ward and Charles C. Pettijohn in September 1933 according to numerous newspaper articles from Lexington and other parts of the US, s*ee* **[Exhibit - HOKC Disambiguation]** (exhibit contains 10 articles confirming the origination of the HOKC in 1933). Nonetheless, even Metry was stretching the truth, first-use of a name created by a governor is not the same as the organization itself originating an idea arbitrarily that can serve as a trademark.

However, three days after making its applications, on February 20, 2020, Plaintiff initiated this lawsuit, this timing, following good-faith negotiations with the Defendant over a merger, demonstrates that these applications were applied for in **bad faith** to **manufacture standing** rather than enforce legitimate rights.

Plaintiff **falsely declared** in its averment of USPTO applications that *it knew of no other entities or concurrent users* of the "Kentucky Colonels" phrase as a name or part of their identity despite filing a 350+ page Verified Complaint seeking an injunction just three days later for exactly that, including:

- Defendant's **longstanding use of "Kentucky Colonels International"** (KCI) as a non-commercial association name to identify his social media program and unincorporated fraternal club for over a decade where thousands of the Plaintiff's members participated consensually.

- Other independent Kentucky Colonel organizations, historical clubs, and fraternal groups dating back to the **19th century using the phrase descriptively**.

- A previous **2004 federal case filed by the Plaintiff** (HOKC v. Building Champions, LLC) that ruled against Plaintiff's exclusive claim to the phrase in this Court.

These material omissions constitute **fraud on the USPTO** under **15 U.S.C. § 1051(a)(3)(D)** and render these trademark registrations **void *ab initio*** under *In re Bose Corp., 580 F.3d 1240 (Fed. Cir. 2009)*.

**Request for Judicial Notice:** Defendant requests that this Court take judicial notice of these fraudulent trademark applications under **Federal Rule of Evidence 201(b)** as adjudicative facts that are:

1. **Indisputable public records**, available from the USPTO database.

2. **Directly relevant** to Defendant's forthcoming **Motion to Cancel Plaintiff's Trademarks under 15 U.S.C. § 1119**.

3. **Demonstrative of Plaintiff's bad faith litigation**, undermining its entire basis for this lawsuit.

## G) Plaintiff's Prior Litigation History Before the Court Confirms a Pattern of Overreach and Suppression Against Descriptive Users

Plaintiff previously **litigated and lost** a case regarding its claimed exclusive right to the term "Kentucky Colonels." The case, ***Honorable Order of Kentucky Colonels, Inc. v. Building Champions, LLC***, which was decided against Plaintiff, confirming that *"Kentucky Colonels"* **is not an exclusive trademark** but a widely recognized honorary title used by multiple groups, sports clubs, music groups, and individuals.

Despite this ruling, Plaintiff failed to disclose this prior adverse decision in its 2020 trademark applications and subsequent litigation filings with this Court, constituting **fraud on the court** under *Hazel-Atlas Glass Co. v. Hartford-Empire Co., 322 U.S. 238 (1944)*.

This ruling **precludes** Plaintiff from reasserting the same trademark claims in this litigation under the doctrine of **collateral estoppel (issue preclusion)**, as established in *Montana v. United States, 440 U.S. 147 (1979)* bars relitigating claims that have already been decided. *See* **[Exhibit - Honorable Order of**

**Kentucky Colonels v. Building Champions, LLC, 345 F. Supp. 2d 716 (W.D. Ky. 2004)]**. Therefore, Defendant requests that this Court take judicial notice of the **final decision** in the 2004 case as:

1. **A prior judicial ruling** that bars Plaintiff from relitigating the issue.

2. **Evidence that Plaintiff's trademark claims in this case are legally untenable**.

3. **Proof that Plaintiff deliberately misled the USPTO and this Court by omitting prior case law adverse to its claims**.

## H) Plaintiff's Own Corporate Records Contradict Its Claims About its Origin

For decades, Plaintiff has misrepresented its **origin and historical continuity**, falsely claiming its origin in **1813** and an unbroken existence since **1931**. Self-Authenticating Public Records (FRE 902), Government Documents, Historical & Archival Records (FRE 901(b)(8) – Ancient Documents Rule & FRE 803(16) – Statements in Ancient Documents, and Extrinsic Evidence Corroborating Public Facts (FRE 201(b)) and a lack thereof, **tell a different story of the Honorable Order of Kentucky Colonels**.

