# EXHIBIT - Fraudulent Succession (1931)

A Case of Fraudulent Succession in 1931 by the HOKC (est.1933)

---

**Argument** - The 1931 Minutes Presented by the HOKC to the US District Court in 2004 and 2020 are misappropriated by the HOKC based on Fraudulent Succession of the Kentucky Colonels Association.

**The Honorable Order of Kentucky Colonels** *passed off* **the '1931 Minutes' as their own from the Kentucky Colonels Association as Exhibit 1 in its Verified Complaint 3:20-cv-132 made against the Defendant before the US District Court**, the newspaper article presented here shows it was separate entity, the HOKC used the 1931 minutes claim in a court case in 2004 and again in 2020 broadly stating that it was the source of their "trademark" and rights to the name "Kentucky Colonels" since 1931, the newspaper article here clearly contradicts their claim. Essentially the HOKC snatched up abandoned intellectual property that was already part of the public domain.

In 2004, **William Hollander for the HOKC** claimed in **The Honorable Order of Kentucky Colonels, Inc v. Building Champions, LLC, 3:04-cv-00465, (W.D. Ky. Aug 12, 2004) ECF No. 1** "The organization formally dates back to October 14, 1930. During a meeting at the Brown Hotel in Louisville, groundwork was laid for a group to be known as The Kentucky Colonels. Governor Flem Sampson not only endorsed the organization but defined it as he urged the purpose to be "a society organization to restore the grandeur and sentiment of the original Kentucky Colonel; to more closely bond together this group into a great non-political brotherhood for the advancement of Kentucky and Kentuckians." These comments were made at the first formal meeting of The Kentucky Colonels on May 23, 1931. From a historical perspective, the phrases "Kentucky Colonel" and "Kentucky Colonels" would not exist were it not for the honorary appointments made since the early 1800s by the Governors of the Commonwealth, and the promotional work of the Honorable Order of Kentucky Colonels. [..] The Honorable Order has used the KENTUCKY COLONELS mark since 1931. In recent years, the Honorable Order has used the KENTUCKY COLONELS mark on a wide variety of merchandise. The sale of this merchandise supports the Honorable Order's mission."

In 2020, **Cornelius Coryell II, made a similar claim** in this case using a copy of the typed 1931 Minutes as Exhibit **[DE-1-1 Page 2 of 3 PageID #: 24]** most likely acquired from the Filson Historical Society Library which has Item "365. **[The] Kentucky Colonels [Association's]. Records**, 1930-1933. BH\K37. .66 cu. ft. Honorary Kentucky organization. These records were assembled by R.H. Ziehm, secretary-treasurer during the period covered. Included is correspondence, 1930-1933; minutes and a minute book, 1931; membership lists; constitution and by-laws; receipts; sample applications; designs for uniforms and insignia; programs; and newspaper clippings. The correspondence concerns membership and related matters."

This is a strong argument against their claim of **exclusive trademark rights** and historical succession. The **Honorable Order of Kentucky Colonels (HOKC)** used the **1931 Minutes of the "Kentucky

**Colonels Association"** in **both 2004 and 2020** to claim trademark rights, yet the **1933 news article (and other articles) contradict that assertion**, and so does Executive Board Member, **Robert A. Metry in 1981** when he applied for the first-use trademark of the HOKC; the Defendant-Appellant Col. David J Wright argues:

**Historical Context and Distinctions**

1. **1933–1936 State Order**
   During Governor Ruby Laffoon's administration (1933–1936), the term "Honorable Order of Kentucky Colonels" referred to a *state order of honor and merit*—an official recognition conferred by the Commonwealth of Kentucky. This historical entity was governed by the office of the Governor and is not associated with any private organizations.

2. **1933–1957 Private Association**
   Separate from the Governor's official order, an organization known as *"The Honorable Order of Kentucky Colonels Association"* was established in New York (unincorporated) and operated with an office in Lexington from approximately 1933 to ?, moving several times ending up in Anchorage, Kentucky. This association was *not* a state-sponsored body and should not be confused with the earlier official state order from which it was named by Anna Belle Ward and Charles C. Pettijohn who both worked within the motion picture industry and closely with the Governor to promote the Kentucky Derby using celebrities of the Great Depression era.

3. **Modern Nonprofit Corporation**
   The entity currently known as *"The Honorable Order of Kentucky Colonels, Inc."* holds a registered trademark (wordmark) for "Honorable Order of Kentucky Colonels." This modern nonprofit corporation is distinct from both the 1933–1936 gubernatorial order and the mid-century private association.

By outlining these three separate usages of the term "Honorable Order of Kentucky Colonels," it becomes clear that the historical, state-created order (1933–1936) is *not* the same as the private organizations that emerged or evolved later.

## Key Legal Issues & Arguments:

**1. Trademark Fraud (Lanham Act – 15 U.S.C. § 1120)**

- If HOKC knowingly presented **false or misleading evidence** (the 1931 Minutes) to claim they were the **sole successors** to the name "Kentucky Colonels," that could constitute **fraudulent trademark procurement**.

- **Legal Precedent:** *In re Bose Corp.*, 580 F.3d 1240 (Fed. Cir. 2009) – Trademark fraud occurs when false statements are made knowingly to secure a registration.

**2. False Advertising & Unfair Competition (Lanham Act – 15 U.S.C. § 1125(a))**

- The **1933 article proves that two separate organizations existed**, meaning HOKC falsely advertised itself as the **sole historical entity falsely inheriting rights**.

- This misrepresentation could constitute **false advertising** and **unfair competition**, as it deceives consumers and misleads courts.

