FILED

JAMES J. VILT JR., CLERK
U.S. DISTRICT COURT
W/D OF KENTUCKY

Date:    Mar 24, 2025

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**LOUISVILLE DIVISION**

| | |
|---|---|
| THE HONORABLE ORDER OF KENTUCKY COLONELS, INC. **Plaintiff** | Civil Action No. 3:20-cv-00132-RGJ |
| vs. | **MOTION FOR RULE 11 SANCTIONS** |
| COL. DAVID J. WRIGHT **Defendant** | Filed Pursuant to Fed. R. Civ. P. 11(c)(2) |

## DEFENDANT'S MOTION FOR RULE 11 SANCTIONS AGAINST PLAINTIFF'S COUNSEL CORNELIUS CORYELL II AND WYATT, TARRANT & COMBS, LLP

**TO THE HONORABLE COURT:**

Comes now Defendant **Col. David J. Wright**, appearing *pro se* and *in forma pauperis*, to respectfully move this Court for **Rule 11 Sanctions** against **Cornelius E. Coryell II** and the law firm **Wyatt, Tarrant & Combs, LLP**, for repeated and knowing violations of **Federal Rule of Civil Procedure 11(b)(1)–(3)**.

Plaintiff's counsel has submitted pleadings that include:

- Knowingly false factual contentions;

- Material omissions and concealment;

- Misrepresentations of controlling law;

- Fraudulent trademark application practices; and

- Abuse of judicial process designed to silence protected speech and retaliate against the Defendant as a known member of the Plaintiff's organization and whistleblower.

On **February 26, 2025**, Defendant filed a **Notice of Intent to Seek Rule 11 Sanctions** pursuant to **Rule 11(c)(2) [DE-169]**, providing the required **21-day safe harbor notice**. That period has now expired without withdrawal or correction by Plaintiff's counsel.

As detailed below, Plaintiff's counsel has:

- Submitted **false and misleading assertions** to this Court and the USPTO regarding Plaintiff's alleged exclusive trademark rights;

- Engaged in **retaliatory SLAPP litigation** to suppress constitutionally protected speech;

- **Misled the Court** to obtain an overbroad injunction by omitting material facts and falsely characterizing Defendant as an unknown infringer;

- Operated under an **unethical conflict of interest**, with a Wyatt partner serving on HOKC's board while billing the charity well over $500,000 in legal fees;

- **Violated the Permanent Injunction [DE-93]** by adopting Defendant's previously rejected chapter model; and

- Failed to take any remedial action despite having received formal notice under **Rule 11(c)(2)**.

This conduct not only violates **Rule 11(b)**, but also **undermines the integrity of the Court**, **violates the duty of candor**, and reflects **systemic abuse of process** by counsel representing a federally registered **501(c)(3) public charity**.

Accordingly, Defendant respectfully requests that the Court:

1. **Impose monetary sanctions** on Plaintiff's counsel;

2. **Refer counsel for disciplinary review** by the Kentucky Bar Association and other relevant authorities;

3. And grant leave to file supplemental motions, including to seek vacatur of the case under **Fed. R. Civ. P. 60(b)** and to cancel Plaintiff's fraudulently procured trademarks under **15 U.S.C. § 1119**.

These actions are not isolated mistakes, but part of a pattern of misconduct designed to suppress evidence, manipulate the Court, and gain tactical advantage through deception and omission.

---

# I. BACKGROUND: TWENTY YEARS OF CONCEALED CONTACT AND RETALIATORY LITIGATION CONDUCT

Contrary to the sworn allegations in **Plaintiff's Complaint [DE-1]** and **Motion for Temporary Restraining Order and Preliminary Injunction [DE-7]**, counsel for Plaintiff, **Cornelius Coryell II,** spearheading the Plaintiff's actions since 2020, has misrepresented the nature of Defendant's conduct and prior relationship with HOKC throughout the litigation. These omissions and false narratives conceal a nearly two-decade history of awareness, negotiation, and peaceful co-existence. The following material facts (exculpatory evidence) were never disclosed to the Court:

1. **2001 – First Contact from Wyatt, Tarrant & Combs:**
   Plaintiff's law firm sent Defendant a cease-and-desist letter acknowledging his **"First Website for Kentucky Colonels"** threatening an infringement lawsuit. Rather than pursue litigation, they allowed the domain to lapse without objection when Defendant voluntarily declined to renew the domain name with the registrar—demonstrating **full awareness and acquiescence.** *See* **[Exhibit A] (2001 Published Website Response and Notice to Members)**

2. **2014–2015 – Trademark Symbol Correction (Matt Williams Contact):**
   Attorney Matt Williams of Wyatt contacted Defendant regarding his inadvertent use of the ® symbol on a Facebook group titled "Kentucky Colonels International." Defendant **immediately**

