UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

*Electronically Filed*

| | | |
|---|---|---|
| THE HONORABLE ORDER OF | **)** | |
| KENTUCKY COLONELS, INC. | **)** | |
| | **)** | |
| PLAINTIFF | **)** | |
| | **)** | |
| | **)** | |
| v. | **)** | CIVIL ACTION NO. 3:20-CV-132-RGJ |
| | **)** | |
| KENTUCKY COLONELS | **)** | |
| INTERNATIONAL, et al. | **)** | |
| | **)** | |
| | **)** | |
| DEFENDANTS | **)** | |

## RESPONSE TO DEFENDANT'S MOTION FOR RULE 11 SANCTIONS [DE 176]

More than five (5) years after this case was filed and more than four (4) years after the case was dismissed, Defendant David J. Wright ("Wright") demands the Court sanction the undersigned counsel ("Counsel") and his law firm for alleged violations of Rule 11 of the Federal Rules of Civil Procedure. [Defendant's Motion for Rule 11 Sanctions Against Plaintiff's Counsel Cornelius E. Coryell and Wyatt, Tarrant & Combs, LLP [DE 176] (the "Sanctions Motion")]. The Sanctions Motion is the latest in a long line of vexatious and frivolous filings by Wright, solely intended to harass Counsel and the Plaintiff, The Honorable Order of Kentucky Colonels, Inc. ("HOKC"). The proof of record establishes that the Sanctions Motion is utterly without merit. Counsel respectfully requests the Court deny the Sanctions Motion and enter an order awarding the expenses and attorneys' fees incurred in opposing the motion pursuant to Rule 11(c)(2).[1]

---

[1] Wright obviously timed the filing of the Sanctions Motion to coincide with HOKC's preparation of its response to his Sixth Circuit appellate brief (which was filed on March 19, 2025) as well as Defendant's Motion for Recusal of Judge Jennings [DE 170] and Defendant's Motion for Judicial

## **BACKGROUND**

The vast majority of the "factual" assertions made in the Sanctions Motion have no support in the Court record. Rather, they are based on Wright's two hundred and forty (240) page Motion for Judicial Notice FRE 201(b) [DE 171] (the "Judicial Notice Motion") which was filed less than a month ago.[2] In 2023, the Court properly rejected Wright's request to take "judicial notice" of the same "facts" he now attempts to inject through the Judicial Notice Motion. [*See* 8/9/23 Memorandum Opinion and Order [DE 129], PageID #3724. Just like it was in 2023, the information is not subject to judicial notice because it does not come from reliable sources, is completely unauthenticated, disputed, and subject to reasonable doubt. Because the material presented in the Judicial Notice Motion is not properly before the Court, it should be disregarded.

Moreover, Wright's self-serving characterization of the "facts" as recited in the Judicial Notice Motion, and now the Sanctions Motion, is patently inaccurate. The actual facts of record provide a detailed depiction of Wright's brazen trademark infringement, document his blatant contempt for the Court's orders, and conclusively support HOKC's original trademark infringement claims and subsequent contempt claims in their entirety. Since the background facts have been extensively briefed, properly documented, and introduced into evidence by HOKC, Counsel will not repeat the proof of record here.[3]

---

Notice FRE 201(b) [DE 171], both filed on March 17, 2025. Such litigation conduct, even by a *pro se* litigant, is, in and of itself, sanctionable under 28 U.S.C. § 1927.

[2] HOKC has moved to strike Wright's Judicial Notice Motion and its accompanying attachments. [*See* Response and Objection to Defendant's Motion for Judicial Notice FRE 201(b) [DE 171] and Motion to Strike Same [DE 173]].

[3] Counsel incorporates herein by reference the factual background, supporting documents, affidavits, and other record proof tendered with HOKC's Verified Complaint [DE 1]; the Motion for Temporary Restraining Order and Preliminary Injunction [DE 7]; the 3/23/20 Order [DE 32]; the Motion for Preliminary Injunction [DE 30]; the 8/13/20 Order [DE 58]; the Motion to Enforce

**ARGUMENT**

**I.    THE SANCTIONS MOTION IS UNTIMELY**

A district court may deny a Rule 11 motion if it finds that filing of the motion was unreasonably delayed.  Rule 11 contains no explicit time limit for a sanctions motion, but courts have universally held that such motions must be filed "promptly."  *Peer v. Lewis*, 606 F.3d 1306, 1312-13 (11th Cir. 2010) (court properly denied Rule 11 motion due to nine (9) month delay in filing); *Kaplan v. Zenner*, 956 F.2d 149, 151-52 (7th Cir. 1992) (though reasonable time is necessarily dictated by specific facts and circumstances of each case, motions should be brought "as soon as practicable after discovery of a Rule 11 violation").  While the "promptly" standard may be subjective, courts have repeatedly recognized that a Rule 11 motion must be filed prior to final judgment.  *Ridder v. City of Springfield*, 109 F.3d 288, 295 (6th Cir. 1997).

Here, the alleged conduct for which Wright demands sanctions occurred in 2020 and 2021. The Sanctions Motion was filed five (5) years after that conduct and four (4) years after Wright negotiated a settlement resulting in dismissal of the action.  [*See* Mediator's Proposal [DE 97-6], PageID #2611].  Wright offers no explanation for any delay in raising these issues, much less a four (4) year delay.  That delay alone justifies denial of the Sanctions Motion.