The **official 1957 Articles of Incorporation** for The Honorable Order of Kentucky Colonels, Inc. prove:

- HOKC did not legally exist as a Kentucky corporation until **1957**.

- It was an **unincorporated social club** (1933–1956), and any claim of direct succession, merger or inheritance with or of any prior "Kentucky Colonels" group or the "Kentucky Colonels Association" that existed from 1930-1933 is fraudulent. **[Exhibit - HOKC Disambiguation]**

- Before incorporation, the term **"Honorable Order of Kentucky Colonels" was a phrase created by a state official**, making it **public domain** in itself rather than Plaintiff's exclusive intellectual property.

Defendant requests that this Court take judicial notice of the **1957 Articles of Incorporation** under **FRE 201(b)** and the other aforementioned exhibits as:

1. **Government documents from the Commonwealth of Kentucky Secretary of State's office**, indisputably establishing the true legal foundation of HOKC.

2. **Evidence that Plaintiff's entire narrative of historical continuity since 1931 is fabricated**.

3. **Proof that the name and idea "Honorable Order of Kentucky Colonels" was originally a state-sanctioned unincorporated entity and thus is in the public domain**.

## I) Self-Authenticating Exhibits (FRE 902) That Show Plaintiff's Claims to Be Set in a False Narrative of Misinformation and Propaganda

Pursuant to **Federal Rule of Evidence 902**, Defendant submits the following **self-authenticating exhibits**, which require **no extrinsic evidence of authenticity** and are **admissible without further proof**:

1. **Government Records and Official Publications (FRE 902(5))**

   ○ **[Exhibit - Fraudulent Succession 1931]** – Document Recorded at the Kentucky Governor's Office under Gov. Flem Sampson on May, 02, 1931 with the Kentucky Colonels Association.

   ○ **[Exhibit - Governor's Letter (2020)]** – Hand delivered letter to Andy Beshear's Receptionist on January 21, 2020, including Affidavit from Col. Nicholas Wright.

2. **Newspaper Articles and Periodicals (FRE 902(6))**

   ○ **[Exhibit - Kentucky Colonels Collection]** – Ten (10) selected **historical newspaper articles** demonstrating the **public use of "Kentucky Colonel" prior to Plaintiff's emergence in 1933 and subsequent incorporation 25 years later in 1957**.

3. **Certified Public Records (FRE 902(4))**

   ○ **[Exhibit - US Congress (1936)]** – **U.S. Congressional Records** recognizing the Kentucky Colonel as an honorary title and traditional institution granted by the state.

   ○ **[Exhibit - Kentucky Governors' Appointments and Commissions]** – Kentucky Governor's official proclamations commissioning individuals as **Kentucky Colonels**.

4. **Historical and Ancient Documents (FRE 902(8))**

   ○ **[Exhibit - Archive Search Query (2025)]** – Archival books and manuscripts (published more than 20 years ago) confirming the **historical evolution of the Kentucky Colonel title**.

- ○ **[Exhibit - 1st Kentucky Colonels Website (1998)]** – Defendant's archived website publication created three years prior to the Plaintiff's online presence.

- ○ **[Exhibit - Kentucky Colonels Handbook (1930)]** – Handbook and Directory of the Kentucky Colonels Club of Louisville transitioning to become an association.

- ○ Photographs **[Exhibit – Governor W. O. Bradley 1897]** with his honor guard and **[Exhibit - HOBGI (1939)]** *Kentucky Colonel Model Initiation Club established in 1914*, part of the Honorable Order of the Blue Goose International.

# IV. VOLUMINOUS HISTORICAL RECORDS FRE 1006

Pursuant to **Federal Rule of Evidence 1006**, Defendant submits the **FRE 1006 Summary of Self-Authenticated Exhibits** (Exhibit - [Historic Self-Authenticating Resources]) as a consolidated presentation of extensive historical records that are too voluminous to be conveniently examined by the Court in their entirety. This summary compiles a selection of over **20,000 historical sources**, including newspaper articles, books, government records, and scholarly research, a majority of which establish the **public domain status** and **widespread historical use** of "Kentucky Colonels" long before Plaintiff's incorporation.