### 3. Fraud Upon the Court

- If HOKC presented the **1931 Minutes** in both **2004 and 2020** while omitting contradictory evidence (such as the 1933 article), this is **fraud upon the court** (*Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238 (1944)).

### 4. Lack of Legal Succession – Burden of Proof on HOKC

- **The HOKC** must prove that they lawfully inherited the name **through merger, consolidation, or legal succession upon the winding up of the Kentucky Colonels association**.

- If no registered corporate records, contracts, or official actions were documented by the state to support their claim, **they cannot legally claim inheritance**.

**See one of several news articles, this and two more distinct news articles can be found in the HOKC Disambiguation Exhibit.**

**NEW COLONELS BODY IS FORMED**

## Lexington Woman Secretary of "Honorable Order," Headquarters New York.

**Lexington, Ky., Sept. 29**. (AP) - The "honorable order of Kentucky Colonels," modestly announced as a world-wide society with headquarters in New York, is the latest organization to spring from the wholesale commissioning of honorary aides on the staffs of the Kentucky governor and lieutenant governor.

Miss Anna Bell Ward, a young woman who, between times, manages a local movie theater, is permanent secretary and keeper of the great seal, and she announced Thursday that the New York headquarters, 28 West Forty-fourth street, are under direction of Gen. Charles C. Pettijohn.

There already is a Kentucky Colonels' association with headquarters in Louisville.

The purpose of the new organization was announced as designed to bring together at the Kentucky Derby each May in Louisville all persons holding Kentucky Colonels and other honorary military commissions, of which there are at latest official reports 1,324 appointed by Gov. Ruby Laffoon and Lieut. Gov. A. B. "Happy" Chandler, as well as more than 1,000 appointed under previous regimes. Six foreign countries and all but seven American states are represented in the potential membership list of the new organization.

---

**Citation:** "New Colonels Body is Formed"
Newspapers.com,
Messenger-Inquirer, September 29, 1933,
https://www.newspapers.com/article/messenger-inquirer-new-colonels-body-is/115573397/

Minutes Continued--Page #2

After outlining his ideas and suggestions, as shown above, Col. Vinson called on each Colonel for his particular ideas and suggestions, which were given and were along the lines of the original suggestions except that the matter of this being a non-political group, and that it should and will be so kept, was stressed.

Col. Benjamin Berman was then called on to explain his suggestions and the research he has conducted on uniforms, medallions and insignia. After reading his report, which was most intelligent, he exhibited cut outs and copies of medallions and insignia which were received with much favorable comment and a desire to have objects of this type adopted. He, also, answered many questions and gave an explanation of some of the medallions and insignia used in foreign countries, after which a general discussion was held.

To provide for the future it was recommended that Committees be appointed to carry out all necessary detail of organization before the meeting of May 23rd, 1931. These Committees as appointed are: Committee on Articles of Incorporation, Colonels H. G. Hightower, Charles W. Logan, C. C. Regan; Committee on Uniforms and Insignia, Colonels Benjamin Berman, F. E. Galloway, R. H. Ziehm; Committee on Constitution and By Laws, Colonels John Skain, A. H. Morris, Sr., Ben Snyder, Jr. F. Firth and W. W. Winslow.

It was moved by Col. H. G. Hightower and seconded by Col. C. W. Logan that the Committees as appointed be accepted. This motion was passed unanimously.

After discussion it was voted to meet in Louisville, Kentucky on Saturday, May 23rd, 1931, the exact time and place to be decided later, to invite all Colonels and it was, also, decided to invite all former Governors.

To take care of the initial expenses such as postage, stenographic hire, stationary and incidental expense Col. Ben Snyder donated fifty dollars ($50.00) for which he was highly complimented by the assembled group.

There being no further business the meeting adjourned at 6:30 P. M.

_____
Col. R. H. Ziehm, Secretary

Minutes of meeting of Kentucky Colonels called by Governor Flem D. Sampson and held in Reception Room at State Capitol, Frankfort, Kentucky, Saturday, 4:00 P.M., May 2nd, 1931.

The meeting was formerly opened by Governor Sampson. He outlined in brief the purpose of this meeting which is to formulate a society or organization to restore the grandeur and sentiment of the original Kentucky Colonel; to more closely band together this group into a great non-political brotherhood for the advancement of Kentucky and Kentuckians; to adopt uniforms, medallions, insignia, seals, constitution and by laws and a Declaration of Principles. It was, also, the Governors desire to have this group take active part in uniform, if possible, at all future State occasions such as receptions, both State and social, the inauguration of future Governors, etc.

On nomination of Colonel Charles W. Logan, seconded by Colonel Robert F. Dixon, Jr., Colonel T. W. Vinson was unanimously elected temporary Chairman. Colonel R. H. Ziehm was unanimously elected temporary Secretary on nomination by Col. Andrew H. Morris, Sr., seconded by Col. Charles W. Logan. Col. John Skain, on nomination by Col. A. H. Morris, Sr. and seconded by Col. Charles W. Logan, was unanimously elected temporary Treasurer.

Col. Vinson, on assuming the chair, outlined tentative plans of organization which were as follows: The election of other temporary officers to serve until our next meeting which is to be held in Louisville, Kentucky on Saturday, May 23rd, the exact time and place to be decided later; the appointing of three committees, namely, a Committee of three on Articles of Incorporation, a Committee of three on Uniforms and Insignia and a Committee of five on Constitution and By Laws. These Committees are to have their reports ready for meeting of May 23rd.

That we should incorporate this body and give to it's members the distinction due each one so honored by a Commission as a Kentucky Colonel, and could not mean nearly so much; because of this honor they are regarded highly in their own country and on their arrival here are treated with high honor and respect. In most instances a Kentucky Colonel has done much more to deserve his appointment and the honor it should carry.