**removed the symbol**, acted in good faith, and was never contacted again regarding infringement. *See* **[Exhibit B] (Defendant's Email Reply to Matt Williams Letter)**

3.  **December 2019 – Merger Proposal and Confidentiality Agreement:**

    At Plaintiff's request, Defendant submitted a formal Merger Proposal describing his vision for an **international, non-commercial membership registry** and chapter system. The proposal was submitted on January 13, 2020 under a **mutually signed confidentiality agreement**. It was rejected one week later. *See* **[Exhibit C] (Emails, Merger Proposal and Agreement Anticipated and Requested by Col. Sherry Crose with signed Confidentiality Agreement)**

4.  **2020 – Lawsuit Filed Under False Pretenses:**

    Thirty days after rejecting Defendant's merger proposal, Plaintiff—through counsel—filed this lawsuit portraying Defendant as an "unknown infringer" operating a "shadow organization" and causing brand confusion. These allegations were made in the **Verified Complaint** [DE-1] and **Motion for Temporary Restraining Order** [DE-7] and in press releases, without disclosing:

    - Plaintiff's direct contacts with Defendant in **2001** and **2014**;

    - Defendant's **formal merger proposal** in **January** under a confidentiality agreement;

    - Or the fact that Defendant had been a **member of the Honorable Order since 1996** and received a **new membership card and donation acknowledgment in January 2020**.

Instead, Plaintiff's counsel deliberately mischaracterized Defendant's **public nonprofit reform blog posts and registry advocacy** as infringing activity and cybersquatting. These writings, far from constituting commercial use, were **protected civil rights commentary** on governance and inclusion within a fraternal social agenda formation with his peers.

*See* **[Exhibit D] (Membership letter from Plaintiff to Col. David Wright) and [Exhibit E] (Defendant's blog posts and Kentucky Colonel advocacy writings).**

# II. VIOLATIONS OF RULE 11 BY PLAINTIFF'S COUNSEL

## A. Violation of Rule 11(b)(1): Improper Purpose and Retaliatory Litigation

This lawsuit was not filed in good faith to protect intellectual property rights, but rather as a retaliatory campaign to silence a critic, punish a whistleblower, and eliminate an independent nonprofit model that Plaintiff later co-opted and implemented.

The facts and procedural posture show that Plaintiff:

- **Requested and rejected a merger proposal** that included the very chapter model it now uses,

- **Filed suit just three days after submitting fraudulent trademark applications, underscoring the pretextual and retaliatory nature of this litigation**,

- Coordinated **defamatory public relations campaigns through Board Member Nick Ising [Exhibit F] (Plaintiff's Public Facing Communications)**, and

- Obtained, enforced, and weaponized **an unconstitutional injunction** to suppress Defendant's online activity and reputation.

Such misuse of the judicial process falls squarely within the scope of **Rule 11(b)(1)** as recognized by the Sixth Circuit in *Remark, LLC v. Adell Broad. Corp.*, 702 F.3d 280, 283 (6th Cir. 2012), where the Court held that Rule 11 is designed to prevent "improper use of the judicial process to gain tactical advantage." See also *Jackson v. Murray State Univ.*, 834 F. Supp. 2d 609, 612 (W.D. Ky. 2011).

## B. Violation of Rule 11(b)(2): Misrepresentation of Controlling Law & Claims

Counsel filed this action—and later obtained injunctive relief—based on a false claim that Plaintiff has exclusive, incontestable, long-standing trademark rights to the term "Kentucky Colonels" for member services based on mere applications it had only applied for three days prior to bringing suit, undisclosed in the stated claim.

What Plaintiff failed to disclose is dispositive:

- In **[Exhibit G]** *Honorable Order of Kentucky Colonels v. Building Champions, LLC*, 345 F. Supp. 2d 716 (W.D. Ky. 2004), the **same court** denied HOKC's attempt to enforce the very same alleged exclusive trademark rights for products it branded with the mark.

- The opinion held that the (*term "Kentucky Colonels" is neither wholly generic nor is it fanciful or arbitrary. Rather, the Court finds that "Kentucky Colonels" as it pertains to the Honorable Order is either a descriptive mark with established secondary meaning or a suggestive mark*) and that **HOKC did not possess exclusive rights for products like t-shirts.**[1]

Plaintiff's counsel, **Cornelius Coryell II**, had a clear ethical obligation under **Rule 11(b)(2)** and **ABA Model Rule 3.3(a)(2)** to disclose this adverse precedent to the Court. His failure to do so before this Court constitutes a **misrepresentation of controlling law that should be sanctioned**.