**II.    COUNSEL DID NOT VIOLATE RULE 11**

An attorney who presents a pleading, motion, or other paper to a federal district court certifies: (1) that the motion is not being presented for an improper purpose; (2) that its legal contentions are warranted by existing law; (3) that its factual contentions have evidentiary support; and (4) that its denials of factual contentions are warranted by the evidence. Fed. R. Civ. P. 11(b). The conduct of counsel is measured by an objective standard of reasonableness under the

---

Permanent Injunction Order [DE 99]; Plaintiff's Proposed Findings of Fact and Conclusions of Law [DE 126]; and the Court's 8/9/23 Memorandum Opinion and Order [DE 120].

circumstances. *Merritt v. International Ass'n of Machinists & Aerospace Workers*, 613 F.3d 609, 626 (6th Cir. 2010). An attorney may rely on objectively reasonable representations of his or her client. *Hadges v. Yonkers Racing Corp.*, 48 F.3d 1320, 1323 (2nd Cir. 1995). The purpose of sanctions under Rule 11 is to deter frivolous litigation and filings. *Merritt*, 613 F.3d at 626; *In re Ruben*, 825 F.2d 977, 986 (6th Cir. 1987) (the standard of "frivolousness" or obvious lack of merit is used to determine whether a filing was signed in violation of Rule 11). In determining whether a filing is frivolous, courts are to resolve ambiguities in favor of the filing party. *Oliveri v. Thompson*, 803 F.2d 1265, 1275 (2nd Cir. 1986). All of the pleadings and motions filed on behalf of HOKC were legally and factually accurate, and Counsel's conduct in this case has been objectively reasonable and appropriate. As shown by the outcome, none of the arguments made or actions taken on behalf of HOKC were frivolous. The Sanctions Motion must be denied.

### A.    The Litigation Was Not Initiated for an Improper Purpose.[4]

### 1.    The Court was aware of Wright's history with HOKC.

Wright contends Counsel should be sanctioned because the action was filed as a "retaliatory campaign to silence a critic, punish a whistleblower, and eliminate an independent nonprofit model that [HOKC] later co-opted and implemented." [Sanctions Motion, PageID #4486]. There are ***no record facts*** to support that assertion, even though Wright had more than a year to develop a factual record between the filing of the Verified Complaint and dismissal of the

---

[4] Not surprisingly, the Sanctions Motion misrepresents the holding of virtually ***every*** case cited therein. For example, in support of his assertion that Counsel should be sanctioned for misuse of the judicial process, Wright cites *Remark, LLC v. Adell Broadcast Corp.*, 702 F.3d 280, 283 (6th Cir. 2012). However, the quote Wright attributes to *Remark* ("the Court held that Rule 11 is designed to prevent 'improper use of the judicial process to gain a tactical advantage'") ***does not appear*** in the opinion. [Sanctions Motion, PageID #4486]. Similarly, the other case cited by Wright in support of this argument, *Jackson v. Murray State Univ.*, 834 F. Supp. 2d 609, 612 (W.D. Ky. 2011), does not even mention Rule 11. *Remark* and *Jackson* have no application to the Sanctions Motion.

action.  Wright ***never*** provided admissible proof to refute the sworn testimony that this action was necessitated by Wright's use of the internet and various social media platforms to misappropriate and profit from the KENTUCKY COLONELS Mark.  [Verified Compl. [DE 1], PageID #8].  If Wright believed that this action was retaliatory, why did he participate in settlement negotiations with Judge Edwards, sign a settlement agreement, and expressly consent to the terms of the Agreed Permanent Injunction?  Wright's unsubstantiated claim of retaliation is undermined by his own actions.

Wright argues that the "improper purpose" for this action is reflected by Counsel's concealment of "a nearly two-decade history of awareness, negotiation, and peaceful co-existence" between Wright and HOKC.  [Sanctions Motion, PageID #4484].  He contends that Counsel deliberately misled the Court by failing to disclose his interactions with HOKC in 2001 (when he responded to a cease and desist letter from HOKC by terminating his infringing activity) and in 2014 (when he again honored HOKC's cease and desist demand by terminating his infringing activity).  [*Id*.].  Contrary to those assertions, the Court was fully aware of the history between Wright and HOKC.

The prior incidents described by Wright were chronicled in detail and incorporated by reference in an exhibit to HOKC's Verified Complaint: Wright's February 2020 "editorial" blog post (the "Wright Editorial").  [*See* Verified Compl., Ex. 4 [DE 1-4], PageID #62-76].  The Wright Editorial described, ***in Wright's own words***, his social media and internet based activities on various occasions over the last twenty (20) years as well as HOKC's cease and desist letters concerning that activity.  [*See* [DE 1-4], PageID #64-66].  Thus, to the extent that the prior

interactions between Wright and HOKC were relevant to the claims HOKC initiated in 2020 (which they were not), Wright's spin on those communications is reflected in the Court record.

Moreover, Wright's own filings advised the Court of his history with HOKC. Wright unsuccessfully defended the claims made in HOKC's Verified Complaint, tendering at least twenty-five (25) different filings, six (6) of which were some form of a motion to dismiss.[5] The dismissal motions offered the same essential arguments, including (1) Wright developed a website for Kentucky Colonels in 1998 and a Facebook page for Kentucky Colonels in 2016 thereby establishing a "right of prior use." [Defendant's Motion to Dismiss [DE 37], PageID #835]; (2) the term "Kentucky Colonel" is a "generic term" which "freely exists in the public domain." [Supplemental Amended Motion to Dismiss and/or Motion for Summary Judgment [DE 52-2], PageID #1078]; and (3) HOKC's trademark application was fraudulent because it failed to disclose the existence of Wright's prior use. [Defendant's Amended Motion to Dismiss [DE 42-1], PageID #987]. The Court was fully aware of Wright's history with HOKC because he repeatedly raised it as a defense. All of those arguments were rejected. [8/13/20 Order [DE 58], PageID #1229-33].