While this case is **administratively closed** at the district court level, it **remains active on appeal**, and the district court **retains limited jurisdiction** to facilitate appellate review, including ensuring the record is properly compiled and supplemented. See **In re Thorp, 655 F.2d 997, 998 (9th Cir. 1981)** (holding that a district court may assist the appellate process by clarifying or supplementing the record); **Fed. R. App. P. 10(e)** (permitting modification of the record to ensure completeness for appellate review). In light of this, Defendant conducted an updated search of publicly accessible documents on **March 16, 2025**. *See* [Exhibit - Archive Search Query 2025]. All of this evidence gathered is drawn from well-known **publicly accessible historical archives**, collected by the Defendant and others including:

**Kentucky Colonel Bibliography**: https://www.kycolonelcy.us/kentucky-colonel-bibliography
**American Newspaper Articles**: https://www.kycolonelcy.us/american-newspaper-articles

## A. Judicial Notice of Summarized Evidence

Federal courts routinely take **judicial notice of historical sources, newspaper archives, and government records** when they establish **adjudicative facts relevant to legal disputes**. *See*:

- *Washington Post v. Robinson*, 935 F.2d 282, 291 (D.C. Cir. 1991) (holding courts may judicially notice historical newspaper articles).

- *Rowe v. Gibson*, 798 F.3d 622, 628-29 (7th Cir. 2015) (allowing judicial notice of books and government documents in the public domain).

- *Von Saher v. Norton Simon Museum of Art*, 592 F.3d 954, 960 (9th Cir. 2010) (recognizing historical newspaper articles as valid evidence of public knowledge).

Here, the **FRE 1006 Summary of Self-Authenticated Exhibits** is offered to:

1. **Prevent unnecessary burden on the Court** by summarizing **voluminous** historical evidence.

2. **Demonstrate the long-established, non-exclusive public usage of "Kentucky Colonels"** in civic, cultural, and social contexts.

3. **Preempt Plaintiff's expected objections to relevance**, as historical context is **essential** in cases where **trademark law intersects with First Amendment rights**.

## B. Relevance of Historical Evidence in Trademark Disputes

Historical use of a term **directly impacts its status under trademark law**, particularly in determining:

- **Genericness and descriptiveness** (*Booking.com B.V. v. USPTO*, 591 U.S. __, 140 S. Ct. 2298 (2020)).

- **Fraudulent procurement of trademarks** (*In re Bose Corp.*, 580 F.3d 1240 (Fed. Cir. 2009)).

- **First Amendment protections against monopolization of public domain terms** (*Matal v. Tam*, 582 U.S. 218 (2017)).

In *Rogers v. Grimaldi*, 875 F.2d 994, 999 (2d Cir. 1989), the court held that **historical and cultural significance of terms is directly relevant** when assessing **trademark claims that conflict with free speech principles**. Similarly, in *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 32-33 (2003), the Supreme Court warned against **trademark monopolization of historically public expressions**.

Since Plaintiff's trademark claims rest on an **ahistorical and misleading narrative**, judicial notice of this **Exhibit [Historic Self-Authenticating Resources]** is **necessary to correct the record and ensure the Court does not rely on inaccurate or fabricated historical claims**.

## C. Conclusion

Because the **FRE 1006 Summary of Self-Authenticated Exhibits** consolidates **historical, legislative, and academic sources** that are **not subject to reasonable dispute**, judicial notice is warranted under **FRE 201(b)**. Defendant respectfully requests that this Court:

1. **Accept  [Exhibit - Historic Self-Authenticating Resources]** as a valid summary of FRE 902 exhibits of voluminous records under FRE 1006.

2. **Take judicial notice of the summarized historical facts**, which conclusively establish that:

   ○ Kentucky Colonels has been a **public designation for over a century and a half**.

   ○ Kentucky has had its Colonels since 1775 starting with Col. Daniel Boone when Col. Richard Henderson commissioned him to build the Wilderness Road in March with 33 axmen.

   ○ Plaintiff's **historical claims of exclusivity to the title and name are demonstrably false**.

   ○ The **First Amendment bars Plaintiff's attempt to monopolize or make exclusive claims to a term that has long been in public use**.

By taking judicial notice of these adjudicative facts, the Court will prevent further reliance on **misrepresented historical claims** about a clearly historical title, term and phrase that has been part of Kentucky since its inception and ensure that all rulings are **grounded in accurate historical context**.

# V. PREPONDERANCE OF EVIDENCE STANDARD

## A. Judicial Notice is Warranted by the Preponderance of Evidence Standard

Even under the preponderance of evidence standard, **Plaintiff's claims collapse under the weight of the historical record**. A preponderance of the evidence means that a fact is more likely than not to be true. The evidence presented not only meets this threshold—it far exceeds it.