Likewise, attorney **Julie Laemmle Watts** of Wyatt, Tarrant & Combs, now co-counsel of record in this matter, had an affirmative duty of candor under **37 C.F.R. § 11.18(b)** and **15 U.S.C. § 1120** when representing Plaintiff before the USPTO. Yet in prosecuting three trademark applications filed in **February 2020—Nos. 88800020, 88800035, and 88800038**—Watts falsely declared first-use dates of **1931** and **1951**, even though HOKC's own 1981 application (Metry, No. 73299122) had sworn under penalty of perjury that first use in commerce occurred on **May 10, 1957 when it incorporated**. These inconsistencies are not clerical errors; they are material misstatements submitted to create an illusion of seniority and incontestability where none lawfully exists. As documented in **[Exhibit H]**, these applications were filed **just three days before this lawsuit began**, revealing a litigation-driven effort to backdate trademark rights and bolster standing. The intentional conflict between past and present sworn

---

[1] *Honorable Order of Kentucky Colonels v. Building Champions, LLC*, 345 F. Supp. 2d 716 (W.D. Ky. 2004). In that case, the same Plaintiff, represented by the same law firm, failed in its attempt to assert exclusive trademark rights in "Kentucky Colonels." The Court held that the mark lacked secondary meaning and was not inherently distinctive, rejecting HOKC's claims of confusion and enforceability. This adverse ruling—issued by the same federal court—was not disclosed in Plaintiff's 2020 pleadings or motion for injunctive relief. Plaintiff's counsel had a duty to disclose this controlling authority under **Rule 11(b)(2)** and **ABA Model Rule 3.3(a)(2)**. Their failure to do so, while simultaneously asserting fame and incontestability, constitutes a material misrepresentation of law to the Court and further supports the imposition of sanctions.

filings reflects a coordinated legal strategy—not a misunderstanding—and violates the very foundation of truthfulness required in trademark procurement and judicial advocacy.

These misrepresentations were then carried directly into the litigation, where Plaintiff—through Coryell and Watts—used the applications to falsely claim fame, continuous use, and alleged infringement, while omitting that the marks were **not yet registered**, **had no secondary meaning**, and were underpinned by contradictory assertions.

Under the Federal Circuit's ruling in *In re Bose Corp.*, 580 F.3d 1240 (Fed. Cir. 2009), such false statements made with at least **reckless disregard for the truth** can constitute fraud on the USPTO. See also *Nationstar Mortgage LLC v. Ahmad*, 112 U.S.P.Q.2d 1361 (TTAB 2014) (fraud includes failure to disclose material facts and known concurrent users). These applications were not merely negligent—they were strategically falsified to support Plaintiff's broader litigation strategy, which falsely asserted trademark strength and urgency to this Court in **[DE-1]** and **[DE-7]**. This conduct squarely falls within the scope of **Rule 11(b)(3)** and supports referral to the **Office of Enrollment and Discipline** and the **Kentucky Bar Association**.[2] *See also Wiggins v. Daymar Colleges Grp., LLC*, 317 F.R.D. 42, 47 (W.D. Ky. 2016) ("Attorneys are expected to perform legal inquiry before asserting legal claims.").

## C. Violation of Rule 11(b)(3): Factual Misrepresentations and Omissions

In order to obtain injunctive relief and pursue discovery, Plaintiff's counsel submitted pleadings containing false factual narratives:

- That Defendant had suddenly appeared or was unknown to Plaintiff in 2020;

---

[2] *See* USPTO Application Nos. **88800020**, **88800035**, and **88800038**, submitted by Julie Laemmle Watts on behalf of Plaintiff in February 2020. In each application, Plaintiff falsely claimed **first use anywhere as 1931** and **first use in commerce as 1951**, despite the organization's prior sworn statement in USPTO Application **No. 73299122** (the "Metry Application"), which declared first use as **1934** and first use in commerce as **May 10, 1957**. This contradiction, unaccompanied by any explanation, constitutes a material misrepresentation under **15 U.S.C. § 1120** and violates the duty of candor owed under **37 C.F.R. § 11.18(b)**. The USPTO relies on applicant-supplied dates to evaluate distinctiveness, seniority, and enforceability, and these falsified entries were later weaponized in pleadings **[DE-1, DE-7]** to mislead this Court.

- That he operated a "shadow organization" or intended to confuse the public;

- That Plaintiff had no prior knowledge of Defendant's activities.

In reality:

- **Wyatt, Tarrant & Combs** contacted Defendant in 2001, acknowledged his first website, and allowed the domain to lapse, creating an apprehensive atmosphere. **(Exhibit A)**

- **Matthew Williams** of Wyatt contacted Defendant again in 2014 via Facebook; no further action was taken after Defendant issued a good-faith correction. **(Exhibit B)**

- Plaintiff entered into a confidentiality agreement on January 13, 2020 and rejected Defendant's registry and chapter model one week later—just before filing this lawsuit. **(Exhibit C)**[3]

As evidenced in Exhibits C and E, Plaintiff's counsel distorted these interactions to fabricate a legal claim in the **Verified Complaint [DE-1]**. Specifically, Plaintiff mischaracterized Defendant's confidential merger proposal **(Exhibit C)** as an "extortion attempt," and public nonprofit commentary **(Exhibit E)** as infringing commercial use. These public statements were plainly non-commercial advocacy protected under the First Amendment. Nonetheless, counsel relied on his own sophisticated misrepresentations to obtain a **TRO and an overbroad Preliminary Injunction**, without any showing of actual confusion, commercial use, or actual irreparable harm.