Wright also contends that Counsel misled the Court by concealing Wright's "requested and rejected merger proposal" to HOKC in 2019. [Sanctions Motion, PageID #4486]. That assertion is, likewise, refuted by the record. HOKC's Verified Complaint details the discussions between Wright and HOKC concerning Wright's infringing organization Kentucky Colonels International ("KCI"). [Verified Compl. [DE 1], PageID #6]. As described in the Verified Complaint, Wright

---

[5] Wright's various dismissal motions were styled Motion for Declaratory Judgment [DE 82], PageID #1819; Motion for Judgment on the Pleadings [DE 65], PageID #1292; Motion for Leave to File Supplement to Amended Motion to Dismiss [DE 52], PageID #1067; Motion to Drop Defendants [DE 51], PageID #1061; Defendants' Amended Motion to Dismiss [DE 47], PageID #1021; Defendants' Motion to Dismiss [DE 37], PageID #834; and Defendants' Motion to Dismiss or Continue with Time Extension [DE 24], PageID #734.

reached out to HOKC to determine if HOKC would "either assist [KCI] in our [Colonel's Registry] project or perhaps merge our membership program into their own organization." [*Id.*].[6]  HOKC specifically advised the Court that in January 2020, Wright forwarded a package of documents which included a "Draft Merger, Acquisition and Consolidation Agreement." [*See* Motion for Temporary Restraining Order and Preliminary Injunction [DE 7], PageID #157 (citing Verified Compl. [DE 1])].  ***HOKC even included that document as an exhibit to the Verified Complaint***. [*See* DE 1-3].[7]  HOKC further advised the Court that on January 20, 2020, HOKC notified Wright that it was not interested in his proposal.  [Verified Compl. [DE 1], PageID #7].  The Court was fully aware of Wright's unsuccessful efforts to peddle his competing and infringing organization to HOKC in 2019 and 2020.  Indeed, the Verified Complaint explained that HOKC's rejection of Wright's proposal prompted Wright to accelerate his efforts to promote KCI using HOKC's KENTUCKY COLONELS Mark.[8]

### 2.    There was no "defamatory public relations campaign."

Wright further claims that Counsel's improper purpose in initiating the litigation is reflected by a "coordinated defamatory public relations campaign" by HOKC.  But the press

---

[6] Wright advised HOKC that he wanted to "find a way" that HOKC could "endorse the International Register and Kentucky Colonels International, with a sponsorship, while [HOKC] silently but transparently takes over the Register and International Concept to become a program belonging to the HOKC."  [Verified Compl. [DE 1], PageID #6].

[7] Not surprisingly, Wright's "proposal" included provisions for generous financial payments to himself, his son, and Kentucky Colonels International.

[8] HOKC further advised the Court that, shortly after HOKC's rejection of Wright's "merger proposal," the KCI website announced:

> On January 30 the formation of Kentucky Colonels International became official. We upgraded our status from an unincorporated membership organization and legalized the commission and foundation as an assumed name corporation in the Commonwealth of Kentucky belonging to Ecology Crossroads (est. 1994), who is our sponsor. To become an independent membership organization like we  deserve

releases that Wright finds offensive were not included in any filings or presentation to the Court. Rule 11 applies to "pleadings, motions and other papers" filed in court – not media statements by a party.  There is no record proof that any of those statements were authored or disseminated by Counsel.  Wright's assertions about Counsel's participation in publicity surrounding the litigation is pure speculation.

Likewise, Wright's supposition regarding the reasons for HOKC's public statements has no record support.  In fact, one of the statements about which Wright complains [Sanctions Motion, Ex. F [DE 176-7], PageID #4577] was mandated by the February 2021 settlement agreement between the parties.  [*See* Mediator's Proposal [DE 97-6], PageID #2612-13].  The other  public statements made by HOKC were entirely necessitated by Wright's extensive internet and social media activities disparaging HOKC and accusing HOKC of misconduct.  For example, Wright sought to advance his misappropriation of the KENTUCKY COLONELS Mark by erroneously editing the "Kentucky Colonel" Wikipedia page after HOKC rejected his "merger proposal." [Verified Compl. [DE 1], PageID #8; *Id.* at Ex. 5 [DE 1-5] PageID #78-85].  In addition, Wright wrote that HOKC had been "misleading their donors and supporters for many years," had violated various state and federal statutes, and had otherwise engaged in "deception and fraudulently presumptive behavior." [Wright Editorial [DE 1-4], PageID #69-70].  To the extent that there were

---

to be, it is up to our members and other Kentucky colonels to come together and provide us with support we need in the form of donations to better formalize our efforts to succeed. Contributions can be made online through their sponsor using PayPal or a credit card.

[Motion for Temporary Restraining Order and Preliminary Injunction, Ex. 2 [DE 7- 2] PageID #292].  Thus, in addition to the express financial solicitations reflected on the KCI Website, Wright candidly acknowledged that he and his affiliated organizations were soliciting, and would continue to solicit, contributions and payments using the KENTUCKY COLONELS Mark. He also made it clear that those contributions would not be shared with HOKC or subject to scrutiny by anyone other than himself.

any media statements initiated by HOKC, those statements were intended to minimize the confusion sowed by Wright, assure HOKC members that it was attempting to protect HOKC's reputation, and report on the litigation as it progressed.  Most importantly, all of the information in HOKC's statements was factual and true.  Wright cannot show otherwise.