### 1. The Preponderance of Evidence Standard is Met

Under the **preponderance of evidence standard**, a fact is deemed proven if it is **more likely than not to be true**. *See Concrete Pipe & Prods. of Cal., Inc. v. Constr. Laborers Pension Tr. for S. Cal.,* 508 U.S. 602, 622 (1993) ("[T]he preponderance of the evidence standard applies to factual determinations.").

Here, **the overwhelming weight of evidence contained in the FRE 1006 Summary and this motion supports judicial notice** that the term **"Kentucky Colonel" was publicly recognized, widely used, and never has been the exclusive property of Plaintiff.**

The record includes:

- **Over 300 independently self-authenticated newspaper articles (1872–1977)**—demonstrating that the press, public, and multiple organizations used the title **long before Plaintiff's incorporation that are immediately accessible by the Court**.

- **Government and historical records**—confirming that **state officials, social clubs, and fraternal orders** used "Kentucky Colonel" as a public designation of a class of people, descriptively, not as a private trademark.

- **Primary sources from the Library of Congress, NewspaperArchive, and other independent archives**—establishing that the term had no proprietary significance and was freely used in commerce.

## 2. The Government's Role in Creating the Title Confirms Public Domain Status

Government-created titles and works **belong to the public** and **cannot be monopolized by private entities**. *See Banks v. Manchester,* 128 U.S. 244, 253 (1888) ("Government-created works belong to the public domain and are not subject to private appropriation.").

- **The Kentucky Colonel commission is a state-issued honor, not a proprietary brand.**

- **The Honorable Order of Kentucky Colonels (HOKC) was founded under Governor Ruby Laffoon's administration in 1933**—meaning it originated as a **government-backed ceremonial initiative** to promote Kentucky's image.

- **HOKC was unincorporated from 1933 to 1957**, meaning it **had no legal standing to claim exclusive ownership of the term for its first 24 years**.

Because the **title was government-created and publicly recognized decades before HOKC existed**, Plaintiff's **trademark claims are fundamentally fraudulent**.

## 3. Plaintiff's Claims are Based on a Fraudulent Narrative

Plaintiff **omitted key historical facts** to make misleading claims to the **USPTO and this Court** to assume exclusive ownership of "Kentucky Colonels" as a trademark:

- **Fraud on the USPTO:** Plaintiff's trademark applications **failed to disclose** widespread third-party use of "Kentucky Colonel," violating **15 U.S.C. § 1051(a)(3)(D)**.

  - *See In re Bose Corp.,* 580 F.3d 1240, 1245 (Fed. Cir. 2009) (**Fraud occurs when a trademark applicant knowingly makes false statements to obtain a registration.**)

- **Fraud on the Court:** Plaintiff **presented false historical claims in litigation** to gain unfair advantage, warranting scrutiny.

  - *See Hazel-Atlas Glass Co. v. Hartford-Empire Co.,* 322 U.S. 238, 246 (1944) (**Fraud on the court occurs when litigants present false evidence to obtain judicial relief.**)

## B. The FRE 1006 Summary Confirms Preponderance of Evidence is Satisfied

The **FRE 1006 Summary of Voluminous Records** provides:

- **Extensive historical documentation from over 100 independent sources**—establishing that "Kentucky Colonels" was **widely recognized and never exclusive to Plaintiff.**

- **Contemporaneous evidence from newspapers, legislative archives, and commercial use records**—proving that multiple entities used the term long before Plaintiff's incorporation.

- **Undisputed government records confirming that the term originated as a state honor, placing it in the public domain.**

These records **exceed the preponderance of evidence standard**, eliminating any reasonable dispute over Plaintiff's fraudulent claims.

## C. Judicial Notice is Required to Prevent Further Misuse of the Courts

Under **FRE 201(b)**, courts **must** take judicial notice of facts that are **not subject to reasonable dispute and capable of verification through reliable sources.**

Judicial notice is **routinely granted for**:

- **Historical facts and public records** (*See U.S. v. Lovasco,* 431 U.S. 783, 790 n.7 (1977))

- **Government documents and legislative history** (*See Lamar v. Micou,* 114 U.S. 218, 223 (1885))

- **Prior court filings, trademarks, and USPTO records** (*See Schlotzsky's, Ltd. v. Sterling Poultry, Inc.,* 520 F.3d 393, 396 (5th Cir. 2008))

Since **Plaintiff's claims are refuted by government records, legal precedent, and over a century of public domain evidence**, judicial notice is **not optional—it is necessary to ensure a fair adjudication of this case.**

# VI. RELIEF REQUESTED

For the foregoing reasons, Defendant respectfully requests that this Court:

1. **Grant judicial notice under Federal Rule of Evidence 201(b)** of the adjudicative facts presented in this motion, including but not limited to:

   ○ The preexisting public domain status of the term **"Kentucky Colonels"** as a class of people before Plaintiff's incorporation and inception by Governor Ruby Laffoon.