These facts were material to Plaintiff's claims and were knowingly concealed. As held in *Saltire Indus., Inc. v. Waller, Lansden, Dortch & Davis, PLLC*, 491 F.3d 522, 531 (6th Cir. 2007), failure to correct a known falsehood after learning the truth is independently sanctionable. This conduct also runs afoul of *McCrary v. Ohio Civil Serv. Emps. Ass'n*, 19 F. App'x 356, 358 (6th Cir. 2001), which held that attorneys must conduct a reasonable factual inquiry before initiating suit.

---

[3] Plaintiff's counsel later submitted the merger proposal under seal and described it as an "extortion attempt" and "shakedown," despite it being a formal good faith business offer transmitted under a confidentiality agreement at the express invitation of HOKC leadership. The proposal was in fact received with a compliment from Executive Director Sherry Crose on January 13, 2020. Counsel's characterization grossly distorts the facts and prejudices the Court by misrepresenting professional nonprofit business negotiations as coercion—conduct that clearly implicates Rule 11(b)(3).

Moreover, just three days before initiating this litigation, Plaintiff submitted three new trademark applications—not to protect existing goodwill, but to manufacture standing for a pre-planned strategic lawsuit against public participation to shut the Defendant down. These applications were filed under **15 U.S.C. § 1051(a)**, supported by sworn declarations under **37 C.F.R. § 2.33**, and asserted exclusive rights while denying the existence of other users—despite many existing in Kentucky and beyond its borders who have used "Kentucky Colonels" descriptively.

Plaintiff:

- Knowingly claimed first-use dates of **1931** and **1951**, despite having been incorporated only on May 10, 1957;

- Failed to identify Defendant as a known concurrent user, in violation of **37 C.F.R. § 2.69**;

- Improperly relied on a 2003 product-based registration—found unenforceable in *HOKC v. Building Champions*, 345 F. Supp. 2d 716 (W.D. Ky. 2004)—to claim broad rights over the term "Kentucky Colonels";

- Referenced its 1983 registration for "Honorable Order of Kentucky Colonels" (Reg. No. 1227024) and its "Kentucky Colonels" marks for products as if they conferred exclusivity over membership, activism, and community services—which they do not.

As shown in **Exhibit H**, these newly submitted applications collectively reflected an effort to fabricate legal standing, retroactively assert exclusivity over a public title, and circumvent established limits on descriptive terms that lack secondary meaning.

Plaintiff's Complaint [DE-1] and Motion for TRO and Preliminary Injunction [DE-7] never disclosed that these trademark applications were newly filed. Instead, Plaintiff presented the marks as longstanding, historic, and famous. In reality, they were unregistered and created shortly before

litigation to construct a false foundation for this case. This violated the letter and spirit of **Rule 11(b)(3)**, which prohibits factual contentions made without evidentiary support.

Plaintiff's application history also reflects a broader scheme of historical fabrication and **fraudulent succession**. Plaintiff has repeatedly asserted that it has continuously operated since 1931—even though the **"1931 Minutes"** it submitted in **[DE-1-1]** originated with an entirely separate entity: the **Kentucky Colonels Association**, established prior to 1930. (Exhibit – [DE-171-19] Kentucky Colonels Handbook)

The original 1981 trademark application—filed by Plaintiff's own trustee, **Robert A. Metry**—states the first use in commerce was May 10, 1957. (Exhibit – [DE-171-9] Metry Application) This contradicts Plaintiff's current narrative. By misappropriating the records of the Kentucky Colonels Association and presenting them as its own founding documents—both in this case and in prior litigation—Plaintiff engaged in deliberate deception.

This conduct implicates **15 U.S.C. § 1120** (fraud in trademark procurement) and **15 U.S.C. § 1125(a)** (false advertising and unfair competition). It also constitutes **fraud upon the Court**, as defined in *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238 (1944), where a party's submission of false documents and omission of known contrary evidence undermined the integrity of judicial proceedings.