### 3.    Wright agreed to the injunction which is the subject of the Sanctions Motions.

Perhaps the most bizarre float in Wright's parade of Rule 11 allegations is his assertion that Counsel should be sanctioned because he "obtained, enforced, and weaponized an unconstitutional injunction to suppress [Wright's] online activity and reputation." [Sanctions Motions, PageID #4486]. ***Wright agreed to the injunction that he is now complaining about***.  He negotiated the terms of the injunction as part of the Court mediated settlement of HOKC's claims. [*See* Mediator's Proposal [DE 97-6], PageID #2611].  He signed a document acknowledging, among other things, that he agreed to be bound by the injunction ***which was an exhibit to that document***.  [*Id.*].  Wright knew exactly what the Agreed Permanent Injunction was going to say before it was entered by the Court.  Thus, the injunction was "obtained" by Wright as much as it was by Counsel.  The assertion that Counsel should be sanctioned for an injunction to which Wright expressly agreed is beyond absurd.

Clearly, Wright is unhappy that his attempts to misappropriate the KENTUCKY COLONELS Mark were thwarted and that HOKC has prevailed at every stage of this litigation. He may even regret consenting to the terms of the Agreed Permanent Injunction.  But Rule 11 is not a vehicle to adjudicate the merits of claims, test the sufficiency of allegations in the pleadings, or attack a court's order. *See Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 396 (1990) ("[T]he imposition of a Rule 11 sanction is not a judgment on the merits of an action.  Rather, it requires the determination of a collateral issue: whether the attorney has abused the judicial process, and,

9

if so, what sanction would be appropriate."); *Safe-Strap Co., Inc. v. Koala Corp.*, 270 F. Supp. 2d 407, 412 (S.D.N.Y. 2003) (motion for sanctions denied because the motion was served "in an improper fashion, as a surrogate for a summary judgment motion").  The Sanctions Motion is not an appropriate vehicle for Wright to belatedly express his dissatisfaction with the ultimate outcome of the case.  The motion must be denied.

### B.   Counsel Did Not Misrepresent the Controlling Law.

### 1.   The Court was aware of *Building Champions* and specifically found the case inapplicable.

Wright contends that Counsel should be sanctioned because he violated "a clear ethical obligation" to disclose the existence of case law to the Court, specifically *Honorable Order of Kentucky Colonels v. Building Champions, LLC*, 345 F. Supp. 2d 716 (W.D. Ky. 2004). [Sanctions Motion, PageID #4487].  Wright contends that (1) the Court was unaware of *Building Champions*; and (2) the holding in *Building Champions* would have been fatal to HOKC's claims.  [*Id*.].  Both assertions are untrue.

The Court was fully aware of the *Building Champions* decision.  In ruling on HOKC's Motion to Extend Temporary Restraining Order [DE 31], the Court extensively analyzed Wright's reliance on *Building Champions* finding the case distinguishable.

> Likewise, Wright's invocation of *The Honorable Order of Kentucky Colonels v. Building Champions, LLC*, 345 F. Supp. 2d 716 (W.D. Ky. 2004), is misplaced. There, HOKC tried to assert its trademark rights in novelty merchandise sold to supporters of a semi-professional basketball team, the Kentucky Colonels.  The district court denied HOKC injunctive relief but found "the strength of the mark to be solidly in the Order's favor." *Id*. at 724.  The decision that HOKC was unlikely to prevail on the merits turned instead on the "unrelatedness of the underlying activity, the dissimilarity of the overall impression as well as the likelihood of purchaser care" – factors which, as discussed below – weigh in HOKC's favor here. *Id*. *Building Champions* thus supports a conclusion that HOKC's mark is strong.

[3/23/20 Order [DE 32], PageID #815]. The Court was not only aware of *Building Champions*, it correctly rejected Wright's assertion that *Building Champions* supported Wright's infringement defense.

### 2.    <u>HOKC's trademark filings were accurate and appropriate.[9]</u>

Wright contends that HOKC misrepresented the status of its trademark applications and "omit[ted]" that it had pending applications. This is patently false. HOKC's Verified Complaint specifically acknowledged it had trademark registrations *and* pending applications. [Verified Compl. [DE 1], PageID #6]. HOKC even attached a chart reflecting the registrations and pending applications along with copies of the supporting documentation, including the applications themselves. [*See id.* at Ex. 2 [DE 1-2], PageID #26-59]. Moreover, HOKC included allegations of both federal trademark infringement and common law trademark infringement so as to cover both its registrations and applications. [*See id.* [DE 1], PageID #1].

Wright also complains that Julie Laemmle Watts, co-counsel for HOKC,[10] misrepresented the "first-use dates" in prosecuting three (3) trademark applications referenced in the Verified

---

[9]  The Sanctions Motion also misrepresents the legal authority cited by Wright in his attack on HOKC's trademark filings. For example, Wright cites *In re Bose Corp.*, 580 F.3d 1240 (Fed. Cir. 2009), for the proposition that "reckless disregard for the truth can constitute fraud on the USPTO." [Sanctions Motion, PageID #4488]. That is not what the case says. *Bose* actually states "a trademark is obtained fraudulently… only if the applicant or registrant ***knowingly makes a false, material representation with the intent to deceive*** the PTO." 580 F.3d at 1245 (emphasis added). There is no record proof to satisfy that high standard here. Similarly, Wright misrepresents that *Nationstar Mortgage, LLC v. Ahmad*, 112 U.S. P.Q.2d 1361 (TTAB 2014), establishes that failure to disclose known concurrent users constitutes fraud on a trademark application. In reality, *Nationstar* merely confirms that "the [USPTO] Board will not find fraud if the evidence shows that a false statement was made with a reasonable and honest belief that it was true, rather than intent to mislead the USPTO into issuing a registration to which the applicant was not otherwise entitled. *Id.* at *3. *In re Bose Corp.* and *Nationstar* do not support Wright's sanctions demand.