   ○ The **government's historical role** in creating and recognizing the title as a non-exclusive honor to tens of thousands prior to the HOKCs first trademark in 1981.

   ○ Plaintiff's **misrepresentations** regarding the history and exclusivity of its claimed trademarks over a historical term inextricably intertwined with state history.

2. **Accept Defendant's FRE 1006 Summary** as a valid and necessary means of presenting voluminous historical evidence in a streamlined manner without overburdening the Court.

3. **Take judicial notice under advisement for consideration in all subsequent proceedings** where these facts may be material to the adjudication of trademark validity, misuse of process, and related claims.

4. **Acknowledge that future motions will provide additional evidence concerning Plaintiff's misrepresentations and potential misuse of the judicial process.**

Defendant **does not seek a final determination of fraud at this stage**, but instead moves this Court to recognize judicially noticeable facts that are **critical for the accurate resolution of pending and forthcoming motions in this Court.**

# VII. CONCLUSION

Granting judicial notice in this matter is necessary to expose Plaintiff's fraudulent claims of historical succession and improper trademark expansion, ensuring that judicial determinations are based on an accurate and complete factual record. Recognizing these adjudicative facts will prevent continued reliance on misrepresented evidence that has unjustly influenced prior rulings in this case. Doing so will

also acknowledge that Plaintiff's claims of exclusive rights over "Kentucky Colonels" are based on a falsified historical narrative and improper omissions in its trademark applications. Moreover, judicial notice will provide a corrected evidentiary foundation for anticipated motions to cancel fraudulently obtained trademarks and vacate prior rulings under Rule 60(b).

By taking this necessary action, the Court will safeguard the integrity of these proceedings, prevent further abuse of the judicial process, and ensure that future motions—including forthcoming Rule 11 sanctions—are adjudicated on an accurate record. Recognizing these facts is essential to preventing additional procedural manipulation and bad-faith conduct that undermines the fundamental principles of fairness and justice.

Furthermore, **any objection by Plaintiff to this Motion should be construed as an implicit admission of the fraudulent conduct outlined herein.** Courts recognize that when a party resists judicially noticeable facts, it is often because those facts are fatal to their claims. *See Demjanjuk v. Petrovsky, 10 F.3d 338, 354 (6th Cir. 1993)* (fraud upon the court demands judicial intervention). Plaintiff's failure to disclose adverse rulings and misleading trademark filings before the USPTO constitutes a knowing misrepresentation as in *Honorable Order of Kentucky Colonels v. Building Champions, LLC, 345 F. Supp. 2d 716 (W.D. Ky. 2004).* This Court should take judicial notice to ensure the appellate record is accurate and free from Plaintiff's attempts to rewrite history.

I declare under penalty of perjury that the foregoing Motion To Take Judicial Notice of Adjudicative and Indisputable Facts is true and correct to the best of my knowledge and belief.

Respectfully submitted,

/s/ Col. David J. Wright

302 General Smith Drive
Richmond, Kentucky 40475

david.wright@globcal.net
Tel: (859) 379-8277

Dated: March 17, 2025
Puerto Carreño, Colombia

**<u>Certificate of Service</u>**

I, David J. Wright, hereby certify that on **March 17, 2025**, I submitted this **Motion For Judicial Notice** through the Court's **Electronic Document Submission System (EDSS)** for transmission to the **Clerk of the Court for the United States District Court for the Western District of Kentucky**, in accordance with **General Order No. 25-02**.

Upon acceptance by the Clerk, the filing will be entered into the **CM/ECF system**, which will provide electronic notice to all registered CM/ECF users associated with this case. **Service will be accomplished upon docketing and assignment of a document number by the Clerk of Court.**

**Dated:** March 17, 2025

Clerk's Office
601 W. Broadway, Rm 106
Gene Snyder United States Courthouse
Louisville, KY 40202