See **[DE-171]** (**Motion for Judicial Notice**); also its exhibits:

- **Exhibit [DE-171-9]** (1981 Metry Trademark Application (73299122));
- **Exhibit [DE-171-10]** (HOKC Disambiguation);
- **Exhibit [DE-171-12]** (Fraudulent Succession Narrative (1931));
- **Exhibit [DE-171-14]** (Pre-HOKC Phrase Usage – Kentucky Colonels Collection);
- **Exhibit [DE-171-15]** (U.S. Congressional Record, (1936));
- **Exhibit [DE-171-16]** (Kentucky Governors' Appointments and Commissions Archive);
- **Exhibit [DE-171-20]** (Gov. W. O. Bradley and his Colonels, (1897) – Photograph).

*See also* **Initial Appellate Brief, 6 Cir. Case No. 23-5795 / 23-6108**, at pp. **30–35** for (*Standard of Review – The Record*, detailing Plaintiff's historical misrepresentations, fabricated succession narrative, and misuse of trademark filings submitted to this Court in support of false infringement allegations).

## D. Additional Factors: Collusion, Self-Dealing, and Public Harm

This case also presents extraordinary aggravating circumstances beyond the specific legal violations addressed above:

1. **Theodore T. Myre Jr.**, a partner at Wyatt, Tarrant & Combs, serves on the HOKC Board of Trustees while his firm has billed HOKC over **$500,000** in legal fees for this litigation alone. This dual role creates a direct conflict of interest and violates basic standards of nonprofit governance, a conflict of interest that should have been disclosed to the Court.

2. **Nick Ising**, another HOKC board member, issued **public press releases** smearing the Defendant and his organization published in major Kentucky newspapers, leveraging internal litigation outcomes to inflict external reputational damage.

3. **Sherry Crose**, Executive Director of HOKC, disseminated an **email to the organization's membership and donor base** immediately following entry of the TRO and again later with the Preliminary Injunction. The communication, drafted in substance by Plaintiff's counsel and adopted by the Court with minimal scrutiny, did not clarify legal matters but instead amplified a **false narrative of wrongdoing**. It sought to publicly disparage Defendant, isolate him from the Kentucky Colonel community, and elevate Plaintiff's litigation position through media perception. The Preliminary Injunction also improperly expanded Plaintiff's trademark rights—**as if the precedent in Building Champions never existed**. *See* **[Exhibit F]** (Coordinated Media Releases & Membership Communications by HOKC (2020–2023)).

4. **After negotiating the injunction**, HOKC Board Members implemented a **60+ chapter structure with appointed ambassadors**, directly copying the local, regional and international

chapter model originally proposed by Defendant in 2020 in his Merger Proposal and discussed under a confidentiality agreement. This use of the enjoined concept under the injunction for their own institutional gain constitutes **unjust enrichment**, **theft of intellectual property**, and is a violation of the spirit of the injunction.

This conduct not only justifies **Rule 11 sanctions**—it reveals a **broader pattern of institutional misconduct** involving collusion, misuse of legal process, and reputational retaliation by a federally tax-exempt organization. The weaponization of court orders to silence a whistleblower and the **financial entanglements** between Plaintiff's board and legal counsel demand immediate scrutiny.

This matter should be referred to appropriate oversight and regulatory bodies, including:

- The **Internal Revenue Service (IRS)**
- **BBB Wise Giving Alliance**
- **Charity Navigator**
- **ProPublica Nonprofit Explorer**
- **The Kentucky Nonprofit Network**
- **The Foundation Center**

The integrity of charitable institutions—and the dignity of this Court—require that such abuses be **independently investigated** and addressed in full view of the public.

## E. Ongoing Obstruction and Retaliatory Litigation Conduct

Plaintiff's counsel's most recent filings—[DE-172] (Response to Motion to Recuse) and [DE-173] (Motion to Strike Judicial Notice)—reflect continued obstruction, bad-faith tactics, and retaliatory conduct. These filings do not engage with the factual or legal substance of Defendant's motions. Instead, they appear intended to deflect scrutiny and suppress the evidentiary record that Plaintiff's counsel cannot credibly rebut.

Counsel appears to operate under the belief that affiliation with a politically connected law firm provides insulation from meaningful oversight, and that procedural dismissals alone will neutralize Defendant's well-documented evidence.[4] This belief further demonstrates the need for sanctions under Rule 11, as it reflects a conscious disregard for the duty of candor and the integrity of impartial judicial proceedings.

Both filings:

- Avoid addressing the truth of Defendant's allegations or supporting exhibits;

- Attack Defendant's tone and character rather than respond to substance;

- Seek to strike motions based on documents drawn entirely from public records—including HOKC's own statements, USPTO filings, and published media[5];

- Reinforce a sustained pattern of concealment and misdirection that has persisted since the filing of the complaint.