[10]  Julie Laemmle Watts is now the attorney of record for the three (3) applications-turned-registrations, which were originally filed by a former Wyatt, Tarrant & Combs partner.

Complaint [Sanctions Motion, PageID #4487]. In making this erroneous allegation, Wright attempts to compare the first use dates of HOKC's Registration Number 1227024 for the HONORABLE ORDER OF KENTUCKY COLONELS Mark used in connection with eleemosynary services with the first use dates of HOKC's then-application Serial Numbers 88800020, 88800035, and 88800038 for the KENTUCKY COLONELS mark used in connection with social club services, charitable fundraising services, and association services. Wright's comparison is completely misplaced. Not only is he comparing the first use dates of two (2) different marks, but he is also comparing the first use dates of those two (2) different marks for use in connection with different services.

A trademark application filed based on current use (as HOKC's three (3) then-pending applications were) contains two (2) dates: the date of first use anywhere and the date of first use in commerce. The date of first use anywhere is "the date when the goods were first sold or transported, or the services were first rendered, under the mark, if such use is bona fide and in the ordinary course of trade." Trademark Manual of Examining Procedure 2024 ("TMEP") § 903.01 (citing 15 U.S.C. §1127). "For every applicant . . . the date of first use of a mark is the date of the first use anywhere . . . regardless of whether the nature of the use was local or national, intrastate or interstate, or of another type." *Id*. The date of first use in commerce is "the date when the goods were first sold or transported, or the services were first rendered, under the mark in a type of commerce that may be lawfully regulated by the U.S. Congress, if such use is bona fide and in the ordinary course of trade." *Id.* at § 903.02 (citing 15 U.S.C. § 1127). Notably, the date of first use anywhere will either be earlier than or the same as the date of first use in commerce. *See id*. at § 903.03. Further, the first use anywhere or the first use in commerce could be by a predecessor in

title to the applicant, with the use inuring to the benefit of the applicant, thereby allowing the applicant to claim dates of first use by the applicant's predecessor in title. *See* TMEP § 903.05.

As stated in the Verified Complaint, Governor Flem D. Sampson called a meeting of Kentucky Colonels on May 2, 1931 for the purpose of "forming a society or organization to restore the grandeur and sentiment of the original Kentucky Colonel; to more closely band together this group . . . for the advancement of Kentucky and Kentuckians." [Verified Compl. [DE 1], PageID #5]. Governor Sampson also sought to "adopt uniforms, medallions, insignia, seals, constitution and by laws and a Declaration of Principles. . . . to have [the] group take active part . . . at all future State occasions such as receptions, both State and social, the inauguration of future Governors, etc." [*Id.*, Ex. 1 [DE 1-1], PageID #24]. That conceptual "society or organization" of Kentucky Colonels eventually incorporated in 1957 as HOKC, supporting privity between the first users of the KENTUCKY COLONELS Mark in connection with various services, including social club services, charitable fundraising services, and association services, and HOKC, thereby allowing HOKC to claim first use of the KENTUCKY COLONELS Mark in connection with these services for a date earlier than its 1957 incorporation.[11]

Regardless, an allegation of fraud based on a trademark registrant claiming a date of first use that was earlier than the actual date of first use has continuously failed, with findings that such falsity was either not fraudulent or not material. *See, e.g.*, *National Tuberculosis Ass'n v. Summit County Tuberculosis and Health Ass'n*, 122 F. Supp. 654, 658 (N.D. Ohio 1954) ("Nothing has been presented in evidence from which it may be inferred that the statement was made in bad faith

---

[11] That fact is further supported by the findings in *Building Champions*, which states that "The Honorable Order has used 'Kentucky Colonels' on merchandise *since its formation in 1931*." *The Honorable Order of Kentucky Colonels v. Building Champions, LLC*, 345 F. Supp. 2d at 719 (emphasis added).

13

with fraudulent purpose and intent to secure a registration by deception"); *Colt Industries Operating Corp. v. Olivetti Controllo Numerico S.p.A.*, 221 U.S.P.Q. 73, #3 (TTAB 1983) (incorrect date of first use is immaterial because it "could not possibly result in the allowance of a registration which would otherwise be allowed, as long as there was technical trademark use prior to the filing of the application.").

Furthermore, despite Wright's allegations, HOKC did not "fail[] to identify Defendant as a known concurrent user" in filing its then-pending applications for the KENTUCKY COLONELS Mark. [*See* Sanctions Motion, PageID #4490]. A party filing a trademark application must verify that

> To the best of the signatory's knowledge and belief, no other persons, except, if applicable, concurrent users, ***have the right to use the mark in commerce***, either in identical form or in such near resemblance as to be likely, when used on or in connection with the goods/services of such other persons, to cause confusion or mistake, or to deceive.

[*See, e.g.*, Verified Compl., Ex. 2 [DE 1-2], PageID #41 (emphasis added)]. Wright was not a *rightful* concurrent user of the KENTUCKY COLONELS Mark and therefore did not need to be identified as such.