Plaintiff's counsel has not denied any of the following:

- That Plaintiff submitted three new trademark applications just three days before filing suit and failed to disclose them to the Court;

- That Defendant was in documented contact with Plaintiff and its counsel over the span of two decades or immediately prior to bringing the lawsuit discussing a merger;

- That the organization's claimed historical narrative and succession lineage is provably false;

---

[4] In [DE-172], counsel states that "Defendant's Motion for Recusal is based on nothing more than dissatisfaction with prior rulings," ignoring both the factual basis and statutory authority under 28 U.S.C. §§ 144 and 455. This casual dismissal reflects an attempt to reduce structural judicial bias to mere litigant frustration, further justifying sanctions under Rule 11(b)(1) for misrepresenting the nature of Defendant's legal claim.

[5] In [DE-173], Plaintiff's counsel moved to "strike the Motion for Judicial Notice in its entirety," including judicially noticeable materials such as USPTO records and press releases authored by Plaintiff itself. This filing not only evades correction of the factual record—it affirms a litigation strategy grounded in concealment and misdirection, in direct contravention of Rule 11(b)(3).

- That emergency injunctive relief was secured through misleading assertions of "fame," "incontestability," and historical continuity—causing irreparable and lasting harm to Defendant's reputation, goodwill, and nonprofit operations.

The responses in [DE-172] and [DE-173] attempt to suppress rather than confront the evidentiary record or concealed exculpatory evidence, and thus reinforce the basis for Rule 11 sanctions.

Further, Plaintiff's counsel's position in [DE-172][6]—that Judge Jennings should decide her own disqualification—violates the plain language of **28 U.S.C. § 144**, which mandates reassignment to another judge upon the filing of a legally sufficient affidavit. Counsel's argument either reflects ignorance of this requirement or a willful disregard for the governing statutory process.

The recusal response also fails to address that Plaintiff's counsel is the architect of the procedural and factual distortions that compromised this Court's posture from the outset prejudicing the Defendant within five days. Through a coordinated strategy of litigation-motivated trademark filings, distorted historical claims, and misuse of emergency relief, Plaintiff's counsel has diverted these proceedings from impartial adjudication to a campaign of institutional retaliation against a whistleblower.

Taken together, these filings suggest that Plaintiff's counsel expects the Court to continue relying on procedural optics rather than engage with the well documented fraud. If this belief proves well-founded, it would further support Defendant's claim that judicial bias and structural favoritism have tainted these proceedings.[7]

---

[6] Counsel explicitly states in [DE-172] that "there is no evidence in the record that this Court's impartiality might reasonably be questioned," despite the filing of a legally sufficient affidavit under 28 U.S.C. § 144. This denial of the procedural requirements of the recusal statute constitutes a misstatement of law, implicating Rule 11(b)(2).

[7] Counsel's assertion in [DE-173] that Defendant's filings are "designed to improperly influence the record for appellate review" constitutes a baseless attack on motive rather than a rebuttal of substance. This is classic bad-faith litigation posturing—precisely the kind of conduct Rule 11 was enacted to deter.

## F. Forensic Trademark Analysis and Evidentiary Summary Exhibit

Attached as **Exhibit H** is a detailed forensic analysis of Plaintiff's trademark registration history, including a comparative chart of all asserted marks, filing dates, claimed first-use dates, and the responsible attorneys of record. The exhibit reveals a consistent pattern of **inconsistent and, in several cases, factually impossible** first-use claims—many of which predate Plaintiff's legal incorporation in 1957 and contradict prior sworn filings submitted to the USPTO in 1981.

Notably, three applications—Serial Nos. **88800020**, **88800035**, and **88800038**—were filed just **three days before the initiation of this lawsuit**, each asserting retroactive use of the "Kentucky Colonels" mark as early as **1931** or **1951**. These claims lack any credible evidence of commercial use at those times and stand in direct contradiction to Plaintiff's original 1981 application (Reg. No. 1227024), which clearly declared **first use in commerce as May 10, 1957,** (one month prior to incorporation).

These applications were signed under penalty of perjury by attorneys at Wyatt, Tarrant & Combs, LLP—namely **Julie Laemmle Watts** and **Matthew A. Williams**—and were later cited in pleadings to support claims of exclusivity, fame, incontestability, and urgency for injunctive relief. **Exhibit H** confirms that these assertions were not only unsupported but appear to have been crafted strategically for litigation purposes, without any evidentiary foundation. The claimed dates conflict not only with historical facts but with Plaintiff's own verified representations to the USPTO.

The use of these filings—both before the USPTO and in federal pleadings—demonstrates a coordinated effort to mislead this Court and to improperly convert a **generic and publicly shared designation** into a tool for exclusion and litigation leverage. This conduct implicates **Rule 11(b)(2)** and **(b)(3)**, supports sanctions under **15 U.S.C. § 1120**, and warrants referral for disciplinary and regulatory review.