Finally, filing a trademark application shortly before filing suit does not "backdate trademark rights" or "bolster standing." [Sanctions Motion, PageID #4487]. HOKC had common law rights in the KENTUCKY COLONELS Mark in connection with the applied-for services. It filed its applications, which identified legitimate dates of first use and first use in commerce, to seek federal protection for those common law rights. While pending registration, those three (3) applications were not enforceable as registrations and HOKC did not seek to enforce them as registrations, hence the inclusion of claims for common law trademark infringement in the Verified Complaint. Despite Wright's belief to the contrary, there was no legal upper hand or leverage to

HOKC in filing the applications shortly before filing suit, and there certainly was no misrepresentation by Counsel as to the status or effect of the applications.[12]

### C.    Counsel Did Not Make Factual Misrepresentations or Omissions.[13]

Wright contends that Counsel submitted pleadings containing "false narratives" in order to obtain injunctive relief. [Sanctions Motion, PageID #4488]. Specifically, Wright contends that Counsel represented that (1) Wright had suddenly appeared or was unknown to HOKC in 2020; (2) Wright operated a "shadow organization" or intended to confuse the public; and (3) HOKC had no prior knowledge or Wright's activities. [Sanctions Motion, PageID #4488-89]. Once again, those assertions are refuted by the record.

First, as described above, Counsel thoroughly advised the Court of HOKC's prior dealings with Wright, describing that history in the Verified Complaint and providing the Court with numerous documents detailing HOKC's efforts to curtail Wright's prior social media and internet based infringement. Similarly, Wright's extortionate 2020 "merger" proposal, all of the documents which accompanied the proposal, and HOKC's response to the proposal were described

---

[12] Notably, as a condition to settling HOKC's claims against him, Wright expressly agreed "to not oppose any pending or future trademark application by [HOKC] related to the KENTUCKY COLONELS Mark." [2/17/21 Mediator's Proposal [DE 97-6], PageID #2611]. In addition, Wright agreed "to not attempt to cancel any current trademark registrations or future trademark registrations obtained by [HOKC] related to the KENTUCKY COLONELS Mark." [*Id.* at PageID #2612]. The Court should take note of the fact that, in addition to his contempt for the Agreed Permanent Injunction, Wright has refused to honor those commitments.

[13] Wright cites *Saltire Indus., Inc. v. Waller, Lansden, Dortch & Davis, PLLC*, 491 F.3d 522, 531 (6th Cir. 2007), in support of his assertion that Counsel should be sanctioned for misrepresentations made to the Court. But *Saltire* did not involve a Rule 11 motion. Rather, the court in *Saltire* found that the complaining litigant had "foregone" his opportunity to complain about counsel's conduct by failing to file a timely Rule 11 motion. Likewise, Wright's reliance on *McCrary v. Ohio Civil Serv. Employees Ass'n*, 19 F. App'x 356, 358 (6th Cir. 2001), is misplaced as the court affirmed the district court's entry of summary judgment for the defendant and denied the plaintiff's motion for sanctions as "meritless." The Sanctions Motion should have the same outcome.

in specific detail in the Verified Complaint and included in the record. [Verified Compl. [DE 1], PageID #6-8]. Counsel even provided the documents to the Court, attaching the proposal and accompanying documents as an exhibit to the Verified Complaint. [*See id.* at Ex. 3 [DE 1-3], PageID #60; [DE 60] (filed under seal)]. No effort was made to conceal the history between Wright and HOKC. In fact, that background was highlighted by HOKC because it further illustrated Wright's improper motives.

Second, HOKC's filings depicted Wright as attempting to confuse and deceive the public *because that is precisely what he was trying to do*. The record reflects that Wright aggressively marketed KCI and the "Kentucky Colonel Foundation" to holders of the Kentucky Colonel commission specifically for the purpose of redirecting HOKC's goodwill and appealing to HOKC's donor base. To make matters worse, Wright misrepresented the status of those organizations claiming that donations were *tax deductible*. In the KCI Website, Wright stated:

> Donations to KCI are now tax deductible in 2020, those who make donations of $25 or more will receive a personal thank you note from a Commissioner. Donations of $1,200+ or the equivalent of 2% of a person's annual salary if U.S. residents will also receive a tax-statement by email at the end of the year so that they can deduct their contributions.

[Motion for Temporary Restraining Order and Preliminary Injunction, Ex. 3 [DE 7-3], PageID #243]. *That representation was false*. The IRS never granted tax exempt status to KCI, the Kentucky Colonel Foundation, or any other organization for which donations were solicited on the KCI Website. Likewise, Ecology Crossroads Cooperative Foundation, Inc., the entity which designated KCI as an "assumed name," was never a tax exempt organization.[14] Globcal

---

[14] An organization with a similar name of "Ecology Crossroads Cooperative" apparently held tax exempt status at one time, but that status was revoked on November 15, 2010. *See* www.irs.gov/charities-non-profits/tax-exempt-organization-search; [Motion for Temporary Restraining Order and Preliminary Injunction, Ex. 8 [DE 7-8], PageID # 307].

International, another assumed name for Ecology Crossroads Cooperative Foundation, Inc., was never certified as a tax exempt organization. Thus, according to public records maintained by the Office of the Kentucky Attorney General and the Internal Revenue Service of the United States of America, the representations made by Wright concerning the tax benefits of donations to his affiliated entities were untrue.[15]

Finally, Wright contends that Counsel should be sanctioned because he "relied on his own sophisticated misrepresentations to obtain a TRO and an overbroad preliminary injunction, without any showing of actual confusion, commercial use, or actual irreparable harm." [Sanctions Motion, PageID #4489]. In offering this ridiculous assertion, Wright would have the Court ignore, among other things, the sworn testimony in the Verified Complaint:

> The Honorable Order has experienced actual confusion as a result of Defendants' activities using the Infringing Mark. For example, on September 23, 2019, one of the recipients of a charitable grant in the amount of $10,000 from the Honorable Order posted a thank you on its Facebook page and specifically recognized the Honorable Order's KENTUCKY COLONELS GOOD WORKS PROGRAM. And, on September 30, 2019, another recipient of a charitable grant from the Honorable Order also posted a thank you on its Facebook page. However, in both of the thank you posts, the grantees mistakenly tagged KCI's Facebook page instead of the Honorable Order's Facebook page. A screenshot of these pages are attached as Exhibit 6. Such actual confusion not only showed confusion by the grantees about who provided the charitable giving, but also caused the viewing public of the posts to be confused about who provided the grants to the organizations.