# III. RELIEF REQUESTED

Pursuant to Fed. R. Civ. P. 11(c), the Court's inherent supervisory authority, and the documented pattern of misconduct outlined above, the Defendant in good faith respectfully requests that the Court grant the following relief:

## 1. Monetary Sanctions and Compensatory Relief

- Impose monetary sanctions on Plaintiff's counsel, Cornelius E. Coryell II and Wyatt, Tarrant & Combs, LLP, for repeated violations of Rule 11(b)(1)–(3), including the filing of pleadings supported by false factual assertions and misrepresentations of law;

- Award compensatory sanctions to Defendant under Fed. R. Civ. P. 11(c)(4) and the Court's inherent authority to reimburse costs and losses directly resulting from the abuse of process, including reputational harm, time, and litigation expenses (*Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238 (1944));

- Such relief is warranted due to the prolonged enforcement of a TRO, preliminary injunction, and agreed permanent injunction based on knowingly false trademark claims and the suppression of protected nonprofit speech (see *Exhibits E, F,* and *H*);

## 2. Ethical and Regulatory Referrals

- Refer Plaintiff's litigation counsel to the Kentucky Bar Association for violations of Kentucky Rules of Professional Conduct, including Rule 3.3 (Candor to the Tribunal), Rule 3.1 (Meritorious Claims), and Rule 8.4 (Misconduct), as evidenced by omission of adverse precedent (*Building Champions*, *Exhibit G*) and mischaracterization of known facts (*Exhibits A–C*);

- Refer Plaintiff's trademark counsel to the USPTO Office of Enrollment and Discipline for submitting materially false declarations under penalty of perjury (37 C.F.R. § 11.18(b); 15 U.S.C. § 1120) regarding first-use dates contradicted by their own 1981 filings (*Exhibit H*);

### 3. Relief Related to the Integrity of This Case

- Strike and vacate all pleadings, injunctions, and orders that were obtained through false or misleading representations regarding Plaintiff's trademark rights, including reliance on applications filed just days before suit and falsely asserting continuous use or exclusivity (*Exhibit H*);

- Grant Defendant leave to file a motion under 15 U.S.C. § 1119 to cancel Plaintiff's fraudulently procured trademarks as outlined in the forensic trademark analysis (*Exhibit H*);

- Stay or vacate the Preliminary Injunction and related orders issued on the basis of mischaracterized and omitted facts, including Plaintiff's failure to disclose long-standing contact with Defendant (*Exhibits A–D*) and its knowledge of the merger proposal (*Exhibit C*);

### 4. Structural Remedies and Oversight

- Direct the parties to engage in mediation under the Court's supervision, with neutral third-party facilitation, to address irreparable harm to Defendant's reputation, nonprofit efforts, and the misappropriation of the chapter-based membership and registry model described in his January 2020 merger proposal (*Exhibit C*);

- Order an independent audit of financial relationships and fee arrangements between Plaintiff and Wyatt, Tarrant & Combs, LLP, to assess potential self-dealing and conflicts of interest involving firm partner Theodore T. Myre, who simultaneously served on Plaintiff's board;

- Refer Plaintiff and its board of directors to appropriate nonprofit oversight organizations, including the IRS, BBB Wise Giving Alliance, ProPublica Nonprofit Explorer, and the Kentucky Nonprofit Network, to investigate potential violations of fiduciary and ethical responsibilities by a tax-exempt 501(c)(3);

**5. Equitable and Declaratory Relief**

- Issue a declaratory finding that Defendant's 2020 merger proposal contained original nonprofit intellectual property that has since been misappropriated by Plaintiff under the guise of enforcement actions (*Exhibit C*), justifying equitable restitution;

- Declare that Defendant's online advocacy, registry activities, and use of the phrase "Kentucky Colonels" were non-commercial, expressive conduct protected under the First Amendment and not subject to infringement as falsely claimed in [DE-1] and [DE-7] (*Exhibits D, E*);

**6. Any Other Relief Necessary to Prevent Future Abuse**

- Grant such additional relief as the Court deems just, necessary, and proportionate to the abuse of process, reputational harm, and strategic litigation misconduct documented in this motion and supported by the attached exhibits.

The rules of civil procedure exist to prevent exactly this kind of litigation abuse. Plaintiff's counsel has weaponized this Court for unlawful ends on the behalf of his client. It is now incumbent upon the Court to act—firmly and without delay.

## IV. CONCLUSION

This is not a standard trademark dispute. It is a **deliberate misuse of the federal judiciary**, a pattern of **concealment, fraud, and retaliation**, and a coordinated effort by a charitable organization and its counsel to **silence dissent, suppress speech, prevent lawful assembly, and misappropriate nonprofit infrastructure under color of law.**

Defendant's speech did not cause confusion—it caused discomfort. The Plaintiff, a public charity that depends on its honorary members for donations, responded not by rebutting his claims, but by weaponizing trademark law to silence his advocacy. This is not a Lanham Act violation; it is a **classic SLAPP suit against a donor, member, and reform advocate**, filed with full awareness of its falsity

and now shielded by counsel under color of legitimacy. That conduct falls squarely within the sanctions framework of Rule 11.