[Verified Compl. [DE 1], PageID #8]. The confusion created by Wright was further described by multiple witnesses at the hearing on HOKC's contempt motion and the affidavits introduced as

---

[15] Neither KCI nor any of its affiliates were registered as charitable organizations with the Office of the Kentucky Attorney General. The Attorney General maintains a registry of organizations authorized to engage in charitable solicitation activities in the Commonwealth of Kentucky. KCI was not listed on that registry. Likewise, the list did not include the Kentucky Colonel Foundation, Kentucky Colonels International Fund, Globcal International, Ecology Crossroads Cooperative, or Ecology Crossroads Cooperative Foundation, Inc. [*Id.*, Ex. 9 [DE 7-9], PageID #309].

evidence.  [Hr'g Tr. Vol. 2 [DE 122], PageID #3618-24].  The record clearly reflects the actual confusion caused by Wright's infringement.

Wright falsely touted KCI's ability to provide "public relations" services and marketed certificates of registration, ID cards, a registry, and additional services, all for payment of tax deductible donations.  [DE 1-4].  In common parlance, that is known as a "scam."  The threat that Wright posed to HOKC's reputation was significant, especially in light of the fact that Wright intentionally misrepresented the corporate and tax exempt status of his strawman organizations. All of those facts were **_undisputed_**.  Contrary to Wright's assertions, Counsel did not misrepresent or conceal any facts, much less material facts regarding the irreparable harm that HOKC would suffer if Wright's infringing activity was not enjoined.

### D.    Counsel Did Not Engage in Collusion, Self-Dealing, or Conduct that Would Harm the General Public

Wright contends that Counsel should be sanctioned because he engaged in collusion and self dealing inasmuch as one of Counsel's partners serves on the HOKC Board of Trustees [Sanctions Motion, PageID #4492].  While Wright asserts that "this dual role creates a direct conflict of interest and violates basic standards of nonprofit governance," he identifies no legal authority to support that assertion.  [*See id.*].  Likewise, he provides no legal authority to support the contention that there was a conflict of interest or that the circumstance should have been reported to the Court.

Nothing in the Kentucky Rules of Professional Conduct prevents a lawyer from either serving as a director of a client or representing a client while his/her law partner serves as a director for the client.  No inherent conflict arises from the mere fact a firm lawyer concurrently serves as an entity client's lawyer while that lawyer or another firm lawyer serves as one of the entity client's directors.  Indeed, a lawyer for a corporation or other organization who is also a member of its

18

board of directors can and should determine himself whether the responsibilities of the two roles

may conflict.  *See* SCR 3.130(1.7), comment 35.  Likewise, the Restatement of Law Governing

Lawyers makes clear that simultaneous service as a corporate lawyer and corporate director is not

forbidden.

> ***A lawyer as corporate director or officer***.  A lawyer's duties as counsel can conflict
> with the lawyer's duties arising from the lawyer's service as a director or officer of
> a corporate client. ***Simultaneous service as corporate lawyer and corporate
> director or officer is not forbidden by this Section. The requirement that a lawyer
> for an organization serve the interests of the entity (see § 96(1)(a)) is generally
> consistent with the duties of a director or officer***. However, when the obligations
> or personal interests as director are materially adverse to those of the lawyer as
> corporate counsel, the lawyer may not continue to serve as corporate counsel
> without the informed consent of the corporate client. The lawyer may not
> participate as director or officer in the decision to grant consent (see § 122,
> Comment *c(ii)*).

Restatement (Third) of Law Governing Lawyers §135(d) (emphasis added).  Wright does not

identify any manner in which the obligations or personal interests of Counsel or his law partner

were materially adverse to HOKC.  Nor does he explain how Counsel's representation of HOKC

presented any type of conflict.  Counsel's representation of HOKC did not violate any standard of

nonprofit governance or any rule of professional conduct.

Wright's complaints regarding HOKC's Board Members and HOKC's Executive Director

are also without merit.  [Sanctions Motions, PageID #4492].  While Wright claims that HOKC's

communications with its members were intended to disparage Wright, a simple review of those

communications reveals otherwise.  The media releases and other statements made by HOKC

reported ***facts*** (not opinions) regarding the matters at issue in the litigation.  Those statements

rarely mentioned Wright by name and never used the type of vitriolic rhetoric repeatedly employed

by Wright in his internet and social media campaign of hate directed toward HOKC.  Most of

HOKC's media statements merely reported rulings from the Court as the litigation progressed.

Certainly, Wright did not like those rulings, but his disapproval does not make the communications inaccurate, inappropriate, or actionable.

### E.    Counsel Has Not Engaged in Retaliatory Litigation Conduct

Wright contends that Counsel should be sanctioned because he has engaged in "ongoing obstruction and retaliatory litigation conduct."  [Sanctions Motion, PageID #4493].  In this instance, the retaliatory conduct claimed by Wright include the arguments made in HOKC's response to his motion to recuse Judge Jennings [DE 172] and HOKC's response to the Judicial Notice Motion [DE 173].  [Sanctions Motion, PageID #4494].  Wright complains that the responses are sanctionable because they "do not engage with the factual or legal substance" of Wright's motion[s]" [*Id.*].  The reason for Counsel's approach is simple – the motions are utterly devoid of factual or legal substance.  As Counsel stated in HOKC's response to the motion to recuse Judge Jennings, that motion is based on nothing more than Wright's dissatisfaction with Judge Jennings' rulings.  And the Judicial Notice Motion is nothing more than Wright's untimely effort to inject irrelevant, contested facts in the record because he failed to create a proper record when he had an opportunity to do so.