I declare under penalty of perjury under the laws of the United States of America, pursuant to 28 U.S.C. § 1746, that the foregoing Motion for Rule 11 Sanctions is true and correct to the best of my knowledge and belief.

Respectfully submitted,

Col. David J. Wright
302 General Smith Drive
Richmond, Kentucky 40475

david.wright@globcal.net
Tel: (859) 379-8277

Dated: March 24, 2025
Puerto Carreño, Colombia

# Appendix Table of Authorities

## Statutes and Rules

- **Federal Rule of Civil Procedure 11(b)(1)–(3), (c)(2)**
- **Federal Rule of Evidence 201(b)(2)**
- **28 U.S.C. § 144** – Bias or prejudice of judge
- **28 U.S.C. § 452** – Duty of impartiality by court personnel
- **28 U.S.C. § 455(a), (b)(1)** – Disqualification of judges
- **28 U.S.C. § 953** – Duties of Clerk to enter filings
- **15 U.S.C. § 1051(a)** – Basis for filing new trademarks
- **15 U.S.C. § 1119** – Power of court to cancel trademark registrations
- **15 U.S.C. § 1120** – Civil liability for false trademark registration
- **37 C.F.R. § 2.33** – Signature declarations for trademark filings
- **37 C.F.R. § 2.69** – Disclosure of known concurrent users
- **37 C.F.R. § 11.18(b)** – Duty of candor and good faith before USPTO
- **ABA Model Rule 3.3(a)(2)** – Duty to disclose adverse legal authority
- **Federal Rule of Civil Procedure 11(b)(1)-(3), (c)(2)**
- **28 U.S.C. § 144** – Bias or prejudice of judge
- **28 U.S.C. § 455(a), (b)(1)** – Disqualification of judges

## Cases

- *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868 (2009)
- *Honorable Order of Kentucky Colonels v. Building Champions*, 345 F. Supp. 2d 716 (W.D. Ky. 2004)
- *In re Bose Corp.*, 580 F.3d 1240 (Fed. Cir. 2009)
- *Jackson v. Murray State Univ.*, 834 F. Supp. 2d 609 (W.D. Ky. 2011)
- *Johnson v. Diamond Shine, Inc.*, 890 F. Supp. 2d 763 (W.D. Ky. 2012)
- *Malone v. Portfolio Recovery Assocs., LLC*, 308 F.R.D. 518 (W.D. Ky. 2015)
- *McCarty v. Covol Fuels No. 2, LLC*, 978 F. Supp. 2d 799 (W.D. Ky. 2013)
- *McCrary v. Ohio Civ. Serv. Emps. Ass'n Local 11*, 19 F. App'x 356 (6th Cir. 2001)
- *Nationstar Mortgage LLC v. Ahmad*, 112 U.S.P.Q.2d 1361 (TTAB 2014)
- *Remark, LLC v. Adell Broad. Corp.*, 702 F.3d 280 (6th Cir. 2012)
- *Sagan v. Sumner County Bd. of Educ.*, 501 F. App'x 537 (6th Cir. 2012)
- *Saltire Indus., Inc. v. Waller, Lansden, Dortch & Davis, PLLC*, 491 F.3d 522 (6th Cir. 2007)
- *United States v. William Stivers*, 722 F.3d 788 (6th Cir. 2013)
- *Wiggins v. Daymar Colleges Group, LLC*, 317 F.R.D. 42 (W.D. Ky. 2016)

## Certificate of Service

I, **David J. Wright**, hereby certify that on **March 24, 2025**, I submitted this **Motion for Rule 11 Sanctions** through the Court's **Electronic Document Submission System (EDSS)** for transmission to the Clerk of Court for the **United States District Court for the Western District of Kentucky**, in accordance with **General Order No. 25-02**.

Upon acceptance by the Clerk, the filing will be entered into the Court's **CM/ECF system**, which will provide **electronic notice to all registered CM/ECF participants** associated with this case. Service will be deemed complete upon docketing and assignment of a document number by the Clerk.

Pursuant to **Fed. R. Civ. P. 11(c)(2)**, I previously filed a **Notice of Intent to Seek Rule 11 Sanctions** on **February 26, 2025** [DE-169], providing the required **21-day safe harbor period**. Plaintiff's counsel did not withdraw or amend the challenged filings, and this motion is now properly submitted for the Court's consideration and is procedurally correct.

**Dated:** March 24, 2025

Col. David J. Wright

Clerk's Office
601 W. Broadway, Rm 106
Gene Snyder United States Courthouse
Louisville, KY 40202