Regardless, the mere fact that Wright disagrees with the legal and factual arguments presented on behalf of HOKC does not make Counsel's strategy sanctionable.  *Ario v. Underwriting Members of Syndicate 53*, 618 F.3d 277, 297 (3rd Cir. 2010) (motion was not "patently unmeritorious or frivolous" merely because district court ultimately determined that argument was unpersuasive); *Smith v. Our Lady of the Lake Hosp., Inc.*, 960 F.2d 439, 444 (5th Cir. 1992) (absolute guaranty of correctness of legal theory is not required to avoid sanctions).  Wright's disagreement with the arguments made in Counsel's filings or Counsel's strategy in those filings does not provide grounds for Rule 11 sanctions.

F.    **Wright's "Forensic Trademark Analysis and Evidentiary Summary" is Completely Without Merit**

Wright's "Forensic Trademark Analysis and Evidentiary Summary" is nothing more than a duplicative argument regarding his erroneous position on HOKC's trademarks. Further, Wright's "Trademark Chronology and Legal Analysis Chart" appearing on Exhibit H [DE 176-9] and discussed in Wright's "detailed forensic analysis" contains a chart supposedly exposing a "pattern of inconsistent and, in several cases, factually impossible" information. [Sanctions Motion, PageID #4496]. Wright's chart, however, contains nearly identical information to the trademark chart HOKC included in its Verified Complaint five (5) years ago but with an additional column of Wright's "Notations, Comments & Observations."[16] [Compare Sanctions Motion, Ex. 9 [DE 176-9] PageID #4594-96 with Verified Compl., Ex. 2 [DE 1-2], PageID #27-28]. There is no "forensic analysis" presented by Wright.

To the extent Wright seeks to incorporate by reference into his principal briefing his Exhibit H, titled "Legal Analysis of Fraudulent Applications," and any new arguments therein that were not previously presented in his principal briefing and addressed by Counsel herein, such additional arguments are presented in excess of the page limit prescribed by LR 7.1(d) and should, therefore, be disregarded. Further, the discussion of HOKC's "New Trademark Application," namely, Serial Number 98765692, is inapplicable to this matter as it was filed September 23, 2024. As such, material contained in Exhibit 9 of the Sanctions Motion [[DE 179-9], PageID #6-12] should be disregarded in its entirety.  Counsel's conduct is not, and was not, in violation of Rule

---

[16] As can be expected of a trademark portfolio, HOKC has filed new applications, had applications mature to registration, and allowed a registration to lapse over the course of the last five (5) years. These changes are reflected in Wright's chart.

11(b)(3) and does not support referral to the Office of Enrollment and Discipline or the Kentucky Bar Association.[17]

### III.    WRIGHT MUST BE ORDERED TO PAY THE FEES AND EXPENSES NECESSITATED BY THE SANCTIONS MOTION.

Rule 11 allows a court to award reasonable expenses and attorney's fees to the party who prevails on a sanctions motion.  Fed.R.Civ.P. 11(c)(2).  A party against whom a frivolous motion for sanctions is brought may be awarded fees ***without the necessity of filing a cross-motion*** for sanctions and without the necessity of complying with the safe harbor time requirements.  *Smith v. Psychiatric Solutions, Inc.*, 750 F.3d 1253, 1260 (11th Cir. 2014) (when party files motion for sanctions for improper purpose, court may award expenses and attorney's fees to target of motion and no cross-motion is required).  Wright's ill conceived and unsupported Sanctions Motion is clearly frivolous and serves no purpose other than to harass and inconvenience Counsel, HOKC and the Court.  While *pro se* litigants are typically granted significant leeway with respect to their filings, all reasonable grounds for extending leniency to Wright were exhausted long ago.  Wright should be required to pay the fees and expenses incurred in responding to the Sanctions Motion.

### CONCLUSION

For the reasons set forth herein, the undersigned counsel respectfully requests that Wright's Motion for Rule 11 Sanctions be denied.  Counsel further requests that an order be entered pursuant to Rule 11(c) of the Federal Rules of Civil Procedure ordering Wright to pay the expenses and legal fees associated with responding to this frivolous motion.

---

[17] The case cited by Wright to support his position that Counsel violated Rule 11(b)(3) and should be referred for discipline has nothing to do with attorney discipline and the quote cited by Wright does not appear in the case. Instead, *Wiggins v. Daymar Colleges Grp.*, 317 F.R.D. 42 (W.D. Ky. 2016), held that silence by missing plaintiffs strongly showed abandonment of suit, meriting dismissal for failure to prosecute.

Respectfully submitted,

*/s/ Cornelius E. Coryell II*
Cornelius E. Coryell II
Julie Laemmle Watts
WYATT, TARRANT & COMBS, LLP
400 West Market Street, Suite 2000
Louisville, KY  40202
(502) 589-5235
ccoryell@wyattfirm.com
jwatts@wyattfirm.com

*Counsel for Plaintiff, The Honorable Order of Kentucky Colonels, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on April 14, 2025, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system.  I further certify that a true and correct copy of the foregoing has been served upon the following, via electronic mail, on the 14th day of April, 2025:

David J. Wright
david.wright@globcal.net
Edificio Torre 997, Local B
San Juan, Caracas
Distrito Capital, Venezuela 1021

*/s/ Cornelius E. Coryell II*
*Counsel for Plaintiff, The Honorable Order of Kentucky Colonels, Inc.*

101904273.1